UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FCS ADVISORS, LLC,

                    Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN";

THEIA AVIATION, LLC; and

THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                    Defendants.

21 Civ. 6995

---

## COMPLAINT

Plaintiff FCS Advisors, LLC ("FCS"), for its complaint against defendants Theia Group, Inc., d/b/a "Thorian Group" and/or "Cypherian" ("Theia Group"), Theia Aviation LLC ("Theia Aviation"), and Theia Holdings A, Inc., d/b/a "Thorian Holdings" ("Theia Holdings") (collectively, "Theia") alleges as follows:

## INTRODUCTION

1. This lawsuit seeks to recover over $289 million (and growing) in debt due from Theia, a communications and imaging business, to plaintiff FCS, a debt investment firm. In light of Theia's internal dysfunction, FCS also seeks to have the Court appoint a temporary receiver immediately, so that FCS's ability to be repaid is protected.

2. Theia is a company in its "pre-revenue" stage. Its primary asset is a license from the Federal Communications Commission ("FCC"), granted in May 2019. The license gives Theia the right to build a network of 112 satellites that would be used to image the entire surface of the Earth. The license is conditioned on Theia building and launching 56 satellites into their

assigned orbits, and operating the satellites, by May 9, 2025. Two years in, there is little sign of progress toward that requirement, and Theia has much work to do in the meantime if the deadline is to be met.

3. FCS began lending money to Theia in October 2018, when the FCC license application was still pending. In June 2020, the parties entered into a Secured Note Purchase and Security Agreement (the "SNPSA") that refinanced the prior debt with two $100 million promissory notes from Theia to FCS, one due in six months (December 29, 2020), and the other in one year (June 29, 2021). The intent of the SNPSA was to provide short-term financing until Theia progressed sufficiently to attract more permanent financing sources.

4. As the maturity date for the first note approached, it became clear Theia would be unable to pay. Thus, the parties agreed to an amendment of the SNPSA (the "Third Amendment") that pushed out the due date on the first note to match the second. Both notes (plus certain additional fees) would thus be due in June 29, 2021.

5. FCS required, as a condition of its extension under the Third Amendment, a number of provisions designed to both protect FCS and to place Theia on a better footing. For example, Theia was to appoint a disinterested Chief Restructuring Officer and develop a "Liquidity Plan," in both cases subject to FCS's approval.

6. After the December extension, Theia's management simply refused to honor its obligations in the Third Amendment. For example, it never appointed a CRO, nor did it develop a Liquidity Plan. Theia also has failed to provide certain critical financial information to FCS, as required by the SNPSA. Perhaps worst of all, despite the SNPSA's prohibition on new debt or liens without FCS's consent—standard covenants in secured financing—Theia management furtively obtained a loan from another lender and granted a security interest. Perhaps not

surprisingly for a company engaged in such misconduct, the debt came due on June 29, 2021, but Theia did not pay.

7. The SNPSA explicitly authorizes the appointment of a temporary receiver in the event that Theia defaults, and, particularly given the multiple and extensive defaults that have actually occurred, a receiver is urgently needed. FCS will be promptly making a motion to have one appointed, and, ultimately FCS will seek a judgment against Theia for the amounts due under the SNPSA, plus other relief as set forth below.

## JURISDICTION AND VENUE

8. The Court has personal jurisdiction over the parties because they consented to the Court's jurisdiction in the SNPSA. (*See* SNPSA § 16.)  The parties also consented to venue in this Court. (*Id.*)

9. The Court has subject matter jurisdiction over the dispute under 28 U.S.C. § 1332 because there is complete diversity of citizenship of the parties and because the amount in controversy exceeds $75,000, exclusive of interest and costs, as summarized below.

10. For purposes of diversity jurisdiction, FCS is a citizen of New York and New Jersey because the members of FCS are citizens of those states.

11. The defendants are all citizens of Delaware and Washington, D.C. (which is considered a "State" for purposes of diversity jurisdiction, *see* 28 U.S.C. § 1332(e)).

12. Specifically, both Theia Group and Theia Holdings (which is owned by Theia Group) are Delaware corporations with their principal place of business located at 1455 Pennsylvania Avenue, Washington, D.C. 20004. Hence, they are considered citizens of Delaware and Washington, D.C. Theia Aviation is a limited liability company, and, because its sole member is Theia Group, Theia Aviation is also a citizen of Delaware and Washington, D.C.

