## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>Plaintiff,<br><br>—*against*—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN";<br><br>THEIA AVIATION, LLC; and<br><br>THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>Defendants. | 21 Civ. 6995 (KPC) |

### REPLY DECLARATION OF MANUEL COLON

1.      I am Vice President of FCS Advisors, LLC d/b/a Brevet Capital Advisors ("Brevet"), an SEC-registered investment advisory firm.

2.      I submit this reply declaration in further support of Brevet's application for appointment of a temporary receiver in the above-captioned matter to oversee the defendants, Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, "Theia").

3.      Except where indicated otherwise, I have personal knowledge of the facts contained in this declaration, or am relying on the business records of Brevet. If called as a witness, I could and would testify competently to such facts under oath. For statements made upon information and belief, I believe them to be true. The exhibits to this declaration are true copies of the originals.

**Theia's Budget**

4.      I understand that Theia argued that it was "forced" to agree with Brevet to a budget in which significant funds were to be spent on aircraft instead of satellites. That is not accurate.

5.      In June 2020, A. Jason Gomez of Theia responded to one of our diligence
questionnaires with Theia's own budget for use of the desired $250 million facility.  The
response indicated that the majority of the funds remaining after the prior loan payoff were to be
used to purchase aircraft. (*See* Ex. A, at 3 (Question 14).)

6.      The budget provided by Mr. Gomez was consistent with a written presentation
dated April 2020 that Theia sent to Brevet, which likewise made clear that it sought to use the
majority of the loan proceeds to fund aircraft purchases. An excerpt of the presentation is below:

> **Section 2: THEIA's Ask**
>
> THEIA is requesting a minimum of $250M facility, $200M of which would be available immediately to acquire and equip aircraft, with said facility expandable by mutual agreement up to $500M.

The same presentation later touted the aircraft business as a reason Brevet should extend more
credit. According to the presentation, Theia expected to "throw off significant cash through its
commercial activities and aircraft programs."

7.      This presentation repeats a representation from Theia referenced in my initial
declaration, which claimed that Theia had $18.5 billion in "definitive" contract commitments:

> **1a.    Overview**
>
> Prior to the recent global shut-down THEIA had completed signing $18.5B worth of up-front-pre-paid, definitive contracts with credit-worthy counterparties in THEIA's Master Partner Program (MPP). This was the result of nearly 18 months of heavy hard travel throughout the globe

8.      I have not included the entire presentation because Theia has labeled it
"CONFIDENTIAL AND PROPRIETARY" but it can be provided upon the Court's request.

**Theia's Failure to Hire a CRO**

9.      In December 2020, Theia requested that Brevet extend the maturity date of the
Series A-1 Note, which was scheduled to mature on December 29, 2020, by six months and

sought other amendments to the Secured Note Purchase and Security Agreement ("SNPSA"). Brevet and Theia discussed Theia's request and ultimately entered into the Third Amendment to Amended and Restated Secured Note Purchase and Security Agreement and Related Transaction Documents (the "Third Amendment"). These documents were attached as Exhibits 2 and 5, respectively, to my first declaration in this case, dated August 18, 2021.

10.    Before agreeing to amend the SNPSA and extend the maturity date, Brevet wanted to make sure that Theia would be able to satisfy its obligations by the extended maturity date of June 29, 2021.  A core part of the agreement was that Theia would hire a chief restructuring officer ("CRO") who would have the full authority to act for Theia to implement a plan to obtain the liquidity necessary to pay Brevet in full on or before June 29, 2021.  Brevet would not have agreed to the Third Amendment without this and other important obligations aimed at putting the company on a path to generating liquidity. In discussing the obligation that Theia retain a CRO, Theia and Brevet agreed that Theia would retain Mr. Robert Cardillo as the CRO. (Ex. B.)

