Charles Michael
212 378 7604
cmichael@steptoe.com



1114 Avenue of the Americas
New York, NY 10036
212 506 3900 main
www.steptoe.com

November 5, 2021

**By ECF**

Hon. P. Kevin Castel
U.S. District Court, Southern District of New York
500 Pearl St.
New York, New York 10007

**Re:**   *FCS Advisors, LLC v. Theia Group, Inc., et al.*, 21 Civ. 6995 (S.D.N.Y.)

Dear Judge Castel:

On behalf of plaintiff FCS Advisors, LLC ("Brevet"), we write to oppose yesterday's letter from the defendants (collectively, "Theia") suggesting certain modifications to Brevet's proposed form of order appointing Michael Fuqua as receiver to oversee Theia.

Subject to limited exceptions noted below, we respectfully request that the Court enter Brevet's proposed form of order as drafted, and reject Theia's proposed changes, which seek to improperly limit the authority of the receiver appointed in the Court's October 29, 2021 Opinion.

**Divesting Incumbent Management of Control**

Brevet's proposed form of order would make clear that incumbent management is divested of control of Theia, but Theia proposes to delete that language. (ECF 113-2, at 3 (¶ 1 and stricken-out ¶ 2).) Theia supplies no explanation for the suggested change except to suggest that Brevet's language "departs from this Court's Opinion." (ECF 113, at 1.) We respectfully disagree. The divestment of incumbent management's control is inherent in the receiver's appointment. By the very nature of a receiver's role, he or she "supplants officers and directors of the corporation" so that the "the corporation's management loses its power to run its affairs." 65 Am. Jur. 2d Receivers § 75; *see also*, *e.g.*, *CFTC v. FITC, Inc.*, 52 B.R. 935, 937 (N.D. Cal. 1985) ("Once a court appoints a receiver, the management loses the power to run the corporation's affairs. The receiver obtains all the corporation's power and assets.").

As a practical matter, Theia cannot be controlled by the receiver and, simultaneously, by incumbent management. It is one or the other. The Court's Opinion and Order last week was clear that that the future course for Theia "should not be charted by Theia's present management" (ECF 105, at 4-5), and the Order set forth in its Appendix the authority of the receiver to "[a]ssume full control of Defendants and any affiliates or subsidiaries . . . (*id*. at Appendix A ¶ 2)"—which necessarily means that the incumbent team is not in control.

Hon. P. Kevin Castel
November 5, 2021
Page 2



      We respectfully submit that Brevet's proposed language is helpful to avoid any possible ambiguity about who should be making decisions for Theia. Indeed, Theia's contrary reading of what to Brevet seems clear from the Court's Order underscores the need for clarity.

**Filing Bankruptcy**

      Theia asserts that the Order must allow for a future bankruptcy, as the Court has indicated. But, contrary to the arguments in Theia's letter, Brevet's proposed order does not prevent the filing of a bankruptcy. It simply recognizes the transfer of authority to make those types of decisions from current management to the receiver. The receiver, as the party in control and answerable to this Court, retains the authority to commence a bankruptcy proceeding. In contrast, Theia's proposed order would authorize "any other party"—*i.e.*, Theia's management—to place Theia into bankruptcy. (ECF 113-2, at 5 (¶ 7).) As discussed, Theia's management should lose its power to direct the affairs of Theia, including with respect to the question of whether a bankruptcy filing is in the best interests of the company and its creditor body. That is exactly what happened, for example, in *In re Sino Clean Energy, Inc.*, 901 F.3d 1139 (9th Cir. 2018). There, the Ninth Circuit upheld the dismissal of a bankruptcy petition purportedly authorized by a company's board of directors because, at the time of the petition, a receiver had been appointed to take control of the company. *Id*.

      Theia appears to believe that its proposed revision is consistent with remarks Your Honor made at the hearing (ECF 113, at 2), but Theia has selectively and misleadingly quoted those remarks. Your Honor stated the following (the second sentence of which Theia omitted from its letter): "[I]t would seem to me that the appointment of a receiver would not preclude the filing of a bankruptcy petition. In fact, *the receiver might conclude* that that's the best way to go . . . ." (Hg. Tr., at 29 (emphasis added).) The Court's Opinion and Order reflects this same point, stating that the "appointment of a receiver does not foreclose a decision *by the receiver* to file for bankruptcy protection." (ECF 105, at 4 (emphasis added).)

      Theia's proposal would invite great mischief. At any critical juncture during the receiver's work for this Court, Theia's ousted management could engender massive delay by filing a bankruptcy petition at a time that is self-serving rather than when the receiver deems it advantageous (or not). It would be most unfortunate to give Thea management the power to inflict even further delay in the long-delayed and time-sensitive disposition of assets.

      The Court should reject Theia's inserted language about "any other party" filing for bankruptcy.

**The Receiver's Ability to Hire and Compensate Professionals**

      Theia is proposing to strike language authorizing the receiver to hire and compensate professionals (ECF 113-2, at 2-3), but, again, provides no explanation for the change except the suggestion that this language "departs from this Court's Opinion." (ECF 113, at 1.) We respectfully disagree. The Appendix in the Court's Opinion authorizes the receiver to "[c]hoose,

engage and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary." (ECF 105 at Appendix A ¶ 10.) The language in dispute merely makes clear the receiver can compensate those professionals.

