UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                  Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                  Defendants.

21 Civ. 6995 (PKC)

**DECLARATION OF MICHAEL FUQUA, AS RECEIVER, IN SUPPORT OF MOTION OF RECEIVER FOR AN ORDER REJECTING CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES EFFECTIVE IMMEDIATELY PRIOR TO ENTRY OF THE RECEIVERSHIP ORDER**

I, Michael Fuqua, hereby declare as follows:

1. I am over eighteen years of age and am competent to testify to the matters set forth in this Declaration.

2. Pursuant to the *Order Appointing Michael Fuqua as Receiver* [Doc. No. 117], dated November 8, 2021, the United States District Court for the Southern District of New York (this "Court") appointed me as the receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities") in the above-captioned case.

3. I submit this Declaration in Support of the *Motion of Receiver for an Order Rejecting Certain Executory Contracts and Unexpired Leases Effective Immediately Prior to Entry of the Receivership Order* (the "Motion to Reject").

4. I have reviewed the contracts and leases set forth on Exhibit A to this Declaration. Based upon my review of those documents and my perceived needs for services necessary to

maximize the receivership assets, I have determined (in my capacity as Receiver) that such contracts and leases are burdensome and/or unnecessary to, or inconsistent with, my goal of maximizing the value of the receivership assets. Therefore, I seek to reject (to the extent executory or unexpired) those contracts and leases, which are identified on Exhibit A.

**A.      Leases to be Rejected**

5.      TGI, as lessee, and Willard Associates, as lessor, entered into an *Office Lease*, dated as of June 14, 2018 (the "WDC Lease"), for real property and improvements thereon, including 16,265 square feet of real property on the 6th and 8th Floors of the office building situated at 1455 Pennsylvania Avenue, NW in Washington, D.C. WDC Lease, ¶ 1. The current base monthly rent is approximately $110,020.08, which increases to $127,592.57 during year ten of the (eleven-year) WDC Lease. WDC Lease, ¶ 4.

6.      TGI, as lessee, and Bulbul Albuquerque LLC ("Bulbul"), as lessor, entered into a *Lease*, dated as of October 16, 2020 (the "New Mexico Lease #1"), for real property and improvements thereon, including 72,784 rentable square feet of real property located at 10800 Gibson Boulevard SE in Albuquerque, New Mexico. New Mexico Lease #1, Basic Lease Provisions, ¶¶ 6, 8. The initial base monthly rent was $1,128,152 ($15.50 per square foot), which increases 2.5% per annum during the 123 month term of the New Mexico Lease #1. New Mexico Lease #1, Basic Lease Provisions, ¶ 5. TGI and Bulbul entered into a *Termination of Lease Agreement*, dated as of October 25, 2021, pursuant to which TGI surrendered its two million dollar ($2,000,000.00) security deposit to Bulbul, and the lease was terminated effective as of November 30, 2021 (post-receivership). *Termination of Lease Agreement*, ¶¶ 1, 3.

7. TGI, as lessee, and Eu-Ray Investments, LLC ("Eu-Ray"), as lessor, entered into a *Lease*, dated as of October 21, 2020 (the "New Mexico Lease #2"), for real property and improvements thereon, including 103,893 gross square feet of real property located at 1300 Eubank SE and 10421 Development Road SE in Albuquerque, New Mexico. New Mexico Lease #2, ¶¶ 2-3. The current base monthly rent is $129,866.25, which increases to $166,142.22 during the 146-month term of the New Mexico Lease #2. New Mexico Lease #2, ¶ 5. By letter dated June 30, 2021, Eu-Ray terminated TGI's right of possession of the leasehold property.

8. TGI, as lessee, and Palazzo Verdi, LLC, as lessor, entered into an *Office Lease*, dated as of September 29, 2020 (the "Colorado Lease"), for real property and improvements thereon, including Suite 1200 on Floor 12 of the Palazzo Verdi Building in Greenwood Village, Colorado. *See* Colorado Lease, Part 1, Basic Term Sheet, Premises. The current base monthly rent is $16,686.50, which increases to $67,441.27 during the 90-month term of the Colorado Lease. *See* Colorado Lease, Part 1, Basic Term Sheet, Base Rent.

9. TGI, as lessee, and the City of Statesville, North Carolina, as lessor, entered in an *Aircraft Hangar Agreement and Lease*, dated as of July 1, 2020 (the "Hangar Lease" and collectively with the WDC Lease, the New Mexico Lease #1, the New Mexico Lease #2, and the Colorado Lease, the "Leases"), for certain real property consisting of 1.581 acres, including an aircraft storage hangar with connected office and maintenance premises, and associated aircraft parking apron and fuel storage facilities, at the Statesville Regional Airport. *See* Hangar Lease, §§ 1.1-.2. The initial annual rent was $186,503.73, as adjusted annually thereafter by the Consumer Price Index. *See* Hangar Lease, § 3.1-.2. The Hangar Lease terminates on January 31, 2025. Hangar Lease, § 2.1.

10.     The Receivership Entities are no longer operating from or using the leasehold premises and do not need to continue leasing the subject real properties.  Accordingly, the Leases are burdensome to the Receivership Entities.

**B.    Investment Banking and Other Financial Advisory Agreements to be Rejected**

11.     With respect to the investment banking services agreements, they would restrict the Receiver's ability to retain investment bankers chosen by the Receiver and would impose economic terms and conditions to which the Receiver has not agreed.  Moreover, multiple investment banking agreements contain potentially conflicting exclusivity provisions and, at a minimum, would require payment of multiple investment banking fees on the same transaction.

