UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>Plaintiff,<br><br>—against—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>Defendants. | 21 Civ. 6995 (PKC) |

## FIRST INTERIM STATUS REPORT OF RECEIVER
### (for the Period from November 8, 2021 Through December 22, 2021)

Kurt F. Gwynne (No. 5605206)
Christopher A. Lynch (No. 4243655)
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
E-mail:  kgwynne@reedsmith.com
calynch@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 778-7500
Facsimile:   (302) 778-7575
E-mail:  jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as Receiver of*
*Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

Michael Fuqua, Court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), submits this Status Report (the "Report") in accordance with the Order of this Court entered on November 8, 2021 (the "Receivership Order"), and for the purpose of reporting the status of the Receiver's work and findings to date (the "Investigation"). The facts presented in this Report are preliminary and may be amended and changed as the Investigation continues. This Report includes the preliminary assessment of the Receiver's counsel as well as the consultants and advisers retained by the Receiver's counsel (the "Receivership Team").

## I.    INTRODUCTION

The Receivership Entities were founded in 2015 and applied for a Federal Communications Commission ("FCC") license in November 2016.[1]   On May 9, 2019, the FCC granted the Receivership Entities a license to construct, launch, and operate a non-geostationary-satellite orbit ("NGSO") system.  The license contemplated that the Receivership Entities would construct a constellation of 112 NGSO satellites and eight (8) on-orbit spare satellites (airplanes) to conduct imaging of the entire earth's surface.[2]   The Receiver understands from the pleadings filed with the Court that one of the conditions of the FCC license is that the Receivership Entities must have launched 56 satellites by May 2025.

Based on our analysis of the books and records to date, it appears that the Receivership Entities were significantly under-capitalized and intended to rely on a revenue model to fund the construction of the satellite constellation.  Our analysis shows that there is $450,000 of cash

---

[1] See Declaration of Reid Gorman, filed on September 9, 2021 [ECF No. 45], ¶10.

[2] Memorandum Opinion, Order and Authorization, IBFS file no. SAT No. SAT-LOA-2016115-00121 and SAT-AMD-20170301-00029; Call sign S2986.

contributed as equity capital and $262.9 million of cash from convertible debt.  The Receivership Team has not yet identified any cash equity contributions from senior management.

The revenue model or Master Partner Program ("MPP") was structured to provide hundreds of millions of dollars from foreign governments, which funds would be used for the construction of the satellite constellation.  Subsequent to completion of the satellite constellation, foreign governments would then pay the Receivership Entities billions of dollars up front for access in perpetuity to the data collected by the satellites.  There were also provisions for training and construction of data centers to be included in the fee.

In an internal fundraising document, management represented that it had several MPP's signed or in negotiations prior to the COVID-19 pandemic, but they were not finalized because management could not complete the negotiations in a virtual environment due to the complexities involved.

## II.      SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS TO DATE

### A.      Retention of Professionals

The Receivership Order provides that the Receiver may retain professionals to assist him in carrying out his duties and responsibilities on terms that the Receiver determines to be reasonable.  Consistent with that authority, the Receiver has retained the law firm of Reed Smith LLP ("Reed Smith") as his principal legal counsel in the matter.  Kurt Gwynne, Esquire, a partner at Reed Smith and the Global Leader of the firm's Restructuring & Insolvency Group Practice, leads the engagement for Reed Smith.  The Receiver also has retained (a) Akin Gump Strauss Hauer & Feld LLP to continue its work with the FCC on behalf of the Receivership Entities and (b) Frank Bonnino, Esquire, to continue his intellectual property work on behalf of the Receivership Entities.

The Receiver has hired GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services as his financial advisor.

As the Receivership Order also authorizes the Receiver to seek a bona fide purchaser of the Receivership Entities' FCC license and other assets, the Receiver has interviewed four (4) potential investment bankers with the experience and capacity to assist in the sale of the aforementioned assets.  Following a competitive process, the Receiver is continuing negotiations with two (2) of the investment banking firms with the expectation that the Receiver will reach a satisfactory agreement with one of the firms to serve as the Receiver's investment banker.  The Receiver anticipates filing in the near future a motion to approve the terms of his retention of an investment banker.

