UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FCS ADVISORS, LLC,

       Plaintiff,       21-cv-6995 (PKC)

  -against-          ORDER

THEIA GROUP, INC, et al,

       Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

    On November 8, 2021, this Court appointed a receiver in this action at the request of FCS Advisors, LLC, doing business as Brevet Capital Advisors ("Brevet"). The Court was concerned that the value of an FCC license held by Theia Group, Inc. and affiliates ("Theia") could be dissipated in the time between the hearing and any bankruptcy filing by Theia. Theia's counsel advised that "we believe the only path for anybody getting their money back is to sell this license, and sale of this license will inevitably require some type of bankruptcy proceeding." (Transcript of Oct. 20, 2021 Hearing at 28.)[1] Theia was unwilling, however, to file for bankruptcy protection at that juncture. Brevet asserted that, as a secured creditor, it lacked the statutory authority to file an involuntary bankruptcy petition against Theia. 11 U.S.C. § 303. The Court granted Brevet's application for the appointment of a receiver and appointed the incumbent receiver (the "Receiver"), one of two candidates Brevet proposed.

    Brevet has agreed to provide interim financing to the Receiver which, of course, is subject to negotiation of satisfactory terms. The Receiver has elected to retain a law firm that

---

[1] Counsel for Theia also stated: "There is no company today. There's no money being spent in any meaningful way. . . . All there really is, is a license and a business plan." (Transcript of Oct. 20, 2021 Hearing at 29.)

happens presently to represent affiliates of Brevet, specifically, Brevet Holdings, LLC, Brevet Short Duration Partners, LLC (f/k/a Brevet Capital Partners III, LLC), Brevet Short Duration Holdings, LLC (f/k/a Brevet Capital Holdings III, LLC), and Brevet Capital Management, LLC. Brevet Holdings, LLC et al v. Enascor, LLC et al, 21 cv 1540(MKV)(S.D.N.Y); Iacovacci v. Brevet Holdings, LLC et al., 18-cv-08048(MKV) and Iacovacci v Brevet Holdings, LLC, Index No. 158735/2016 (N.Y. Sup. Ct.). The law firm also represents three key executives of Brevet affiliates, including Mark Callahan, co-founder of Brevet.[2]  At the time the receiver retained the law firm, Callahan had already been named as a counterclaim defendant by Theia in this action (Doc 79 at 20 & 49 of 50) and the law firm had appeared for Callahan in 18-cv-08048(MKV)(Doc 144).  The counterclaim remains pending and the Receiver, who now stands in the shoes of Theia, is responsible for prosecuting or otherwise resolving this claim against Callahan.  The Receiver is also responsible for negotiating the terms of the Brevet financing. The Receiver ought to be able to rely on conflict-free lawyers for advice on these subjects.

        In a bankruptcy proceeding, an attorney would have had an affirmative duty "to disclose fully and fairly all existing and potential conflicts of interest or lack of disinterestedness . . . ." In re Mercury, 280 B.R. 35, 55 (Bankr. S.D.N.Y. 2002), subsequently aff'd, 122 F. App'x 528 (2d Cir. 2004).  Bankruptcy Rule 2014(a).  This affirmative disclosure duty does not exist in the receivership context.

        The Court is also concerned because the Receiver and his counsel seek to reject approximately 160 executory contracts and leases.  Some of the affected persons reside in the

---

[2] There is no apparent factual connection between the subject matter of these actions and the affairs of Theia.  The Brevet entities named in these other actions do not include the named plaintiff in this action.  The attorneys of record in this action do not overlap with the attorneys of record in the other actions.

Philippines, Malaysia, Switzerland, Thailand, Greece, Sri Lanka, and Brazil. Some were served by mail, some electronically, some both by mail and electronically and a few could not be found.

Receiverships have their origins in English Chancery Courts and courts, in the receivership context, have considered the power to reject an executory contract as inherent to their equitable powers. See, e.g. Pa. Steel Co. v. New York City Ry. Co., 198 F. 721, 744 (2d Cir. 1912). When a receiver rejects a contract, it relates back to the beginning of the receivership and amounts to a "breach of the contract." Id. But this Receiver seeks an order from this Court extinguishing the rights of the counterparties to certain contracts without so much as an explanation of what those rights may be. Proposed Order at ¶ 3 ("No financial advisor or investment banker shall be entitled to any fees or expenses under any rejected contract from the Receiver's sale of any assets of the Receivership Entities;"). While rejection of these contracts may be necessary or useful to the success of the receivership, he offers no explanation of why extinguishing the counterparties' rights to damages is equitable or just given Theia's possession of FCC licenses said to be capable of generating billions in revenue. With respect to the bulk of the rejected contracts (more than 150 contracts), the Receiver proposes that this Court serve as the claims tribunal. Proposed Order at ¶ 5. ("The Court retains jurisdiction of all disputes relating to the rejection of the contracts and leases listed in attached Exhibit A.").[3] Claimants likely would retain any pre-existing Seventh Amendment rights to trial by jury. See Eberhard v. Marcu, 530 F.3d 122, 137 (2d Cir. 2008).

The present version of the Bankruptcy Code has a robust body of procedural and substantive protections governing the rejection of executory contracts. 11 U.S.C. § 365 (containing 16 subdivisions.) These protections do not apply outside the bankruptcy context.

---

[3] The receiver's memorandum does not mention this portion of the relief sought unless it was intended to be subsumed into the reference to "granting such further relief to the Receiver as is appropriate." (Mem. at 3, 6.)

- 4 -

The Receiver has not explained why it would not be superior to have the rejection of such a large volume of executory contracts and leases supervised by a bankruptcy court under the provisions of the Bankruptcy Code.

The Receiver's first interim report reflects that the has made serious progress in assessing and organizing the affairs of Theia. But it is not clear whether or when he intends to file for a bankruptcy proceeding. The Court acknowledges that appointing the Receiver without an understanding of his inclinations with respect to seeking bankruptcy protection was likely a mistake.

Let the Receiver and all interested persons show cause in writing by February 9, 2022 why the receivership ought not be terminated by March 9, 2022, if no bankruptcy proceeding is instituted on or before that date.[4]

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       January 26, 2022

---

[4] March 9, 2020 is the date the Court's 120-day stay of litigation expires and the Court does not anticipate extending that stay. The date for the Receiver's omnibus reply on the pending motions is sua sponte extended from February 3 to February 9.