**BACKENROTH, FRANKEL & KRINSKY, LLP**
800 Third Avenue, 11th Floor
New York, New York 10022
(212) 593-1100

*Abraham J. Backenroth*                                                                                         Telecopier No.
*Mark A. Frankel*                                                                                                   (212) 644-0544
*Scott A. Krinsky*

February 15, 2022

**VIA ECF**
The Honorable P. Kevin Castel
United States District Judge, Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 11D
New York, NY 10007-1312

Re:   **FCS Advisors, LLC v. Theia Group, Inc., et al, Case No. 21-CV-6995-PKC**

Dear Judge Castel:

    We write on behalf of TG Capital Services LLC ("TG Capital"), and under Rule 3.A.iii of the Court's Individual Practices, to respond to the Receiver's pre-motion letter dated February 10, 2022 (Doc 201). The Receiver alleges that TG Capital falsely stated that Receivership Courts lack power to sell assets "free and clear" (Let. p. 2). That is not correct. TG Capital stated that Bankruptcy Courts are superior to Receiverships for selling property because the Bankruptcy Code provides statutory authority for sales to be made free and clear under 11 U.S.C. 363(f), and routinely engage in the sale of property on a daily basis (TG Resp. p. 15 [Doc 193]).

    The Receiver does not cite to any federal statute comparable to § 363(f) which allows a Receivership to sell property free and clear. Instead, the Receiver relies exclusively on federal case law. The Receiver ignores, however, that he is governed by the Receivership Order which does not expressly permit him to sell property free and clear (Doc 117).

    Moreover, the Receiver overlooks that the Second Circuit has ruled that "ordinarily a court will not sell property free of liens unless it can see that there is substantial equity to be preserved." *Spreckels v. Spreckles Sugar Corporation*, 79 F.2d 332, 334 (2d Cir. 1935).[1] Here, the Receiver has not sought to modify the Receiver Order, nor shown that there is substantial equity to be preserved. Even if this Court allows the sale to proceed "free and clear," purchasers

---

[1]    *See also*, *Seaboard Nat. Bank v. Rogers Milk Products Co.*, 21 F.2d 414, 416 (2d Cir. 1927) (generally property should not be sold free of liens, "unless there is a reasonable prospect that a surplus will be left for general creditors"); *accord, Buss Mach. Works v. Watsontown Door & Sash Co.*, 2 F.Supp. 757 (M.D. Pa. 1933) (rejecting Receivers' petition to sell property free and clear of mortgage). The Receiver's reliance upon D. Abney, *Selling Receivership Property Free and Clear of Liens and Encumbrances*, 16 Real Prop. L. J. 364, 365 (1988)(Let. p. 2) is misplaced, since it supports and even cites to *Spreckles* for its above legal proposition. Id, at p. 367, Ft. 18.

of assets usually insist on a Bankruptcy because, *inter alia*, there is statutory guidance under § 363(f), and § 363(m) provides further protection since a sale to a good faith purchaser cannot be reversed or modified on appeal, unless such sale is stayed pending appeal.

Additionally, the Receiver's last sentence in his Response revealingly states that even if Ordered to file Bankruptcy, the Court should still approve his Financing Motion (Doc's 149-150) so that he can pay the Receivership's costs and expenses prior to Bankruptcy (Resp. ¶ 52, Ft. 11[Doc 195]). Thus, it appears that the Receiver's real motive for wanting to sell in this Court, as opposed to Bankruptcy Court, is to obtain greater fees and a success fee which is improper. See, *Seaboard,* 21 F.2d at 417 ("We can conceive of no ... interest which the receivers could have in so selling, except to get fees for themselves and their attorneys").

The Receiver also alleges that TG Capital misrepresents the effect of the UCC-1 financing statements filed by certain noteholders during the Receivership (Let. p. 1). As a threshold matter, the Receiver admits that he was aware that certain noteholders filed UCC-1's during the Receivership (Let. p. 2); and does not dispute that the UCC-1's (a) violated the Receivership Order, and (b) are avoidable as a preferential transfer under 11 U.S.C. § 547(b), to the extent that the Receiver files a Bankruptcy within 90 days of the filings.

