UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS
A, INC., d/b/a "THORIAN HOLDINGS,"

Defendants.

21 Civ. 6995 (PKC)

## SECOND INTERIM STATUS REPORT OF RECEIVER

### (For the Period from December 23, 2021 through February 21, 2022)

Kurt F. Gwynne (No. 5605206)
Christopher A. Lynch (No. 4243655)
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
E-mail:  kgwynne@reedsmith.com
calynch@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 778-7500
Facsimile:  (302) 778-7575
E-mail:  jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as Receiver of
Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

Michael Fuqua, Court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), submits this Status Report (the "Report") for the period December 23, 2021 through February 21, 2022 (the "Reporting Period") in accordance with the Order of this Court entered on November 8, 2021 (the "Receivership Order"), and for the purpose of reporting the status of the Receiver's work and findings to date (the "Investigation"). The facts presented in this Report are preliminary and may be amended and changed as the Investigation continues. This Report supplements the initial status report submitted to the Court on December 22, 2021 (the "Initial Report"). [Doc. 135]. This Report includes the preliminary assessment of the Receiver's counsel, Reed Smith LLP ("Reed Smith") and King & Spalding LLP ("K&S"), as well as the consultants and advisers retained by the Receiver's counsel, including GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley") and PJT Partners, LP ("PJT" and collectively with the Receiver, Reed Smith, K&S, and B. Riley, the "Receivership Team").

## I.   SUMMARY OF RECEIVERSHIP ACTIVITIES AND FINDINGS DURING REPORTING PERIOD

### A. Addressing the Court's Concerns

On January 26, 2022, the Court issued an *Order to Show Cause* as to why the Receivership should not be terminated by March 9, 2022. [Doc. 178] The primary concerns of the Court identified in the Order to Show Cause were: (i) the Receiver was seeking to use the Court as a "claims tribunal" as evidenced by the Receiver's motion to reject approximately 160 executory contracts and unexpired leases; (ii) questions regarding the value of the Receivership assets; and (iii) a previously unknown conflict of interest for the Receiver's principal counsel at the time of retention.

The Receiver filed a comprehensive response (the "Receiver's Response") [Doc. 195], which was supported by creditors holding over 80% of the outstanding principal of funded debt owed by the Receivership Entities, the founder and former officer of TGI, and a former board member and significant shareholder.  On February 16, 2022, the Court entered an Order finding that the Receiver's Response satisfied the Court's principal concerns in the Order to Show Cause and indicated that the Court would not terminate receivership as of March 9, 2022.  [Doc. 209].

**B.  Retention of Professionals**

As detailed in the *Notice of Receiver's Retention of King & Spalding LLP as Counsel to Deal With Issues relating to FCS Advisors, LLC, Brevet Capital Management, LLC and Its Affiliates* [Doc. 186] (the "K&S Notice"), to address the Court's concerns set forth in the Order to Show Cause regarding conflict-free counsel, during the Reporting Period, the Receiver retained the law firm King & Spalding LLP to represent him with respect to (i) the investigation of claims by and against FCS, Brevet Capital Management, LLC, Mark Callahan, Robert Leeds, Leeds Holdings, LLC, and Strongbow Holdings, LLC (collectively, the "Defendants"); and (ii) the proposed receivership financing from FCS.  The K&S partners in charge of the matter are David L. Balser, Esq. and Thaddeus D. (Thad) Wilson, Esq.  Mr. Balser is a partner in the firm's Trial and Global Disputes Group and Mr. Wilson is a partner in the Corporate, Finance, and Investments Group with significant experience representing parties in stressed and distressed situations and related litigation.  As set forth in the K&S Notice, K&S was not recommended by FCS (or its affiliates) or their counsel (or by Reed Smith).  K&S was selected by the Receiver based solely upon his and his firm's prior working relationship with K&S, including in connection with several receiverships.  Reed Smith will remain the Receiver's principal counsel in this action.

