UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                              Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                             Defendants.

21 Civ. 6995 (PKC)

**FIRST APPLICATION FOR ALLOWANCE OF
COMPENSATION AND REIMBURSEMENT OF EXPENSES
OF REED SMITH LLP, AS COUNSEL TO RECEIVER**

Reed Smith LLP ("Reed Smith" or the "Firm"), counsel to Michael Fuqua, as receiver (the "Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), respectfully submits this application (this "Application"), pursuant to the *Order Appointing Michael Fuqua as Receiver* (Doc. 117) signed on November 8, 2021 (the "Receivership Order") for an allowance of compensation in the amount of $1,212,009.50, reimbursement of expenses in the amount of $61,961.99, and approval of a security retainer in the amount of $50,000, for a total of $1,323,971.49 in the above-captioned matter (this "Case") for the period of November 4, 2021 through March 31, 2022 (the "Application Period"). In support of the Application, Reed Smith contemporaneously has filed the (i) *Declaration of Kurt F. Gwynne, Esq., in Support of First Application for Allowance of Compensation and Reimbursement of Expenses of Reed Smith LLP, as Counsel to Receiver* (the "Gwynne Decl."), and (ii) *Declaration of Rizwan A. Qureshi, Esq., in Support of First Application for Allowance of Compensation and*

*Reimbursement of Expenses of Reed Smith LLP, as Counsel to Receiver* (the "Qureshi Decl."). In further support of the Application, Reed Smith respectfully states as follows:

## BACKGROUND

1. On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") appointed the Receiver as a federal receiver for the assets of the Receivership Entities pursuant to the Receivership Order.

2. The Court authorized the Receiver to retain professionals (the "Retained Personnel") to assist him in carrying out the duties and responsibilities in the Receivership Order "on terms the Receiver determines to be reasonable in his discretion." *See* Receivership Order, ¶ 11. The Receiver and any Retained Personnel are entitled to (i) reasonable compensation for the performance of duties under the Receivership Order and (ii) the cost of actual and reasonable out-of-pocket expenses incurred by the Receiver and any Retained Personnel for those services authorized by the Receivership Order that were (i) reasonably likely to benefit the receivership estate or (ii) necessary to the administration of the estate. *Id.*

3. The Receivership Order further provides that (i) "[t]he Receiver may make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by," the Receivership Order and (ii) Retained Personnel hired by the Receiver "shall be compensated solely out of funds now held by or in the possession or control of or which may in the future be received by the Receivership Entities." *See* Receivership Order, ¶¶ 7, 11. The Receiver is required to obtain the approval of the Court for any payment or disbursement to the Receiver or his firm or that exceeds $300,000. *See Id.*, ¶ 7.

4. The Receiver retained Reed Smith as his counsel in this Case. *See* Gwynne Decl., ¶ 6. The Reed Smith professionals engaged to represent the Receiver constitute "Retained Personnel" under the terms of the Receivership Order.

5. During the Application Period, Reed Smith assisted the Receiver, as agent of the Court, in connection with the Court's directives that the Receiver (i) "take exclusive custody, control, and possession" of the Receivership Entities' assets; (ii) "take all steps necessary to secure the business premises of the Receivership Entities and any and all other premises under the control of the Receivership Entities;" (iii) "preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets;" (iv) "seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ('FCC') License Assets;" and (v) "borrow funds on behalf of the receivership estate." *See* Receivership Order, ¶¶ 3, 6, 7, 8, 13; *see also* Gwynne Decl., ¶ 7.

## REED SMITH'S APPLICATION FOR COMPENSATION

### Compensation Paid and Its Source

6. All services and costs for which Reed Smith seeks compensation were performed for, or on behalf of, the Receiver and the Receivership Entities during the Application Period. *See* Gwynne Decl., ¶ 8.

