

Michael J. Barrie
39 Broadway, 25th Floor
New York, New York 10006-3039
Direct Dial: 302.442.7068
Fax: 302.442.7012
mbarrie@beneschlaw.com

April 27, 2022

**Via ECF**

The Honorable P. Kevin Castel
United States Courthouse
500 Pearl St.
New York, NY 10007

Re:    ***FCS Advisors, LLC v. Theia Group, Inc., et al.*, 1:21-cv-06995-PKC (S.D.N.Y.)**
          **Pre-Motion Letter Regarding Motion for Relief from Receivership Stay**

Dear Judge Castel:

We represent non-party Stephen Buscher ("Mr. Buscher") a former employee and creditor of the defendants in the above-captioned action (the "Receivership Entities"). We write pursuant to Rule 3(A) of the Court's Individual Practices to request that this Court allow Mr. Buscher to file a motion for relief (the "Motion") from this Court's Orders imposing a stay of all litigation against the Receivership Entities through July 15, 2022. *See* D.I. 117 (the "Receivership Order") ¶ 4; D.I. 219 (extending stay to July 15, 2022; such stay, the "Receivership Stay"). Mr. Buscher wishes to file the Motion so that he may pursue an arbitration against the Receivership Entities to enforce his contractual rights for the limited purpose, at this time, of liquidating his claims. We are unaware of any conference scheduled before the Court.

## I.    FACTUAL BACKGROUND

Mr. Buscher is a former employee and CFO of Theia Group, Inc. ("Theia") who was retaliated against by Theia for exposing possible self-dealing and misrepresentations. In May 2021, he alerted people in his chain of authority at Theia to several disturbing discoveries. Those discoveries pertained, in part, to the actions of certain shareholders who were also executives and board members ("Concerning Individual(s)").

Mr. Buscher was concerned that the Concerning Individuals were engaged in what appeared to be self-dealing and had used misleading information to induce investments in Theia.

Within days of Mr. Buscher reporting his discoveries to persons in his chain of authority, three notable things happened: (1) the majority of Theia's Board resigned; (2) the Concerning Individuals started a campaign of harassing and threatening behavior directed towards Mr. Buscher; and (3) Theia cut off Mr. Buscher from all access to Company records and, eventually, replaced him by hiring a new CFO without his knowledge.

The Honorable P. Kevin Castel
April 27, 2022
Page 2

Following the Company's constructive discharge of Mr. Buscher, it failed to pay him wages and other compensation due to him under the parties' amended Consulting Agreement entered into as of December 31, 2020 ("Amended Consulting Agreement").  A copy of the Amended Consulting Agreement, and its exhibits, is attached hereto as **Exhibit 1**.

The Amended Consulting Agreement contains a broad arbitration provision by which Theia and Mr. Buscher "agree[d] that any dispute, interpretation, controversy, or claim arising out of or relating to this Agreement shall be settled by arbitration to be held in the State of Delaware before a single arbitrator …."  Ex. 1 § 10.4.

Mr. Buscher seeks to pursue causes of action in arbitration against Theia as a result of Theia's constructive discharge and failure to pay compensation owed of no less than $2.8 million as well as indemnification.  Specifically, Mr. Buscher seeks payment of compensation under the prevailing wage payment statutes, contractual compensation and severance, and indemnification for his legal fees pursuant to his Amended Consulting Agreement.

## II.   LEGAL BASIS FOR MR. BUSCHER'S ANTICIPATED MOTION FOR RELIEF FROM THE RECEIVERSHIP STAY

The Receivership Order provides that "[a]ny party or non-party may seek leave from this Court to commence or maintain an action … upon a showing that such a petition is appropriate and would not interfere with the receivership estate."  Receivership Order [D.I. 117] ¶ 4.  When analyzing a motion to lift a litigation stay in a receivership, courts in the Second Circuit "utilize a three-part test articulated by the Ninth Circuit."  *United States v. JHW Greentree Cap., L.P.*, 2014 WL 2608516, at *4 (D. Conn. June 11, 2014) (citing *S.E.C. v. Wencke*, 622 F.2d 1363 (9th Cir. 1980); *S.E.C. v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("Wencke II")).  That three-part test is as follows:

(1)   whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed;

(2)   the time in the course of the receivership at which the motion for relief from the stay is made; and

(3)   the merit of the moving party's underlying claim.

*Id.* (citation omitted).

At bottom, the *Wencke* test requires a district court to balance the interests of the receiver (here, Michael Fuqua (the "Receiver")) and the moving party.  *See United States v. ESIC Cap., Inc.*, 685 F. Supp. 483, 485 (D. Md. 1988).  Each of the *Wencke* factors favors a lift of the stay to allow Mr. Buscher to bring an arbitration action against the Receivership Entities to determine damages.

