

**Kurt F. Gwynne**
Direct Phone:  +1 302 778 7550
Email:  kgwynne@reedsmith.com

Reed Smith LLP
1201 North Market Street
Suite 1500
Wilmington, DE 19801-1163
+1 302 778 7500
Fax +1 302 778 7575
reedsmith.com

May 3, 2022

**VIA ECF**

The Honorable P. Kevin Castel
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY  10007

> RE: *FCS Advisors, LLC v. Theia Group, Inc.*, et al., 1:21-cv-06995-PKC (S.D.N.Y.)
> <u>Pre-Motion Letter Regarding Motion of Stephen Buscher for Relief from Receivership Stay</u>

Dear Judge Castel:

We represent Michael Fuqua in his capacity as receiver (the "<u>Receiver</u>") for the defendants in the above-captioned action (the "<u>Receivership Entities</u>").  We write pursuant to Rule 3(A) of the Court's Individual Practices in response to the pre-motion letter request (the "<u>Letter</u>") of Stephen Buscher ("<u>Buscher</u>") for leave to file a motion for relief (the "<u>Motion</u>") from this Court's Orders staying all litigation against the Receivership Entities through July 15, 2022 (the "<u>Receivership Stay</u>").  *See* Doc. 117, ¶ 4; Doc. 219.

### A. Factors for Relief from the Receivership Stay

The Second Circuit has recognized that an anti-litigation injunction or litigation stay in a receivership order is a valid exercise of a district court's equitable powers grounded in the district court's control over property placed in receivership.  *See SEC v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010) ("*Byers II*").  An anti-litigation injunction or stay is "simply one of the tools available to courts to help further the goals of the receivership."  *Id.*  The power to enjoin litigation applies to the assertion of non-parties' claims against the Receivership Entities.  *See, e.g., id.* at 91; *U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 442 (3d Cir. 2005) (affirming receivership litigation stay and adopting standards set forth in *SEC v. Wencke*, 742 F.2d 1230 (9th Cir. 1984) ("*Wencke II*")).[1]

---

[1] Mr. Buscher wrongly asserts that a receivership stay cannot apply to non-parties.  *See* Letter, p. 3.  That assertion, however, is contrary to binding Second Circuit precedent.  *See Byers II*, 609 F. 3d at 91; *see also generally SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980); *United States v. JHW Greentree Capital, L.P.*, 2014 U.S. Dist. LEXIS 60891, 2014 WL 12756827, *4 (D. Conn. Feb. 10, 2014) ("A district court may impose a litigation stay on a non-party to a receivership as part of its inherent power as a court of equity to fashion effective relief."); *Acorn Tech. Fund*, 429 F. 3d at 442 (affirming receivership litigation stay against non-parties); *SEC v. Illarramendi*, 2012 U.S. Dist. LEXIS 8890, 2012 WL 234016 (D. Conn. Jan. 25, 2012) (declining to lift anti-litigation stay to permit non-party to pursue claims in bankruptcy against receivership entities).

ReedSmith

The modification of a litigation stay is subject to a three-pronged test first articulated by the Ninth Circuit in *Wencke II*, which test has since been adopted by the Second Circuit. *See, e.g.*, *SEC v. Byers*, 592 F. Supp. 2d 532, 536-37 (S.D.N.Y. 2008) ("*Byers I*"), *aff'd*, 609 F. 3d 87, 91-92. The *Wencke II* court established the following three (3) factors for determining whether a receivership litigation stay should be lifted:

> (1) whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer substantial injury if not permitted to proceed; (2) the time in the course of the receivership at which the motion for relief from the stay is made; and (3) the merit of the moving party's underlying claim.

742 F.2d at 1231. The burden "is on the movant to prove that the balance of the factors weighs in favor of lifting the stay." *U.S. v. Petters*, 2008 U.S. Dist. LEXIS 100589, 2008 WL 5234527, *3 (D. Minn. Dec. 12, 2008).

### B. Application of *Wencke II* Factors

#### 1. Balancing the Interests of the Parties

The first *Wencke II* factor requires a court to consider "whether refusing to lift the stay genuinely preserves the status quo or whether the moving party will suffer *substantial injury* if not permitted to proceed." 742 F.2d at 1231 (emphasis added).

