**EXHIBIT 2**

Verified Complaint

*Stephen Buscher v. Sirius Energy S.A. de C.V., Técnicas Marítimas Sustentables, S.A. de C.V.,*
*Compañía Petrolera Perseus, S.A. de C.V., Lanius B.V. and Douglas Edelman*
New York County Supreme Court, Index. No. 650107/2021

(Attached)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------X

| | |
|---|---|
| STEPHEN BUSCHER, an individual, | **SUMMONS** |
| Plaintiff, | Index No.: |
| vs. | Filing Date: |
| SIRIUS ENERGY S.A. DE C.V., TÉCNICAS MARÍTIMAS SUSTENTABLES, S.A. DE C.V., COMPAÑÍA PETROLERA PERSEUS, S.A. DE C.V., LANIUS B.V., DOUGLAS EDELMAN, an individual, and DOES 1-50, inclusive | |
| Defendants. | |

------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorneys within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York, and in the case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Plaintiff designated New York County as the place of trial pursuant to CPLR §503(a) on the grounds that none of the parties reside in New York state and the preference should be given to Plaintiff's selected forum. Additionally, the Parties agreed in a forum selection clause that all disputes would be resolved pursuant to New York law.

Dated: January 7, 2021
      Oyster Bay, New York

                    CHALOS & CO, P.C.
                    *Attorneys for Plaintiff*
                    *Stephen Buscher*

By: _____
                    George M. Chalos, Esq.
                    Melissa Patzelt-Russo, Esq.
                    55 Hamilton Avenue
                    Oyster Bay, New York 11771
                    Tel: (516) 714-4300

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

E-mail: gmc@chaloslaw.com
E-mail: mrusso@chaloslaw.com
Chalos & Co, Ref: 2586.001

-and-

Holmes, Taylor, Cowan & Jones LLP
Joel Athey, Esq.
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel: (213) 985-2200
Email:joel.athey@holmestaylor.com

To:

**SIRIUS ENERGY S.A. DE C.V.**
Blvd. Antonio L. Rodriguez No. 2100
Piso 21 Of. 1, Santa Maria
Monterrey, Nuevo León
Mexico 64650

**TÉCNICAS MARÍTIMAS SUSTENTABLES, S.A. DE C.V.**

| Blvd. Antonio L. Rodriguez No. 2100 | Avenida Lazaro Cardenas 2470 |
| Piso 21 Of. 1, Santa Maria | Garza Garcia, Nuevo León |
| Monterrey, Nuevo León | Mexico 66266 |
| Mexico 64650 | |

**COMPAÑÍA PETROLERA PERSEUS, S.A. DE C.V.**
Blvd. Antonio L. Rodriguez No. 2100
Piso 21 Of. 1, Santa Maria
Monterrey, Nuevo León
Mexico 64650

**LANIUS B.V.**

| Van Boshuizenstraat 225 | Hollandse Hout 111 |
| 1083 AW, Amsterdam | 8244 GD, Lelystad |
| Netherlands | Flevoland, Netherlands |

**DOUGLAS EDELMAN**
14 Cottesmore Gardens
W8 5PR London
United Kingdom

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------X

STEPHEN BUSCHER, an individual,

                 Plaintiff,

      vs.

SIRIUS ENERGY S.A. DE C.V., TÉCNICAS
MARÍTIMAS SUSTENTABLES, S.A. DE C.V.,
COMPAÑÍA PETROLERA PERSEUS, S.A. DE
C.V., LANIUS B.V., DOUGLAS EDELMAN, an
individual, and DOES 1-50, inclusive

                 Defendants.

-----------------------------------------------------------------X

Index No.

**VERIFIED COMPLAINT**
**JURY TRIAL DEMANDED**

        Plaintiff, Stephen Buscher ("Mr. Buscher" or "Plaintiff"), by and through his attorneys, as

and for his Verified Complaint against Defendants, SIRIUS ENERGY S.A. DE C.V. ("Sirius"),

TÉCNICAS MARÍTIMAS SUSTENTABLES, S.A. DE C.V. ("TMS"), COMPAÑÍA

PETROLERA PERSEUS, S.A. DE C.V. ("Perseus"), LANIUS B.V. ("Lanius"), DOUGLAS

EDELMAN ("Edelman"), and DOES 1-5, and respectfully alleges, upon information and belief as

follows:

<u>**INTRODUCTION**</u>

        1.      This case involves a business partnership that was undermined when Defendants

decided to: deny their partnership with Plaintiff; cut Plaintiff completely out of the partnership's

business; breach their fiduciary obligations to Plaintiff; and deny Plaintiff a fair share in the

partnership's valuable business assets and opportunities (which he largely created).

        2.      Mr. Buscher was a respected, successful executive with a 25-year career in the

international oil & gas industry when he entered into a business partnership with Alberto Garza

Santos ("Garza Santos"), Tomas Milmo Santos ("Milmo Santos"), and Edelman, which was

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

contractually memorialized in or about March 2016.

3.     The four (4) partners agreed to explore business opportunities in the Mexican oil and gas markets.  To that end, Mr. Buscher devoted years to developing a proprietary business model in the Mexican oil markets.  He then marketed that model, on behalf of himself and his partners, and attracted the interest of one of the world's largest oil companies ("Supermajor")[1]. Supermajor entered into a business relationship with the four (4) partners, which continues to this day.

4.     In or about March 2016, the four (4) partners formed a company, Defendant Sirius, in order to formalize their joint venture to monetize the business opportunity that Mr. Buscher was developing in Mexico.

5.     However, after Mr. Buscher gave up his career as an oil & gas executive -- and spent years developing the proprietary model to monetize Sirius' business opportunities and attracted Supermajor's interest -- his partners (without justification) proceeded to: (i) strip Mr. Buscher of his officer position as Sirius' interim Chief Financial Officer; (ii) strip Mr. Buscher of his Sirius Board seat and position as Vice Chairman of the Board of Directors; (iii) cut off all of Mr. Buscher's access to Sirius' books, records, audited financials, communications, and updates about the business opportunity with Supermajor; and (iv) deny Mr. Buscher's ownership interest in Sirius.

6.     Moreover, upon information and belief, Mr. Buscher's partners are in active negotiations with Supermajor, and potentially other third parties, to take on debt obligations or to issue an equity interest in Sirius through distribution of shares, all of which acts to Mr. Buscher's detriment as a minority shareholder of Sirius (particularly when he has no notice of these actions).

---

[1] Due to the confidential nature of the Sirius business, the oil company will be referenced only as Supermajor throughout this Complaint.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

7.      This lawsuit seeks to redress Mr. Buscher's harm and damages from Defendants' callous and calculated conduct.

**THE PARTIES**

8.      Mr. Buscher is an individual who is a citizen of the State of Florida and currently resides in the District of Columbia.

9.      Sirius is a Mexican company organized as a "Sociedad Anónima de Capital Variable" pursuant to the laws of Mexico, with an office address of: Blvd. Antonio L. Rodriguez No. 2100, Piso 21 Of. 1, Santa Maria, Monterrey, Nuevo León, Mexico 64650.

10.     TMS is a company organized and existing under the laws of Mexico, with office addresses of: (i) Avenida Lazaro Cardenas 2470, Garza Garcia, Nuevo León, Mexico 66266; and (ii) Blvd. Antonio L. Rodriguez No. 2100, Piso 21 Of. 1, Santa Maria, Monterrey, Nuevo León, Mexico 64650.

11.     Perseus is a company organized and existing under the laws of Mexico, with an office address: at Blvd. Antonio L. Rodriguez No. 2100, Piso 21 Of. 1, Santa Maria, Monterrey, Nuevo León, Mexico 64650.  Perseus is the successor entity to TMS.  TMS's 50% share ownership in Sirius was assigned by TMS to Perseus in or about 2018.

12.     Lanius is a company organized and existing under the laws of the Netherlands, with office addresses of: (i) Van Boshuizenstraat 225, 1083 AW, Amsterdam, Netherlands; and (ii) Hollandse Hout 111, 8244 GD, Lelystad, Flevoland, Netherlands.

13.     Edelman is an individual who is, upon information and belief, a citizen of the State of California and, upon information and belief, presently resides in London, England.

14.     The defendants named herein as Does 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues such "Doe" defendants by such fictitious names.  Plaintiff is informed

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:21-cv-06995-PKC    Document 236-2    Filed 05/03/22    Page 7 of 51    RECEIVED NYSCEF: 01/07/2021

and believes that each fictitiously named defendant is in some manner, means, or degree responsible for the events and happenings herein alleged. Plaintiff will seek leave of the Court, if necessary, to amend this Complaint to state the true name and capacities of the fictitiously designated "Doe" defendants, or some or all of them, when their names and capacities have been ascertained.

15. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and Does 1 through 50, inclusive, and each of them, were the actual, implied or ostensible agents, servants, employees, partners, joint venturers, alter egos, and/or coconspirators of one another, and were at all relevant times described herein acting on behalf of one another within the course and scope of such agency, servitude, employment, partnership, joint venture, alter ego relationship and/or conspiracy. Plaintiff is further informed and believes, and thereon alleges, that each defendant, whether expressly or fictitiously named, committed the acts or omissions described herein with the full knowledge, consent, authority and/or ratification of some or all of the other defendants.

## JURISDICTION AND VENUE

16. On or about March 2016, TMS (which bound itself and its eventual successor, Perseus) and Lanius (of which Edelman is the majority and controlling shareholder) entered into a shareholder agreement concerning the formation, ownership, management, and organization of Sirius (hereafter, the "Sirius Shareholder Agreement").

17. The Sirius Shareholder Agreement states that will be governed, construed, and enforced in accordance with the laws of the State of New York, without regard to its conflict of laws rules, except with respect to corporate matters of Sirius and its Mexican subsidiaries if mandatorily governed by Mexican law.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

18.     Pursuant to New York General Obligation Law § 5-1401, the parties to a contract may agree that New York law shall govern their rights and duties in whole or in part, whether or not the contract bears a reasonable relation to New York.

19.     By agreeing to this provision in the Sirius Shareholder Agreement, Defendants have submitted themselves to jurisdiction in the State of New York.

20.     Venue is proper in this Court, pursuant to CPLR 503(a), as none of the parties reside in New York state, the County where the action proceeds shall be any county designated by the Plaintiff.

