UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                                        Plaintiff,

                —against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS
A, INC., d/b/a "THORIAN HOLDINGS,"

                                        Defendants.

21 Civ. 6995 (PKC)

## FOURTH INTERIM REPORT OF RECEIVER

### (For the Period from April 23, 2022 through June 23, 2022)

Kurt F. Gwynne (No. 5605206)
Christopher A. Lynch (No. 4243655)
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450
E-mail:  kgwynne@reedsmith.com
calynch@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 778-7500
Facsimile:   (302) 778-7575
E-mail:  jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as Receiver of*
*Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

Michael Fuqua, Court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), respectfully submits this Status Report (the "Report") for the period of April 23, 2022 through June 23, 2022 (the "Reporting Period") in accordance with the Order of this Court entered on November 8, 2021, and for the purpose of reporting the status of the Receiver's work and findings during the Reporting Period. The facts presented in this Report are preliminary and may be amended and changed as the Receiver's investigation continues. This Report supplements the (i) initial status report (Doc. 135) submitted to the Court on December 22, 2021, (ii) second status report submitted to the Court on February 22, 2022 (Doc. 216), and (iii) third status report submitted to the Court on April 25, 2022 (Doc. 229). This Report includes the preliminary assessment of the Receiver's counsel, Reed Smith LLP ("Reed Smith") and King & Spalding LLP ("K&S"), as well as the consultants and advisers retained by the Receiver's counsel, including GlassRatner Advisory & Capital Group, LLC d/b/a B. Riley Advisory Services ("B. Riley") and PJT Partners, LP.

## I.  PROTECTING THE RECEIVERSHIP ESTATE ASSETS

### A.  Accounting for Assets in Riverside, California

The Receivership Entities continue to lease significant hangar (6,400 square feet) and office (2,500 square feet) space at the Riverside, California airport, from which Theia Aviation LLC operated. Numerous assets of the Receivership Entities, including a partially dismantled 1996 Jetstream 4100 aircraft and various aviation-related technological parts, are located onsite in the Riverside hangar. During the Reporting Period, the Receiver's team conducted an on-site visit to itemize all assets located at the hangar and prepared a detailed report of such assets.

### B.  Financial & Accounting Records

The Receiver requested and obtained additional documents from Wells Fargo Bank, National Association in connection with a previously issued subpoena *duces tecum* served pursuant to Rule 45 of the Federal Rules of Civil Procedure.  These documents included account records (including details of wire transfers, account and credit card/line of credit statements, and other related information) relating to certain checking and credit card accounts previously identified by the Receiver as being held at each respective financial institution in the name of TGI.

### C.  Federal Communications Commission

The Receiver continues to maintain open lines of communication with the Federal Communications Commission (the "FCC").  Akin Gump Strauss Hauer & Feld LLP continues to represent the Receiver in connection with matters before the FCC and the Committee on Foreign Investment in the United States ("CFIUS") and provides periodic updates to the FCC and/or CFIUS regarding the receivership case.

### D.  Intellectual Property

The Receiver continues to work with Frank J. Bonini, Jr., Esq. of Bonini Law to protect the Receivership Entities' domestic and international intellectual property filings (*i.e.*, trademarks and patents) by insuring the payment of renewal and other required fees and amounts due.

### E.  Executory Contracts, Leases, and Employment Agreements

The Receiver and his team have completed their review of substantially all of the 160 executory contracts, leases, and employment agreements to which the Receivership Entities are party and have conducted an assessment of the preliminary amounts believed to be due to third parties under the various agreements.  In connection with creating a data room for potential purchasers, the Receiver and his team reviewed numerous third-party agreements and analyzed

their confidentiality provisions to ensure third-party approvals where necessary to avoid any inadvertent breaches of confidentiality.  The Receiver has contacted certain of the contract counterparties for permission to share certain confidential information in connection with the ongoing sale process.

## II.     DISPOSITION OF RECEIVERSHIP ESTATE ASSETS

### A.  FCC and NOAA Licenses

During the Reporting Period, the Receiver continued to engage in negotiations with an interested party to become the "stalking horse" bidder (the "Potential Stalking Horse") for the assets of the Receivership Entities, including the spectrum license (the "FCC License") granted to TGI by the FCC and the license granted to TGI by the National Oceanic and Atmospheric Administration (the "NOAA License").  Since the commencement of these negotiations, the Potential Stalking Horse has made modifications with respect to its counsel and funding sources. These changes have delayed further negotiations and the drafting of sale-related documents.  These delays likely will necessitate an extension of the receivership beyond July 15, 2022 to accommodate an orderly sale process.

In addition to the Potential Stalking Horse, other parties have indicated an ongoing interest in bidding on some or all of the Receivership Entities' assets.  For example, during the Reporting Period, another entity interested in purchasing the Receivership Entities' assets began negotiating directly with various creditor constituencies in order to facilitate the submission of their bid.  One party that previously expressed an interest in becoming the stalking horse bidder determined not to pursue the opportunity as a stalking horse.

