# Exhibit 2

## AMERICAN ARBITRATION ASSOCIATION

|  |  |
|---|---|
| STEPHEN BUSCHER,<br><br>Claimant,<br><br>v.<br><br>THEIA GROUP, INC.<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)  Arbitration No.<br>)<br>)<br>)<br>)<br>)<br>) |

## DEMAND FOR ARBITRATION

Claimant Stephen Buscher for his Demand for Arbitration against Respondent Theia Group, Inc ("Theia" or "Company" or Respondent) alleges as follows:

## INTRODUCTION

1.     Stephen Buscher is a former Theia employee who was retaliated against for exposing potential misrepresentations and self-dealing at the Company.  In or about June 2021, Buscher, as Theia's CFO, alerted a member of Theia's board of directors (the "Board") to several disturbing discoveries.  Those discoveries pertained, in part, to the actions of two key shareholders, one of whom was also a C-Suite employee and both of whom were Board members—Erlend Olson ("Olson") and John Gallagher ("Gallagher").

2.    Buscher discovered that Olson and Gallagher were engaged in what appeared to be self-dealing.  They had caused the Company to pay them unusually large bonuses out of proceeds of short-term loans taken out by the Company, apparently without the knowledge of Theia's full Board.  Buscher also learned that Olson and/or Gallagher had mismanaged Theia by making unilateral decisions to spend Theia's money on things that were outside the Company's business plan. Theia's Board had, apparently, not authorized these transactions either.  Buscher also discovered that Olson and/or Gallagher appeared to be using misleading financial information to induce people to invest money in the Company.  These misdeeds, in part, caused the Company, a once promising aerospace business with valuable licenses, to fail and enter receivership.

3.    Within days of Buscher reporting his discoveries to one of Theia's Board members, three notable things happened: (i) almost all of Theia's Board resigned; (2) Olson and Gallagher started a campaign of harassing and threatening behavior directed towards Buscher; and (3) Theia cut off Buscher from all access to Company records and, eventually, replaced him by hiring a new CFO without his knowledge.

4.    Following the Company's constructive discharge of Buscher, it failed to pay him wages and other compensation due to him under the parties' amended Consulting Agreement entered into as of December 31, 2020 ("Amended Consulting

2

Agreement"). A copy of the Amended Consulting Agreement, and its exhibits, is attached hereto as **Exhibit 1**.

5.      The Company's constructive discharge and failure to pay compensation give rise to three causes of action. *First*, Buscher seeks payment of compensation owed under the applicable wage payment statutes. *Second*, Theia's actions breached the terms of the Amended Consulting Agreement, including the clear and unambiguous requirement that the Company pay severance after terminating Buscher without cause. *Third*, Buscher seeks indemnification for legal fees incurred as a result of his work at Theia. By this arbitration, Buscher seeks the compensation that is rightfully owing to him.

## **PARTIES**

6.      Claimant Stephen Buscher was formerly the CFO of Theia Group., Inc. from February 4, 2021 until August 8, 2021.

7.      Defendant Theia, and its wholly-owned subsidiary Theia Resources Group, Inc. ("Theia Resources"), were companies that secured a license from the Federal Communications Commission to build a network of satellites for imaging of the entire surface of the Earth.

## ARBITRATION AGREEMENT, VENUE, AND APPLICABLE LAW

8.     The Amended Consulting Agreement provided that any dispute arising out of the Amended Consulting Agreement would be settled by arbitration in the State of Delaware.  *See* Exh. 1 § 10.4.

9.     The Amended Consulting Agreement provides:

> 10.4  Arbitration.    Except as provided below, the Company and Consultant agree that any dispute, interpretation, controversy, or claim arising out of or relating to this Agreement shall be settled by arbitration to be held in the State of Delaware before a single arbitrator, in accordance with the Commercial Rules then in effect of the American Arbitration Association.  The arbitrator may grant monetary, injunctive, or other relief.  The decision of the arbitrator shall be final, conclusive, and binding on the parties to the arbitration.  Judgment may be entered on the arbitrator's decision in any court of competent jurisdiction. *Id.* § 10.4.

