UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                            Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                            Defendants.

21 Civ. 6995 (PKC)

### DECLARATION OF KURT F. GWYNNE IN SUPPORT OF SECOND APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF REED SMITH LLP, AS COUNSEL TO RECEIVER

I, Kurt F. Gwynne, hereby declare:

1. I am a partner of the law firm Reed Smith LLP ("Reed Smith" or the "Firm"). I have been a partner of the Firm since 2001.

2. I submit this declaration (this "Declaration") in support of the *Second Application for Allowance of Compensation and Reimbursement of Expenses of Reed Smith LLP, as Counsel to the Receiver* (the "Application"), filed contemporaneously with this Declaration.[1]

3. Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge. If I were called to testify, I would testify competently to the facts set forth below.

4. I have read the Application, and the facts set forth in the Application regarding the Firm's general representation of the Receiver (as defined below) are true and correct.

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to such terms in the Application.

**Receiver's Engagement of Reed Smith**

5. On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the "Receivership Order") in the above-captioned case (the "Case"), thereby appointing Michael Fuqua as receiver ("Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities").

6. The Receiver engaged Reed Smith to serve as his counsel with respect to the Case. I believe that the Reed Smith professionals engaged to represent the Receiver constitute "Retained Personnel" under the terms of the Receivership Order.

7. Since Reed Smith's engagement and the Receiver's appointment, I have been the lead attorney working on the Case and, along with the Reed Smith professionals set forth in **Exhibit B**, I have assisted the Receiver with undertaking his duties as set forth in the Receivership Order, including, without limitation, the Court's directives that the Receiver (i) "preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets" and (ii) "seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ('FCC') License Assets." *See* Receivership Order, ¶¶ 6, 7.

**Compensation & Reimbursement of Expenses Sought By Reed Smith**

8. By the Application, Reed Smith requests an allowance of compensation in the amount of $254,575 and reimbursement of expenses in the amount of $17,723.31, for a total of $272,298.31. All services and costs for which Reed Smith seeks compensation were performed for, or on behalf of, the Receiver and the Receivership Entities during the Application Period. During the period covered by the Application, Reed Smith received no payment and no promises for payment from any source other than the Receiver and the Receivership Entities for services

rendered or to be rendered in any capacity whatsoever in connection with the matters covered by the Application.

9. The compensation sought in the Application is based upon the nature, extent, and value of the services rendered, as more particularly detailed in the invoices annexed as **Exhibit C** to the Application. These invoices contain daily time logs describing the time spent by each attorney and paraprofessional for the Application Period, and they are separated into two (2) separate categories: (i) counsel to the Receiver in connection with the exercise of his general duties as Receiver (Matter No. 60001) and (ii) counsel to the Receiver with respect to the ongoing Department of Justice investigation into the Receivership Entities (Matter No. 60002).

10. The billing rates for the Reed Smith professionals who worked on this Case, as set forth in **Exhibit C** to the Application, are those Reed Smith customarily charges for legal services to the Firm's other clients. The billing rates represent the standard hourly rates for Reed Smith personnel.

### Services Rendered by Reed Smith Professionals During Application Period

11. During the Application Period, Reed Smith worked expeditiously and efficiently to provide legal services to the Receiver and the Receiver. The services rendered by Reed Smith to the Receiver and the Receivership Entities during the Application Period include, without limitation, the following:

   a. **Financial & Corporate Information**. Reed Smith assisted the Receiver's ongoing efforts to obtain all information related to the Receivership Entities' finances, including all bank account records. Reed Smith obtained additional production of account records from Wells Fargo and PNC Bank pursuant to previously issued subpoenas *duces tecum*, including information related to certain checking and credit card accounts identified as being held at each respective financial institution in the name of one or more of the Receivership Entities.

   b. **Board Members / Former Management**. Reed Smith assisted the Receiver in responding to a demand for indemnification by a former board member and conducted

a review and analysis of board meeting minutes, notes, and other documents received in productions from law firms that previously represented the Receivership Entities. Reed Smith also communicated with former management with respect to issues related to the pending sale process.

c. **"Friends & Family" Notes**. Reed Smith remained in contact with counsel for holders of certain "friends & family" notes and assisted the Receiver in his efforts to determine the proper and complete accounting of noteholders claims and the terms thereof and with respect to the Receiver's efforts to identify holders interested in entering into a repurchase agreement with a potential purchaser of the Receivership Entities' assets.

