UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FCS ADVISORS, LLC,

                    Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                    Defendants.

21 Civ. 6995 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF EXPEDITED MOTION OF RECEIVER FOR AN ORDER FURTHER EXTENDING THE STAY PROVIDED IN THE RECEIVERSHIP ORDER**

 

REED SMITH LLP
Kurt F. Gwynne (No. 5605206)
Christopher A. Lynch (No. 4243655)
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 521-5400
Facsimile:   (212) 521-5450

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 778-7500
Facsimile:   (302) 778-7575

Dated:  July 1, 2022

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

**TABLE OF CONTENTS**

Page

BACKGROUND ................................................................................................................ 1
    A. The Receivership Stay and the Initial Extension Thereof............................................. 2
    B. Progression of the Sale Process.................................................................................... 3
    C. Further Extension of the Receivership Stay is Necessary............................................ 5
RELIEF REQUESTED....................................................................................................... 6
BASIS FOR RELIEF REQUESTED ................................................................................. 6
NOTICE.............................................................................................................................. 9

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Lankenau v. Coggeshall & Hicks*,
   350 F.2d 61 (2d Cir. 1965) ................................................................................................... 6

*SEC v. Amerindo Inv. Advisors Inc.*,
   2016 U.S. Dist. LEXIS 195593 (S.D.N.Y. May 20, 2016) ..................................................... 6

*SEC v. Byers*,
   609 F.3d 87 (2d Cir. 2010) ................................................................................................. 6, 7

*SEC v. Callahan*,
   2 F. Supp. 3d 427 (E.D.N.Y. 2014) ....................................................................................... 6

*SEC v. Illarramendi*,
   2012 U.S. Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012) ......................................................... 6

*SEC v. Universal Financial*,
   760 F.2d 1034 (9th Cir. 1985) ............................................................................................... 7

*U.S. v. Acorn Tech. Fund, L.P.*,
   429 F.3d 438 (3d Cir. 2005) .............................................................................................. 7, 8

*United States v. Royal Bus. Funds Corp.*,
   724 F.2d 12 (2d Cir. 1983) .................................................................................................... 7

Michael Fuqua, as court-appointed receiver (the "Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), respectfully files this memorandum of law (this "Memorandum of Law") in support of the *Expedited Motion of Receiver for an Order Further Extending the Stay Provided in the Receivership Order* (the "Motion"). In support of the Motion, the Receiver respectfully states as follows:

## BACKGROUND

1.  On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the "Receivership Order") in the above-captioned case (the "Receivership Case"). Pursuant to the Receivership Order, this Court appointed the Receiver as a federal receiver for the assets of the Receivership Entities.

2.  The Receivership Order provides, in relevant part, that the Receiver "has exclusive custody, control, and possession of all the . . . property . . . and other assets of, in the possession of, or under the control of the Receivership Entities, wherever situated." Receivership Order, ¶ 3. The Receivership Order further provides that the Receiver "may preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets, in order to prevent any loss, damage or injury. . . ." *Id.*, ¶ 7.

3.  The Receivership Order also provides that "[t]he Receiver may seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ("FCC") License Assets . . . and to take all steps necessary to effectuate a transfer or sale of the assets, except any transfer of control of such FCC License shall be submitted to the Court for approval." *Id.*, ¶ 6.

**A. The Receivership Stay and the Initial Extension Thereof**

4. To effectuate the foregoing provisions and provide the Receiver with the requisite breathing room to perform his duties, the Receivership Order also provides for a stay of all litigation (the "Receivership Stay") against Receivership Entities:

> For a period of 120 days, no person or entity, including any creditor or claimant of the Receivership Entities, shall commence or maintain an action, proceeding, lawsuit or bankruptcy case against the Receivership Entities or impacting the property and assets subject to this Order, including an action, proceeding or lawsuit heretofore commenced, without having first obtained leave of this Court. Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.

*See* Receivership Order, ¶ 4.

5. The Receivership Stay initially was set to expire on March 9, 2022, which was the 120th day following the Court's entry of the Receivership Order on November 8, 2021.

