UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FCS ADVISORS, LLC,

                      Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                      Defendants.

21 Civ. 6995 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF EXPEDITED MOTION OF RECEIVER FOR AN ORDER FURTHER EXTENDING THE STAY PROVIDED IN THE RECEIVERSHIP ORDER**

REED SMITH LLP
Kurt F. Gwynne
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

Dated: November 30, 2022

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

## **TABLE OF CONTENTS**

**Page**

BACKGROUND ............................................................................................................................. 1
    A. The Receivership Stay and Extensions Thereof ............................................................. 2
    B. Ongoing Efforts to Preserve and Manage the Receivership Estate ................................ 4
    C. Continued Progression of the Sale Process ..................................................................... 6
    D. Further Extension of the Receivership Stay is Necessary............................................... 8
RELIEF REQUESTED ................................................................................................................ 10
BASIS FOR RELIEF REQUESTED ........................................................................................... 10
NOTICE ....................................................................................................................................... 13
CONCLUSION ............................................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Lankenau v. Coggeshall & Hicks*,
 350 F.2d 61 (2d Cir. 1965)..................................................................................................10

*SEC v. Amerindo Inv. Advisors Inc.*,
 2016 U.S. Dist. LEXIS 195593 (S.D.N.Y. May 20, 2016).......................................................10

*SEC v. Byers*,
 609 F.3d 87 (2d Cir. 2010).............................................................................................10, 11

*SEC v. Callahan*,
 2 F. Supp. 3d 427 (E.D.N.Y. 2014) ......................................................................................10

*SEC v. Illarramendi*,
 2012 U.S. Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012)............................................................11

*SEC v. Universal Financial*,
 760 F.2d 1034 (9th Cir. 1985) .............................................................................................11

*U.S. v. Acorn Tech. Fund, L.P.*,
 429 F.3d 438 (3d Cir. 2005)..........................................................................................11, 12

*United States v. Royal Bus. Funds Corp.*,
 724 F.2d 12 (2d Cir. 1983)..................................................................................................11

Michael Fuqua, as court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), through his undersigned counsel, hereby files this memorandum of law (this "Memorandum of Law") in support of the *Expedited Motion of Receiver for an Order Further Extending the Stay Provided in the Receivership Order* (the "Motion") filed contemporaneously herewith. In further support of the Motion, the Receiver relies upon the *Declaration of Michael Fuqua, as Receiver, in Support of the Motion* ("Fuqua Decl."), which is being filed contemporaneously with the Motion and this Memorandum of Law and is incorporated herein by reference.

By the Motion, the Receiver respectfully requests that this Court extend the Receivership Stay through and including January 31, 2023. If a sale transaction (subject to government approval) is not presented to this Court for approval in advance of that date, the Receiver will prepare to file chapter 11 bankruptcy petitions for the Receivership Entities by January 31, 2023.

## BACKGROUND

1. On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the "Receivership Order") in the above-captioned case (the "Receivership Case"). Pursuant to the Receivership Order, this Court appointed the Receiver as a federal receiver for the assets of the Receivership Entities.

2. The Receivership Order provides, in relevant part, that the Receiver "has exclusive custody, control, and possession of all the . . . property . . . and other assets of, in the possession of, or under the control of the Receivership Entities, wherever situated." Receivership Order, ¶ 3. The Receivership Order further provides that the Receiver "may preserve, hold, and manage all

receivership assets, and perform all acts necessary to preserve the value of the receivership assets, in order to prevent any loss, damage or injury. . . ." *Id.*, ¶ 7.

3. The Receivership Order also provides that "[t]he Receiver may seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ("FCC") License Assets . . . and to take all steps necessary to effectuate a transfer or sale of the assets, except any transfer of control of such FCC License shall be submitted to the Court for approval." Receivership Order, ¶ 6.

4. The Receivership Order also permits the Receiver to "apply to the Court for . . . authority on an expedited basis," with objections "to the relief sought by the Receiver" to be filed within "3 business days unless otherwise ordered by the Court." Receivership Order, ¶ 15. The Receiver is requesting expedited relief in accordance with Paragraph 15 of the Receivership Order and, if any objections are filed to the Motion, the Receiver respectfully requests that (if the Court believes a hearing is appropriate) the Court schedule a prompt hearing on the relief requested.

5. Additionally, paragraph 9 of the Receivership Order provides that "[i]f the Receiver determines that any of the Receivership Entities should undertake a bankruptcy filing, the Receiver is authorized to commence cases under title 11 of the United States Code for such entities." *Id.*, ¶ 10.

