UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                                        Plaintiff,

                —against—                                          21 Civ. 6995 (PKC)

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS
A, INC., d/b/a "THORIAN HOLDINGS,"

                                        Defendants.

**DECLARATION OF MICHAEL FUQUA, AS RECEIVER, IN SUPPORT OF
EXPEDITED MOTION OF RECEIVER FOR AN ORDER FURTHER
EXTENDING THE STAY PROVIDED IN THE RECEIVERSHIP ORDER**

I, Michael Fuqua, hereby declare as follows:

1.      On November 8, 2021, the United States District Court for the Southern District of

New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the

"Receivership Order") in the above-captioned case (the "Receivership Case").  Accordingly, I am

the Court-appointed receiver ("Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia

Holdings A, Inc. (collectively, the "Receivership Entities").

2.      I submit this declaration (this "Declaration") in support of the *Expedited Motion of

Receiver for an Order Further Extending the Stay Provided in the Receivership Order* (the

"Motion") filed contemporaneously herewith.

3.      Except as otherwise noted, I have personal knowledge of the matters set forth herein

or have gained knowledge of such matters from retained advisers who report to me in the ordinary

course of my responsibilities.  If called upon to testify, I would testify competently to the facts set

forth in this Declaration.

### A. Ongoing Efforts to Preserve and Manage the Receivership Estate

4.      Since the Court's entry of the Order on October 7, 2022 (the "Third Extension Order") (Doc. 298) which, among other things, extended the stay of all litigation (the "Receivership Stay") against Receivership Entities through and including December 14, 2022, I have continued my efforts to protect, market, and consummate a sale of the spectrum license (the "FCC License") granted to TGI by the Federal Communications Commission (the "FCC"), the license granted to TGI by the National Oceanic and Atmospheric Administration (the "NOAA License"), the Receivership Entities' intellectual property (which includes, without limitation, U.S. and foreign patents, trademarks, and related applications (collectively, the "Intellectual Property")) and other assets of the Receivership Entities (collectively with the FCC License, the NOAA License, and the Intellectual Property, the "Receivership Assets").

5.      For example, my team and I have continued to maintain the Receivership Entities' books and records and analyze the pre-receivership accounts.  I have also been working with taxing authorities and various professionals to identify amounts owed (if any) on account of federal, state, and local taxes.

6.      My team and I completed an analysis and cash reconciliation of the "Friends and Family" notes, which reflects that the Receivership Entities received approximately $75 million in connection with 262 "Friends and Family" notes issued by the Receivership Entities. Approximately $225 million of principal and interest remains outstanding with respect to the "Friends and Family" notes.

7.      Through counsel at Akin Gump Strauss Hauer & Feld LLP, I remain in communication with the FCC and the Committee on Foreign Investment in the United States

("CFIUS") regarding, among other things, the FCC License, and provide periodic updates to the FCC and/or CFIUS regarding the Receivership Case.

8.      My professionals and I have also undertaken substantial efforts to protect the Receivership Entities' Intellectual Property.  Since the entry of the Third Extension Order, my professionals have prepared documentation to effect the transfer of certain Intellectual Property currently held by non-receivership entities back to TGI.  My professionals and I also have worked to protect the Receivership Entities' domestic and international Intellectual Property filings by insuring the payment of renewal and other required fees and amounts due.

9.      I have continued to cooperate fully with the United States Department of Justice in producing documents in response to four (4) broad grand jury subpoenas issued by the United States District Court for the District of Columbia.  Documents continue to be reviewed and produced on a rolling basis.

**B.  Continued Progression of the Sale Process**

10.     Since their retention in February 2022, PJT Partners, L.P. has overseen a process whereby indications of interest and bids were solicited for the Receivership Assets.  This process resulted in a number of third parties expressing initial interest in purchasing some or all of the Receivership Assets.  To date, I have not received an acceptable offer through this process.

