UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FCS ADVISORS, LLC,

                              Plaintiff,

—against—

THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"

                             Defendants.

21 Civ. 6995 (PKC)

---

**MEMORANDUM OF LAW IN SUPPORT OF EXPEDITED MOTION
OF RECEIVER FOR AN ORDER FURTHER EXTENDING
<u>THE STAY PROVIDED IN THE RECEIVERSHIP ORDER</u>**

 

REED SMITH LLP
Kurt F. Gwynne
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone: (302) 778-7500
Facsimile: (302) 778-7575

Dated: January 17, 2023

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

# **TABLE OF CONTENTS**

**Page**

BACKGROUND .................................................................................................................. 1
    A. The Receivership Stay and Extensions Thereof ............................................................. 2
    B. Ongoing Efforts to Preserve and Manage the Receivership Estate............................... 4
    C. The Executed Rising Sky APA .................................................................................... 6
    D. Further Extension of the Receivership Stay is Necessary............................................ 8
RELIEF REQUESTED...................................................................................................... 10
BASIS FOR RELIEF REQUESTED................................................................................. 10
NOTICE.............................................................................................................................. 13
CONCLUSION................................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Lankenau v. Coggeshall & Hicks*,
    350 F.2d 61 (2d Cir. 1965)..................................................................................................10

*SEC v. Amerindo Inv. Advisors Inc.*,
    2016 U.S. Dist. LEXIS 195593 (S.D.N.Y. May 20, 2016).......................................................10

*SEC v. Byers*,
    609 F.3d 87 (2d Cir. 2010)..............................................................................................10, 11

*SEC v. Callahan*,
    2 F. Supp. 3d 427 (E.D.N.Y. 2014) .....................................................................................10

*SEC v. Illarramendi*,
    2012 U.S. Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012)............................................................11

*SEC v. Universal Financial*,
    760 F.2d 1034 (9th Cir. 1985) .............................................................................................11

*U.S. v. Acorn Tech. Fund, L.P.*,
    429 F.3d 438 (3d Cir. 2005)...........................................................................................11, 12

*United States v. Royal Bus. Funds Corp.*,
    724 F.2d 12 (2d Cir. 1983)...................................................................................................11

Michael Fuqua, as court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC ("Theia Aviation"), and Theia Holdings A, Inc. ("Theia Holdings" and collectively with TGI and Theia Aviation, the "Receivership Entities"), through his undersigned counsel, files this memorandum of law (this "Memorandum of Law") in support of the *Expedited Motion of Receiver for an Order Further Extending the Stay Provided in the Receivership Order* (the "Motion") filed contemporaneously herewith. In further support of the Motion, the Receiver relies upon the *Declaration of Michael Fuqua, as Receiver, in Support of the Motion* ("Fuqua Declaration" or "Fuqua Decl."), which is being filed contemporaneously with the Motion and this Memorandum of Law and is incorporated herein by reference. Additionally, the Receiver relies upon the executed *Asset Purchase Agreement* dated as of January 17, 2023 (the "APA")[1] by and among TGI, Theia Aviation, Theia Holdings, as sellers (collectively, "Sellers"), and Rising Sky, LLC, as buyer ("Rising Sky" or "Buyer"), a true and accurate copy of which is attached to the Fuqua Declaration as Exhibit 1.

By the Motion, the Receiver respectfully requests that this Court further extend the Receivership Stay through and including April 30, 2023. Granting the requested relief will permit the Receiver and Rising Sky to pursue consummation of the proposed transaction memorialized in the APA for the benefit of all creditors of the Receivership Entities or, alternatively, will afford the Receiver time to prepare voluntary bankruptcy petitions for the Receivership Entities.

## BACKGROUND

1. On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the "Receivership Order") in the above-captioned case (the "Receivership Case"). Pursuant to the

---

[1] Capitalized terms used but not otherwise defined in this Memorandum of Law shall have the meanings ascribed to such terms in the APA.

Receivership Order, this Court appointed the Receiver as a federal receiver for the assets of the Receivership Entities.

2. The Receivership Order provides, in relevant part, that the Receiver "has exclusive custody, control, and possession of all the . . . property . . . and other assets of, in the possession of, or under the control of the Receivership Entities, wherever situated." Receivership Order, ¶ 3. The Receivership Order further provides that the Receiver "may preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets, in order to prevent any loss, damage or injury. . . ." *Id.*, ¶ 7.

3. The Receivership Order also provides that "[t]he Receiver may seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ("FCC") License Assets . . . and to take all steps necessary to effectuate a transfer or sale of the assets, except any transfer of control of such FCC License shall be submitted to the Court for approval." Receivership Order, ¶ 6.

