**EXHIBIT 1**

Executed Asset Purchase Agreement With Rising Sky, LLC

(Attached)

EXECUTION COPY

**ASSET PURCHASE AGREEMENT**

**BY AND AMONG**

**THEIA GROUP, INC. d/b/a "THORIAN GROUP" and/or "CYPHERIAN,"**

**THEIA AVIATION, LLC,**

**AND**

**THEIA HOLDINGS A, INC. d/b/a "THORIAN HOLDINGS,"**

**collectively, as Sellers,**

**AND**

**RISING SKY, LLC,**

**as Buyer,**

**Dated as of January 17, 2023**

**[THIS DOCUMENT IS INTENDED SOLELY TO FACILITATE DISCUSSIONS BETWEEN THE PARTIES. THIS DOCUMENT IS NOT INTENDED TO CREATE, NOR WILL IT BE DEEMED TO CREATE, A LEGALLY BINDING OR ENFORCEABLE OFFER OR AGREEMENT OF ANY TYPE OR NATURE, UNLESS AND UNTIL AGREED TO AND EXECUTED BY THE PARTIES.]**

# TABLE OF CONTENTS

**Page**

ARTICLE I DEFINITIONS ................................................................................................ 1

ARTICLE II PURCHASE AND SALE OF ASSETS ....................................................... 8

    Section 2.01    Purchase and Sale of Acquired Assets .......................................... 8

    Section 2.02    Assumed Liabilities ........................................................................ 8

    Section 2.03    Excluded Assets ............................................................................. 8

    Section 2.04    Excluded Liabilities ....................................................................... 8

    Section 2.05    Purchase Price ................................................................................ 8

    Section 2.06    Cash Payment ................................................................................. 9

    Section 2.07    Purchase Price Allocation .............................................................. 9

    Section 2.08    Closing Date; Effective Time ........................................................ 9

    Section 2.09    Time is of the Essence ................................................................... 9

    Section 2.10    Closing Obligations ....................................................................... 9

ARTICLE III REPRESENTATIONS OF SELLERS ...................................................... 10

    Section 3.01    Corporate Authorization; District Court Approval ...................... 10

    Section 3.02    Licenses ........................................................................................ 10

    Section 3.03    Title to Acquired Assets ............................................................... 10

    Section 3.04    Correctness of Representations .................................................... 11

    Section 3.05    No Survival ................................................................................... 11

ARTICLE IV REPRESENTATIONS AND WARRANTIES OF BUYER ..................... 11

    Section 4.01    Organization ................................................................................. 11

    Section 4.02    Authority for this Agreement ....................................................... 11

    Section 4.03    Consents and Approvals ............................................................... 11

    Section 4.04    Non-Contravention ....................................................................... 11

    Section 4.05    Sufficiency of Funds; Solvency ................................................... 12

    Section 4.06    Brokers ......................................................................................... 12

    Section 4.07    F&F Obligations ........................................................................... 12

    Section 4.08    Correctness of Representations .................................................... 12

ARTICLE V COVENANTS ............................................................................................ 12

    Section 5.01    Access to Information, Retention of Records; Copies ................. 12

    Section 5.02    Reasonable Best Efforts; Governmental Approvals ..................... 13

Section 5.03    Notification of Certain Matters ......................................................................... 14

Section 5.04    Payment of Taxes Resulting from Sale of Assets by Sellers ....................... 14

Section 5.05    Payment of Transfer Taxes ................................................................................ 14

Section 5.06    Survival .................................................................................................................. 15

ARTICLE VI CLOSING CONDITIONS ................................................................................. 15

Section 6.01    Conditions Precedent to Obligations of Buyer............................................... 15

Section 6.02    Conditions Precedent to Obligations of Sellers.............................................. 15

ARTICLE VII MISCELLANEOUS ......................................................................................... 16

Section 7.01    Entire Agreement; Assignment; Amendments................................................ 16

Section 7.02    Severability; Expenses; Further Assurances ................................................... 16

Section 7.03    Enforcement of the Agreement; Jurisdiction; No Jury Trial ....................... 16

Section 7.04    Notices .................................................................................................................. 17

Section 7.05    Governing Law .................................................................................................... 18

Section 7.06    Descriptive Headings .......................................................................................... 18

Section 7.07    No Third-Party Beneficiaries ............................................................................ 18

Section 7.08    Execution; Counterparts ..................................................................................... 19

Section 7.09    Termination; Deposit .......................................................................................... 19

Section 7.10    Alternative Transactions .................................................................................... 20

Section 7.11    Interpretation ....................................................................................................... 20

DocuSign Envelope ID: F32BD7AC-1261-43B9-866J-C596C80E560D

EXECUTION COPY

**THIS ASSET PURCHASE AGREEMENT** (this "**Agreement**") is made and entered into as of January 17, 2023, by and among Theia Group, Inc. d/b/a "Thorian Group" and/or "Cypherian," a Delaware corporation ("**TGI**"), Theia Aviation, LLC, a Delaware limited liability company ("**TA**"), and Theia Holdings A, Inc. d/b/a "Thorian Holdings," a Delaware corporation ("**THA**," and together with TGI and TA, "**Sellers**"), and Rising Sky LLC, a Delaware limited liability company (on behalf of itself, its designees, and or assignees, "**Buyer**") and together with the Sellers, the "**Parties**"), and all transactions contemplated by this Agreement, collectively, the "**Transactions**."

## R E C I T A L S

**WHEREAS**, Sellers engaged in the business of data analytics of data acquired by satellites and/or aircraft via remote sensing and spectral analysis (the "**Business**") by virtue of its licenses from (a) the National Oceanic and Atmospheric Administration, an agency of the United States Department of Commerce ("**NOAA**") and (b) the Federal Communications Commission, an agency of the government of the United States of America ("**FCC**") and (c) other proprietary licenses and patents registered in non-United States locations;

**WHEREAS**, on November 8, 2021, in a civil action styled *FCS Advisors, LLC v. Theia Group, Inc., d/b/a "Thorian Group" and/or "Cypherian," Theia Aviation, LLC, and Theia Holdings A, Inc., d/b/a "Thorian Holdings,"* 21 Civ. 6995 (PKC) (the "**Receivership Action**"), the United States District Court for the Southern District of New York (the "**District Court**") entered an Order Appointing Michael Fuqua as Receiver (Doc. 117) for the Sellers (the "**Receiver**"); and

**WHEREAS**, Buyer desires to purchase from Sellers, and Sellers desire to sell to Buyer, substantially all of Sellers' right, title and interest in their assets used and/or useful in the operation of the Business, and Sellers desire to assign to Buyer, and Buyer desires to accept the assignment of, certain rights and contracts of Sellers with respect to the operation of the Business, in each case for consideration and in accordance with the terms and conditions of this Agreement.

## A G R E E M E N T

**NOW, THEREFORE**, in consideration of the mutual representations, warranties, covenants and agreements contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, the Parties agree as follows:

## ARTICLE I
## DEFINITIONS

**Section 1.01**    The following terms have the meanings specified or referred to in this **Error! Reference source not found.**:

(a)    "**Acquired Assets**" has the meaning set forth in <u>Section 2.01</u>.

(b)    "**Action**" means any claim, action, cause of action, demand, lawsuit, arbitration, inquiry, audit, notice of violation, proceeding, litigation, citation, summons, subpoena or investigation of any nature, civil, criminal, administrative, regulatory or otherwise, whether at law or in equity.

(c)      "**Affiliate**" of a Person or Sellers means any other entity or Person that directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person.  The term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract or otherwise.

(d)      "**Agreement**" has the meaning set forth in the preamble.

(e)      "**Aircraft**" means aircraft, aircraft parts (including spare parts) and support equipment, sensors and remote sensing equipment or accessories, including, without limitation, the items listed on attached Schedule 1.01(e).

(f)      "**Aithre**" means Aithre Capital Partners LLC.

(g)      "**Aithre Obligations**" means all obligations under the Secured Note Purchase and Security Agreement dated as of January 5, 2021, by and between TGI and Aithre, as may be amended from time to time, and any related documents.

(h)      "**Alternative Transaction**" means any transaction or series of transactions involving a sale of all or substantially all of the Acquired Assets to a purchaser or purchasers other than Buyer.

(i)      "**Ancillary Documents**" means the Bill of Sale, Assignment and Assumption of Contracts and Assumed Liabilities, the Intellectual Property Assignments, and any other agreements, instruments and documents required to be delivered at the Closing or that the Parties otherwise agree (in writing) to exchange at Closing.

(j)      "**Approval Order**" means an Order entered by the District Court approving this Agreement, authorizing the sale and purchase of the Acquired Assets "free and clear" of Liens, Claims, and Indebtedness (other than Assumed Liabilities), and authorizing the Sellers to consummate the Transactions hereunder, and that is not stayed or vacated.

(k)      "**Assigned Contracts**" means the contracts listed on attached Schedule 1.01(k) to the extent the foregoing are assignable to Buyer without the consent or approval of the counterparty, including the Intellectual Property Agreements.

(l)      "**Assumed Liabilities**" means strictly the liabilities and obligations on attached Schedule 1.01(l), including, without limitation, any Taxes for which the Buyer is liable pursuant to Section 5.05, and any other liabilities and obligations under the Assigned Contracts.

(m)      "**Bill of Sale, Assignment and Assumption of Contracts and Assumed Liabilities**" means a document, in the form attached as Exhibit A, to be executed and delivered to Sellers at Closing pursuant to which Buyer (i) purchases the Acquired Assets, "as is, where is" and free and clear of Liens, Claims and Indebtedness (other than the Assumed Liabilities), and without representation or warranty by the Sellers and (ii) accepts the assignment of and assumes the Assigned Contracts and Assumed Liabilities.

(n)      "**Books and Records**" means books, e-mails, records, ledgers, files, documents, correspondence, lists, plats, architectural plans, drawings, specifications, creative materials, advertising and promotional materials, studies, reports, and other printed or written materials used and/or useful in the operation of the Business.

EXECUTION COPY

(o)      "**Business**" has the meaning set forth in the Recitals.

(p)      "**Business Day**" means any day except Saturday, Sunday or any other day on which commercial banks located in New York, New York are authorized or required by Law to be closed for business.

(q)      "**Buyer**" has the meaning set forth in the preamble.

(r)      "**Buyer's Closing Certificate**" means a certificate, based on Buyer's Knowledge, executed by Buyer as to the accuracy of its representations and warranties as of the date hereof and as of the Closing and as to its compliance with and performance of its covenants and obligations to be performed or complied with at or before the Closing.

(s)      "**Buyer's Deliverables**" has the meaning provided in Section 2.10(b).

(t)      "**Buyer's Knowledge**" or any other similar knowledge or qualification means the actual or constructive knowledge, after reasonable inquiry, of Buyer.

(u)      "**Cash Payment**" means Buyer's payment to Sellers of immediately available cash in the amount of One Hundred Seventy Five Million Dollars ($175,000,000), including the Deposit.

(v)      "**Claim**" means any contest, claim, demand, assessment, Action, cause of action, complaint, litigation, proceeding, hearing or notice involving any Person that can or may be asserted.

(w)      "**Closing**" has the meaning set forth in Section 2.08.

(x)      "**Closing Date**" has the meaning set forth in Section 2.08.

(y)      "**Code**" means the Internal Revenue Code of 1986, as amended.

(z)      "**Contracts**" means contracts, leases, deeds, mortgages, licenses, instruments, notes, commitments, undertakings, indentures, joint ventures and all other agreements, commitments and legally binding arrangements, whether written or oral.

(aa)      "**Deposit**" means Forty Million Dollars ($40,000,000) in cash.

(bb)      "**Deposit Rights**" means Sellers' rights, title and interest in deposits (other than the Deposit) and prepaid expenses and claims for refunds and rights to offset in respect thereof.

(cc)      "**District Court**" has the meaning set forth in the preamble.

(dd)      "**Dollars**" or "**$**" means the lawful currency of the United States.

(ee)      "**Excluded Assets**" means any assets or properties other than the Acquired Assets. For the avoidance of doubt, and without limiting the foregoing, (a) cash, (b) cash equivalents, (c) all defenses, offsets, and recoupments against any Claims against, or liabilities of, any or all of the Sellers, (d) claims, causes of action and rights against Paul Carroll and any past or present Affiliate of Paul Carroll, and all offsets, recoupments and defenses to any claims of Paul Carroll or any such Affiliate, (e) claims, causes of action and rights against Stephen Buscher and any past or present Affiliate of Stephen Buscher, and all offsets, recoupments and defenses to any claims of Stephen Buscher or any such Affiliate, (f) claims, causes of action and rights against Microcosm, Inc. ("**Microcosm**") and any past or present Affiliate of Microcosm, and all offsets, recoupments and defenses to any claims of Microcosm or any Affiliate thereof,

-3-

DocuSign Envelope ID: F32BD7AC-1261-43B9-9C6J-C596C00E560D

EXECUTION COPY

(g) claims, causes of action and rights against Scorpius Space Launch Corporation ("**Scorpius**") and any past or present Affiliate of Scorpius, and all offsets, recoupments and defenses to any claims of Scorpius or any Affiliate thereof, (h) all defenses, including defensive rights of recoupment and offset, relating to Excluded Liabilities and Excluded Assets, and (i) the rights of Sellers under this Agreement, are Excluded Assets.

(ff) "**Excluded Liabilities**" means all Indebtedness other than the Assumed Liabilities. Without limiting the foregoing, Excluded Liabilities include (i) any Taxes arising as a result of Sellers' operation of its business or ownership of the Acquired Assets prior to the Closing, (ii) any employment Taxes paid or to be paid by Sellers for any reason whatsoever, (iii) any deferred Taxes of any nature, (iv) any Liability under any Contract not assigned to Buyer under this Agreement, (v) any liability under any employee benefit plans or relating to payroll, severance, vacation, sick leave, workers' compensation, unemployment benefits, pension benefits, employee stock option or profit-sharing plans, health care plans or benefits or any other employee plans or benefits of any kind for Sellers' employees or former employees or both, including any Liability with respect to the payment of bonuses for any reason, (vi) any Liability to indemnify, reimburse or advance amounts to any officer, director, employee or agent of Sellers, and (vii) any Liability arising out of or resulting from Sellers' compliance or noncompliance with any Law or Order of any Governmental Authority.

(gg) "**FCC**" has the meaning set forth in the Recitals.

(hh) "**FCC License**" means all rights, title and interest in and to the "Order and Authorization for NGSO-like satellite operation in the 10.7-12.7 GHz, 14.0-14.5 GHz, 17.8-18.6 GHz, 18.819.3 GHz, 27.5-28.35 GHz, 28.35-29.1 GHz, and 29.5-30.0 GHz frequency bands" or any replacement or successor license.

(ii) "**FCS**" means FCS Advisors, LLC d/b/a Brevet Capital Advisors.

(jj) "**FCS Loan Documents**" means, as may be amended from time to time and together with all restatements, supplements, and other modifications thereto, (a) the Secured Note Purchase and Security Agreement dated as of October 4, 2018 between TGI and FCS; (b) the Amended and Restated Secured Note Purchase and Security, dated as of June 29, 2020, (c) the Receiver's Certificate Purchase and Security Agreement dated as of February [*], 2022, (d) the Receiver's Certificate dated as of February [*], 2022, (e) the Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC (Doc. 206), entered by the Court on February 16, 2022; (f) the First Amendment to Receiver's Certificate Purchase and Security Agreement dated as of January [*], 2023 (the "**First Amendment**"); (g) any District Court order authorizing the Receiver's entry into the First Amendment; (h) all other mortgages, assignments, instrument, and other documents executed in connection with the foregoing.

(kk) "**FCS Obligations**" means all loans, advances, debts, liabilities, and obligations (monetary and nonmonetary) of every kind and description, whether direct or indirect, fixed or contingent, mature or unmatured, now existing or hereafter arising, under, or related to, any of the FCS Loan Documents, or any related documents or transactions.

(ll) "**F&F Obligations**" means the scheduled loans, advances, debts, liabilities, and obligations totaling at least One Hundred Seventy Nine Million Dollars ($179,000,000), and any nonmonetary obligations, in each case of every kind and description, whether direct or indirect, fixed or contingent, mature or unmatured, now existing or hereafter arising, under, or related to, all Secured Note Purchase Agreements and Secured Convertible Promissory Notes (as may be amended, restated, or supplemented from time to time) entered into between any of the Sellers and the purchasers listed on Schedule 1.01(ll). For the avoidance of doubt, F&F Obligations shall only include those obligations with

respect to which the obligee has previously signed a note purchase agreement with the Buyer at any time prior to Closing.

(mm)   "**Governmental Approval**" means any approval, order, writ, judgment, injunction, decree, stipulation, determination or award, granted or entered by or with any Governmental Authority.

(nn)   "**Governmental Authority**" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of Law), or any arbitrator, court or tribunal of competent jurisdiction.

(oo)   "**Indebtedness**" means, with respect to any Person, at a particular time, without duplication, (i) any obligations of such Person under any indebtedness for borrowed money, (ii) any indebtedness of such Person evidenced by any note, bond, debenture or other debt security, (iii) any indebtedness of such Person pursuant to a guarantee to a creditor of another Person, (iv) any obligations under capitalized leases or with respect to which such Person is liable, contingently or otherwise, as obligor, guarantor or otherwise, or with respect to which obligations such Person assures a lender or lessor under any such lease against loss, (v) any borrowing of money or other obligation secured by a Lien on such Person's assets, (vi) any obligations under factoring or similar agreements with respect to receivables that have been factored or pledged, (vii) any off-balance sheet obligations that by the nature of their terms will ultimately be deemed to be, by conversion or otherwise, or treated, for tax purposes or otherwise, as debt, (viii) any obligation for interest, premiums, penalties, fees, make-whole payments, expenses, indemnities, breakage costs and bank overdrafts with respect to items described in clauses (i) through (vii) above, (ix) any obligations of such Person for the deferred and unpaid purchase price of property or services (other than trade and other payables, accrued expenses and other current liabilities, but including earnout payments), (x) any unfunded pension liabilities or commitments, (xi) any reserves or provisions which have a cash-out effect, (xii) any transaction or stay bonuses or payment, and (xiii) all liabilities for reserves for any of the foregoing.

(pp)   "**Intellectual Property**" means any and all of Sellers' rights in, arising out of, or associated with any of the following in any jurisdiction throughout the world: (a) issued patents and patent applications (whether provisional or non-provisional), including divisionals, continuations, continuations-in-part, substitutions, reissues, reexaminations, extensions, or restorations of any of the foregoing, and other Governmental Authority-issued indicia of invention ownership (including certificates of invention, petty patents, and patent utility models) ("**Patents**"); (b) trademarks, service marks, brands, certification marks, logos, trade dress, trade names, and other similar indicia of source or origin, whether or not registered, together with the goodwill connected with the use of and symbolized by, and all registrations, applications for registration, and renewals of, any of the foregoing, excluding "Theia" (the "**Trademarks**"); (c) copyrights and works of authorship, whether or not copyrightable, and all registrations, applications for registration, and renewals of any of the foregoing ("**Copyrights**"); (d) internet domain names and social media account or user names (including "handles"), whether or not Trademarks, all associated web addresses, URLs, websites and web pages, social media sites and pages, and all content and data thereon or relating hereto, whether or not Copyrights; (e) mask works, and all registrations, applications for registration, and renewals thereof; (f) industrial designs, and all Patents, registrations, applications for registration, and renewals thereof; (g) trade secrets, know-how, inventions (whether or not patentable), discoveries, improvements, technology, business and technical information, databases, data compilations and collections, tools, methods, processes, techniques, and other confidential and proprietary information and all rights therein; (h) computer programs, operating systems, applications, firmware and other code, including all source code, object code, application programming interfaces, data files, databases, protocols,

specifications, and other documentation thereof; and (i) all other intellectual or industrial property and proprietary rights.

(qq)    "**Intellectual Property Agreements**" means all licenses, sublicenses, consent to use agreements, settlements, coexistence agreements, covenants not to sue, waivers, releases, permissions and other Contracts, whether written or oral, relating to any Intellectual Property that is or was used or held for use in the conduct of the Business (as conducted as of the commencement of the Receivership Action) to which any of Sellers is a party, beneficiary or otherwise bound, to the extent the foregoing are assignable to Buyer without the consent or approval of the counterparty.

(rr)    "**Intellectual Property Assets**" means all Intellectual Property that is owned by Sellers and used or held for use in the conduct of the Business (as conducted as of the commencement of the Receivership Action), together with all (i) royalties, fees, income, payments, and other proceeds due or payable to Sellers with respect to such Intellectual Property after the Closing; and (ii) other claims and causes of action with respect to such Intellectual Property, whether accruing before, on, or after the Closing, including all rights to and claims for damages, restitution, and injunctive and other legal or equitable relief for infringement, misappropriation, or other violation thereof, including without limitation, the Intellectual Property listed on attached <u>Schedule 1.01(rr)</u>.

(ss)    "**Intellectual Property Assignments**" means the assignments of Intellectual Property in the form(s) attached as <u>Exhibit B</u> that the Sellers shall have executed and delivered that assign, convey, and transfer to Buyer its entire right, title, interest, and ownership, to all Intellectual Property owned by Sellers.

(tt)    "**Law**" means any statute, law, ordinance, regulation, rule, code, order, constitution, treaty, common law, judgment, decree, other requirement or rule of law of any Governmental Authority.

(uu)    "**Liability**" or "**Liabilities**" means any direct or indirect Indebtedness, liability, Claim, loss, damage, deficiency, obligation, responsibility or other liability of any kind (whether known or unknown, fixed or unfixed, choate or inchoate, liquidated or un-liquidated, secured or unsecured, accrued, absolute, contingent or otherwise), and including all costs and expenses related thereto.

(vv)    "**Licenses**" means the FCC License and the NOAA License.

(ww)    "**Lien**" means any lien (statutory or otherwise), security interest, mortgage, deed of trust, priority, pledge, charge, conditional sale, title retention agreement, financing lease or other encumbrance, or any agreement to give or grant any of the foregoing.

(xx)    "**Material Adverse Effect**" means any event, occurrence, fact, condition or change that is, or could reasonably be expected to become, individually or in the aggregate, materially adverse to the value of the Acquired Assets in the amount of at least $25 million; *provided, however*, that "Material Adverse Effect" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (i) general economic or political conditions; (ii) conditions generally affecting the industries in which the Business operated or may operate in the future; (iii) any changes in financial or securities markets in general; (iv) acts of war (whether or not declared), armed hostilities or terrorism, or the escalation or worsening thereof; (v) any pandemic or epidemic; (vi) any action required or permitted by this Agreement; (vii) any changes in applicable Laws or accounting rules, including GAAP; (viii) the passage of time; or (ix) the public announcement, pendency or completion of the Transactions contemplated by this Agreement; *provided, however*, that once Governmental Approvals

to transfer the Licenses to Buyer have been obtained, no event, occurrence, fact, condition or change will be or may become a Material Adverse Effect.

(yy)    **"NOAA"** has the meaning set forth in the Recitals.

(zz)    "**NOAA License**" means the authorization that NOAA granted to Theia Group, Inc. for remote sensing in space capability.

(aaa)    "**Parties**" has the meaning set forth in the preamble.

(bbb)    "**Person**" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association, or other entity.

(ccc)    "**Purchase Price**" has the meaning set forth in Section 2.05.

(ddd)    "**Receiver**" has the meaning set forth in the Recitals.

(eee)    "**Receivership Action**" has the meaning set forth in the Recitals.

(fff)    "**Representative**" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

(ggg)    "**Sellers**" has the meaning set forth in the preamble.

(hhh)    "**Sellers' Closing Certificate**" means a certificate executed by Receiver that, to Sellers' Knowledge, the representations of Sellers set forth in this Agreement are true and correct as of the Closing.

(iii)    "**Sellers' Deliverables**" has the meaning provided in Section 2.10(a).

(jjj)    "**Sellers' Knowledge**" or any other similar knowledge qualification means the actual knowledge of the Receiver.

(kkk)    "**Tangible Personal Property**" means all tangible personal property, including, without limitation, all equipment, furniture, office equipment listed on attached Schedule 1.01(kkk).

(lll)    "**Tax**" or "**Taxes**" means any and all U.S. federal, state, local and non-U.S. taxes, assessments and other governmental charges, duties (including stamp duty), impositions and liabilities, in each case in the nature of a tax, including capital gains tax, taxes based upon or measured by gross receipts, income, profits, sales, use and occupation, and value added, ad valorem, transfer, franchise, withholding, payroll, recapture, employment, excise and property taxes as well as public imposts, fees and social security charges (including health, unemployment, workers' compensation and pension insurance), together with all interest, penalties, and additions imposed by a Governmental Authority with respect to such amounts.

(mmm)    "**TA**" has the meaning set forth in the preamble.

(nnn)    "**TGI**" has the meaning set forth in the preamble.

(ooo)    "**THA**" has the meaning set forth in the preamble.

(ppp)    "**Transaction**" has the meaning set forth in the preamble.

# ARTICLE II
## PURCHASE AND SALE OF ASSETS

**Section 2.01** *Purchase and Sale of Acquired Assets*.  Upon the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Sellers shall sell, transfer, assign, convey, and deliver to Buyer, and Buyer shall purchase and acquire from Sellers, all of the Acquired Assets, free and clear of all Liens, Claims and Indebtedness (other than the Assumed Liabilities) of any nature whatsoever. "**Acquired Assets**" means all of Sellers' right, title, and interest in and to the following assets:

(a)     All Tangible Personal Property;

(b)     All Aircraft and spare parts;

(c)     All Intellectual Property Assets (including, without limitation, all Intellectual Property Assets, Licensed Intellectual Property and Intellectual Property listed on <u>Schedule 1.01(qq)</u> attached hereto);

(d)     All Assigned Contracts;

(e)     All Books and Records; *provided*, *however*, that Sellers may maintain copies of all of the Books and Records;

(f)     Other than Excluded Assets, all Claims, choses in action, causes of action, claims, and demands of Sellers (whether known or unknown, matured or unmatured, accrued or contingent), including rights to returned or repossessed goods and rights as an unpaid vendor; rights of recovery, rights of warranty and indemnity, rights of set-off and rights of recoupment; all security deposits, utility deposits and other deposits, all supplies and miscellaneous assets.

(g)     Other than Excluded Assets, all Claims, choses in action, causes of action and demands of Sellers against third parties relating to the Acquired Assets, whether choate or inchoate, known or unknown, contingent or noncontingent.

(h)     All insurance benefits, including rights and proceeds, arising from or relating to the Acquired Assets prior to the Closing, to the extent not utilized as of the Closing; and

(i)     All Deposit Rights.

**Section 2.02** *Assumed Liabilities*.  At the Closing, Buyer will assume and agree to pay, perform and discharge when due the Assumed Liabilities.

**Section 2.03** *Excluded Assets*.  Notwithstanding any other provision of this Agreement, the Acquired Assets shall not include the Excluded Assets.

**Section 2.04** *Excluded Liabilities*.  Notwithstanding any other provision of this Agreement, Buyer does not assume and shall not be deemed by virtue of the execution and delivery of this Agreement or any document delivered at the Closing pursuant to this Agreement, or as a result of the consummation of the Transactions contemplated by this Agreement, to have assumed, or to have agreed to pay, satisfy, discharge or perform, any liability unless it is an Assumed Liability as reflected on Schedule 1.01(l).

**Section 2.05** *Purchase Price*.  In exchange for the Acquired Assets, Buyer shall provide consideration to the Sellers (the "**Purchase Price**"), as follows:

(a)    waiver and release of the FCS Obligations; *plus*

(b)    waiver and release of the Aithre Obligations; *plus*

(c)    waiver and release of the F&F Obligations; *plus*

(d)    the Cash Payment.

**Section 2.06**    *Cash Payment*.

(a)    On or before March 31, 2023, Buyer shall pay the Deposit to Sellers by wire transfer to an account designated by the Receiver.

(b)    At Closing, Buyer shall pay the balance of the Cash Payment to Sellers by wire transfer of immediately available funds to an account designated by the Receiver.

**Section 2.07**    *Purchase Price Allocation*.  The Parties agree to allocate the Purchase Price (and all other capitalizable costs) among the Acquired Assets for all purposes (including financial accounting and Tax purposes) in accordance with the allocation set forth in attached Schedule 2.07 to this Agreement (the "**Allocation Schedule**").  After the Closing, the Parties shall make consistent use of the Allocation Schedule for all Tax purposes and in all filings, declarations and reports with the IRS in respect thereof, including the reports required to be filed under Section 1060 of the Code (26 U.S.C. § 1060).  Buyer shall prepare and deliver IRS Form 8594 to Sellers within 60 days after the Closing Date to be filed with the IRS.

**Section 2.08**    *Closing Date; Effective Time*.  The closing of the Transactions contemplated by this Agreement (the "**Closing**") shall take place at the offices of Gallagher Law PC., Suite 1320, 1600 Market Street, Philadelphia PA 19103 (or at another time or place as the Parties mutually agree in their sole discretion) on the earlier of (a) June 30, 2023, (b) five (5) Business Days after Governmental Approval to transfer the Licenses to Buyer, or (c) a date and time mutually agreed upon in writing by the Parties.  The date on and time at which the Closing occurs is referred to in this Agreement as the "**Closing Date**."

