UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                                        Plaintiff,

                    —against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS
A, INC., d/b/a "THORIAN HOLDINGS,"

                                        Defendants.

21 Civ. 6995 (PKC)

**DECLARATION OF MICHAEL FUQUA, AS RECEIVER, IN SUPPORT OF
EXPEDITED MOTION FOR ENTRY OF AN ORDER (I) AUTHORIZING RECEIVER
TO ENTER INTO FIRST AMENDMENT TO RECEIVER'S CERTIFICATE
PURCHASE AND SECURITY AGREEMENT WITH FCS ADVISORS, LLC AND
(II) GRANTING RELATED RELIEF**

I, Michael Fuqua, hereby declare as follows:

1.      On November 8, 2021, the United States District Court for the Southern District of

New York (this "Court")[1] entered an *Order Appointing Michael Fuqua as Receiver* (Doc. No. 117)

(the "Receivership Order") in the above-captioned case.  Accordingly, I am the Court-appointed

receiver ("Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.

(collectively, the "Receivership Entities").

2.      I submit this declaration (this "Declaration") in support of the *Motion for an Order*

*(I) Authorizing the Receiver to Enter Into First Amendment to Receiver's Certificate Purchase and*

*Security Agreement with FCS Advisors, LLC and (II) Granting Related Relief* (the "Motion") filed

contemporaneously herewith.

---

[1]  Capitalized terms used but not otherwise defined in this Declaration shall have the meaning ascribed to
such terms in the *Memorandum of Law in Support of the Motion* filed contemporaneously herewith, the
PSA, or the Rising Sky APA, as applicable.

3.      Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from retained advisers who report to me in the ordinary course of my responsibilities.  If called upon to testify, I would testify competently to the facts set forth in this Declaration.

## PROGRESS OF THE RECEIVERSHIP CASE

4.      Since the Court's approval of the Receivership Financing, my advisors and I have undertaken substantial efforts to protect, market, and consummate a sale of the Receivership Property.

5.      Since obtaining approval of the Receivership Financing, the proceeds of such financing have been utilized to fulfill my obligations to protect the Receivership Property and to move this Receivership Case towards a successful conclusion by way of a sale of the Receivership Entities' assets.  Among other things, the Receivership Financing has been used to (i) maintain various insurance policies and subscription services, (ii) pay bank fees, (iii) safely store certain Receivership Property, (iv) pay certain taxes in the ordinary course, and (v) pay for various professional and legal services in accordance with the Receivership Order and as otherwise approved by the Court.  The Receivership Financing also has been utilized to comply with substantial ongoing requests for document production from the Department of Justice in connection with numerous Grand Jury subpoenas issued by the United Stated District Court for the District of Columbia.

6.      These efforts resulted in the execution of an *Asset Purchase Agreement* (as amended, the "Rising Sky APA") with Rising Sky, LLC ("Rising Sky") as Buyer on or about January 17, 2023.

7.     Pursuant to the Rising Sky APA (subject to this Court's approval after notice and a hearing), Rising Sky has agreed to acquire *inter alia*, (i) all Tangible Personal Property of the Receivership Entities (including, without limitation (and subject to government approval), the FCC License and the NOAA License); (ii) all Aircraft; (iii) all Intellectual Property Assets; (iv) all Claims, choses in action, causes of action, and demands of Sellers; (v) all insurance benefits arising from or related to the Acquired Assets prior to Closing, and (vi) all Deposit Rights.

8.     As previously reported, if the Closing occurs with respect to the Rising Sky APA, the Receivership Entities will receive (i) a Cash Payment in the amount of $175 million and (ii) a waiver and release of various other outstanding obligations.  As part of the Cash Payment, Rising Sky is required to pay a Deposit of $40 million in cash on or before March 31, 2023, with the remainder of the Cash Payment due at Closing.

9.     The APA contemplates that the Closing will occur on the earlier of (i) June 30, 2022; (ii) five (5) Business Days after Governmental Approval to transfer the Licenses to Buyer; or (iii) a date and time mutually agreed upon in writing by the Parties.