13. FCS seeks to recover over $289 million in this suit, which is well above the $75,000 threshold for diversity jurisdiction.

## FACTUAL BACKGROUND

### The Parties

14. FCS is an investment firm founded in 1998 and located in New York. FCS is affiliated with the SEC-registered investment advisory firm Brevet Capital Management, LLC.

15. Upon information and belief, Theia was formed in 2015 by Erlend Olson and Joseph Fargnoli. The company is named after the Greek goddess Theia, goddess of light.

### Theia's Business Plan

16. Theia historically has gathered images and other data of the Earth from aircraft. It owns two aircraft from which it currently performs work under contracts with agencies of a few governments.

17. Theia's ambition is to capture real-time imaging and other data of the Earth's entire surface. As noted, Olson and Fargnoli had experience with surface imaging via aircraft, and formed Theia with the plan to perform broader and more sophisticated imaging via satellites.

18. In 2016, Theia applied for a license from the FCC to create a network of satellites to image the Earth. In May 2019, the FCC granted the application. Specifically, Theia was authorized to build a network of 112 low-Earth orbit satellites. Importantly, the license is conditioned on Theia launching and operating 56 of the satellites by May 2025.

19. Theia is in the "pre-revenue" stage of its business. The satellites that are the heart of its business plan have not been built or launched.

**Theia's Secured Financing from FCS**

20. Like most start-up businesses, Theia has funded its operations with equity and loans. FCS was among Theia's early lenders, via certain promissory notes issued in October 2018. The loan documents have been amended and restated from time to time since then.

21. The operative loan document today is the SNPSA, dated June 29, 2020, along with its three amendments.

22. Under the SNPSA, FCS loaned cash to Theia in exchange for two promissory notes: a Series A-1 Secured Promissory Note in the amount of $100 million, maturing on December 29, 2020 (six months from closing), along with a Series A-2 Secured Promissory Note, also in the amount of $100 million, maturing on June 29, 2021 (one year from closing). The parties contemplated at the time that, with the highly valuable FCC license in hand, Theia would be able to begin to show progress in developing the anticipated network and thus find additional financing to retire the notes before their maturity.

23. The SNPSA contains various provisions intended to protect FCS's ability to be repaid. Most importantly, the SNPSA provides that FCS's loans be secured by collateral consisting of substantially all of Theia's assets. (*See* SNPSA § 8(a).) The collateral includes Theia Group's ownership of Theia Holdings (the entity that actually possesses the FCC license) and Theia Aviation (the entity owning the aircraft used in the Theia business). (*Id.*)

24. These security interests were absolutely critical to FCS's decision to enter the SNPSA and provide loans thereunder. The FCC license is by far Theia's most valuable asset, is critical to Theia's business plan, and the only asset worth anything near the amount loaned by FCS.

25. The SNPSA recognizes the importance of FCS being able to efficiently and swiftly monetize the FCC license, so that FCS's security interest would have practical meaning.

Specifically, FCS is "empowered to request the appointment of a receiver from any court of competent jurisdiction, and the "receiver shall be instructed to seek from the FCC and every other applicable Governmental Authority an involuntary transfer of control of any such FCC License Assets for the purpose of seeking a bona fide purchaser to whom control would ultimately be transferred." (*Id*.)

26. As further protection for FCS, the debt and other obligations under the SNPSA were guaranteed by two senior executives of Theia, Erlend Olson and John Gallagher, the majority shareholder of Theia.[1]

**Theia's Reporting Obligations and Covenant Against New Debt**

27. Theia's obligations under the SNPSA went beyond merely repaying the notes. Like most senior lenders, FCS wished to keep a watchful eye on the progress of its fledgling borrower. As is relevant here, Theia agreed to provide FCS with financial reporting, including:

(a) an unaudited consolidated balance sheet for each fiscal quarter within 45 days after the end of that fiscal quarter (*see* SNPSA § 6(e)(i));

(b) an audited consolidated balance sheet for each fiscal year no later than 90 days after the end of that fiscal year (*id*. § 6(e)(ii));

(c) an unaudited consolidated balance sheet for each calendar month no later than 15 after the end of that calendar month (*id*.);

---

[1] The cure period for the guarantors is arguably longer than the cure period for the Theia entities (60 days instead of 10). To avoid any argument that the guarantors are still within the cure period, FCS anticipates amending its complaint to add them as defendants when the longer period has passed.