11.    However, shortly thereafter, Theia informed Brevet that Mr. Cardillo was no longer willing to be the CRO. Theia proposed to have Mr. Erlend Olson, who was Theia's CEO and President of Theia Aircraft Group, act as the CRO instead.  Below is an excerpt from the written memorandum Theia sent Brevet on this issue:

> TGI: TGI performed this activity timely. Unfortunately on 25 JAN 2021, Mr. Cardillo informed the company that he was being reviewed for participation in the current USG administration in a high level position and was obligated to take a leave of absence in order to avoid any appearance of conflict or impropriety. We do not have a replacement yet for this position, so meanwhile Erlend Olson is "acting CRO" taking on all the responsibilities of the position. Please note that Mr. Olson has been appointed by the Board of Directors to the position of CEO of Theia Group Inc., as well as by proxy each and every one of its subsidiaries, including President of Theia Aircraft Group (see below). We note that Mr. Olson has already taken much more dramatic action to help TGI become healthy and able to comply with its obligations to Brevet/FCS than was remotely contemplated by the CRO position. FCS must take into account that compliance with the amendment in some cases requires TGI to obtain the consent of independent third parties, over which TGI has no control, to perform tasks, enter into agreements and agree to conduct themselves according to a schedule, which the third party may not believe is reasonable, or which all third parties whom TGI contacts with best efforts refuse to undertake.

12.     Brevet did not agree to Mr. Olson, or any insider, acting as CRO.  Theia continued to drag its feet on engaging a proper CRO.

13.     In March 2021, Theia, having still failed to engage a proper CRO, proposed to retain Mr. Tom Reiter as the CRO.  However, Theia's proposal was that Mr. Reiter would simply keep Brevet informed of the progress of Theia's undertakings with Barclays, and, if necessary, the building of liquidation plan. (Ex. C, at 2.) A limited observer was not in accordance with the CRO that Brevet has negotiated for.  Brevet objected, in March and again in April, to a limited observer and insisted that the CRO be granted the proper authority. (Exs. D, E.)

14.     Theia still has not retained a proper CRO with the authority required under the Third Amendment.

**Theia's Failure to Install an Independent Director**

15.     Another important requirement of the Third Amendment was for Theia to engage an independent board director by December 16, 2020.  Brevet and Theia had agreed that Mr. Thomas Ridge would be that independent director. Mr. Ridge is the former Governor of Pennsylvania and a former Head of Homeland Security.

16.     Over the next few months, Theia would repeatedly assure Brevet that Mr. Ridge's appointment was imminent, in many cases assuring Brevet that he would be appointed later that week.  Finally, in March 21, Theia confirmed that Mr. Ridge had finally been installed as a board member.  (Ex. F.)  However, we have no indication that Mr. Ridge ever joined the board.

**Theia's Revolving Management and Advisors**

17.     Theia has also shuffled its management considerably in the past year.  In December 2020, Brevet was informed that Theia retained Mr. Steven Buscher as the new CFO (replacing Paul Carroll), as part of its efforts to turn things around and satisfy its obligations to Brevet.  In

June 2021, Theia informed Brevet that John Gallagher, Theia's controlling shareholder, had fired Mr. Buscher.

18.    Mr. Erlend Olson was the CEO of Theia, but, in May 2021, Mr. Gallagher replaced him with Mr. Stephen O'Neill, again in the hopes of turning Theia around.  I recently learned that Mr. O'Neill is no longer the CEO and no longer affiliated with Theia.

19.    Similarly, Theia has changed its counsel and professionals a number of times in the past year.  In early 2021, as Theia and Brevet were discussing plans to work out the debt, Theia was represented by Eugene R. Sullivan II.  In May 2021, Theia reported that it retained Arnold & Porter as counsel, and a restructuring firm called Winter Harbor.

20.    By June 2021, Theia parted ways with both Arnold & Porter and Winter Harbor. Thea instead retained the Proskauer Rose law firm.  Just a few months later, Proskauer was replaced by Fried Frank, Theia's current counsel.

**Brevet's Consulting Payments to Leeds Holdings**

21.    I understand Theia has alleged that Robert Leeds was acting as an agent of Brevet in the months following the execution of the SNSPA.  Mr. Leeds was a consultant to Brevet during the negotiation of the transaction but, after the transaction was closed, became a consultant for Theia.

22.    I attach as Exhibit G a screenshot from Brevet's accounting systems showing that an affiliate of Brevet paid consulting fees to Leeds Holdings, LLC in 2019 and 2020, but that final payment in 2020 was made on July 10, 2020, pertaining to consulting fees for June 2020. The only other payments reflected in our accounting systems to companies affiliated with Mr. Leeds during this timeframe were payments to two of his affiliated entities as a return on funds that those companies loaned to Theia alongside Brevet.  Those payments are reflected on the second page of Exhibit G.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      September 21, 2021

_____
Manuel Colon