This sort of language is standard in receivership orders. *See*, *e.g*., Order, *Ross v. Thomas*, 09-cv-5631 (S.D.N.Y. Dec. 21, 2010), ECF 101 at 7 (authorizing receiver to "engage and employ persons, including accountants, attorneys, investigators and experts, to assist in the carrying out of her duties and responsibilities, such individuals to be reimbursed for necessary expenses and compensated at an hourly rate") (copy attached as Ex. A); Order, *SEC v. Starr*, 10-cv-4270 (S.D.N.Y. June 7, 2010), ECF 13 at 3 (authorizing receiver to "[e]ngage and employ persons, in her discretion, to assist in carrying out her duties and responsibilities hereunder, including accountants, attorneys, and experts") (copy attached as Ex. B); *see also* Ralph Ewing Clark, *Treatise on the Law and Practice of Receivers*, at 646 §§ 386-87 (3d ed. 1992) (noting that receivers commonly must "employ an auctioneer to sell" property or "employ an expert accountant or other suitable" professionals); *accord* 11 U.S.C. § 327(a) (authoring a trustee in bankruptcy to "employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons").

As a practical matter, the receiver will need to hire, for example, counsel (including, for example, counsel to deal with the FCC approval process), an investment bank to market the underlying assets, and possibly a valuation firm to assist in assessing any purchase offers.

The Court should retain Brevet's proposed language authorizing the receiver to both hire and compensate these necessary professionals.

**The Receiver's Success Fee**

Theia proposes that the receiver's 1% success fee be triggered only on sale amounts for the FCC Assets in excess of $275 million (instead of $1 million), on the theory that Theia has already "presented Brevet with a potential buyer who is willing to purchase the FCC License Assets for $275 million." (ECF 113, at 1.) But the immediate flaw with Theia's position is that there is *no evidence* of the bona fides of the suddenly appearing alleged buyer or the alleged transaction. Theia cannot expect the receiver to anchor his compensation to a transaction that may or may not be real. If the transaction turns out to be legitimate, and the receiver determines it would be best to pursue it, he has already agreed to accept *no success fee* on that transaction. (ECF 108.)

The 1% success fee is more than reasonable and well in line with precedent. Receivers (or their agents) commonly receive a percentage of the assets sold in much higher amounts, such as 7%, *SEC v. Amerindo Inv. Advisors Inc*., No. 05-cv-5231 (RJS), 2016 WL 10826483, at *2 (S.D.N.Y. Apr. 26, 2016) (fee for investment bank hired by receiver) or 10%, *S.A. Fanter Corp., Ltd. v. Imperial Pacific Int'l (CNMI), LLC*., No. 1:20-cv-00003, 2021 WL 4952516, at *8 (D. N. Mar. I. Oct. 26, 2021). New York law authorizes receivers to earn up to 5% of "the sums

Hon. P. Kevin Castel
November 5, 2021
Page 4

received and disbursed by him," N.Y. CPLR § 8004(a), and a bankruptcy trustee is authorized to be paid up to 3% of amounts over $1 million "disbursed or turned over . . . to parties in interest." 11 U.S.C. § 326(a). Theia has cited no authority to suggest that the proposed 1% fee is excessive.

More fundamentally, Theia overlooks that the receiver's engagement letter states that the receiver will be paid *no* success fee "if a third party is engaged to sell the assets." (ECF 106-1, at 6.) The receiver is expected to select and retain a third-party investment bank shortly after entry of this Court's order, and so, in all likelihood, the receiver will not earn a success fee at all.

**Timely Compliance**

Theia has inexplicably deleted language requiring that it comply with the Order "immediately," and that its agents cooperate with the receiver in a "timely" fashion. (ECF 113-2, at 3.) There is no good reason to license Theia to drag its feet.

**Cap on Borrowings**

Brevet has no objection to Theia's proposal that that receiver seek Court approval for borrowings in excess of $5 million.

**Reporting to the Court**

Brevet takes no position on Theia's proposal that the receiver report to the Court every 45 days. Whatever frequency of reporting the Court prefers is acceptable to Brevet.

**Litigation Stay**

Brevet supports the suggestion of Aithre Capital Partners, LLC that the Order should include a litigation stay. (ECF 112.)[1]

\* \* \*

As we have emphasized from the start, the largest source of potential value (the FCC license and associated assets) needs to be monetized quickly. This position has now been echoed by Theia insisting that the offer they state is on the table must be pursued immediately. The receiver stands ready to begin this important and urgent work. We respectfully urge the Court to enter Brevet's proposed Order formally appointing Mr. Fuqua without delay.

---

[1] There is seemingly a typographical error in Theia's proposal that would allow for termination of the receivership upon the mere "application" for that relief. (ECF 113-2, at 5 (¶ 8).) While parties are of course free to move to terminate the receivership, the receivership should not terminate unless and until the Court actually grants that relief.

Hon. P. Kevin Castel
November 5, 2021
Page 5

Steptoe

          Respectfully,

          */s/ Charles Michael*

          Charles Michael

cc:    All Counsel of Record (via ECF)