12.     The April 20, 2021 letter agreement (the "GHP Agreement") by and between the Receivership Entities and GH Partners, LLC ("GH Partners") and OCP Capital, LLC provides for the retention of GH Partners, as advisor, and OCP Capital, LLC, as placement agent, with respect to potential merger and acquisition transactions, including financing or the sale of the Receivership Entities or Cypherian Corp. or a debt restructuring.  *See* GHP Agreement, ¶¶ A-B.  The GHP Agreement generally provides, among other things, for a fee of up to 2.5% of any financing and a fee of 1.0% of any transaction up to $2 billion (plus additional compensation for consideration above $2 billion).  *See* GHP Agreement, ¶ 2(B)(i)-(ii).  The term of the GHP Agreement is twelve (12)months.  GHP Agreement, ¶ 7.

13.     Pursuant to an April 21, 2021 letter agreement (the "Barclays Agreement") by and between TGI and Barclays, TGI hereby engages Barclays on an exclusive basis for the purpose of providing M&A financial advisory services and capital markets advisory services to TGI.  As the

terms of the Barclays Agreement are confidential pursuant to paragraph 11 of the Barclays Agreement, I do not further address the terms of the Barclays in this Declaration.[1]

14.   The *Engagement and Advisory Agreement* dated July 11, 2021 (the "ACI Agreement") by and between the Receivership Entities and Aaron Capital Investment Banking ("ACI") provides for ACI's retention on a non-exclusive basis to, among other things, (i) assist the Receivership Entities with formulating a strategy and timetable for a proposed recapitalization transaction, (ii) identify potential investors, and (iii) assist in the negotiation of a proposed restructuring. *See* ACI Agreement, ¶ 1.1.1-.3 and 2.1.3. The ACI Agreement provides for a $30,000 advisory fee and a transaction success fee of 2% – 5% on equity or debt investments. ACI Agreement, ¶ 2.1.1-.2. The ACI Agreement also provides for a one percent (1%) breakup fee in the event the Receivership Entities close with a buyer other than one sourced by ACI. *See* ACI Agreement, ¶ 2.5. The compensation provisions remain effective even after termination of the ACI Agreement, ¶¶ 2.2, 3. Upon the signing of a letter of intent or a term sheet, the ACI engagement becomes exclusive. ACI Agreement, ¶ 2.1.3.

15.   The *Financial Advisory, Litigation Financing and Consulting Agreement*, dated as of August 27, 2021 (the "TGC Agreement" and collectively with the GHP Agreement, the Barclays Agreement, and the ACI Agreement, the "Advisory Agreements"), between the Receivership Entities and TG Capital Services LLC ("TG Capital"), a Galactic Ventures, LLC affiliate, provides that the Receivership Entities retained TG Capital on an "exclusive" basis (other than mutually agreed upon existing and future needs outside of TG Capital's expertise) during the term specified to render consulting advice to the Receivership Entities "relating to business, financial, litigation, and similar and related matters" for a three-year period. TGC Agreement,

---

[1] Barclays has advised me that it is not interested in being considered as investment banker or financial advisory firm for the Receivership Entities.

¶¶ 1-2. In exchange for its services, the TGC Agreement provides, upon execution thereof, that TG Capital would receive 35% of the issued and outstanding capital stock in the Receivership Entities. TGC Agreement, ¶ 2. In consideration of TGC's litigation services as litigation funder, TGC would receive 50% of the difference between the sum demanded by FCS Advisors, LLC and the sum actually paid to FCS Advisors, LLC. TGC Agreement, ¶ 3.

16. I seek to interview and retain (pursuant to a separate motion to be filed with this Court) an investment banker or other financial advisory firm (which may be one of the parties to the Advisory Agreements) on terms and conditions acceptable to me and in the best interests of the creditors and other constituents of the Receivership Entities. In addition, I seek to retain such banker or other advisor with significant experience in the sale of Federal Communications Commission licenses or similar assets. The Advisory Agreements are overlapping, duplicative (with respect to information sharing, negotiation, and fees and expenses), and otherwise burdensome and unnecessary to my efforts to maximize the value of the Receivership Entities.

### C. Employment, Consulting and Other Agreements to be Rejected

17. To date, based on my review of the Receivership Entities' books and records, I have located written employment, consulting, or other contracts, or references to such contracts, that are listed in Exhibit A.[2] Employees or other individuals or entities may have other written or oral employment, consulting, or other contracts with one or more of the Receivership Entities.

18. I seek to reject (to the extent executory) all written or oral employment, consulting, or other contracts with one or more of the Receivership Entities and the counterparties listed on Exhibit A to this Declaration because the Receivership Entities are no longer operating and do not

---

[2] I received a letter dated November 30, 2021 from Joseph D. Fargnoli, Chief Technology Officer of TGI, purportedly terminating his employment agreement with TGI, effective immediately, and demanding payment of a $720,000 severance payment, along with $300,000 in base salary for the months of July through November 2021, and over $300,000 with respect to benefits and accrued vacation.

need the full-time services of employees or the broad array of services provided by independent contractors or other consultants. To the extent I require such services, I will arrange for the provision of those services directly with any person or entity listed on Exhibit A.

19. Accordingly, I will instruct my counsel to serve a copy of the Motion to Reject and this Declaration upon all known counterparties to the contracts listed in Exhibit A.

### D. Reservation of Rights

20. I directed counsel to file the Motion to Reject to provide counterparties to contracts and leases with one or more of the Receivership Entities that I have already identified for rejection at this early stage of the receivership. The fact that an executory contract or unexpired lease is not included in Exhibit A does not mean that I intend to assume any such contract or lease. To the extent that I seek to assume an executory contract or unexpired lease, I will file a motion seeking Court approval of the assumption of such contract or lease. Therefore, no contract or lease counterparty should assume that its contract or lease is, or will be, assumed because it is not specifically identified or listed in Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: December 10, 2021

By: _____
Michael Fuqua, as Receiver