### B.      Protecting Receivership Estate Assets

#### 1.      *Notice of Receivership*

Upon his appointment, pursuant to 28 U.S.C. § 754, the Receiver filed *Notices of Receivership* in each of the federal District Courts in which property of the Receivership Entities (based on information to date) is or may be located.  The Receiver filed such notices in the following federal District Courts:  District of Columbia, District of New Mexico, Eastern District of Pennsylvania, District of Colorado; District of Delaware, Eastern District of Wisconsin, and Central District of California.

#### 2.      *Notice of Receivership Stay*

The Receivership Order provides for a 120-day stay of, *inter alia*, actions, proceedings, and lawsuits.  Receivership Order, ¶ 4.  Following a review of the Receivership Entities' records and a nationwide search of pending litigations (or arbitrations) in state and federal courts, the Receiver filed *Notices of Receivership Stay* in pending litigation matters and

correspondence/meeting with counsel to adversaries in such actions regarding receivership

process.  Specifically, *Notices of Receivership Stay* have been filed in the following matters:

| Caption | Court | Case No. |
|---|---|---|
| Robert Chinn v. Theia Group, Inc. | U.S. District Court for the District of Rhode Island | Case No. 1:21-cv-00378 |
| SRC, Inc. v. Theia Group, Inc. | U.S. District Court for the District of Columbia | Case No. 1:21-cv-02329-RBW |
| Ahunai v. Theia Group, Inc. | U.S. District Court for the District of Delaware | Case No. 1:21-cv-01182-LPS |
| Precision Air Inc v. Theia Group Inc., *et al*. | U.S. District Court for the District of South Carolina | Case No. 4:21-cv-02446 |
| Palazzo Verdi LLC v. Theia Group, Inc. | District Court of Arapahoe County, Colorado | Case No. 2021cv31318 |
| Theia Technologies, Inc. v. Theia Group, Inc., *et al*. | U.S. District Court for the Eastern District of Pennsylvania | Case No. 2:20-cv-00097 |
| WGS Systems, LLC v. Theia Group, Inc., *et al*. | Circuit Court of Frederick County, Maryland | Case No. C-10-cv-21-0307 |
| City of Statesville, North Carolina, a Municipal Corporation, v. Theia Group, Incorporated | State of North Carolina, General Court of Justice, Superior Court Division, Iredell County | Case No. 21 cv 3010 |
| Willard Associates v. Theia Group, Inc., | Superior Court for the District of Columbia | Case No. 2021 LTB 000243 |
| Michael D. Mitchell v. Theia Group, Inc. | American Arbitration Association | Case No. 01-21-003-6394 |
| Microcosm, Inc. v. Theia Group, Incorporated | American Arbitration Association | Case No. 01-21-0005-6412 |

Filing such notices has put third parties on actual or constructive notice of entry of the Receivership

Order and, in particular, the 120 days stay provided thereby.

In addition, despite the stay set forth in the Receivership Order, on December 13, 2021,

Signature Flight Group Support LLC commenced an action against TGI in the Superior Court of

the State of California, County of Santa Barbara (Case No. 21CV04868).  The Receiver has just

become aware of this lawsuit and will file a *Notice of Receivership Stay* in such action.

The 120-day stay imposed by the Receivership Order would continue through

March 8, 2021.  The Receiver anticipates seeking an extension of that stay.

3.      *Securing Principal Assets and Electronic Files*

The Receiver has also taken a number of steps to secure, take possession of, and/or control the assets of the Receivership Entities.  The primary assets of the Receivership Entities are:

a.  FCC spectrum and license and the National Oceanic and Atmospheric Administration license:  The Receivership Team has completed the necessary filings with the FCC to transfer control of these licenses to the Receivership.

b.  Aircraft:  The Receiver has also undertaken to determine the location and condition of the numerous aircraft owned by the Receivership Entities:

- 1996 Jetstream 4100.  The subject aircraft has been located at a Riverside, CA hangar and partially dismantled due to incomplete maintenance.