The Receiver, however, relies upon either old or random non-binding case law for the proposition that a lien cannot be obtained against Receivership property subsequent to the Receiver's appointment (Let p. 1).[2] Even if the Receiver's position is conceptually correct, practically any purchaser of the assets will usually insist that the UCC-1's be avoided prior to sale, which could be accomplished by filing a Bankruptcy.

Aside from being impractical, the Receiver's position is also surprising. As TG Capital showed in its Response, the noteholders were represented by Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin") which filed Notices of Appearance to that effect (Doc's 66-69, 94-95 & 124-126), and certain of the same noteholders filed UCC-1 financing statements during the Receivership (TG Resp. p. 10; KrinDec. ¶ 3, Ex. A [Doc. 194]), which, upon information and belief, were filed by or aided by Mintz Levin and/or their agents. Although the Receiver asserted that the Fargnoli 11/30/21 Letter (defined in the TG Resp. at p. 8) was a violation of the Receivership Order (Doc 128, ¶7, Ft. 1), the Receiver did not make similar allegations against the noteholders and Mintz Levin. To the contrary, the Receiver alleged in his Response that the "[n]oteholders represented by competent counsel (Mintz Levin ...) ... support the Receiver's plan to sell the Receivership Entities' assets outside of a bankruptcy case." (Doc 195, Rec. Resp. p. 19). Given the obvious stay violation, the timing of the mutual support by and among the Receiver, Mintz Levin and the noteholders supports the inference that all are working together to the detriment of other creditors.

---

[2] The Receiver's reliance upon *In re Ulinski*, 317 B.R. 716 (Bankr. E.D. Ky 2004)(Let. p. 2) is misplaced, since it involved (unlike here) a violation of the automatic stay under 11 U.S.C. § 362 of the Bankruptcy Code. Id, at p. 719.

Moreover, the Receiver's Response repeatedly alleges that Bankruptcy will increase costs and delay any proposed sale, but fails to provide any support for such allegations. Conversely, TG Capital showed that in contrast to the Receivership where the Receiver is being paid both an hourly rate and a success fee of 1% of the sale proceeds in excess of $1,000,000 (Doc 106-1), a Bankruptcy Trustee would be paid solely on a statutory commission basis which would result in far less fees (Doc's 167, p. 12, Ft. 1; & 193, p. 16). Additionally, Aithre Capital Partners, LLC ("Aithre") admits that any proposed sale is subject to contingencies, and that even if the contingencies are satisfied, the sale will still not occur until late summer or early fall (Doc 187, Aithre Resp. ¶ 6). Conversely, Bankruptcy Courts are known for expedited sales and proceedings, especially given the history of pre-packaged Bankruptcies for large companies.

Finally, the Receiver closes his letter by alleging that TG Capital "falsely attempts to create disputes and a sense of urgency for a [B]ankruptcy filing where none exists." (Let. p. 3). The Receiver's allegation is breathtaking since (a) Defendants' counsel stated during the October 20, 2021 Hearing that a Bankruptcy was inevitable and would be filed within a mere 60 days (or by December 20, 2021)(Doc 115, pp. 28-33), (b) Plaintiff's counsel did not dispute this and suggested that it would have filed its own involuntary Bankruptcy but was precluded from doing so because it was a secured creditor (Id, at p. 26), and (c) the Court noted in the November 8, 2021 Receivership Order that the Receivership would merely be for "a limited period of time" (Doc 117, p. 1).

Accordingly, we respectfully request that the Court deny the Receiver's pre-motion letter request to supplement his Response. Alternatively, if the Court grants the Receiver's request to supplement, then we respectfully request that the Court accept TG Capital's letter herein to supplement its Response.

                Respectfully Submitted,

                /s/ Scott Krinsky
                _____
                Scott Krinsky

cc: All Counsel (via ECF)