During the Reporting Period, the Receiver concluded negotiation of the terms of an engagement letter, dated as of December 28, 2021, between the Receiver and PJT Partners LP,

pursuant to which PJT would provide investment banking services related to the sale, merger or other disposition of all or any portion of the Receivership Entities' equity or assets (the "Engagement Letter").   On December 28, 2021, the Receiver filed a motion for an Order (a) authorizing the retention and employment of PJT as investment banker for the Receiver, in accordance with the terms and conditions set forth in the Engagement letter; (b) authorizing the Receiver to pay to PJT the fees and expenses as set forth in the Engagement Letter; (c) approving the Expense, Indemnity and Limitation of Liability Agreement annexed to the Engagement Letter as "Attachment A"; and (d) granting such further relief as is appropriate (the "PJT Retention Motion").  [Doc. 152]  No objections to the relief sought in the PJT Retention Motion were filed, and accordingly, on February 16, 2022, the Court entered an Order granting the PJT Retention Motion (the "PJT Retention Order").  [Doc. 207].

Since December 28, 2021, the Receiver has worked with PJT to (i) identify potential bidders; (ii) populate the data room with relevant documents; (iii) provide an interface with counsel handling filings related to the FCC license and intellectual property; (iv) prepare a form of non-disclosure agreement for potential bidders; and (v) prepare asset sale marketing materials.  PJT began contacting potentially interested parties on or about February 17, 2022.

### C.  Protecting Receivership Estate Assets

#### 1.  *Notice of Receivership*

The Receivership Order provides for a 120-day stay of, *inter alia*, actions, proceedings, and lawsuits.  Receivership Order, ¶ 4.  As previously reported, the Receiver caused *Notices of Receivership Stay* to be filed in numerous pending litigation matters, and his counsel corresponded/met with counsel to adversaries in such actions regarding the receivership process.

During the Reporting Period, *Notices of Receivership Stay* were filed in the following *additional* matters, bringing to fifteen (15) the total of such actions in which notices have been filed:

| Caption | Court | Case No. |
|---|---|---|
| Signature Flight Support LLC v. Theia Group, Inc. | Superior Court of California, Santa Barbara County | Case No. 21-cv-04868 |
| Nicolle Sotrey v. Theia Group, Incorporated | State of California, Department of Industrial Relations, Labor Commissioner's Office | Case No. WC-CM-854247 |
| Charles Cornelius v. Theia Group, Incorporated | State of California, Department of Industrial Relations, Labor Commissioner's Office | Case No. WC-CM-851783 |
| CBRE, Inc. v. Theia Group Incorporated | Superior Court of Delaware | C.A. No. N21-12-125 (CLS) |

2.   *Motion to Extend Receivership Stay*

The 120-day stay imposed by the Receivership Order presently runs through March 8, 2021 (the "Expiration Date").  On February 17, 2022, the Receiver filed an *Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (the "Motion to Extend Stay").  [Doc. 211].  Through the Motion to Extend Stay, the Receiver requested entry of an Order extending the Receivership Stay (as defined in the Motion to Extend Stay) by approximately five (5) months following the Expiration Date, through and including July 15, 2022, without prejudice to the Receiver's right to request further extensions of the Receivership Stay.  As detailed in the Motion to Extend Stay, extending the Receivership Stay beyond the Expiration Date is necessary to preserve the Receivership Entities' assets and allow the Receiver to maximize the value of such assets for the benefit of creditors, including the sale of the FCC license assets as contemplated in the Receivership Order.  Objections to the Motion to Extend Stay are due by February 23, 2022.[1]

---

[1] The Receivership Order provides that "[t]he Receiver may apply to the Court for additional authority on an expedited basis. Any party objecting to the relief sought by the Receiver shall respond within 3 business days unless otherwise ordered by the Court."  Receivership Order, ¶ 15.  The Motion to Extend Stay was

### 3. *Securing Principal Assets and Electronic Files*

The Receiver and his team are continuing to secure the principal assets and the books and records of the Receivership Entities.

### 4. *Intellectual Property*

The Receiver, along with Frank Bonini, Esq., has taken steps to protect Receivership Entities' domestic and international intellectual property (*i.e.*, trademarks and patents) by insuring the payment of renewal and other required fees and amounts due.