### Fee Statement

7. The fee statement for Reed Smith for the Application Period is attached to this Application as **Exhibit B**. This statement contains daily time logs describing the time spent by each attorney and paraprofessional for the Application Period, and is separated into two separate categories: (i) general legal counsel to the Receiver in connection with his exercise of his duties as Receiver (Matter No. 60001) and (ii) counsel with respect to the ongoing Department of Justice investigation into the Receivership Entities (Matter No. 60002). *See* Gwynne Decl., ¶ 9.

8.      The billing rates for the Reed Smith professionals that worked on this Case, as set forth in **Exhibit C**, are those Reed Smith customarily charges for legal services to other clients of the Firm.  *See* Gwynne Decl., ¶ 10.

9.      Reed Smith reduced the amount of its requested fees by $59,805 (89.30 hours) in the aggregate, which represents the sum of (a) fees in the amount of $50,762 (73.90 hours) incurred while working on matters related to the receivership financing with respect to which King & Spalding LLP has since been engaged, including, without limitation, fees and expenses incurred in (i) negotiating the terms and conditions of the receivership financing with counsel for FCS Advisors, LLC ("FCS"); (ii) investigating and analyzing the nature and extent of FCS' liens against and security interests in property of the Receivership Entities; (iii) analyzing and researching the validity of the Receivership Entities' counter-claims asserted against FCS in this Case; and (iv) research, analysis, and drafting in connection with the Receivers' response to *Non-Party Creditor TG Capital Services LLC's Memorandum of Law in Opposition to the Receiver's Motion to Obtain a First Priority Priming Loan Facility from Plaintiff/Brevet* (Doc. 167) and (b) fees in the amount of $9,043 (15.40 hours) incurred by certain *de minimis* timekeepers who billed 2.00 hours or less during the Application Period.  *See* Gwynne Decl., ¶ 11.

10.     In addition to the fees and expenses incurred during the Application Period, Reed Smith is requesting the advancement of a security retainer in the amount of $50,000, which has been included in the 13-week budget approved by FCS, in its capacity as lender pursuant to the *Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC* (Doc. 206).  *See* Gwynne Decl., ¶ 12.

**Cumulative Compensation Summary By Reed Smith Professionals**

*Matter No. 60001—General Legal Counsel to the Receiver*

| Professional | Position, Year Assumed Position, Prior Relevant Experience, Year Obtained Relevant License to Practice | 2021 Rate | 2022 Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Kurt F. Gwynne | Partner; Member of the Pennsylvania Bar since 1992; Member of the New York, Delaware and New Jersey Bars. Joined the Firm in 2001. | $1,055.00 | $1,125.00 | 162.90 | $177,907.50 |
| Mark S. Hersh | Partner, Member of the Illinois Bar since 1983; Joined the Firm in 2000. | $910.00 | N/A | 2.90 | $2,639.00 |
| Christopher A. Lynch | Counsel; Member of the New Jersey and New York Bars since 2004; Joined the Firm in 2009. | $880.00 | $935.00 | 81.40 | $74,140.00 |
| Brian M. Schenker | Partner; Member of the Pennsylvania and New Jersey Bars since 2008; Joined the Firm in 2009. | $780.00 | $780.00 | 25.00 | $19,500.00 |
| Jason D. Angelo | Associate; Member of the New Jersey Bar since 2013; Member of the Delaware, Pennsylvania and New Jersey Bars; Joined Firm in 2018. | $605.00 | $695.00 | 377.00 | $248,227.00 |
| Kathryn M. Bayes | Associate; Member of the California Bar since 2021; Joined the Firm in 2021. | $535 | $615 | 2.10 | $1,235.50 |
| Derek M. Osei-Bonsu | Associate; Member of the New York Bar since 2017; Joined the Firm in 2021. | N/A | $575.00 | 3.90 | $2,242.50 |
| Austin D. Skelton | Associate; Joined the Firm in 2021. | N/A/ | $535 | 2.50 | $1,337.50 |
| Emily C. Costantinou | Associate; Member of the Pennsylvania Bar since 2021; Joined the Firm in 2021. | $455.00 | $505.00 | 24.90 | $11,869.50 |
| Jennifer A. Marcolini | Paralegal; Joined the Firm in 2022. | N/A | $395.00 | 20.10 | $7,939.50 |
| Christopher LauKamg | Paralegal; Joined the Firm in 2013. | $350.00 | $375.00 | 98.10 | $35,725.00 |
| Sherri L. Lauritzen | Paralegal; Joined the Firm in 2011. | $350.00 | N/A | 4.60 | $1,655.50 |
| Shikendra B. Rhea | Paralegal; Joined the Firm in 2019. | $295.00 | N/A | 4.20 | $1,245.00 |
| **TOTAL FOR MATTER 60001:** | | | | 809.60 | $585,663.50 |