The Honorable P. Kevin Castel
April 27, 2022
Page 3

<u>The Balance of Interests Weighs in Favor of Lifting the Stay</u>.  The first *Wencke* factor balances the interests in preserving the receivership estate with the interests of the moving party. *Id.*  Here, this balance weighs in favor of lifting the Receivership Stay because (i) Mr. Buscher's arbitration will not disturb the Receivership estate; and (ii) Mr. Buscher will be substantially injured, both economically and due to the resulting abrogation of his right to contractual arbitration, if he cannot commence his arbitration.

Mr. Buscher's Demand will not interfere with the Receivership estate because at this time Mr. Buscher seeks only to establish liability and liquidate his claim against the Receivership Entities.  Indeed, courts have held that an action such as the arbitration that Mr. Buscher seeks to commence *cannot* be enjoined as part of a receivership.  *See Wolff v. Cash 4 Titles,* 351 F.3d 1348, 1354 n.19 (11th Cir. 2003) (noting that *in personan* lawsuits against a defendant in receivership "cannot be enjoined" and that "[t]he Receiver's interest would be implicated only after the plaintiffs' [*sic*] obtained a money judgment and sought to execute their judgment against the defendants' assets" (citing *Riehle v. Margolies*, 279 U.S. 218 (1929); 65 Am. Jur. 2d Receivers § 365 (2003))).

Moreover, Mr. Buscher faces serious prejudice if he is barred from prosecuting his arbitration rights against the Receivership Entities.  He has already been delayed by several months.  Mr. Buscher should be permitted to liquidate his claims so that it is possible for the Receiver and the Court to determine whether the proceeds from the Receiver's anticipated sale of the Receivership Entities' primary assets, interests in licenses issued by the FCC and the National Oceanic and Atmospheric Administration (the "<u>Licenses</u>"), are sufficient to pay all creditors' claims—including Mr. Buscher's claims—in full.  *See U.S. Sec. & Exch. Comm'n v. Ahmed*, 2020 WL 468443, at *5-6 (D. Conn. Jan. 29, 2020) (lifting receivership stay, in part; holding that first *Wencke* factor weighed in favor of lifting stay because "[g]iven the possible dissipation of assets if and when the Court releases assets after the judgment has been secured, [creditor] … faces a risk that it would not ever recover its unpaid fees from the Relief Defendants if forced to wait to pursue its claims for payment until after the resolution of this case").

If the Receiver determines that the sale proceeds from the Licenses are insufficient to pay all claims in full and commences bankruptcy proceedings, Mr. Buscher would still be denied his day in court until he can obtain relief from the automatic stay in bankruptcy.  *See* 11 U.S.C. § 362.  Thus, it is likely that Mr. Buscher will be waiting several months more at a minimum, and likely much longer, before he will be able to even *begin* to liquidate his claims.  Further delay in this regard is extremely prejudicial to Mr. Buscher, who has been patient so far, but is an individual that remains unemployed after being wrongfully terminated by Theia nearly a year ago already.  Obtaining prompt relief is critical to Mr. Buscher.

Mr. Buscher is further prejudiced by the abrogation of his contractual rights to arbitrate his claims.  The Court here should lift the Receivership Stay given the strong federal policy in favor of arbitration.  Indeed, bankruptcy courts have lifted the automatic stay of the bankruptcy code to allow plaintiffs to pursue broad contractual arbitration rights, such as Mr. Buscher's rights under the Amended Consulting Agreement.  *See In re Winimo Realty Corp.*, 270 B.R. 108, 124-26 (S.D.N.Y. 2001) (holding that bankruptcy court lacked discretion to refuse to compel arbitration where claims were "simply contractual claims derivative of pre-bankruptcy agreements"); *Atl.*

The Honorable P. Kevin Castel
April 27, 2022
Page 4

*Marine, Inc. v. American Classic Voyages, Co.* (*In re: American Classic Voyages, Co.*), 298 B.R. 222, 226 (D. Del. 2003) (reversing and remanding bankruptcy court's denial of motion to modify automatic stay to permit arbitration proceeding noting "strong federal policy favoring arbitration"); *see also In re Transp. Assoc., Inc.*, 263 B.R. 531, 535-37 (Bankr. W.D. Ky. 2001) (holding that bankruptcy trustee, "standing in the shoes of the debtor, a party to the mutually agreed-upon arbitration clause …, must proceed to arbitrate the contractual dispute," arising from claim objection and that delay and expense to estate "associated with the arbitration itself are insufficient reasons to deny arbitration").