The purpose of a litigation stay is to enable a receiver to "do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *Acorn Tech. Fund*, 429 F.3d at 443. "The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets," and requiring a receiver to defend lawsuits drains receivership assets. *Liberte Capital Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir. 2006); *see also FTC v. Med Resorts Int'l, Inc.*, 199 F.R.D. 601, 609 (N.D. Ill. 2001) (permitting ancillary litigation would "[n]ot only . . . take [the receiver's] attention away from other tasks, but the assets of the receivership estate would quickly be diminished"). Bearing in mind these realities, "[a] district court should give appropriately substantial weight to the receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate." *Acorn Tech. Fund*, 429 F.3d at 443.

There are more than 400 creditors of the Receivership Entities. Nearly all of them hold claims that have not been liquidated by litigation. It would be manifestly unfair to grant Mr. Buscher relief from the Receivership Stay while all other creditors patiently await the completion of a complex sale process. Opening the floodgates to creditors to liquidate all of their claims would quickly erode the Receivership Entities' limited financing and prejudice the other creditors, who have been cooperatively awaiting the outcome of the sale process. *See Belsome v. Rex Venture Grp., LLC*, 2013 U.S. Dist. LEXIS 181160, 2013 WL 6860303, *7 (W.D.N.C. Dec. 30, 2013) ("Allowing Plaintiffs' purported class action to proceed will open the floodgates to a multiplicity of competing actions seeking to enrich individual plaintiffs and their counsel. This will cause a massive burden and expense on the assets of the Receivership and will ultimately work to the detriment of all other Rex Venture victims who will, through the Receiver, bear the ultimate cost of the increased inefficiency and litigation chaos."). Mr. Buscher's claim is no more (or

less) worthy of liquidation than the claims of many other creditors that are patiently awaiting the outcome of the sale process.

Previously, the Receiver committed to this Court not to engage in a claims allowance process in this receivership action. Instead, the Receiver committed to proceed with a claims allowance process in the bankruptcy court *after* the sale process is completed (and to the extent all creditors are not paid in full).

As the Receiver is charged with protecting the interests of all creditors, the Receiver has a substantial interest in preserving the status quo. The Receiver's interest in preserving the status quo is strong, as the costs of actively defending litigation or arbitration will be a significant drain on receivership assets (regardless of any finding of liability). *See Wells Fargo Bank v. Acropolis Gardens Realty Corp.*, 2019 U.S. Dist. LEXIS 108132, 2019 WL 3293463, *9 (E.D.N.Y. June 26, 2019) ("To preserve the status quo here would require that the assets of AGRC not be disturbed or the attention of the Receiver diverted by satellite litigation.").

Conversely, Mr. Buscher has not (and cannot) articulate any injury, let alone a substantial one, that he would suffer should the litigation stay remain in place. Mr. Buscher's argument is that he should be permitted to proceed with arbitration *now* because his claim needs to be liquidated so that the Receiver will know if the sale proceeds are sufficient to pay all creditors in full. That argument, however, does not constitute any prejudice to Mr. Buscher. Of course, the arbitration of Mr. Buscher's claim very likely would not be concluded until *after* the sale process has generated a successful purchaser.

Further, Mr. Buscher does not allege that continuing the Receivership Stay would either (i) risk the loss or potential destruction of any documentary evidence or (ii) lead to the disappearance or unavailability of any witnesses. Mr. Buscher only asserts that he has been unemployed since he *resigned* from his former position with the Receivership Entities, thereby implying some financial harm to Mr. Buscher if he cannot proceed with his claims against the Receivership Entities. As he alleged in another lawsuit that he filed in 2020, Mr. Buscher has had a long and prosperous career: (a) from 2000 to 2004, Mr. Buscher acted as Head of Investment Banking at United Financial Group; (b) Mr. Buscher then formed Eurasia Capital Partners, a private mergers and acquisitions advisory boutique, with offices in Moscow and London, where he was an active and well-known M&A specialist in the Russian market with such clients as NewsCorp, George Soros, and DeBeers; (c) from 2005 to August 2007, Mr. Buscher was a co-founder, and served as the Chief Financial Officer, of Urals Energy Public Co., Ltd., which engaged in the exploration and production of oil and gas, as well as processing and distribution of crude oil, and for which entity Mr. Buscher oversaw its Initial Public Offering, as well as follow-on equity offerings underwritten by investment bank Morgan Stanley; (d) from August 2007 to 2009, Mr. Buscher served as the Chief Financial Officer of Terralliance Technologies, Inc., a company headquartered in Newport Beach, California, which developed sophisticated, underground, oil-mapping technologies and related hardware; (e) from 2010 to January 2013, Mr. Buscher served as the Executive Vice President of publicly-traded Sistema OJSC, a large Russian conglomerate with interests in various sectors, including information technology, banking, electronics, and oil and gas and for which Mr. Buscher was a senior foreign investment advisor, the Chief Investment Strategist for Oil & Gas, as well as Sistema's official United Kingdom Representative; and (f) from September 2011 to January 2013, Mr. Buscher was also the Chief Executive Officer of Navitas Global Resources, Ltd., an oil and gas company that was jointly owned by Sistema, Glencore, and a Russian bank, Sberbank. *See Complaint*, *Stephen Buscher v. Edelman*, Case #2:20-cv-09680-JVS-AFM (C.D. Cal.) filed on October 21, 2020, ¶¶ 29-35, a copy of which is