## FACTUAL ALLEGATIONS

**A.     Stephen Buscher Has Had A Distinguished Business Career As An Oil & Gas Executive And Extensive Experience Working On Petroleum-Related Transactions**

21.     Mr. Buscher has extensive financial and petrochemical experience, particularly in Russia and the former Soviet republics (now known as the Commonwealth of Independent States, or "CIS"), where he has worked in the financial sector and the oil and gas business for more than twenty (20) years.

22.     From 1995 to 1997, Mr. Buscher acted as Head of the Moscow office for Lazard Ltd. (formerly known as Lazard Frères & Co.), a global investment bank.  There, he was the relationship manager for the bank's CIS oil business.

23.     From 1997 to 1998, Mr. Buscher acted as Co-Head of the Moscow office of international investment bank Merrill Lynch, where he was the overall relationship manager for oil business in the CIS, until Merrill Lynch shut down its Moscow office in 1998.

24.     From 2000 to 2004, Mr. Buscher acted as Head of Investment Banking at United Financial Group (which was later acquired by Deutsche Bank in 2005, after his departure).

25.     From 2005 to August 2007, Mr. Buscher was a co-founder, and served as the Chief

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Financial Officer, of Urals Energy Public Co., Ltd., which engaged in the exploration and production of oil and gas, as well as processing and distribution of crude oil.

26.    From August 2007 to 2009, Mr. Buscher served as the Chief Financial Officer of Terralliance Technologies, Inc., a company headquartered in California. The company focused on developing and utilizing proprietary software applications, combined with traditional exploration techniques, to search for oil and gas deposits. Terralliance developed sophisticated, underground, oil-mapping technologies and related hardware.

27.    From 2010 to January 2013, Mr. Buscher served as the Executive Vice President of Sistema OJSC ("Sistema"), a large Russian conglomerate with interests in various sectors, including information technology, banking, electronics, and oil and gas. Mr. Buscher resided in Moscow and London, and was a senior foreign investment advisor, the Chief Investment Strategist for Oil & Gas, as well as Sistema's official United Kingdom Representative. Sistema was publicly traded on the London Stock Exchange.

28.    From September 2011 to January 2013, Mr. Buscher was also the Chief Executive Officer of Navitas Global Resources, Ltd. ("Navitas"), an oil and gas company that was jointly owned by Sistema, Glencore, and a Russian bank, Sberbank.

**B.    Mr. Buscher And Edelman Enter Into A Contractual Partnership Agreement**

29.    In or about May 2012, Mr. Buscher entered into a contractual partnership with Edelman. The partners agreed that Mr. Buscher would use his oil and gas industry contacts, knowledge, and experience to search for, model, diligence, value, and evaluate potential business ventures for himself and Edelman.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

30.      Mr. Buscher and Edelman agreed that they would jointly own any business opportunities identified by Mr. Buscher, and would share in any assets, revenues, and profits from those business opportunities.

31.      From 2012 through January 8, 2019, Mr. Buscher and Edelman worked together on various business opportunities in the oil and gas industry, including the one involving Sirius, pursuant to their contractual partnership agreement.

## C.      Business Opportunities In Mexico

32.      Mr. Buscher was introduced to Garza Santos and his cousin, Milmo Santos, who were Mexican businessman.  Together with Edelman, the four (4) men agreed to mutually explore potential business opportunities in Mexico (hereafter, the "Mexican Joint Venture"), as detailed further below.

33.      Before any work on the Mexican Joint Venture began in earnest, an agreement was struck between Mr. Buscher and Edelman, on the one hand, and Garza Santos and Milmo Santos, on the other hand.  The four men agreed to explore the Mexican Joint Venture as a 50-50 partnership, in which an entity owned by Edelman and Mr. Buscher would own 50% of the Mexican Joint Venture, and an entity owned by Garza Santos and Milmo Santos would own the other 50% of the Mexican Joint Venture.

34.      Mr. Buscher moved to Salt Lake City, Utah, so that he would have a base of operations that would allow him to travel frequently to Mexico in order to explore the Mexican Joint Venture's business opportunities there.  By contrast, Edelman continued to live in Europe and did not become personally involved in the Mexican Joint Venture beyond financing.

35.      Mr. Buscher made dozens of trips to Mexico, visiting either Monterrey or Mexico City.  In the second half of 2015, he moved his family to Mexico for several months so that he

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

could work on the Mexican Joint Venture. By contrast, Edelman only traveled to Mexico three times through the end of 2018.

36.     The Mexican Joint Venture explored a "midstream" strategy by which petroleum products would be transported across Mexico via pipeline between the port at Lazaro Cardenas (on the Pacific Coast) and a port on the Gulf of Mexico (later identified as Tuxpan, Mexico). This strategy would allow petroleum products to be imported into Mexico by sea in tankers on either the Pacific Coast or the Gulf of Mexico, and then distributed throughout much of Mexico via pipelines from those port terminals (hereafter, the "Midstream Strategy").

37.     Working with consultants he selected for the task, Mr. Buscher built a sophisticated and proprietary Mexican nationwide energy storage, transportation, and trading model.

38.     Along with the consultants, Mr. Buscher developed proprietary, cutting-edge, computer-modelling algorithms to perform linear programming analysis and to devise regression-based, optimal, "first mover" strategies in the petroleum field. These became known as the "Isthmus Strategy," and were the lynchpin of the Midstream Strategy.

39.     The concept behind the Isthmus Strategy was to use the port at Lazaro Cardenas (on the Pacific Coast) and build a rail and pipeline transit link eastward through the greater Mexico City market, terminating at the port of Tuxpan, Mexico (on the Gulf of Mexico). The Isthmus Strategy allowed petroleum products to be transported throughout Mexico, utilizing seaports on both ends.

40.     Meanwhile, to facilitate the Midstream Strategy, the four (4) Mexican Joint Venture partners agreed to form a company, Sirius. Pursuant to their original agreement that all Mexican Joint Venture projects would be done on an equal basis, the four Mexican Joint Venture partners

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

agreed that Garza Santos and Milmo Santos would own 50% of Sirius and Mr. Buscher and Edelman would own the other 50% of Sirius.

41.     Mr. Buscher worked to finalize a written Sirius Shareholder Agreement to memorialize that Garza Santos/Milmo Santos and Mr. Buscher/Edelman each owned 50% of Sirius.  Working with the same U.S.-based counsel that Mr. Buscher engaged to represent himself and Edelman in other matters, Mr. Buscher negotiated the terms of the Sirius Shareholder Agreement on behalf of himself and Edelman.

42.     However, even as that was proceeding, troubling events began to surface.  In December 2015, Garza Santos sent an email to Edelman saying that if they left Mr. Buscher as Sirius' CFO, it "might create problems for us two in the future."  Garza Santos strongly suggested to Edelman that they cut Mr. Buscher out of his role at Sirius.  While that did not occur at the time, it shows Garza Santos and Edelman openly discussing the idea.

43.     In or about March 2016, the Sirius Shareholder Agreement was executed by TMS and Lanius.  In the Sirius Shareholder Agreement, 50% of the shares of Sirius were allocated to TMS, a Mexican corporation owned by Garza Santos and Milmo Santos.  Perseus later became the successor entity to TMS and now owns TMS's shares of Sirius.  The other 50% of the shares of Sirius were allocated to Lanius, a Dutch corporation.  Lanius was the wholly-owned subsidiary of another Dutch corporation called Lanius Holding B.V.

44.     By virtue of the Sirius Shareholder Agreement, the four (4) partners to the Mexican Joint Venture -- Garza Santos, Milmo Santos, Mr. Buscher, and Edelman -- were now the four (4) owners of Sirius.  One of the first orders of business by Sirius was to appoint Mr. Buscher to serve as interim Chief Financial Officer of Sirius, which occurred on or about September 2016.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

45.     Mr. Buscher was also appointed to a seat on Sirius' Board of Directors on or about September 2016, and held the position of Vice-Chairman of the Sirius Board of Directors.

**D.      Mr. Buscher Is An Undisputed Owner of Sirius**

46.     Pursuant to their 2012 contractual partnership agreement, Mr. Buscher held an ownership interest in Lanius Holding B.V. (the parent company of Lanius) at the time Lanius entered into the Sirius Shareholder Agreement on behalf of Mr. Buscher and Edelman.

47.     Mr. Buscher and Edelman executed a "Lanius Shareholder Agreement," which was a contractual agreement documenting Mr. Buscher's entitlement to ownership of Lanius Holding B.V., the Dutch corporation that was the parent company of Lanius (which in turn was the signatory to the Sirius Shareholder Agreement on behalf of Mr. Buscher and Edelman).

48.     The Lanius Shareholder Agreement provides that Mr. Buscher owns at least 25% of Lanius Holding B.V., and by extension, its subsidiary company, Lanius.[2] Mr. Buscher informed Garza Santos/Milmo Santos of this in or about September 2018, when he sent them a draft version of the Sirius Informational Memorandum (described below), which showed the ownership stakes of all ultimate beneficial owners of Sirius, and included Mr. Buscher as an owner.

49.     On March 11, 2019, the Amsterdam District Court issued a judgment that upheld and confirmed Mr. Buscher's ownership of 25% of Lanius Holding B.V. (and by extension, his 25% ownership of Lanius).  A deed of share transfer, by which Mr. Buscher was formally granted

---

[2] Mr. Buscher's view is that he actually owns 50% of Lanius Holding, B.V. (and by extension, owns 50% of Lanius, and therefore, owns 25% of Sirius).  In his original 2012 partnership agreement with Edelman, it was agreed that Mr. Buscher and Edelman would own all business opportunities on an equal, 50-50 basis.  However, Edelman sought to alter the terms of that agreement by way of the Lanius Shareholder Agreement.  Mr. Buscher still contests that adjustment, and has brought a separate lawsuit against Edelman in the United States District Court for the Central District of California, entitled *Buscher v. Edelman*, Case No. 2:20-cv-09680.  In the federal lawsuit, Mr. Buscher asserts his rights to a 50% ownership of Lanius Holding B.V., and by extension a 50% ownership of Lanius (and therefore, a 25% ownership of Sirius).  For purposes of this litigation, it is sufficient that Mr. Buscher can legally assert his contractual rights as a 25% owner of Lanius (and by extension, as a 12.5% owner of Sirius).  But the allegations herein should not be construed as an admission by Mr. Buscher that he is only entitled to 25% ownership of Lanius Holding B.V. or Lanius, as that matter is still being litigated.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

his 25% ownership of Lanius Holding B.V. was passed on March 18, 2019. Then, on April 29, 2019, the Amsterdam District Court issued a judgment confirming that Mr. Buscher is entitled to be appointed a managing director of Lanius Holding, which appointment Mr. Buscher has held since May 2019 to the present. Consequently, there can be no doubt that Mr. Buscher is at least the legal owner of 12.5% of Sirius by virtue of the fact that he owns at least 25% of Lanius Holding B.V. (which, in turn, means he also owns at least 25% of its wholly-owned subsidiary, Lanius).