### B.  Aviation Assets

The Potential Stalking Horse and certain other interested parties have indicated an intent to purchase the Receivership Entities' aircraft (one non-functional plane and one functional plane formerly leased to a third party, but now securely parked at Basler Aviation in Oshkosh, Wisconsin), sensing equipment, and a contract for the production of three (3) aircraft with a substantial deposit (collectively, the "Aviation Assets"), along with the FCC License and the NOAA License.  The Receiver also engaged three (3) appraisers to determine the value of the functional aircraft and received a range of values from each.  To the extent the ultimate purchaser of the FCC License and/or the NOAA License does not wish to purchase the Aviation Assets, the Receiver will re-initiate discussions with parties that seek to purchase only the Aviation Assets and related equipment.

### C.  *De Minimis* Assets

As set forth in the *Notice of De Minimis Asset Sale* (Doc. 238), the Receiver consummated the sale of a printer and copier located on the Receivership Entities' former New Mexico premises for $8,400 to Lutgen & Associates, Inc. d/b/a Document Technologies, a third party with no known relationship to the Receivership Entities.

## III.    PRELIMINARY FORENSIC ANALYSIS / RECONCILIATION

During the Reporting Period, the Receiver and his advisors continued their forensic accounting activities with regard to the following areas:

### A.  "Friends and Family" Notes Analysis

During the Reporting Period, the Receiver and his team remained in contact with counsel for holders of certain Friends & Family notes.  The Receiver and B. Riley successfully completed an initial analysis and cash reconciliation of the "Friends and Family" notes.  Summarily, the

results of the Receiver's preliminary analysis reflect that the Receivership Entities received approximately $75 million in connection with 262 "Friends and Family" notes issued by the Receivership Entities.

### B. Trade Vendor & Contractor Accounts Payable

The Receiver and B. Riley have completed an initial analysis of amounts due to trade vendors and contractors based on contracts that have thus far been located.

## IV.   ONGOING INVESTIGATIONS

### A. Department of Justice Investigation

During the Reporting Period, at great expense to the Receivership Entities' estates, the Receiver continued to cooperate with the United States Department of Justice ("DOJ") in responding and producing documents related to four (4) broad grand jury subpoenas issued by the United States District Court for the District of Columbia to produce certain documents, including two (2) broad subpoenas issued to the Receivership Entities prior to the Receiver's appointment. The Receiver and his team continued to review the production to (i) ensure that the legal and evidentiary privileges of the Receivership Entities remain intact and (ii) comply with any existing agreements between the Receivership Entities and third parties to avoid disclosure of confidential or proprietary information.  This involved a substantial amount of work assembling, reviewing, and producing tens of thousands of pages of documents with regard to the subpoenas and related information requests.  The Receiver and his team also liaised with DOJ representatives, counsel to a former board member, and counsel to a former member of management regarding ongoing document production and cooperation with the DOJ.  The Receiver's review and analysis of the Receivership Entities' files is ongoing, and documents are being produced on a rolling basis.

### B.  Counterclaims Against FCS and Its Affiliates

On May 20, 2022, the Receiver, through K&S, filed a notice by which he voluntarily dismissed (without prejudice) the counterclaims against FCS Advisors, LLC, Brevet Capital Management, LLC, Mark Callahan, Robert Leeds, Leeds Holdings, LLC, and Strongbow Holdings, LLC filed in the receivership case.

### V.   MISCELLANEOUS

During the Reporting Period, the Receiver and his team conducted an extensive review and analysis of minutes from meetings of TGI's board of directors and other related documents received in productions from law firms that previously represented the Receivership Entities.

The Receiver and his team also responded to (i) a pre-motion letter regarding a request for relief from the receivership stay by a former member of the Receivership Entities' management and (ii) a third-party subpoena issued to the Receivership Entities in connection with a dispute involving a former member of management in New Mexico State Court.

Finally, the Receiver and B. Riley, on the one hand, and Reed Smith, on the other hand, filed their respective second applications for compensation and reimbursement of expenses with the Court.

[*The remainder of this page has been left intentionally blank.*]

Dated:  June 23, 2022
       New York, New York

Respectfully submitted,

REED SMITH LLP

By:    */s/ Kurt F. Gwynne*
       Kurt F. Gwynne (No. 5605206)
       Christopher A. Lynch (No. 4243655)
       599 Lexington Avenue
       New York, New York 10022
       Telephone:  (212) 521-5400
       Facsimile:  (212) 521-5450
       E-mail:  kgwynne@reedsmith.com
              calynch@reedsmith.com

       - and -

       Jason D. Angelo, Esq. (admitted *pro hac vice*)
       1201 N. Market Street, Suite 1500
       Wilmington, Delaware 19801
       Telephone:  (302) 778-7500
       Facsimile:  (302) 778-7575
       E-mail:  jangelo@reedsmith.com

       *Counsel for Michael Fuqua, in his capacity as*
       *Receiver of Theia Group, Inc., Theia Aviation LLC,*
       *and Theia Holdings A, Inc.*