10.    The parties also agreed that Delaware law would govern the Amended Consulting Agreement.  *Id.* § 10.3.

11.    The Amended Consulting Agreement provides:

> 10.3  Law; Forum.  The rights and obligations of the parties under this Agreement will be governed by and construed in all respects under the laws of the State of Delaware, without regard to its conflict of laws principles. The parties agree and irrevocably consent to the exclusive and sole jurisdiction of the courts located in Wilmington Delaware for any dispute, interpretation, controversy, or claim arising out of or relating to this Agreement. The prevailing party in any arbitration or judicial proceeding shall be entitled to its costs and reasonable attorneys' and experts' fees. *Id.* § 10.3.

4

## <u>BACKGROUND FACTS</u>

**I.      Buscher accepts the CFO position with Theia.**

12.      In November 2019, Buscher began working for the newly formed Theia Resources Group, Inc. ("Theia Resources"), a wholly owned subsidiary of Theia.

13.      Buscher initially worked for Theia Resources as a consultant.

14.      At the time, Olson was Theia's Chief Operating Officer.  In December 2020, Olson became Theia's Chief Executive Officer ("CEO").

15.      Shortly after Olson assumed the role of CEO, he asked Buscher to become Theia's Chief Financial Officer ("CFO") and work out of its Washington D.C. office, reporting directly to Olson.

16.      According to Olson, Theia wanted Buscher to become its CFO to spearhead Theia's next round of financing.

17.      Based on this conversation, in summer of 2020 Buscher agreed to move to Washington, D.C. to work for Theia, and the parties amended Buscher's original consulting contract.  Among the provisions of the amended agreement was a base compensation rate of $80,000 per month, reflecting Buscher's increased responsibilities.  *See* Exh. 1, at Exhibit A §§ 2, 6.

18.      On December 31, 2020, Buscher signed the Amended Consulting Agreement with Theia, appointing him as Theia's *sole* CFO.  *See* Exh. 1 § 3.3.

19.    According to the Amended Consulting Agreement, Buscher was to be a "W2 contract employee." *See id.* § 3.1

20.    The Amended Consulting Agreement states that it will "continue in full force and effect until 31 December 2022, unless and until terminated by a party in accordance with this Agreement." *See id.* § 7.1.

21.    The Amended Consulting Agreement further stipulated certain prerequisites to either party effectuating the termination of the agreement, including the provision of thirty (30) days' prior written notice. *See id.* § 7.2.

22.    The Amended Consulting Agreement also stipulated that Buscher would receive a minimum annual bonus of 50% of his aggregate annual monthly salary rate, which bonus would equate to $40,000 per month.  *See id.* at Exhibit A § 4.

23.    The Amended Consulting Agreement also provided that if Theia terminated the agreement without cause, Buscher would receive twelve times his monthly compensation plus his minimum bonus, which combined would equal $1,440,000 (the "Severance Package"). *See id.* at § 7.2, Exh. A § 7.

24.    On February 4, 2021, the Theia Board signed a resolution appointing Buscher as CFO of Theia.

25.    A short period before his appointment to his new role as CFO, Buscher and his family moved into an apartment in Washington D.C.

26.     Theia approved and paid for Buscher's apartment lease.

27.     The lease—which was approved by Theia's then-controller, Paul Carroll ("Carroll")—expired at the end of June 2021.

28.     By early 2021, however, Olson decided to reduce Theia's presence in Washington D.C., and had begun transitioning some of its staff to Albuquerque, New Mexico, where Olson—as CEO—resided and worked full time.

29.     At Olson's direction, Buscher began traveling to New Mexico to work out of Theia's offices there.

30.     Olson eventually decided that Buscher should relocate to New Mexico by August 2021 and agreed that Theia would pay for his relocation and housing costs. Buscher accepted that offer.

31.     On or about June 11, 2021, Buscher began a return cross-country trip to his home on the west coast, approved by Olson, during which it was agreed that Buscher would be working remotely as he prepared to relocate to New Mexico.