d. **Sale Process**. With respect to the sale of the FCC and NOAA licenses, Reed Smith assisted in the ongoing sale process by drafting and supplementing multiple non-disclosure agreements and working closely with PJT Partners, L.P. to strategize regarding dealings with potential purchasers. This included communications with potential purchasers regarding whether to name a stalking horse bidder and related protections for such stalking horse bidder, along with drafting and revising potential bidding procedures for the sale process. Reed Smith also assisted with finalizing and filing of a notice of *de minimis* asset sale related to certain technology owned by the Receivership Entities and located in New Mexico. In connection with creating a data room of vendors for potential purchasers, the Firm reviewed numerous third-party agreements and analyzed their confidentiality provisions to ensure third party approval where necessary to avoid any inadvertent breaches of confidentiality.

e. **Miscellaneous Court Filings**. Reed Smith assisted the Receiver in drafting and filing his third interim status report to the Court. Reed Smith also assisted in (i) responding to a third-party subpoena issued to the Receivership Entities in connection with a dispute involving a former member of management in New Mexico State Court and (ii) responding to a pre-motion letter regarding a former management member's request for relief from the receivership stay. The Firm also drafted and filed the Receiver's and the Firm's own first applications for compensation and reimbursement of expenses and related certificates of no objection and certificates of services. Additionally, Reed Smith maintains and regularly updates the "master service list" of the individuals and entities that are parties in interest and entitled to receive notice of the Receiver's filings in this Case.

f. **DOJ Investigation**. Reed Smith continues to assist the Receiver in producing documents and responding to four (4) broad grand jury subpoenas issued by the United States District Court for the District of Columbia to produce certain documents, including two (2) broad subpoenas issued to the Receivership Entities prior to the Receiver's appointment. Reed Smith reviews the production to ensure the Receiver maintains the legal and evidentiary privileges of the Receivership Entities, as well as to comply with existing agreements between the Receivership Entities and third parties to avoid disclosure of confidential or proprietary information. Reed Smith has worked to ensure that any production of responsive documents to the U.S. Attorney's Office for the District of Columbia does not create legal exposure for the Receivership Entities

by inadvertently waiving privilege or disclosing confidential or proprietary documents in breach of agreements with third parties, which could also affect the Receiver's ability to maximize the value of the Receivership Entities' assets. Reed Smith assisted the Receiver and his team with a substantial amount of work assembling, reviewing, and producing tens of thousands of pages of documents in regard to the subpoenas and related information requests from the U.S. Attorney's Office for the District of Columbia. Reed Smith also liaised with representatives from the Department of Justice and counsel to a former board member and a former member of management regarding ongoing production and cooperation with the Department of Justice. Reed Smith's review and analysis of the Receivership Entities' files is ongoing, and documents are being produced on a rolling basis.

### Actual and Necessary Expenses Incurred During Application Period

12. Reed Smith incurred $17,723.31 in reasonable and necessary expenses during the Application Period. Such expenses were actual and necessary in connection with the services rendered by the Firm on behalf of the Receivership Entities. The Firm utilized DLS Discovery for large mailings of significant filings to over 320 parties-in-interest, including holders of 'friends and family' notes and former third-party consultants hired by the Receivership Entities. Additionally, the Firm utilized "Gravity Stack," a Reed Smith subsidiary that provides complete, end to end managed services in litigation and internal investigations, to assist with data collection, processing, hosting, and production in connection with the ongoing Department of Justice investigation. The rates charged with respect to such expenses are at or below the market rates that the majority of law firms charge clients for such services. In addition, such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

### The Requested Compensation and Expense Reimbursement is Reasonable

13. I believe that the amounts requested by Reed Smith are reasonable given (a) the complexity of this Case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, (e) the value of property of the estate enhanced, preserved and

protected, and (f) the costs of comparable services (including in cases other than a receivership case).

14. Accordingly, I respectfully request that this honorable Court authorize (i) the allowance of the compensation and the reimbursement of expenses requested by Reed Smith in the Application and (ii) payment of such amounts to Reed Smith from the assets of the Receivership Entities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 21, 2022

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne (N.Y. Bar No 5605206)