6. On February 17, 2022, the Receiver filed the *Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (Doc. 211) (the "First Extension Motion") and the *Memorandum of Law in Support of the Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (Doc. 212), by which the Receiver requested an extension of the Receivership Stay through and including July 15, 2022, without prejudice to the Receiver's right to request further extensions. Notably, as here, the Receiver sought the relief under the First Extension Motion pursuant to paragraph 15 of the Receivership Order, which permits the Receiver to "apply to the Court for additional authority on an expedited basis" and directs objecting parties to "respond within 3 business days unless otherwise ordered by the Court." *See* Receivership Order, ¶ 15.

7. On March 3, 2022, the Court entered an Order (the "Extension Order") granting the relief sought by the First Extension Motion, thereby extending the Receivership Stay through and including July 15, 2022 (the "Expiration Date"). *See* Doc. 219.

**B. Progression of the Sale Process**[1]

8. Following the Court's entry of the Extension Order, the Receiver continued to work closely with his investment bank, PJT Partners, L.P., to assist potential bidders in due diligence regarding the Receivership Entities' assets, including the spectrum license (the "FCC License") granted by the Federal Communications Commission and the license granted by the National Oceanic and Atmospheric Administration (together with the Receivership Entities' intellectual property and other assets, the "Receivership Assets").

9. In addition, the Receiver has been working very closely with a potential purchaser named Rising Sky, LLC ("Rising Sky"), while counsel for the Receiver has coordinated legal issues with Rising Sky's counsel, Willkie Farr & Gallagher LLP.

10. Rising Sky has engaged in substantial negotiations with creditors at all levels in the capital structure to negotiate the purchase or payment of their claims as part of Rising Sky's bid transaction.

11. For example, as part of its proposed transaction, Rising Sky has negotiated the purchase of FCS Advisors, LLC's ("FCS") secured claim (which is conditioned upon Rising Sky's successful negotiations with other creditors in the capital structure). In addition, Rising Sky has negotiated claims purchase agreements with **84%** of the principal invested ($63 million out of $75 million) and **89%** (142 out of 162) of the "friends and family" investors. Such agreements

---

[1] Since the Court entered the Extension Order, the Receiver filed (a) on April 25, 2022, his *Third Interim Status Report of Receiver (for the Period from February 22, 2022 through April 24, 2022)* (Doc. 229) and (b) on June 23, 2022, his *Fourth Interim Status Report of Receiver (for the Period from April 25, 2022 through June 23, 2022)* (Doc. 249).

provide for a recovery for the "friends and family" investors in the full amount of outstanding principal, plus an additional 20%.

13. In addition to engaging with FCS and the "friends and family" investors, Rising Sky is negotiating actively with other creditor constituencies in the Receivership Entities' capital structure, including many trade creditors.

13. Upon completing negotiations with the various creditor constituencies, Rising Sky has advised the Receiver that Rising Sky will make an offer (subject to approval of the Court) to purchase the Receivership Assets in exchange for (i) the full satisfaction and/or payment of claims purchased or settled by Rising Sky, (ii) funds for distribution to others creditors, and (iii) funds to administer any necessary claims resolution process in post-sale chapter 11 proceedings for the Receivership Entities.

14. Rising Sky has made clear to the Receiver that Rising Sky's continued interest in and proposed transaction for the purchase and sale of the Receivership Assets is contingent upon the transaction occurring in this receivership Court and outside of the bankruptcy context based on the strong view that bankruptcy will diminish the value of the Receivership Assets.

15. The fact that extending the Receivership Stay so that the sale process may continue outside of bankruptcy is in the interests of the Receivership Entities' creditor constituencies is evidenced by the *Declaration of Brant J. Griffin in Support of the Motion* (the "Griffin Decl.," which is attached as **Exhibit B**). Mr. Griffin is the trustee for two (2) trusts holding over $2 million in "friends and family" notes. Although Mr. Griffin previously opposed the appointment of the Receiver,[2] he strongly supports extending the Receivership Stay to

---

[2] *See Joinder of the Brant Griffin Group in the Dubar Group's Memorandum of Law in Opposition to the Appointment of a Receiver* (Doc. 94).