A. The Receivership Stay and Extensions Thereof

6. To effectuate the foregoing provisions and provide the Receiver with the requisite breathing room to perform his duties, the Receivership Order also provides for a stay of all litigation (the "Receivership Stay") against Receivership Entities:

> For a period of 120 days, no person or entity, including any creditor or claimant of the Receivership Entities, shall commence or maintain an action, proceeding, lawsuit or bankruptcy case against the Receivership Entities or impacting the property and assets

>subject to this Order, including an action, proceeding or lawsuit heretofore commenced, without having first obtained leave of this Court. Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.

*See* Receivership Order, ¶ 4.

7. The Receivership Stay initially was set to expire on March 9, 2022, which was the 120th day following the Court's entry of the Receivership Order on November 8, 2021.

8. On February 17, 2022, the Receiver filed the *Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (Doc. 211) (the "First Extension Motion") and the *Memorandum of Law in Support of the Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (Doc. 212), by which the Receiver requested an extension of the Receivership Stay through and including July 15, 2022, without prejudice to the Receiver's right to request further extensions.

9. On March 3, 2022, the Court entered an Order granting the relief sought by the First Extension Motion, thereby extending the Receivership Stay through and including July 15, 2022. *See* Doc. 219.

10. On July 1, 2022, the Receiver filed the *Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (Doc. 258) (the "Second Extension Motion") and the *Memorandum of Law in Support of the Expedited Motion of Receiver for an Order Extending the Stay Provided in the Receivership Order* (Doc. 259), by which the Receiver requested a further extension of the Receivership Stay through and including October 15, 2022, without prejudice to the Receiver's right to request further extensions.

11. On July 14, 2022, the Court entered an Order (the "Second Extension Order") which, among other things, granted the relief sought by the Second Extension Motion, thereby extending the Receivership Stay through and including October 15, 2022. *See* Doc. 270.

12. The Court granted the Receiver's Second Extension Motion because it believed that continuation of the Receivership Stay was "in the best interest of the Receivership Entities, their creditors and other potentially affected third parties" and that the "sale of the largest assets represent[ed] the best hope of creditors who are able to prove their claims for receiving payment." Second Extension Order, p. 2.

13. On October 7, 2022, the Court entered an Order (Doc. 298) (the "Third Extension Order") by which it *sua sponte* extended the Receivership Stay through and including December 14, 2022 (the "Expiration Date"). As set forth in the Third Extension Order, the Court determined that "continuation of the stay is in the best interest of the Receivership Entities, their creditors and other potentially affected third parties" due to "the Receiver's report on the disposition of Estate Assets, the ongoing Department of Justice Investigation and the filing of the Receiver's Undertaking." *See* Third Extension Order, p. 1.

**B. Ongoing Efforts to Preserve and Manage the Receivership Estate**

14. Since the entry of the Third Extension Order, the Receiver has continued his substantial efforts to protect, market, and consummate a sale of the Receivership Assets. *See* Fuqua Decl., at ¶ 4. These efforts are set forth more fully in the periodic status reports filed with the Court, each of which is incorporated by reference herein. *See* Docs. 135, 216, 229, 249, and 296.

15. As part of his efforts to protect the receivership estate, the Receiver continues to maintain the Receivership Entities' books and records and analyze the pre-receivership accounts.

*See* Fuqua Decl., at ¶ 5. For example, the Receiver is working with taxing authorities and various professionals to identify amounts owed (if any) on account of federal, state, and local taxes. *Id.* The Receiver and his team also completed an analysis and cash reconciliation of the "Friends and Family" notes, which reflects that the Receivership Entities received approximately $75 million in connection with 262 "Friends and Family" notes issued by the Receivership Entities. *Id.* ¶ 6. Approximately $225 million of principal and interest remains outstanding with respect to the "Friends and Family" notes. *Id.*

16. The Receiver, through Akin Gump Strauss Hauer & Feld LLP, remains in communication with the Federal Communications Commission (the "FCC") and the Committee on Foreign Investment in the United States ("CFIUS") regarding, among other things, the FCC License, and provides periodic updates to the FCC and/or CFIUS regarding the Receivership Case. *See* Fuqua Decl., at ¶ 7.