11.     I have been pursuing a sale transaction (the "Proposed Transaction") with Rising Sky LLC ("Rising Sky") for a number of months.  Under the terms of the Proposed Transaction, Rising Sky would acquire (subject to approval of the Court and the government) the Receivership Assets in exchange for (i) the full satisfaction and/or payment of claims purchased or settled by Rising Sky, (ii) funds for distribution to other creditors, and (iii) funds to administer any necessary claims resolution process in post-sale chapter 11 proceedings for the Receivership Entities.

Specifically, Rising Sky would acquire (i) the FCC License, (ii) the NOAA License, (iii) the Intellectual Property, (iv) the Receivership Entities' aircraft, (v) sensing equipment, and (vi) a contract for the manufacture of three (3) aircraft with a substantial deposit.  Rising Sky and I have been negotiating the terms of an *Asset Purchase Agreement* (the "APA") memorializing the terms of the Proposed Transaction in good faith.

12.     Based on my conversations with Rising Sky, I understand that for several months, Rising Sky has engaged in substantial, direct negotiations with creditor constituencies at all levels in the capital structure (including many trade creditors) to negotiate the purchase or payment of their claims to facilitate the submission of its offer.  I further understand based on such conversations that as of the filing of the Motion, Rising Sky has negotiated the purchase of the secured claim of FCS Advisors, LLC (which is conditioned upon Rising Sky's successful negotiations with other creditors in the capital structure).  I further understand based on such conversations that Rising Sky has negotiated claims purchase agreements with the vast majority— approximately 84% of the principal invested ($63 million out of $75 million) and approximately 89% (142 out of 162)—of the "friends and family" investors.  I understand that such agreements provide for a recovery for the "friends and family" investors in the full amount of outstanding principal, plus an additional 20%.

13.     The main impediment to moving forward with the Proposed Transaction to date relates to delays in Rising Sky's funding of the acquisition of the Receivership Assets.  Rising Sky advises that it intends to fund the acquisition through multiple tranches of a private bond issuance wrapped by bond insurance.  Rising Sky further advises that the bond insurer must periodically obtain reinsurance before additional Rising Sky bonds may be issued, and that such process takes approximately ten (10) days between bond issuances.  Rising Sky further advises that three (3)

issuances of bonds will be required to fund the acquisition contemplated by the Proposed Transaction.

14.      Rising Sky advises that it will obtain the bond insurance binder for the first tranche of bonds by mid- to late-December 2022.  After the issuance of the first tranche, Rising Sky states that the remainder of the bonds needed to fund the transaction will be issued in two (2) additional tranches over the following thirty (30) days.

15.      To the extent, however, that Rising Sky proves unable to move forward the Proposed Transaction, I intend to prepare and file voluntary petitions for relief under the Bankruptcy Code for each of the Receivership Entities.

**C.  Further Extension of the Receivership Stay is Necessary.**

16.      I believe that extending the Receivership Stay through January 31, 2023 (without prejudice to the right to seek further extensions) is essential to allow the Receivership Case and the Sale Process to progress successfully.  If the Court grants the relief requested by the Motion and Rising Sky is able to proceed with the Proposed Transaction, I intend to file a motion with the Court in the coming weeks seeking authority to enter into the APA.

17.      Rising Sky has made clear to me that the Proposed Transaction is contingent upon the transaction occurring in this receivership Court and outside of the bankruptcy context based on the strong view that bankruptcy will diminish the value of the Receivership Assets.

18.      I also believe that extending the Receivership Stay so that the Sale Process may continue outside of bankruptcy is in the best interests of the Receivership Entities' creditor constituencies.

19.     Terminating the Receivership Stay could hinder or delay efforts to implement the Proposed Transaction, as I would be required to spend time and money (that is not available currently) responding to and defending litigation matters.

20.     I hereby certify that the foregoing statements are true and correct to the best of my knowledge, information, and belief, and respectfully request that all of the relief requested in the Motion be granted, together with such other relief as is appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of November, 2022

By:  */s/ Michael Fuqua*
              Michael Fuqua, as Receiver