4. The Receivership Order also permits the Receiver to "apply to the Court for . . . authority on an expedited basis," with objections "to the relief sought by the Receiver" to be filed within "3 business days unless otherwise ordered by the Court." Receivership Order, ¶ 15. The Receiver is requesting expedited relief in accordance with Paragraph 15 of the Receivership Order and, if any objections are filed to the Motion, the Receiver respectfully requests that (if the Court believes a hearing is appropriate) the Court schedule a prompt hearing on the relief requested.

5. Additionally, paragraph 9 of the Receivership Order provides that "[i]f the Receiver determines that any of the Receivership Entities should undertake a bankruptcy filing, the Receiver is authorized to commence cases under title 11 of the United States Code for such entities." *Id.*, ¶ 10.

### A. The Receivership Stay and Extensions Thereof

6. To effectuate the foregoing provisions and provide the Receiver with the requisite breathing room to perform his duties, the Receivership Order also provides for a stay of all litigation (the "Receivership Stay") against Receivership Entities:

> For a period of 120 days, no person or entity, including any creditor or claimant of the Receivership Entities, shall commence or maintain an action, proceeding, lawsuit or bankruptcy case against the Receivership Entities or impacting the property and assets subject to this Order, including an action, proceeding or lawsuit heretofore commenced, without having first obtained leave of this Court. Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.

*See* Receivership Order, ¶ 4.

7. The Receivership Stay initially was set to expire on March 9, 2022, which was the 120th day following the Court's entry of the Receivership Order on November 8, 2021.

8. By a series of motions and orders, the Receiver requested, and the Court granted, extensions of the Receivership Stay through January 31, 2023. *See* Doc. 211-12, Doc. 219 (granting first extension); Doc. 258-59, Doc. 270 (granting second extension); Doc. 298 (*sua sponte* granting third extension); Doc. 307-08, Doc. 312 (granting fourth extension).

### B. Ongoing Sale Efforts and Management of the Receivership Estates

9. Since the entry of the Order approving the most recent extension of the Receivership Stay, the Receiver has continued his substantial efforts to protect, market, and consummate a sale of the Receivership Assets. *See* Fuqua Decl. ¶ 4.

10. The Receiver, through Akin Gump Strauss Hauer & Feld LLP, remains in communication with the Federal Communications Commission (the "FCC") and the Committee on Foreign Investment in the United States ("CFIUS") regarding, among other things, the FCC

License, and provides periodic updates to the FCC and/or CFIUS regarding the Receivership Case. *See* Fuqua Decl. ¶ 5.[2]

### C. Execution of the APA with Rising Sky

11. The process of selling the Receivership Entities' assets, including the spectrum license (the "FCC License"), the National Oceanic and Atmospheric Administration license (the "NOAA License"), and intellectual property and other tangible and intangible property (collectively with the FCC License and the NOAA License, the "Receivership Assets") has been ongoing.

12. Subject to this Court's approval after notice and a hearing, on behalf of the Receivership Entities, as Sellers, the Receiver has executed an *Asset Purchase Agreement* with Rising Sky, as Buyer. *See* Fuqua Decl., Exhibit 1.

13. Pursuant to the APA, Rising Sky has agreed to acquire (subject to approval of the Court), *inter alia*, (i) all Tangible Personal Property of the Receivership Entities (including, without limitation (and subject to government approval), the FCC License and the NOAA License); (ii) all Aircraft; (iii) all Intellectual Property Assets; (iv) all Claims, choses in action, causes of action, and demands of Sellers; (v) all insurance benefits arising from or related to the Acquired Assets prior to Closing, and (vi) all Deposit Rights. *See* APA, § 2.01.

14. If the Closing occurs, the Receivership Entities will receive (i) a Cash Payment in the amount of $175 million and (ii) a waiver and release of (a) the FCS Obligations (approximately

---

[2] As part of his efforts to protect the receivership estate, the Receiver continues to analyze the pre-receivership accounts. *See* Fuqua Decl. ¶ 6. For example, the Receiver is working with taxing authorities and various professionals to identify amounts owed (if any) on account of federal, state, and local taxes. *Id.* The Receiver also continued cooperating with the United States Department of Justice by reviewing and producing documents in response to four (4) broad grand jury subpoenas issued by the United States District Court for the District of Columbia. *Id.* ¶ 7.

$412.1 million), (b) the Aithre Obligations (approximately $37.6 million), and the (c) F&F Obligations (approximately $179 million).[3] *See* Fuqua Decl., ¶ 9. As part of the Cash Payment, Rising Sky is required to pay the Sellers a Deposit of $40 million in cash on or before March 31, 2023, with the remainder of the Cash Payment due at Closing. *Id.*, ¶ 11.