**Section 2.09**    *Time is of the Essence*.  Time is of the essence with respect to payment of the Deposit and the occurrence of the Closing Date and the Closing.

**Section 2.10**    *Closing Obligations*.

(a)    At the Closing, Sellers shall deliver to the Buyer (the "**Sellers' Deliverables**"):

(i)    Sellers' Closing Certificate;

(ii)    An executed Bill of Sale, Assignment and Assumption of Contracts and Assumed Liabilities,

(iii)    Executed Intellectual Property Assignments,

(iv)    Copies of Governmental Approvals of the transfer or assignment of the Licenses to Buyer; and

(v)    Any other executed Ancillary Documents as reasonably requested by Buyer in form and substance reasonably acceptable to the Parties.

(b)      At the Closing, Buyer shall deliver to the Sellers (the "**Buyer's Deliverables**"):

(i)      The balance of the Purchase Price not previously paid to Sellers;

(ii)      Buyer's Closing Certificate;

(iii)      Proof of acquisition of the FCS Obligation and an executed waiver and release of the FCS Obligations;

(iv)      Proof of acquisition of the Aithre Obligations and an executed waiver and release of the Aithre Obligations;

(v)      Proof of acquisition of the F&F Obligations and an executed waiver and release of the F&F Obligations;

(vi)      An executed Bill of Sale, Assignment and Assumption of Contracts and Assumed Liabilities,

(vii)      Executed Intellectual Property Agreements,

(viii)      A certificate of the Secretary (or equivalent officer) of Buyer certifying as to (A) the resolutions of the board of managers (or equivalent) of Buyer, which authorize the execution, delivery and performance of this Agreement, the Bill of Sale, Assignment and Assumption of Contracts and Assumed Liabilities, and any other Ancillary Document required to be delivered in connection with this Agreement or at the Closing and the consummation of the Transactions contemplated hereby and thereby, (B) the names and signatures of the officers of Buyer authorized to sign this Agreement and the other Ancillary Documents; and

(ix)      Any other executed Ancillary Documents as reasonably requested by Sellers in form and substance reasonably acceptable to the Parties.

## ARTICLE III
## REPRESENTATIONS OF SELLERS

Sellers hereby represent and warrant severally, and not jointly to Buyer as follows:

**Section 3.01**      *Corporate Authorization*; *District Court Approval*.  Subject to and conditioned upon the District Court's entry of the Approval Order, Sellers have the requisite power and authority to execute and deliver this Agreement and to consummate the Transactions contemplated hereby and to perform their obligations hereunder.  Subject to and conditioned upon the Approval Order, this Agreement constitutes the legal, valid and binding agreement of Sellers, enforceable against Sellers in accordance with its terms, except to the extent that enforceability may be limited by applicable bankruptcy, insolvency, reorganization, receivership moratorium and similar Laws, now or hereafter in effect, affecting creditors' rights generally and by general principles of equity.

**Section 3.02**      *Licenses*.  To Sellers' Knowledge, the Licenses are valid and in full force and effect, and Sellers have not received written notice from any Governmental Authority threatening to revoke, or indicating that it is investigating whether to revoke, any such License.

**Section 3.03**      *Title to Acquired Assets*.  To Sellers' Knowledge, Sellers own good and transferable title to all of the Acquired Assets, and subject to and conditioned upon the Approval Order,

-10-

may transfer the Acquired Assets free and clear of any Liens, Claims and Indebtedness (other than the Assumed Liabilities).

Section 3.04     *Correctness of Representations*.  To Sellers' Knowledge, no representation of Sellers in this Agreement contains, or on the Closing Date will contain, any untrue statement of material fact or omission**.**

Section 3.05     *No Survival*.  No representations of Sellers under this Article III shall survive the Closing.

**ARTICLE IV**
**REPRESENTATIONS AND WARRANTIES OF BUYER**

Buyer represents and warrants to Sellers as follows:

Section 4.01     *Organization***.**  Buyer is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has the requisite power to carry on its business as now conducted.

Section 4.02     *Authority for this Agreement***.**  Buyer has all necessary company power and authority to enter into this Agreement and to consummate the Transactions contemplated by this Agreement.  The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the Transactions contemplated hereby have been duly and validly authorized by all necessary company action on the part of Buyer and no other company authorization or proceedings on the part of Buyer are necessary to authorize this Agreement or to consummate the Transactions contemplated by this Agreement.  This Agreement has been duly executed and delivered by Buyer and, assuming due authorization, execution and delivery of this Agreement by Sellers, constitutes a legal, valid and binding agreement of Buyer, enforceable in accordance with its terms against Buyer, except as enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws relating to creditors' rights generally and by general principles of equity.

Section 4.03     *Consents and Approvals***.**  The execution and delivery of this Agreement by Buyer and the consummation by Buyer of the Transactions contemplated hereby require no consent, approval, authorization or filing with or notice to any Governmental Authority, other than (i) compliance with any applicable requirements of the Hart-Scott-Rodino Act and any applicable foreign competition laws; (ii) compliance with any applicable requirements of the Securities Act or the Exchange Act and any other U.S. state or federal securities laws; (iii) Governmental Approvals for the transfer of the Licenses, (iv) entry of the Approval Order, and (v) any actions or filings the absence of which are not reasonably likely to prevent, materially delay or materially impair the ability of Buyer to consummate the Transactions contemplated by this Agreement.

Section 4.04     *Non-Contravention***.**  The execution, delivery and performance of this Agreement by Buyer and the consummation of the Transactions contemplated by this Agreement do not and will not (with or without notice or lapse of time or both) (i) contravene, conflict with, or result in any violation or breach of any provision of the limited liability company of Buyer; (ii) assuming compliance with the matters referred to in <u>Section 4.03</u>, contravene, conflict with or result in a violation or breach of any Law or Order; or (iii) require any consent or approval under, violate, conflict with, result in any breach of any loss of any benefit under, or constitute a change of control or default under, or result in termination or give to others any right of termination, vesting, amendment, acceleration or cancellation of any contract to which Buyer is a party, or by which its properties or assets may be bound or affected, with such exceptions, in the case of each of clauses (ii) and (iii) of this <u>Section 4.04</u>, as would not reasonably be expected to prevent,

materially delay or materially impair the ability of Buyer to consummate the Transactions contemplated by this Agreement.

**Section 4.05**    *Sufficiency of Funds; Solvency.*  Buyer has sufficient cash on hand or other sources of immediately available funds to enable it to make payment of the Cash Payment and consummate the Transactions contemplated by this Agreement.  Immediately after giving effect to the Transactions contemplated hereby, Buyer shall be solvent and shall: (a) be able to pay its debts as they become due; (b) own property that has a fair saleable value greater than the amounts required to pay its debts (including a reasonable estimate of the amount of all Liabilities); and (c) have adequate capital to carry on its business. No transfer of property is being made and no obligation is being incurred in connection with the Transactions contemplated hereby with the intent to hinder, delay or defraud either present or future creditors of Buyer or Sellers.  In connection with the Transactions contemplated hereby, Buyer has not incurred, nor plans to incur, debts beyond its ability to pay as they become absolute and matured.

**Section 4.06**    *Brokers*.  No broker, finder or investment banker is entitled to any brokerage, finder's or other fee or commission in connection with the Transactions contemplated by this Agreement or any other Ancillary Document based upon arrangements made by or on behalf of Buyer.  In addition, should any Broker Fee be due as a result of any obligation the Seller entered into then the Seller shall be solely responsible for any and all such Broker Fee (which may be payable from the Purchase Price).

**Section 4.07**    *F&F Obligations*.  Within ten (10) days of the execution of this Agreement, Buyer shall provide Sellers with copies of all note purchase agreements between the obligees and the Buyer with respect to the F&F Obligations.

**Section 4.08**    *Correctness of Representations*.  To Buyer's Knowledge, no representation of Buyer in this Agreement contains, or on the Closing Date will contain, any untrue statement of material fact or omission**.**

## ARTICLE V
## COVENANTS

Buyer and Sellers represent and warrant to each other, as follows:

**Section 5.01**    *Access to Information, Retention of Records; Copies*.

(a)    From and after the date of this Agreement, Sellers shall (i) give to Buyer access to the Sellers' Books and Records as Buyer may reasonably request, (ii) furnish to Buyer such financial, tax and operating data and other information as Buyer may reasonably request (including the work papers of any certified public accountant of the Sellers upon receipt of any required consent from such certified public accountant), and (iii) reasonably cooperate with Buyer in Buyer's preparation for Closing.  Buyer hereby agrees that it shall treat any such information in accordance with any Confidentiality Agreement by and between Sellers and Buyer**.**

(b)    From and after the Closing, Buyer shall (i) give to Sellers access to the purchased Books and Records, (ii) furnish to Buyer such financial, tax and operating data and other information as Buyer may reasonably request from such Books and Records, and (iii) reasonably cooperate with Sellers in providing documents and information to Sellers as requested by the Receiver (or other representative of Sellers) in the discharge of the Receiver's (or such representative's) obligation and duties, including in responding to third-party discovery requests.

DocuSign Envelope ID: F32BD7AC-1261-43B9-9C61-C538C00E560D    Case 1:21-cv-06995-PKC    Document 318-1    Filed 01/18/23    Page 17 of 196

EXECUTION COPY

(c)    After the Closing Date, Buyer shall retain for a period consistent with Buyer's record-retention policies and practices those Books and Records of Sellers delivered to Buyer.  Sellers shall have the right to retain copies of any and all Books and Records for all legitimate purposes of Sellers, including without limitation, preparation of financial statements and Tax returns.  Buyer also shall provide reasonable access thereto, during normal business hours and on at least three days' prior written notice, to enable them to prepare financial statements or Tax returns or deal with Tax audits.  Prior to the destruction of any Books and Records of Sellers delivered to Buyer, Buyer shall notify Sellers of such proposed destruction and shall offer Sellers the option, exercisable within 30 days after Sellers' receipt of such notice, to retake possession and ownership of any such Books and Records.

Section 5.02    *Reasonable Best Efforts; Governmental Approvals*.

(a)    Each of Sellers and Buyer shall use their respective reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, and to assist and cooperate with the other Parties in doing, all things necessary, proper or advisable under Law to consummate Transactions contemplated by this Agreement, including (i) the obtaining of all necessary actions or non-actions, waivers, consents and Governmental Approvals for the transfer of the Licenses to Buyer and otherwise as necessary or appropriate to consummate the Transactions contemplated hereby and to fully carry out the purposes of this Agreement.

(b)    Nothing in this Section 5.02 shall be interpreted to prohibit, restrict, limit or restrain Buyer from engaging in litigation, including litigation to prevent the imposition by any Governmental Authority of any undertaking, condition, consent decree, hold separate order, divestiture, operational restriction or limitation or other action by any Governmental Authority that, if effected, would reasonably be expected to restrict, limit, restrain or impair Buyer's ability to own, operate, retain or change all or a material portion of the Acquired Assets (including the Licenses), operations, rights, product lines, businesses or interest therein of Buyer.

(c)    After Buyer has timely paid the Deposit, notwithstanding anything in this Section 5.02 to the contrary, with respect to the matters covered in this Section 5.02, it is agreed that Buyer, after consulting with Sellers, shall make all decisions, lead all discussions, negotiations and other proceedings, and coordinate all activities with respect to any requests that may be made by, or any actions, consents, undertakings, approvals, or waivers that may be sought by, any Governmental Authority, including determining the manner in which to contest or otherwise respond, by litigation or otherwise, to objections to, or proceedings challenging, the consummation of Transactions contemplated by this Agreement. Sellers agree to take such reasonable and lawful actions to secure Governmental Approvals to transfer the Licenses to Buyer. Sellers shall not participate in any meeting with any Governmental Authority in respect of the transfer of the Licenses unless it consults with Buyer in advance and, to the extent permitted by such Governmental Authority, gives Buyer the opportunity to attend and participate thereat.

(d)    *Press Releases*.  Buyer and Sellers shall consult with each other before issuing any press release or making any other public statement with respect to this Agreement or the Transactions contemplated hereby and shall not issue any such press release or make any such other public statement without the written consent of the other Party, which shall not be unreasonably withheld, conditioned, or delated, except as such release or statement may be required by Law or any listing agreement with or rule of any national securities exchange, in which case the Party required to make the release or statement shall consult with the other Party about, and allow the other Party reasonable time (to the extent permitted by the circumstances) to comment on, such release or statement in advance of such issuance, and the Party will consider such comments in good faith.  For the avoidance of doubt, nothing herein shall prevent the Sellers from filing a motion and a copy of this Agreement (and all related documents) with the District Court to seek approval of this Agreement.

-13-

**Section 5.03**    *Notification of Certain Matters.*  Except as prohibited by Law, each of Sellers and Buyer shall promptly notify the other Parties in writing of:

(a)    any inaccuracy of any representation or warranty contained in this Agreement that could reasonably be expected to cause the conditions set forth herein not to be satisfied;

(b)    the failure of such Party to perform in any material respect any obligation to be performed by it under this Agreement;

(c)    any notice or other communication from any third party (other than the FCC and NOAA) alleging that such third party's notice to or consent of such person is required in connection with the Transactions contemplated by this Agreement;

(d)    to the extent permitted by Law, any material notice or other material communication from any Governmental Authority in connection with the Transactions contemplated by this Agreement, and a copy of any such notice or communication shall be furnished to Buyer;

(e)    any filing or notice made by a Party with any Governmental Authority in connection with the transfer of the Licenses, and a copy of any such filing;

(f)    to the extent permitted by Law, any actions, suits, claims, investigations or proceedings commenced or, to Sellers' Knowledge, threatened against, relating to or involving or otherwise affecting Sellers that relate to the consummation of the Transactions contemplated by this Agreement; and

(g)    the occurrence of any matters or events that individually or in the aggregate would be reasonably likely to result in any condition to the Transactions contemplated hereby and set forth herein not being satisfied;

*provided*, however, that no such notification shall operate as a waiver or otherwise affect any representation, warranty, covenant, agreement or other provision in this Agreement, or the obligations of Sellers or Buyer or the conditions to the obligations of Sellers or Buyer under this Agreement.

**Section 5.04**    *Payment of Taxes Resulting from Sale of Assets by Sellers.*

(a)    Subject to Section 5.04(b) and Section 5.05, Sellers shall pay (from the Purchase Prince) in a timely manner all income taxes owed by Sellers resulting from or payable in connection with the sale of the Acquired Assets pursuant to this Agreement.

(b)    Under no circumstances, however, shall Sellers be obligated to pay income taxes of any of their shareholders (except to the extent such shareholder is one of the Sellers).

(c)    Nothing herein shall create any rights, as a third-party beneficiary or otherwise, in favor of any person or entity other than Buyer or Sellers.

**Section 5.05**    *Payment of Transfer Taxes.*  All transfer, documentary, sales, use, stamp, registration, value added, and other such Taxes and fees (including any penalties and interest) incurred in connection with this Agreement and the other Ancillary Documents (including any real property transfer Tax and any other similar Tax) shall be borne and paid by Buyer when due. Buyer shall, at its own expense, timely file any Tax return or other document with respect to such Taxes or fees (and Seller shall cooperate with respect thereto as necessary).

EXECUTION COPY

**Section 5.06** *Survival.* The covenants of Buyer and Sellers in Sections 5.01(b)-(c) and 5.04 shall survive the Closing. No other covenants in this Article V shall survive the Closing.

**ARTICLE VI**
**CLOSING CONDITIONS**

**Section 6.01** *Conditions Precedent to Obligations of Buyer.* The obligations of the Buyer under this Agreement to proceed with the Closing shall be subject to the satisfaction by the Sellers on or prior to the Closing Date of each of the following conditions precedent:

(a)  *Accuracy of Representations.* The representations of Sellers set forth in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as though made on and as of that date.

(b)  *Performance and Compliance.* Sellers shall have performed or complied in all material respects with each covenant and agreement to be performed or complied with by it under this Agreement on or prior to the Closing Date.

(c)  *Consents and Approvals.* Sellers shall have obtained (with Buyer's best efforts to assist) or made each filing required to obtain Governmental Approvals of the transfer of the Licenses to Buyer.

(d)  *Litigation.* There shall be no pending action by any Governmental Authority (i) seeking to restrain, prohibit, or invalidate any of the Transactions contemplated by this Agreement or (ii) seeking monetary relief against Buyer by reason of the consummation of this Agreement.

(e)  *Material Adverse Change.* No event shall have occurred and existing as of the Closing that constitutes a Material Adverse Effect.

(f)  *Sellers' Deliverables.* Sellers shall have delivered the Sellers' Deliverables at the Closing.

(g)  *District Court Approval.* The District Court shall have entered the Approval Order.

**Section 6.02** *Conditions Precedent to Obligations of Sellers.* The obligations of Sellers under this Agreement to proceed with the Closing shall be subject to the satisfaction by Buyer on or prior to the Closing Date of each of the following conditions precedent:

(a)  *Accuracy of Representations and Warranties.* The representations and warranties of Buyer set forth in this Agreement shall be true and correct on and as of the Closing Date with the same force and effect as though made on and as of that date.

(b)  *Performance and Compliance.* Buyer shall have performed or complied in all material respects with each covenant and agreement to be performed or complied with by it under this Agreement on or prior to the Closing Date.

(c)  *Consents and Approvals.* Buyer shall have obtained (with Sellers' best efforts to assist) or made each filing required to obtain Governmental Approvals of the transfer of the Licenses to Buyer.

DocuSign Envelope ID: F32BD7AC-1261-43B9-9C61-C538C00E560D

(d)     *Litigation.*  There shall be no pending or threatened action by any Governmental Authority (i) seeking to restrain, prohibit, or invalidate any of the Transactions contemplated by this Agreement or (ii) seeking monetary relief against Sellers by reason of the consummation of this Agreement.

(e)     *Buyer's Deliverables.*  Buyer shall have delivered the Buyer's Deliverables at the Closing.

(f)     *District Court Approval.*  The District Court shall have entered the Approval Order.

## ARTICLE VII
## MISCELLANEOUS

**Section 7.01**     *Entire Agreement; Assignment; Amendments.*  This Agreement (including the exhibits and schedules to this Agreement) constitute the entire agreement and supersede all oral agreements and understandings and all written agreements prior to the date hereof between or on behalf of the Parties with respect to the subject matter hereof.  This Agreement shall not be assigned by any Party by operation of law or otherwise without the prior written consent of the other Parties hereto.  This Agreement may be amended only by a writing signed by each of the Parties, and any amendment shall be effective only to the extent specifically set forth in that writing.

**Section 7.02**     *Severability; Expenses; Further Assurances.*  If any term, condition or other provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or incapable of being enforced by any rule of Law or public policy, all other terms, conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the Transactions contemplated by this Agreement is not affected in any manner materially adverse to any Party.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a mutually acceptable manner in order that the Transactions contemplated by this Agreement be consummated as originally contemplated to the fullest extent possible.  Except as otherwise specifically provided in this Agreement, each Party shall be responsible for the expenses it may incur in connection with the negotiation, preparation, execution, delivery, performance, and enforcement of this Agreement.  The Parties shall from time to time do and perform any additional acts and execute and deliver any additional documents and instruments that may be required by Law or reasonably requested by any Party to establish, maintain, or protect its rights and remedies under, or to effect the intent and purpose of, this Agreement.

**Section 7.03**     *Enforcement of the Agreement; Jurisdiction; No Jury Trial.*

(a)     The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.  Accordingly, the Parties agree that the non-breaching Party or Parties shall be entitled to an injunction or injunctions to prevent breaches or threatened breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement exclusively in the District Court, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the Chancery Court of the State of Delaware or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court for the District of Delaware or another court sitting in the state of Delaware, this being in addition to any other remedy to which they are entitled at law or in equity.  In addition, each of the Parties to this Agreement irrevocably agrees that any legal action or proceeding with respect to this Agreement and the rights and obligations arising under this Agreement, or for recognition and enforcement of any judgment in

EXECUTION COPY

respect of this Agreement and the rights and obligations arising under this Agreement brought by another Party to this Agreement or its successors or assigns, shall be brought and determined exclusively in accordance with this section. Each of the Parties to this Agreement hereby irrevocably submits with regard to any such action or proceeding for itself and in respect of its property, generally and unconditionally, to the personal jurisdiction of the aforesaid courts and agrees that it will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than the aforesaid courts and in accordance with this section. Each of the parties to this Agreement hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any action or proceeding with respect to this Agreement,(a) any claim that it is not personally subject to the jurisdiction of the above-named courts for any reason other than the failure to comply with this section; (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise); and (c) to the fullest extent permitted by the Law, any claim that (i) the suit, action or proceeding in such court is brought in an inconvenient forum; (ii) the venue of such suit, action or proceeding is improper; or (iii) this Agreement, or the subject matter of this Agreement, may not be enforced in or by such courts. Each of Sellers and Buyer hereby agrees that service of any process, summons, notice, or document by U.S. registered mail to the respective addresses set forth in the notice provision of this Agreement shall be effective service of process for any proceeding arising out of, relating to or in connection with this Agreement or the Transactions contemplated hereby.

(b)     EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR OTHER PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. EACH PARTY HERETO CERTIFIES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (II) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (III) EACH PARTY MAKES THIS WAIVER VOLUNTARILY AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

**Section 7.04**   *Notices.*   All notices or other communications required or permitted to be given hereunder shall be in writing and shall be delivered by hand or sent by registered or certified mail, postage prepaid, or by reputable overnight courier service, or by email with acknowledgment of receipt of complete transmission further confirmed by a copy sent by reputable overnight courier service. Any notice or other communication so given shall be validly given hereunder upon receipt if delivered by hand, upon receipt if sent by registered or certified mail or by overnight courier service, and upon confirmation of successful transmission if sent by email subject to receipt of the confirming copy sent by overnight courier service:

If to Buyer, to:

Rising Sky LLC
Mitchell Adams
1001 4th Avenue, Suite 4330, Seattle, WA 98154
Email:  Mitchell.adams@risingsky.org
          mitch@enligncapitalpartners.com

amitchelladams@protonmail.com

with a copy (which will not constitute notice to Buyer) to:

Gallagher Law PC
1600 Market Street
Suite 1320
Philadelphia, PA 19103
Email: James@gallagher-law.com

If to Sellers, to:

Michael Fuqua Receiver
B. Riley Advisory Services
3445 Peachtree Road
Suite 1225
Atlanta, GA 30326
Email:  mfuqua@brileyfin.com

with a copy (which will not constitute notice to Sellers) to:

Kurt F. Gwynne, Esquire
Reed Smith LLP
1201 N. Market Street
Suite 1500
Wilmington, DE 19801
Email:  kfgwynne@reedsmith.com

or to such other address as the Person to whom notice is given may have previously furnished to the others in writing in the manner set forth above.  Rejection or other refusal to accept or the inability for delivery to be effected because of changed address of which no notice was given shall be deemed to be receipt of the notice as of the date of such rejection, refusal, or inability to deliver.

**Section 7.05**    *Governing Law.*  This Agreement, and any dispute arising out of, relating to, or in connection with this Agreement, shall be governed by, and construed and enforced in accordance with, the Laws of the State of New York, without giving effect to any choice or conflict of Law provision or rule (whether of the State of New York or of any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of New York.

**Section 7.06**    *Descriptive Headings.*    The descriptive headings herein are inserted for convenience of reference only and are not intended to be part of or to affect the meaning or interpretation of this Agreement.

**Section 7.07**    *No Third-Party Beneficiaries.*  This Agreement shall be binding upon and inure solely to the benefit of each Party hereto, and nothing in this Agreement, express or implied, is intended, or shall be construed, to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement.

**Section 7.08**    *Execution; Counterparts*.  This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.  Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.  Similarly, at the Closing, signature pages of counterparts may be exchanged by facsimile or email of scanned images thereof, in each case subject to appropriate customary confirmations in respect thereof by the signatory for the Party providing a facsimile or scanned image and that Party's closing counsel.

**Section 7.09**    *Termination; Deposit*.

(a)    This Agreement may be terminated at any time prior to the Closing:

(i)    by mutual agreement of Buyer and Sellers;

(ii)    by Buyer (A) if there has been a material misrepresentation by Sellers under this Agreement or a material breach by the Sellers of any of its covenants set forth in this Agreement or (B) if any of the conditions specified in <u>Section 6.01</u> shall not have been fulfilled within the time required and shall not have been waived by Buyer;

(iii)    by Sellers (A) if there has been a misrepresentation by Buyer under this Agreement or a material breach by Buyer of any of its warranties or covenants set forth in this Agreement or (B) if any of the conditions specified in <u>Section 6.02</u> shall not have been fulfilled within the time required and shall not have been waived by Sellers;

(iv)    by the Receiver, for and on behalf of the Sellers, if the Receiver determines in good faith after consultation with counsel that their continued performance or closing under this Agreement or any other Transaction Document would be inconsistent with his fiduciary or other duties under applicable law;

(v)    by Sellers if they choose to enter into an Alternative Transaction; or

(vi)    by Sellers if the Closing shall not have occurred on the Closing Date as provided in <u>Section 2.08</u>.

(b)    *Deposit; Liquidated Damages*.

(i)    If the Closing does not occur on the Closing Date (and Buyer does not obtain specific performance and thereafter consummate this Agreement) or this Agreement is terminated, in each case due to a breach by Sellers in the performance of a Sellers' obligation under this Agreement, Buyer shall be entitled to the return of the Deposit as its sole remedy.

(ii)    If the Closing does not occur on the Closing Date (and Sellers do not obtain specific performance and thereafter consummate this Agreement) or this Agreement is terminated, in each case for any reason other than a breach by Sellers in the performance of a Sellers' obligation under this Agreement, Sellers shall retain the Deposit as liquidated damages, and all Parties shall be relieved of and released from any further liability hereunder except for those obligations specifically designated to survive termination or expiration of this Agreement.  Sellers and Buyer agree that the Deposit is a fair and reasonable amount to be retained by Sellers as liquidated damages in light of the decline in value of the Acquired Assets during the negotiation and failed

EXECUTION COPY

consummation of this Agreement and the costs incurred by Sellers, and Sellers retention of the Deposit shall not constitute a penalty or a forfeiture.

**Section 7.10**   *Alternative Transactions.*  From the date hereof and until the Closing, Sellers are permitted to, and to cause their Representatives and Affiliates to, initiate contact with, solicit, or encourage submission of any inquiries, proposals, or offers by any Person (in addition to Buyer and its Affiliates and Representatives) in connection with an Alternative Transaction.  Without limiting the foregoing, Sellers also may identify and enter into agreements respecting a "back-up" offer relating to an Alternative Transaction to become effective in the event Buyer does not perform in accordance with the terms of this Agreement.

**Section 7.11**   *Interpretation.*  The words "hereof," "herein," "hereby," "herewith" and words of similar import shall, unless otherwise stated, be construed to refer to this Agreement as a whole and not to any particular provision of this Agreement, and article, section, paragraph, exhibit and schedule references are to the articles, sections, paragraphs, exhibits and schedules of this Agreement unless otherwise specified.  Whenever the words "include," "includes" or "including" are used in this Agreement they shall be deemed to be followed by the words "without limitation."  The words describing the singular number shall include the plural and vice versa, words denoting either gender shall include both genders and words denoting natural Persons shall include all Persons and vice versa.  The phrases "the date of this Agreement," "the date hereof," "of even date herewith" and terms of similar import, shall be deemed to refer to the date set forth in the preamble to this Agreement.  Any reference in this Agreement to a date or time shall be deemed to be such date or time in New York City, unless otherwise specified.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Person by virtue of the authorship of any provision of this Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, each of the Parties has caused this Agreement to be executed on its behalf by its duly authorized representative, as of the date set forth in the preamble paragraph.

**BUYER**

RISING SKY LLC

By: _____
Name: Mitchell Adams
Title: Authorized Signatory

**SELLERS**

THEIA GROUP, INC.

By: _____
Michael Fuqua
Title: Receiver

THEIA HOLDINGS A, INC.

By: _____
Michael Fuqua
Title: Receiver

THEIA AVIATION, LLC

By: _____
Michael Fuqua
Title: Receiver

[SIGNATURE PAGE TO ASSET PURCHASE AGREEMENT]

**EXECUTION COPY**

**SCHEDULE 1.01(e)**

**"AIRCRAFT"**

1.      Douglas DC3C-S1C3G, Serial Number 13342, Registration N131PR

2.      1996 Jetstream Limited Series 4100, Model J4101, Serial Number 41084, Registration N42AX.

**EXECUTION COPY**

**SCHEDULE 1.01(k)**

**"ASSIGNED CONTRACTS"**

N/A.

**SCHEDULE 1.01(l)**

**"ASSUMED LIABILITIES"**

1.      Any and all Taxes for which Buyer is liable pursuant to Section 5.05.

**EXECUTION COPY**

**SCHEDULE 1.01(ll)**

**"F&F OBLIGATIONS"**

Attached is a list of anonymized purchasers that entered into the Secured Note Purchase Agreements and/or Secured Convertible Promissory Notes referenced in the definition "**F&F Obligations**".