## THE NEED FOR ADDITIONAL FINANCING

10.     When the Receivership Entities entered into the *Receiver's Certificate Purchase and Security Agreement* (the "PSA"), I sized the Receivership Entities' liquidity and financing needs based on a number of factors, including the projected timeline of this Receivership Case, anticipated professional fees, and other third-party payments.  As the Receivership Case has progressed, I have determined that, to administer this Receivership Case towards a value-maximizing outcome, (i) the Maturity Date must be extended and (ii) the Receivership Entities require the Additional Financing in the amount of $1.80 million, for a total aggregate principal amount of $6.80 million in Receivership Financing.  Without access to the increased amounts

under the Amended PSA, the Receivership Entities will not have sufficient liquidity to continue with this receivership case.

11.     The Receivership Entities need the Additional Financing to prevent harm to the Receivership Estate.  For example, in the upcoming days, a number of critical obligations of the Receivership Entities must be paid, and such obligations are necessary to preserve the Receivership Estate.  This includes, among other things, (i) approximately $11,000 rent currently due to the owner of a hangar rented by the Receivership Entities (plus another $11,000 due on March 1, 2023); (ii) a $25,000 insurance premium payment to Great American Insurance Company due on February 10, 2023; (iii) usage fees for Microsoft, Intuit QuickBooks, and other programs in the amount of approximately $5,100 (plus another approximately $6,000 due on March 1, 2023); and (iv) approximately $160,000 due to various state and local taxing authorities.

12.     In light of the above, my advisors and I engaged with FCS regarding the Receivership Entities' additional financing and liquidity needs given the expected duration of this Receivership Case.

13.     The Amended PSA, among other things, (i) increases the maximum aggregate amount of new money the Receivership Entities are permitted to borrow, and FCS is obligated to advance, by $1.80 million in order to provide the Receivership Entities with the additional flexibility and runway needed to undertake the ongoing sale process and (ii) extends the Maturity Date through the earlier of (i) the consummation of a Sale; (ii) the termination of the Receiver in the Receivership Case; (iii) the filing of a petition under Title 11 of the United States Code (11 U.S.C. § 101 *et seq*.) with respect to a Receivership Entity as to which FCS does not consent; (iv) the date of acceleration of the Obligations after the occurrence and during the continuance of an Event of Default; and (v)(1) June 30, 2023, *provided* that such date shall be automatically

extended for an additional forty-five (45) days if, prior to such date, the Receiver affirms that the Receiver has a Sale for which the Receiver needs such additional time to obtain court approval and close and reasonably believes will close within such additional time; or (2) such later date as agreed to by FCS.

14.     I believe that the revised definition of "Maturity Date" in the Amended PSA is aligned with the expectations regarding the time frame for the sale process.  In addition, I believe that the requested $1.80 million increase in the Maximum Certificate Amount (as compared to the PSA) will provide the Receivership Entities with sufficient liquidity to continue funding this Receivership Case.

15.     I have further determined that I am unable to obtain credit on terms the same or better than those offered by FCS for the financing described herein.  FCS is already part of the Receivership Entities' capital structure and has provided $5 million in financing for the administration of this Receivership Case to date.  Moreover, pursuant to the PSA, I, on behalf of the Receivership Estate and the Receivership Entities, expressly covenanted not to "grant or permit to exist any Lien with respect to any of the Receivership Estate, except for Permitted Liens."  *See* PSA, § 5(a)(iii).  As such, I would be unable to provide any other potential financing party with a Lien (let alone a Lien that could prime those of FCS) on any of the Receivership Property.  Accordingly, I have concluded, in the exercise of my reasonable business judgment, that the Additional Financing to be provided by FCS represents the best financing available under the circumstances.

16.     For these reasons, I believe that entry into the Amended PSA is (i) reasonable and justifiable, particularly in light of the benefits that will accrue to the Receivership Entities, the

Receivership Estate, and its creditors, (ii) in the best interests of the Receivership Entities and the Receivership Estate, and (iii) essential to the continued success of this Receivership Case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of February, 2022

By:  */s/ Michael Fuqua*
Michael Fuqua