(d)     a certificate from a corporate officer certifying, that as of the date of such financial statements, the representations and warranties were accurate and complete and that no Event of Default has occurred (*id*. § 6(e)(iii));

(e)     a monthly budget identifying, among other things, expected expenses and cash expenditures and a comparison to the most recent monthly budget (*id*. § 6(e)(v)).

28.     Theia also agreed not to incur or assume any indebtedness or liens besides that incurred under the SNPSA and related agreements without the consent of FCS. (*Id.* § 6(a).)

**Theia's Broken Promises and the Third Amendment**

29.     Before and after the execution of the SNPSA, Theia repeatedly told FCS that Theia would be obtaining significant revenue imminently that would enable Theia to retire FCS's debt. Yet in each case the promised transactions never occurred.

30.     In September 2019, Theia told FCS that Theia expected $2 billion in revenue from a sovereign nation that would contract to use Theia's technology, and potentially a separate $2 billion investment from an individual. In November 2019, Theia told FCS that Theia expected a $2 billion payment from a country within 30 days, and that it had expected to sign in the first quarter of 2021 a $5 billion commitment from another country.

31.     In March 2020, Theia told FCS that Theia had "definitive" commitments for $18.5 billion in revenue, including from several sovereign nations. Theia also told FCS that there was significant revenue from its aircraft business. Theia claimed there was a 95% probability it would receive billions in expected funds within 120 days.

32.     As a result of these representations, Theia sent the message that it was on the cusp of vast revenue that would retire FCS's debt. FCS entered into the SNPSA based on those representations—which proved to be false.

33. As the maturity date on the Series A-1 Note approached in December 2020, it was clear Theia was not going to be able to pay. But Theia made further promises about imminent revenue from expected contracts. Accordingly, in the Third Amendment, FCS agreed to push out the maturity date of the Series A-1 Note to align with the Series A-2 Note—so that both would mature on June 29, 2021. (The first two amendments involved relatively modest changes that are not necessary to describe this Complaint.)

34. In exchange, FCS insisted—and Theia agreed—to additional protections aimed at encouraging Theia management to get its house in order and putting Theia on a path to being able to attract refinancing and repay the debt. These protections were necessary in light of Theia's repeated broken promises and the need for serious restructuring steps to generate liquidity necessary for Theia to repay FCS. These protections, which induced FCS to enter the Third Amendment, included requiring that Theia:

(a) prepare by January 15, 2021, "a comprehensive financial proposal to improve [its] liquidity position in order to enable repayment of the Notes and other payment obligations owing by [Theia] (the 'Liquidity Plan')," in a "form and substance reasonably acceptable" to FCS. (Third Amendment § 3(b));

(b) engage a "Selected Advisor to advise it in developing the Liquidity Plan" and "provide financial advisory and support services to them as required to develop the Liquidity Plan" (*id.* §§ 3(c)(i)-(ii)); and

(c) "engage a chief restructuring officer ['CRO'] . . . whose appointment shall be subject to the reasonable consent of [FCS], with full authority to (i) take such actions in the name of, and otherwise on behalf of, the [Theia], as are required to comply with the other provisions of this Amendment, and (ii) implement the

> Liquidity Plan, or to otherwise raise capital for [Theia] in order to enable repayment of the Notes and the other payments." (*Id*. § 3(f).)

35. Finally, to assure FCS's ability to act quickly if Theia again failed to attract financing, the Third Amendment shortened the SNPSA's 30-day notice-and-cure period to 10 days, and further provided that the 10-day period would be "reduced by any time period during which [Theia] is aware of [the] failure or breach" at issue. (*Id*. § 2(c).)

**Theia's Defaults**

36. The SNPSA defines an Event of Default to include the failure to pay any of the debt when due, or failure to honor the covenants and terms of the SNPSA. (SNPSA § 7.1.)  Upon an Event of Default, following notice and a 30-day cure period (later shortened to 10 days or less in the Third Amendment, as discussed), the "Repayment Amount" (defined as all principal, interest, fees or other unpaid amounts) is immediately due, and FCS is "entitled to enforce its right to payment and to exercise all right and remedies" under the loan documents. (SNPSA §7(2).)