- Modified DC-3 aircraft.  The subject aircraft is currently operating under a short-term lease to a third party.

- The Receivership Team identified a significant payment in the amount of $27,000,000, which was made to a contractor as a deposit for the conversion of 3 airplanes for the purposes of executing data sensing missions.  The first converted airplane is scheduled to be delivered on or about January 2022, with subsequent deliveries to be on or about June 2022 and December 2022.  Upon delivery of the second and third airplanes, an additional $3,000,000.00 (three million) is due to take possession.  The Receiver has asked the contractor to suspend any activity to convert the third airplane.

c.  Intellectual Property ("IP"):  The Receiver is working with the IP counsel on maintaining the requisite filing and fees to protect the Receivership Entities' IP assets (domestically and internationally).

The Receiver has also taken steps to restrict access to the Receivership Entities' tangible personal property as well as its electronic systems and records (*e.g.* accounting system, email system, and other digital files). Included among these efforts are steps to secure the Receivership Entities' cloud-based document storage system and servers. Specifically, the Receivership Entities used an internet based (or "Cloud version") of QuickBooks for accounting. The Receiver has sole control over QuickBooks. The Receiver also has taken control of the Microsoft 365 system (which includes email, documents, and other data) and data room.

The Receiver does not believe he has identified or gained access to all of the Receivership Entities' online accounts, documents, and other information and is being assisted by certain former management team members and former employees to identify and gather this information.

4.      *Bank Accounts*

The Receiver determined that the Receivership Entities held twelve (12) bank accounts at various domestic financial institutions. Specifically, there were four (4) accounts in the Receivership Entities' names at Citizens Bank, two (2) at Wells Fargo Bank, N.A. and six (6) at JPMorgan Chase. The Receiver has closed all of these accounts and transferred funds in the aggregate amount of $89,089.31 to the Receivership account at East West Bank.

The Receivership Entities' records indicate that an account at the Commercial Bank of Dubai remains open and has a balance of $5,000. The Receiver has reached out to that bank to direct that the account be closed and the funds contained therein turned over to the Receiver.

5.      *Legal Files*

The Receiver and his team also have initiated contact with a number of law firms and attorneys previously engaged by the Receivership Entities and directed such professionals to cease rendering services and also turn over to the Receiver their legal files concerning the Receivership Entities. So far, most firms have indicated an intention to cooperate.

6.      *Turn Over Directions to Directors and Officers*

The Receiver and his team have been engaging with current and former officers and members of the board of directors of the Receivership Entities and their subsidiaries and affiliates, requesting that any property of the Receivership Entities in their possession or control be turned over to the Receiver.  To centralize management and avoid potential misunderstandings, the Receiver also terminated any agency or other authority of the foregoing persons to bind the Receivership Entities.

C.      **Leases and Contracts**

In assessing ways to reduce the Receivership Entities' ongoing liabilities, the Receiver conducted a review and analysis of lease agreements concerning premises previously occupied by one or more of the Receivership Entities, including in Washington, D.C., New Mexico, Colorado, and North Carolina, and has engaged in preliminary discussions with certain landlords regarding the receivership process.

The Receiver also reviewed and analyzed numerous employment, consulting and other service agreements to which the Receivership Entities were a party.  As part of that analysis, the Receiver compiled an extensive list of contact information (where available) for the related counterparties.  Following his analysis of these contracts and leases, on December 10, 2021, the Receiver filed a motion for an Order authorizing the rejection (to the extent executory or unexpired) of certain contracts and leases set forth therein, effective immediately prior to entry of the Receivership Order on November 8, 2021 and providing that no financial advisor or investment banker shall be entitled to any fees or expenses under any rejected contract from the Receiver's sale of any assets of the Receivership Entities (the "Rejection Motion").  Notice of the Rejection Motion was provided to all counterparties, and objections to the Rejection Motion are due on or before December 27, 2021.