### 5. *Bank Accounts*

Since the submission of the Initial Report, the Receivership Team has identified another bank account and several entities that were formed as subsidiaries of TGI.  This information was discovered while reviewing transaction records and emails.  Separately, on or about February 18, 2022, the Receiver served, pursuant to Rule 45 of the Federal Rules of Civil Procedure, a subpoena *duces tecum* on each of Wells Fargo Bank, National Association and PNC Bank, National Association, thereby requesting the production of documents and electronically stored information related to certain checking and credit card accounts previously identified by the Receivership Team as being held at each respective financial institution in the name of TGI.  Such information was not available through the turnover of information by prior management.  The subpoenas call for production of responsive documents by no later than March 7, 2022.

### 6. *Legal Files*

During the Reporting Period, the Receiver and his team followed-up with certain firms and attorneys previously engaged by the Receivership Entities regarding turning over to the Receiver their legal files concerning the Receivership Entities.  Most firms have cooperated and voluntarily

---

submitted on an expedited basis—three (3) business days plus three (3) days for mailing—pursuant to this provision of the Receivership Order.

turned over the requested files to the Receiver.  Notably, as of the date of this Report, Fried, Frank, Harris, Shriver & Jacobson LLP, which firm was retained by the Receivership Entities at the behest of TG Capital Services LLC (the "Litigation Funder"), has not cooperated with the Receiver's turnover request.  The Receiver strongly disagrees with the position taken by that firm and remains hopeful that the firm will ultimately cooperate.  If necessary, the Receiver will seek the Court's assistance in this matter.

7. *Turn Over Directions to Directors and Officers*

Since the submission of the Initial Report, the Receiver and his team have continued to work with certain former officers and directors of the Receivership Entities to obtain physical and electronic files.  Notably, approximately twenty-five (25) boxes of such files have been obtained and secured from the Gallagher Law Firm and Messrs. James Hickey, Esq. and John J. Gallagher, Esq.  These files, which include original executed copies of the "Friends & Family" secured convertible promissory notes (the "F&F Notes") and related ancillary documents and amendments, have been secured at the offices of Reed Smith and have been scanned and uploaded electronically to the Receivership Team.  The Receivership Team's review of these files is ongoing, and the delivery of additional physical files is anticipated in the future.

**D.  Leases and Contracts**

On December 10, 2021, the Receiver filed a motion for an Order authorizing the rejection (to the extent executory or unexpired) of certain contracts and leases set forth therein, effective immediately prior to entry of the Receivership Order and providing that no financial advisor or investment banker shall be entitled to any fees or expenses under any rejected contract from the Receiver's sale of any assets of the Receivership Entities (the "Rejection Motion").  [Doc. 127] In response to the Court's concerns in the Order to Show Cause, the Receiver advised the Court that he will pursue contract rejection and allowance of related damages claims in a bankruptcy

proceeding to the extent the sale proceeds are insufficient to pay claims in full (or if such claims are not consensually resolved), and not in this action.  Accordingly, on February 16, 2022, the Court denied the Rejection Motion without prejudice.  [Doc. 204].

### E.  Interview of Former Officers

During the Reporting Period, the Receiver and Reed Smith conducted in-person interviews of Messrs. James Hickey, Esq. and John J. Gallagher, Esq. regarding, among other topics, the F&F Notes and related documentation with respect to same.

### F.  Investigations

#### 1.  *Grand Jury Investigation*

Prior to the Reporting Period, the Receiver was contacted by Internal Revenue Service officials and investigators from the U.S. Attorney's Office for the District of Columbia regarding a pre-receivership grand jury investigation.  During the Reporting Period, the Receiver was served with a grand jury subpoena issued by the United States District Court for the District of Columbia to produce certain documents.  The Receiver retained Reed Smith in this matter and Rizwan Qureshi, Esq., a Reed Smith partner, is representing the Receiver in connection with the grand jury subpoena and any related matters.  The Receiver and B. Riley have completed a substantial amount of work assembling and providing documents to counsel in regard to the subpoena and are continuing to support counsel to comply with the information requests from the U.S. Attorney's Office for the District of Columbia.