*Matter 60002—Counsel with respect to Department of Justice Investigation*

| Professional | Position, Year Assumed Position, Prior Relevant Experience, Year Obtained Relevant License to Practice | 2021 Rate | 2022 Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Rizwan (Rizzy) Qureshi | Partner; Member of the New York Bar since 2008; Member of the District of Columbia Bar. Joined the Firm in 2019. | $810.00 | $950.00 | 43.10 | $40,273.00 |
| Justin W. Angotti | Associate; Member of the Virginia Bar since 2021; Joined the Firm in 2021. | $475.00 | $530.00 | 25.40 | $15,113.00 |

| Professional | Position, Year Assumed Position, Prior Relevant Experience, Year Obtained Relevant License to Practice | 2021 Rate | 2022 Rate | Total Hours | Total Fees |
|---|---|---|---|---|---|
| Jonathan S. Barrera | Associate; Member of the California Bar since 2021; Joined the Firm in 2021. | N/A | $595.00 | 75.60 | $39,925.00 |
| Shelley H. Kelly | E-Discovery Associate; Member of the Massachusetts Bar since 2003; Joined the Firm in 2018. | N/A | $470.00 | 6.30 | $2,961.00 |
| Todd R. Fairman | E-Discovery Associate; Member of the Pennsylvania Bar since 1999; Joined the Firm in 2011. | N/A | $300.00 | 329.30 | $98,790.00 |
| Sharon A. Doherty | E-Discovery Associate; Member of the New York Bar since 1988; Member of the Pennsylvania Bar since 2005; Joined the Firm in 2013. | N/A | $250.00 | 275.30 | $68,825.00 |
| Victoria Lee | E-Discovery Associate; Member of the Pennsylvania Bar since 1981; Joined the Firm in 2009. | N/A | $250.00 | 280.60 | $70,150.00 |
| John Muir | E-Discovery Associate; Member of the Pennsylvania Bar since 2001; Joined the Firm in 2012. | N/A | $185.00 | 253.50 | $46,897.50 |
| Arbaaz Rao | E-Discovery Associate; Member of the Pennsylvania Bar since 2018; Joined the Firm in 2019. | N/A | $185.00 | 240.60 | $44,511.00 |
| Adrienne E. Johnson | E-Discovery Associate; Member of the New York Bar since 1982; Member of the Pennsylvania Bar since 1982; Joined the Firm in 2018. | N/A | $165.00 | 266.60 | $43,989.00 |
| Alexander N. Alioto | E-Discovery Associate; Member of the Pennsylvania Bar since 2010; Joined the Firm in 2014. | N/A | $165.00 | 271.70 | $44,830.50 |
| Lance V. McFadden | E-Discovery Associate; Member of the Pennsylvania Bar since 2014; Joined the Firm in 2014. | N/A | $165.00 | 281.80 | $46,497.00 |
| Frank V.G. Arcuri | E-Discovery Associate; Member of the Pennsylvania Bar since 2012; Joined the Firm in 2020. | N/A | $80.00 | 274.10 | $21,928.00 |
| Andrew R. Smith-Hoffman | E-Discovery Associate; Member of the Pennsylvania Bar since 2004; Joined the Firm in 2020. | N/A | $80.00 | 276.00 | $22,080.00 |
| William L. Puchnick | E-Discovery Associate; Member of the Pennsylvania Bar since 1989; Joined the Firm in 2019. | N/A | $80.00 | 244.70 | $19,576.00 |
| **TOTAL FOR MATTER 60002:** | | | | 3144.60 | $626,346.00 |