In contrast, any impact on the Receiver as a result of Mr. Buscher filing his arbitration Demand will be minimal, because the Receiver has already made substantial progress with respect to the Licenses and has retained separate professionals to exclusively handle the sale process regardless of any arbitration proceeding commenced by Mr. Buscher.  *See* D.I. 195-1, Ex. 1 at pp.1-2 (noting separate counsel retained to handle filings with the FCC and other intellectual property work); D.I. 207 (Order authorizing retention of PJT Partners LP as investment banker).  These professionals can continue to handle the Receiver's sale efforts undisturbed by Mr. Buscher's anticipated arbitration demand.

Finally, allowing Mr. Buscher to proceed with arbitration (involving claims of $2.8 million plus indemnification) is necessary for the Receiver to accurately determine if the sale proceeds are sufficient to pay all claims, which he has stated is his intention.  *See* D.I. 195 ¶¶ 17, 21, 28.

Mr. Buscher is Entitled to Have His Claim Adjudicated Promptly.  The second *Wencke* factor is "the time in the course of the receivership at which the motion for relief from the stay is made."  In this regard, the Ninth Circuit has recognized that, "[a]t some point, persons with claims against the receivership should have their day in court.  The receivership cannot be protected from suit forever." *Wencke II*, 742 F.2d at 1231.

This second *Wencke* factor also weighs in favor of Mr. Buscher.  The Receiver has made substantial progress in his efforts to sell the Receivership Entities' primary assets, the interests in the Licenses.  *See generally* D.I. 195, 229.  During that time, Mr. Buscher has been unemployed since his wrongful termination last year and has been unable to pursue his claims.  There is no good reason to require Mr. Buscher to wait any longer to pursue his bargained-for rights to arbitration.  The Court should permit Mr. Buscher to pursue his claims now rather than denying Mr. Buscher his day in court indefinitely while the Receiver pursues a sale of the Licenses and thereafter determines whether to put the Receivership Entities into bankruptcy.

Mr. Buscher Holds Colorable Claims Against the Receivership Entities.  To satisfy the third *Wencke* factor, the movant need only have a "colorable claim that entitle[s] [him] to a trial on the merits," and courts should not attempt to "decide the merits" of the movant's claim when considering a motion to lift a litigation stay.  *Ahmed*, 2020 WL 468443, at *5; *see also Wencke II*, 742 F.2d at 1232 (holding that district court abused its discretion when it ruled on merits of movant's intended claim in proceeding to lift stay).

Mr. Buscher's claims are more than colorable.  Among other things, Theia undoubtedly breached the Amended Consulting Agreement's requirement that Mr. Buscher was to be the "*sole*

The Honorable P. Kevin Castel
April 27, 2022
Page 5

CFO" of Theia Group, Inc. with "chief oversight of all accounting and financial control functions" (*see* Ex. 1, § 3.3 & Ex. B (emphasis added)).   Theia has admitted in this proceeding that it appointed a new CFO in June 2021, without Mr. Buscher's knowledge and while Mr. Buscher was still serving as CFO.  *See* Declaration of Reid Gorman (D.I. 45)  ¶18 (stating the Mr. Gorman was "offered and accepted the role of [CFO]" in June 2021).  Nor could Theia reasonably dispute that it revoked Mr. Buscher's access to key financial information and controls that he required to perform his job duties as CFO of Theia.

Theia therefore constructively discharged Mr. Buscher without cause in violation of the terms of the Amended Consulting Agreement, entitling Mr. Buscher to compensation as provided for by the Amended Consulting Agreement.  *See* Ex. 1, §7.2 & Ex. A.  Yet Theia has failed to pay Mr. Buscher all amounts owing to him under the Amended Consulting Agreement.

These breaches of the Amended Consulting Agreement damaged Mr. Buscher in an unspecified amount to be proven in arbitration.  That amount, however, will be no less than $2,800,000 based on the terms of the Amended Consulting Agreement.  Thus, Mr. Buscher's claims are colorable and the third *Wencke* factor also weighs in favor of Mr. Buscher.

For all these reasons, we respectfully request that this Court allow Mr. Buscher to file a motion for relief from the Receivership Stay to allow Mr. Buscher to pursue his contractual arbitration rights and liquidate his claims against the Receivership Entities.

### III.    PROPOSED SCHEDULE

Mr. Buscher is prepared to file the Motion as soon as the Court grants him leave to do so and respectfully requests that the Court require any opposition to the Motion ("Answer") be filed within fourteen (14) days after service of the Motion and that any reply to the Answer be filed within seven (7) days after service of the Answer in accordance with Local Civil Rule 6.1(b).

* * *

We thank the Court for its consideration of this request.

Very truly yours,

BENESCH, FRIEDLANDER,
  COPLAN & ARONOFF LLP

*/s/ Michael J. Barrie*

Michael J. Barrie

cc: All Counsel of Record (via ECF)