The Honorable P. Kevin Castel
May 3, 2022
Page 4

ReedSmith

attached as <u>Exhibit 1</u>.  In light of that partial but impressive (and no doubt very lucrative) career, any suggestion that Mr. Buscher's recent unemployment is causing him serious financial hardship must be false.[2]

### 2. The Timing of Mr. Buscher's Motion for Leave in the Course of the Receivership

The Receivership Stay has been in place for only six (6) months, and the Receiver, together with his advisors (both legal advisors and investment bankers), is in the middle of a complex sale process involving multiple potential purchasers and complex assets expected to be worth hundreds of millions of dollars.  This is not a simple sale of real estate or inventory, but rather involves complex assets and substantial due diligence by potential purchasers.

To date, twelve (12) potential purchasers have signed non-disclosure agreements, the most recent of which was signed on April 27, 2022.  The Receiver already has received multiple expressions of interest and is considering the selection of a stalking horse bidder.  The completion of the sale process is the singular most important element of this receivership for the benefit of *all* creditor constituents.

Therefore, the relatively short duration of the Receivership Stay—especially when considered in light of the complex sale process currently underway—decidedly weighs in favor of denying Mr. Buscher leave to file his proposed Motion.

### 3. The Merits of Mr. Buscher's Underlying Claim

Under the third *Wencke II* factor, even if Mr. Buscher could show that there is a "colorable" claim against the Receivership Entities, courts generally are unwilling to delve deeply into the merits where the first two factors weigh heavily in favor of maintaining the litigation stay.  *Byers I*, 592 F. Supp. 2d at 537 ("Even assuming the Movants' claims are strong, however, the other two *Wencke II* factors weigh heavily against lifting the injunction.").  "[E]ven meritorious claims may not tip the scales in favor of lifting a litigation stay where the first and second prongs of the *Wencke II* inquiry favor the receiver." *U.S. v. Elk Assocs. Funding Corp.*, 2020 U.S. Dist. LEXIS 210397, 2020 WL 6581948, *13 (E.D.N.Y. Nov. 10, 2020) (quoting *JHW Greentree Capital*, 2014 U.S. Dist. LEXIS 203206, 2014 WL 12756827, *8 (citing *Acorn Tech.*, 429 F.3d at 449)).

To be clear, the Receiver is not an adversary to any creditor—whether Mr. Buscher or any other alleged creditor—with a legitimate claim.  As Mr. Buscher's counsel did not reach out to the Receiver or his counsel prior to filing the Letter to engage regarding the bases for Mr. Buscher's alleged claim, the Receiver's objective analysis of Mr. Buscher's alleged claim is somewhat hampered.  Based on the Letter, however, there are some apparent deficiencies with Mr. Buscher's claim.

The bases for Mr. Buscher's alleged claim are generalized assertions of harassment that are difficult to dispute (or confirm) due to their generality.  Mr. Buscher, however, fails to allege that he ever complained of such harassment (let alone identify the particular persons who allegedly harassed him). Similarly, Mr. Buscher claims that unidentified "Concerning Individuals" "*appeared*" to be self-dealing."