E.     **Mr. Buscher Prepares The Promotional And Sales Materials For The Midstream Strategy And Begins Negotiations With Supermajor**

50.     In or about December 2017, the Midstream Strategy that Mr. Buscher created was nearing the point where it could be taken out to the market. By this time, Sirius had secured the terminal leases in Mexico City and the port in Tuxpan, Mexico. Combined with the terminal leases that Sirius already controlled in Lazaro Cardenas, Mexico, Sirius now had all the pieces of infrastructure needed to successfully implement the Midstream Strategy.

51.     By December 2017, Mr. Buscher had completed drafting an informational memorandum about Sirius that outlined the Midstream Strategy, including a description of the proprietary Isthmus Strategy (hereafter, the "Sirius Informational Memorandum"). The Sirius Informational Memorandum would serve as the marketing framework for Sirius to attract investors regarding the Midstream Strategy. Typically, an informational memorandum of this type would be prepared by an investment bank for a hefty retainer fee and/or a success fee. But Mr. Buscher solely prepared the Sirius Informational Memorandum for the benefit of Sirius at no cost.

52.     In or about January 2018, Sirius distributed the Sirius Informational Memorandum to a limited number of potential partners, including Supermajor.

53.     From January through March 2018, with the blessing of his partners in Sirius, Mr. Buscher began making a number of presentations to potential partners who had reviewed the Sirius

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Informational Memorandum. In each case, Sirius executed a Non-Disclosure Agreement with the potential partner before disclosing the Sirius Informational Memorandum.

54. Mr. Buscher led all of these presentations. Usually, he presented alone. Sometimes, he was joined by some combination of Ron Thomas (the terminal construction project manager retained by Lanius) or Andres Velazquez and Daniel Santos from TMS/Perseus.[3]

55. On or about February 22, 2018, Mr. Buscher, Edelman, and Christopher Slabozsewicz (hereafter, "Slabozsewicz") met with Supermajor's Senior Originator for Biodistillate Trading (hereafter referred to as "Executive 1") and two (2) other Supermajor executives in London. Slabozsewicz was initially Edelman's principal banker at BNP-Paribas in Geneva, Switzerland. Slabozsewicz was also placed on the Board of Directors of Sirius by Lanius, and at that time, served as a Sirius director for Lanius' interests.

56. Prior to the meeting, Edelman had told Executive 1 that Mr. Buscher was in charge of the Midstream Strategy for Sirius and that Supermajor should hear about the details from Mr. Buscher. During the meeting, Mr. Buscher made a 90-minute presentation to the Supermajor executives. At the end of the meeting, Supermajor asked Mr. Buscher to make the same presentation to a broader group of Supermajor executives at its North American headquarters.

57. On or about March 30, 2018, Supermajor signed a Non-Disclosure Agreement, sent to it by Mr. Buscher related to Sirius and the Midstream Strategy.

58. On or about April 13, 2018, at the direction of Mr. Buscher, Sirius sent the Sirius Informational Memorandum to Supermajor, including to an executive who works in Supermajor's

---

[3] TMS was the principal investor, on behalf of Garza Santos and Milmo Santos, in Perseus. For purposes of this complaint, TMS and Perseus are largely interchangeable with each other, as both implement the interests of Garza Santos and Milmo Santos in connection with Sirius and the Midstream Strategy.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Biofuels Business Development – Integrated Supply & Trading (hereafter referred to "Executive 2"), and who is also based at Supermajor's North American headquarters.

59.    On or about May 11, 2018, Mr. Buscher and Ron Thomas traveled to Supermajor's North American headquarters to meet with Supermajor's executives.  Mr. Buscher led a three-hour meeting with Supermajor's executives and walked them through the Midstream Strategy that Sirius was proposing.  Present at the meeting for Supermajor were more than 10 executives attending in person, and others participating via video link from London and Houston.

60.    When the meeting concluded, Mr. Buscher met with Supermajor's Managing Director, Latin America – Integrated Supply & Trading (hereafter referred to as "Executive 3").  Mr. Buscher proposed that Supermajor and Sirius enter into exclusive discussions to build a "midstream" petroleum system together in Mexico in order to service Supermajor's operations there.  Executive 3 agreed with Mr. Buscher's proposal for Supermajor and Sirius to enter into an initial Memorandum of Understanding for Supermajor and Sirius to explore developing a "midstream" petroleum system in Mexico (hereafter, the "Initial MOU").

61.    At the time it entered into the Initial MOU, the only person that the decisionmakers in Supermajor's North American team had met from Sirius was Mr. Buscher.  It was Mr. Buscher who prepared the Sirius Informational Memorandum, presented the Midstream Strategy to Supermajor, and secured Supermajor's interest in the business opportunity with Sirius.

62.    On or about May 15, 2018, Executive 3 sent Mr. Buscher a draft of the Initial MOU.  In his cover email, Executive 3 thanked Mr. Buscher for attending the in-person meetings with Supermajor personnel at their North American headquarters the week before.  Executive 3 also said that he was excited about the possibility of Supermajor and Sirius potentially working together on the Midstream Strategy.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

63.     By contrast to Mr. Buscher's leading role and key involvement in the negotiations with Supermajor, no one else from TMS/Perseus or Lanius (including Edelman, Garza Santos, and Milmo Santos) had ever met with anyone on Supermajor's working team about the Sirius deal before the Initial MOU was signed. Supermajor's only point of contact was Mr. Buscher.

64.     Between May 24, 2018 and May 29, 2018, Supermajor and Sirius signed the Initial MOU.

**F.      Under Mr. Buscher's Leadership, Sirius Moved Closer To A Final Agreement With Supermajor Regarding The Midstream Strategy**

65.     After entering into the Initial MOU with Supermajor, Mr. Buscher arranged a series of follow-on working groups meetings and negotiation sessions with Supermajor. Over time, Mr. Buscher began introducing personnel from TMS/Perseus to Supermajor.

66.     On or about June 14, 2018, Mr. Buscher introduced Andres Velazquez ("Velazquez"), who worked for TMS/Perseus, to Supermajor by taking him to a meeting at Supermajor's North American headquarters.

67.     On or about June 14, 2018, a senior Supermajor executive based in London (hereafter referred to as "Executive 4"), sent Mr. Buscher and Velazquez an email thanking them for the in-person meeting that day and proposing another in-person meeting at Supermajor's North American headquarters in early-July 2018.

68.     In or about mid-June 2018, Supermajor personnel visited the proposed Sirius facilities in Lazaro Cardenas and Tuxpan, Mexico, to assess the sites and begin considering the work that Sirius and Supermajor could do together in Mexico. Mr. Buscher was the only principal who participated in this week-long due diligence visit with the extended Supermajor team.

69.     In or about July 2018, Mr. Buscher introduced Garza Santos and Milmo Santos to Supermajor personnel at a meeting at Supermajor's North American headquarters. This was the

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

first time that any of the four (4) owners of Sirius, other that Mr. Buscher, had ever met anyone from Supermajor.

70.     During the summer of 2018, Sirius and Supermajor worked together to build a joint "midstream" model for Mexico.  Mr. Buscher led the project from the Sirius side.  Mr. Buscher also helped to create certain models that were used by Sirius and Supermajor in their negotiations.

71.     In or about July 2018, Mr. Buscher and Milmo Santos participated in a negotiation session with Supermajor at Supermajor's North American headquarters.

    a.     At the meeting, Executive 3 introduced them to the lead, in-house attorney at Supermajor who would be responsible for Supermajor's negotiations with Sirius (hereafter referred to as Executive 5).

    b.     At those meetings, it was agreed that Supermajor should communicate with Sirius by corresponding simultaneously with both Mr. Buscher and Federico Gil, TMS/Perseus' in-house counsel.  That way Lanius and TMS/Perseus would both get the same information at the same time.

72.     In or about September 2018, Sirius (led by Mr. Buscher) and Supermajor held a week of working group meetings and negotiation sessions at Supermajor's offices in Mexico City.

73.     After the meetings in Mexico City, Mr. Buscher continued negotiating the Sirius "midstream" opportunity with Supermajor's Liquified Natural Gas ("LNG") specialist (hereafter referred to as "Executive 6").  That involved continuing to model the Midstream Strategy, which effort was spearheaded by Mr. Buscher on behalf of Sirius.

74.     Together, Mr. Buscher and Executive 6 create an LNG re-gasification plan for Mexico's largest, gas-fired, power plant located in Lazaro Cardenas, as well as a Mexican nationwide liquefied petroleum gas ("LPG") distribution system.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

75.     In or about November 2018, Supermajor and Sirius agreed that they were ready to sign the detailed follow-on MOU describing the Mexican "midstream" venture's specific projects (hereafter, the "Formal MOU").  This would be the formal commitment from Supermajor that signaled its serious interest, and cemented this highly-lucrative business opportunity for the benefit of Sirius and its shareholders.

**G.     Internal Issues At Sirius Develop Between TMS/Perseus And Lanius**

76.     In or about December 2018, Sirius was nearing the point where it would enter into the Formal MOU with Supermajor that would specifically outline the scope of work and the precise relationship between Sirius and Supermajor for their business venture in Mexico.  This would signal a major step forward in Sirius' ability to monetize the Midstream Strategy that Mr. Buscher created, marketed, and labored over for so long.

77.     However, Mr. Buscher was becoming increasingly concerned that TMS/Perseus might try to undercut Lanius in the deal with Supermajor.  Mr. Buscher's concern was heightened by the fact that the only legal signatories with authority to bind Sirius were Federico Gil and Andres Velazquez, both of whom were TMS/Perseus personnel.