## II.    Buscher Notices Theia's "Red Flags"

32.     Soon after becoming CFO, Buscher learned that Theia had purportedly defaulted on a $250 million loan from Brevet Capital Management, LLC ("Brevet Loan") and had purportedly not been fulfilling its obligations under the Third Amendment to the Brevet Loan agreement.

33.    Buscher worked from February to April 2021 to correct Theia's loan compliance reporting and to recapitalize Theia.

34.    To correct Theia's loan compliance reporting and recapitalize Theia, Buscher hired Riveron Consulting, LLC as Chief Restructuring Officer, hired legal counsel, hired GH Partners as selected advisor, and hired Barclays Bank to advise on recapitalizing Theia.

35.    Buscher also tried to persuade the Board of the immediate need to reduce expenditures.

36.    Buscher also engaged Deloitte Touche Tohmatsu Limited ("Deloitte") to review and improve Theia's pre-2019 audited accounts and perform an audit for 2020.  Deloitte raised various accounting concerns to Buscher.

37.    From March to May 2021, Buscher and his accounting team worked with Deloitte to remedy their concerns, and to re-audit the 2019 and 2020 accounts and uplift them for S4 reporting compliance.  During this period, Buscher uncovered evidence that Theia had made a concerning amount of prior "bonuses" and "success fee" payments to Olson, Gallagher, and Carroll from the proceeds of short-term loans borrowed by Theia.

38.    Buscher and his team were concerned that these payments could have constituted self-dealing transactions.

39.    During this time, Buscher familiarized himself with Theia's records and also discovered a series of materials that caused him to have concern about possible misrepresentations to investors.

40.    As Buscher became aware of these concerning issues, Buscher concluded that Theia was in critical need of deleveraging and developed a recapitalization plan that involved raising equity from the capital markets.

41.    To effectuate this plan, Buscher formed of a new "workout entity," Cypherian LLC, in order to seek a SPAC partner through which to raise equity from the capital markets.  Buscher consulted with the Chairman, CEO, CTO, and chief general counsel, among others, all of whom approved of this course of action.

42.    In order to ensure that Cypherian remained "ring-fenced" from Theia and its issues, Buscher proposed, and Olson and Gallagher agreed, that Olson and Buscher would be Cypherian's initial sole LLC members, with Olson operating as CEO and Buscher as CFO.  Buscher asked Olson and Gallagher, as the two controlling shareholders, to execute in advance a resolution exchanging the necessary intellectual property and licenses to Cypherian LLC upon the essential conditions precedent as stipulated by Deloitte in exchange for the LLC's admission of Theia's existing shareholders as new members to the LLC.

43.     Buscher had several conversations with Olson and Gallagher about his concern that they paid themselves excessive bonuses that Theia may have to disgorge or convert into loans.

44.     In response, Olson and Gallagher lashed out at Buscher by sending harassing and threatening text messages and voicemail messages.

45.     On April 12, 2021, for example, Olson harangued Buscher via text message, calling him a "motherfucking piece of shit" and threatened his termination, stating "You're full of shit. Fuck you. Your [*sic*] fired."

46.     By May 2021, however, Buscher had compiled a formal list of his "red flag" concerns with two categories: (1) self-dealing; and (2) misrepresentations.

47.     Shortly thereafter, on May 21, 2021, Olson resigned, noting that he had committed certain "indiscretions" that made it impossible for him to continue as CEO.

48.     On May 25, 2021, Theia's Board convened an emergency Board meeting.  The Board signed a resolution removing Olson as CEO and as a Board member, and simultaneously appointed Steve O'Neill ("O'Neill") as the interim CEO of Theia.

49.     At the May 25, 2021 emergency Board meeting, Buscher gave a presentation to the Board about Theia's financial state, identifying several urgent issues:

a.  Buscher believed that there was a lack of financial controls at Theia, which led to the apparent self-dealing transactions engaged in by Olson and Gallagher.

b.  Buscher believed that Theia was over-leveraged and in need of recapitalization.

c.  Buscher believed that Theia may have issued too many equity conversion rights to its debtholders and that the Company needed a global restructuring.

d.  Buscher warned the Board that the Company should add more explicit warnings of potential default in its notes that it issued to future lenders.

e.  Buscher presented an update of his Cypherian recapitalization plan, and the progress the company had made together with their advisors to restructure Theia under that plan and in compliance with the Third Amendment of the Brevet Loan.