October 15, 2022. *See* Griffin Decl. (**Exhibit B**), ¶ 7).  In addition, the Receiver anticipates that the two (2) major secured creditors, FCS and Aithre Capital Partners, LLC, will file statements in support of this Motion.

16.     Moreover, former management of the Receivership Entities, who have an understanding of the Receivership Assets and the best way to maximize their value, strongly agrees that the sale process should proceed in this Court and outside of bankruptcy proceedings in order to maximize the value of the Receivership Assets.  *See Declaration of J. Reid Gorman in Support of the Motion* (the "Gorman Decl.," which is attached as **Exhibit C**), ¶ 10 and *Declaration of John J. Gallagher, Esq. in Support of the Motion* (the "Gallagher Decl.," which is attached as **Exhibit D**), ¶ 12.

### C. Further Extension of the Receivership Stay is Necessary.

17.     The sale process has continued to move forward in a very positive manner.

18.     After months of due diligence relating to the Receivership Entities' complex, technology-oriented assets and related intellectual property, Rising Sky is emerging as the leading purchaser.  Rising Sky's direct negotiations with many large creditors in the capital structure necessarily takes time.  Such negotiations involve consideration of numerous items, such as the review of contracts, payment histories, and account balances.

19.     Allowing the Receivership Stay to expire very likely would scuttle the progress made to date by the Receiver, put the sale process in serious jeopardy, and lead to the premature filing of bankruptcy petitions on behalf of the Receivership Entities, all of which would detrimentally affect the value of the Receivership Assets.

20.     Given the looming expiration of the Receivership Stay on July 15, 2022, the Receiver believes that a further extension of the Receivership Stay is necessary and appropriate

under the circumstances to allow the Receiver to maximize the value of the Receivership Assets for the benefit of its creditor constituents through the sale process.

## RELIEF REQUESTED

21. Through the Motion, the Receiver respectfully requests entry of an Order, in substantially the form attached as **Exhibit A** (the "Proposed Order"): (i) further extending the Receivership Stay for three (3) months through October 15, 2022, without prejudice to the Receiver's right to request further extensions of the Receivership Stay; and (ii) granting such other relief as is appropriate.

## BASIS FOR RELIEF REQUESTED

22. The Court has wide discretion in crafting the appropriate procedures for administering the assets of a receivership estate. *See S.E.C. v. Amerindo Inv. Advisors Inc.*, 2016 U.S. Dist. LEXIS 195593, at *6 (S.D.N.Y. May 20, 2016) (citation omitted). An anti-litigation injunction or stay is "simply one of the tools available to courts to help further the goals of the receivership." *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). A district court's litigation stay "rests as much on [the court's] control over the property placed in receivership as on its jurisdiction over the parties" to the underlying claim. *Id.* at 91; *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) ("There is a substantial jurisdictional basis for allowing the federal court receiver to have and keep custody and control of the assets in question, and to obtain the relief needed to implement that custody."); *S.E.C. v. Callahan*, 2 F. Supp. 3d 427, |436-37 (E.D.N.Y. 2014) (same).

23. It is well recognized in the Second Circuit that "[a] district court may impose a litigation stay on a non-party to a receivership as part of its inherent power as a court of equity to fashion effective relief." *Byers*, 609 F.3d at 91 (authorizing blanket stay of all litigation against receivership property in SEC receivership context); *see also S.E.C. v. Illarramendi*,


2012 U.S. Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012) ("The Second Circuit has recognized that an anti-litigation injunction or litigation stay in a receiver order is a valid exercise of a district court's equitable powers.") (citing *Byers*, 609 F.3d at 92); *United States v. Royal Bus. Funds Corp.*, 724 F.2d 12 (2d Cir. 1983) (affirming order enjoining debtor from filing a bankruptcy petition where a receivership was already underway and the filing would "disrupt the receiver's attempts to improve the company's fortunes.").

24. The purpose of imposing a stay of litigation is clear: "a receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005).