17. Substantial efforts have been taken to protect the Receivership Entities' intellectual property (which includes, without limitation, U.S. and foreign patents, trademarks, and related applications (collectively, the "Intellectual Property")). *See* Fuqua Decl., at ¶ 8. Since the entry of the Second Extension Order, the Receiver's professionals prepared documentation to effect the transfer of certain Intellectual Property currently held by non-receivership entities back to TGI. *Id.* The Receiver and his professionals also have worked to protect the Receivership Entities' domestic and international Intellectual Property filings by insuring the payment of renewal and other required fees and amounts due. *Id.*

18. The Receiver also continued providing his full cooperation with the United States Department of Justice in producing documents in response to four (4) broad grand jury subpoenas

issued by the United States District Court for the District of Columbia. *See* Fuqua Decl., at ¶ 9. Documents continue to be reviewed and produced on a rolling basis. *Id.*

### C. The Sale Process

19. The process of selling the Receivership Entities' assets, including the spectrum license (the "FCC License") granted to TGI by the FCC and the license granted to TGI by the National Oceanic and Atmospheric Administration (the "NOAA License" and, collectively with the Intellectual Property, the FCC License, and other assets, the "Receivership Assets"), along with other assets, including, without limitation, a sale, merger, or other disposition of all or any portion of the Receivership Entities' equity or assets (the "Sale Process") has progressed in due course since the entry of the Third Extension Order.

20. Since their retention in February 2022, PJT Partners, L.P. has overseen a process whereby indications of interest and bids were solicited for the Receivership Property. *See* Fuqua Decl., at ¶ 10. This process resulted in a number of third parties expressing initial interest in purchasing some or all of the Receivership Property. *Id.* To date, the Receiver has not obtained an acceptable offer through this process. *Id.*

21. As the Court is aware, the Receiver has been pursuing a sale transaction (the "Proposed Transaction") with Rising Sky LLC ("Rising Sky") for a number of months. Under the terms of the Proposed Transaction, Rising Sky would acquire (subject to approval of the Court and the government) the Receivership Assets in exchange for (i) the full satisfaction and/or payment of claims purchased or settled by Rising Sky, (ii) funds for distribution to other creditors, and (iii) funds to administer any necessary claims resolution process in post-sale chapter 11 proceedings for the Receivership Entities. *See* Fuqua Decl., ¶ 11. Specifically, Rising Sky would acquire (i) the FCC License, (ii) the NOAA License, (iii) the Intellectual Property; (iv) the

Receivership Entities' aircraft, (v) sensing equipment, and (vi) a contract for the manufacture of three (3) aircraft with a substantial deposit. *Id*. The Receiver and Rising Sky have been negotiating the terms of an *Asset Purchase Agreement* (the "APA") memorializing the terms of the Proposed Transaction in good faith. *Id*.

22. For several months, Rising Sky has engaged in substantial, direct negotiations with creditor constituencies at all levels in the capital structure (including many trade creditors) to negotiate the purchase or payment of their claims to facilitate the submission of its offer. *See* Fuqua Decl., ¶ 12. As of the filing of this Motion, Rising Sky has negotiated the purchase of the secured claim of FCS Advisors, LLC (which is conditioned upon Rising Sky's successful negotiations with other creditors in the capital structure). *Id*. Rising Sky also has negotiated claims purchase agreements with the vast majority—approximately 84% of the principal invested ($63 million out of $75 million) and approximately 89% (142 out of 162)—of the "friends and family" investors. *Id*. Such agreements provide for a recovery for the "friends and family" investors in the full amount of outstanding principal, plus an additional 20%. *Id*.

23. The main impediment to moving forward with the Proposed Transaction to date relates to delays in Rising Sky's funding of the acquisition of the Receivership Assets. *See* Fuqua Decl., ¶ 13. Rising Sky intends to fund the acquisition through multiple tranches of a private bond issuance wrapped by bond insurance. *Id*. Rising Sky further advises that the bond insurer must periodically obtain reinsurance before additional Rising Sky bonds may be issued, and that such process takes approximately ten (10) days between bond issuances. *Id*. Rising Sky further advises that three (3) issuances of bonds will be required to fund the acquisition contemplated by the Proposed Transaction. *Id*.

24. Rising Sky advises that it will obtain the bond insurance binder for the first tranche of bonds by mid- to late-December 2022. *See* Fuqua Decl., ¶ 14. After the issuance of the first tranche, Rising Sky states that the remainder of the bonds necessary to fund the Proposed Transaction will be issued in two (2) additional tranches over the following thirty (30) days. *Id*.

25. To the extent, however, that Rising Sky proves unable to move forward the Proposed Transaction, the Receiver intends to prepare and file voluntary petitions for relief under the Bankruptcy Code for each of the Receivership Entities. *See* Fuqua Decl., ¶ 15.