15. The APA contemplates that the Closing will occur on the earlier of (i) June 30, 2022; (ii) five (5) Business Days after Governmental Approval to transfer the Licenses to Buyer; or (iii) a date and time mutually agreed upon in writing by the Parties. *See* Fuqua Decl., ¶ 12.

16. To be clear, although the APA has been executed, the Receiver does *not* have a meaningful remedy with respect to any possible breach of the APA unless and until the Buyer makes the $40 million Deposit due on March 31, 2023. *See* Fuqua Decl., ¶ 13. Accordingly, the Receiver is not seeking Court approval of the APA at this time. Rather, upon receipt of the Deposit (or indisputable proof of the ability to pay the Deposit), the Receiver will file a motion seeking this Court's approval of the APA. *Id.*, ¶ 14.

17. To the extent, however, that Rising Sky fails to remit the Deposit to the Receiver on or before March 31, 2023, the Receiver anticipates filing voluntary petitions for relief under the Bankruptcy Code for each of the Receivership Entities. *See* Fuqua Decl., ¶ 15.

**D. Further Extension of the Receivership Stay is Necessary.**

18. Extending the Receivership Stay through April 30, 2023 (without prejudice to the Receiver's right to seek further extensions) is essential to determine whether Rising Sky will be able to obtain the financing necessary to consummate the APA. *See* Fuqua Decl., ¶ 16. Although

---

[3] Rising Sky has negotiated the purchase of the FCS Obligations and the F&F Obligations (which comprises the vast majority—approximately 84% of the principal invested ($63 million out of $75 million) and approximately 89% in number (142 out of 162)—of the "friends and family" investors.) and would be required to negotiate the purchase of the Aithre Obligations. *See* Fuqua Decl., ¶ 10.

Rising Sky has not obtained any firm financing commitment, Rising Sky is engaged with several potential lenders. *Id..*, ¶ 17.

19. As previously reported, Rising Sky advised the Receiver that the Rising Sky transaction was contingent upon the transaction occurring in this receivership Court and outside of the bankruptcy context based on its view that bankruptcy would diminish the value of the Receivership Assets. *See* Fuqua Decl., at ¶ 18.

20. Allowing the Receivership Stay to expire on January 31, 2023 could prematurely terminate the sale process, stymie any effort to consummate the Rising Sky sale transaction, and lead to the premature filing of bankruptcy petitions on behalf of the Receivership Entities to the detriment of their creditors.

## RELIEF REQUESTED

21. Through the Motion, the Receiver respectfully requests entry of an Order, on an expedited basis, in substantially the form attached to the Motion as **Exhibit A** (the "Proposed Order"): (i) further extending the Receivership Stay through April 30, 2023,[4] without prejudice to the Receiver's right to request further extensions of the Receivership Stay; and (ii) granting such other relief as is appropriate.

## BASIS FOR RELIEF REQUESTED

22. The Court has wide discretion in crafting the appropriate procedures for administering the assets of a receivership estate. *See S.E.C. v. Amerindo Inv. Advisors Inc.*, 2016 U.S. Dist. LEXIS 195593, at *6 (S.D.N.Y. May 20, 2016) (citation omitted). An anti-litigation injunction or stay is "one of the tools available to courts to help further the goals of the receivership." *S.E.C. v. Byers*, 609 F.3d 87, 92 (2d Cir. 2010). A district court's litigation stay

---

[4] The Receiver reserves the right to seek a further extension of the Receivership Stay to accommodate the potential closing of the transaction memorialized by the APA (to the extent approved by this Court).

- 6 -

"rests as much on [the court's] control over the property placed in receivership as on its jurisdiction over the parties" to the underlying claim. *Id.* at 91; *see also Lankenau v. Coggeshall & Hicks*, 350 F.2d 61, 63 (2d Cir. 1965) ("There is a substantial jurisdictional basis for allowing the federal court receiver to have and keep custody and control of the assets in question, and to obtain the relief needed to implement that custody."); *S.E.C. v. Callahan*, 2 F. Supp. 3d 427, 436-37 (E.D.N.Y. 2014) (same).

23. It is well recognized in the Second Circuit that "[a] district court may impose a litigation stay on a non-party to a receivership as part of its inherent power as a court of equity to fashion effective relief." *Byers*, 609 F.3d at 91 (authorizing blanket stay of all litigation against receivership property in SEC receivership context); *see also S.E.C. v. Illarramendi*, 2012 U.S. Dist. LEXIS 8890 (D. Conn. Jan. 25, 2012) ("The Second Circuit has recognized that an anti-litigation injunction or litigation stay in a receiver order is a valid exercise of a district court's equitable powers.") (citing *Byers*, 609 F.3d at 92); *United States v. Royal Bus. Funds Corp.*, 724 F.2d 12 (2d Cir. 1983) (affirming order enjoining debtor from filing a bankruptcy petition where a receivership was already underway and the filing would "disrupt the receiver's attempts to improve the company's fortunes.").