**Theia Receivership**                                    **Schedule 1.01(ll)**

**Friends and Family Notes Purchased by Rising Sky**

| Investor Number | # of Notes | Cumulative Principal | Amount Due |
|---|---|---|---|
| 43 | 2 | $ 18,000,000 | $ 36,000,000 |
| 167 | 1 | 4,056,875 | 18,255,938 |
| 73 | 5 | 2,050,000 | 12,550,000 |
| 151 | 6 | 7,000,000 | 12,500,000 |
| 140 | 1 | 2,000,000 | 4,000,000 |
| 32 | 2 | 1,677,154 | 3,920,352 |
| 132 | 7 | 1,064,000 | 3,552,500 |
| 71 | 3 | 1,615,000 | 3,405,000 |
| 87 | 4 | 1,360,000 | 3,320,000 |
| 64 | 1 | 1,000,000 | 3,000,000 |
| 125 | 2 | 600,000 | 3,000,000 |
| 35 | 1 | 1,000,000 | 2,973,213 |
| 178 | 1 | 350,000 | 2,925,000 |
| 162 | 1 | 350,000 | 2,625,000 |
| 81 | 1 | 1,000,000 | 2,500,000 |
| 155 | 1 | 1,200,000 | 2,400,000 |
| 124 | 3 | 1,450,000 | 2,330,500 |
| 114 | 4 | 550,000 | 2,300,000 |
| 31 | 1 | 650,000 | 2,275,000 |
| 72 | 1 | 1,000,000 | 2,250,000 |
| 14 | 4 | 410,000 | 2,030,000 |
| 33 | 2 | 600,000 | 2,000,000 |
| 57 | 2 | 400,000 | 1,900,000 |
| 164 | 1 | 300,000 | 1,620,000 |
| 86 | 4 | 775,000 | 1,550,000 |
| 104 | 1 | 1,000,000 | 1,500,000 |
| 113 | 1 | 1,000,000 | 1,500,000 |
| 75 | 1 | 500,000 | 1,500,000 |
| 129 | 1 | 200,000 | 1,400,000 |
| 22 | 2 | 300,000 | 1,200,000 |
| 138 | 1 | 300,000 | 1,200,000 |
| 82 | 1 | 150,000 | 1,200,000 |
| 103 | 1 | 296,100 | 1,036,350 |
| 79 | 1 | 500,000 | 1,000,000 |
| 93 | 3 | 400,000 | 1,000,000 |
| 105 | 1 | 150,000 | 900,000 |
| 54 | 2 | 100,000 | 850,000 |
| 55 | 2 | 100,000 | 800,000 |
| 159 | 1 | 100,000 | 800,000 |
| 173 | 3 | 400,000 | 750,000 |
| 46 | 1 | 150,000 | 750,000 |
| 40 | 1 | 125,000 | 750,000 |
| 67 | 4 | 200,000 | 700,000 |
| 98 | 2 | 250,000 | 650,000 |
| 53 | 1 | 100,000 | 650,000 |
| 141 | 3 | 120,000 | 640,000 |
| 3 | 1 | 300,000 | 600,000 |
| 5 | 2 | 300,000 | 600,000 |
| 37 | 1 | 300,000 | 600,000 |
| 9a | 2 | 300,000 | 600,000 |

**Theia Receivership**                                          **Schedule 1.01(ll)**

**Friends and Family Notes Purchased by Rising Sky**

| Investor Number | # of Notes | Cumulative Principal | Amount Due |
|---|---|---|---|
| 29 | 1 | 200,000 | 600,000 |
| 144 | 2 | 275,000 | 562,500 |
| 96 | 2 | 100,000 | 550,000 |
| 6 | 2 | 300,000 | 500,000 |
| 56 | 1 | 100,000 | 500,000 |
| 142 | 2 | 200,000 | 480,000 |
| 175 | 3 | 100,750 | 477,250 |
| 61 | 2 | 200,000 | 450,000 |
| 106 | 1 | 150,000 | 450,000 |
| 170 | 3 | 150,000 | 450,000 |
| 112 | 1 | 200,000 | 440,000 |
| 58 | 4 | 115,000 | 435,000 |
| 4 | 1 | 200,000 | 400,000 |
| 26 | 1 | 200,000 | 400,000 |
| 150 | 1 | 170,000 | 340,000 |
| 11 | 2 | 100,000 | 316,500 |
| 97 | 2 | 100,000 | 300,000 |
| 9b | 1 | 100,000 | 300,000 |
| 101 | 1 | 50,000 | 300,000 |
| 27 | 2 | 125,000 | 250,000 |
| 139 | 3 | 125,000 | 250,000 |
| 118 | 1 | 50,000 | 250,000 |
| 10 | 2 | 35,000 | 240,000 |
| 179 | 7 | 95,000 | 235,000 |
| 128 | 1 | 150,000 | 225,000 |
| 177 | 1 | 50,000 | 225,000 |
| 180 | 1 | 50,000 | 225,000 |
| 143 | 1 | 105,000 | 210,000 |
| 100 | 1 | 100,000 | 200,000 |
| 121 | 1 | 100,000 | 200,000 |
| 153 | 1 | 100,000 | 200,000 |
| 161 | 1 | 100,000 | 200,000 |
| 168 | 1 | 100,000 | 200,000 |
| 154 | 2 | 75,000 | 200,000 |
| 17 | 1 | 50,000 | 200,000 |
| 18 | 1 | 50,000 | 200,000 |
| 45 | 1 | 50,000 | 200,000 |
| 95 | 1 | 25,000 | 200,000 |
| 42 | 1 | 96,300 | 192,600 |
| 23 | 1 | 50,000 | 150,000 |
| 84 | 1 | 50,000 | 150,000 |
| 119 | 1 | 50,000 | 150,000 |
| 78 | 1 | 30,000 | 150,000 |
| 62 | 1 | 50,000 | 125,000 |
| 41 | 2 | 50,000 | 121,500 |
| 24 | 1 | 50,000 | 110,000 |
| 20 | 1 | 50,000 | 100,000 |
| 34 | 1 | 50,000 | 100,000 |
| 77 | 1 | 50,000 | 100,000 |
| 94 | 1 | 50,000 | 100,000 |

# Theia Receivership

## Schedule 1.01(ll)

### Friends and Family Notes Purchased by Rising Sky

| Investor Number | # of Notes | Cumulative Principal | Amount Due |
|---|---|---|---|
| 102 | 1 | 50,000 | 100,000 |
| 145 | 1 | 50,000 | 100,000 |
| 181 | 1 | 50,000 | 100,000 |
| 184 | 1 | 50,000 | 100,000 |
| 49 | 1 | 25,000 | 100,000 |
| 89 | 1 | 25,000 | 100,000 |
| 91 | 1 | 25,000 | 100,000 |
| 160 | 1 | 25,000 | 100,000 |
| 7 | 1 | 20,000 | 100,000 |
| 12 | 1 | 30,000 | 90,000 |
| 13 | 1 | 30,000 | 90,000 |
| 15 | 1 | 30,000 | 90,000 |
| 30 | 1 | 40,000 | 80,000 |
| 157 | 1 | 25,000 | 80,000 |
| 158 | 1 | 25,000 | 80,000 |
| 99 | 1 | 50,000 | 75,000 |
| 185 | 1 | 50,000 | 75,000 |
| 8 | 1 | 25,000 | 75,000 |
| 48 | 1 | 25,000 | 75,000 |
| 51 | 1 | 25,000 | 75,000 |
| 52 | 1 | 25,000 | 75,000 |
| 131 | 1 | 25,000 | 75,000 |
| 165 | 2 | 35,000 | 70,000 |
| 182 | 1 | 35,000 | 70,000 |
| 36 | 1 | 50,000 | 66,500 |
| 39 | 1 | 25,000 | 55,000 |
| 134 | 1 | 85,000 | 50,000 |
| 38 | 1 | 25,000 | 50,000 |
| 66 | 1 | 25,000 | 50,000 |
| 88 | 1 | 25,000 | 50,000 |
| 90 | 1 | 25,000 | 50,000 |
| 171 | 1 | 25,000 | 50,000 |
| 176 | 1 | 15,000 | 45,000 |
| 137 | 1 | 20,000 | 44,000 |
| 120 | 1 | 20,000 | 40,000 |
| 50 | 1 | 10,000 | 40,000 |
| 172 | 1 | 15,000 | 30,000 |
| 47 | 1 | 10,000 | 30,000 |
| 149 | 1 | 10,000 | 20,000 |
| 109 | 1 | 5,000 | 15,000 |
| 110 | 1 | 5,000 | 15,000 |
| 111 | 1 | 5,000 | 15,000 |
| 80 | 1 | 5,000 | 10,000 |
| 85 | 1 | 5,000 | 10,000 |
| 127 | 1 | 2,000 | 2,660 |
| | **223** | **$ 64,478,179** | **$ 175,082,363** |

**EXECUTION COPY**

**SCHEDULE 1.01(rr)**

**"INTELLECTUAL PROPERTY ASSETS"**

All patents, licenses, and trademarks owned by Sellers as set forth on the attached.

**LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS
WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM**

| Abstract - Summary | Country | Application No. | Status |
|---|---|---|---|
| A system for re-using GEO-allocated communications spectrum in a LEO satellite constellation based communications system, such that the LEO satellite originated signals will not appear in the beam-width of GEO-pointed earth station antennas, and satellites configured to provide communications by manipulating their respective beam transmissions, which may include a forward beam and rearward beam whose angles are controlled to project the beam and reduce or eliminate the potential for interference with GEO-pointed earth station antennas. The system and LEO satellites may provide substantially 100% coverage of an earth station located anywhere on the surface of the earth, without coordination with the GEO satellites or GEO-pointing ground stations. The system also may provide earth stations that are configured to enhance the isolation between the GEO communications system and the LEO communications system using the same spectrum to reduce the potential for GEO-pointed earth station antennas from picking up the LEO communication. | US | 15/585818 | Issued - US 10,348,396 |
| | ISRAEL | 262694 | Granted - IL 262694 B |
| | CANADA | 3022513 | Pending |
| | THAILAND | 1801006767 | Pending |
| | MEXICO | MX/a/2018/013489 | Pending |
| | RUSSIAN FED. | 2018140570 | Granted - RU2730169 |
| | BRAZIL | 11 2018 072637-0 | Granted - BR 11 2018 072637 |
| | JAPAN | 2018-558317 | Granted - JP6896982 |
| | CHINA | 201780041978.4 | Granted - CN109417827B |
| | INDIA | IN201837045587 | Pending |
| | SINGAPORE | 11201809489W | Pending |
| | AUSTRALIA | 2017260347 | Granted - AU 2017260347 |
| | AUSTRALIA | 2022200377 | (Divisional) Pending |
| | KOREA | 10-2018-7035041 | Granted - KR102165365 |

| | HONG KONG | 19128790.3 | Granted - HK 19128790.3 |
|---|---|---|---|
| | BELGIUM | 17793256.3 | Granted (and Validated) |
| | GERMANY | 17793256.3 | Granted (and Validated) |
| | FRANCE | 17793256.3 | Granted (and Validated) |
| | LUXEMBOURG | 17793256.3 | Granted (and Validated) |
| | NETHERLANDS | 17793256.3 | Granted (and Validated) |
| | SWITZERLAND | 17793256.3 | Granted (and Validated) |
| | UNITED KINGDOM | 17793256.3 | Granted (and Validated) |
| | SWEDEN | 17793256.3 | Granted (and Validated) |
| | ITALY | 17793256.3 | Granted (and Validated) |
| | AUSTRIA | 17793256.3 | Granted (and Validated) |
| | LIECHTENSTEIN | 17793256.3 | Granted (and Validated) |
| | GREECE | 17793256.3 | Granted (and Validated) |
| | SPAIN | 17793256.3 | Granted (and Validated) |
| | DENMARK | 17793256.3 | Granted (and Validated) |
| | MONACO | 17793256.3 | Granted (and Validated) |
| | PORTUGAL | 17793256.3 | Granted (and Validated) |
| | IRELAND | 17793256.3 | Granted (and Validated) |

| | FINLAND | 17793256.3 | Granted (and Validated) |
|---|---|---|---|
| | CYPRUS | 17793256.3 | Granted (and Validated) |
| | TURKEY | 17793256.3 | Granted (and Validated) |
| | BULGARIA | 17793256.3 | Granted (and Validated) |
| | CZECH REPUBLIC | 17793256.3 | Granted (and Validated) |
| | ESTONIA | 17793256.3 | Granted (and Validated) |
| | SLOVAKIA | 17793256.3 | Granted (and Validated) |
| | SLOVENIA | 17793256.3 | Granted (and Validated) |
| | HUNGARY | 17793256.3 | Granted (and Validated) |
| | ROMANIA | 17793256.3 | Granted (and Validated) |
| | POLAND | 17793256.3 | Granted (and Validated) |
| | ICELAND | 17793256.3 | Granted (and Validated) |
| | LITHUANIA | 17793256.3 | Granted (and Validated) |
| | LATVIA | 17793256.3 | Granted (and Validated) |
| | MALTA | 17793256.3 | Granted (and Validated) |
| | CROATIA | 17793256.3 | Granted (and Validated) |
| | NORWAY | 17793256.3 | Granted (and Validated) |
| | NORTH MACEDONIA | 17793256.3 | Granted (and Validated) |

|  | SAN MARINO | 17793256.3 | Granted (and Validated) |
|---|---|---|---|
|  | ALBANIA | 17793256.3 | Granted (and Validated) |
|  | SERBIA | 17793256.3 | Granted (and Validated) |

### SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY

| Abstract - Summary | Country | Application No. | Status |
|---|---|---|---|
| A system for digitizing gauges, lights and other human-readable machine gauges and functions and status without interfering with the operation of the machine or requiring reworking or interfering with the existing machine wiring, signaling, electrical or mechanical elements or operating modes, or adding new digitizing equipment to the machine. | US | 15/610057 | Issued - 11,328,162 |
|  | US | 17/739587 | Pending (Continuation) |
|  | ISRAEL | 263244 | Pending-Allowed |
|  | ISRAEL | (263244) | Pending (Divisional) |
|  | CANADA | 3025362 | Pending |
|  | THAILAND | 1801007305 | Pending |
|  | MEXICO | MX/a/2018/014739 | Pending |
|  | RUSSIAN FED. | 2018143512 | Granted RU 2772837 C2 |
|  | BRAZIL | 112018074740-8 | Pending |
|  | JAPAN | 2018-562335 | Patented - JP 7116448 B2 |
|  | JAPAN | 2022-116033 | Pending - (Divisional) |
|  | CHINA | 201780044671.X | Granted -CN 109479085 B |
|  | CHINA | 202210644262.6 | Pending - (Divisional) |
|  | INDIA | 201837045587 | Pending |
|  | SINGAPORE | 11201810480R | Granted - 11201810480R |
|  | AUSTRALIA | 2017273616 | Patented - AU 2017273616 B2 |
|  | AUSTRALIA | 2022206794 | Pending (Divisional) |

| | | | |
|---|---|---|---|
| | KOREA | 10-2018-7038060 | Pending |
| | HONG KONG | 19129017.0 | Pending |
| | BELGIUM | 17807419.1 | Pending |
| | GERMANY | 17807419.1 | Pending |
| | FRANCE | 17807419.1 | Pending |
| | LUXEMBOURG | 17807419.1 | Pending |
| | NETHERLANDS | 17807419.1 | Pending |
| | SWITZERLAND | 17807419.1 | Pending |
| | UNITED KINGDOM | 17807419.1 | Pending |
| | SWEDEN | 17807419.1 | Pending |
| | ITALY | 17807419.1 | Pending |
| | AUSTRIA | 17807419.1 | Pending |
| | LIECHTENSTEIN | 17807419.1 | Pending |
| | GREECE | 17807419.1 | Pending |
| | SPAIN | 17807419.1 | Pending |
| | DENMARK | 17807419.1 | Pending |
| | MONACO | 17807419.1 | Pending |
| | PORTUGAL | 17807419.1 | Pending |
| | IRELAND | 17807419.1 | Pending |
| | FINLAND | 17807419.1 | Pending |
| | CYPRUS | 17807419.1 | Pending |
| | TURKEY | 17807419.1 | Pending |
| | BULGARIA | 17807419.1 | Pending |
| | CZECH REPUBLIC | 17807419.1 | Pending |
| | ESTONIA | 17807419.1 | Pending |
| | SLOVAKIA | 17807419.1 | Pending |
| | SLOVENIA | 17807419.1 | Pending |
| | HUNGARY | 17807419.1 | Pending |

| | ROMANIA | 17807419.1 | Pending |
|---|---|---|---|
| | POLAND | 17807419.1 | Pending |
| | ICELAND | 17807419.1 | Pending |
| | LITHUANIA | 17807419.1 | Pending |
| | LATVIA | 17807419.1 | Pending |
| | MALTA | 17807419.1 | Pending |
| | CROATIA | 17807419.1 | Pending |
| | NORWAY | 17807419.1 | Pending |
| | NORTH MACEDONIA | 17807419.1 | Pending |
| | SAN MARINO | 17807419.1 | Pending |
| | ALBANIA | 17807419.1 | Pending |
| | SERBIA | 17807419.1 | Pending |

| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | | | |
|---|---|---|---|
| *Abstract - Summary* | *Country* | *Application No.* | *Status* |
| A system, method and device for monitoring an aircraft, including activity taking place within an aircraft and conditions of the aircraft, where one or more a percepting component such as a camera, microphone, or other sensor, is situated at a location within the aircraft from which information may be ascertained. Preferably the component is disguised within the surfaces or instrumentation of the aircraft. The percepting component is connected with a communication mechanism to transmit communications from the system resident within the aircraft to a grounds portion of the system through a | US | 16/608167 | Pending - Allowed |
| | US | 17/941,176 | Pending - Divisional |
| | ISRAEL | 270042 | Pending |
| | CANADA | 3060108 | Pending |
| | THAILAND | 1901006727 | Pending |
| | MEXICO | MX/a/2019/012692 | Pending |
| | RUSSIAN FED. | 2019137121 | Pending - Allowed |
| | BRAZIL | BR 11 2019 021927-7 | Pending |
| | JAPAN | 2019-557582 | Granted - JP 7116449 B2 |
| | JAPAN | 2022-141854 | Pending - Divisional |

| communication link, such as a satellite communication link. The system may process the information corresponding with the aircraft condition or activity and generate alerts when a trigger is met or exceeded. The system components on the aircraft may monitor conditions and activity without using or interfering with the aircraft instrumentation, the system using only the aircraft power. | CHINA | 201880027333.X | Pending |
| | INDIA | 201937046971 | Pending |
| | SINGAPORE | 11201909526U | Pending |
| | AUSTRALIA | 2018260589 | Pending |
| | HONG KONG | 62020015084 | Pending |
| | KOREA | KR20200002964A | Pending |
| | BELGIUM | 18791594.7 | Pending |
| | GERMANY | 18791594.7 | Pending |
| | FRANCE | 18791594.7 | Pending |
| | LUXEMBOURG | 18791594.7 | Pending |
| | NETHERLANDS | 18791594.7 | Pending |
| | SWITZERLAND | 18791594.7 | Pending |
| | UNITED KINGDOM | 18791594.7 | Pending |
| | SWEDEN | 18791594.7 | Pending |
| | ITALY | 18791594.7 | Pending |
| | AUSTRIA | 18791594.7 | Pending |
| | LIECHTENSTEIN | 18791594.7 | Pending |
| | GREECE | 18791594.7 | Pending |
| | SPAIN | 18791594.7 | Pending |
| | DENMARK | 18791594.7 | Pending |
| | MONACO | 18791594.7 | Pending |
| | PORTUGAL | 18791594.7 | Pending |
| | IRELAND | 18791594.7 | Pending |
| | FINLAND | 18791594.7 | Pending |
| | CYPRUS | 18791594.7 | Pending |
| | TURKEY | 18791594.7 | Pending |
| | BULGARIA | 18791594.7 | Pending |
| | CZECH REPUBLIC | 18791594.7 | Pending |

| | ESTONIA | 18791594.7 | Pending |
| --- | --- | --- | --- |
| | SLOVAKIA | 18791594.7 | Pending |
| | SLOVENIA | 18791594.7 | Pending |
| | HUNGARY | 18791594.7 | Pending |
| | ROMANIA | 18791594.7 | Pending |
| | POLAND | 18791594.7 | Pending |
| | ICELAND | 18791594.7 | Pending |
| | LITHUANIA | 18791594.7 | Pending |
| | LATVIA | 18791594.7 | Pending |
| | MALTA | 18791594.7 | Pending |
| | CROATIA | 18791594.7 | Pending |
| | NORWAY | 18791594.7 | Pending |
| | NORTH MACEDONIA | 18791594.7 | Pending |
| | SAN MARINO | 18791594.7 | Pending |
| | ALBANIA | 18791594.7 | Pending |
| | SERBIA | 18791594.7 | Pending |

**SYSTEM FOR ESTIMATING WIRELESS NETWORK LOAD AND PROACTIVELY ADJUSTING APPLICATIONS TO MINIMIZE WIRELESS NETWORK OVERLOAD PROBABILITY AND MAXIMIZE SUCCESSFUL APPLICATION OPERATION**

| Abstract - Summary | Country | Application No. | Status |
| --- | --- | --- | --- |
| Systems, methods and devices for managing communications across a wireless network to maximize the operations for transmission and utilization of the network or portions thereof in conjunction with wireless devices and applications that involve communication of information over a wireless network by evaluating the existing load on the wireless network and modifying or reducing the | US | 15/884670 | Issued - US 10,412,630 |

| forthcoming demand of a mobile device using the network. A management server on the wireless network utilizes information about a wireless device communication to generate an estimate of the remaining unused or available upload capacity of that portion of the wireless network serving the particular wireless mobile device. The wireless mobile device applications that utilize network communications may be regulated to adjust their operations to function within the reduced network capacity. | | | |
|---|---|---|---|

### RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS

| Abstract - Summary | Country | Application No. | Status |
|---|---|---|---|
| A radar system for tracking UAVs and other low flying objects utilizing wireless networking equipment is provided. The system is implemented as a distributed low altitude radar system where transmitting antennas are coupled with the wireless networking equipment to radiate signals in a skyward direction. A receiving antenna or array receives signals radiated from the transmitting antenna, and in particular, signals or echoes reflected from the object in the skyward detection region. One or more processing components is electronically coupled with the wireless networking equipment and receiving antenna to receive and manipulate signal information to provide recognition of and track low flying objects and their movement within the coverage region. The | US | 15/608612 | Issued - 11,294,048 |
| | US | 17/713117 | Pending (Continuation) |
| | ISRAEL | 263313 | Pending - Allowed |
| | ISRAEL | 295502 | Pending - Divisional |
| | CANADA | 3025355 | Pending |
| | THAILAND | 1801007306 | Pending |
| | MEXICO | 20180014569 | Pending |
| | RUSSIAN FED. | 2018143511 | Granted - 2737058C2 |

| system may provide detection of objects throughout a plurality of regions by networking regional nodes, and aggregating the information to detect and track UAVs and other low flying objects as they move within the detection regions. | BRAZIL | 11 2018 074384-4 | Pending |
| --- | --- | --- | --- |
| | JAPAN | 2018-562036 | Granted - JP 7036744 |
| | CHINA | 20178044315 | Granted - CN 109478375 |
| | CHINA | 202211006541.6 | Pending - Divisional |
| | INDIA | 201837049014 | Pending |
| | SINGAPORE | 11201810483Q | Pending - Allowed |
| | SINGAPORE | 10202251240X | Pending - Divisional |
| | AUSTRALIA | 2017270593 | Pending |
| | KOREA | 20187036739 | Granted - KR102244863B1 |
| | HONG KONG | 19128899.2 | Pending |
| | BELGIUM | 17 803 755.2 | Pending |
| | GERMANY | 17 803 755.2 | Pending |
| | FRANCE | 17 803 755.2 | Pending |
| | LUXEMBOURG | 17 803 755.2 | Pending |
| | NETHERLANDS | 17 803 755.2 | Pending |
| | SWITZERLAND | 17 803 755.2 | Pending |
| | UNITED KINGDOM | 17 803 755.2 | Pending |
| | SWEDEN | 17 803 755.2 | Pending |

| | ITALY | 17 803 755.2 | Pending |
|---|---|---|---|
| | AUSTRIA | 17 803 755.2 | Pending |
| | LIECHTENSTEIN | 17 803 755.2 | Pending |
| | GREECE | 17 803 755.2 | Pending |
| | SPAIN | 17 803 755.2 | Pending |
| | DENMARK | 17 803 755.2 | Pending |
| | MONACO | 17 803 755.2 | Pending |
| | PORTUGAL | 17 803 755.2 | Pending |
| | IRELAND | 17 803 755.2 | Pending |
| | FINLAND | 17 803 755.2 | Pending |
| | CYPRUS | 17 803 755.2 | Pending |
| | TURKEY | 17 803 755.2 | Pending |
| | BULGARIA | 17 803 755.2 | Pending |
| | CZECH REPUBLIC | 17 803 755.2 | Pending |
| | ESTONIA | 17 803 755.2 | Pending |
| | SLOVAKIA | 17 803 755.2 | Pending |
| | SLOVENIA | 17 803 755.2 | Pending |
| | HUNGARY | 17 803 755.2 | Pending |

| | ROMANIA | 17 803 755.2 | Pending |
| --- | --- | --- | --- |
| | POLAND | 17 803 755.2 | Pending |
| | ICELAND | 17 803 755.2 | Pending |
| | LITHUANIA | 17 803 755.2 | Pending |
| | LATVIA | 17 803 755.2 | Pending |
| | MALTA | 17 803 755.2 | Pending |
| | CROATIA | 17 803 755.2 | Pending |
| | NORWAY | 17 803 755.2 | Pending |
| | NORTH MACEDONIA | 17 803 755.2 | Pending |
| | SAN MARINO | 17 803 755.2 | Pending |
| | ALBANIA | 17 803 755.2 | Pending |
| | SERBIA | 17 803 755.2 | Pending |

**SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS**

| *Abstract - Summary* | *Country* | *Application No.* | *Status* |
| --- | --- | --- | --- |
| | US | 16/094297 | Issued - US 11137753 |

| | | | |
|---|---|---|---|
| A system for RF communications with UAVs which includes two distinct frequency bands, one for optional use to support datagrams between a UAV payload and a computer or controller and a second RF communications band dedicated to command and control and navigation datagrams transception between the UAV and a host controller or control network. Embodiments of the system are implemented to cover, with regard to the second RF communications sub-system, a large region suitable for enabling communications with a number of UAVs by creating a skyward projected cell system, and dividing its frequency range into sub-channels, where sub-bands into which the frequency range may be divided may be used in a re-use scheme. | RUSSIAN FED. | 2018137880 | Granted - RU 2733905C2 |
| | JAPAN | 2019-505349 | Granted -  JP 7121372 B2 |
| | JAPAN | 2022-120005 | Pending - Divisional |
| | CHINA | 20178034674 | Pending |
| | INDIA | 201837043271 | Pending |
| | HONG KONG |  19128717.6 | Pending |
| | BELGIUM | 20170786815 | Pending |
| | GERMANY | 20170786815 | Pending |
| | FRANCE | 20170786815 | Pending |
| | LUXEMBOURG | 20170786815 | Pending |
| | NETHERLANDS | 20170786815 | Pending |
| | SWITZERLAND | 20170786815 | Pending |
| | UNITED KINGDOM | 20170786815 | Pending |
| | SWEDEN | 20170786815 | Pending |
| | ITALY | 20170786815 | Pending |
| | AUSTRIA | 20170786815 | Pending |
| | LIECHTENSTEIN | 20170786815 | Pending |
| | GREECE | 20170786815 | Pending |

| | SPAIN | 20170786815 | Pending |
|---|---|---|---|
| | DENMARK | 20170786815 | Pending |
| | MONACO | 20170786815 | Pending |
| | PORTUGAL | 20170786815 | Pending |
| | IRELAND | 20170786815 | Pending |
| | FINLAND | 20170786815 | Pending |
| | CYPRUS | 20170786815 | Pending |
| | TURKEY | 20170786815 | Pending |
| | BULGARIA | 20170786815 | Pending |
| | CZECH REPUBLIC | 20170786815 | Pending |
| | ESTONIA | 20170786815 | Pending |
| | SLOVAKIA | 20170786815 | Pending |
| | SLOVENIA | 20170786815 | Pending |
| | HUNGARY | 20170786815 | Pending |
| | ROMANIA | 20170786815 | Pending |
| | POLAND | 20170786815 | Pending |
| | ICELAND | 20170786815 | Pending |
| | LITHUANIA | 20170786815 | Pending |

| | | | |
|---|---|---|---|
| | LATVIA | 20170786815 | Pending |
| | MALTA | 20170786815 | Pending |
| | CROATIA | 20170786815 | Pending |
| | NORWAY | 20170786815 | Pending |
| | NORTH MACEDONIA | 20170786815 | Pending |
| | SAN MARINO | 20170786815 | Pending |
| | ALBANIA | 20170786815 | Pending |
| | SERBIA | 20170786815 | Pending |

### SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES

| Abstract - Summary | Country | Application No. | Status |
|---|---|---|---|
| A system for verifying the integrity of unmanned aerial vehicles (UAVs), which is configured to reside in a UAV and interface with both the communications system of the UAV and the UAV's software and hardware resources. The UAV may be configured to execute firmware that obtains a serial number or unique identifier of hardware and software on the UAV, creates a hash code combination of such unique identifiers, encrypts the hash code, | US | 16/093897 | Pending |
| | RUSSIAN FED. | 2018137854 | Granted - RU2721185 C2 |
| | JAPAN | 2018-554366 | Pending |
| | CHINA | 201780034800 | Pending |
| | INDIA | 201837042699 | Pending |

| transmits the encrypted hash code over a wired or wireless communications system to another computer which maintains a table of the certified codes of each UAV which results in the computer authenticating the specific UAV (or not). The system also may determine whether a specific UAV's hardware or software has been changed since the UAV was last certified. | HONG KONG | 19128459.5 | Pending |
| | BELGIUM | 17 783 379.5 | Pending |
| | GERMANY | 17 783 379.5 | Pending |
| | FRANCE | 17 783 379.5 | Pending |
| | LUXEMBOURG | 17 783 379.5 | Pending |
| | NETHERLANDS | 17 783 379.5 | Pending |
| | SWITZERLAND | 17 783 379.5 | Pending |
| | UNITED KINGDOM | 17 783 379.5 | Pending |
| | SWEDEN | 17 783 379.5 | Pending |
| | ITALY | 17 783 379.5 | Pending |
| | AUSTRIA | 17 783 379.5 | Pending |
| | LIECHTENSTEIN | 17 783 379.5 | Pending |
| | GREECE | 17 783 379.5 | Pending |
| | SPAIN | 17 783 379.5 | Pending |
| | DENMARK | 17 783 379.5 | Pending |
| | MONACO | 17 783 379.5 | Pending |
| | PORTUGAL | 17 783 379.5 | Pending |
| | IRELAND | 17 783 379.5 | Pending |

| | FINLAND | 17 783 379.5 | Pending |
|---|---|---|---|
| | CYPRUS | 17 783 379.5 | Pending |
| | TURKEY | 17 783 379.5 | Pending |
| | BULGARIA | 17 783 379.5 | Pending |
| | CZECH REPUBLIC | 17 783 379.5 | Pending |
| | ESTONIA | 17 783 379.5 | Pending |
| | SLOVAKIA | 17 783 379.5 | Pending |
| | SLOVENIA | 17 783 379.5 | Pending |
| | HUNGARY | 17 783 379.5 | Pending |
| | ROMANIA | 17 783 379.5 | Pending |
| | POLAND | 17 783 379.5 | Pending |
| | ICELAND | 17 783 379.5 | Pending |
| | LITHUANIA | 17 783 379.5 | Pending |
| | LATVIA | 17 783 379.5 | Pending |
| | MALTA | 17 783 379.5 | Pending |
| | CROATIA | 17 783 379.5 | Pending |
| | NORWAY | 17 783 379.5 | Pending |
| | NORTH MACEDONIA | 17 783 379.5 | Pending |

| | | | |
|---|---|---|---|
| | SAN MARINO | 17 783 379.5 | Pending |
| | ALBANIA | 17 783 379.5 | Pending |
| | SERBIA | 17 783 379.5 | Pending |

### SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES

| Abstract - Summary | Country | Application No. | Status |
|---|---|---|---|
| A cellular type communications system for cellular telephone networks to operate, control and communicate with unmanned aerial vehicles and remote piloted vehicles, the system including a first near-ground region to communicate with devices near the ground, as well as one or more layers covering roughly the same areal extent as the ground region but which are separated from each other and also elevated above ground substantially, and within which an aerial vehicle may rely on communications using the cell-based communications network. | US | 15/906540 | Issued - US 10,897,304 |
| | US | 17/151,350 | Pending - Allowed |
| | RUSSIAN FED. | 2018108416 | Granted - RU2729607 |
| | JAPAN | 2018-512208 | Granted - 6794434 |
| | JAPAN | 2020-188364 | Granted - 7012804 |
| | CHINA | 201680050801.6 | Granted - CN107925880B |
| | INDIA | 201837012107 | Pending |
| | EUROPE | 16843096.5 | Pending |
| | BELGIUM | 16843096.5 | Pending |

| | GERMANY | 16843096.5 | Pending |
|---|---|---|---|
| | FRANCE | 16843096.5 | Pending |
| | LUXEMBOURG | 16843096.5 | Pending |
| | NETHERLANDS | 16843096.5 | Pending |
| | SWITZERLAND | 16843096.5 | Pending |
| | UNITED KINGDOM | 16843096.5 | Pending |
| | SWEDEN | 16843096.5 | Pending |
| | ITALY | 16843096.5 | Pending |
| | AUSTRIA | 16843096.5 | Pending |
| | LIECHTENSTEIN | 16843096.5 | Pending |
| | GREECE | 16843096.5 | Pending |
| | SPAIN | 16843096.5 | Pending |
| | DENMARK | 16843096.5 | Pending |
| | MONACO | 16843096.5 | Pending |
| | PORTUGAL | 16843096.5 | Pending |
| | IRELAND | 16843096.5 | Pending |
| | FINLAND | 16843096.5 | Pending |
| | CYPRUS | 16843096.5 | Pending |

| | TURKEY | 16843096.5 | Pending |
|---|---|---|---|
| | BULGARIA | 16843096.5 | Pending |
| | CZECH REPUBLIC | 16843096.5 | Pending |
| | ESTONIA | 16843096.5 | Pending |
| | SLOVAKIA | 16843096.5 | Pending |
| | SLOVENIA | 16843096.5 | Pending |
| | HUNGARY | 16843096.5 | Pending |
| | ROMANIA | 16843096.5 | Pending |
| | POLAND | 16843096.5 | Pending |
| | ICELAND | 16843096.5 | Pending |
| | LITHUANIA | 16843096.5 | Pending |
| | LATVIA | 16843096.5 | Pending |
| | MALTA | 16843096.5 | Pending |
| | CROATIA | 16843096.5 | Pending |
| | NORWAY | 16843096.5 | Pending |
| | NORTH MACEDONIA | 16843096.5 | Pending |
| | SAN MARINO | 16843096.5 | Pending |
| | ALBANIA | 16843096.5 | Pending |

| | SERBIA | 16843096.5 | Pending |
|---|---|---|---|

EXECUTION COPY

**SCHEDULE 1.01(kkk)**

**"TANGIBLE PERSONAL PROPERTY"**

**OFFICE FURNITURE, OFFICE EQUIPMENT AND ELECTRONIC DEVICES**

1. **Willard Office Building, 1455 Pennsylvania Avenue, Suite 600, Washington, D.C.**

   - Office Chairs
     - Aeron (1)
     - Freedom (9)
     - Leather Conference Room Chair (26)
     - Office Chair (no wheels) (9)
   - APC Uninterruptible Power Supplies (In Box) Model SRT-3000 (2)

2. **Willard Office Building, 1455 Pennsylvania Avenue, Suite 800, Washington, D.C.**

   - Office Chairs
     - Aeron (21)
     - Freedom (22)
     - Leather Conference Room Chair (21)
     - Office Chair (no wheels) (17)
     - Hightop Café Chair (15)
     - Lowtop Café Chair (4)

   - TrippLite Uninterruptible Power Supplies Model BP24V15RT2U (2)
   - Crown CDi-1000 audio amplifier (1)
   - Dell Inspiron 3670 Desktop Computer (1)
   - TP Link Smart Switch Model TL-SG1016PE (1)
   - APC UPS – XS-1500 (1)
   - Crestron 3 Series Switch (1)
   - London Soundweb BLU-50 Network Audio Device (1)
   - Aruba Wireless Extender (1)
   - Vaddio One Link Bridge – model 998-9595 (1)
   - DLink Router Model VGS-1210 (1)

3. **Oso Grande, New Mexico Storage**

   - Server (5)

4. **B. Riley**

   - Lenovo Server (1)
   - Hard Drive (4)
   - NUC desktop mini computer (2)

**EXECUTION COPY**

- Apple i-Pad mini (3)
- Apple iPhone (1)

5.  **Riverside, California Hangar [ADDRESS]**

- See Separate Schedule.

**EXECUTION COPY**

**SCHEDULE 2.07**

**ALLOCATION SCHEDULE**

To be agreed upon by Buyer and Sellers.

**EXECUTION COPY**

**EXHIBIT A**

<u>Bill of Sale, Assignment and Assumption of Contracts and Assumed Liabilities</u>

(Attached)

### BILL OF SALE, ASSIGNMENT AND ASSUMPTION OF
### CONTRACTS AND ASSUMED LIABILITIES

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION OF CONTRACTS AND ASSUMED LIABILITIES (this "**Agreement**") is made, executed and delivered as of [●], 2023, by and among by and among Theia Group, Inc. d/b/a "Thorian Group" and/or "Cypherian", a Delaware corporation ("**TGI**"), Theia Aviation, LLC, a Delaware limited liability company ("**TA**"), and Theia Holdings A, Inc. d/b/a "Thorian Holdings", a Delaware corporation ("**THA**," and together with TGI and TA, the "**Sellers**") and Rising Sky LLC, a Delaware limited liability company (together with its designees, "**Buyer**" and together with the Sellers, the "**Parties**").

### W I T N E S S E T H :

**WHEREAS**, pursuant to that certain Asset Purchase Agreement, dated as of October [●], 2022 (as amended, restated, or otherwise modified from time to time, the "**APA**"), by and among Buyer and Sellers, Sellers have agreed to sell to Buyer, and Buyer has agreed to purchase from Sellers, all of Sellers' rights, titles, and interests in, to and under the Acquired Assets (including, without limitation, the Assigned Contracts) and, in connection therewith, Buyer has agreed to assume the Assumed Liabilities; and

**WHEREAS**, the execution and delivery of this Agreement is contemplated by Section 2.10(a)(ii) and Section 2.10(b)(vii) of the APA; and

**NOW, THEREFORE**, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

1.    Defined Terms; Interpretation.  Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the APA.  This Agreement shall be interpreted in accordance with the rules of construction set forth in Section 7.10 of the APA.  This Agreement is delivered pursuant to and is in all respects subject to the terms and conditions of the APA, including the representations, warranties, covenants, agreements, and other terms and conditions set forth therein, are incorporated herein by reference.

2.    Sale, Assignment, and Assumption.  Subject to the terms and conditions of the APA, Sellers hereby sell, assign, transfer, convey, and deliver to Buyer, all of Sellers' rights, titles, and interests in, to and under the Acquired Assets free and clear of all Liens, Claims, and Indebtedness (other than Assumed Liabilities).  Subject to the terms and conditions of the APA, Buyer hereby accepts such sale, assignment, transfer, conveyance, and delivery of Sellers' rights, titles, and interests in, to, and under the Acquired Assets, and, in connection therewith, hereby assumes and agrees to perform and discharge as and when due the Assumed Liabilities.  The Parties agree that, notwithstanding anything to the contrary herein, Sellers do not sell, assign, transfer, convey, or deliver to Buyer any Excluded Assets and Buyer does not assume or agree to perform or discharge as and when due any Excluded Liabilities.

3.    As is, where is.  Buyer acknowledges, agrees, warrants and represents that (a) Sellers are selling, and Buyer is purchasing the Acquired Assets on an "**AS-IS, WHERE-IS, WITH ALL FAULTS, AND WITHOUT RECOURSE TO SELLER**" basis based solely on Buyer's own investigation of the Acquired Assets and (b) neither Sellers nor any of their respective Representatives has made any warranties, representations or guarantees, express, implied or statutory, written or oral, respecting the Acquired Assets

or any part of the Acquired Assets, except as set forth in this Agreement, the Ancillary Documents or the APA.  Buyer agrees, warrants, and represents that, except for the representations and warranties set forth in this Agreement, the Ancillary Documents or the APA, Buyer has relied, and shall rely, solely upon its own investigation of all such matters, and that Buyer assumes all risks with respect thereto.  **THE BUYER ACKNOWLEDGES AND AGREES THAT THE SELLERS ARE CONVEYING THE ACQUIRED ASSETS WITHOUT REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED AT COMMON LAW, BY STATUTE, OR OTHERWISE (ALL OF WHICH THE SELLERS HEREBY DISCLAIM), RELATING TO (I) TITLE, SUITABILITY OR ADEQUACY, (II) THE MERCHANTABILITY, DESIGN, OR QUALITY OF THE ACQUIRED ASSETS, (III) THE FITNESS OR QUALITY OF THE ACQUIRED ASSETS, (IV) COMPLIANCE WITH APPLICABLE LAWS, (V) ANY ESTIMATES OF THE VALUE OF THE ACQUIRED ASSETS OR FUTURE REVENUES GENERATED BY THE ACQUIRED ASSETS, (VI) CONTINUED FINANCIAL VIABILITY, INCLUDING PRESENT OR FUTURE VALUE OR ANTICIPATED INCOME OR PROFITS, (VII) THE CONTENT, CHARACTER OR NATURE OF ANY CHARTS OR STATEMENTS PREPARED BY THIRD PARTIES, (VIII) ANY OTHER MATERIALS OR INFORMATION THAT MAY HAVE BEEN MADE AVAILABLE OR COMMUNICATED TO THE BUYER OR ITS AFFILIATES, OR ITS OR THEIR EMPLOYEES, AGENTS, CONSULTANTS, REPRESENTATIVES OR ADVISORS IN CONNECTION WITH THE TRANSACTION OR ANY DISCUSSION OR PRESENTATION RELATING THERETO, OR (IX) ANY OTHER MATTER WHATSOEVER (INCLUDING THE ACCURACY OR COMPLETENESS OF ANY INFORMATION PROVIDED TO THE BUYER), IT BEING EXPRESSLY UNDERSTOOD AND AGREED BY THE PARTIES THAT THE BUYER WILL BE DEEMED TO BE OBTAINING THE ACQUIRED ASSETS IN THEIR PRESENT STATUS, CONDITION AND STATE OF REPAIR, "AS IS" AND WITH ALL FAULTS AND THAT THE BUYER HAS MADE OR CAUSED TO BE MADE SUCH INSPECTIONS AS THE BUYER DEEMS APPROPRIATE.**

4.      Terms of the APA.  This Agreement is subject to the terms and conditions of the APA, and nothing contained in this Agreement shall be deemed to modify, limit, expand, supersede, or amend any of the terms, conditions, limitations, obligations, agreements, covenants, or warranties of any Party contained in the APA.  In the event of any conflict or inconsistency between the terms of the APA and this Agreement, the terms of the APA shall govern and control.

5.      Entire Agreement.  This Agreement, the Ancillary Documents, and the APA contain the entire agreement between the Parties hereto with respect to the subject matter of this Agreement and supersede any and all prior or contemporaneous agreements and discussions, whether written or oral, express or implied.  The preamble and recitals appearing at the beginning of this Agreement are incorporated into its terms and conditions in full by this reference thereto.

6.      Indemnification.  Buyer hereby accepts the assignment of the Acquired Assets and agrees to assume and discharge, in accordance with the terms thereof, the Assumed Liabilities, whether arising prior to or after the date hereof.  Buyer agrees to indemnify and hold harmless Sellers, their respective partners, shareholders, members, managers, owners, and affiliates and their respective officers, managers, directors, employees, agents, and representatives from any cost, liability, damage, or expense (including attorneys' fees) arising out of or relating to Buyer's failure to perform any of the foregoing obligations.

7.      No Third-Party Beneficiaries.  This Agreement shall be binding upon and inure solely to the benefit of each Party hereto, and nothing herein, express or implied, is intended, or shall be construed, to confer upon any other Person any rights or remedies of any nature whatsoever under or by reason of this Agreement.

- 2 -

8.        Further Assurances.  The Sellers and the Buyer agrees to use their respective commercially reasonable efforts to take or cause to be taken such further action, to execute, deliver, and file or cause to be executed, delivered, and filed such further documents and instruments, as may be necessary or as may be reasonably requested in order to effectuate fully the purposes, terms, and conditions of this Agreement; *provided, however,* that Buyer, its successors, and assigns shall prepare, at Buyer's expense, all necessary documentation.

9.        Governing Law; Jurisdiction; WAIVER OF JURY TRIAL.

(a)        All issues and questions concerning the construction, validity, interpretation and enforceability of this Agreement and all claims or disputes arising hereunder, related hereto, or in connection herewith, whether purporting to sound in contract or tort, or at law or in equity, shall be governed by, and construed in accordance with, the Laws of the State of New York, without giving effect to any choice or conflict of Law provision or rule (whether of the State of New York or of any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of New York.

(b)        The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.  Accordingly, the Parties agree that the non-breaching Party or Parties shall be entitled to an injunction or injunctions to prevent breaches or threatened breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement exclusively in the United States District Court for the Southern District of New York, or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the Chancery Court of the State of Delaware or in the event (but only in the event) that such court does not have subject matter jurisdiction over such action or proceeding, in the United States District Court for the District of Delaware or another court sitting in the state of Delaware, this being in addition to any other remedy to which they are entitled at law or in equity.  In addition, each of the Parties to this Agreement irrevocably agrees that any legal action or proceeding with respect to this Agreement and the rights and obligations arising under this Agreement, or for recognition and enforcement of any judgment in respect of this Agreement and the rights and obligations arising under this Agreement brought by another Party to this Agreement or its successors or assigns, shall be brought and determined exclusively in accordance with this section.  Each of the Parties to this Agreement hereby irrevocably submits with regard to any such action or proceeding for itself and in respect of its property, generally and unconditionally, to the personal jurisdiction of the aforesaid courts and agrees that it will not bring any action relating to this Agreement or any of the Transactions contemplated by this Agreement in any court other than the aforesaid courts and in accordance with this section.  Each of the Parties to this Agreement hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any action or proceeding with respect to this Agreement, (a) any claim that it is not personally subject to the jurisdiction of the above-named courts for any reason other than the failure to comply with this section; (b) any claim that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise); and (c) to the fullest extent permitted by the Law, any claim that (i) the suit, action or proceeding in such court is brought in an inconvenient forum; (ii) the venue of such suit, action or proceeding is improper; or (iii) this Agreement, or the subject matter of this Agreement, may not be enforced in or by such courts.  Each of Sellers and Buyer hereby agrees that service of any process, summons, notice, or document by U.S. registered mail to the respective addresses set forth in the notice provision of this Agreement shall be effective service of process for any proceeding arising out of, relating to or in connection with this Agreement or the Transactions contemplated hereby.

(c)        EACH PARTY TO THIS AGREEMENT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY RIGHT

SUCH PARTY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION OR OTHER PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.  EACH PARTY HERETO CERTIFIES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF ANY ACTION, SUIT OR PROCEEDING, SEEK TO ENFORCE THE FOREGOING WAIVER, (II) EACH PARTY UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF THIS WAIVER, (III) EACH PARTY MAKES THIS WAIVER VOLUNTARILY AND (IV) EACH PARTY HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

10.     <u>Binding Effect</u>; <u>Amendment</u>.  This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.  Neither this Agreement, nor any term or provision hereof, may be amended, modified, superseded, or cancelled except by an instrument in writing signed by all Parties hereto.

11.     <u>Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes.

12.     <u>Successors and Assigns</u>.  This Agreement and the various rights and obligations arising hereunder shall inure to the benefit of and be binding upon Buyer and Sellers, and their respective successors and permitted assigns.

13.     <u>Assignment</u>.  Neither this Agreement nor any of the rights, interests, or obligations hereunder may be assigned in whole or in part (whether by operation of law or otherwise), without the prior written consent of Sellers.

14.     <u>Severability</u>.  If any part or provision of this Agreement is determined by a court of competent jurisdiction to be void, invalid, or unenforceable, the remainder of this Agreement shall remain in full force and effect.

[THE REMAINDER OF THIS PAGE HAS BEEN LEFT INTENTIONALLY BLANK.]

IN WITNESS WHEREOF, this Bill of Sale, Assignment and Assumption Contracts and Assumed Liabilities has been duly executed and delivered by a duly authorized representative of each of Sellers and Buyer as of the date first above written.

**BUYER**

RISING SKY LLC


By: _____
Name: Mitchell Adams
Title:

**SELLER**                                          **SELLER**

THEIA GROUP, INC.                            THEIA HOLDINGS A, INC.


By: _____     By:_____
Michael Fuqua                                Michael Fuqua
Title: Receiver                              Title: Receiver

**SELLER**

THEIA AVIATION, LLC


By:
_____
Michael Fuqua
Title: Receiver

**EXHIBIT B**

<u>Intellectual Property Assignments</u>

(Attached)

## ASSIGNMENT AGREEMENT FOR PATENTS AND PATENT APPLICATIONS

This Assignment Agreement is effective this ___ day of _____, 2023, by and between THEIA GROUP, INCORPORATED, a Delaware corporation, having an address of 3445 Peachtree Road NE, Suite 1225, Atlanta, GA 30326 ("ASSIGNOR") and RISING SKY, LLC, a Delaware limited liability company, having an address of 1001 4th Avenue, Suite 4330, Seattle, WA 98154 ("ASSIGNEE").

**WHEREAS,** ASSIGNOR is the owner of inventions relating to technologies (hereinafter the "Inventions") for which U.S. Patent Applications and U.S. Patents are pending and/or have issued, respectively, which are listed on EXHIBIT A hereto, and for which international and foreign (non-US) patent applications and patents are pending and/or have issued, respectively, which are listed on EXHIBIT B hereto (the patent applications and patents listed in EXHIBIT A and EXHIBIT B hereinafter being collectively referred to as "the Patent IP");

**WHEREAS,** ASSIGNOR desires to assign 100% undivided interest in said Inventions and the Patent IP, said applications disclosing any of the Inventions and any Letters Patent in the US and/or foreign patents, registrations, certificates or other designation of rights, which may be issued thereon, and whereas said ASSIGNEE is desirous of acquiring the entire right, title and interest in the same;

**NOW**, this indenture witnesseth, that for the sum of One Dollar ($1.00), and other good and valuable consideration, the receipt whereof is hereby acknowledged;

ASSIGNOR hereby assigns, sells, and transfers 100% undivided interest in said Patent IP, said Inventions, said applications, including any divisions, continuations, and continuations-in-part, reexaminations, extensions and substitutions thereof, including in the United States and in any country foreign thereto, and in and to any and all Letters Patent of the United States, and countries foreign thereto, including foreign patents, registrations, certificates or other designations of rights, Convention rights, and other benefits accruing or to accrue to it with respect to the filing of applications for patents or securing of patents in the United States and countries foreign thereto, unto said ASSIGNEE, the foregoing including the patents and patent applications listed on EXHIBIT A and EXHIBIT B;

And ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks to issue said United States Letters Patent to said Assignee, as assignee of the whole right, title, and interest thereto;

And ASSIGNOR hereby authorizes and requests the governing authority of any country foreign to the US, to issue said foreign patents, including foreign patents, registrations, certificates or other designations of rights, to said ASSIGNEE, as assignee of the whole right, title, and interest thereto.

And ASSIGNOR further agrees to execute all necessary and lawful future documents, including assignments in favor ASSIGNEE, or its designees, as ASSIGNEE or its assignees, and or successors and assigns, may from time-to-time present to ASSIGNOR in order to perfect title in said Invention, modifications, and improvements in said Invention, applications and Letters

1

Patent in the United States and countries foreign thereto, including foreign patents, registrations, certificates or other designations of rights;

The rights assigned and sold hereunder are being assigned and sold AS IS, WHERE IS and without representation, warranty or recourse of any kind.

And ASSIGNOR further agrees to sign and properly execute such necessary and lawful papers for application for foreign patents, for filing divisionals, continuations and continuations-in-part of said applications for patent, and/or, for obtaining any reissue or reissues, reexaminations, extensions and substitutions of any Letters Patent which have been granted or which may be granted for the aforesaid Inventions, as the Assignee thereof shall hereafter require and prepare at its own expense.

WHEREFORE, the Assignor and Assignee, intending to be legally bound, have set their hands and seals below.

**ASSIGNOR:**

THEIA GROUP, INCORPORATED

By: _____          _____
      (signature)                                                                              DATE

Name:_____Michael Fuqua_____
      (Print or type)

Title: <u>Receiver for Theia Group Incorporated</u>


**ASSIGNEE:**

RISING SKY, LLC

By: _____          _____
      (signature)                                                                              DATE

Name: :_____Mitchell Adams_____
      (Print or type)

Title: _____

# EXHIBIT A

## US PATENTS AND PATENT APPLICATIONS

## ISSUED US PATENTS AND APPLICATIONS

| Country | Patent No. | Application No(s). | Title |
|---|---|---|---|
| US | US 10,348,396 | 15/585818 62/331245 | LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM |
| US | US 11,328,162 | 15/610057 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| US | US 11,440,676 | 16/608167 62/489223 | RECORDING AND REAL-TIME TRASNMISSION OF IN-FLIGHT CONDITION OF AIRCRAFT COCKPIT TO GROUND SERVICES |
| US | US 11,294,048 | 15/608612 62/342585 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| US | US 11,137,753 | 16/094297 62/323957 | SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS |
| US | US 10,897,304 | 15/906540 62/214053 | SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES |
| US | US 10,412,630 | 15/884670 62/199841 PCT/US2016/045028 | SYSTEM FOR ESTIMATING WIRELESS NETWORK LOAD AND PROACTIVELY ADJUSTING APPLICATIONS TO MINIMIZE WIRELESS NETWORK OVERLOAD PROBABILITY AND MAXIMIZE |

| | | | SUCCESSFUL APPLICATION OPERATION |
|---|---|---|---|
| | | | |

**PENDING US PATENT APPLICATIONS**

| Country | Patent No. | Application No. | Title |
|---|---|---|---|
| US | | 17/739587 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| US | | 17/941,176 | SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES |
| US | n/a | 16/093897 | SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES |
| US | n/a | 17/713117 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| US | n/a | 17/151,350 | SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES |

# EXHIBIT B

## FOREIGN (Non-US) PATENTS AND PATENT APPLICATIONS

| Title | Country | Patent/Grant No. | Application No. |
|-------|---------|------------------|-----------------|
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Israel (IL) | IL 262694 B | 262694 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Canada (CA) | | CA 3022513 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Thailand (TH) | | 1801006767 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Mexico (MX) | | MX/a/2018/013489 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Russian Fed. (RU) | RU 2730169 C2 | 2018140570 |

| | | | |
|---|---|---|---|
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Brazil (BR)** | **BR 11 2018 072637** | **11 2018 072637-0** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Japan (JP)** | **JP 6896982** | **2018-558317** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **China (CN)** | **CN 109417827B** | **201780041978.4** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **India (IN)** | | **IN 201837045587** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Singapore (SG)** | | **11201809489W** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Australia (AU)** | **AU 2017260347** | **2017260347** |

| | | | |
|---|---|---|---|
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Australia (AU)** | | **2022200377** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Korea (KR)** | **KR 102165365** | **10-2018-7035041** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Hong Kong (HK)** | **HK 19128790.3** | **19128790.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Belgium (BE)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Germany (DE)** | **EP 3453223**<br>**DE 60 2017 047 220.4** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **France (FR)** | **EP 3453223** | **17793256.3** |

| | | | |
|---|---|---|---|
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Luxembourg (LU) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Netherlands (NL) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Switzerland (CH) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | United Kingdom (GB) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Sweden (SE) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Italy (IT) | EP 3453223 IT 502021000106547 | 17793256.3 |

| | | | |
|---|---|---|---|
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Austria (AT)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Liechtenstein (LI)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Greece (GR)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Spain (ES)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Denmark (DK)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Monaco (MC)** | **EP 3453223** | **17793256.3** |

| | | | |
|---|---|---|---|
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Portugal (PT) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Ireland (IE) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Finland (FI) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Cyprus (CY) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Turkey (TR) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Bulgaria (BG) | EP 3453223 | 17793256.3 |

| | | | |
|---|---|---|---|
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Czech Republic (CZ)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Estonia (EE)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Slovakia (SK)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Slovenia (SI)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Hungary (HU)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Romania (RO)** | **EP 3453223** | **17793256.3** |

| | | | |
|---|---|---|---|
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Poland (PL)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Iceland (IS)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Lithuania (LT)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Latvia (LV)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Malta (MT)** | **EP 3453223** | **17793256.3** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **Croatia (HR)** | **EP 3453223** | **17793256.3** |

| | | | |
|---|---|---|---|
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Norway (NO) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | North Macedonia (MK) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | San Marino (SM) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Albania (AL) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | Serbia (RS) | EP 3453223 | 17793256.3 |
| LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM | (International Application) | n/a | PCT/US2017/030847 |

| | | | |
|---|---|---|---|
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | ISRAEL (IL) | 263244 | 263244 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | ISRAEL (IL) (Divisional) | | 294633 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | CANADA (CA) | | 3025362 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | THAILAND (TH) | | 1801007305 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | MEXICO (MX) | | MX/a/2018/014739 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | RUSSIAN FED (RU) | RU 2772837 C2 | 2018143512 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | BRAZIL (BR) | | 112018074740-8 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | JAPAN (JP) | JP 7116448 B2 | 2018-562335 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | JAPAN (JP) (Divisional) | | 2022-116033 |

| | | | |
|---|---|---|---|
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **CHINA (CN)** | **CN 109479085 B** | **201780044671.X** |
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **CHINA (CN) (Divisional)** | | **202210644262.6** |
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **INDIA (IN)** | | **201837045587** |
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **Singapore (SG)** | **11201810480R** | **11201810480R** |
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **Australia (AU)** | **AU 2017273616 B2** | **2017273616** |
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **Australia (AU) (Divisional)** | | **2022206794** |
| **METHOD FOR MONITORING CHANGE IN ANALOG OR PHYSICAL STATE CONDITIONS OF MACHINE (previously "SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY")** | **Korea (KR)** | **10-2463928** | **10-2018-7038060** |
| **METHOD FOR MONITORING CHANGE IN ANALOG OR PHYSICAL STATE CONDITIONS OF MACHINE (DIVISIONAL)** | **Korea (KR) (Divisional)** | | **10-2022-7038340** |

| | | | |
|---|---|---|---|
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Hong Kong (HK) | | 19129017.0 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Belgium (BE) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Germany (DE) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | France (FR) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Luxembourg (LU) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Netherlands (NL) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Switzerland (CH) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | United Kingdom (GB) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Sweden (SE) | | 17807419.1 |

| | | | |
|---|---|---|---|
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Italy (IT) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Austria (AT) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Liechtenstein (LI) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Greece (GR) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Spain (ES) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Denmark (DK) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Monaco (MC) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Portugal (PT) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Ireland (IE) | | 17807419.1 |

| | | | |
|---|---|---|---|
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Finland (FI) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Cyprus (CY) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Turkey (TR) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Bulgaria (BG) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Czech Republic (CZ) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Estonia (EE) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Slovakia (SK) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Slovenia (SI) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Hungary (HU) | | 17807419.1 |

| | | | |
|---|---|---|---|
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Romania (RO) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Poland (PL) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Iceland (IS) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Lithuania (LT) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Latvia (LV) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Malta (MT) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Croatia (HR) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Norway (NO) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | North Macedonia (MK) | | 17807419.1 |

| | | | |
|---|---|---|---|
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | San Marino (SM) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Albania (AL) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | Serbia (RS) | | 17807419.1 |
| SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY | (International Application) | | PCT/US2017/35264 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | (International Application) | | PCT/US2018/28571 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Israel (IL) | | 270042 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | CANADA (CA) | | 3060108 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | THAILAND (TH) | | 1901006727 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | MEXICO (MX) | | MX/a/2019/012692 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | RUSSIAN FED. (RU) | | 2019137121 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | BRAZIL (BR) | | BR 11 2019 021927-7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | JAPAN (JP) | JP 7116449 B2 | 2019-557582 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | JAPAN (JP) (Divisional) | | 2022-116034 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | CHINA (CN) | | 201880027333.X |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | INDIA (IN) | | 201937046971 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | SINGAPORE (SG) | | 11201909526U |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Australia (AU) | | 2018260589 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Hong Kong (HK) | | 62020015084 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Korea (KR) | | 10-2019-7034471 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Belgium (BE) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Germany (DE) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | France (FR) | | 18791594.7 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Luxembourg (LU) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Netherlands (NL) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Switzerland (CH) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | United Kingdom (GB) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Sweden (SE) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Italy (IT) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Austria (AT) | | 18791594.7 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Liechtenstein (LI) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Greece (GR) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Spain (ES) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Denmark (DK) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Monaco (MC) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Portugal (PT) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Ireland (IE) | | 18791594.7 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Finland (FI) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Cyprus (CY) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Turkey (TR) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Bulgaria (BG) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Czech Republic (CZ) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Estonia (EE) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Slovakia (SK) | | 18791594.7 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Slovenia (SI) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Hungary (HU) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Romania (RO) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Poland (PL) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Iceland (IS) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Lithuania (LT) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Latvia (LV) | | 18791594.7 |

| | | | |
|---|---|---|---|
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Malta (MT) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Croatia (HR) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Norway (NO) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | North Macedonia (MK) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | San Marino (SM) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Albania (AL) | | 18791594.7 |
| SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES | Serbia (RS) | | 18791594.7 |

| | | | |
|---|---|---|---|
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | (International Application) | n/a | PCT/US2017/037522 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | RUSSIAN FED. | RU2737058C2 | 2018143511 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | BRAZIL | | 11 2018 074384-4 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | ISRAEL | n/a | 263313 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNDED AERIAL VEHICLES AND OBJECTS | ISRAEL (Divisional) | n/a | 295502 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | CANADA | n/a | 3025355 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | THAILAND | n/a | 1801007306 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | MEXICO | n/a | 20180014569 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | JAPAN | JP 7036744 | 2018-562036 |

| | | | |
|---|---|---|---|
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | CHINA | n/a | CN20178044315 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | INDIA | n/a | 201837049014 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | SINGAPORE | n/a | 11201810483Q |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | SINGAPORE (Divisional) | n/a | 10202251240X |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | AUSTRALIA | n/a | 2017270593 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | KOREA | KR102244863B1 | 20187036739 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | HONG KONG | n/a | 19128899.2 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | Belgium (BE) | n/a | 17 803 755.2 |
| RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS | Germany (DE) | n/a | 17 803 755.2 |

| | | | |
|---|---|---|---|
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **France (FR)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Luxembourg (LU)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Netherlands (NL)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Switzerland (CH)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **United Kingdom (GB)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Sweden (SE)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Italy (IT)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Austria (AT)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Liechtenstein (LI)** | **n/a** | **17 803 755.2** |

| | | | |
|---|---|---|---|
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Greece (GR)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Spain (ES)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Denmark (DK)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Monaco (MC)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Portugal (PT)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Ireland (IE)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Finland (FI)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Cyprus (CY)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Turkey (TR)** | **n/a** | **17 803 755.2** |

| | | | |
|---|---|---|---|
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Bulgaria (BG)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Czech Republic (CZ)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Estonia (EE)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Slovakia (SK)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Slovenia (SI)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Hungary (HU)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Romania (RO)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Poland (PL)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Iceland (IS)** | **n/a** | **17 803 755.2** |

| | | | |
|---|---|---|---|
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Lithuania (LT)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Latvia (LV)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Malta (MT)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Croatia (HR)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Norway (NO)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **North Macedonia (MK)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **San Marino (SM)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Albania (AL)** | **n/a** | **17 803 755.2** |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **Serbia (RS)** | **n/a** | **17 803 755.2** |

| | | | |
|---|---|---|---|
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | (International Application) | | PCT/US17/37522 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | RUSSIAN FED. | RU2733905C2 | 2018137880 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | JAPAN | n/a | 2019-505349 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | JAPAN (Divisional) | n/a | 2022-120005 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | CHINA | n/a | 20178034674 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | INDIA | n/a | 201837043271 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | HONG KONG | n/a | 19128717.6 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Belgium (BE) | n/a | 20170786815 |

| | | | |
|---|---|---|---|
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Germany (DE) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | France (FR) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Luxembourg (LU) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Netherlands (NL) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Switzerland (CH) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | United Kingdom (GB) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Sweden (SE) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Italy (IT) | n/a | 20170786815 |

| | | | |
|---|---|---|---|
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Austria (AT) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Liechtenstein (LI) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Greece (GR) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Spain (ES) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Denmark (DK) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Monaco (MC) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Portugal (PT) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Ireland (IE) | n/a | 20170786815 |

| | | | |
|---|---|---|---|
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Finland (FI) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Cyprus (CY) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Turkey (TR) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Bulgaria (BG) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Czech Republic (CZ) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Estonia (EE) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Slovakia (SK) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Slovenia (SI) | n/a | 20170786815 |

| | | | |
|---|---|---|---|
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Hungary (HU)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Romania (RO)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Poland (PL)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Iceland (IS)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Lithuania (LT)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Latvia (LV)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Malta (MT)** | **n/a** | **20170786815** |
| **SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS** | **Croatia (HR)** | **n/a** | **20170786815** |

| | | | |
|---|---|---|---|
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Norway (NO) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | North Macedonia (MK) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | San Marino (SM) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Albania (AL) | n/a | 20170786815 |
| SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS | Serbia (RS) | n/a | 20170786815 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | (International Application) | | PCT/US2017/036427 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | RUSSIAN FED. | RU2721185C2 | 2018137854 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | JAPAN | n/a | 2018-554366 |

| | | | |
|---|---|---|---|
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | CHINA | n/a | 201780034800 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | INDIA | n/a | 201837042699 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | HONG KONG | n/a | 19128459.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Belgium (BE) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Germany (DE) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | France (FR) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Luxembourg (LU) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Netherlands (NL) | n/a | 17 783 379.5 |

| | | | |
|---|---|---|---|
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Switzerland (CH) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | United Kingdom (GB) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Sweden (SE) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Italy (IT) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Austria (AT) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Liechtenstein (LI) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Greece (GR) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Spain (ES) | n/a | 17 783 379.5 |

| | | | |
|---|---|---|---|
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Denmark (DK)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Monaco (MC)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Portugal (PT)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Ireland (IE)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Finland (FI)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Cyprus (CY)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Turkey (TR)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Bulgaria (BG)** | **n/a** | **17 783 379.5** |

| | | | |
|---|---|---|---|
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Czech Republic (CZ) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Estonia (EE) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Slovakia (SK) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Slovenia (SI) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Hungary (HU) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Romania (RO) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Poland (PL) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Iceland (IS) | n/a | 17 783 379.5 |

| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Lithuania (LT) | n/a | 17 783 379.5 |
|---|---|---|---|
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Latvia (LV) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Malta (MT) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Croatia (HR) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Norway (NO) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | North Macedonia (MK) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | San Marino (SM) | n/a | 17 783 379.5 |
| SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES | Albania (AL) | n/a | 17 783 379.5 |

| | | | |
|---|---|---|---|
| **SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES** | **Serbia (RS)** | **n/a** | **17 783 379.5** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **(International Application)** | **n/a** | **PCT/US2016/050166** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **RUSSIAN FED.** | **RU2729607** | **2018108416** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **JAPAN** | **6794434** | **2018-512208** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **JAPAN** | **7012804** | **2020-188364** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL** | **INDIA** | **n/a** | **201837012107** |

B-41

| | | | |
|---|---|---|---|
| **VEHICLES AND REMOTE PILOTED VEHICLES** | | | |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **CHINA** | **CN107925880B** | **201680050801.6** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **Belgium (BE)** | **n/a** | **16843096.5** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **Germany (DE)** | **n/a** | **16843096.5** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **France (FR)** | **n/a** | **16843096.5** |
| **SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES** | **Luxembourg (LU)** | **n/a** | **16843096.5** |

| | | | |
|---|---|---|---|
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Netherlands (NL) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Switzerland (CH) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | United Kingdom (GB) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Sweden (SE) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Italy (IT) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND | Austria (AT) | n/a | 16843096.5 |

| | | | |
|---|---|---|---|
| COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | | | |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Liechtenstein (LI) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Greece (GR) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Spain (ES) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Denmark (DK) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Monaco (MC) | n/a | 16843096.5 |

| | | | |
|---|---|---|---|
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Portugal (PT) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Ireland (IE) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Finland (FI) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Cyprus (CY) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Turkey (TR) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND | Bulgaria (BG) | n/a | 16843096.5 |

| | | | |
|---|---|---|---|
| COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | | | |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Czech Republic (CZ) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Estonia (EE) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Slovakia (SK) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Slovenia (SI) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Hungary (HU) | n/a | 16843096.5 |

| | | | |
|---|---|---|---|
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Romania (RO) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Poland (PL) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Iceland (IS) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Lithuania (LT) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Latvia (LV) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND | Malta (MT) | n/a | 16843096.5 |

| | | | |
|---|---|---|---|
| COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | | | |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Croatia (HR) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Norway (NO) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | North Macedonia (MK) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | San Marino (SM) | n/a | 16843096.5 |
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Albania (AL) | n/a | 16843096.5 |

| | | | |
|---|---|---|---|
| SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES | Serbia (RS) | n/a | 16843096.5 |

## TRADEMARK ASSIGNMENT

This Assignment Agreement is effective this ___ day of _____, 2023, by and between **Theia Group, Incorporated**, a Delaware corporation having an address at 3445 Peachtree Road NE, Suite 1225, Atlanta, GA 30326 ("**ASSIGNOR**") and **Rising Sky, LLC**, a Delaware limited liability company, having an address of 1001 4th Avenue, Suite 4330, Seattle, WA 98154 ("**ASSIGNEE**").

Whereas, **ASSIGNOR** is the owner of US Trademark Application Serial no. **87/896,620**, filed on April 27, 2018, and International Registration no. **1473951** ("the Application and Registration") for the mark **DECISION-GRADE** ("the mark" or "trademark"); and

Whereas, **ASSIGNEE**, is desirous of confirming the acquisition of, and of acquiring the Application and Registration and the mark, together with the goodwill symbolized by the mark, and the portion of the business of ASSIGNOR to which the mark pertains;

Now, therefore, for good and valuable consideration, receipt of which is hereby acknowledged, **ASSIGNOR** hereby assigns unto **ASSIGNEE** all of **ASSIGNOR's** right, title and interest in and to US Trademark Application Serial no. **87/896,620**, International Registration no. **1473951** (including for all the Contracting Parties designated in said International Registration and for all the goods and services covered by said International Registration), the trademark **DECISION-GRADE** throughout the world, together with all derivations thereof and including all goodwill symbolized by the mark, and the portion of the ASSIGNOR's business to which the mark pertains, whether based on common law or the laws of the various states of the United States, and the right (but not the obligation) to assert such trademark and other assigned rights to collect for all past, present and future infringements, and claims for damages and the proceeds thereof, including, without limitation, license royalties and proceeds of infringement suits and all rights corresponding thereto throughout the world by reason of any past and future acts of infringement that have occurred or may occur, and any priority rights or other rights under any Convention, Protocol, or Agreement that have been or may be accorded to the Application and Registration.

And ASSIGNOR further agrees to sign and properly execute such necessary and lawful papers relating to applications and registrations for the trademark, including the Application and Registration, and any continuations, renewals, extensions, transformations, and substitutions that may be required, which ASSIGNEE thereof shall hereafter prepare at its own expense.

This Assignment of any rights assigned, transferred and/or sold by Theia Group, Incorporated, including of any rights herein in the Application and Registration, the trademark, the goodwill symbolized by the mark, the portion of the business of ASSIGNOR to which the mark pertains, and any priority rights or other rights under any Convention, Protocol, or Agreement that have been or may be accorded to the Application and Registration, is made AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

In witness Whereof, **ASSIGNOR** and **ASSIGNEE** have signed this instrument on the date(s) set forth below.

**ASSIGNOR:**

**Theia Group, Incorporated**

By: _____          _____
       (signature)                                                          DATE

Name:  Michael Fuqua

Title:   Receiver for Theia Group, Incorporated


**ASSIGNEE:**

**Rising Sky, LLC**

By: _____          _____
       (signature)                                                          DATE

Name:  Mitchell Adams

Title:  _____

## ASSIGNMENT

THIS ASSIGNMENT DEED made this _____day of _____, 2022.

BETWEEN Theia Group, a corporation duly organised under the laws of the State of Delaware, US, having an address at 1600 Market Street, Suite 1320, Philadelphia, PA 19103 (hereinafter referred to as the ASSIGNOR which expression shall include all successors and assigns) of the one part.

AND Rising Sky LLC, a limited liability company duly organised under the laws of the state of Delaware, US, having an address at 1001 4th Avenue, Suite 4330 in Seattle, WA 98154 (hereinafter referred to as the ASSIGNEE which expression shall include all successors and assigns) of the other part.

WHEREAS:-

1.The ASSIGNOR is the owner of the following patents and patent applications and the inventions disclosed therein:

(a) Australian Patent Application No. 2017270593 entitled "RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS";

(b) Australian Patent Application No. 2017260347, granted as Australian Patent No. AU 2017260347, entitled "LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM";

(c) Australian Patent Application No. 2022200377, entitled "LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM";

(d) Australian Patent Application No. 2017273616, granted as Australian Patent No. AU 2017273616, entitled "SYSTEM FOR TRANSMISSION AND DIGITIZATION OF

MACHINE TELEMETRY";

(e) Australian Patent Application No. 2022206794, entitled "SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY"; and

(f) Australian Patent Application No. 2018260589, entitled "SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES";

(the above patents and patent applications hereinafter referred to respectively, as "the patent properties", and "the inventions").

2.The ASSIGNOR now desires to assign to the ASSIGNEE and the ASSIGNEE desires to take title of the patent properties and the inventions, including the patent applications, the patents, and all right of action, powers and benefits thereto, belonging or accrued, and, in particular, the right to commence proceedings and obtain relief for any infringement of any of the patent properties, including any patents and any patents granted on the patent applications including any infringement which has occurred prior to the date hereof.

<u>NOW THIS DEED WITNESSETH:-</u>

Pursuant to the foregoing and in consideration of the sum of two dollars ($2.00) and other valuable consideration well and truly paid to the ASSIGNOR by or on behalf of the ASSIGNEE, the receipt and sufficiency of which are hereby acknowledged, it is hereby agreed between the parties as follows:-

1.The ASSIGNOR hereby assigns to the ASSIGNEE its whole right, title and interest in and to the patent properties and the inventions, and the right to file in ASSIGNEE'S name any further applications claiming priority or seniority from the patent applications;

2.The ASSIGNOR assigns the patent applications and the inventions to the ASSIGNEE as the beneficial owner subject to the condition that the ASSIGNOR does not and shall not be required to warrant or guarantee the validity any patent granted pursuant to the applications or derived from any application claiming seniority from it/them, and so there is no doubt, the rights assigned, sold, and transferred hereunder, including rights to the patent properties and the inventions, the patent applications, the patents, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind;

3.The ASSIGNOR hereby authorizes the relevant government authority to transfer the patent properties, including the patents and patent applications, and record this assignment in favour of the ASSIGNEE as assignee of the whole right, title and interest in and to the patents and the patent applications or otherwise as the ASSIGNEE may direct;

4.The ASSIGNOR hereby undertakes at the expense of the ASSIGNEE to do all acts and execute all documents necessary or desirable for further assuring the title of the ASSIGNEE to the inventions, and the patents and the patent applications;

5.Should the ASSIGNOR fail to comply with the undertaking in Clause 4, it hereby irrevocably appoints the ASSIGNEE and each of its directors, managers and secretary to be its several attorneys to, in its name and as its act and deed from time to time, if and when such attorney shall think fit for giving effect to the undertaking given by the ASSIGNOR in Clause 4, execute all such documents referred to in Clause 4 and if necessary, procure the registration of this attorney; and

6.A Statutory Declaration by an officer of the ASSIGNEE shall be sufficient proof that the ASSIGNOR has failed to comply with its undertaking given in Clause 4.

IN WITNESS WHEREOF the parties hereto have caused this assignment to be executed in a binding manner as follows:-

SIGNED on behalf of Theia Group )
Incorporated in accordance with its Articles of )
Incorporation in the presence of )
)
)
………………………………………….. ) ……………………………………………
Witness:                                       Name: Michael Fuqua
Name:                                         Position: Receiver
Address:

SIGNED on behalf of )
Rising Sky LLC in accordance with its Articles )
of Organization in the presence of )
)
)
………………………………………….. ) ……………………………………………
Witness:                                       Name: Mitchell Adams
Name:                                         Position:
Address:



Alberto J. Guerra Neto
Cloris Maria Pereira Guerra
Flavio Leonardos

## PROCURAÇÃO / POWER OF ATTORNEY

O abaixo assinado / The undersigned: **RISING SKY, LLC**

com endereço / with address: **1001 4TH Avenue, Suite 4330, Seattle, WA 98154, USA**

por meio desta, constitui seus bastantes procuradores, para assuntos relativos à propriedade industrial e intelectual, em todo o território da República Federativa do Brasil, **GUERRA ADVOGADOS ASSOCIADOS**, sociedade de advogados inscrita no CNPJ sob n.º 92.519.131/0001-06 e na Ordem dos Advogados do Brasil, Seção do Estado do Rio Grande do Sul, sob o nº 140/89, com sede na Rua São Carlos 1113, em Porto Alegre, Estado do Rio Grande do Sul, Brasil; **ALBERTO JERÔNIMO GUERRA NETO,** brasileiro, advogado, inscrito na Ordem dos Advogados do Brasil, Seção do Estado do Rio Grande do Sul, sob o nº 41.795, com escritório profissional na Rua São Carlos, 1113, em Porto Alegre, Estado do Rio Grande do Sul, Brasil; **FLAVIO STARLING LEONARDOS,** brasileiro, advogado inscrito na Ordem dos Advogados do Brasil, na Seção do Estado do Rio de Janeiro, sob nº 48.117, estabelecido com escritório profissional na Av. Rio Branco, 181 - 3501, na Capital do Estado do Rio de Janeiro, Brasil, a quem outorga poderes para, separada ou conjuntamente e independentemente de ordem ou nomeação, representar o Outorgante perante as autoridades, autarquias, agências reguladoras e órgãos governamentais Federais, Estaduais e Municipais da República Federativa do Brasil, em especial perante o Instituto Nacional da Propriedade Industrial – INPI, O Banco Central do Brasil, o INMETRO, a Biblioteca Nacional, a Escola Nacional de Música, a Escola Nacional de Belas Artes, o Nic.Br, a ANVISA ou aqueles que vierem a substituí-los; bem como diante de organizações não governamentais, tal como o Conselho Nacional de Auto Regulamentação Publicitária – CONAR; para o fim de requerer, obter, manter a proteção e assegurar o exercício de direitos relativos à propriedade industrial e intelectual, incluindo, mas não se limitando, a patentes e certificados de invenção; modelos de utilidade; desenhos industriais; marcas de produtos, serviços, coletivas e de certificação; indicações geográficas; programas de computador; obras artísticas, literárias e científicas; e nomes de domínio; podendo, para tal finalidade, promover toda e qualquer providência administrativa, incluindo depositar pedidos; apresentar requerimentos de quaisquer natureza, em especial de prorrogação, de anotações de alterações, de cessões e transferências; de averbações de contratos; de licenças voluntárias e compulsórias; de gravames; declarações de notoriedade e de alto renome; impugnações; oposições; manifestações; réplicas; respostas; pedidos de cancelamento; pedidos de nulidade e de caducidade; subsídios técnicos; defesas; requerimentos de prorrogações; protestos; notificações; reconsiderações; provas de uso; e pedidos de revisão; juntar e retirar documentos; pagar e receber restituições de taxas, custas, retribuições, emolumentos, anuidades e renovações; podendo renunciar e desistir de registros, pedidos de registro, requerimentos e processos; com os poderes especiais de receber e dar quitação; acordar; transigir; substabelecer ou revogar, no todo ou em parte, os poderes aqui outorgados; de receber as citações judiciais de que trata o Artigo 217 da Lei nº 9.279/96 (Lei da Propriedade Industrial); e demais poderes para fazer tudo aquilo que for necessário para a boa e legal defesa dos direitos e interesses do Outorgante, que, através do presente, ratifica expressamente todos os atos já praticados por todos ou qualquer um dos Outorgados em conformidade com o presente mandato.

hereby constitutes and appoints as their attorneys for industrial and intellectual property matters in the whole territory of the Federative Republic of Brazil, **GUERRA ADVOGADOS ASSOCIADOS**, a law firm, registered with the Federal Taxpayer's Registry under the CNPJ no. 92.519.131/0001-06 and at the Ordem dos Advogados do Brazil, Rio Grande do Sul section, no 140/89, having its headquarters Rua São Carlos 1113, Porto Alegre, RS, Brazil; **ALBERTO JERÔNIMO GUERRA NETO,** Brazilian citizen, lawyer, who are registered at Brazilian Bar Association - OAB, Section of the State of Rio Grande do Sul, under number 41.795, with office at Rua São Carlos 1113, Porto Alegre, RS, Brazil; **FLAVIO STARLING LEONARDOS,** Brazilian citizen, lawyer registered at the Brazilian Bar Association - OAB, Section of the State of Rio de Janeiro, under number 48.117, with office at Av. Rio Branco, 181 - 3501, Rio de Janeiro - RJ, Brazil; to whom grants powers to, jointly or severally and irrespectively of the order of appointment, represent the Grantor before Federal, State and Municipal authorities, entities, regulatory agencies and governmental organisms of the Federative Republic of Brazil, particularly before the Brazilian Patent and Trademark Office (INPI), The Brazilian Central Bank, INMETRO, National Library, National School of Music, National School of Fine Arts, Nic.Br, ANVISA and those which might replace them, as well as before nongovernmental organizations, such as the National Self-Regulatory Council of Publicity (CONAR); in order to request, obtain, maintain the protection and guarantee the exercise of industrial and intellectual property rights; including but not limited to patents and certificates of invention; utility models; industrial designs; product, service, collective and certification marks; geographic indications; software; artistic, literary and scientific works; and domain names; empowered to that objective to take any and all administrative measure, including to file applications; to submit requests of any nature, particularly, to renew, to record changes and assignments and transfers; to record agreements, voluntary and compulsory licenses and security interests; to request declarations of notoriety and of high renown; to challenge; to oppose; to file arguments, replies, answers; cancellation requests, nullity and non-use cancellation actions, technical elements and defenses; to file requests to renew, objections, notifications, reconsideration requests, evidence of use; and requests to review; to submit and to retrieve documents; pay to and to receive reimbursement of taxes, costs, fees. expenses, annuities and renewals; to renounce registrations and to withdraw applications, requests and cases; and the special powers to receive and give releases; to undertake; to transact; to substitute and to revoke in full or partially the powers hereby granted; to receive summons according to the provisions of Article 217 of Law no. 9,279/96 (Industrial Property Law); and all powers to do whatever is required to the good and appropriate defense of the rights and interests of the Grantor, that hereby expressly ratifies all acts and measures taken by the all and any of the Grantees In accordance with the present instrument.

**Porto Alegre/RS**

+55 (51) 3323-9999

Rua São Carlos, 1113
CEP 90220-121
Brasil / Brazil

**Rio de Janeiro/RJ**

+55 (21) 2221-4887

Av. Rio Branco, 181 - 3501
CEP 20040-918
Brasil / Brazil

**guerraip.com**
poaoffice@guerraip.com
rjoffice@guerraip.com

Local (Place):        Seattle, Washington, US
Data (Date):          _____

_____
                      Assinatura (Signature)

Nome (Name):          Mitchell Adams
Cargo (Title):        _____

                      Rising Sky, LLC

| **ASSIGNMENT AGREEMENT** | **CONTRATO DE TRANSFERÊNCIA** |
|---|---|
| Assignor: THEIA GROUP, INCORPORATED established at **1600 Market Street, Suite 1320, Philadelphia, PA 19103, USA** | Cedente: THEIA GROUP, INCORPORATED estabelecido em **1600 Market Street, Suite 1320, Philadelphia, PA 19103, EUA** |
| represented by its Receiver (legal representative), Michael Fuqua, | representada por seu tesoureiro (representante legal) Michael Fuqua, |
| Who expressly declares to be duly empowered to act on behalf of the assignor, as well as to execute assignment documents and to transfer the intellectual property rights which are object of this agreement, | O qual declara expressamente que detém os poderes para agir em nome do cedente, assim como para assinar documentos de transferência e para alienar os direitos de propriedade intelectual objeto deste contrato, |
| hereby assigns, transfers, and sells all rights over the following including, rights to the invention, patent application, and patent rights, AS IS, WHERE IS and without representation, warranty, or recourse of any kind: | Cede, transfere e vende todos os seus direitos sobre os seguintes casos, incluindo direitos sobre a invenção, pedido de patente e direitos de patente, NO ESTADO EM QUE SE ENCONTRAM, e sem representação, garantia ou recurso de qualquer tipo: |
| (1) Brazilian Patent no. BR 11 2018 072637-0, for "LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM"; and | (1) Patente Brasileira nº BR 11 2018 072637-0, para "SISTEMA DE CONSTELAÇÃO DE SATÉLITES DE BAIXA ÓRBITA TERRESTRE PARA COMUNICAÇÕES COM REUTILIZAÇÃO DE ESPECTRO DE SATÉLITE GEOESTACIONÁRIO"; e |
| (2) Brazilian Patent/Application No. BR 11 2018 074740-8, for "SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY"; and | (2) Pedido de Patente Brasileiro nº BR 11 2018 074740-8, para "SISTEMA PARA TRANSMISSÃO E DIGITALIZAÇÃO DE TELEMETRIA DE MÁQUINA"; e |
| (3) Brazilian Patent/Application No. BR 11 2019 021927-7, for "SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES"; and | (3) Pedido de Patente Brasileiro nº BR 11 2019 021927-7, para "SISTEMA DE GRAVAÇÃO E TRANSMISSÃO EM TEMPO REAL DE OCORRÊNCIAS DURANTE O VOO DE CABINE DO PILOTO DE AERONAVE PARA SERVIÇOS DE SOLO"; |
| (4) Brazilian Patent/Application No. BR 11 2018 074384-4, for "RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS", | (4) Pedido de Patente Brasileiro nº BR 11 2018 074384-4, para "SISTEMA DE RADAR PARA RASTREAR OBJETOS E VEÍCULOS AÉREOS NÃO TRIPULADOS DE VOO BAIXO" |
| To | A |
| Assignee: RISING SKY, LLC established at **1001 4TH Avenue, Suite 4330, Seattle, WA 98154, USA** | Cessionária: RISING SKY, LLC estabelecida em **1001 4TH Avenue, Suite 4330, Seattle, WA 98154, EUA** |
| represented by its legal representative, Mitchell Adams, | representada por seu Representante Legal Mitchell Adams, |

| | |
|---|---|
| Who expressly declares to be duly empowered to act on behalf of the company, as well as to execute assignment documents. | O qual declara expressamente que detém os poderes para agir em nome da empresa, assim como para assinar documentos de transferência. |
| Both parties agree that the assignee will take the necessary steps in order to proceed with the necessary recordal before the Brazilian Patent and Trademark Office. | Ambas as partes concordam que a cessionária tomará as providências necessárias para requerer a anotação junto ao Instituto Nacional da Propriedade Industrial. |
| Executed before the undersigned witnesses, | Feito perante as testemunhas abaixo assinadas, |

Place and Date/Local e Data:   _____

**Assignor's Signature/**
Assinatura do Cedente: _____

**Name/**Nome**:** , Michael Fuqua
**Title/**Título: Receiver

---

Place and Date/Local e Data:   _____

**Assignee's Signature/**
Assinatura do Cessionário: _____

**Name/**Nome: **Mitchell Adams**
**Title/**Título: _____-

---

Witnesses/Testemunhas
(1)  Name/Nome:
       Nationality/Nacionalidade:
       Address/Endereço:

Signature/Assinatura:(1) _____

(2)  Name/Nome:
       Nationality/Nacionalidade:
       Address/Endereço:
Signature/Assinatura:(2) _____

*** *Notarization of the signatures (but not of the witnesses) is required. Legalization by Apostille is also required,* ***

# NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument ASSIGNMENT AGREEMENT was acknowledged before me this _____day of _____ (month), _____ (year), by, Michael Fuqua, Receiver of THEIA GROUP, INCORPORATED., a Delaware corporation, on behalf of the corporation,

who is

____personally known
____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

_____
(Signature Notary)

_____
Name of Notary

Notary Public, State of Georgia

My Commission expires: _____

# NOTARIAL CERTIFICATE

State of Washington

County of _____

I certify that I know or have satisfactory evidence that <u>Mitchell Adams</u> (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of

<u>Rising Sky, LLC</u> (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)

_____
Signature

_____
 Title

My appointment expires:_____

ASSIGNMENT AGREEMENT

THIS ASSIGNMENT AGREEMENT EFFECTIVE AS OF _____, 2023

WHEREAS

THEIA GROUP, INC. of 1600 Market Street, Suite 1320, Philadelphia, Pennsylvania, United States of America, 19103 is the owner of a certain new and useful inventions titled as follows for which the respective Canadian patent applications have been filed are assigned the respective application numbers:

> 1) RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS, Canadian application No. 3,025,355;

> 2) LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM, Canadian application No. 3,022,513;

> 3) SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY, Canadian application No. 3,025,362;

> 4) SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES, Canadian application No. 3,060,108.