37. An Event of Default has occurred, most importantly, with respect to Theia's payment obligations. The note balances were due on June 29, 2021, and Theia did not pay a cent of the amount due. Theia was obviously aware of the June 29, 2021, payment deadlines, and more than 10 days have passed since its awareness of its own payment default. In an abundance of caution, FCS provided notice of the Event of Default on July 22, 2021 (which also included notice of Theia's failure to pay certain administrative fees).

38. As of July 22, 2021, the aggregate amount of outstanding principal, interest, fees, and expenses due and payable under Notes was $289,574,162.69. Additional interest and fees continue to accrue.

39. There have been numerous additional Events of Default, all of which have been properly noticed and hence provide independent grounds for FCS to pursue its full remedies. These additional Events of Default include the following:

40. First, Theia failed to develop a Liquidity Plan by January 15, 2021, as the Third Amendment requires. (Third Amendment § 3(b).) On January 26, 2021, FCS sent Theia a letter about the fact that the Liquidity Plan was overdue (among other overdue items). Instead of addressing the problem by drafting a legitimate Liquidity Plan, Theia prepared only a slide deck with a series of vague goals. It was neither comprehensive nor detailed, as the Third Amendment requires, and FCS informed Theia that this was inadequate. Theia still has not developed a Liquidity Plan "in form and substance reasonably acceptable to" FCS. (*Id.*)

41. Second, Theia failed to appoint a CRO by December 23, 2020, as the Third Amendment requires. (*Id.* § 3(f).)

42. Third, Theia failed to engage a Selected Advisor by January 31, 2021. (*Id.* § 3(c).) The Theia Parties have still not engaged a Selected Advisor.

43. Fourth, Theia is months behind on its financial reporting obligations. (*Id.* § 6(e).) Theia has not provided FCS with certified, audited financial records for the fiscal year 2020; balance sheets for Quarter 4 of 2020, November 2020, or January 2021; or monthly budgets for 2021. Theia repeatedly promised that it would catch up on its reporting, but has simply not done so, without providing any explanation.

44. Fifth, Theia has failed to pay administrative fees due under the SNPSA. (*See* SNPSA § 24(b).

45. Finally, Theia incurred unpermitted indebtedness. (*See* SNPSA § 6(a).) On information and belief, Theia entered into a Secured Note Purchase Agreement with Aithre

Capital Partners LLC ("Aithre") in December 2020 without FCS's consent. Theia also granted Aithre a lien without FCA's consent, in violation of the SNPNA. Theia did not inform FCS in advance that it would enter an agreement with Aithre, and FCS has no record of where the proceeds from these loans have been deposited. Under the SNPSA, whenever Theia "maintains or opens" a new account, the account must "be subject to a 'shifting control' deposit account control agreement," so that FCS's collateral is protected. (SNPSA § 8(e).) Theia did not do that with respect any new accounts associated with the loan proceeds.

46. On April 19, 2021, FCS delivered to Theia a Notice declaring an Event of Default for the following five defaults: (1) failure to develop a Liquidity Plan; (2) failure to appoint a CRO; (3) failure to engage a Selected Advisor; (4) failure to provide FCS with required financial documents; and (5) violation of the SNPSA's anti-indebtedness provision for the Aithre loan.

47. On July 22, 2021, FCS delivered to Theia a Notice declaring an Event of Default for the following two defaults: (6) failure to pay balance due under the Notes; and (7) failure to pay required administrative fees under the SNPSA.

48. Theia has not disputed that it is in default, nor has Theia cured its defaults.

**Additional Troubling Developments**

49. On June 25, 2021, Theia informed FCS that Theia would miss its payroll for that week. On information and belief, Theia has continued missing payroll since then.

50. On information and belief, Theia has recently been sued over its use of the "Theia" trademark in the United States District Court for the Eastern District of Pennsylvania, in a case captioned *Theia Technologies LLC v. Theia Group, Inc.*, Case No. 2:20-cv-00097-GEKP (filed Jan. 6, 2020).

51. In August 2021, Theia sent documents to FCS indicating that Theia would be doing business under the names "Thorian" and "Cypherian" going forward. On information and belief, Theia has incorporated new businesses with the names "Thorian" and "Cypherian."