D.      **Field Visits to Operational Locations**

Since the Receiver's appointment, the Receiver (and one of his advisors) have traveled to and inspected a number of locations at which the Receivership Entities were known to operate:

1.      Washington, D.C.:  The Receivership Entities maintained offices on the 6th floor (6,017 square feet) and 8th floor (10,248 square feet) at 1455 Pennsylvania Avenue. The premises have been vacated.  No computers or current documents were found on the premises.

2.      Philadelphia, PA:  The Receivership Entities' Philadelphia address, 1600 Market Street, Suite 1320, is the Gallagher Law Firm, P.C.  John Gallagher, founding attorney, is the former Chairman of the Board.  James Hickey, an attorney with the Gallagher Law Firm, is the former in-house legal counsel for the Receivership Entities.  Loan documents for individual note holders are held at the Gallagher Law Firm's offices.

3.      Albuquerque, NM:  The Receivership Entities leased significant amounts of space at two (2) locations in Albuquerque:

- 10800 Gibson Blvd SE (72,784 square feet):  Prior to the Receivership, TGI and the landlord entered into a termination agreement on or about October 25, 2021 regarding TGI's leasehold premises at 10800 Gibson Blvd SE, whereby the company surrendered a $2,000,000.00 security deposit to the landlord.  The landlord allowed the Receiver to inspect the premises.  Seven (7) Servers, two (2) PCs, two (2) tablets, and one (1) cell phone were recovered. The Receiver understands that the servers were relocated to the 10800 Gibson

SE premises from the Washington, D.C. and Greenwood, CO offices.  The Receiver has moved the servers to a secure storage facility in Albuquerque.

- 1300 Eubank SE (83,156 square feet) & 10421 Development Rd. SE (20,737 square feet):  Prior to entry of the Receivership Order, TGI was locked out of 1300 Eubank SE and 10421 Development Rd SE for non-payment of rents.  The landlord has been applying the security deposit to rents due.  The Receiver believes that such action violates the Receivership Order.

In addition, prior to the entry of the Receivership Order, the Receivership Entities had commenced activities to develop and build a satellite manufacturing facility, the Orion Center, in Albuquerque.

4.     Riverside, CA:  The Receivership Entities leased significant hangar (6,400 square feet) and office space (2,500 square feet) at the Riverside Airport.  Theia Aviation LLC operates from this location.

5.     Greenwood Village, CO:   TGI leased office space (33,373 square feet) in Greenwood Village, Colorado.  The Receivership Entities are believed to be in default of each facility's lease.

6.     Hangars:  The Receiver is aware of at least four (4) other locations where the Receivership Entities conducted activities or stored aircraft for a limited period of time:

i.     Statesville, NC (hangar);

ii.    Santa Barbara, CA (hangar);

iii.   Long Beach, CA (hangar); and

iv.    Santa Fe, NM (hangar).

E.    **Interview of Former Officers**

The Receiver has interviewed the following former officers of the Receivership Entities:[3]

1.    Erlend Oson – former COO & CEO;

2.    Joseph D. Fargnoli – former CTO;

3.    John Gallagher – former Chairman of the Board;

4.    James Reid Gorman – former  CFO;

5.    Eugene Sullivan – former General Counsel; and

6.    Ryan Coughlin – former President, Theia Rick Management Solutions and Commercial Aviation.

F.    **Investigations**

The Receiver has been contacted by Internal Revenue Service officials and investigators from the U.S. Attorney's Office for the District of Columbia regarding a pre-receivership criminal investigation and search warrant.

III.    **PRELIMINARY FORENSIC ANALYSIS OR RECONCILIATION**

The Receiver gathered and analyzed data for a preliminary forensic analysis or reconciliation of the Receivership Entities' books and records.   Specifically, the Receiver (a) collected Receivership Entity bank statements; (b) analyzed variances between Receivership Entity QuickBooks data and bank statement data; and (c) prepared a database of individual transactions from the Receivership Entities' bank and credit card statements for further analysis.