#### 2.  *Pre-Receivership Counterclaims Against Secured Lender*

The Receiver retained K&S to work with the Receiver regarding the investigation of claims by and against the Defendants and their affiliates in connection with the pre-receivership financing and related counterclaims filed by the Receivership Entities prior to the appointment of the Receiver.  The Receiver is providing K&S with all relevant background documents, emails, and

other information to assist with their investigation and evaluation of such claims and counterclaims filed by the Receivership Entities. K&S also has been actively involved in discussions with counsel for the counterclaimants.

## II.   PRELIMINARY FORENSIC ANALYSIS OR RECONCILIATION

### A.  Financial Data

The Receiver has (a) collected Receivership Entity bank account statements; (b) analyzed variances between the Receivership Entities' QuickBooks data and bank statement data; and (c) prepared a database of individual transactions from the Receivership Entities' bank and credit card statements for further analysis. The Receivership Team continues to work with multiple banking institutions (including Wells Fargo, PNC, Citizens Bank, and JPMorgan Chase) to recover details of wire transfers, account and credit card/line of credit statements, and other related information (including, without limitation, drafting and serving subpoenas for such information). An investigation of the Receivership Entities' application for, receipt of, and disbursement of proceeds from "Paycheck Protection Program" loans also is ongoing.

### B.  Friends & Family Notes

Following receipt of physical copies of the F&F Notes, amendments thereto, and related ancillary documents, the Receiver and his team have commenced the reconciliation and analysis of the F&F Notes among the Receivership Entities' accounting records, schedule of noteholders kept by the Receivership Entities, and bank records. There are numerous notes, amendments, and maturity extensions that are being reviewed and entered into a database for further analysis. From the Receivership Team's initial review, there is no standard return or fee for post-maturity extension. The Receiver has requested and subpoenaed bank records from certain banks to identify

both the origin of payments received as well as destination of payments made in order to verify not only the F&F Note transactions, but also the source and use of other unidentified wire transfers.

### C.  Accounts Payable

The Receiver and his team continue to receive communications from vendors that believe they have unpaid invoices.  The Receiver requests copies of these invoices to see if they previously have been entered into the Receivership Entities' accounting system or need to be added.  Further, an analysis of trade accounts payable has revealed that approximately 231 vendors are owed nearly $42 million.  This reconciling activity is beneficial to the stakeholders of the receivership, or a bankruptcy, as it assists with the accuracy of possible vendor claims.

### D.  Tax Matters

The Receivership Entities did not file income tax returns for the period 2019-2021.  The Receiver has received a proposal letter from a super-regional accounting firm that has significant experience assisting with tax preparation for entities in receivership.  The Receiver believes it is important to inform the Court that the accounting firm that prepared the TGI 2018 tax returns declined the Receiver's request to prepare the delinquent tax returns and tax returns for 2021.

In addition, during the Reporting Period, the Receivership Team prepared and distributed IRS Form W-2s and IRS Form 1099s to appropriate parties for 2021 and is working with recipients to make amendments as necessary.

## III.   RECEIVERSHIP FINANCING

The Receiver also retained K&S in relation to the proposed Receivership financing.  In accordance with the authority granted under the Receivership Order, the Receiver negotiated a term sheet at arms' length for a $5,000,000 loan to fund the sale processes.  On December 28, 2021, the Receiver filed a motion for an Order approving such financing (the "Financing Motion").

[Doc. 149].   The Receivership financing term sheet provides for a first-priority, priming lien, interest at the rate of 12% per annum, and a maturity date six (6) months after execution.

The Litigation Funder, an unsecured creditor not a party to this action, filed an objection to the Financing Motion, to which the Receiver filed a reply.   On February 16, 2022, the Court entered an Order approving the Financing Motion.   [Doc. 205].

## IV.   DISPOSITION OF SIGNIFICANT ASSETS

### A.   FCC and NOAA Licenses

The primary assets of the Receivership Entities are the FCC spectrum and license and the National Oceanic and Atmospheric Administration ("NOAA") license.   Prior to the Reporting Period, the Receivership Team completed the necessary filings with the FCC to transfer control of these licenses to the Receivership.   On or about January 12, 2022, the FCC granted the Receiver's applications for consent to the involuntary transfer of the satellite license and the experimental license.