| | |
|---|---|
| **Grand Total:** | $1,212,009.50 |
| **Attorney Compensation:** | $1,165,444.50 |
| **Total Attorney Hours:** | 3,827.20 |
| **Non-Attorney Compensation:** | $46,565.00 |
| **Total Non-Attorney Hours:** | 127.00 |
| **Blended Rate (All Timekeepers):** | $385.43 |

**Summary of Services Rendered**

11. Reed Smith worked expeditiously and efficiently with the Receiver and his team to provide legal services to the Receiver. *See* Gwynne Decl., ¶ 14; Qureshi Decl., ¶ 8. As set forth in the invoices attached as **Exhibit C**, the activities performed and services provided by Reed Smith during the Application Period include, without limitation, the following:

   a. **Notices of Receivership**. Reed Smith assisted with the drafting and filing of various *Notices of Receivership* pursuant to 28 U.S.C. § 754 in each of the federal District Courts in which property of the Receivership Entities (based on information to date) is or may be located.

   b. **Notices of Stay and Extension of Stay**. Following a review of the Receivership Entities' records and a nationwide search of pending litigations (or arbitrations) in state and federal courts, Reed Smith assisted with the drafting and filing of *Notices of Receivership Stay* and *Notices of Extension of Receivership Stay* in fifteen (15) pending litigation matters and corresponded with counsel to adversaries in such actions regarding receivership process.

   c. **Turnover of Client Files**. Reed Smith contacted a number of law firms and attorneys previously engaged by the Receivership Entities and directed such professionals to turn over to the Receiver their legal files concerning the Receivership Entities. Reed Smith professionals and the Receiver have or are in the process of reviewing and analyzing certain of such files.

   d. **Engagement with Directors & Officers**. Together with the Receiver, Reed Smith engaged with, and conducted interviews of, certain former officers and members of the board of directors of the Receivership Entities and their subsidiaries and affiliates. The Firm also assisted with the turnover of property of the Receivership Entities in the possession or control of current and former officers and members of the board of directors. Further, Reed Smith assisted the Receiver with the termination of such individuals' agency or other authority to bind the Receivership Entities. Separately, Reed Smith analyzed the Receivership Entities' Directors & Officers' liability insurance policies and claims asserted thereunder.

   e. **Financial & Corporate Information**. Reed Smith assisted the Receiver's ongoing efforts to obtain all information related to the Receivership Entities' finances, including all bank account records. In connection with such efforts, Reed Smith prepared and issues subpoenas *duces tecum* to Wells Fargo and PNC Bank, whereby the Receiver requested the production of documents and electronically stored information related to certain checking and credit card accounts identified as being held at each respective financial institution in the name of one or more of the Receivership Entities. Reed Smith also assisted the Receiver in his investigation

of the Receivership Entities' use of "CARES ACT" / "Payment Protection Program" funds, and engaged with JP Morgan Chase regarding the related Small Business Administration guaranty with respect to such amounts. Additionally, the Firm subpoenaed the Receivership Entities' registered agents and obtained information regarding the corporate structure and history of the Receivership Entities and dozens of related entities.

f. **Unexpired Leases & Executory Contracts.** Reed Smith reviewed and analyzed lease agreements concerning premises previously occupied by one or more of the Receivership Entities and engaged in discussions with certain landlords regarding the receivership process. The Firm also reviewed and analyzed numerous employment, consulting and other service agreements to which the Receivership Entities were a party. Thereafter, Reed Smith drafted and filed a motion for an Order authorizing the rejection (to the extent executory or unexpired) of certain contracts and leases set forth therein.