---

[2] In *Stephen Buscher v. Edelman*, Mr. Buscher claimed that his alleged partner (Edelman) was a "shadowy and notorious" figure *before* Mr. Buscher allegedly partnered with him.  *See* Complaint, ¶ 3.

*See* Letter, p. 1 (Doc. 231) (emphasis added). Mr. Buscher neither brought such alleged actions to the Receiver's attention nor asked the Receiver to investigate any such undisclosed actions by those unidentified individuals.

Former management of the Receivership Entities has advised the Receiver that, in early June 2021, Mr. Buscher effectively abandoned his post as Chief Financial Officer. Reportedly, without notice to the Receivership Entities, Mr. Buscher moved from Washington, D.C. (the Receivership Entities' headquarters) to a mountain home outside of Aspen, Colorado. After such move, former management advised that Mr. Buscher was never again present at any of the Receivership Entities' offices and was not reasonably available by telephone. Former management also advised the Receiver that Mr. Buscher was the subject of an investigation for self-dealing.

Mr. Buscher previously filed a declaration in this receivership case where he claimed that he resigned on August 8, 2021. *See* Declaration of Stephen Buscher, 1:21-cv-06995-PKC (S.D.N.Y.) (Doc. 144; filed on Dec. 27, 2021), ¶ 5 ("On August 8, 2021, I tendered my resignation to TGI in writing.") and ¶ 6 ("Further Declarant Sayeth naught."). Nowhere in Mr. Buscher's Letter to Your Honor does he acknowledge that he resigned. Instead, he alleges an earlier "constructive discharge." *See* Letter, p. 1 (Doc. 231). Thus, it is unclear whether Mr. Buscher claims damages back to an earlier date of constructive discharge or as of the date of his resignation. Mr. Buscher noticeably fails to provide any calculation of his claim, which seems to greatly exceed the Minimum Monthly Fee Payment provided for in the Consulting Agreement. *See* Consulting Agr., § 7.2, and Exhibit A, ¶ 7.[3]

Notably, Mr. Buscher recently filed another action where he claims to have been improperly removed from his position as Chief Financial Officer of yet another company unrelated to the Receivership Entities. *See* Verified Complaint, *Stephen Buscher v. Sirius Energy S.A. de C.V., Técnicas Marítimas Sustentables, S.A. de C.V., Compañía Petrolera Perseus, S.A. de C.V., Lanius B.V. and Douglas Edelman*, New York County Supreme Court, Index. No. 650107/2021, ¶¶ 5, 118(c) and 202 (filed on or about Jan. 7, 2021). A copy of the Verified Complaint is attached as Exhibit 2.

Particularly in light of the first two *Wencke II* factors, which both weigh strongly in favor of preserving the litigation stay, Mr. Buscher has not met his burden of demonstrating that the balance of the factors weigh in favor of lifting the litigation stay at this stage.

### C. Conclusion

For the foregoing reasons, the Receiver believes that granting Mr. Buscher leave to seek relief from the Receivership Stay would be detrimental to the receivership process and the interests of all creditor

---

[3] Mr. Buscher's demand for arbitration is questionable. The Consulting Agreement irreconcilably provides both that the parties "agree and irrevocably consent to the *exclusive and **sole** jurisdiction* of the courts located in Wilmington, Delaware *for any dispute, interpretation, controversy, or claim arising out of or relating to this Agreement*" and "agree that *any dispute*, interpretation, controversy, or claim *arising out of or relating to this Agreement shall be settled by arbitration* to be held in the State of Delaware before a single arbitrator, in accordance with the Commercial Rules then in effect." *See* Consulting Agr., §§ 10.3 and 10.4 (emphasis added). In any event, whether Mr. Buscher's claim is liquidated in an arbitration proceeding or some other collective proceeding (*i.e.,* bankruptcy) with other claims against the Receivership Entities is an issue for another day after the sale process has been completed.

The Honorable P. Kevin Castel
May 3, 2022
Page 6

ReedSmith

constituents. Accordingly, the Receiver respectfully requests that the Court not grant Mr. Buscher leave to file a motion for relief from the Receivership Stay.

Respectfully submitted,

*/s/ Kurt F. Gwynne*

Kurt F. Gwynne
REED SMITH LLP

cc:   All Counsel of Record (via ECF)
      Mr. Michael Fuqua, Receiver (via e-mail)