78.     Mr. Buscher felt that TMS/Perseus and Lanius should hold Sirius' annual general meeting ("AGM"), which was the equivalent of a Board of Directors meeting, in order to agree on certain corporate resolutions needed before the Formal MOU with Supermajor was signed, in order to ensure that TMS/Perseus and Lanius were on the same page about how Sirius would operate.

79.     Mr. Buscher, Edelman, Slabozsewicz, Jerome Schurink ("Schurink") and Tom Ehr ("Ehr") all flew from Europe to Monterrey, Mexico for the Sirius AGM that was scheduled for December 3, 2018.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

80.     On December 3, 2018, Mr. Buscher arranged a breakfast meeting for the Lanius representatives, which was to take place before the Sirius AGM.  Present at the meeting were Mr. Buscher, Edelman, Slabozsewicz, Schurink and Ehr.

81.     During the meeting, Mr. Buscher explained his suspicions that Milmo Santos might be improperly suggesting to Supermajor that Sirius was simply a subsidiary of TMS/Perseus, and/or that TMS/Perseus was secretly conducting negotiations directly with Supermajor that Lanius was unaware of, which would be contrary to both the Sirius Shareholder Agreement and the specific agreement reached in July 2018 at Supermajor's North American headquarters (attended by Supermajor, TMS/Perseus, and Lanius personnel) that all Sirius-related meetings and communications would simultaneously involve Supermajor, TMS/Perseus, and Lanius.

82.     Mr. Buscher informed the others at the breakfast meeting that he learned from Velazquez (who worked for TMS/Perseus but was friendly with Mr. Buscher) that Milmo Santos implied to Supermajor that Sirius was a subsidiary of TMS/Perseus rather than a fully stand-alone entity owned equally by TMS/Perseus and Lanius.

83.     At the breakfast meeting on December 3, 2018, Mr. Buscher also said that Sirius needed to pass some specific corporate resolutions at the AGM in light of the near-final negotiations with Supermajor about the Formal MOU.  Specifically, Mr. Buscher said Sirius should pass resolutions: (i) confirming Milmo Santo to act as Sirius' CEO and Board Chairman; (ii) adjusting the Lanius-appointed Directors of Sirius; (iii) confirming that all meetings and negotiations between Supermajor and Sirius must be conducted with at least one representative each from Lanius and TMS/Perseus present; and (iv) confirming the outside law firm Sirius would use to represent it in the negotiations with Supermajor about the Formal MOU, rather than using TMS/Perseus' in-house counsel, Federico Gil, for those negotiations.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

84.    The Sirius AGM was scheduled to begin at 11:00 a.m. on December 3, 2018.

85.    However, before the Sirius AGM meeting could begin, Lanius was informed that, due to a scheduling mix-up, Garza Santos was not in town and Milmo Santos would not be available until later that afternoon.

86.    Around 5:30 p.m. on December 3, 2018, Milmos Santos arrived at his office, but told the Lanius representatives present -- Mr. Buscher, Edelman, Slabozsewicz, Schurink, and Ehr -- that any Sirius AGM meeting would have to be brief as he had another engagement and was short on time.

87.    In fact, the Sirius AGM was very short. At 7:00 p.m., Milmo Santos informed the Lanius representatives that he was leaving. As he was preparing to leave, Mr. Buscher informed Milmo Santos there were a number of agenda items that Lanius wanted the Sirius Board to vote on at the AGM. Among them were reports that TMS/Perseus was telling Supermajor that it was in charge of the projects and that Sirius was just its subsidiary. Milmo Santos responded that of course he agreed TMS/Perseus was not the parent of Sirius, but appeared nervous and left hastily.

88.    On or about December 19, 2018, Mr. Buscher was scheduled to have a conference call with Executive 3 of Supermajor and Milmo Santos to discuss next steps after the Formal MOU was signed. It was expected -- as it had been previously discussed and agreed between Sirius and Supermajor -- that Supermajor would prepare and circulate the first draft of the Formal MOU and send it to TMS/Perseus and Lanius simultaneously for review and comment.

89.    On December 19, 2018, Mr. Buscher was on a call with Velazquez (from TMS/Perseus) who told him that Supermajor had, in fact, already circulated a draft of the Formal MOU on December 17, 2018, but that it was only sent to Federico Gil (who worked for TMS/Perseus). This was contrary to the protocol that Supermajor, Lanius, and TMS/Perseus had

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

worked out in July 2018, by which Lanius and TMS/Perseus were supposed to simultaneously receive all communications from Supermajor, and particularly about something as important as a draft of the Formal MOU.

90.     On or about December 19, 2018, Mr. Buscher got on the conference call with Supermajor.  No one from TMS/Perseus was on the line yet, but representatives of Supermajor were on the line.  Mr. Buscher asked if it was true that Supermajor had circulated a draft of the Formal MOU to Sirius, and was told that Supermajor had.  In fact, the Supermajor personnel on the call seemed surprised that Mr. Buscher had not yet seen the draft of the Formal MOU because it was sent to Federico Gil.

91.     Mr. Buscher asked that Supermajor send the draft of the Formal MOU to him and Federico Gil simultaneously, so everyone could be working off the same copy.  Supermajor personnel said that they would make sure it happened that way.

92.     Immediately after the call, on or about December 19, 2018, TMS/Perseus sent to Lanius a draft of the Formal MOU that had been redacted and edited by TMS/Perseus (hereafter, the "Redacted MOU").  By this time, Lanius had still not seen the original draft of the Formal MOU that Supermajor sent to TMS/Perseus on December 17, 2018.  Rather, Lanius had only received the Redacted MOU that was sent to it by TMS/Perseus for review and comment.

93.     On December 19, 2018, Mr. Buscher relayed to Edelman the substance of his call that day with Supermajor, as well as a copy of Redacted MOU sent to him by TMS/Perseus. Edelman shared Mr. Buscher's concerns, and said he was upset that TMS/Perseus was not sending Lanius the unredacted draft of the Formal MOU that Supermajor sent to Federico Gil.  Edelman told Mr. Buscher that he wanted to address the situation directly with Garza Santos and Milmo Santos after Christmas.  By contrast, Mr. Buscher suggested that it would be easier for Mr. Buscher

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

to speak with Executive 3 at Supermajor to find out what was going on, but Edelman was against that idea.

94.    The following day, December 20, 2018, Edelman said that he did not want Mr. Buscher speaking with Supermajor again until he (Edelman) had a chance to speak with Garza Santos and Milmo Santos to find out what was going on.

95.    Meanwhile, Milmo Santos and Federico Gil from TMS/Perseus were pressuring Mr. Buscher to provide comments on the Redacted MOU.  Mr. Buscher declined to provide them with comments, since he was waiting for Edelman to have a conversation with Garza Santos and Milmo Santos.

96.    That same day, December 20, 2018, upon information and belief, Milmo Santos and Federico Gil simply went around Mr. Buscher and began communicating directly with Edelman.  They told Edelman that any redactions in the Redacted MOU were about matters specific only to TMS/Perseus, and were therefore of no concern to Lanius.

97.    Mr. Buscher believed that TMS/Perseus' representations were false and that there were several critical and commercially valuable elements of the deal Mr. Buscher negotiated with Supermajor that were not in the Redacted MOU.  Mr. Buscher advised Edelman of this fact.

98.    Edelman, who told Mr. Buscher that he was tired of receiving harassing texts from Milmo Santos and Federico Gil, told Mr. Buscher that he was prepared to accept TMS/Perseus' representations that nothing important was taken out of the Formal MOU via the Redacted MOU, and that he wanted Mr. Buscher to provide his comments to TMS/Perseus on the Redacted MOU.

99.    On or about December 22, 2018, Mr. Buscher had a phone call with Velazquez from TMS/Perseus.  Mr. Buscher asked Velazquez directly if the "missing" portions of the Redacted MOU pertained to just TMS/Perseus, or more broadly to Sirius, such that it impacted

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

Case 1:21-cv-06995-PKC     Document 236-2     Filed 05/03/22     Page 24 of 51

Lanius too.   Velazquez said he was sorry that this was happening, that he did not agree with it, but confirmed that he thought the "missing" portions of the Redacted MOU pertained generally to Sirius, and were not just specific to TMS/Perseus.

100.    Mr. Buscher reported this information to Edelman.   On or about December 23, 2018, Mr. Buscher and Edelman agreed that the proper way to handle the situation was to contact Supermajor about the fact that TMS/Perseus had redacted the original draft of the Formal MOU sent by Supermajor, which it was not sharing with Lanius.

101.    On or about December 23, 2018, Mr. Buscher sent an email to Milmo Santos and Federico Gil.  In the email, Mr. Buscher reminded them that TMS/Perseus, Lanius, and Supermajor had all agreed that Supermajor would communicate the Formal MOU draft simultaneously to TMS/Perseus and Lanius.  Mr. Buscher expressed that Lanius did not want Supermajor to send the Formal MOU draft to Gil without Lanius being copied.  And Mr. Buscher said that he was to be copied on all future communications with Supermajor about the Formal MOU.

102.    On or about December 23, 2018, Mr. Buscher also sent an email to Executive 3 and Executive 4 (copying Milmo Santos) saying that he wanted to clear up any "misunderstanding." Mr. Buscher said that Supermajor needed to send the draft of the Formal MOU directly to Milmo Santos and Mr. Buscher simultaneously, as Lanius has only seen a redacted version of the Formal MOU.  Mr. Buscher also stated that the Formal MOU should describe Sirius as a fully independent and standalone entity, jointly and equally owned by Lanius and TMS/Perseus.

103.    Later that day, on or about December 23, 2018, Milmo Santos called Mr. Buscher. During that call, Milmo Santos screamed and yelled at Mr. Buscher for nearly 90 minutes.  Among other things, he was angry that Mr. Buscher had still not provided comments on the Redacted

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)          INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1                                                                                              RECEIVED NYSCEF: 01/07/2021

Case 1:21-cv-06995-PKC     Document 236-2     Filed 05/03/22     Page 25 of 51

MOU. In addition, Milmo Santos demanded to know why Mr. Buscher sent the email that day to Supermajor. During this phone call, Milmo Santos:

a. Threatened that he and Garza Santos would circumvent Mr. Buscher and go directly to Edelman to demand that Edelman remove Mr. Buscher from any involvement with Sirius and the Supermajor transaction;

b. Threatened that he and Garza Santos would take legal action in Mexico to formally remove Lanius from Sirius (and thereby the business opportunity with Supermajor) knowing that it would be hard for Lanius to overturn a Mexican ruling; and

c. Ordered Buscher to inform Edelman of these threats immediately and warned Buscher to never contact Supermajor or return to Mexico again.