50.    After O'Neill was appointed CEO, Buscher spoke with O'Neill and further disclosed his red flag concerns.

51.    O'Neill claimed that he relayed these red flags to some other members of the Board.

52.    On June 10, 2021, Buscher was instructed to discuss his red flag materials directly with one Board member, and that Board member articulated to

11

Buscher the procedure by which Buscher's red flag concerns would be reviewed and handled.

53.     A Theia Board meeting was scheduled for June 14, 2021.  At the meeting, O'Neill and Buscher planned to have third-party advisors present their recommendations for:

a) Managing the looming default on the Brevet Loan and other loans referred to within Theia as the "high net-worth notes;"

b) Removing the apparent unilateral authority of Olson and Gallagher to authorize further expenditures; and

c) Addressing the red flags.

54.     Ultimately, the June 14, 2021 meeting was cancelled and almost all of the Board resigned.

55.     After the resignation of most of the Board, Olson and Gallagher informed Buscher that Olson was purportedly reinstated as Theia's CEO.

56.     Meanwhile, Olson and Gallagher continued to harass and threaten Buscher for doing his job.

57.     On June 8, 2021, for example, in response to an email from Buscher, Gallagher threatened Buscher, stating: "Don't fucking do that. I'll be back in a week. We can handle it. Don't send me a fucking email like I just received" and further demanded that Buscher not detail his concerns in emails to O'Neill.

12

58.     Gallagher also accused Buscher of setting Gallagher up and threatened Buscher, stating: "This set up – this play – you understand I'm coming after you, right?" and "Stephen, this is my game you're in."

59.     Gallagher ended the conversation by demanding that Buscher "write emails that impress me, not cover your ass."

60.     Similarly, Olson responded to Buscher's concerns by giving him an ultimatum with respect to his employment, stating:

> I can't take you yelling crap into the phone and to others about you claiming I'm some fraud or whatever you're upset about at the moment. I built a great company. Many times. It's clear you don't believe in me and think, as you say, all I have done is fraud. Fine, I got it for the 18th time. So ***go find someone else to partner with Steve***, I can't take it anymore. Just let me have some peace.

61.     Since June 2021, Buscher has had no access to information about the lender negotiations, no longer had authority over payments, and unbeknownst to Buscher, the Company informed Buscher's staff that they were to report to Reid Gorman ("Gorman") and that Gorman planned to terminate Deloitte.

62.     Two weeks later, Buscher was told that Olson was no longer the CEO and that Buscher would report to Jim Hickey ("Hickey").

63.     On June 30, 2021, Buscher was informed by company personnel that the Internal Revenue Service ("IRS") raided Theia's offices in Washington, D.C. and Albuquerque, and ostensibly the homes of key related parties as well.

64.     After the IRS raids, Olson and Gallagher immediately accused Buscher of reporting Theia to the authorities and sent him harassing messages.

65.     Despite the harassment, Buscher continued to work remotely for Theia while organizing the agreed move of his family to New Mexico in August, participating in numerous video conferences, and even making a trip back to Theia's Washington D.C. offices in early July 2021 for a series of meetings.

66.     When asked, Olson, Gallagher, and Hickey each assured Buscher that Theia was not a target of the IRS investigation, claiming instead that certain Theia shareholders had been identified as subjects of investigation.

67.     On July 29, 2021, Deloitte informed Buscher that they had been served multiple subpoenas related to Theia, at least one of which identified the Company itself as the target of investigation.

68.     By August 2021, and before, Buscher no longer had the financial information and controls promised to him in the Amended Consulting Agreement and that were necessary for him to perform his role as CFO.

69.     On August 8, 2021, after his constructive discharge and replacement as Theia's CFO, Buscher sent his resignation.  In that resignation letter, Buscher made clear that the Company had forced his resignation by removing his access to information and eliminating his authorization power.