25. The stay generally remains in place to preserve the status quo of creditors and claims so that a receiver may administer the assets in an equitable manner—often until the receivership assets have been distributed in full. *See, e.g.*, *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (no abuse in refusing to lift stay four (4) years into the case).

26. Here, extending the Receivership Stay beyond the Expiration Date is necessary to preserve the Receivership Assets and allow the Receiver to maximize the value of such assets for the benefit of creditors. In particular, extending the Receivership Stay is in accord with permitting the Receiver to discharge his duty under paragraph 6 of the Receivership Order, which charges the Receiver with coordinating the sale of the FCC License.

27. As discussed above, the Receiver is in the midst of a sale process that promises to be extremely beneficial to all creditor constituencies. Moreover, as indicated in prior filings with the Court, the Receivership Entities' major creditors—and former executives who opposed the appointment of the Receiver—all believe the sale process should be completed before the Receiver

determines whether the filing of bankruptcy petitions for the Receivership Entities is necessary to administer claims or is otherwise appropriate. *See, e.g.*, OTSC Response, at ¶¶ 18, 40, 42. The Receivership Entities' former executives also strongly support extending the Receivership Stay through at least October 15, 2022 to permit the sale process to continue unabated. *See generally* Gorman Decl. (**Exhibit C**) and Gallagher Decl. (**Exhibit D**).

28. Extending the stay through October 15th is necessary to ensure that the Receiver's resources and undivided attention are aimed at maximizing the value of the Receivership Assets for the benefit of creditors. Allowing the Receivership Stay to expire in the midst of this progress would force the Receiver to file bankruptcy petitions prematurely on behalf of the Receivership Entities (or deal with ancillary litigation across the country), which would diminish the value of the Receivership Entities' assets to the detriment of all creditors. Bankruptcy or continued litigation would be an unnecessary and resource-consuming distraction from the Receiver's critical mission. *See, e.g.*, *Acorn Tech. Fund, L.P.*, 429 F.3d at 443 (recognizing receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate).

29. Finally, no third parties would be prejudiced by the further extension of the Receivership Stay because the Receivership Order provides a mechanism by which such parties can request that the Court lift the Receivership Stay. *See* Receivership Order, at ¶ 4 ("Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate."). Indeed, as the Court is aware, one purported creditor has taken advantage of this provision, and the parties are in the midst of briefing the issue of whether

the Receivership Stay should be lifted with respect to such party's alleged claim. *See Stephen Buscher's Motion to Lift the Receivership Stay* (Doc. 250).

30. For the foregoing reasons, the Receiver respectfully requests that the Court exercise its broad powers and wide discretion in the context of an equity receivership and further extend the Receivership Stay for three (3) months, through and including October 15, 2022, without prejudice to the Receiver's right to request further extensions.

## **NOTICE**

31. The Receivership Order provides that "[t]he Receiver may apply to the Court for additional authority on an expedited basis. Any party objecting to the relief sought by the Receiver shall respond within 3 business days unless otherwise ordered by the Court." Receivership Order, ¶ 15. The Receiver submits this Motion on an expedited basis—three (3) business days plus three (3) days for mailing—so that the Court may extend the Receivership Stay for the reasons set forth herein.

32. The Receiver provided notice of the Motion to (a) all parties that have entered their appearance in the Receivership Case via CM/ECF; and (b) any person or entity with a known, particularized interest in the subject matter of the Motion via first class mail, facsimile or electronic mail (where available). The Receiver submits that, in light of the nature of the relief requested (and creditors' ability to request relief from the Receivership Stay), no other or further notice need be given.

WHEREFORE, the Receiver, Michael Fuqua, by and through his undersigned counsel, respectfully requests that this Honorable Court grant the Motion and enter the Proposed Order (i) further extending the Receivership Stay through and including October 15, 2022, without prejudice to the Receiver's right to request further extensions of the Receivership Stay; and (ii) granting such other relief as is appropriate.

Dated: July 1, 2022
New York, New York

Respectfully submitted,

REED SMITH LLP

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne (No. 5605206)
Christopher A. Lynch (No. 4243655)
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com
calynch@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*