**D. Further Extension of the Receivership Stay is Necessary.**

26. Extending the Receivership Stay through January 31, 2023 (without prejudice to the Receiver's right to seek further extensions) is essential to allow the Receivership Case and the Sale Process to progress successfully. *See* Fuqua Decl., at ¶ 16. If the Court grants the relief requested by the Motion and Rising Sky is able to proceed with the Proposed Transaction, the Receiver intends to file a motion with the Court in the coming weeks seeking authority to enter into the APA. *Id*. The necessity of granting the proposed extension is further demonstrated by the following:

27. *First*, Rising Sky has made clear to the Receiver that the Proposed Transaction is contingent upon the transaction occurring in this receivership Court and outside of the bankruptcy context based on the strong view that bankruptcy will diminish the value of the Receivership Assets. *See* Fuqua Decl., at ¶ 17.

28. *Second*, extending the Receivership Stay so that the Sale Process may continue outside of bankruptcy is in the best interests of the Receivership Entities' creditor constituencies. *See* Fuqua Decl., at ¶ 18.

29. *Third*, terminating the Receivership Stay could hinder or delay the Receiver's efforts to implement the Proposed Transaction, as the Receiver would be required to spend time and money (that is not available currently) responding to and defending litigation matters. *See* Fuqua Decl., at ¶ 19.

30. As discussed above, the Sale Process has continued to move forward. Following months of due diligence relating to the Receivership Entities' complex, technology-oriented assets and related Intellectual Property, Rising Sky emerged as the leading purchaser with its Proposed Transaction. Rising Sky's direct negotiations with many creditors in the capital structure necessarily has taken time, and Rising Sky has experienced delays with its funding for the Proposed Transaction.

31. Allowing the Receivership Stay to expire on December 14, 2022 would prematurely terminate the Sale Process and lead to the premature filing of bankruptcy petitions on behalf of the Receivership Entities. The consequences of not extending the Receivership Stay would detrimentally affect the value of the Receivership Assets.

32. Given the looming expiration of the Receivership Stay on December 14, 2022, the Receiver believes that a further extension of the Receivership Stay through and including January 31, 2023 is necessary and appropriate under the circumstances. Granting the requested extension will allow the Receiver the further opportunity to determine whether Rising Sky is able to close on the Proposed Transaction to maximize the value of the Receivership Assets for the benefit of the creditor constituents or, alternatively, provide the Receiver with the requisite time to prepare and file petitions for relief under the Bankruptcy Code.

## RELIEF REQUESTED

33. Through the Motion, the Receiver respectfully requests entry of an Order, on an expedited basis, in substantially the form attached to the Motion as **Exhibit A** (the "Proposed

Order"):  (i) further extending the Receivership Stay through January 31, 2023,[1] without prejudice to the Receiver's right to request further extensions of the Receivership Stay; and (ii) granting such other relief as is appropriate.

## BASIS FOR RELIEF REQUESTED

34. The Court has wide discretion in crafting the appropriate procedures for administering the assets of a receivership estate.  *See S.E.C. v. Amerindo Inv. Advisors Inc.*, 2016 U.S. Dist. LEXIS 195593, at *6 (S.D.N.Y. May 20, 2016) (citation omitted).  An anti-litigation injunction or stay is "one of the tools available to courts to help further the goals of the receivership."  *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010).  A district court's litigation stay "rests as much on [the court's] control over the property placed in receivership as on its jurisdiction over the parties" to the underlying claim.  *Id.* at 91; *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) ("There is a substantial jurisdictional basis for allowing the federal court receiver to have and keep custody and control of the assets in question, and to obtain the relief needed to implement that custody."); *S.E.C. v. Callahan*, 2 F. Supp. 3d 427, 436-37 (E.D.N.Y. 2014) (same).

35. It is well recognized in the Second Circuit that "[a] district court may impose a litigation stay on a non-party to a receivership as part of its inherent power as a court of equity to fashion effective relief."  *Byers*, 609 F.3d at 91 (authorizing blanket stay of all litigation against receivership property in SEC receivership context); *see also S.E.C. v. Illarramendi*, 2012 U.S. Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012) ("The Second Circuit has recognized that an anti-litigation injunction or litigation stay in a receiver order is a valid exercise of a district court's equitable powers.") (citing *Byers*, 609 F.3d at 92); *United States v. Royal Bus. Funds Corp.*,

---

[1] The Receiver reserves the right to seek a further extension of the Receivership Stay to accommodate the closing of the transaction memorialized by the APA (to the extent approved by this Court).

724 F.2d 12 (2d Cir. 1983) (affirming order enjoining debtor from filing a bankruptcy petition where a receivership was already underway and the filing would "disrupt the receiver's attempts to improve the company's fortunes.").