24. The purpose of imposing a stay of litigation is clear: "a receiver must be given a chance to do the important job of marshaling and untangling a company's assets without being forced into court by every investor or claimant." *U.S. v. Acorn Tech. Fund, L.P.*, 429 F.3d 438, 443 (3d Cir. 2005). The stay generally remains in place to preserve the status quo of creditors and claims so that a receiver may administer the assets in an equitable manner—often until the receivership assets have been distributed in full. *See, e.g.*, *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (no abuse in refusing to lift stay four (4) years into the case).

25.     Here, extending the Receivership Stay to April 30, 2023 is necessary to preserve the Receivership Assets and allow the Receiver the further opportunity to maximize the value of the Receivership Entities' assets for the benefit of all creditors. In particular, extending the Receivership Stay is in accord with permitting the Receiver to discharge his duty under paragraph 6 of the Receivership Order, which charges the Receiver with the pursuit of a sale of the FCC License. Indeed, the Court has recognized that the continuation of the Receivership Stay is "in the best interest of the Receivership Entities, their creditors and other potentially affected third parties" because the "sale of the largest assets represents the best hope of creditors who are able to prove their claims for receiving payment." *See* Order, Doc. 270, at 2.

26.     At this time, bankruptcy or continued litigation would be an unnecessary and resource-consuming distraction from the Receiver's critical mission. *See, e.g.*, *Acorn Tech. Fund, L.P.*, 429 F.3d at 443 (recognizing receiver's need to proceed unhindered by litigation, and the very real danger of litigation expenses diminishing the receivership estate).

27.     No third parties will be prejudiced by the further extension of the Receivership Stay because the Receivership Order provides a mechanism by which such parties can request that the Court lift the Receivership Stay. *See* Receivership Order, ¶ 4 ("Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.").

28.     As indicated above, to the extent the Court extends the Receivership Stay through April 30, 2023 and Rising Sky is able to fund the Deposit, the Receiver intends to file a motion seeking Court approval of the APA (and may contemporaneously seek further extensions of the Receivership Stay as necessary to close the sale transaction). To the extent that Rising Sky is

unable to move forward with the Rising Sky sale transaction (and no Alternative Transaction is available), the Receiver will prepare voluntary petitions for relief under the Bankruptcy Code.

29. For the foregoing reasons, the Receiver respectfully requests that the Court exercise its broad powers and wide discretion in the context of this equity receivership and further extend the Receivership Stay through and including April 30, 2023, without prejudice to the Receiver's right to request further extensions.

## NOTICE

30. The Receivership Order provides that "[t]he Receiver may apply to the Court for additional authority on an expedited basis. Any party objecting to the relief sought by the Receiver shall respond within 3 business days unless otherwise ordered by the Court." Receivership Order, ¶ 15. The Receiver submits this Motion on an expedited basis so that the Court may extend the Receivership Stay for the reasons set forth herein.

31. The Receiver provided notice of the Motion to (a) all parties that have entered their appearance in the Receivership Case via CM/ECF and (b) any person or entity with a known, particularized interest in the subject matter of the Motion via first class mail, facsimile, or electronic mail (where available). The Receiver submits that, in light of the nature of the relief requested (and creditors' ability to request relief from the Receivership Stay), no other or further notice need be given.

## CONCLUSION

WHEREFORE, the Receiver, Michael Fuqua, by and through his undersigned counsel, respectfully requests entry of the Proposed Order (i) further extending the Receivership Stay through and including April 30, 2023, without prejudice to the Receiver's right to request further extensions of the Receivership Stay; and (ii) granting such other relief as is appropriate.

Dated:  January 17, 2023

        Respectfully submitted,

        REED SMITH LLP

By:   */s/ Kurt F. Gwynne*
      Kurt F. Gwynne
      599 Lexington Avenue
      New York, New York 10022
      Telephone:  (212) 521-5400
      Facsimile:  (212) 521-5450
      E-mail:  kgwynne@reedsmith.com

      - and -

      Jason D. Angelo, Esq. (admitted *pro hac vice*)
      1201 N. Market Street, Suite 1500
      Wilmington, Delaware 19801
      Telephone:  (302) 778-7500
      Facsimile:   (302) 778-7575
      E-mail:  jangelo@reedsmith.com

      *Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*