(the above inventions hereinafter collectively, the "Inventions");

AND WHEREAS, RISING SKY, LLC of 1001 4th Ave, Suite 4330, Seattle, Washington, United States of America 98154, (hereinafter called the "Assignee"), is desirous of acquiring the Canadian right, title and interest in and to said Inventions and any letters patent that have been and/or that may be applied for and/or issued in respect thereof, including application Nos. 3,025,355; 3,022,513; 3,025,362 and 3,060,108;

NOW, THEREFORE, in consideration of the sum of One Dollar ($1.00) and other valuable consideration, the receipt of which is hereby acknowledged, THEIA GROUP, INC. hereby sells, assigns and transfers unto said Assignee, its successors and assigns, and hereby confirms that it has sold, assigned and transferred unto said Assignee, the entire Canadian right, title and interest in and to said Inventions, including all Canadian patent applications for or in relation to the Inventions, including application Nos. 3,025,355 and 3,022,513 and 3,025,362, and 3,060,108, and the right to any and all patent or patents that may be issued or reissued in respect thereof. THEIA GROUP, INC. hereby authorizes the Commissioner to issue any letters patent thereon, and reissues thereof, to said Assignee, its successors and assigns; and hereby authorizes said Assignee, its successors and assigns, to file on its own behalf and/or in its own name, applications for patents in Canada for or in relation to the Inventions hereby transferred, and to secure in its own name the patent or patents issued thereon.

THEIA GROUP, INC. hereby assigns, transfers and sells all rights herein, including, rights to the inventions, patent applications, and patent rights, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

\
\

\
\

Signature of Legal Representative of
Theia Group, Inc.

Witness  Signature:_____
Witness Name (please print): _____

: _____
BY: Michael Fuqua
Receiver for Theia Group, Inc.

Signature of Legal Representative of
Rising Sky, LLC

Witness  Signature:_____
Witness Name (please print): _____

: _____
BY: Mitchell Adams


Title: _____

ASSIGNMENT

The undersigned, THEIA GROUP, INCORPORATED, the full post office address of whose principal office or place of business is 1600 Market Street, Ste. 1320, Philadelphia, Pennsylvania USA 19103, in consideration of the sum of $1.00 and other good and valuable consideration, the sufficiency and receipt of which is hereby acknowledged, does, by way of the Receiver Michael Fuqua, hereby sell, assign and transfer to RISING SKY, LLC, whose full post office is 1001 4th Ave, Suite 4330, Seattle, Washington, USA, 98154, its successors and assigns, all of its rights in the Canadian trademarks, and Canadian Trademark Applications (and the corresponding registrations to issue therefrom) set out in the below listed Schedule to Assignment, including the goodwill appertaining to the said trademarks in Canada. THEIA GROUP, INCORPORATED sells, assigns and transfers all rights herein AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

EXECUTED at _____ , this _____ day of _____ , 2022.

Signature of Legal Representative of
THEIA GROUP, INCORPORATED

_____ c/s
BY: Michael Fuqua
Receiver for Theia Group, Inc.

The undersigned, RISING SKY, LLC whose full postal office address or principal place of business is 1001 4th Ave, Suite 4330, Seattle, Washington, USA, 98154 hereby accepts the above assignment and accepts the assignment of the rights herein, AS IS, WHERE IS and without representation, warranty, or recourse of any kind. RISING SKY, LLC appoints Philip Kerr of KERR & NADEAU, whose full postal office address is 190 O'Connor Street, Suite 610, Ottawa, Ontario, Canada K2P 2R3 , as its agent and the firm to which any notice in respect of the above-referenced trademarks may be sent and upon which service of any proceedings in respect of the trademark applications and registrations may be given or served with the same effect as if they had been given to or served upon the owner.

EXECUTED at _____ , this _____ day of _____ , 2022.

Signature of Legal Representative of
RISING SKY, LLC

By _____ c/s
Name:
Title:

SCHEDULE TO ASSIGNMENT

| Application/Registration No.: | Trade-mark: |
| --- | --- |
| 1927904 (attached below) | TOTAL-CAPTURE |
| 1927885 (attached below) | DECISION-GRADE |

# TOTAL-CAPTURE — 1927904

**Application number**
1927904

**Type(s)**
Word

**Category**
Trademark

**CIPO status**
REGISTRATION PENDING

**TM5 status**
LIVE/APPLICATION/ Published
for Opposition



A pending trademark
application has been
examined by the Office and
has been published in a way
that provides an opportunity
for the public to oppose its
registration.

**Filed**
2018-10-24

**Applicant**
THEIA GROUP, INCORPORATED
1600 Market Street Ste. 1320
Philadelphia, Pennsylvania
19103 UNITED STATES OF
AMERICA

**Agent**
KERR & NADEAU 190 O'Connor
Street, Suite 610 Ottawa
ONTARIO K2P2R3

**Index headings**
TOTAL-CAPTURE

**Services** (Nice class & Statement)

42    (1) Conducting remote sensing of data via visible and
non-visible electromagnetic wavelengths, such that
materially all of the available wavelengths necessary
to perform the subsequent analytics tasks are obtained
at once; Conducting remote sensing of data via visible
and non-visible electromagnetic wavelengths, such
that materially all of the available wavelengths
necessary to perform the subsequent analytics tasks
are obtained at a rate faster than the underlying
activity rate of the industry, activity, or process being
observed

**Claims**
Priority Filing Date: April 27, 2018, Country or Office: UNITED STATES
OF AMERICA, Application No. No. 87896703 in association with the
same kind of services
Proposed Use in CANADA

## Action History

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Filed | 2018-10-24 | | |
| Created | 2018-10-30 | | |
| Formalized | 2018-10-31 | | |
| Search Recorded | 2021-05-13 | | |
| Examiner'S First Report | 2021-05-13 | 2021-11-13 | |
| Approved | 2022-06-14 | | APPROVED BY PROGRAM EX200M1 |
| Approval Notice Sent | 2022-06-14 | | APPROVED BY PROGRAM EX200M1 |
| Advertised | 2022-08-03 | | Vol.69 Issue 3536 |
| Registration Pending | 2022-10-26 | | |
| Registration Fee Notice Sent | 2022-10-26 | 2023-04-26 | |

# DECISION-GRADE — 1927885

**Application number**
1927885

**Type(s)**
Word

**Category**
Trademark

**CIPO status**
SEARCHED

**TM5 status**
LIVE/APPLICATION/ Under
Examination



The trademark application has
been accepted by the Office
(has met the minimum filing
requirements) and that this
application has been
assigned to an examiner.

**Filed**
2018-10-24

**Applicant**
THEIA GROUP, INCORPORATED
1600 Market Street Ste. 1320
Philadelphia Pennsylvania
19103 UNITED STATES OF
AMERICA

**Agent**
KERR & NADEAU 190 O'Connor
Street, Suite 610 Ottawa
ONTARIO K2P2R3

**Index headings**
DECISION-GRADE

**Services**
(1) Providing analytics as a service including obtaining, interpreting,
analyzing and reporting data, including, for example, for
commercial, agricultural, geologic, energy and industrial fields,
especially where the quality of the analytics are sufficient to
replace human decision making.

**Classification data**
**Disclaimer**
The classification data is provided for information and searching
purposes only. CIPO does not warrant the accuracy of the classes
assigned to the trademark. This data has no legal value of any kind.

35 - Advertising, marketing, promotional and business

**Claims**
Priority Filing Date: April 27, 2018, Country or Office: UNITED STATES
OF AMERICA, Application No. 87/896,620 in association with the
same kind of services
Proposed Use in CANADA

## Action History

| Action | Action date | Due date | Comments |
|---|---|---|---|
| Filed | 2018-10-24 | | |
| Created | 2018-10-30 | | |
| Formalized | 2018-10-30 | | |
| Search Recorded | 2021-07-19 | | |
| Examiner'S First Report | 2021-07-19 | 2022-01-19 | |
| Correspondence Created | 2022-09-27 | 2023-03-27 | |

**MM5 (E) – REQUEST FOR THE RECORDING OF A CHANGE IN OWNERSHIP**

**For use by the holder (transferor)/new holder (transferee):**

| | |
|---|---|
| Number of continuation sheets for several new holders (transferees): | 0 |
| Number of continuation sheets: | 0 |
| Holder/New holder's reference: | 19-907869(MP)/22-907869(MP) |

**For use by the Office:**

| | |
|---|---|
| Office's reference: | |

**1. INTERNATIONAL REGISTRATION NUMBER(S)**

Several international registrations may be indicated below, provided that all registrations concerned are the subject of a **total** change in ownership, as provided for in item 6(a))[1].

1471579
1473951

**2. NAME OF THE HOLDER (TRANSFEROR)[2]**

As **recorded** in the International Register.

Theia Group, Incorporated

---

[1]       If this request relates to a **partial** change in ownership, as provided for in item 6(b), this form may only be used to request the recording of a change in ownership for a **single** international registration.
[2]       Where the international registration is **jointly owned** indicate the names of each joint holder as recorded in the international registration here.

MM5 (E) – November 2021

### 3. NEW HOLDER (TRANSFEREE)[3]

If there is **more than one new holder (transferee)**, indicate the number of new holders (transferees) and complete the "Continuation Sheet for Several New Holders".

**Number of new holders (transferees):**  1

(a)    Name:    RISING SKY, LLC

(b)    Address:

1001 4th Ave
Suite 4330
Seattle, Washington, US, 98154

(c)    E-mail address[4]:

(d)    Telephone number[5]:

---

[3]    If there is more than one new holder (transferee), indicate the details for the first new holder (transferee) only and provide the name(s), address(es) and email address(es) of the additional joint new holder(s) in the "Continuation Sheet for Several New Holders (Transferees)" attached to this form.

[4]    You **must** indicate the e-mail address of the new holder (transferee). If a representative is appointed, the e-mail address of the new holder (transferee) and of the representative must be different. If you do not indicate the e-ail address of the new holder (transferee), or it is the same as the e-mail address of the representative, you will receive an irregularity notice and delay the recording of the change in ownership. The new holder (transferee) must ensure that the e-mail address indicated here is correct and kept up to date.

Where there is more than one holder (transferee), each holder (transferee) must provide their own e-mail address, which must be different from each other and their representative, if any.

WIPO will send all communications concerning the international registration(s) in item 1 to the e-mail address of the new holder (transferee), unless an alternative e-mail address for correspondence is indicated in item 3(g)(ii) or a representative is appointed in item 5.

Where a representative is appointed, WIPO will only send communications to the e-mail address of the representative, except for a few communications where the Regulations require that WIPO send a copy to the holder (see the Note for Filing Form MM5).

Where there are several new holders (joint transferees) and no alternative e-mail address for correspondence is indicated, and no representative is appointed, WIPO will send communications **only** to the e-mail address indicated for the first new holder (transferee) in the form.

[5]    Indicating a phone number is not required, but it will allow WIPO to reach you if needed.

MM5 (E) – November 2021

**(e)    Nationality or legal nature and State of organization**[6]:

(i)    ◯  If the new holder (transferee) is a **natural person**, indicate the nationality of the new holder (transferee):

| Nationality of the new holder (transferee): | |
|---|---|

(ii)    ⦿  If the new holder (transferee) is a **legal entity**, provide **both** the following indications:

| Legal nature of the legal entity: | Limited Liability Company |
|---|---|
| State (country) and, where applicable, territorial unit within that State (canton, province, state, etc.), under the law of which the said legal entity has been organized: | US, State of Delaware |

**Correspondence details (optional):**

**(f)    Preferred language for correspondence**[7]:    ⦿ English    ◯ French    ◯ Spanish

**(g)    Alternative address and e-mail address for correspondence**[8]:

(i)    Postal address:

| 150 N. Radnor Chester Rd.<br>Suite F200<br>Radnor, PA 19087<br>US |
|---|

(ii)    E-mail address:

| fbonini@boninilaw.com |
|---|

---

[6]       Certain designated Contracting Parties may require these indications;  only provide indications in either item (i) **or** item (ii) but **not** in both items.

[7]       The new holder (transferee) may choose a preferred language for correspondence.

[8]       Use this **only** if you want WIPO to send all communications concerning the international registration(s) in item 1 to an address and e-mail address different from those indicated in item 3 (b) and (c).

MM5 (E), page 4

### 4. ENTITLEMENT OF THE NEW HOLDER (TRANSFEREE) TO BE THE RECORDED HOLDER OF THE INTERNATIONAL REGISTRATION(S)[9]

(a)   **Indicate in the appropriate spaces:**

(i)   the name of the Contracting State of which the new holder (transferee) is a national;  and/or,

US

(ii)   the name of the State member of a Contracting Organization of which the new holder (transferee) is a national;  and/or,

(iii)   the name of the Contracting Party in the territory of which the new holder (transferee) is domiciled;  and/or,

(iv)   the name of the Contracting Party in the territory of which the new holder (transferee) has a real and effective industrial or commercial establishment:

(b)   **Where the new holder (transferee) is not a national of a Contracting State or of a State member of a Contracting Organization and the address given in item 3(b) is not in the territory of any of the Contracting Parties mentioned in paragraph (a)(iii) or (iv) of the present item, indicate in the space provided below:**

(i)   the address of the new holder (transferee) in the territory of the Contracting Party mentioned in paragraph (a)(iii) of the present item;  or,

(ii)   the address of the new holder's (transferee) industrial or commercial establishment in the territory of the Contracting Party mentioned in paragraph (a)(iv) of the present item.

---

[9]   If there is more than one new holder (transferee), indicate the entitlement details for the first new holder (transferee) only and refer to further instructions provided in the "Continuation Sheet for Several New Holders (Transferees)", attached to this form.

MM5 (E) – November 2021

### 5. APPOINTMENT OF A REPRESENTATIVE BY THE NEW HOLDER (TRANSFEREE)[10]

**(a)   Name:**

Frank J. Bonini, Jr.

**(b)   Address:**

Bonini IP Law, LLC
150 N. Radnor Chester Rd.
Suite F200
Radnor, PA 19087
US

**(c)   E-mail address[11]:**

fbonini@boninilaw.com

**(d)   Telephone number[12]:**

484-382-3060

SIGNATURE OF THE NEW HOLDER (TRANSFEREE) APPOINTING THE ABOVE REPRESENTATIVE[13]

The new holder (transferee) **must sign** this item in order for the appointment to be recorded.

Signature:

_____
Mitchell Adams (title: _____ )

### 6. SCOPE OF THE CHANGE IN OWNERSHIP[14]

Check either (a) **or** (b).

**(a)  ⦿   Total change in ownership** (the change in ownership is to be recorded for **all** the Contracting Parties designated in the international registration(s) indicated in item 1, and for **all** the goods and services covered by such international registration(s)).

---

[10]      You **must** indicate the name, address and e-mail address of the representative (and sign this item) otherwise, WIPO cannot record the appointment.
[11]      When a representative is appointed, WIPO will send all communications concerning the international registration(s) in item 1 **only** to the e-mail address of the representative, except for a few communications where the Regulations require that WIPO send a copy to the holder (see the Note for Filing Form MM5).  The new holder (transferee) and the representative must ensure that the e-mail address indicated here is accurate and kept up to date.
[12]      Indicating a phone number is not required, but it will allow WIPO to reach your representative if needed.
[13]      If the signature of the new holder (transferee) is missing, WIPO will process the request but the representative will not be recorded (even if the same representative is recorded in the international registration for the current holder (transferor)).
[14]      Where the request concerns **Brazil**, as designated Contracting Party, the new holder (transferee) declares that the transferee, or a company controlled by the transferee, effectively and lawfully conducts business in connection with the goods and services for which the international registration has effect in Brazil;  and, agrees to receive notifications, including summons, not covered by the Madrid Protocol, concerning this international registration, issued in judicial proceedings held in Brazil, by post.

**(b)** ◯  **Partial change in ownership** (If this request relates to a **partial** change in ownership, this form may only be used to request the recording of a change in ownership for a **single** international registration).

   (i)   the change in ownership is to be recorded for the designated Contracting Parties indicated below (if no Contracting Party is indicated, it will be understood that the change in ownership is to be recorded in respect of all the designated Contracting Parties);  and/or,

| Designated Contracting Parties: | |
|---|---|
| | |

   (ii)  the change in ownership is to be recorded for the goods and services indicated below (grouped in the appropriate classes);  if no goods and services are indicated, it will be understood that the change in ownership is to be recorded in respect of all goods and services[15].

☐  If the space provided is not sufficient, check the box and use a **continuation sheet**.

---

[15]   You can use the Madrid Goods and Services Manager (MGS) to find indications accepted by WIPO.  In MGS, you can also find acceptance information for selected Contracting Parties.  MGS is available at www.wipo.int/mgs. Use font "Courier New" or "Times New Roman", size 12 pt., or larger.
Use semicolon (;) to separate indications or goods or services listed in a given class.  For example:
   09    Screens for photoengraving;  computers.
   35    Advertising;  compilation of statistics;  commercial information agencies.

MM5 (E), page 7

## 7. SIGNATURE OF THE HOLDER (TRANSFEROR) AND/OR THEIR REPRESENTATIVE

### Holder (transferor) (as recorded in the International Register):

*By signing this form, I declare that I am entitled to sign it under the applicable law.*

Name:

Michael Fuqua
Receiver (legal representative) for Theia Group, Incorporated

Signature:

### Representative of the holder (transferor) (as recorded in the International Register):

*By signing this form, I declare that I am entitled to sign it under the applicable law.*

Name:

Signature:

## 8. SIGNATURE OF THE OFFICE PRESENTING THE REQUEST

Where the request is presented through an Office.

**(a)    Name of the Office:**

**(b)    Name and signature of the official signing on behalf of the Office:**
*By signing this form, I declare that I am entitled to sign it under the applicable law.*

**(c)    E-mail address of the contact person in the Office:**

**FEE CALCULATION SHEET**

**(a)   INSTRUCTIONS TO DEBIT FROM A CURRENT ACCOUNT**

☐     The International Bureau is hereby instructed to debit the required amount of fees from a current account opened with the International Bureau (if this box is checked, it is not necessary to complete (b)).

| | |
|---|---|
| Holder of the account: | |
| Account number: | |
| Identity of the party giving the instructions: | |

**(b)   AMOUNT OF FEES**

| Amount (177 Swiss francs) | x | 2 | (per international registration mentioned in item 1) | **GRAND TOTAL (Swiss francs)** | = | 354 |
|---|---|---|---|---|---|---|

**(c)   METHOD OF PAYMENT**

| | |
|---|---|
| Identity of the party effecting the payment: | |

| | | | |
|---|---|---|---|
| Payment received and acknowledged by WIPO | ☐ | WIPO receipt number | |
| Payment made to WIPO bank account IBAN No. CH51 0483 5048 7080 8100 0 Crédit Suisse, CH-1211 Geneva 70 Swift/BIC:  CRESCHZZ80A | ☐ | Payment identification | dd/mm/yyyy |
| Payment made to WIPO postal account (within Europe only) IBAN No. CH03 0900 0000 1200 5000 8 Swift/BIC:  POFICHBE | ☐ | Payment identification | dd/mm/yyyy |

**CONTINUATION SHEET FOR SEVERAL NEW HOLDERS (TRANSFEREES)**    No. [      ] of [      ]

Please, complete a separate continuation sheet for **each new holder (transferee)**.

**NEW HOLDER (TRANSFEREE)**    No. [      ] of [      ]

**(a)    Name:**

**(b)    Address:**

**(c)    E-mail address[16]:**

**(d)    Telephone number[17]:**

**(e)    Nationality or legal nature and State of organization[18]:**

(i)    ◯    If the new holder (transferee) is a **natural person**, indicate the nationality of the new holder (transferee):

| Nationality of the new holder (transferee): | |
|---|---|

(ii)    ◯    If the new holder (transferee) is a **legal entity**, provide **both** the following indications:

| Legal nature of the legal entity: | |
|---|---|
| State (country) and, where applicable, territorial unit within that State (canton, province, state, etc.), under the law of which the said legal entity has been organized: | |

---

[16]    You must indicate the e-mail address of each new holder (transferee).  Where there is more than one new holder (transferee), each new holder (transferee) must provide their own e-mail address, which must be different from each other and their representative, if any.

WIPO will send all communications concerning the international registration(s) in item 1 **only** to the e-mail address of the new holder (transferee) named first in item 3 of the attached form, unless an alternative e-mail address for correspondence is indicated in item 3(g)(ii), or a representative is appointed in item 5.  The new holders (transferees) must ensure that the e-mail address indicated here is correct and kept up to date.

[17]    Indicating a phone number is not required, but it will allow WIPO to reach you if needed.

[18]    Certain designated Contracting Parties may require these indications;  only provide indications in either item (i) or item (ii) but **not** in both items.

MM5 (E) – November 2021

**ENTITLEMENT OF THE NEW HOLDER (TRANSFEREE) TO BE THE RECORDED HOLDER OF THE INTERNATIONAL REGISTRATIONS(S)**

**(a)     Indicate in the appropriate spaces:**

(i)     the name of the Contracting State of which the new holder (transferee) is a national;  and/or,

| |
|---|

(ii)     the name of the State member of a Contracting Organization of which the new holder (transferee) is a national;  and/or,

| |
|---|
; or

(iii)     the name of the Contracting Party in the territory of which the new holder (transferee) is domiciled;  and/or,

| |
|---|

(iv)     the name of the Contracting Party in the territory of which the new holder (transferee) has a real and effective industrial or commercial establishment:

| |
|---|

**(b)     Where the new holder (transferee) is not a national of a Contracting State or of a State member of a Contracting Organization and the address given in item 3(b) is not in the territory of any of the Contracting Parties mentioned in paragraph (a)(iii) or (iv) of the present item, indicate in the space provided below:**

(i)     the address of the new holder (transferee) in the territory of the Contracting Party mentioned in paragraph (a)(iii) of the present item;  or,

(ii)     the address of the new holder's (transferee) industrial or commercial establishment in the territory of the Contracting Party mentioned in paragraph (a)(iv) of the present item.

| |
|---|

**CONTINUATION SHEET**

No. [    ] of [    ]

**Assignment Agreement**

This Assignment Agreement is made by and between, **THEIA GROUP, INCORPORATED** ("Assignor"), a company incorporated in the United States with an address at 1600 Market Street, Suite 1320, Philadelphia, PA 19103, United States, and **RISING SKY, LLC** ("Assignee"), a limited liability company organized in the state of Delaware, United States with an address at 1001 4TH Ave, Suite 4330, Seattle, WA 98154, United States.

Assignor owns the patent properties identified in the below Patent Schedule, and hereby assigns, transfers and sells all rights herein, including, rights to the invention, patent application, and patent rights, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

Assignee hereby accepts the Patents and Patent Applications assigned by the Assignor with all rights and obligations derived there from without any restrictions.

Assignor and Assignee consent to the recordal of this Assignment Agreement.

Patent Schedule

| Country/ Region | Application No. | Filing Date | Title |
|---|---|---|---|
| China | 201780034799.8 | 5 December 2018 | SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES |
| China | 201780034674.5 | 4 December 2018 | SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS |
| China | 201780044315.8 | 17 January 2019 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| China | 202211006541.6 | 22 August 2022 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| China | 201780041978.4 | 3 May 2017 | LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM |
| China | 201780044671.X | 31 May 2017 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| China | 202210644262.6 | 9 June 2022 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| China | 201880027333.X | 24 October 2019 | SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES |
| China | 201680050801.6 | 1 March 2018 | SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH |

| | | | UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES |
|---|---|---|---|
| Hong Kong | 19128459.5 | 20 August 2019 | SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES |
| Hong Kong | 19128717.6 | 26 August 2019 | SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS |
| Hong Kong | 19128899.2 | 29 August 2019 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| Hong Kong | 19128790.3 | 27 August 2019 | LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM |
| Hong Kong | 19129017.0 | 2 September 2019 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| Hong Kong | 62020015084.0 | 27 August 2020 | SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES |

[Signature page follows.]

**Assignor** (Seal or Signature)

THEIA GROUP, INCORPORATED

Michael Fuqua, Receiver for Theia Group Incorporated
(legal representative)

Dated this _____

**Assignee** (Seal or Signature)

RISING SKY, LLC

Mitchell Adams
Title: _____
Rising Sky, LLC (legal representative)

Dated this _____

# 专 利 代 理 委 托 书 （ 中 英 文 ）

# POWER  OF  ATTORNEY

我/我们是__美国__的公民/法人，根据中华人民共和国专利法第 18 条的规定，兹委托_____深圳市百瑞专利商标事务所（普通合伙）_____（机构代码_44240_），并由该机构指定其专利代理人_____、_____代为办理下述专利申请（或专利）在中华人民共和国的全部专利事宜。


Pursuant to the Article 18 of the Patent Law of the People's Republic of China, I/we, citizen/legal entity of_US_hereby authorize_BAIRUI PATENT  &  TRADEMARKOFFICE_ (Code:_44240_) to appoint its patent attorney(s)_____,_____to handle all patent affairs related to the following applications or patents in the PRC.

| Application No. | Filing Date | Title |
|---|---|---|
| 201780034799.8 | 5 December 2018 | SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES |
| 201780034674.5 | 4 December 2018 | SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS |
| 201780044315.8 | 17 January 2019 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| 202211006541.6 | 22 August 2022 | RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS |
| 201780041978.4 | 3 May 2017 | LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM |
| 201780044671.X | 31 May 2017 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| 202210644262.6 | 9 June 2022 | SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY |
| 201880027333.X | 24 October 2019 | SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES |
| 201680050801.6 | 1 March 2018 | SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE, CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES |

委托人姓名或名称      上升天空有限责任公司

Authorized by (Name)      RISING SKY, LLC

委托人签字或盖章

Signature or Seal

Mitchell Adams
Title: _____
Rising Sky, LLC
(legal representative)

委托日期

Date of Authorization

被委托专利代理机构盖章

Seal of the Authorized Agent      BAIRUI PATENT & TRADEMARK OFFICE

100021
2021. 6

# Assignment

**Theia Group, Inc.**
1600 Market Street
Suite 1320
Philadelphia, PA 19103

**Rising Sky, LLC.**
1001 4TH Ave
Suite 4330
Seattle, WA 98154

**(Assignor)**

**(Assignee)**

The Assignor assigns European Patent Applications

- 16 843 096.5
- 17 783 379.5
- 17 786 815.5
- 17 803 755.2
- 17 807 419.1
- 18 791 594.7
-

to the Assignee. The Assignee herewith accepts the assignment. The Assignor and the Assignee request the registration of the assignment in the register of the European Patent Office.