**The Urgent Need for a Course Correction**

52. One can easily imagine why these rampant and extensive breaches would cause FCS great concern to a lender about its ability to be repaid, and about the team in charge at Theia. It has now been over seven months since the parties executed the Third Amendment with the hope of setting Theia on a path towards being able to repay its debts and, ultimately, towards profitability. Yet Theia has squandered the opportunity, choosing to thumb its nose at its obligations to FCS, and failing to repay what is clearly due.

53. Theia's actions have placed at risk the FCC license that is its most valuable asset. The license is meaningless unless the required portion of the satellite network can be built, launched and operational by the FCC's deadline in May 2025. Meeting that deadline will require years of work in advance, and time is of the essence.

54. It is clear that Theia is not up to the task of monetizing the FCC license, and so it is critically urgent that the license be sold to a business that can make the most of this critically valuable asset. Otherwise, the value will be lost, and FCS will be left holding worthless debt from Theia.

55. Time is of the essence. FCS will need to spend several months marketing the FCC license to get the best price. The FCC's own guidance states that approval of a significant transaction can take six months or longer. And any approved buyer will then need time to build and launch the satellite network within the FCC license approval deadline, a process expected to take years.

56. The parties anticipated that this unfortunate scenario might come to pass, and expressly provided in the SPNSA for a court-appointed temporary receiver to marshal Theia's assets, including the FCC license, for Theia's benefit. Both federal and New York law authorize temporary receivers, and appointing one in this case would not only carry out the clear intent of the loan documents, but would provide the best and most efficient opportunity for FCS to recover as much as possible of the outstand debt it is due.

## COUNT I
### Breach of Contract

57. FCS restates and incorporates all the foregoing paragraphs of the Complaint as if set forth fully herein.

58. The SNPSA (as amended) is a valid and binding contract among the parties.

59. As detailed above, Theia has breached the SPNSA (as amended) in numerous ways, including by nonpayment.

60. FCS has been damaged as a result, and is entitled to (among other things) the broad remedies set forth in the SPNSA, including its attorneys' fees and costs.

## COUNT II
### Appointment of a Temporary Receiver

61. FCS restates and incorporates all the foregoing paragraphs of the Complaint as if set forth fully herein.

62. Rule 66 authorizes the appointment of a receiver in federal courts in "accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. This provision recognizes that, notwithstanding the adoption of the Federal Rules in 1938, receiverships "should continue to be governed as they had been before." *Bicknell v. Lloyd-Smith*, 109 F.2d 527, 529 (2d Cir. 1940).

63. New York law similarly permits the appointment of a receiver "to administer, collect, improve, lease, repair or sell any real or personal property." N.Y. CPLR § 5228.

64. A contractual provision contemplating a receiver "strongly supports the appointment of a receiver," where there is a default. *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988). There is no need to show fraud. *U.S. Bank Nat. Ass'n v. Nesbitt Bellevue Property LLC*, 866 F. Supp. 2d 247, 250 (S.D.N.Y. 2012); *D.B. Zwirn Special v. Tama Braod., Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008).

65. The facts of this case urgently call out for the appointment of a temporary receiver, so as to protect FCS's collateral and to ensure that FCS's other rights are fully protected.

## PRAYER FOR RELIEF

WHEREFORE, FCS respectfully requests that the Court enter judgment in its favor and against Theia:

(a) awarding damages in an amount to be determined at trial, but in an amount no less than $289,574,162.69;

(b) authorizing FCS to fully pursue its remedies under the SNPSA (as amended), including by seizing and foreclosing upon any collateral;

(c) appointing a temporary receiver to (among other things) monetize the FCC license in favor of FCS;

(d) awarding Plaintiff interest, attorneys' fees, and costs; and

ordering any other relief as the Court may deem appropriate.

| | |
|---|---|
| Dated: Washington, D.C.<br>August 19, 2021 | Respectfully Submitted,<br><br>STEPTOE & JOHNSON LLP<br><br>*/s/ Filiberto Agusti* |
| Charles Michael<br>1114 Avenue of the Americas<br>New York, NY<br>(212) 506-3900<br>cmichael@steptoe.com | Filiberto Agusti<br>Joshua Taylor*<br>Mark Murphy*<br>1330 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>(202) 429-3000<br>fagusti@steptoe.com<br>jtaylor@steptoe.com<br>mmurphy@steptoe.com<br><br>**pro hac vice* application forthcoming |

*Counsel for Plaintiff FCS Advisors, LLC*