---

[3] The Rejection Motion seeks an order rejecting any employment contracts with, among others, the foregoing officers and directors.  The Receiver may arrange further interviews with former management as needed.

Based on such work, the Receiver conducted a series of preliminary forensic financial analyses using the recovered data.

## A.   Trade Payables

Based upon such information, the Receiver has preliminarily determined that trade accounts payable (as reflected in the books and records) are as follows:

| Accounts Payable by Range at November 22, 2021 | | |
|---|---|---|
| Range (MM's) | Cumulative | # of Vendors |
| >$5.0M | $ 14,185,164 | 2 |
| $2.5M-$5.0M | $ 6,658,320 | 1 |
| $1.0M-$2.5M | $ 3,596,352 | 3 |
| $800K-$1M | $ 2,536,674 | 3 |
| $500K-$800K | $ 2,786,091 | 4 |
| $200K-$500K | $ 5,009,831 | 15 |
| $100K-$200K | $ 3,086,142 | 22 |
| $75K-$100K | $ 701,979 | 8 |
| $50K-$75K | $ 1,286,350 | 22 |
| $25K-$50K | $ 949,426 | 26 |
| $0-$25K | $ 821,180 | 125 |
| | $ 41,617,509 | 231 |

The foregoing summary may not reflect all trade payables, as some invoices may have been received but not entered prior to entry of the Receivership Order.  The Receiver has spoken to several trade creditors and encourages them to submit unpaid invoices that may not have been entered into the Receivership Entities' accounting system.

## B.   Individual Noteholders

The Receivership Team has selectively reviewed several of the individual notes and found that promised returns are generally stated in "X times" the face amount of the respective notes. The Receiver also understands that there are notes that have matured and have not been amended or extended.  The Receiver is working to gather information regarding the loans provided by individuals (often referred to by former management as "friends and family" noteholders).  James

Hickey, who maintains the information regarding such notes, is working with the Receiver to compile such information.

### C.      Institutional Loan from Brevet

The Receiver is reviewing the terms and conditions of the Brevet loan facility.

## IV.      RECEIVERSHIP FINANCING

The Receiver has been discussing with Brevet a term sheet for a $5,000,000 loan to fund the Receivership.  The term sheet provides for a first-priority, priming lien, interest at the rate of 12% per annum, and a maturity date six (6) months after execution.  The Receiver expects to file a motion for the approval of such financing in the near future.

## V.      DISPOSITION OF DE MINIMIS ASSETS

To aid in the efficient liquidation of the Receivership Entities' assets, the Receiver has filed (or will file) a motion for an order establishing procedures for the sale or disposition of *De Minimis* Assets, defined therein to include assets that are proposed to be sold with a gross selling price less than or equal to $100,000 in the aggregate and which are proposed to be sold in a transaction, or in a series of related transactions, to a single buyer or group of related buyers.

Dated: December 22, 2021
        New York, New York

Respectfully submitted:

REED SMITH LLP


By: */s/ Kurt F. Gwynne*
    Kurt F. Gwynne (No. 5605206)
    Christopher A. Lynch (No. 4243655)
    599 Lexington Avenue
    New York, New York 10022
    Telephone:  (212) 521-5400
    Facsimile:  (212) 521-5450
    E-mail:  kgwynne@reedsmith.com
             calynch@reedsmith.com

                - and -

    Jason D. Angelo, Esq. (admitted *pro hac vice*)
    1201 N. Market Street, Suite 1500
    Wilmington, Delaware 19801
    Telephone:  (302) 778-7500
    Facsimile:  (302) 778-7575
    E-mail:  jangelo@reedsmith.com

    *Counsel for Michael Fuqua, in his capacity as*
    *Receiver of Theia Group, Inc., Theia Aviation LLC,*
    *and Theia Holdings A, Inc.*