Prior to the entry of the PJT Retention Order, PJT and the Receivership Team already had undertaken substantial work in preparing for the marketing of the FCC and NOAA licenses.   PJT and the Receiver's financial advisor, B. Riley, began reviewing available documents for the purposes of populating a data room.   A data room service provider has been selected and a contract for such service has been executed.   PJT and B. Riley also have been working with Akin Gump Strauss Hauer & Feld LLP, the firm representing the Receiver with respect to the FCC, to identify available and other necessary documents that potential bidders will require to make an informed bid for the assets.

PJT has provided the Receiver with a preliminary list of over 50 potential bidders across multiple user categories for the Receivership Entities' license assets.   As of the date of this Report, at least one (1) interested party has executed a non-disclosure agreement for access to the virtual

data room.  The estimated timeline for the sale process, excluding time for FCC review and Court approval, is:

- o   Preparation & Planning – 30 days (ongoing)

- o   Marketing – 30 days

- o   Diligence and Initial Bids – 30-45 Days

- o   Approvals & Final Bids – 30-45 days

### B.  Aircraft

Assets of the Receivership Entities that will not be part of sale process undertaken by PJT include a non-functional aircraft, a functional aircraft currently on lease to a third party, sensing equipment, and a contract for the production of three (3) aircraft where a substantial deposit was made.

The Receiver has requested proposals from Gordon Brothers Group, LLC, Tiger Capital Group, LLC, and B. Riley Wholesale & Industrial Asset Disposition Group, an affiliate of the Receiver's firm, to conduct an auction of the inoperable aircraft and sensing equipment.  The lessee of the functional aircraft is interested in purchasing the aircraft at the end of the lease, and the Receiver is working with the production company to sell the three (3) aircraft under contract.

### V.   DISPOSITION OF *DE MINIMIS* ASSETS

During the Reporting Period, the Receiver filed a motion for an Order establishing procedures for the sale or disposition of *De Minimis* Assets (the "Sale Motion"), defined therein to include assets that are proposed to be sold with a gross selling price less than or equal to $100,000 in the aggregate and that are proposed to be sold in a transaction, or in a series of related transactions, to a single buyer or group of related buyers.  [Doc. 140]  There were no objections to the Sale Motion and, on February 16, 2022, the Court entered an Order approving the Sale Motion (the "Sale Order").  [Doc. 205].

- 11 -

As example of such *De Minimis* Assets is the significant amount of office furniture in the Receivership Entities' former Washington, D.C. offices.  The Receiver has contacted several office furniture resellers regarding interest in purchasing the furniture and has had two (2) firms walk through the office space.  The Receiver has accepted an offer to purchase the office furniture for $10,450.  Separately, the Receiver is considering an offer of $8,400 for a copier located at the Receivership Entities' New Mexico premises.  Pursuant to the Sale Order, the Receiver is preparing a notice regarding such sales to file with the Court.

Dated:  February 22, 2022
      New York, New York

Respectfully submitted:

REED SMITH LLP

By: */s/ Kurt F. Gwynne*
    Kurt F. Gwynne (No. 5605206)
    Christopher A. Lynch (No. 4243655)
    599 Lexington Avenue
    New York, New York 10022
    Telephone:  (212) 521-5400
    Facsimile:  (212) 521-5450
    E-mail:  kgwynne@reedsmith.com
          calynch@reedsmith.com

      - and -

    Jason D. Angelo, Esq. (admitted *pro hac vice*)
    1201 N. Market Street, Suite 1500
    Wilmington, Delaware 19801
    Telephone:  (302) 778-7500
    Facsimile:  (302) 778-7575
    E-mail:  jangelo@reedsmith.com

    *Counsel for Michael Fuqua, in his capacity as*
    *Receiver of Theia Group, Inc., Theia Aviation LLC,*
    *and Theia Holdings A, Inc.*