g. **"Friends & Family" Notes.** Reed Smith coordinated the Receiver's obtaining possession and reviewing of hundreds of "friends & family" notes (along with amendments thereto, and related ancillary documents).

h. **Receivership Financing.** Prior to the entry of the Court's *Order to Show Cause*, Reed Smith assisted the Receiver in negotiating a term sheet providing for, *inter alia*, a $5,000,000 loan, a first-priority, priming lien, interest at the rate of 12% per annum, and a maturity date six (6) months after execution. Reed Smith drafted the loan documents related to the receivership financing and also drafted and filed a motion for an Order approving such financing. The Firm conducted lien searches and analyses with respect to property subject to the Uniform Commercial Code, along with intellectual property and items subject to the Federal Aviation Administration's lien registry system. To address the concerns set forth in the *Order to Show Cause*, the Receiver retained King & Spalding LLP to represent him in relation to the financing. Working with the Receiver, King & Spalding LLP confirmed that the financing was fair and appropriate. The Court thereafter approved the financing.

i. **Sales Processes**. With respect to the sale of the FCC and NOAA licenses, Reed Smith assisted the Receiver in the negotiation of the terms of retention of PJT Partners LP ("PJT") as investment banker and drafted a motion to approve such retention. The Firm assisted in the ongoing sales process by drafting non-disclosure agreements ("NDAs") and working closely with PJT to develop a "process letter," address confidentiality concerns, and strategizing regarding the sales process and procedures. Reed Smith also negotiated multiple NDAs with potential purchasers. Additionally, to aid in the efficient liquidation of the Receivership Entities' assets, Reed Smith drafted and filed a motion for an Order establishing procedures for the sale or disposition of *de minimis* assets with a gross selling price less than or equal to $100,000. The Court granted the requested relief, and Reed Smith has since

assisted the Receiver in connection with the ongoing disposition of *de minimis* assets and the required notice thereof.

j. **Miscellaneous Court Filings.**  In addition to the motions discussed above (including with respect to the rejection of unexpired leases and executory contracts, the receivership financing; the retention of PJT as investment banker, and the *de minimis* asset sales and abandonment procedures), Reed Smith drafted, filed, and served multiple notices of subpoenas *duces tecum*, stipulations with third parties regarding the extension of certain deadlines, certificates of no objection, a certification of counsel, and responses to various objections to the relief sought by the aforementioned motions.

   Further, Reed Smith assisted the Receiver in drafting and filing his first two (2) interim status reports to the Court.  The Firm also maintains and regularly updates the "master service list" of the individuals and entities that are parties in interest and entitled to receive notice of the Receiver's filings in this Case.

   Reed Smith did not bill the Receiver with respect to time incurred in responding to *Non-Party Creditor TG Capital Services LLC's Memorandum of Law in Opposition to the Receiver's Motion to Obtain a First Priority Priming Loan Facility from Plaintiff/Brevet* (Doc. 167) and, accordingly, reduced the Firm's fees by $50,742.

   Reed Smith drafted the Receiver's response to the Court's *Order to Show Cause* regarding the continuing of the receivership after March 9, 2022.

   Reed Smith drafted a motion seeking entry of an Order extending the receivership stay by approximately five (5) months, through and including July 15, 2022, without prejudice to the Receiver's right to request further extensions of the receivership stay, which the Court granted.

k. **DOJ Investigation.**  Reed Smith has and continues to assist the Receiver in responding to four (4) grand jury subpoenas issued by the United States District Court for the District of Columbia to produce certain documents, including two (2) subpoenas issued to the Receivership Entities prior to the Receiver's appointment. Reed Smith's review is intended to ensure the Receiver maintains the legal and evidentiary privileges of the Receivership Entities, as well as to comply with any existing agreements between the Receivership Entities and third parties to prevent disclosure of confidential or proprietary information.  Reed Smith has worked to ensure that any production of responsive documents to the U.S. Attorney's Office for the District of Columbia does not create legal exposure for the Receivership Entities by inadvertently waiving privilege or disclosing confidential or proprietary documents in breach of an agreement with a third party, which could also affect the Receiver's ability to maximize the value of the Receivership Entities' assets. Reed Smith assisted the Receiver and his team with a substantial amount of work assembling, reviewing, and producing tens of thousands of pages of documents in regard to the subpoena and related information requests from the U.S. Attorney's

Office for the District of Columbia. Reed Smith's review and analysis of the Receivership Entities' files is ongoing, and documents are being produced on a rolling basis.