104.    In the days after, TMS/Perseus continued pushing Edelman and Mr. Buscher to provide Lanius' comments on the Redacted MOU.

105.    On or about January 4, 2019, Mr. Buscher sent an email to Executive 5, the in-house attorney of Supermajor, saying there was a conflict amongst Supermajor, TMS/Perseus, and Lanius regarding the Sirius deal, and that the process for further negotiations with Supermajor needed to be altered.

106.    On or about January 4, 2019, Executive 5 telephoned Mr. Buscher. During the call, Mr. Buscher explained how Lanius had received a Redacted MOU from TMS/Perseus, which he reminded Executive 5 was not in keeping with the agreement amongst Supermajor, TMS/Perseus, and Lanius that all Supermajor communications would go simultaneously to TMS/Perseus and Lanius. Executive 5 agreed that something appeared wrong and suggested a conference call amongst Executive 3, Executive 5, Mr. Buscher, and Milmo Santos.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

107.    Later that day, on or about January 4, 2019, Mr. Buscher sent Executive 5 (the Supermajor in-house attorney) an email, attaching a copy of the Redacted MOU.

108.    Within one hour of sending that email, on or about January 4, 2019, Mr. Buscher's access to the Sirius document and email servers was discontinued by TMS/Perseus, and all of his Sirius emails were erased off his computer.

109.    Throughout the first half of January 2019, Edelman began behaving erratically towards Mr. Buscher.  Although he agreed to meet with Mr. Buscher in person to discuss Sirius, TMS/Perseus, and the issues with the Redacted MOU, he instead began communicating with Mr. Buscher only via intermediaries or by text messages.

110.    On or about January 7, 2019, Mr. Buscher had written communications with Edelman via text.  In those communications, Edelman confirmed that Mr. Buscher owned a percentage share of Lanius (and by extension, Sirius).  On this date, Edelman was still behaving and conducting himself in correspondence with Mr. Buscher as if Mr. Buscher owned a share of Lanius.

111.    In those text communications, Mr. Buscher tried to get clarity on what was going on between Lanius and TMS/Perseus, and how Lanius was going to handle the issues regarding the Redacted MOU.  But Edelman would not engage with Mr. Buscher on these topics.

112.    After January 8, 2019, Edelman refused to take any further calls from Mr. Buscher or respond to any texts.  Since that time, Edelman has seemingly taken the position that Mr. Buscher has no interest in Lanius Holding B.V., Lanius, or Sirius, despite the Sirius Shareholder Agreement and Lanius Shareholder Agreement contractually confirming Mr. Buscher's rights.

113.    On or about April 4, 2019, TMS/Perseus sent a letter to Lanius Holding B.V. (parent company of Lanius).  In that letter, TMS/Perseus confirmed that Mr. Buscher had "been

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

involved in our common project Sirius" but stated that TMS/Perseus no longer supported Mr. Buscher's involvement in the Sirius project. TMS/Perseus accused Mr. Buscher of "insulting and unprofessional behaviour" towards TMS/Perseus.

114. Presumably, the "insulting" behavior referenced by TMS/Perseus was that Mr. Buscher: (i) warned Edelman that TMS/Perseus might be trying to undercut Lanius in discussions with Supermajor; (ii) informed TMS/Perseus that he would not permit Supermajor to communicate privately with TMS/Perseus without his involvement; and (iii) notified Supermajor about the problems between TMS/Perseus and Lanius. In short, in trying to protect the rights of his company, Lanius, as outlined in the Sirius Shareholder Agreement, Mr. Buscher engendered the wrath of TMS/Perseus by calling out its own unprofessional conduct. In retaliation, TMS/Perseus went behind Mr. Buscher's back directly to Edelman and told him that Mr. Buscher had to be cut out of Sirius or else TMS/Perseus might not agree to proceed with the Sirius joint venture.

115. The April 4, 2019, letter from TMS/Perseus to Lanius Holding B.V. concludes as follows: "We understand Mr. Buscher is no longer part of the Lanius team and structure, and for the best of our joint venture, we sincerely hope that this will not change in the future. For the last months we have been working again in a more constructive manner which we hope to continue to do in the future." This confirms that TMS/Perseus, Lanius, and Edelman conspired to deprive Mr. Buscher of his rights under the Sirius Shareholder Agreement.

116. Upon information and belief, Sirius has proceeded to seek financing, loans, or capital contributions from third parties. This has an impact on Mr. Buscher, as a Sirius shareholder, but he was not notified about it or given the opportunity to be heard or participate in any vote.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)    INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1    Case 1:21-cv-06995-PKC    Document 236-2    Filed 05/03/22    Page 28 of 51    RECEIVED NYSCEF: 01/07/2021

117.    Upon information and belief, Sirius either has (or is in the process of) issuing Sirius shares to third parties.  This has an impact on Mr. Buscher, as a Sirius shareholder, as it may dilute or otherwise alter his ownership interest in Sirius.

**H.    Defendants' Improper Conduct Towards Mr. Buscher**

118.    The conduct described above illustrates how Defendants acted improperly towards Mr. Buscher and to his detriment.  Defendants engaged in the following wrongful acts (which shall be collectively described as the "Improper Conduct"):

a.    Systematically removed Mr. Buscher from all aspects of Sirius' operations, including all business matters with Supermajor to implement and monetize the Midstream Strategy that Mr. Buscher designed, marketed, and negotiated with Supermajor;

b.    Removed Mr. Buscher from his officer position as Sirius' Chief Financial Officer;

c.    Removed Mr. Buscher as a director of Sirius' Board of Directors and from his position as Vice-Chairman of Sirius' Board of Directors;

d.    Eliminated Mr. Buscher's access to Sirius emails or other database documents (including his own Sirius email address);

e.    Failed to notify Mr. Buscher about Sirius activities, including Board of Director or AGM meetings;

f.    Failed to provide Mr. Buscher with access to Sirius' books and records, including its audited financial statements;

g.    Upon information and belief, failed to identify Mr. Buscher as an owner of Lanius (and by extension, Sirius) in promotional, marketing, or capital-raising materials provided to third parties;

h.    Refused to acknowledge Mr. Buscher's status as a Sirius shareholder;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

i.  Failed to notify Mr. Buscher of any dividends or other distributions to Sirius shareholders, let alone include him in any such dividends or other distributions;

j.  Failed to notify Mr. Buscher about any capital investments, debt obligations, or loans from third parties that may impact him as a Sirius shareholder;

k.  Failed to notify Mr. Buscher about past, pending, or proposed issuance of Sirius shares to third parties (other than TMS/Perseus and Lanius), which might dilute his status as a Sirius shareholder; and

l.  Conspired to preclude Mr. Buscher from becoming reinvolved or reacquainted with Sirius' business activities, including those involving Supermajor.

### FIRST CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

119.    Plaintiff repeats and re-alleges paragraphs "1" through "118 " of this Verified Complaint as if fully set forth herein.

120.    "Implicit in every contract is a covenant of good faith and fair dealing." *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 318 (1995).  This means that each party to a contract must not do anything to interfere with or deprive another party of their right to receive the benefits of the contract.  This is particularly true, and has been repeatedly upheld, when it comes to the conduct of business or joint venture partners.

121.    As described more fully herein, Plaintiff entered into the Lanius Shareholder Agreement with Edelman, which granted him at least 25% of the shares of Lanius.  By virtue of the Sirius Shareholder Agreement (which granted Lanius 50% of the shares of Sirius), Plaintiff is at least a 12.5% owner of Sirius.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

122.     Accordingly, Plaintiff is entitled to good faith and fair dealing in connection with the Sirius Shareholder Agreement from Defendants, who are Sirius' other owners and shareholders.

123.     Plaintiff performed all of the duties and obligations asked of him in connection with the Mexican Joint Venture, Sirius, and the Sirius Shareholder Agreement. Specifically, he was the architect of the Midstream Strategy that is the backbone of Sirius and the reason it is now in a business relationship with Supermajor. Further, Plaintiff prepared the Sirius Informational Memorandum (charging no fee to do so as would be customary), marketed the Midstream Strategy to potential partners in the oil and gas industry, presented the Midstream Strategy to Supermajor, entirely negotiated the Initial MOU with Supermajor (without any involvement from Defendants), and was Sirius' primary point of contact with Supermajor during the critical period of time when Supermajor became interested in the Midstream Strategy that Plaintiff created.

124.     In addition, Plaintiff was appointed to be an officer and director of Sirius, which were positions that he held from September 2016 through at least the end of 2018 (and possibly into 2019, as the date of his termination from those positions was never articulated to him). It was Plaintiff's understanding and expectation that he would receive the same rights and benefits of the Sirius Shareholder Agreement as the other owners and shareholders of Sirius.

125.     Instead, Defendants have banded together to deprive Plaintiff of the right to receive any benefits from the Sirius Shareholder Agreement, as described more fully above as the Improper Conduct. Not only has he lost his officer position, his Board of Directors position, and any access to his Sirius email account, but he has been deprived of receiving any information about Sirius' financial condition, business plans, the status of its relationship with Supermajor, any plans to seek investment or change Sirius' share ownership, and any dividends or distributions to

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)

INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1

Case 1:21-cv-06995-PKC    Document 236-2    Filed 05/03/22    Page 31 of 51

RECEIVED NYSCEF: 01/07/2021

shareholders.  In short, Defendants are treating Plaintiff like the "forgotten man" as if he has no rights under the Sirius Shareholder Agreement.  And they are actively working in concert to deprive him of any benefits from the Sirius Shareholder Agreement.