70.     Following his resignation, Buscher was unemployed for over nine months.

71.     Even after his constructive discharge, Olson continued to harass and intimidate Buscher and his family through veiled threats.  For example, on August 12, 2021, Olson sent Buscher text messages claiming that Buscher was in jeopardy of imminent physical harm and advising him to alert authorities and seek protection.

72.     In another text message approximately two months later, Olson made an opaque reference to Buscher's lawyers taking care of his wife and child when Buscher is "not available" – a phrase Olson placed in quotation marks to insinuate a more nefarious message.

73.     On September 10, 2021, Gorman filed an affidavit with the U.S. District Court for the Southern District of New York stating that Theia hired him as its CFO, replacing Buscher in June 2021.

74.     Notably, Theia never provided Buscher written notice that it was terminating the Amended Consulting Agreement, which installed Buscher as Theia's sole CFO.

75.     Theia was later sued by an affiliate of Brevet for breach of the Brevet loan and Theia went into a receivership.

15

## COUNT I
## WAGE PAYMENT AND COLLECTION ACT

76.    Claimant incorporates by reference and realleges every allegation contained above, as though fully set forth herein.

77.    The Amended Consulting Agreement is a valid and binding agreement between Buscher and Theia.

78.    Buscher has performed all of his contractual obligations under the Amended Consulting Agreement.

79.    Olson, Gallagher, Hickey, and Gorman revoked Buscher's access to key financial information and controls that he needed to perform his job duties.

80.    Not only did Buscher no longer have the control necessary to perform his job, he also believed that Theia had not put adequate systems of control and oversight in place that would address the red flags he had discovered.

81.    According to the terms of the Amended Consulting Agreement, Buscher was to be Theia's sole CFO.

82.    Nevertheless, Theia appointed Gorman as its CFO in June 2021 without Buscher's knowledge.

83.    Theia, through Olson and Gallagher, subjected Buscher repeated harassment, as described herein.

84.     By harassing him, revoking his access to financial information, and replacing him as CFO, Theia created working conditions so intolerable that Buscher was forced to resign under duress.

85.     Through its conduct, Theia constructively discharged Buscher, terminating his employment without cause in violation of the terms of the Amended Consulting Agreement.

86.     Theia has failed to pay Buscher amounts owed to him under the Amended Consulting Agreement.

87.     These breaches of the Amended Consulting Agreement damaged Buscher in an unspecified amount to be proven at the arbitration hearing.  That amount, however, will be no less than: (1) Buscher's "Monthly Fee" from August 2021 through December 2022; (2) Buscher's "Monthly Fee" multiplied by 12; and (3) Buscher's "Bonus," which was "50% his aggregate Monthly Fee" multiplied by 12.  The total compensation owed to Buscher is no less than $2,800,000.

88.     At all relevant times, Buscher was an "employee" under the applicable wage payment and collection act statutes ("WPCA") of Washington, D.C. and any other applicable state statute.

89.     At all relevant times, Theia was an "employer" within the meaning of the WPCA.

90.     Theia has unreasonably refused to pay Buscher the compensation due to him under the Amended Consulting Agreement.

91.     Buscher has been damaged by the violations of the WPCA and is entitled to both contract and statutory damages.

## COUNT II
## BREACH OF CONTRACT

92.     Claimant incorporates by reference and realleges every allegation contained above, as though fully set forth herein.

93.     The Amended Consulting Agreement is a valid and binding agreement between Buscher and Theia.

94.     Buscher has performed all of his contractual obligations under the Amended Consulting Agreement.

95.     Olson, Gallagher, Hickey, and Gorman revoked Buscher's access to key financial information and controls that he required to perform his job duties as CFO of Theia.

96.     Not only did Buscher no longer have the control necessary to perform his job as CFO, but he also believed that Theia had not put adequate systems of control and oversight in place that would address the red flags he had discovered.