36. The purpose of imposing a stay of litigation is clear: "a receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). The stay generally remains in place to preserve the status quo of creditors and claims so that a receiver may administer the assets in an equitable manner—often until the receivership assets have been distributed in full. *See, e.g.*, *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (no abuse in refusing to lift stay four (4) years into the case).

37. Here, extending the Receivership Stay beyond the Expiration Date is necessary to preserve the Receivership Assets and allow the Receiver the further opportunity to maximize the value of the Receivership Entities' assets for the benefit of all creditors. In particular, extending the Receivership Stay is in accord with permitting the Receiver to discharge his duty under paragraph 6 of the Receivership Order, which charges the Receiver with coordinating the sale of the FCC License. Indeed, the Court has recognized that the continuation of the Receivership Stay is "in the best interest of the Receivership Entities, their creditors and other potentially affected third parties" because the "sale of the largest assets represents the best hope of creditors who are able to prove their claims for receiving payment." *See* Second Extension Order, at 2.

38. As discussed above, the Receiver is in the midst of a Sale Process, which has led to Rising Sky's Proposed Transaction. The Proposed Transaction promises to be extremely beneficial to all creditor constituencies. Moreover, as indicated in prior filings with the Court, the Receivership Entities' major creditors—and former executives who opposed the appointment of

the Receiver—all believe the sale process should be completed before the Receiver determines whether the filing of bankruptcy petitions for the Receivership Entities is necessary to administer claims or is otherwise appropriate. *See, e.g.*, OTSC Response, ¶¶ 18, 40, 42.

39. Extending the stay through January 31, 2023 is necessary to ensure that the Receiver's resources and undivided attention are aimed at maximizing the value of the Receivership Assets for the benefit of creditors. Allowing the Receivership Stay to expire at this time would force the Receiver to file bankruptcy petitions prematurely on behalf of the Receivership Entities (or deal with ancillary litigation across the country), which would diminish the value of the Receivership Assets to the detriment of all creditors. Bankruptcy or continued litigation would be an unnecessary and resource-consuming distraction from the Receiver's critical mission. *See, e.g.*, *Acorn Tech. Fund, L.P.*, 429 F.3d at 443 (recognizing receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate).

40. Finally, no third parties will be prejudiced by the further extension of the Receivership Stay because the Receivership Order provides a mechanism by which such parties can request that the Court lift the Receivership Stay. *See* Receivership Order, ¶ 4 ("Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.").

41. As indicated above, to the extent the Court extends the Receivership Stay through January 31, 2023 and Rising Sky is able to move forward with the Proposed Transaction, the Receiver intends to file a motion with the Court seeking authority to enter into the APA, and he may contemporaneously seek further extensions of the Receivership Stay as necessary to close the

Proposed Transaction. To the extent that Rising Sky is unable to move forward with the Proposed Transaction, the Receiver will prepare and file voluntary petitions for relief under the Bankruptcy Code in advance of January 31, 2023.

42.     For the foregoing reasons, the Receiver respectfully requests that the Court exercise its broad powers and wide discretion in the context of an equity receivership and further extend the Receivership Stay through and including January 31, 2023, without prejudice to the Receiver's right to request further extensions.

## NOTICE

43.     The Receivership Order provides that "[t]he Receiver may apply to the Court for additional authority on an expedited basis. Any party objecting to the relief sought by the Receiver shall respond within 3 business days unless otherwise ordered by the Court." Receivership Order, ¶ 15. The Receiver submits this Motion on an expedited basis so that the Court may extend the Receivership Stay for the reasons set forth herein.

44.     The Receiver provided notice of the Motion to (a) all parties that have entered their appearance in the Receivership Case via CM/ECF and (b) any person or entity with a known, particularized interest in the subject matter of the Motion via first class mail, facsimile, or electronic mail (where available). The Receiver submits that, in light of the nature of the relief requested (and creditors' ability to request relief from the Receivership Stay), no other or further notice need be given.

## **CONCLUSION**

WHEREFORE, the Receiver, Michael Fuqua, by and through his undersigned counsel, respectfully requests entry of the Proposed Order (i) further extending the Receivership Stay through and including January 31, 2023, without prejudice to the Receiver's right to request further extensions of the Receivership Stay; and (ii) granting such other relief as is appropriate.

Dated: November 30, 2022
      New York, New York

Respectfully submitted,

REED SMITH LLP

By: */s/ Kurt F. Gwynne*
Kurt F. Gwynne
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
E-mail: kgwynne@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575
E-mail: jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*