The rights assigned, sold, and transferred hereunder, including rights to the invention, patent application, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

**X**_____
Place; Date

**X**_____
Assignor, represented by:
Michael Fuqua, Receiver for Theia Group,
Incorporated (legal representative),
Theia Group, Incorporated

**X**_____
Place; Date

**X**_____
Assignee, represented by:
Mitchell Adams,
Title: _____ Rising Sky, LLC
Rising Sky, LLC.

# Assignment

**Theia Group, Inc.**
1600 Market Street
Suite 1320
Philadelphia, PA 19103

**(Assignor)**

**Rising Sky, LLC.**
1001 4TH Ave
Suite 4330
Seattle, WA 98154

**(Assignee)**

The Assignor assigns European Patent EP3453223B1, especially the national forces in all of the validation countries, including the following:

| | |
|---|---|
| Belgium, | EP 3453223 |
| Germany, | EP 3453223 / DE 60 2017 047 220.4 |
| France, | EP 3453223 |
| Luxembourg, | EP 3453223 |
| Netherlands, | EP 3453223 |
| Switzerland, | EP 3453223 |
| United Kingdom, | EP 3453223 |
| Sweden, | EP 3453223 |
| Italy, | EP 3453223 / IT 502021000106547 |
| Austria, | EP 3453223 |
| Liechtenstein, | EP 3453223 |
| Greece, | EP 3453223 |
| Spain, | EP 3453223 |
| Denmark, | EP 3453223 |
| Monaco, | EP 3453223 |
| Portugal, | EP 3453223 |
| Ireland, | EP 3453223 |
| Finland, | EP 3453223 |
| Cyprus, | EP 3453223 |
| Turkey , | EP 3453223 |
| Bulgaria, | EP 3453223 |
| Czech Republic, | EP 3453223 |
| Estonia, | EP 3453223 |
| Slovakia, | EP 3453223 |
| Slovenia, | EP 3453223 |
| Hungary, | EP 3453223 |

| Romania, | EP 3453223 |
| Poland, | EP 3453223 |
| Iceland, | EP 3453223 |
| Lithuania, | EP 3453223 |
| Latvia, | EP 3453223 |
| Malta, | EP 3453223 |
| Croatia, | EP 3453223 |
| Norway, | EP 3453223 |
| North Macedonia, | EP 3453223 |
| San Marino, | EP 3453223 |
| Albania, | EP 3453223 |
| Serbia | EP 3453223 |

to the Assignee. The Assignee herewith accepts the assignment. The Assignor and the Assignee request the registration of the assignment in the register of the European Patent Office, and in each/any validation country that accepts and/or requires that the assignment be recorded.

The rights assigned, sold, and transferred hereunder, including rights to the invention, patent application, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

X_____     X_____
Place; Date                                                    Assignor, represented by:
                                                                       Michael Fuqua, Receiver for Theia Group,
                                                                       Incorporated (legal representative),
                                                                       Theia Group, Incorporated

X_____     X_____
Place; Date                                                    Assignee, represented by:
                                                                       Mitchell Adams,
                                                                       Title: _____ Rising Sky, LLC
                                                                       Rising Sky, LLC.

**ISRAEL**
(NO  LEGALISATION)

# POWER OF ATTORNEY

I (we): **RISING SKY, LLC**

hereby appoint **LUZZATTO & LUZZATTO**
P.O. B. 5352, Beer-Sheva 84 152

severally and jointly to act as my (our) lawful agent(s) for the purpose of
-- making and/or prosecuting applications for the grant of patents or the registration of
designs or trade marks;
-- applying for the renewal, the extension and the restoration of patents, designs or trade
marks; making applications for the entry in the respective registers of assignments,
mortgages or licenses in respect of patents or designs, or trademarks;
-- opposing the grant of patents, or the registration of trade marks;
-- filing and conducting petitions for revocation of patents;
-- instituting, conducting or defending any proceedings before the Registrar of Patents,
Designs and Trademarks, including proceedings for the cancellation of designs or trade
marks, or the rectification or correction of the respective registers, or petitions for
extension orders and oppositions thereto, or the grant of compulsory licenses in respect of
patents or designs;
-- applying for leave to amend patent specifications or to add to or alter trade marks;

and in connection with the above, I (we) authorize said agent(s) to make any declarations and
sign any documents which they may lawfully make or sign in my (our) name(s); to withdraw
any applications or declarations made; to appeal before the Registrar of Patents and Designs,
the Registrar of Trade Marks  and to oppose an appeal;  to institute and act on my (our) behalf
in any proceedings before any Court in Israel and to appoint any attorney at law to represent
me (us) in the said proceedings;  to receive all notices, requisitions and communications;  to
indicate addresses for service;  to pay any fees prescribed;  to demand, enforce and receive
any payments from opposite parties and to give valid receipts;  to inspect any files or
registers;  to make agreements with opposite parties in or in connection with the above
proceedings;  and to delegate in whole or in part the powers hereby conferred.

I (we) hereby declare that I am (we are)*:  a US company

Address: 1001 4TH Avenue, Suite 4330, Seattle, WA, 98154, U.S.A

Dated this _____ day of _____ 2023

_____
(signature)

1(by) **Mitchell Adams**

2(by) _____
**Title**

(PoA v-0101)
*Here  insert nationality of applicant(s)
(1) Here insert full name of signatory
(2) Here insert position of signatory                    (Authorized Signature)
#

38359/IL/18-np1<br>
38359/IL/18-DIV1<br>
38360/IL/18-np2<br>
38360/IL/18-DIV1<br>
39682/IL/19-np2<br>
38281/IL/18-np1

## A S S I G N M E N T

*WHEREAS*, I/We,

**THEIA GROUP, INC.** a US corporation, having a place of business at 1600 Market Street, Suite 1320 Philadelphia, PA 19103, U.S.A.;
Hereinafter referred to as **Assignor**, is the owner of the entire right, title and interest in and to the following Israeli Patent Applications:

No. **295502** and No. **263313**, having the title "**RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS**"; and

No. **263244** and No. **294633**, having the title "**SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY**"

No. **270042**, having the title "**SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES**"

(hereinafter: "**the applications**");

and the following Israeli Patent(s):

No. **262694**, having the title " **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** " (hereinafter: "**the Patent**");

AND *WHEREAS*, I/We,

**RISING SKY, LLC,** a US limited liability company of the state of Delaware, having a place of business at 1001 4TH Avenue, Suite 4330, Seattle, WA, 98154, U.S.A.;
Hereinafter referred to as **Assignee**, is desirous of obtaining all right, title and interest in and to the above mentioned applications.

***NOW, THEREFORE,*** In consideration of One Dollar ($ 1.00) to said Assignor in hands paid, and other good and valuable consideration, the receipt of which is hereby acknowledged, the Assignor does hereby sell, assign, transfer and set over unto the Assignee, its successors, legal representatives and assigns all its above rights, title and interest in and to the applications and the patent including the goodwill symbolized by the applications and patent set forth above and covenant without further remuneration, to execute and deliver all documents required for transferring the applications and the patent to said Assignee or its assigns, to communicate to said assignee or its representatives all facts known to the undersigned with respect to the applications and the patent, whenever requested, to testify in any legal proceedings in which the applications and the patent may become involved, to sign all lawful papers, make all rightful oaths, and to do generally everything necessary to aid said Assignee, its successors, assigns and nominees to register the Assignment of the applications and the patent, the expenses incident to said applications and patent to be borne and paid by said Assignee. The rights assigned, sold, and transferred hereunder by **Assignor**, including rights to the invention,

1

38359/IL/18-np1
38359/IL/18-DIV1
38360/IL/18-np2
38360/IL/18-DIV1
39682/IL/19-np2
38281/IL/18-np1

patent application, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

The Assignor confirms that this Assignment includes all of all statutory and common law rights attaching to the applications and patent and the right to sue for past infringements and to retain any damages as a result of such action.

IN TESTIMONY WHEREOF, said parties have executed this document on the date indicated below.

Accepted and agreed:


| | | **Michael Fuqua** | **Receiver for Theia Group, Incorporated (legal representative)** |
|---|---|---|---|
| _____ | _____ | | |
| Date | **Theia Group, Incorporated** | By | Position |


| | | **Mitchell Adams** | |
|---|---|---|---|
| _____ | _____ | | _____ |
| Date | **Rising Sky, LLC** | By | Position |

2

38359/IL/18-np1
38359/IL/18-DIV1
38360/IL/18-np2
38360/IL/18-DIV1
39682/IL/19-np2
38281/IL/18-np1

## NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument ASSIGNMENT AGREEMENT was acknowledged before me this _____day of _____ (month), _____ (year), by Michael Fuqua, Receiver of THEIA GROUP, INCORPORATED., a Delaware corporation, on behalf of the corporation,

who is
____personally known
 ____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

_____
(Signature Notary)

_____
Name of Notary

Notary Public, State of Georgia

My Commission expires: _____

## NOTARIAL CERTIFICATE

State of Washington

County of _____

I certify that I know or have satisfactory evidence that Mitchell Adams (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of RISING SKY, LLC (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)

_____
Signature

_____
Title

My appointment expires:_____

3

# **DEED OF ASSIGNMENT**

THIS DEED OF ASSIGNMENT is made on this…………… day of……………, 2023 between  **THEIA GROUP INC.**, a company incorporated in USA, located 1600 Market Street, Suite 1320, Philadelphia, PA 19103, U.S.A., (hereinafter referred to  as the **"Assignor"**) of one part; and **RISING SKY, LLC,** a limited liability company organized in USA, located at 1001 4th Avenue, Suite 4330, Seattle, WA 98154, U.S.A., (hereinafter referred to as the "**Assignee**") of the other part, under the terms and conditions set hereunder:

WHEREAS the Assignor is the sole owner of the following inventions and patent applications listed below:

(1) the invention having the title "SYSTEM FOR EMPLOYING CELLULAR TELEPHONE NETWORKS TO OPERATE CONTROL AND COMMUNICATE WITH UNMANNDED AERIAL VEHICLES AND REMOTE PILOTED VEHICLES", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201837012107 dated March 30, 2018;

(2) the invention having the title "LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201837045587 dated December 3, 2018;

(3) the invention having the title "SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201837049792 dated December 29, 2018;

(4) the invention having the title "SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201937046971 dated November 18, 2019;

(5) the invention having the title "RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201837049014 dated December 24, 2018;

(6) the invention having the title "SYSTEM FOR COMMUNICATIONS WITH UNMANNED AERIAL VEHICLES USING TWO FREQUENCY BANDS", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201837043271 dated November 16, 2018;

(7) the invention having the title "SYSTEM FOR VERIFICATION OF INTEGRITY OF UNMANNED AERIAL VEHICLES", whereof an application for patent protection has been filed before the Patent Office, Government of India under the Patent Application No. 201837042699 dated November 13, 2018;

WHEREAS the above listed inventions are hereinafter collectively referred to as the "present inventions", and wherein the above identified applications are hereinafter collectively referred to as "the applications";

WHEREAS the Assignor expresses the desire to assign the present inventions with the sole right, title and interests therein to the Assignor and the Assignee agrees to accept the said invention hereinafter by paying the consideration amount as expressed hereinunder.

WHEREAS the Assignor hereby assigns all of Assignor's right, title and interests in the present inventions under the aforesaid respective patent applications filed in India to the

Assignee for the entire term of the respective patents including Letters Patent for a consideration amount of US $100.00 (One hundred US Dollar only).   The rights assigned, sold, and transferred hereunder by Assignor, including rights to the inventions, patent applications, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

WHEREAS the Assignee has made the payment of the aforesaid consideration amount in favour of the Assignor that may issue from foreign applications, divisions, continuations in whole or part or substitute application(s) filed claiming the benefit of the present inventions and the applications; and

WHEREAS the Assignor hereby undertakes to assist the Assignee in all proceedings to obtain the Patent Registration before the Indian Patent Office and in all other proceedings related to said patent applications before the various authorities by executing any documents that may be required, documents to be prepared at the Assignee's expense.

IN WITNESS WHEREOF the parties aforesaid have set their respective hands in the presence of the witnesses hereunder.


_____          _____

**THEIA GROUP INC.**                              **RISING SKY, LLC.**

     (Assignor)                                   (Assignee)

Name:  Michael Fuqua                         Name: Mitchell Adams
Title:    Receiver (legal representative)       Title:
       Theia Group, Inc.


**WITNESSES:**


1) Signature _____          2)    Signature _____

  Name:                                           Name:

  Address:                                        Address:

## NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument DEED OF ASSIGNMENT was acknowledged before me this _____day of
_____ (month), _____ (year), by Michael Fuqua, Receiver of THEIA GROUP, INC., a
Delaware corporation, on behalf of the corporation,

who is

____personally known
____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

_____
(Signature Notary)


**_____**
Name of Notary
Notary Public, State of Georgia

My Commission expires: _____

## NOTARIAL CERTIFICATE

State of Washington

County of _____


I certify that I know or have satisfactory evidence that Mitchell Adams (name of person) is the
person who appeared before me, and said person acknowledged that (he/she) signed this
instrument, on oath stated that (he/she) was authorized to execute the instrument and
acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of Rising
Sky, LLC (name of party on behalf of whom instrument was executed) to be the free and
voluntary act of such party for the uses and purposes mentioned in the instrument.


Dated:_____


(Seal or stamp)

_____
Signature

_____
Title

My appointment expires:_____

# DEED OF ASSIGNMENT

I/We, the undersigned, <u>THEIA GROUP, INC.</u> do hereby declare that I/we are the true owner of
<u>Japanese Patent Nos. 6794434, 6896982, 7012804, 7116448, 7116449, 7121372 and 7036744 and Japanese Patent Application Nos. 2018-554366, 2022-116033, 2022-116034 and 2022-120005</u>
and that I/we have assigned all of our rights in respect to the said Patents unto
<u>RISING SKY, LLC</u> of <u>1001 4TH Ave, Suite 4330, Seattle, WA 98154 (US).</u>
I/We also hereby authorize the said Assignee to solely take all the proceedings necessary for the registration of this assignment at the Japan Patent Office.

<u>THEIA GROUP, INC.</u> agrees to sign all lawful papers, make all rightful oaths, and to do generally everything necessary to aid said Assignee, its successors, assigns and nominees to register the Assignment of the patents and applications, the expenses incident to said applications to be borne and paid by said Assignee.

<u>THEIA GROUP, INC.</u> confirms that this Assignment includes all of all statutory and common law rights attaching to the inventions, applications, and patents, and the right to sue for past infringements and to retain any damages as a result of such action.

The rights assigned, sold, and transferred hereunder by THEIA GROUP, INC., including rights to the inventions, patents, patent applications, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

Date: _____

Company:
  Name:    <u>THEIA GROUP, INC.</u>
  Address:  <u>1600 Market Street, Suite 1320, Philadelphia, PA 19103 (US).</u>

Signature: _____
Print Name: <u>Michael Fuqua</u>
Title:      <u>Receiver (legal representative)</u>

ERUUM & LEEON INTELLECTUAL PROPERTY LAW FIRM                          REPUBLIC OF KOREA

# Corporation Nationality Certificate
**[Notarization required]**


I, the undersigned, do hereby certify that **THEIA GROUP, INCORPORATED (applicant code: 5-2018-073920-1)** having its address at **1600 Market Street Suite 1320 Philadelphia, PA 19103, United States of America**. is a corporation duly organized and existing under the laws of **United States of America** and that I am a lawful representative of said corporation and am/are authorized to execute documents relating to intellectual property matters on behalf of the corporation.


**THEIA GROUP, INCORPORATED**

By _____ [signature]

Signatory's Name: Michael Fuqua

Signatory's Title: Receiver (legal representative)



State of Georgia

County of Fulton

This instrument Corporation Nationality Certificate was acknowledged before me this _____day of _____ (month), _____ (year), by Michael Fuqua, Receiver THEIA GROUP, INCORPORATED., a Delaware corporation, on behalf of the corporation,

who is

____personally known
____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

_____
(Signature Notary)


_____
Name of Notary

Notary Public, State of Georgia

My Commission expires: _____

*Instructions for execution: This Certificate must be signed and notarized. Instead of using the notarization form included in this draft Certificate, you may use the notarization form, which is usually used by the notary public providing the notarization. However, please note that if the notarization is separate (i.e. not on the Certificate itself),*

**ERUUM & LEEON INTELLECTUAL PROPERTY LAW FIRM**                              **REPUBLIC OF KOREA**

*the notarization must be integrally appended to the Certificate with an inseparable seal. Under Korean practice a notarization is valid for only 6 months from the notarization date.*

**ERUUM & LEEON INTELLECTUAL PROPERTY LAW FIRM**                                        **REPUBLIC OF KOREA**

## DEED OF ASSIGNMENT
## [Simply signed]

Assignor          Name: THEIA GROUP, INCORPORATED (applicant's code: 5-2018-073920-1)
                  Address: 1600 Market Street Suite 1320 Philadelphia, PA 19103, United States of America


Assignee          Name: RISING SKY, LLC
                  Address: 1001 4th Avenue, Suite 4330, Seattle, WA 98154, United States of America


I, the undersigned, am duly authorized to execute this Deed of Assignment on behalf of the Assignor indicated above; and I do hereby certify and declare that the Assignor, which is the owner of the Korean intellectual property right(s) indicated below, hereby assigns, transfers and sells all rights herein, including, rights to the invention, patent application, and patent rights, AS IS, WHERE IS and without representation, warranty, or recourse of any kind to the Assignee indicated above.

> 1) KR Patent No. 10-2244863
> Title: RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS
>
> 2) KR Patent No. 10-2165365
> Title: LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM
>
> 3) KR Patent No. 10-2463928
> Title: SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY
>
> 4) KR Patent Application No. 10-2019-7034471
> Title: SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES
>
> 5) KR Patent Application No. 10-2022-7038340
> Title: METHOD FOR MONITORING CHANGE IN ANALOG OR PHYSICAL STATE CONDITIONS OF MACHINE


Dated this _____day of _____, 2023


By_____
Assignor: THEIA GROUP, INCORPORATED

Signatory's Name: Michael Fuqua

Signatory's Title: Receiver (legal representative)

# POWER OF ATTORNEY

I/We, the undersigned, **RISING SKY, LLC**, a corporation/citizen(s) of **United States of America**, having a principal office/residence at **1001 4th Avenue, Suite 4330, Seattle, WA 98154, United States of America** do hereby appoint ERUUM & LEEON Intellectual Property Law Firm(Attorney Code: 9-2016-100061-5) registered patent attorney in Korea, as patent attorneys, with full power and authority, to take, on my/our behalf, all and every proceedings for the following matters :

1) KR Patent No. 10-2244863
Title: RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES
AND OBJECTS

2) KR Patent No. 10-2165365
Title: LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR
COMMUNICATIONS WITH
RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM

3) KR Patent No. 10-2463928
Title: SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE
TELEMETRY

4) KR Patent Application No. 10-2019-7034471
Title: SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT
OF AIRCRAFT
COCKPIT TO GROUND SERVICES

5) KR Patent Application No. 10-2022-7038340
Title: METHOD FOR MONITORING CHANGE IN ANALOG OR PHYSICAL STATE
CONDITIONS OF
MACHINE

before the Korean Intellectual Property Office, and further empower said attorneys, if necessary, to do any or all of the following:

1. to take all necessary steps for the filing, prosecution and registration of said application.
2. to divide, convert, abandon or withdraw said application.
3. to make a double application based on said patent application or utility model application.
4. to withdraw or abandon a petition, an opposition, a request, a demand, an administrative petition or a suit made in relation to said application.
5. to claim priority under Article 55(1) of the Patent Law or Article 18 of Utility Model Law, or withdraw such a claim.

**ERUUM & LEEON Intellectual Property Law Firm**

6.  to make a request for technical evaluation.
7.  to withdraw an application for registration of an extension of the term of a patent right.
8.  to appoint and to revoke sub-agents.
9.  to counteract against an opposition in relation to said application.
10. to make an appeal against a decision of rejection of said application or of an amendment, or against a ruling for revocation to the Industrial Property Tribunal, the Patent Court or the Supreme Court.
11. to make an administrative petition or suit from dissatisfaction with an administrative action.
12. to perform all other formalities and acts under the provisions concerned with the Patent, Utility Model, Design and Trademark Laws of Korea or any Order issued therefrom before and after the completion of registration.

By my signature below, I hereby affirm that I have legitimate authority to sign power of attorney on behalf of the legal entity.


Executed this _____ day of _____, 2023
*RISING SKY, LLC*


Signature:              _____

Signatory's full name:   _____    Mitchell Adams    _____

Signatory's official title:   _____    legal representative    _____

(No Notarization Required)


**ERUUM & LEEON Intellectual Property Law Firm**

# POWER OF ATTORNEY

I/We, the undersigned, **THEIA GROUP, INCORPORATED (applicant code: 5-2018-073920-1)**, a corporation/citizen(s) of **United States of America**, having a principal office/residence at **1600 Market Street Suite 1320 Philadelphia, PA 19103, United States of America** do hereby appoint ERUUM & LEEON Intellectual Property Law Firm(Attorney Code: 9-2016-100061-5) registered patent attorney in Korea, as patent attorneys, with full power and authority, to take, on my/our behalf, all and every proceedings for the following matters :

1) KR Patent No. 10-2244863
Title: RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS

2) KR Patent No. 10-2165365
Title: LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH
RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM

3) KR Patent No. 10-2463928
Title: SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY

4) KR Patent Application No. 10-2019-7034471
Title: SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT
COCKPIT TO GROUND SERVICES

5) KR Patent Application No. 10-2022-7038340
Title: METHOD FOR MONITORING CHANGE IN ANALOG OR PHYSICAL STATE CONDITIONS OF
MACHINE

before the Korean Intellectual Property Office, and further empower said attorneys, if necessary, to do any or all of the following:

1. to take all necessary steps for the filing, prosecution and registration of said application.
2. to divide, convert, abandon or withdraw said application.
3. to make a double application based on said patent application or utility model application.
4. to withdraw or abandon a petition, an opposition, a request, a demand, an administrative petition or a suit made in relation to said application.

**ERUUM & LEEON Intellectual Property Law Firm**

5. to claim priority under Article 55(1) of the Patent Law or Article 18 of Utility Model Law, or withdraw such a claim.
6. to make a request for technical evaluation.
7. to withdraw an application for registration of an extension of the term of a patent right.
8. to appoint and to revoke sub-agents.
9. to counteract against an opposition in relation to said application.
10. to make an appeal against a decision of rejection of said application or of an amendment, or against a ruling for revocation to the Industrial Property Tribunal, the Patent Court or the Supreme Court.
11. to make an administrative petition or suit from dissatisfaction with an administrative action.
12. to perform all other formalities and acts under the provisions concerned with the Patent, Utility Model, Design and Trademark Laws of Korea or any Order issued therefrom before and after the completion of registration.

By my signature below, I hereby affirm that I have legitimate authority to sign power of attorney on behalf of the legal entity.

Executed this  _____  day of  _____, 2023

*THEIA GROUP, INCORPORATED*

Signature:  _____

Signatory's full name:  _____ Michael Fuqua _____

Signatory's official title:  \_\_\_ Receiver (legal representative) \_\_\_

(No Notarization Required)

| **CARTA PODER** | **POWER OF ATTORNEY** |
|---|---|
| SERGIO SILVA MENDOZA / JUAN MANUEL RUIZ MENDOZA / MARIO ALBERTO VILLASEÑOR OLVERA / JORGE ANGEL MENENDEZ SERRANO | SERGIO SILVA MENDOZA / JUAN MANUEL RUIZ MENDOZA / MARIO ALBERTO VILLASEÑOR OLVERA / JORGE ANGEL MENENDEZ SERRANO |
| Muy Señores nuestros: | Gentlemen: |
| Por la presente doy (damos) a ustedes, poder especial, tan amplio y suficiente para que aisladamente o en conjunto, en mi (nuestro) nombre y representación tramiten ante las autoridades de la República Mexicana que correspondan, los registros de mis (nuestras) patentes, modelos de utilidad, diseños industriales, marcas, nombres y avisos comerciales, y cualquier otra figura relacionada con la Propiedad Industrial; gestionen renovaciones, inscriban licencias y/o transmisiones de nuestros derechos de propiedad industrial, oír y recibir notificaciones, a cuyo efecto se les faculta para dar todos los pasos necesarios al objeto indicado, así como el conservar y mantener los derechos de Propiedad Industrial de las figuras mencionadas, y tomar todas las medidas que creyeran conducentes al resguardo de mis (nuestros) intereses. | I (we) hereby confer upon you special, ample and sufficient power to jointly or separate, in my (our) name and behalf, apply before the respective authorities of the Mexican Republic, the registrations of my (our) Patents, Utility Models, Industrial Designs, trademarks, Commercial Names and Advertisements, and any other figure related to Industrial Property, file renewals, file license agreements, hear and receive notifications, to which effect we empower you to take all the necessary steps to achieve the indicated, and conserving and maintaining the Industrial Property rights of the above figures, and taking all necessary measures that we deem appropriate for the protection of my (our) rights. |
| Este poder se otorga y es válido conforme a las Leyes del lugar donde se otorga. El firmante de éste documento tiene la capacidad legal suficiente para firmarlo en representación de la empresa: RISING SKY, LLC | This Power of Attorney is granted and valid in accordance with the Laws of the Country wherein it is executed. The person signing this document has the legal authority to sign this document on behalf of: RISING SKY, LLC |
| En la Ciudad de: Seattle, Washington – EUA | In (city/state):  Seattle, WA - USA |
| El día: _____, 2023 | Date: _____, 2023 |

Atentamente, – Respectfully yours,

(please sign here)

_____
**RISING SKY, LLC**
Mitchell Adams – Legal Representative
Mitchell Adams - Representante Legal

| Testigo/Witness: | Witness/Testigo: |
|---|---|
| (please sign here) | (please sign here) |
| --------------------------------- | ------------------------------- |
| 1.- Name and address | 2.- Name and address |

SERGIO SILVA MENDOZA
JUAN MANUEL RUIZ MENDOZA
MARIO ALBERTO VILLASEÑOR O.

## ASSIGNMENT

THEIA GROUP, INCORPORATED, whose name and residence is indicated below is the owner of the following inventions and patent applications:

**(1) PCT/US2017/035036 - MX/a/2018/014569 entitled "Radar system to track low flying unmanned aerial vehicles and objects"**, and

**(2) PCT/US2017/030847 - MX/a/2018/013489 entitled "Low Earth Orbit Satellite Constellation System For Communications With Re-Use Of Geostationary Satellite Spectrum"; and**

**(3) PCT/US2017/035264 - MX/a/2018/014739 entitled "System For Transmission And Digitization Of Machine Telemetry"; and**

**(4) PCT/US2018/28571- MX/a/2019/012692 entitled "System For Recording And Real-Time Transmission Of In-Flight Of Aircraft Cockpit To Ground Services";**

THEIA GROUP, INCORPORATED hereby assigns and transfers the whole rights to the inventions, including the patent applications and title, the ownership of said inventions, as is, where is, and without representation, warranty or recourse of any kind to: **RISING SKY, LLC**

herein after referred as the "Assignee", an entity legally constituted and existing under the Laws of the State of: Delaware - USA

for the consideration of $100.00 Mexican pesos, receipt of which is hereby acknowledged and therefore, the Assignee can be considered the proprietor of the invention rights as from now on, to exploit it or to dispose of it as best as it consider convenient, with no further claim by the inventor(s) at any time nor in any way.

FIRST ASSIGNOR / INVENTOR
PRIMER CEDENTE / INVENTOR

Name/Nombre: **THEIA GROUP, INCORPORATED**

Address/Dirección: Market Street 1600, Suite 1320 – Philadelphia, PA – 19103 USA

---

## MEXICO
### ASSIGNMENT OF INVENTION / CESION DE INVENCION

## CESION

THEIA GROUP, INCORPORATED, cuyo nombre y domicilio se indica a continuación, es titular de las siguientes invenciones y solicitudes de patente

**(1) PCT/US2017/035036 – MX/a/2018/014569, titulada "Sistema de radar para rastrear vehículos y objetos aéreos no tripulados de vuelo bajo",** y

**(2) PCT/US2017/030847 - MX/a/2018/013489 titulada "Sistema de constelación de satélites de órbita terrestre baja para comunicaciones con reutilización de espectro de satélites geoestacionarios", y**

**(3) PCT/US2017/035264 - MX/a/2018/014739 titulada "Sistema de transmisión y digitalización de telemetría de máquina"; y**

**(4) PCT/US2018/028571- MX/a/2019/012692 titulada "Sistema de grabación y transmisión en tiempo real de la cabina de aeronaves durante el vuelo para servicios terrestres";**

THEIA GROUP, INCORPORATED cede y transfiere todos los derechos de las invenciones, incluidas las solicitudes de patentes y el título de patente, la propiedad de dichas invenciones, tal cual, donde están y sin representación, garantía o recurso de ningún tipo a: **RISING SKY, LLC**.

de aquí en adelante referida como la "cesionaria", una entidad legalmente constituida y existente bajo las leyes del Estado de: Delaware - EUA

por la consideración de $100.00 pesos Moneda Nacional, de los cuales se acusa recibo en la presente y por lo tanto, la cesionaria puede considerarse desde ahora la dueña de los derechos de invención para explotarla o disponer de ella a su mejor conveniencia sin que pueda haber reclamo ulterior por parte del (de los) inventor(res) en ningún tiempo o forma.