*See generally* Gwynne Decl., ¶ 14; Qureshi Decl., ¶¶ 6-8.

## **Actual and Necessary Expenses**

12. Reed Smith incurred $61,961.99 in reasonable and necessary expenses during the Application Period. *See* Gwynne Decl, ¶ 15; Qureshi Decl., ¶ 11. Such expenses were actual and necessary in connection with the services rendered by the Firm on behalf of the Receivership Entities. *Id*. The Firm's rate for duplication is $0.10 per page. The Firm also uses outside duplication services for large photocopy work. Reed Smith utilized DLS Discovery for large mailings of significant filings to over 320 parties-in-interest, including holders of "friends and family" notes and former third-party consultants hired by the Receivership Entities. *Id*. Additionally, the Firm utilized "Gravity Stack," a Reed Smith subsidiary that provides complete, end to end managed services in litigation and internal investigations, to assist with data collection, processing, hosting, and production in connection with the ongoing Department of Justice investigation. *Id*.; Qureshi Decl., ¶ 11. A summary of the actual and necessary expenses incurred by Reed Smith during the Application Period is attached as **Exhibit C**.

13. Reed Smith believes the foregoing rates are at or below the market rates that the majority of law firms charge clients for such services. *See* Gwynne Decl, ¶ 15. In addition, Reed Smith believes that such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges. *Id.*

## **Charges for Legal Services**

14. Attorneys and paraprofessionals of Reed Smith have expended a total of 3,954.20 hours in connection with this matter during the Application Period, as follows:

| ATTORNEYS | HOURS | 2021 RATE | 2022 RATE |
|---|---|---|---|
| Kurt F. Gwynne | 162.90 | $1,055.00 | $1,125.00 |
| Mark S. Hersh | 2.90 | $910.00 | N/A |
| Christopher A. Lynch | 81.40 | $880.00 | $935.00 |
| Rizwan (Rizzy) Qureshi | 43.10 | $810.00 | $950.00 |
| Brian M. Schenker | 25.00 | $780.00 | $780.00 |
| Jason D. Angelo | 377.00 | $605.00 | $695.00 |
| Kathryn M. Bayes | 2.10 | $535.00 | $615.00 |
| Derek M. Osei-Bonsu | 3.90 | N/A | $575.00 |
| Austin D. Skelton | 2.50 | N/A/ | $535.00 |
| Justin W. Angotti | 25.40 | $475.00 | $530.00 |
| Emily C. Costantinou | 24.90 | $455.00 | $505.00 |
| Jonathan S. Barrera | 75.60 | N/A | $595.00 |
| Shelley H. Kelly | 6.30 | N/A | $470.00 |
| Todd R. Fairman | 329.30 | N/A | $300.00 |
| Sharon A. Doherty | 275.30 | N/A | $250.00 |
| Victoria Lee | 280.60 | N/A | $250.00 |
| John Muir | 253.50 | N/A | $185.00 |
| Arbaaz Rao | 240.60 | N/A | $185.00 |
| Adrienne E. Johnson | 266.60 | N/A | $165.00 |
| Alexander N. Alioto | 271.70 | N/A | $165.00 |
| Lance V. McFadden | 281.80 | N/A | $165.00 |
| Frank V.G. Arcuri | 274.10 | N/A | $80.00 |
| Andrew R. Smith-Hoffman | 276.00 | N/A | $80.00 |
| Bill L. Puchnick | 244.70 | N/A | $80.00 |

| PARAPROFESSIONALS | HOURS | 2021 RATE | 2022 RATE |
|---|---|---|---|
| Jennifer A. Marcolini | 20.10 | N/A | $395.00 |
| Christopher LauKamg | 98.10 | $350.00 | $375.00 |
| Sherri L. Lauritzen | 4.60 | $350.00 | N/A |
| Shikendra B. Rhea | 4.20 | $295.00 | N/A |