126.    Plaintiff was harmed by Defendants' conduct.  Despite the fact that he owns at least 12.5% of Sirius, Defendants have deprived Plaintiff of information or communications about Sirius' activities, the status of the business venture with Supermajor, any access to Sirius' books and records, copies of Sirius' audited financials, notification about Sirius' AGM or other shareholder meetings, notification about any third-party investments or share allocation, information about any dividends or distributions to Sirius' shareholders, or any other information about the status of Sirius.  Moreover, Defendants have not informed him, as a shareholder, whether he should have received distributions or dividends from Sirius or whether Sirius has (or is in the process of) diluted his share ownership in Sirius by virtue of agreements made with third parties.

127.    By reason of the foregoing, Plaintiff has been significantly damaged.

128.    Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this first cause of action and for any other relief which this Court may deem just and proper.

### SECOND CAUSE OF ACTION
#### (Breach of Fiduciary Duty)

129.    Plaintiff repeats and re-alleges paragraphs "1" through "128" of this Verified Complaint as if fully set forth herein.

130.    Business partners owe a fiduciary duty to one another that imposes a duty on a business partner to act with the utmost good faith and undivided loyalty and to act in the best interest of their business partner, and not to enrich themselves at a partner's expense.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

131.    Moreover, majority shareholders of a corporation owe a fiduciary duty to minority shareholders.  Specifically, such fiduciary duties include the duty not to cause the corporation to effect a transaction that would benefit majority shareholders, at the expense of the minority shareholders. *Richbell Info. Servs., Inc v. Jupiter Partners, L.P.*, 309 A.D. 2d 288, 300 (1st Dep't. 2003); *Cottone v. Selective Services, Inc.,* 68 A.D. 3d 1038, 1039 (2d Dep't. 2009).

132.    Plaintiff, TMS/Perseus, Lanius, and Edelman formed a business partnership when they entered into the Mexican Joint Venture, which was formalized in the formation of Sirius via the Sirius Shareholder Agreement in March 2016.  From the time onward, Defendants owed a fiduciary duty to act in the utmost good faith, and in the best interest, of Plaintiff as their partner.

133.    Further, TMS/Perseus, Lanius, and Edelman were majority shareholders of Sirius, and owed a fiduciary duty to act in the utmost good faith, and in the best interest, of a minority shareholder such as Plaintiff.

134.    Instead, Defendants have breached their fiduciary duties to Plaintiff as described herein as the Improper Conduct.

135.    In so doing, Defendants have actively worked against the interests of their partner and fellow Sirius shareholder, Plaintiff.

136.    Plaintiff was harmed by Defendants' conduct.  Despite the fact that he owns at least 12.5% of Sirius, Defendants have deprived Plaintiff of information or communications about Sirius' activities, the status of the MOU with Supermajor, access to Sirius' books and records, copies of Sirius' audited financials, notification about Sirius' AGM or other meetings, notification of third-party investments or share allocation, information about dividends or distributions to shareholders, or any information about the status of Sirius.  Moreover, Defendants have not informed him, as a shareholder, whether he should have received distributions or dividends from

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Sirius or whether Sirius has (or is in the process of) diluting his share ownership by agreements with third parties.

137.    As a direct and proximate result of the Defendants conduct in breaching their fiduciary duty to Plaintiff, Plaintiff has sustained and will continue to sustain significant damages.

138.    Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this second cause of action and for any other relief which this Court may deem just and proper.

### <u>THIRD CAUSE OF ACTION</u>
**(Deceit or Intentional Fraud Against Defendants TMS, Perseus, Lanius, and Edelman)**

139.    Plaintiff repeats and re-alleges paragraphs "1" through "138" of this Verified Complaint as if fully set forth herein.

140.    In December 2015, Garza Santos sent an email to Edelman requesting that they cut Plaintiff out of his role as Sirius' interim CFO and from having any further involvement with Sirius.

141.    But after this "back channel" communication, Garza Santos, Milmo Santos, and Edelman promised Plaintiff that he would be a partner in Sirius as a shareholder/owner of the company, would be included in the company's activities, and would share in its revenues and profits. They lured him into working for Sirius with promises that he would be a full member of Sirius and a beneficiary of the Sirius Shareholder Agreement.

142.    At the time TMS/Perseus and Lanius/Edelman made these statements, they knew that they were false and were made with the intent to deceive Plaintiff. Indeed, Garza Santos (on behalf of TMS/Perseus) and Edelman had already spoken privately about cutting Plaintiff out of Sirius. TMS, Perseus, Lanius, and Edelman were waiting for their opportunity to do so once they

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

had taken full advantage of Plaintiff's efforts and abilities to develop the Midstream Strategy and attract the attention of Supermajor.

143.     Relying on these promises, Plaintiff continued to eschew separate career opportunities for himself, and instead devoted all of his time to Sirius, in order to monetize potential business opportunities in Mexico for the benefit of TMS, Perseus, Lanius, and Edelman. Specifically, he was the architect of the Midstream Strategy that is the backbone of Sirius and the reason it is now in a business relationship with Supermajor. Further, Plaintiff prepared the Sirius Informational Memorandum (charging no fee to do so as would be customary), marketed the Midstream Strategy to potential partners in the oil and gas industry, presented the Midstream Strategy to Supermajor, entirely negotiated the Initial MOU with Supermajor (without any involvement from Defendants), and was Sirius' primary point of contact with Supermajor during the critical period of time when Supermajor became interested in the Midstream Strategy that Plaintiff created.

144.     As a result of Plaintiff's efforts and abilities, TMS, Perseus, Lanius, and Edelman are presently reaping the rewards of Sirius' business relationship with Supermajor.

145.     However, TMS, Perseus, Lanius, and Edelman knowingly and improperly conspired together to eliminate Plaintiff from Sirius by virtue of the Improper Conduct.

146.     Consequently, Plaintiff reasonably and detrimentally relied on the promises of TMS, Perseus, Lanius, and Edelman, as they were made by his business partners and co-shareholders in Sirius. Plaintiff had no reason to think that TMS, Perseus, Lanius, and Edelman were already looking for ways to cut Plaintiff out of Sirius before the Sirius Shareholder Agreement was finalized.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

147.    Plaintiff has been harmed by the deceitful and fraudulent conduct of TMS, Perseus, Lanius, and Edelman.  Despite the fact that he owns at least 12.5% of Sirius, Defendants have deprived Plaintiff of information or communications about Sirius' activities, the status of the business venture with Supermajor, access to Sirius' books and records, copies of Sirius' audited financials, notification about Sirius' AGM or other meetings, notification of third-party investments or share allocation, information about dividends or distributions to shareholders, or any information about the status of Sirius.  Moreover, Defendants have not informed him, as a shareholder, whether he should have received distributions or dividends from Sirius or whether Sirius has (or is in the process of) diluting his share ownership by agreements with third parties.

148.    TMS, Perseus, Lanius, and Edelman acted with oppression, fraud, and malice towards Plaintiff, and engaged in despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights, so as to justify an award of punitive and exemplary damages.

149.    Wherefore, Plaintiff demands judgment against TMS, Perseus, Lanius, and Edelman for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this third cause of action and for any other relief which this Court may deem just and proper.

### FOURTH CAUSE OF ACTION
**(Conversion)**

150.     Plaintiff repeats and re-alleges paragraphs "1" through "149" of this Verified Complaint as if fully set forth herein.

151.    Plaintiff owned, possessed, and/or had the right to possess all of the rights and benefits granted to him under the Sirius Shareholder Agreement, including but not limited to the business opportunity with Supermajor (hereafter, the "Property").

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

152.    By virtue of the Improper Conduct alleged herein, Defendants have intentionally and substantially interfered with, improperly used, wrongfully exercised control over, and converted Plaintiff's Property by taking possession of the Property, preventing Plaintiff from having access to the Property, and refusing to return the Property.

153.    This misuse of Plaintiff's Property for Defendants' benefit was unauthorized and not intended to benefit the Plaintiff, but rather solely to benefit the Defendants.

154.    By reason of the Improper Conduct, Plaintiff was harmed by Defendants' interference with, wrongful control over, and conversion of the Property.

155.    As a direct and proximate result of Defendants' wrongful conversion of Plaintiff's Property, Plaintiff has been damaged and continues to be damaged.

156.    Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this fourth cause of action and for any other relief which this Court may deem just and proper.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

157.    Plaintiff repeats and re-alleges paragraphs "1" through "156" of this Verified Complaint as if fully set forth herein.

158.    As described more fully herein, Defendants have received the Property, which include all the benefits of the Sirius Shareholder Agreement, including but not limited to the business opportunity with Supermajor.

159.    Meanwhile, Defendants have wrongfully deprived Plaintiff of his rights to the Property, his right to be involved in the operations of Sirius, and to receive those same benefits by way of the Improper Conduct.  Instead, Defendants have improperly received and retained those benefits at Plaintiff's expense.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

160.     Defendants have inequitably benefited from their efforts to deprive Plaintiff of his Property.

161.     It is against equity and good conscience to permit Defendants to retain the benefits of the Sirius Shareholder Agreement while depriving Plaintiff, who is also a shareholder of Sirius and beneficiary of the Sirius Shareholder Agreement, from those same benefits.

162.     Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this fifth cause of action and for any other relief which this Court may deem just and proper.

## <u>SIXTH CAUSE OF ACTION</u>
### (Constructive Trust)

163.     Plaintiff repeats and re-alleges paragraphs "1" through "162" of this Verified Complaint as if fully set forth herein.

164.     New York courts have held that the purpose of a constructive trust is to prevent unjust enrichment and, thus, a constructive trust may be imposed when, "property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest." *Sharp v Kosmalski*, 40 N.Y.2d. 119, 121 (1976).

165.     As described more fully herein, Plaintiff is in a fiduciary relationship with Defendants by virtue of the fact that he entered into a joint venture (the Mexican Joint Venture) with TMS/Perseus, Lanius, and Edelman, and by virtue of the Sirius Shareholder Agreement.

166.     Pursuant to these fiduciary, contractual, business, and shareholder relationships, Defendants are obliged to treat Plaintiff fairly and equally in their partnership and not to usurp the Property and/or business or other monetary opportunities. As alleged herein, Defendants have failed to meet those requirements.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)        INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1        Case 1:21-cv-06995-PKC    Document 236-2    Filed 05/03/22    Page 38 of 51    RECEIVED NYSCEF: 01/07/2021

167.     Plaintiff relied, to his detriment, on the good faith and fair dealing of his partners, TMS/Perseus, Lanius, and Edelman in connection with the Mexican Joint Venture, and with all Defendants in connection with the Sirius Shareholder Agreement, as part of his efforts to fully monetize the business opportunity with Supermajor.