97.     According to the terms of the Amended Consulting Agreement, Buscher was to be Theia's sole CFO.

98.    Nevertheless, Theia appointed Gorman as CFO in June 2021, without Buscher's knowledge.

99.    Theia, through Olson and Gallagher, subjected Buscher repeated harassment, as described herein.

100.   By harassing him, revoking his access to financial information, and replacing him as CFO, Theia created working conditions so intolerable that Buscher was forced to resign under duress.

101.   Through its conduct, Theia constructively discharged Buscher, terminating his employment without cause in violation of the terms of the Amended Consulting Agreement, entitling Buscher to the Severance Package contemplated by the Amended Consulting Agreement.

102.   Theia has failed to pay Buscher all amounts owing to him under the Amended Consulting Agreement, including both wages owed for the duration of the term of the Amended Consulting Agreement and the Severance Package.

103.   These breaches of the Amended Consulting Agreement damaged Buscher in an unspecified amount to be proven at the arbitration hearing.  That amount, however, will be no less than: (1) Buscher's "Monthly Fee" from August 2021 through December 2022; (2) Buscher's "Monthly Fee" multiplied by 12; and (3) Buscher's "Bonus," which was "50% his aggregate Monthly Fee" multiplied by 12.  The total compensation owed to Buscher is no less than $2,800,000.

104.    Buscher has suffered damages as a result of Theia's conduct that will be proved at the arbitration hearing.

**COUNT III**
**INDEMNIFICATION**

105.    Claimant incorporates by reference and realleges every allegation contained above, as though fully set forth herein.

106.    The Amended Consulting Agreement is a valid and binding agreement between Buscher and Theia.

107.    Buscher has performed all of his contractual obligations under the Amended Consulting Agreement.

108.    The Amended Consulting Agreement requires that Theia "shall indemnify, defend and hold harmless Consultant to the fullest extent permitted by applicable law against all expenses (including attorneys' fees)" incurred because Buscher "is made a party to any threatened, pending, or contemplated action, suit, or proceeding, whether civil, criminal, administrative, regulatory or investigative…." *See* Exh. 1, § 8.3.

109.    For the reasons stated above, Buscher has been forced to engaged counsel to represent him in threatened, pending, or contemplated civil, criminal, and investigative proceedings.

110.    Buscher has incurred indemnifiable expenses, including attorneys' fees, as a result of his performance of services related to Theia.

20

111.   Theia has failed to pay Buscher all amounts owing to him under the Amended Consulting Agreement.

112.   Buscher has suffered damages as a result of Theia's conduct that will be proved at the arbitration hearing.

## **RELIEF REQUESTED**

WHEREFORE, Claimant Stephen Buscher respectfully that the Arbitrator issue an award in favor of Buscher and against the Respondents as follows:

a.      A declaration that Theia breached the applicable WPCA.

b.      An order directing Theia to account to Buscher for all damages sustained or to be sustained by Buscher by reasons of the wrongs alleged herein;

c.      An award of damages in an amount to be proven at the arbitration hearing, plus interest at the statutory rate, but in no event less than $2,800,000 against Theia;

d.      An award of punitive damages and attorney's fees against Theia;

e.      An award of actual, statutory, liquidated, and compensatory damages;

f.      An award of unpaid wages unlawfully withheld and liquidated damages equal to treble the amount of unpaid wages under the applicable WPCA;

g.      An award of the costs of suit including, but not limited to, attorneys' fees and costs under the applicable WPCA;

h.      All statutory damages available under the applicable WPCA;

i.      An award of Buscher's costs, expenses, and fees, arising out of this arbitration, including without limitation an award of Buscher's reasonable attorney's fees; and

j.      Such other and further relief in law or equity as the Arbitrator may deem just and proper under the facts and circumstances of this case.

Dated:          [_____], 2022          Respectfully submitted,

/s/ Draft_____
Sean Meluney (D.E. Id. No. 5514)
BENESCH, FRIEDLANDER,
       COPLAN & ARONOFF LLP
1313 N. Market Street, Suite 1201
Wilmington, DE 19801
T: 302- 442-7010
F: 302-442-7012
smeluney@beneschlaw.com

*Attorney for Claimant Stephen Buscher*