ASSIGNEE / APPLICANT
CESIONARIA / SOLICITANTE

Name/Nombre: **RISING SKY, LLC**

Address/Dirección: 1001 4TH Avenue, Suite 4330, Seattle, WA -- 98154 USA

Signature: _____
**Michael Fuqua – Receiver for Theia Group,**
**Incorporated (Legal Representative)**
**Receptor para Theia Group, Incorporated**
**(Representante Legal)**

Signature: _____
**Mitchell Adams –_____ Rising Sky, LLC**
**(Legal Representative)**
**(Representante Legal)**

FIRST WITNESS
PRIMER TESTIGO

SECOND WITNESS
SEGUNDO TESTIGO

Name/Nombre:

Name/Nombre:

Signature: _____

Signature: _____

## NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument ASSIGNMENT AGREEMENT was acknowledged before me this _____day of _____ (month), _____ (year), by Michael Fuqua, Receiver of THEIA GROUP, INCORPORATED, a Delaware corporation, on behalf of the corporation,

who is

_____personally known
_____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

_____
(Signature Notary)

_____
Name of Notary

Notary Public, State of Georgia

My Commission expires: _____

**NOTARIAL CERTIFICATE**

State of Washington

County of _____

I certify that I know or have satisfactory evidence that <u>Mitchell Adams</u> (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of <u>RISING SKY, LLC</u> (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)

_____
Signature

_____
Title

My appointment expires:_____

| ДОГОВОР | AGREEMENT |
|---|---|
| ОБ ОТЧУЖДЕНИИ ИСКЛЮЧИТЕЛЬНОГО ПРАВА | ON THE ASSIGNMENT |

Мы, нижеподписавшиеся,

**Тхеиа Гроуп, Инкорпоратед**
**1600 Маркет Стреет Суите 1320 Филаделфия, ПА 19103, США**
(патентообладатель)

We, the undersigned,

**Theia Group, Incorporated**
**1600 Market Street Suite 1320 Philadelphia, PA 19103, USA**
(hereinafter designated as The Patentee)

правообладатель следующих патентов на изобретение, зарегистрированных в Российской Федерации
  **№ 2729607, заявка № 2018108416**
  **№ 2721185, заявка № 2018137854**
  **№ 2733905, заявка № 2018137880**
  **№ 2737058, заявка № 2018143511**
  **№ 2730169, заявка № 2018140570**
  **№ 2772837, заявка № 2018143512**
  **№ 2777952, заявка № 2019137121**

being the holder of the following invention patents registered in the Russian Federation
  **No. 2729607, application No. 2018108416**
  **No. 2721185, application No. 2018137854**
  **No. 2733905, application No. 2018137880**
  **No. 2737058, application No. 2018143511**
  **No. 2730169, application No. 2018140570**
  **No. 2772837, application No. 2018143512**
  **No. 2777952, application No. 2019137121**

настоящим передаем исключительное право на вышеуказанные патенты

**Рисинг Скай, ЛЛЦ**
**1001 4тх Авенуе, Суите 4330, Сиэтл, ВА 98154, США**
(приобретатель)

hereby assign the rights of aforesaid patents to

**Rising Sky, LLC**
**1001 4th Avenue, Suite 4330, Seattle, WA 98154, USA**
(hereinafter designated as The Assignee)

на территории Российской Федерации, на срок действия патента и заявляем, что впредь приобретатель имеет исключительное право на данные патенты.

in the territory of the Russian Federation, during the period of validity of patents, and declare that The Assignee is henceforth to be considered as having the exclusive rights in and to the said patents.

Мы, приобретатель, настоящим подтверждаем, что мы принимаем права на вышеуказанные патенты.
Права, переданные и проданные по настоящему договору, переуступаются и продаются как есть, где есть и без каких-либо заверений, гарантий или регресса.
Цена договора представляет собой конфиденциальную информацию и является предметом отдельного соглашения сторон.

We, The Assignee, hereby declare that we accept the rights of said patents.
The rights assigned and sold hereunder are being assigned and sold as is, where is and without representation, warranty or recourse of any kind.
The cost of the agreement is confidential and is specified in a separate agreement of the parties.

Настоящий договор составлен в Джорджии, США "23" ноября 2022 года в трех экземплярах на русском и на английском языках, причем русский текст имеет преимущество.

This agreement is executed in Georgia, USA on the "23" day of November 2022 in triplicate, each copy in Russian and in English and Russian text has advantage.

| От имени патентообладателя | For and on behalf of The Patentee |
|---|---|
| *(имя, должность,подпись, печать)* | *(name, position, signature, seal)* |

**Мичаел Фуяуа**
**Управляющий Тхеиа Гроуп, Инкорпоратед**
**(представитель)**

**Michael Fuqua**
**Receiver for Theia Group, Incorporated**
**(legal representative)**

| От имени приобретателя | For and on behalf of The Assignee |
|---|---|
| *(имя, должность, подпись, печать)* | *(name, position, signature, seal)* |

**Митчелл Адамс**
**(представитель)**

**Mitchell Adams**
**(legal representative)**

| ДОВЕРЕННОСТЬ | POWER OF ATTORNEY |
|---|---|

Настоящая доверенность выдана (имя патентного поверенного, его № регистрации)

The present Power of Attorney is granted to (name of the attorney and number of his certificate)

**Аверьянов Евгений Константинович, 453**
Адрес:
**а/я 31, г. Санкт-Петербург, 197375, РОССИЯ**

**Averyanov Eugene Konstantinovich, 453**
Address:
**a/ya 31, Saint-Petersburg, 197375, RUSSIA**

в том, что ему поручается представлять интересы

which is hereby empowered to represent the interests of

**Рисинг Скай, ЛЛЦ**
Адрес:
**1001 4тх Авенуе, Суите 4330, Сиэтл, ВА 98154, США**

**Rising Sky, LLC**
Address:
**1001 4th Avenue, Suite 4330, Seattle, WA 98154, USA**

по всем вопросам, связанным с приобретением, поддержанием, защитой, передачей, получением прав промышленной собственности и распоряжением исключительным правом по договору на территории Российской Федерации и других территориях, признающих полномочия указанного лица в качестве зарегистрированного патентного поверенного.

in all matters related to application for granting, maintenance, protection, transfer, assignment of industrial property rights and disposal of the exclusive rights under an agreement within the territory of the Russian Federation and other territories where the qualification of the said person as registered patent attorney are recognized.

Настоящая доверенность действительна в течение трех лет.

This Power of Attorney is valid for three years.

| место | **Вашингтон, США** | place | **Washington, USA** |
|---|---|---|---|

| дата | **23 ноября 2022 года** | date | **November 23, 2022** |
|---|---|---|---|

| | подпись | signature | |
|---|---|---|---|

| подписано | **Митчелл Адамс (представитель)** | signed by | **Mitchell Adams (legal representative)** |
|---|---|---|---|
| | (имя, должность, подпись, печать) | | (name, position, signature, seal) |

DATED                    2023

Between

**THEIA GROUP, INCORPORATED**

*As the Assignor*

And

**RISING SKY, LLC.**
*As the Assignee*

_____

**ASSIGNMENT OF PATENT**
_____

**Yusarn Audrey LLC**
4 Shenton Way
#14-03, SGX Centre 2
Singapore 068807
Tel (65) 6358 2865
Fax (65) 6358 2864
Email: enquiries@yusarn.com

**CONTENTS**

CLAUSE          HEADING                                                                                      PAGE

1.      ASSIGNMENT.................................................................................................1
2.      FURTHER ASSURANCE ....................................................................................1
3.      EXECUTION OF DEED........................................................................................1
4.      GOVERNING LAW .............................................................................................2


SCHEDULES

1       Invention………………………………………………………………… ...................................................3
2       Patent  ..............................................................................................................4

**THIS DEED** is made on                    2023 ("**Deed**")

**BETWEEN**

(1)     **THEIA GROUP, INCORPORATED** (Co. Reg. No. 6114523), a company incorporated under the laws of the State of Pennsylvania, United States, with its registered address at 1600 Market Street, Suite 1320 Philadelphia, PA 19103, United States of America, 19103, United States (the "**Assignor**"); and

(2)     **RISING SKY, LLC.** (Co. Reg. No. 6729327), a limited liability company organized under the laws of the State of Delaware, United States, with its registered address at 1001 4th Avenue, Suite 4330, Seattle, WA 98154 United States (the "**Assignee**").

**WHEREAS:**

(A)     The Assignor is the proprietor and beneficial owner of the invention described in Schedule 1 (hereinafter referred to as the "**Invention**") and the patent as set out in Schedule 2 (hereinafter referred to as the "**Patent**").

(B)     The Assignor has agreed to assign to the Assignee the Patent on the terms set out in this Deed.

**NOW THIS DEED HEREBY WITNESSES** as follows:

**1.      ASSIGNMENT**

1.1     In consideration of the sum of S$1/- now paid by the Assignee to the Assignor (the receipt of which is hereby acknowledged by the Assignor), subject to Clause 2 below, the Assignor hereby ASSIGNS absolutely as beneficial owner to the Assignee, on an as is and where is basis, without any representation or warranty whatsoever, express or implied, and without recourse, all its rights, titles and interests, throughout the world in and to the Patent, together with all rights and powers arising or accrued therefrom including the right to sue for damages and other remedies in respect of any infringement of such rights or other acts within the scope of the claims of any published specification of the Patent;

**2.      FURTHER ASSURANCE**

2.1     The Assignor further covenants that at the direction and expense of the Assignee it will at all times hereafter do all such acts and execute all such documents as may reasonably be necessary or desirable to enable the Assignee to enjoy the full benefit of the property and rights hereby assigned, to secure the vesting in the Assignee of all rights assigned to the Assignee hereunder in any country and to assist in the resolution of any question concerning the Patent, whether in the course of legal proceedings or otherwise to uphold the Assignee's rights herein.

**3.      EXECUTION OF DEED**

3.1 This Deed may be executed in two or more counterparts, each of which shall be an original but all of which together shall constitute one and the same Deed.

3.2 If any provision or term of this Deed shall become or be declared illegal, invalid or unenforceable for any reason whatsoever, such term or provision shall be divisible from this Deed and shall be deemed to be deleted from this Deed to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, provided always that if such deletion substantially affects or alters the commercial basis of this Deed the parties shall negotiate in good faith to amend and modify the provisions and terms of this Deed so as to achieve so far as possible the same economic effect without rendering the Deed so amended or modified illegal, invalid or unenforceable.

**4.** **GOVERNING LAW**

4.1 <u>Governing law</u>: This Deed shall be governed by and construed in accordance with the laws of Singapore.

4.2 <u>Jurisdiction</u>: The parties hereby submit to the non-exclusive jurisdiction of the Singapore courts.

<u>**SCHEDULE 1**</u>

<u>Invention</u>

**SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY**

<u>ABSTRACT</u>

A system for digitizing gauges, lights and other human-readable machine gauges and functions and status without interfering with the operation of the machine or requiring reworking or interfering with the existing machine wiring, signaling, electrical or mechanical elements or operating modes, or adding new digitizing equipment to the machine

## SCHEDULE 2

**Patents**

| S. No. | Patent No. | Country | Grant Date |
|--------|------------|---------|------------|
| 1. | 11201810480R | Singapore | 27 August 2021 |

**IN WITNESS WHEREOF** this Deed has been executed on the date stated at the beginning.

<u>ASSIGNOR</u>

For and on behalf of                              )
**THEIA GROUP, INCORPORATED** )


By:

_____
Michael Fuqua
Receiver
Theia Group, Incorporated

NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument DEED OF ASSIGNMENT was acknowledged before me this _____day of _____
(month), _____ (year), by Michael Fuqua, Receiver of THEIA GROUP, INCORPORATED, a Delaware
corporation, on behalf of the corporation,

who is

  ____personally known
  ____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)


                                        (Signature Notary)


                                        _____
                                        Name of Notary

                                        Notary Public, State of Georgia


My Commission expires: _____

<u>ASSIGNEE</u>

For and on behalf of                              )
**RISING SKY, LLC**                         )


By:

_____
Mitchell Adams
Title: _____
Rising Sky, LLC.
(Legal Representative)


NOTARIAL CERTIFICATE


State of Washington

County of _____

I certify that I know or have satisfactory evidence that Mitchell Adams (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument DEED OF ASSIGNMENT, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of RISING SKY, LLC (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)                                    _____
                                                                    Signature


                                                                    _____
                                                                    Title


                               My appointment expires:_____

- 6 -

DATED          2023

Between


**THEIA GROUP, INCORPORATED**

*As the Assignor*

And


**RISING SKY, LLC**

*As the Assignee*


_____

**ASSIGNMENT**
**Of**
**Inventions & Patent Applications**
_____


**Yusarn Audrey**
4 Shenton Way
#14-03, SGX Centre 2
Singapore 068807
Tel (65) 6358 2865
Fax (65) 6358 2864
Email: enquiries@yusarn.com

## **CONTENTS**

CLAUSE          HEADING                                                                      PAGE

1.      ASSIGNMENT ......................................................................................................... 3
2.      FURTHER ASSURANCE ............................................................................................ 4
3.      EXECUTION OF DEED .............................................................................................. 4
4.      GOVERNING LAW .................................................................................................... 4

SCHEDULES

Details of Inventions and Patent Applications ...................................................................... 6

**THIS DEED** is made on             2023 ("**Deed**")

**BETWEEN**

(1)     **THEIA GROUP, INCORPORATED** (Co. Reg. No. 6114523), a company incorporated under the laws of the State of Pennsylvania, United States, with its registered address at 1600 Market Street, Suite 1320 Philadelphia, PA 19103, United States of America (the "**Assignor**"); and

(2)     **RISING SKY, LLC,** (Co. Reg. No. 6729327), a limited liability company organized under the laws of the State of Delaware, United States, with its registered address at 1001 4th Avenue, Suite 4330, Seattle, WA 98154.

(3)

**WHEREAS:**

(A)     The Assignor is the proprietor and beneficial owner of the inventions described in the Schedule (hereinafter referred to as the "**Inventions**") and the patent applications as set out in the Schedule (hereinafter referred to as the "**Patent Applications**").

(B)     The Assignor has agreed to assign to the Assignee the Inventions and the Patent Applications on the terms set out in this Deed.

**NOW THIS DEED HEREBY WITNESSES** as follows:

1.      **ASSIGNMENT**

1.1     In consideration of the sum of S$1/- now paid by the Assignee the Assignor (the receipt of which is hereby acknowledged by the Assignor), subject to Clause 2 below, the Assignor hereby ASSIGNS absolutely as beneficial owner to the Assignee, on an as is and where is basis, without any representation or warranty whatsoever, express or implied, and without recourse:

(a)     all its rights, titles and interests, throughout the world in and to:

(i)      the Inventions and the Patent Applications;

(ii)     any improvements, modifications, and development (the "**Improvements**") on the Inventions and the Patent Applications heretofore or hereafter made or acquired by the Assignor;

(iii)    all intellectual property rights in the Inventions and Improvements;

(iv)     all divisional, continuation and continuation-in-part patent applications in respect of the Inventions or any part thereof and/or any Improvements or any part thereof;

(v)      the full and exclusive benefit of the Patent Applications to the intent that the grant of any patents should thereon be in the name of and vest in the Assignee; and

(vi)     any and all patent or patents on the Inventions and/or Improvements that may be granted anywhere in the world;

- 3 -

together with all rights and powers arising or accrued therefrom including the right to sue for damages and other remedies in respect of any infringement of such rights or other acts within the scope of the claims of any published specification of any patent on the Inventions and/or Improvements;

(b)     the right to apply for, prosecute and obtain patent or other similar forms of protection throughout the world, including but not limited to any divisional, continuation or continuation-in-part patent applications, in respect of the Inventions and/or the Improvements to the intent that the grant of any patents or similar protection shall be in the name of and vest in the Assignee;

(c)     the right to make any new application or applications in respect of any part or parts of the subject matter of any application or specification filed in connection with the Inventions and the right to claim priority from the Patent Applications or part thereof anywhere in the world.

## 2.      FURTHER ASSURANCE

2.1     The Assignor further covenants that at the direction and expense of the Assignee it will at all times hereafter do all such acts and execute all such documents as may reasonably be necessary or desirable to enable the Assignee to enjoy the full benefit of the property and rights hereby assigned, to secure the vesting in the Assignee of all rights assigned to the Assignee hereunder in any country whether patent applications have been made or not and to assist in the resolution of any question concerning any patent applications in respect of the Inventions and/or the Improvements, whether in the course of legal proceedings or otherwise to uphold the Assignee's rights herein.

## 3.      EXECUTION OF DEED

3.1     This Deed may be executed in two or more counterparts, each of which shall be an original but all of which together shall constitute one and the same Deed.

3.2     If any provision or term of this Deed shall become or be declared illegal, invalid or unenforceable for any reason whatsoever, such term or provision shall be divisible from this Deed and shall be deemed to be deleted from this Deed to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, provided always that if such deletion substantially affects or alters the commercial basis of this Deed the parties shall negotiate in good faith to amend and modify the provisions and terms of this Deed so as to achieve so far as possible the same economic effect without rendering the Deed so amended or modified illegal, invalid or unenforceable.

## 4.      GOVERNING LAW

4.1     Governing law: This Deed shall be governed by and construed in accordance with the laws of Singapore.

4.2     Jurisdiction: The parties hereby submit to the non-exclusive jurisdiction of the Singapore courts for matters arising out of this Deed.

**SCHEDULE**

**DETAILS OF INVENTIONS AND PATENT APPLICATIONS**

1.     **SINGAPORE PATENT APPLICATION NO. 11201809489W**
        **INTERNATIONAL FILING DATE: 03 MAY 2017 (03.05.2017)**

<u>Invention</u>

**LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM**

<u>ABSTRACT</u>

A system for re-using GEO-allocated communications spectrum in a LEO satellite constellation based communications system, such that the LEO satellite originated signals will not appear in the beam-width of GEO-pointed earth station antennas, and satellites configured to provide communications by manipulating their respective beam transmissions, which may include a forward beam and rearward beam whose angles are controlled to project the beam and reduce or eliminate the potential for interference with GEO-pointed earth station antennas. The system and LEO satellites may provide substantially 100% coverage of an earth station located anywhere on the surface of the earth, without coordination with the GEO satellites or GEO-pointing ground stations. The system also may provide earth stations that are configured to enhance the isolation between the GEO communications system and the LEO communications system using the same spectrum to reduce the potential for GEO-pointed earth station antennas from picking up the LEO communication.

2.     **SINGAPORE PATENT APPLICATION NO. 11201909526U**
        **INTERNATIONAL FILING DATE: 20 APRIL 2018 (20.04.2018)**

<u>Invention</u>

**SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES**

<u>ABSTRACT</u>

A system, method and device for monitoring an aircraft, including activity taking place within an aircraft and conditions of the aircraft, where one or more a percepting component such as a camera, microphone, or other sensor, is situated at a location within the aircraft from which information may be ascertained. Preferably the component is disguised within the surfaces or instrumentation of the aircraft. The percepting component is connected with a communication mechanism to transmit communications from the system resident within the aircraft to a grounds portion of the system through a communication link, such as a satellite communication link. The system may process the information corresponding with the aircraft condition or activity and generate alerts when a trigger is met or exceeded. The system components on the aircraft may monitor conditions and activity without using or interfering with the aircraft instrumentation, the system using only the aircraft power.

3.     **SINGAPORE PATENT APPLICATION NO. 11201810483Q**
        **INTERNATIONAL FILING DATE: 30 MAY 2017 (30.05.2017)**

Invention

**RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS**

ABSTRACT

A radar system for tracking UAVs and other low flying objects utilizing wireless networking equipment is provided. The system is implemented as a distributed low altitude radar system where transmitting antennas are coupled with the wireless networking equipment to radiate signals in a skyward direction. A receiving antenna or array receives signals radiated from the transmitting antenna, and in particular, signals or echoes reflected from the object in the skyward detection region. One or more processing components is electronically coupled with the wireless networking equipment and receiving antenna to receive and manipulate signal information to provide recognition of and track low flying objects and their movement within the coverage region. The system may provide detection of objects throughout a plurality of regions by networking regional nodes, and aggregating the information to detect and track UAVs and other low flying objects as they move within the detection regions.

4.    **SINGAPORE PATENT APPLICATION NO. 10202251240X**
      **INTERNATIONAL FILING DATE: 03 OCTOBER 2022 (30.10.2022) (Divisional)**

Invention

**RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS**

ABSTRACT

A radar system for tracking UAVs and other low flying objects utilizing wireless networking equipment is provided. The system is implemented as a distributed low altitude radar system where transmitting antennas are coupled with the wireless networking equipment to radiate signals in a skyward direction. A receiving antenna or array receives signals radiated from the transmitting antenna, and in particular, signals or echoes reflected from the object in the skyward detection region. One or more processing components is electronically coupled with the wireless networking equipment and receiving antenna to receive and manipulate signal information to provide recognition of and track low flying objects and their movement within the coverage region. The system may provide detection of objects throughout a plurality of regions by networking regional nodes, and aggregating the information to detect and track UAVs and other low flying objects as they move within the detection regions.

**IN WITNESS WHEREOF** this Deed has been executed on the date stated at the beginning.

<u>ASSIGNOR</u>

For and on behalf of                              )
**THEIA GROUP INCORPORATED**  )

By:
_____
Michael Fuqua
Receiver
Theia Group, Incorporated

NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument DEED OF ASSIGNMENT was acknowledged before me this _____day of _____ (month), _____ (year), by Michael Fuqua, Receiver of THEIA GROUP, INC., a Delaware corporation, on behalf of the corporation,

who is

 _____personally known
 _____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

_____
(Signature Notary)


_____
Name of Notary
Notary Public, State of Georgia

My Commission expires: _____

<u>ASSIGNEE</u>

For and on behalf of                )
**RISING SKY, LLC.**                  **)**


By:
_____

Mitchell Adams
_____ for Rising Sky, LLC.
(Legal Representative)


NOTARIAL CERTIFICATE


State of Washington

County of _____

I certify that I know or have satisfactory evidence that Mitchell Adams (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument DEED OF ASSIGNMENT, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of RISING SKY, LLC (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)                              _____
                                                            Signature

                                                _____
                                                            Title

                              My appointment expires:_____

- 9 -

## ASSIGNMENT AGREEMENT

BE IT KNOWN by these presents, that:

WHEREAS **THEIA GROUP, INCORPORATED,** a corporation organized and existing under the laws of United States of America having a place of business at 1600 Market Street, Suite 1320 Philadelphia, PA 19103, United States of America, and **RISING SKY, LLC,** a limited liability company organized and existing under the laws of the state of Delaware of the United States of America having a place of business at 1001 4th Avenue, Suite 4330, Seattle, WA 98154.

WHEREAS the said **THEIA GROUP, INCORPORATED** is the owner of the patent rights represented by the pending patent applications listed below; and

WHEREAS the said **RISING SKY, LLC** is desirous of acquiring all rights of the pending patent applications listed below and the registrations thereof;

NOW, THEREFORE, for valuable consideration, receipt of which is hereby acknowledged, said **THEIA GROUP, INCORPORATED,** a corporation of United States of America does hereby assign unto the said **RISING SKY, LLC**, a limited liability company of the state of Delaware of United States of America, all rights, title and interest in and to the pending patent applications listed below.

| Title of Invention: | Thai Patent Application No.: |
| --- | --- |
| **RADAR SYSTEM TO TRACK LOW FLYING UNMANNED AERIAL VEHICLES AND OBJECTS** | **1801007306** |
| **LOW EARTH ORBIT SATELLITE CONSTELLATION SYSTEM FOR COMMUNICATIONS WITH RE-USE OF GEOSTATIONARY SATELLITE SPECTRUM** | **1801006767** |
| **SYSTEM FOR TRANSMISSION AND DIGITIZATION OF MACHINE TELEMETRY** | **1801007305** |
| **SYSTEM FOR RECORDING AND REAL-TIME TRANSMISSION OF IN-FLIGHT OF AIRCRAFT COCKPIT TO GROUND SERVICES** | **1901006727** |

The rights assigned, sold, and transferred hereunder by **THEIA GROUP, INCORPORATED,** , including rights to the invention, pending patent applications, and patent rights, are being assigned, sold and transferred, AS IS, WHERE IS and without representation, warranty, or recourse of any kind.

Pages 1/3

**THEIA GROUP, INCORPORATED** requests that this transfer of all rights be duly filed and recorded. **RISING SKY, LLC** does hereby accept this patent assignment and requests that this transfer of all rights be duly filed and recorded.

IN WITNESS WHEREOF, **THEIA GROUP, INCORPORATED. & RISING SKY, LLC** have hereunto set their hands and seals this _____ day of _____.

WITNESS:                                        **Theia Group, Incorporated**

_____          By: _____ ASSIGNOR
                                                       ( Michael Fuqua              )
                                                       Receiver (legal representative)


### NOTARIAL CERTIFICATE

State of Georgia

County of Fulton

This instrument ASSIGNMENT AGREEMENT was acknowledged before me this _____day of _____ (month), _____ (year), by Michael Fuqua, Receiver THEIA GROUP, INCORPORATED., a Delaware corporation, on behalf of the corporation,

who is

_____personally known
_____proved to me on the basis of satisfactory evidence to be the person who appeared before me

(Stamp/Seal)

                                        _____
                                             (Signature Notary)


                                        _____
                                             Name of Notary

                                             Notary Public, State of Georgia

My Commission expires: _____

WITNESS:                                        **Rising Sky, LLC**

_____          By: _____ ASSIGNEE
                                                       (         Mitchell Adams         )
                                                       Title:_____
                                                       Rising Sky, LLC
                                                       (legal representative)

## NOTARIAL CERTIFICATE

State of Washington

County of _____

I certify that I know or have satisfactory evidence that <u>Mitchell Adams</u> (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument ASSIGNMENT AGREEMENT, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of <u>RISING SKY, LLC</u> (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)                                         _____
                                                                    Signature

                                                                    _____
                                                                    Title


                                            My appointment expires:_____

**THAILAND**                                    **PATENTS/ PETTY PATENTS/ DESIGNS**

# GENERAL POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS** that I/We, <u>RISING SKY, LLC, residing</u>/having a principal office at <u>1001 4TH Avenue, Suite 4330, Seattle, WA 98154, United States of America</u> (a citizen/limited liability company duly organized under the laws of <u>Delaware, United States of America)</u>

do hereby appoint MS. KAMONPHAN MINJOY of **YUSARN AUDREY IP SERVICES (THAILAND) COMPANY LIMITED** of 163 Thai Samut Building, 14th Floor, Unit 14H, Surawongse Road, Suriyawongse, Bangrak, Bangkok 10500 as my/ our agent and attorney (the "Attorney") to do any and all of the following acts and things for and on my/our behalf, with full power of substitution and revocation, including to take all proceedings for making the registration of all patents, petty patents and/or designs and the licenses thereof, to claim the priorities, to convert the applications, to file the divisional applications, to file requests for substantive examination, and to amend or correct the applications or registrations, to obtain the Certificates of Registration and Licensing Certificates or substitutes thereof, to pay the annuities or renewals, to perform all necessary acts concerning the applications/registrations before the Department of Intellectual Property, Ministry of Commerce, and/or the Patent Director and any other relevant authorities, as applicable, to file appeals with the Board of Patent, to file all kinds of applications and motions, to file oppositions or counterstatements, to assign or accept any assignment, to enter into compromises, consents or settlement in respect of patents, petty patents and/or designs, to abandon or withdraw applications or registrations, to appoint or remove substitutes as deemed appropriate, and to notify, to file complaints, claims, answers, motions and statements and do any acts necessary in any civil and criminal proceedings in respect of patents, petty patents and/or designs with the appropriate authorities, police investigation officers, public prosecutors and court whatsoever on my/our behalf.

And I/we hereby confirm and ratify whatsoever my/our said agent and attorney or lawfully appointed substitute or substitutes may lawfully do or cause to be done by virtue of these presents, further ratify and confirm all actions previously taken and acts performed by my/our said agent and attorney or lawfully appointed substitute or substitutes within the scope of authority conferred by these presents.

**IN WITNESS, WHEREOF**, we have hereunto set our hands and seal (if required) this_____day of _____, A.D. _____

**(Seal)**                                    By: _____

                                                   (Mitchell Adams)

                                              Title: _____

                                                   (Legal representative)

**NOTARIAL CERTIFICATE**

State of Washington

County of _____

I certify that I know or have satisfactory evidence that <u>Mitchell Adams</u> (name of person) is the person who appeared before me, and said person acknowledged that (he/she) signed this instrument, on oath stated that (he/she) was authorized to execute the instrument and acknowledged it as the _____ (type of authority, e.g., officer, trustee, etc.) of <u>RISING SKY, LLC</u> (name of party on behalf of whom instrument was executed) to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated:_____

(Seal or stamp)

_____
Signature

_____
Title

My appointment expires:_____

**AGREED AND ACCEPTED BY
ATTORNEY**

**YUSARN AUDREY IP SERVICES (THAILAND) COMPANY LIMITED**

By: _____
        (MS. KAMONPHAN MINJOY)

Pages 2/2