15. The nature of the work performed by these persons is fully set forth in the attached **Exhibit B**. The charges for the services rendered by Reed Smith to the Receiver and the Receivership Entities during the Application Period is $1,212,009.50. A monthly breakdown of the compensation sought for and the number of hours worked by each Reed Smith professional in connection with this Case is set forth in **Exhibit D**.

16. Reed Smith respectfully submits that the amounts requested are reasonable given (a) the complexity of this Case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, (e) the value of property of the estate enhanced, preserved

and protected, and (f) the costs of comparable services (including in cases other than a receivership case). *See* Gwynne Decl. ¶ 16; Qureshi Decl., ¶ 12.

17. This Application covers the period from November 4, 2021, through March 31, 2022. Although every effort was made to include all fees and expenses from the Application Period in this Application, some fees and/or expenses from the Application Period might not be included in this Application due to delays in processing time and receipt of invoices for expenses and/or for preparation of the instant Application subsequent to the Application Period. Accordingly, Reed Smith reserves the right to make further applications to the Court for allowance of fees and expenses not included herein.

## REQUESTED RELIEF

18. By this Application, the Receiver respectfully requests entry of an Order, in substantially the form attached as **Exhibit A** (the "Proposed Order"), allowing and approving compensation to Reed Smith in the amount of $1,212,009.50, reimbursement of expenses in the amount of $61,961.99, and payment a security retainer in the amount of $50,000, for a total of $1,323,971.49 for the Application Period[1] and (ii) granting such further relief as is appropriate.

## BASIS FOR RELIEF

19. The professionals retained by a court-appointed receiver are entitled to reasonable compensation for services rendered and expenses incurred. *SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008). When granting fee awards, district courts are given "broad discretion" in

---

[1] On or about March 17, 2022, the Receiver wired $292,520.98 (consisting of $242,520.98 of Reed Smith's fees and expenses incurred under the "General Counsel" matter from November 4, 2021 through December 31, 2021, *plus* a $50,000 security retainer) to Reed Smith. *See* Gwynne Decl. ¶ 13. On or about March 28, 2022, the Receiver wired $89,072 (i) in full payment of fees incurred under the "DOJ Investigation" matter from December 1, 2021 through January 31, 2022 and (ii) in partial payment of fees and expenses incurred between February 1, 2022 through February 28, 2022. *Id*.

determining what is reasonable under the circumstances. *See Baron v. Vullo*, 699 F. App'x 102, 103 (2d Cir. 2017) (Court has broad discretion in setting and approving the fees of receivers and professionals); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *SEC v. Northshore Asset Mgmt.*, 2009 U.S. Dist. LEXIS 89947, *3 (S.D.N.Y. Sept. 29, 2009).

20.   In determining what constitutes reasonable compensation for a receiver's professionals, the Court considers all of the factors involved in a particular receivership, such as (1) "the complexity of problems faced," (2) "the benefit to the receivership estate," (3) "the quality of the work performed," and (4) "the time records presented." *SEC v. Qin*, 2021 U.S. Dist. LEXIS 195124, *2 (S.D.N.Y. Oct. 4, 2021) (citing *Byers*, 590 F. Supp. at 644); *see also SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) (same). *Accord SEC v. Morgan*, 504 F. Supp. 3d 221, 223 (W.D.N.Y. 2020) (approving request for compensation where the issues being litigated were complex; the efforts of the receiver and his professionals resulted in significant benefits to the receivership estate; the services performed were satisfactory; the receiver submitted detailed, contemporaneous time records reflecting his work and that of other professionals; and the rates were reasonable and consistent with those previously approved by the court.); *see also* 6 A.L.R. Fed. 817, at §§ 7-12 (discussing factors).