168.     After Plaintiff was sidelined from the operations of Sirius (and the efforts by Sirius to monetize the business relationship with Supermajor that he had orchestrated), Plaintiff detrimentally relied on Defendants to properly monetize the business opportunity with Supermajor and share the benefits of that relationship (and all of Sirius' operations) on a fair and pro rata basis with Plaintiff.

169.     Instead, as described more fully herein, Defendants have usurped the Property and the corporate opportunities of Sirius for their own benefit, and to the exclusion of Plaintiff.

170.     As described more fully herein, Defendants have thereby unjustly enriched themselves at Plaintiff's expense by improperly retaining the Property and depriving Plaintiff of his rights to it.

171.     Accordingly, it is just and equitable for the Court to impose a constructive trust to redress Defendants' unjust enrichment at Plaintiff's expense.

172.     Wherefore, Plaintiff demands a constructive trust be ordered by this Honorable Court to protect the interest of the Plaintiff.

### SEVENTH CAUSE OF ACTION
#### (Money Had and Received)

173.     Plaintiff repeats and re-alleges paragraphs "1" through "172" of this Verified Complaint as if fully set forth herein.

174.     Through the Improper Conduct, Defendants have received the benefits of the Sirius Shareholder Agreement, including but not limited to the business opportunity with Supermajor,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

while depriving Plaintiff of his legal right to share equally in those benefits. In this regard, based upon information and belief, Defendants have or will receive money and other benefits that were meant to go to and be shared with Plaintiff as a shareholder in Sirius.

175. These benefits and/or money did not and have not gone to Plaintiff as they should have.

176. Under principles of equity and good conscience, Defendants should not be allowed to retain these monetary and other benefits that otherwise belong to Plaintiff.

177. Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this seventh cause of action and for any other relief which this Court may deem just and proper.

### EIGHTH CAUSE OF ACTION
**(Tortious Interference with Contractual Relations as Between Plaintiff and Sirius Against Defendants TMS, Perseus, Lanius, and Edelman)**

178. Plaintiff repeats and re-alleges paragraphs "1" through "177" of this Verified Complaint as if fully set forth herein.

179. As alleged herein, Plaintiff is at least a 12.5% owner of Sirius. In that capacity, Plaintiff has a vested, pecuniary interest in the rights and benefits he is afforded by the Sirius Shareholder Agreement.

180. TMS/Perseus, Lanius, and Edelman had full knowledge of Plaintiff's vested, pecuniary interest in the contractual relations between Plaintiff and Sirius.

181. By conspiring to exclude Plaintiff from receiving the benefits of his Sirius ownership interest (as it is articulated in the Sirius Shareholder Agreement) and to exclude Plaintiff from all Sirius activities, as well as the other actions described herein as the Improper Conduct, TMS/Perseus, Lanius, and Edelman prevented full and effective performance of the Sirius

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Shareholder Agreement as to Plaintiff, or made performance of those agreements more expensive or difficult.

182.    TMS/Perseus, Lanius, and Edelman intentionally sought to disrupt performance of the Sirius Shareholder Agreement as to Plaintiff, or knew that disruption was substantially certain to occur as a result of their actions.

183.    Performance of the Sirius Shareholder Agreement was disrupted by the Improper Conduct of TMS/Perseus, Lanius, and Edelman.

184.    Plaintiff was harmed by the Improper Conduct of TMS/Perseus, Lanius, and Edelman towards him.

185.    TMS, Perseus, Lanius, and Edelman had no lawful justification for their tortious interference with Plaintiff's rights under the Sirius Shareholder Agreement.

186.    Plaintiff has suffered and will continue to suffer irreparable harm due to the continued tortious interference of TMS, Perseus, Lanius, and Edelman.

187.    Wherefore, Plaintiff demands judgment against TMS, Perseus, Lanius, and Edelman for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this eighth cause of action and for any other relief which this Court may deem just and proper.

## NINTH CAUSE OF ACTION

### (Tortious Interference with Contractual Relations as Between Sirius and Supermajor Against Defendants TMS, Perseus, Lanius, and Edelman)

188.    Plaintiff repeats and re-alleges paragraphs "1" through "187" of this Verified Complaint as if full set forth herein.

189.    As alleged herein, Plaintiff least a 12.5% owner of Sirius.  Sirius is in a contractual relationship with Supermajor, both via the Formal MOU and, upon information and belief, via

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)     INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1     Case 1:21-cv-06995-PKC     Document 236-2     Filed 05/03/22     Page 41 of 51     RECEIVED NYSCEF: 01/07/2021

other contracts between Sirius and Supermajor to implement the Midstream Strategy in Mexico. As a substantial shareholder of Sirius, Plaintiff has a vested, pecuniary interest in the contractual relations between Sirius and Supermajor.

190.    TMS, Perseus, Lanius, and Edelman knew of Plaintiff's vested, pecuniary interest in the contractual relations between Sirius and Supermajor.  By conspiring to exclude Plaintiff from all Sirius activities (including his continued work with Supermajor) and the other actions described herein as the Improper Conduct, TMS, Perseus, Lanius, and Edelman have prevented full and effective performance of Sirius' contract(s) with Supermajor, or made performance of those agreements more expensive or difficult.

191.    TMS, Perseus, Lanius, and Edelman intended to and did disrupt performance of Sirius' contract(s) with Supermajor, or knew that their efforts to exclude Plaintiff would cause disruption to occur

192.    Performance of Sirius' contract(s) with Supermajor was improperly disrupted by the Improper Conduct of TMS, Perseus, Lanius, and Edelman.

193.    Plaintiff was irreparably harmed by the Improper Conduct of TMS, Perseus, Lanius, and Edelman towards him.

194.    TMS, Perseus, Lanius, and Edelman had no lawful justification for their tortious interference with Plaintiff's or Sirius' contractual rights with Supermajor.

195.    Plaintiff has suffered and will continue to suffer irreparable harm due to the continued tortious interference of TMS, Perseus, Lanius, and Edelman.

196.    Wherefore, Plaintiff demands judgment against TMS, Perseus, Lanius, and Edelman for the above-described damages including interest, costs, fees, and disbursements

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

associated with the prosecution of this ninth cause of action and for any other relief which this Court may deem just and proper.

### TENTH CAUSE OF ACTION
**(Tortious Interference with Prospective Economic Advantage Between Plaintiff and Sirius Against Defendants TMS, Perseus, Lanius, and Edelman)**

197.    Plaintiff repeats and re-alleges paragraphs "1" through "196" of this Verified Complaint as if fully set forth herein.

198.    Plaintiff was in an economic relationship with Sirius that was expected to result in an economic benefit to him.

199.    As described more fully herein, TMS/Perseus, Lanius, and Edelman had full knowledge of Plaintiff's economic relationship with Sirius, particularly considering that they are his business partners in that venture.

200.    TMS/Perseus, Lanius, and Edelman engaged in the Improper Conduct, as described more fully herein.  The Improper Conduct constituted a number of independent torts, including but not limited to, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, and intentional interference with contractual relations.

201.    By engaging in the Improper Conduct, TMS/Perseus, Lanius, and Edelman intended to and did disrupt Plaintiff's economic relationship with Sirius, or knew that disruption of that economic relationship was certain or substantially certain to occur.

202.    Plaintiff's economic relationship with Sirius was disrupted.  In fact, Plaintiff has had no contact with Sirius since January 8, 2019.  He was stripped of his officer and director positions at Sirius, removed from Sirius' email server and document database, denied access to any of Sirius' books, records, financial statements, or accounting materials, and excluded from any information about the activities of Sirius in connection with Supermajor.  TMS/Perseus, Lanius, and Edelman were the direct and proximate cause of this disruption.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

203.    Plaintiff has been irreparably harmed by the disruption of his economic relationships with Sirius.  The conduct of TMS/Perseus, Lanius, and Edelman was a substantial factor in causing Plaintiff's harm, as described more fully herein.

204.    Wherefore, Plaintiff demands judgment against TMS, Perseus, Lanius, and Edelman for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this tenth cause of action and for any other relief which this Court may deem just and proper.

### ELEVENTH CAUSE OF ACTION
**(Tortious Interference with Prospective Economic Advantage Between Plaintiff and Supermajor)**

205.    Plaintiff repeats and re-alleges paragraphs "1" through "204" of this Verified Complaint as if full set forth herein.

206.    Plaintiff was in an economic relationship with Supermajor that would have resulted in an economic benefit to him.

207.    Defendants knew of Plaintiff's economic relationship with Supermajor, particularly since they asked Plaintiff to pitch the Midstream Strategy and Sirius Informational Memorandum to Supermajor on behalf of Sirius.

208.    Defendants engaged in the Improper Conduct, as described more fully herein.  The Improper Conduct constituted a number of independent torts, including but not limited to, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, and intentional interference with contractual relations.

209.    By engaging in the Improper Conduct, Defendants intended to and did disrupt Plaintiff's economic relationship with Supermajor, or Defendants knew that disruption of that economic relationship was certain or substantially certain to occur.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

210.    Plaintiff's economic relationships with Supermajor was improperly and wrongly disrupted.  In fact, Plaintiff has had no contact with Supermajor since January 8, 2019.  He was stripped of his officer and director positions with Sirius, removed from Sirius' email server and document database, excluded from communicating with Supermajor about the Midstream Strategy, or otherwise participating in Sirius' business dealings with Supermajor.  Defendants were the cause of all this disruption.   As of today, Plaintiff has no economic relationship with Supermajor, despite being the architect of the business opportunity that Sirius and Supermajor are pursuing.

211.    Plaintiff has been irreparably harmed by the direct and calculated disruption of his economic relationship with Supermajor by the Defendants.

212.    Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this eleventh cause of action and for any other relief which this Court may deem just and proper.

## TWELFTH CAUSE OF ACTION
### (Accounting)

213.    Plaintiff repeats and re-alleges paragraphs "1" through "212" of this Verified Complaint as if fully set forth herein.

214.    As described more fully herein, Plaintiff was in a fiduciary relationship with Defendants by virtue of the fact that he entered a joint venture (the Mexican Joint Venture) with Defendants and by virtue of the Sirius Shareholder Agreement.