21.   In addition to fees, the Receiver's professionals are "entitled to be reimbursed for the actual and necessary expenses" that were "incurred in the performance of [their] duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, 2013 U.S. Dist. LEXIS 172430, *3 (M.D. Fla. Dec. 6, 2013). Reed Smith supports its claims for reimbursement of expenses with "information for the Court to determine that the expenses are actual and necessary costs of preserving the estate." *SEC v. Kirkland*, 2007 U.S. Dist. LEXIS 9858, *2 (M.D. Fla. Feb. 13, 2007) (citing *In re Se. Banking Corp.*, 314 B.R. 250, 271 (Bankr. S.D. Fla. 2004)).

22.     Further, "[t]he general rule regarding payment of receivership expenses is that '[c]osts and expenses of a receivership, including compensation for the receiver, counsel fees, and obligations incurred by him in the discharge of his duties, constitute a first charge against the property or funds in the receivership.'" *Gaskill v. Gordon*, 1993 U.S. Dist. LEXIS 2888, *6 (N.D. Ill. Mar. 5, 1993) (quoting 66 AM. JUR.2D RECEIVERS § 281).  As such, payment of costs and fees to a court-appointed and approved receiver and their professional team have been given top priority by the courts.  *See, e.g.*, *SEC v. Rex Venture Group LLC*, 2014 U.S. Dist. LEXIS 45078, *9-10 (W.D.N.C. Mar. 26, 2014).

23.     Applying these standards, and as detailed above and in the narrative descriptions in the invoices attached as **Exhibit B**, Reed Smith respectfully submits that it has demonstrated that the fees and expenses requested for payment at this time are appropriate.  Reed Smith respectfully submits that it has provided extensive legal services for the benefit of the Receivership Entities and their estates.  *See, e.g.*, **Exhibit B**; Gwynne Decl., ¶ 14; Qureshi Decl., ¶ 12.  Moreover, the issues involved in this Case are highly complex and cover a wide range of subject matters.  The invoices submitted contemporaneously with this Application indicate that Reed Smith worked diligently in performing services on behalf of the Receiver and the Receivership Entities.  *See* **Exhibit B**.  Accordingly, Reed Smith respectfully submits that the amounts requested by this Application are fair and reasonable.

24.     The requested compensation is in line with similar requests approved by courts in this District and the Second Circuit.  *See., e.g.*, *SEC v. Qin*, 2021 U.S. Dist. LEXIS 195124, *1-2 (awarding receiver's counsel $671,973.70 in compensation for a thirty (30) day period); *Byers*, 590 F. Supp. 2d at 644-45 (awarding and deeming as reasonable, for a twenty (20) day period, $1,718,144.40 in compensation and expenses in the amount of $85,840.10); *Mishcon De Reya N.Y.*

*LLP v. Grail Semiconductor, Inc.*, 2014 U.S. Dist. LEXIS 22168, *5-6 (S.D.N.Y. Feb. 20, 2014) (awarding receiver's counsel $224,135.75 in fees and $2,318.20 in expenses).

**WHEREFORE**, Reed Smith respectfully requests that the Court enter the Proposed Order, in substantially the form attached as **Exhibit A**, (i) allowing and approving compensation to Reed Smith in the amount of $1,212,009.50, reimbursement of expenses in the amount of $61,961.99, and payment of a security retainer in the amount of $50,000, for a total of $1,323,971.49 for the Application Period and (ii) granting such further relief to Reed Smith as is appropriate.

Dated: April 15, 2022
New York, New York

Respectfully submitted:

REED SMITH LLP

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne (No. 5605206)
Christopher A. Lynch (No. 4243655)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com
calynch@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*