215.    Pursuant to the fiduciary, contractual, business, and shareholder relationships, Defendants were obliged to treat Plaintiff fairly, not to usurp his business or other monetary opportunities, and to treat him fairly and equally in their partnership and/or as a Sirius shareholder.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

As alleged herein, Defendants have refused, neglected, and/or otherwise failed to meet those requirements.

216.    Moreover, Plaintiff has had no access to financial information about Sirius, or its business dealings with Supermajor, since January 8, 2019. He does not know if Sirius shareholders have received dividends or distributions, whether Sirius has taken on debt or equity obligations that could affect him, or whether Sirius has issued shares to third parties that might have an impact on Plaintiff.

217.    Defendants have repeatedly breached their fiduciary duties to Plaintiff and failed to timely provide him, as a shareholder of Sirius, with information relating to the ongoing financial transactions of the company, including those involving Supermajor.

218.    Under New York law, Plaintiff is entitled to an accounting from Defendants.

219.    Defendants should be required to account to Plaintiff for any and all monies obtained by and paid by the Defendants for which Plaintiff has a verifiable interest in.

220.    The failure of Defendants to provide an accounting to Plaintiff has caused Plaintiff to sustain damages in an amount to be determined at trial.

221.    Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this twelfth cause of action and for any other relief which this Court may deem just and proper.

### THIRTEENTH CAUSE OF ACTION
### (Common Law Unfair Competition)

222.    Plaintiff repeats and re-alleges paragraphs "1" through "221" of this Verified Complaint as if fully set forth herein.

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

223.    New York has long recognized a common-law cause of action for unfair competition where a defendant acts unfairly to abuse a fiduciary or confidential relationship with a plaintiff.  *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d. 467, 476 (2007).

224.    As described more fully herein, Plaintiff is in a fiduciary and confidential relationship with Defendants by virtue of the fact that he entered into the Mexican Joint Venture and Sirius Shareholder Agreement with Defendants.

225.    Pursuant to these fiduciary, contractual, business, and shareholder relationships, Defendants are obliged to treat Plaintiff fairly and equally in their partnership and not to usurp the Property and/or business or other monetary opportunities.

226.    Relying on the relationships with Defendants, Plaintiff eschewed separate career opportunities for himself, and instead devoted all of his time to Sirius, in order to monetize potential business opportunities in Mexico for Defendants' benefit.  Specifically, he was the architect of the Midstream Strategy that is the backbone of Sirius and the reason it is now in a business relationship with Supermajor.  Further, Plaintiff prepared the Sirius Informational Memorandum (charging no fee to do so as would be customary), marketed the Midstream Strategy to potential partners in the oil and gas industry, presented the Midstream Strategy to Supermajor, entirely negotiated the Initial MOU with Supermajor (without any involvement from Defendants), and was Sirius' primary point of contact with Supermajor during the critical period of time when Supermajor became interested in the Midstream Strategy that Plaintiff created.

227.    As a result of Plaintiff's efforts and abilities, Defendants are presently reaping the rewards of Sirius' business relationship with Supermajor.

228.    As described more fully as the Improper Conduct, Defendants have unfairly deprived Plaintiff of his rights and benefits pursuant to the Sirius Shareholder Agreement.  Instead,

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

Defendants utilized the labor and efforts of Plaintiff for their own benefit, then cut him out of all activities and deprived him of his rights and benefits pursuant to their agreements and partnerships.

229.    Wherefore, Plaintiff demands judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this thirteenth cause of action and for any other relief which this Court may deem just and proper.

### FOURTEENTH CAUSE OF ACTION
**(Declaratory Relief)**

230.    Plaintiff repeats and re-alleges paragraphs "1" through "229" of this Verified Complaint as if fully set forth herein.

231.    An actual controversy has arisen and now exists between the parties concerning the following matters:

a.    Defendants' breach of various duties and obligations to Plaintiff at common law and pursuant to the Sirius Shareholder Agreement;

b.    Defendants' refusal to acknowledge Plaintiff as the owner of at least 12.5% of the shares of Sirius;

c.    Defendants' refusal to communicate with Plaintiff (as a Sirius shareholder) about the business activities of Sirius, including but not limited to, those involving Supermajor;

d.    Defendants' conduct in not informing Plaintiff, as a shareholder, about Sirius' Board of Directors or other shareholder meetings;

e.    Defendants' conduct in blocking Plaintiff from getting any financial information about Sirius, including but not limited to, books and records, accounting and financial data, and audited financial statements;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

f.  Defendants' conduct in blocking Plaintiff from participating in Sirius' business dealings with Supermajor, which is to the ultimate detriment of Sirius (and by extension, Plaintiff, as one of Sirius' owners);

g.  Defendants' conduct in not informing Plaintiff about debts or obligations to third parties assumed (or proposed to be assumed) by Sirius;

h.  Defendants' conduct in not informing Plaintiff about equity or Sirius shares issued (or proposed to be issued) to third parties; and

i.  Defendants' conduct in not informing Plaintiff about any dividends or distributions paid (or proposed to be paid) to Sirius' other shareholders.

232.  Judicial declarations are necessary and appropriate at this time to enable the parties to ascertain their rights and duties to each other, for Plaintiff to ascertain his rights as a Lanius and Sirius shareholder (including debts or obligations assumed by Sirius, equity or Sirius shares issued to third parties, or dividends/distributions made to Sirius' other shareholders), and for Plaintiff to receive access to all information concerning Sirius and its business venture with Supermajor.

233.  Wherefore, Plaintiff demands declaratory judgment against Defendants for the above-described damages including interest, costs, fees, and disbursements associated with the prosecution of this cause of action and for any other relief which this Court may deem just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for Judgment against the Defendants as follows:

1.  Declaratory Relief;

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

CAUTION: THIS DOCUMENT HAS NOT YET BEEN REVIEWED BY THE COUNTY CLERK. (See below.)          INDEX NO. UNASSIGNED

NYSCEF DOC. NO. 1          Case 1:21-cv-06995-PKC    Document 236-2    Filed 05/03/22    Page 49 of 51    RECEIVED NYSCEF: 01/07/2021

2.        For an order temporarily, preliminarily, and permanently enjoining Defendants from making business decisions regarding Sirius or Supermajor without Plaintiff's knowledge and approval;

3.        For an order directing Defendants to acknowledge Plaintiff as the owner of at least 12.5% of the shares of Sirius;

4.        For an order directing Sirius to appoint Plaintiff to the Board of Directors of Sirius;

5.        For costs of suit incurred herein, including reasonable attorneys' fees, costs, and expenses as allowed by law;

6.        For an order granting judgment in favor of Plaintiff on all causes of action contained herein.

7.        For compensatory, punitive, and exemplary damages;

8.        For prejudgment interest at the legal rate; and

9.        For such other relief as the Court may deem just and proper.

Dated: January 7, 2021
       Oyster Bay, New York

CHALOS & CO, P.C.
*Attorneys for Plaintiff*
*Stephen Buscher*

By: _____

George M. **Chalos**, Esq.
Melissa Patzelt-Russo, Esq.
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel: (516) 714-4300
E-mail: gmc@chaloslaw.com
E-mail: mrusso@chaloslaw.com
Chalos & Co, Ref: 2586.001

-and-

Holmes, Taylor, Cowan & Jones LLP

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.

Joel Athey, Esq.
811 Wilshire Boulevard, Suite 1460
Los Angeles, California 90017
Tel: (213) 985-2200
Email: joel.athey@holmestaylor.com

To:

**SIRIUS ENERGY S.A. DE C.V.**
Blvd. Antonio L. Rodriguez No. 2100
Piso 21 Of. 1, Santa Maria
Monterrey, Nuevo León
Mexico 64650

**TÉCNICAS MARÍTIMAS SUSTENTABLES, S.A. DE C.V.**

| | |
|---|---|
| Blvd. Antonio L. Rodriguez No. 2100 | Avenida Lazaro Cardenas 2470 |
| Piso 21 Of. 1, Santa Maria | Garza Garcia, Nuevo León |
| Monterrey, Nuevo León | Mexico 66266 |
| Mexico 64650 | |

**COMPAÑÍA PETROLERA PERSEUS, S.A. DE C.V.**
Blvd. Antonio L. Rodriguez No. 2100
Piso 21 Of. 1, Santa Maria
Monterrey, Nuevo León
Mexico 64650

**LANIUS B.V.**

| | |
|---|---|
| Van Boshuizenstraat 225 | Hollandse Hout 111 |
| 1083 AW, Amsterdam | 8244 GD, Lelystad |
| Netherlands | Flevoland, Netherlands |

**DOUGLAS EDELMAN**
14 Cottesmore Gardens
W8 5PR London
United Kingdom

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i))
which, at the time of its printout from the court system's electronic website, had not yet been reviewed and
approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject
filings for various reasons, readers should be aware that documents bearing this legend may not have been
accepted for filing by the County Clerk.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

STEPHEN BUSCHER, an individual,

          Plaintiff,

          vs.

SIRIUS ENERGY S.A. DE C.V., TÉCNICAS
MARÍTIMAS SUSTENTABLES, S.A. DE C.V.,
COMPAÑÍA PETROLERA PERSEUS, S.A. DE C.V.,
LANIUS B.V., DOUGLAS EDELMAN,
an individual, and DOES 1-50, inclusive

          Defendants.

Index No.

---

### SUMMONS AND COMPLAINT

---

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonably inquiry, the contentions contained in the annexed documents are not frivolous*

*George M. Chalos, Esq.*
*Melissa Patzelt-Russo, Esq.*
*Chalos & Co, P.C.*
*55 Hamilton Avenue*
*Oyster Bay, New York 11771*
*(516) 714-4300*

*Joel Athey, Esq.*
*Holmes, Taylor, Cowan & Jones LLP*
*811 Wilshire Boulevard, Suite 1460*
*Los Angeles, California 90017*
*(213) 985-2200*

This is a copy of a pleading filed electronically pursuant to New York State court rules (22 NYCRR §202.5-b(d)(3)(i)) which, at the time of its printout from the court system's electronic website, had not yet been reviewed and approved by the County Clerk. Because court rules (22 NYCRR §202.5[d]) authorize the County Clerk to reject filings for various reasons, readers should be aware that documents bearing this legend may not have been accepted for filing by the County Clerk.