UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>                           Plaintiff,<br><br>—against—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>                         Defendants. | 21 Civ. 6995 (PKC) |

### [PROPOSED] ORDER (I) AUTHORIZING RECEIVER TO ENTER INTO FIRST AMENDMENT TO RECEIVER'S CERTIFICATE PURCHASE AND SECURITY AGREEMENT WITH FCS ADVISORS, LLC AND (II) GRANTING RELATED RELIEF

Upon consideration of the *Expedited Motion for an Order (I) Authorizing the Receiver to Enter Into That Certain First Amendment to Receiver's Certificate Purchase and Security Agreement With FCS Advisors, LLC and (II) Granting Related Relief* (the "Motion"), the accompanying *Memorandum of Law in Support of the Motion* (the "Memorandum of Law") and the *Declaration of Michael Fuqua, as Receiver, in Support of the Motion* (the "Fuqua Declaration");[1] and this Court having found that the Receiver's notice of the Motion and opportunity for a hearing on the Motion were appropriate and that no other notice need be provided; and this Court having reviewed the Motion, the Memorandum of Law, and the Fuqua Declaration; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before

---

[1] Capitalized terms not defined herein shall have the meaning given such terms in the Memorandum of Law, the PSA, or the Amended PSA, as applicable.

this Court; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND, DETERMINED, ORDERED, AND ADJUDGED**, that:

A.      On November 8, 2021, the Court entered the Receivership Order, appointing Michael Fuqua as Receiver for all assets of, in the possession of, under the control of, or held in the name of the Receivership Entities and authorizing him to (i) "take exclusive custody, control, and possession of all the funds, property, mail, and other assets of, in the possession of, or under the control of the Receivership Entities," wherever located (collectively, the "Receivership Property"); (ii) "seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission . . . License Assets . . . and to take all steps necessary to effectuate a transfer or sale of the assets, except any transfer of control of such FCC License shall be submitted to the Court for approval;" and (iii) "preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets, in order to prevent any loss, damage or injury."

B.      On February 16, 2022, the Court entered an *Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC* (the "Financing Order") (Doc. No. 206), by which the Court authorized the Receiver to (i) enter into the *Receiver's Certificate Purchase and Security Agreement* (the "PSA") with FCS Advisors, LLC d/b/a FCS Capital Advisors, on behalf of itself, its designee, or assignees ("FCS") and (ii) issue a *Receiver's Certificate* (the "Receiver's Certificate") in the initial Maximum Certificate Amount of up to $5,000,000 on the terms and conditions described in the Financing Order.

C.      The Receivership Entities require additional financing in the amount of $1.8 million (such additional amount, the "Additional Financing"), for a total of $6.8 million in Receivership

Financing, to pay the administrative costs of the Receivership Case.  The Receivership Entities' access to sufficient liquidity through the incurrence of new indebtedness is necessary to the preservation and maintenance of the Receivership Property.

D.     FCS has indicated a willingness to provide the Receivership Entities with a Loan of up to the aggregate principal amount of $6,800,000, solely on the terms and conditions set forth in that certain *First Amendment to Receiver's Certificate Purchaser and Security Agreement* (the "Amended PSA"), copy of which is attached hereto as **Exhibit 1**, the PSA, the Receiver's Certificate, and any related documents (collectively, the "Loan Documents"), the Financing Order, and this Order.

E.     The Receivership Entities' borrowing of funds pursuant to the Loan Documents is in the best interests of the Receivership Entities' respective estates and their creditors because such funding is necessary to preserve the value of the Receivership Property pending sale or other appropriate disposition.

F.     The terms of the **Amended PSA** are fair and reasonable under the circumstances, reflect the Receiver's exercise of his prudent business judgment consistent with his fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

G.     The Receiver has shown good and sufficient cause for the entry of this Order, and the Court concludes that entry of this Order is necessary to preserve and maximize the value of the Receivership Property and is in the best interests of the creditors of the Receivership Entities.

H.     The Receiver and FCS have negotiated the terms and conditions of the Amended PSA in good faith and at arm's length, and any credit extended by FCS to the Receivership Entities

in connection with this Order hereafter shall be and hereby is deemed to have been extended in "good faith."

I.        All of the Obligations (as defined below) incurred and transfers made pursuant to this Order and the Loan Documents are made for fair consideration and reasonably equivalent value, as such phrases are used in section 548 of Title 11 of the United States Code or any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, Uniform Voidable Transactions Act, or similar statute or common law.

J.        The Receiver has provided adequate and sufficient notice of the Motion by providing written notice to all creditors with a known interest in the Collateral and such other creditors as are identified on the Receiver's declaration of service filed in connection with the Motion.  Such notice is appropriate, adequate, and proper under the circumstances involved in this Receivership Case.

**BASED ON THE FOREGOING, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED:**

1.        The relief requested in the Motion is **GRANTED** in accordance with the terms of this Order.  The Amended PSA, which is attached as **Exhibit 1** to this Order, is approved, and the Receiver hereby is authorized to enter into the Amended PSA.  The Financing Order, as amended to include the terms of the Amended PSA, shall otherwise remain in full force and effect.  Any and all objections to the Motion with respect to the entry of this Order that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby denied and overruled on the merits.

2.        Subject to the express terms and conditions contained in this Order, the Receiver hereby is authorized to execute and deliver to FCS the executed Amended PSA and such additional

documents, instruments, and agreements as may be reasonably required to effectuate the purposes of this Order.  The Receiver is authorized to comply with and perform all of the express terms and conditions contained in the Amended PSA and such additional documents, instruments, and agreements.

3.      Without limiting the foregoing, and subject to the express terms of the Loan Documents, the Receivership Order, the Financing Order, and this Order, the Receivership Entities are authorized to borrow money pursuant to the Amended PSA up to an aggregate principal amount equal to $6,800,000 (such amounts borrowed, the "Post-Receivership Advances").

4.      Subject to the express terms and conditions contained in Loan Documents, the Receivership Order, the Financing Order, and this Order, the Receiver may use Post-Receivership Advances for any purposes permitted under the Loan Documents.

5.      All liens, priorities, and other rights, remedies, benefits, privileges, and protections provided to FCS in the Financing Order (including, without limitation, the Post-Receivership FCS Lien) and the Loan Documents with respect to or relating to the PSA shall apply with equal force and effect with respect to the Amended PSA and all obligations in connection therewith or related thereto.  The Additional Financing will rank *pari passu* in right of payment and security with the original Obligations consistent with Paragraph 6 of the Financing Order.  In furtherance of the foregoing, except as modified by this Order, for all purposes under the Financing Order, the defined term "Obligations" shall include the Additional Financing.

6.      For the avoidance of doubt, nothing in this Order or the Amended PSA is intended to, nor shall, alter, impair, or otherwise affect the claims or the priority thereof, or the other rights and interests of FCS under the Financing Order or the Loan Documents.

7.  The provisions of this Order, including all findings herein, shall be binding upon all parties in interest in this Receivership Case, including, without limitation, FCS and the Receivership Entities and their respective successors and assigns, and shall inure to the benefit of FCS and the Receivership Entities and their respective successors and assigns.

8.  If any or all of the provisions of this Order are hereafter modified, vacated, or stayed:  (a) such modification, vacation, or stay, shall not affect the validity of any obligation, indebtedness, liability, security interests or liens granted or incurred by the Receiver to FCS on or after the date of this Order and prior to the effective date of such stay, modification or vacation, or the validity and enforceability of any security interests, liens, priority or right authorized or created hereby; and (b) any indebtedness, obligation or liability incurred by the Receiver to FCS on or after the date of this Order and prior to the effective date of such stay, modification or vacation shall be governed in all respects by the provisions of this Order, and FCS shall be entitled to all the rights, remedies, privileges and benefits, including the priority, security interests and liens granted herein and pursuant to the Loan Documents, with respect to any such indebtedness, obligation or liability.

9.  Except as modified by this Order, the terms of the Financing Order are incorporated herein and made part of this Order and shall remain unchanged and in full force and effect. All factual and other findings and conclusions of law contained in the Financing Order shall remain fully applicable except to the extent specifically modified herein.

10.  Nothing set forth or otherwise contemplated by in this Order shall constitute or be deemed to constitute a waiver of the Receiver's right to seek any charge, lien, assessment, or claim against any of the Collateral or its proceeds.

11.  This Order shall take effect and be fully enforceable immediately upon entry hereof.

12.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: _____, 2023
        February 22
      New York, New York

_____
P. KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

**EXHIBIT 1**

<u>First Amended Receiver's Certificate Purchase and Security Agreement</u>

(Attached)

# FIRST AMENDMENT TO RECEIVER'S CERTIFICATE
## PURCHASE AND SECURITY AGREEMENT

This **FIRST AMENDMENT TO RECEIVER'S CERTIFICATE PURCHASE AND SECURITY AGREEMENT** (this "First Amended Agreement"), dated as of February [*], 2023 (the "Effective Date"), is entered into by and between the Receivership Estate (as hereinafter defined) and the Receivership Entities (as hereinafter defined) of **THEIA GROUP, INCORPORATED**, a Delaware corporation ("Theia Group"), **THEIA AVIATION LLC**, a Delaware limited liability company ("Theia Aviation"), and **THEIA HOLDINGS A, INC.**, a Delaware corporation ("Theia Holdings"), collectively, as issuers (the "Issuer" or "Receivership Entities"), and **FCS ADVISORS, LLC** d/b/a Brevet Capital Advisors ("FCS") or its designee, as purchaser and the initial holder of the Original Certificate (as defined below) (in such capacities, and together with any successors thereto or assignees thereof from time to time, the "Purchaser") and as administrative agent on behalf of the Purchaser (in such capacity, including any successor thereto or assignee thereof from time to time, the "Agent").

## R E C I T A L S

**WHEREAS**, pursuant to that certain *Order Appointing Michael Fuqua as Receiver* (as amended, restated, supplemented, or otherwise modified from time to time, the "Receivership Order") entered by the United States District Court for the Southern District of New York (the "Court") at Document #117 in that certain case captioned *FCS Advisors, LLC v. Theia Group, Inc., et al.* proceeding as 21-cv-06995-PKC (the "Receivership Case"), the Court appointed Michael Fuqua as receiver (in such capacity, including any successor thereto or assignee thereof from time to time, the "Receiver") for each of the Receivership Entities, and for all assets of, in the possession of, under the control of, or held in the name of the Receivership Entities (the "Receivership Estate" and collectively with the Receivership Entities, the "Receivership"), with all the powers specified therein;

**WHEREAS**, on February 16, 2022, the Court entered that certain *Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC* at Document #206 in the Receivership Case (as amended, restated, supplemented, or otherwise modified from time to time, the "Financing Order"), pursuant to which the Receiver, on behalf of the Receivership, was authorized, among other things, to enter into a receiver's certificate purchase and security agreement, issue a receiver's certificate pursuant thereto, enter into the other transaction documents, incur the obligations thereunder in an aggregate principal amount of up to FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Original Maximum Certificate Amount"), and grant a first priority security interest to the Agent, for itself and as agent for the Purchaser, on all of the property of Receivership, excluding only the Excluded Assets, to secure such Obligations;

**WHEREAS**, in accordance with the Financing Order, the Receivership agreed to borrow and FCS has agreed to lend to the Receivership, an amount up to the Original Maximum Certificate Amount on a first-priority priming secured basis on the terms and conditions set forth in that certain *Receiver's Certificate Purchase and Security Agreement*, dated of February 24, 2022 (the "Original Agreement"), entered into by and between the Receivership and FCS or its designee, as

*[Signature Page to First Amendment to Receiver's Certificate Purchase and Security Agreement]*

purchaser and the initial holder of that certain *Receiver's Certificate* of even date therewith (the "Original Certificate");

**WHEREAS**, pursuant to that certain *Order (I) Authorizing the Receiver to Enter Into That Certain First Amendment to Receiver's Certificate Purchase and Security Agreement With FCS Advisors, LLC and (II) Granting Related Relief* (as amended, restated, supplemented, or otherwise modified from time to time, the "Subsequent Financing Order") entered by the Court at Document #[*] in the Receivership Case, the Court authorized the Receivership to borrow up to an additional ONE MILLION EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($1,800,000), thereby increasing the principal amount borrowed from FCS up to the aggregate principal amount of SIX MILLION HUNDRED FIFTY THOUSAND AND 00/100 DOLLARS ($6,800,000.00) (the "Maximum Certificate Amount") to be secured by a first-priority, priming security interest in favor of the Agent, for itself and as agent for the Purchaser, on all of the property and assets of the Receivership, excluding only the Excluded Assets, to secure such Obligations;

**WHEREAS**, in accordance with the Subsequent Financing Order, the Receivership has agreed to borrow and FCS has agreed to lend to the Receivership an amount up to the Maximum Certificate Amount on a first-priority priming secured basis on the terms and conditions set forth herein and in the other Transaction Documents, including the Original Agreement;

**WHEREAS**, except as may be otherwise provided herein, capitalized terms used herein but not otherwise expressly defined herein shall have the same meanings when used herein as set forth in the Original Agreement; and

**WHEREAS**, the Receiver, on behalf of the Receivership has requested that FCS modify, in certain respects, the terms of the Original Agreement, and FCS has agreed to such modifications in accordance with the terms and subject to the satisfaction of the conditions hereof.

**NOW, THEREFORE**, in consideration of the foregoing premises, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

### Section 1 - ACKNOWLEDGMENTS AND REAFFIRMATIONS

1.1     Recitals.  The recitals set forth above, and all defined terms set forth in such recitals and in the introductory paragraph preceding the recitals, are hereby incorporated into this First Amended Agreement as if set forth herein in full.

1.2     Acknowledgments.   To induce Purchaser to enter into this First Amended Agreement, the Receivership Entities and Receivership Estate acknowledge and agree that: (a) the Transaction Documents (including, for the avoidance of doubt, this First Amended Agreement) are legal, valid, and binding obligations of, and enforceable in accordance with their respective terms against, the Issuer and the Receivership Estate and Receivership Entities; (b) the Liens on and security interests in the Collateral in favor of Purchaser are valid, legal, binding, and properly perfected and are reaffirmed and ratified in all respects; and (c) neither the Issuer nor the Receivership Estate nor the Receivership Entities has any rights of offset, defenses, claims, or counterclaims under any Transaction Document, at law, or in equity with respect to any of the

*[Signature Page to First Amendment to Receiver's Certificate Purchase and Security Agreement]*

Indebtedness, all of which are valid and outstanding obligations of the Issuer and the Receivership Estate and Receivership Entities.

## Section 2 - AMENDMENTS

2.1     <u>Amendments</u>.   Subject to the terms and conditions and in reliance upon the representations and warranties herein set forth, the Original Agreement hereby is amended in certain respects as follows, and such amendments shall be effective as of the Effective Date:

(a)     <u>Preamble to Original Agreement</u>.  The <u>Preamble</u> to the Original Agreement hereby is amended to provide that the term "<u>Maximum Certificate Amount</u>" means an aggregate principal amount up to SIX MILLION EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($6,800,000.00).

(b)     <u>Section 1(a) – Purchase and Sale; Conditions to Issuance; Closing</u>.  <u>Section 1(a)</u> of the Original Agreement hereby is amended to provide that the term "<u>Certificate</u>" shall refer to the *First Amended and Restated Receiver's Certificate* in the form attached hereto as <u>Exhibit 1</u>, as may be amended, restated, supplemented, or otherwise modified from time to time.

(c)     <u>Section 2(b)(v) – Terms of the Certificate – Maturity Date</u>.  <u>Section 2(b)(v)</u> of the Original Agreement hereby is amended and restated in its entirety to read as follows:

(d)     "(1) June 1, 2023, *provided*, *however*, that such date shall be automatically extended for an additional forty-five (45) days if, prior to the expiration of such period, the Receiver affirms that the Receiver has a Sale for which the Receiver needs such additional time to obtain court approval and close and reasonably believes will close within such additional time; or (2) such later date as agreed to by the Agent."

## Section 3 - REPRESENTATIONS AND WARRANTIES

To induce the Purchaser to enter into this First Amended Agreement and as partial consideration for the terms and conditions contained herein, the Receivership Entities and Receivership Estate represent and warrant to the Purchaser that as of the Effective Date:

3.1     <u>Organization and Authority</u>.  Each Receivership Entity is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its respective organization and has the right, power, and authority and has taken all necessary corporate or other organizational action to duly authorize the execution, delivery, and performance of this First Amended Agreement.

3.2     <u>Other Consents</u>.   No authority, permit, consent, waiver, approval, or other authorization of or other action by, notice to, or filing, registration, or declaration of or with any Governmental Authority or other Person is required in connection with the execution, delivery, and performance of or compliance with this First Amended Agreement.

3.3     <u>No Conflict</u>.  The execution and delivery of this First Amended Agreement will not conflict with, or result in a breach of, (a) the terms, conditions, or provisions of the organizational documents of the Receivership Entities; (b) any applicable law; or (c) any material agreement, instrument, order, writ, judgment, injunction, or decree to which any Receivership Entity is a party or by which a Receivership Entity is bound or to which a Receivership Entity is subject, or will

result in the creation or enforcement of any Lien or security interest (other than Liens and security interests in favor of the Purchaser) whatsoever upon any property or asset, whether now owned or hereafter acquired, of the Issuer.

3.4     Valid and Binding Agreement.  Each Receivership Entity and Receivership Estate has duly entered into this First Amended Agreement, and this First Amended Agreement is a legal, valid, and binding obligation of and enforceable in accordance with its terms against each Receivership Entity and Receivership Estate.

3.5     Compliance with Laws.  Each Receivership Entity and Receivership Estate is in material compliance with, and its respective properties, business operations, and leaseholds are in material compliance with, all applicable laws.

3.6     No Untrue or Misleading Statements.  Neither this First Amended Agreement nor any document, certificate, or statement furnished or to be furnished by on or behalf of any Receivership Entity or Receivership Estate to the Purchaser in connection with this First Amended Agreement contains, or at the time of delivery will contain, any untrue statement of a material fact or any omission of a material fact.

3.7     No Default.  No Default or Event of Default exists or has occurred and is continuing under the Transaction Documents.

3.8     Title.  The Receivership Entities and Receivership Estate have title to all of their property and assets, real and personal, that constitute the Collateral.

3.9     Other Representations and Warranties.  The representations and warranties of the Receivership Entities and Receivership Estate contained in the Transaction Documents, including in Section 4 of the Original Agreement, are true and correct in all respects, as though made on and as of the Effective Date, except to the extent that such representations and warranties expressly relate to an earlier specified date, in which case such representations and warranties are hereby reaffirmed as of the date when made.

## Section 4 - CONDITIONS PRECEDENT

The effectiveness of this First Amended Agreement and the Purchaser's obligations hereunder are conditioned on the satisfaction by the Receivership of the following conditions precedent:

4.1     Delivery of Documents.  The Receiver, on behalf of the Receivership Estate, or the Receivership Entities shall have delivered or cause to be delivered to the Purchaser this First Amended Agreement, satisfactory to the Purchaser in form and substance, and if requiring signature, then duly executed by all parties thereto.

4.2     Court Approval.  The Court shall have entered the Subsequent Financing Order (in a form satisfactory to the Purchaser), which shall have become a Final Order, unless waived by the Purchaser.

[*Signature Page to First Amendment to Receiver's Certificate Purchase and Security Agreement*]

4.3     Budget.  The Receiver, on behalf of the Receivership shall have delivered or cause to be delivered to the Purchaser and Agent, a Budget in form and substance reasonably acceptable to the Agent.

## Section 5 - MISCELLANEOUS

5.1     Ratification and Confirmation.  The Receiver, on behalf of the Receivership Estate, and the Receivership Entities hereby ratify and confirm that, except as expressly modified and superseded hereby, all of the terms of the Transaction Documents, including, without limitation, all confirmations, acknowledgments, releases, waivers, consents, indemnifications, confession of judgment clauses, and jury trial waivers contained in all such Transaction Documents, remain in full force and effect and, as modified and superseded hereby, are reaffirmed and continue to be legal, valid, and binding obligations of the Receivership Estate and the Receivership Entities and enforceable in accordance with their respective terms.

5.2     Effect of Agreement; Reservation of Rights.  This First Amended Agreement is not (a) a waiver of or consent to a modification of any term of any Transaction Document, except as expressly set forth herein, and (b) except as expressly set forth herein, does not prejudice any right or rights that the Purchaser now has or may have in the future under or in connection with any Transaction Document, at law, or in equity.  The Purchaser hereby reserves and preserves, and the Receiver, on behalf of the Receivership Estate, and the Receivership Entities hereby acknowledge and agree that the Purchaser has not waived the Purchaser's rights and remedies under the Transaction Documents, at law, or in equity with respect to any Default, any Event of Default, or any other matters.

5.3     References to Transaction Documents.  On and after the Effective Date, all references to the Transaction Documents will be deemed to be references to the Transaction Documents as amended or otherwise modified by this First Amended Agreement.

5.4     Conflict.  In the event and to the extent of any conflict between the terms of this First Amended Agreement and the terms of any Transaction Document, the terms of this First Amended Agreement with respect thereto will govern.

5.5     Survival of Representations and Warranties.  All representations and warranties contained in this First Amended Agreement will survive the execution of this First Amended Agreement and are material and have been or will be relied on by the Purchaser, and no investigation made by the Purchaser, the Receiver, on behalf of the Receivership Estate, the Receivership Entities, or any other Person on the behalf of any of them affects the representations and warranties or the right of the Purchaser to rely on them.  No implied representations or warranties are created or arise as a result of this First Amended Agreement.  All statements in any certificate or other writing required by this First Amended Agreement to be delivered to the Purchaser by or on behalf of the Receiver, on behalf of the Receivership Estate, or the Receivership Entities are deemed to be representations and warranties contained in this First Amended Agreement.

5.6     No Waiver.  No failure or delay on the part of the Purchaser in the exercise of any right, power, privilege, or remedy will operate as a waiver thereof, nor will any single or partial

*[Signature Page to First Amendment to Receiver's Certificate Purchase and Security Agreement]*

exercise of any right, power, privilege, or remedy preclude any other or further exercise thereof or the exercise of any other right, power, privilege, or remedy.

5.7     Notices.  All notices, demands, and other communications required or permitted to be given under this First Amended Agreement must be given in accordance with the notice provisions of the Original Agreement or the other Transaction Documents, as applicable.

5.8     Headings.  The headings and underscoring of articles, sections, and clauses have been included herein for convenience only and are not to be considered in interpreting this First Amended Agreement.

5.9     Integration and Entire Agreement.  This First Amended Agreement specifically is limited to the matters expressly set forth herein.  This First Amended Agreement constitutes the sole, final, and entire agreement of the parties with respect to the subject matter hereof, supersedes any and all prior oral and written communications with respect to the subject matter hereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto.  There are no oral agreements among the parties hereto relating to the subject matter hereof or any other subject matter relating to any Transaction Document.

5.10    Amendment and Waiver.  No amendment of this First Amended Agreement, and no waiver, discharge, or termination of any one or more of the terms or conditions hereof, will be effective unless set forth in writing and signed by the Purchaser.

5.11    Successors and Assigns.  This First Amended Agreement (a) is binding on the Receiver, on behalf of the Receivership Estate, the Receivership Entities, the Purchaser, and their respective nominees, successors, and assigns, and (b) inures to the benefit of the Receiver, on behalf of the Receivership Estate, the Receivership Entities, the Purchaser, and their respective nominees, successors, and assigns.  Notwithstanding the foregoing, the Receivership Entities and Receivership Estate shall not assign their rights hereunder or any interest herein without obtaining the prior written consent of the Purchaser, and any assignment or attempted assignment by the Receivership Entities or Receivership Estate without the Purchaser's prior written consent will be void and of no effect with respect to the Purchaser.

5.12    Severability of Provisions.  Any provision of this First Amended Agreement that is held to be illegal, inoperative, unenforceable, void, or invalid in any jurisdiction will, as to that jurisdiction, be ineffective to the extent illegal, inoperative, unenforceable, void, or invalid without affecting the remaining provisions in that jurisdiction or the legality, operation, enforceability, or validity of that provision in any other jurisdiction, and to this end, the provisions of this First Amended Agreement are declared to be severable.

5.13    Third-Party Beneficiaries.  No term of this First Amended Agreement is intended to benefit any Person other than the Receiver, on behalf of the Receivership Estate, the Receivership Entities, and the Purchaser, nor will any term be enforceable by any other Person; *provided*, *however*, that each and every one of the Releasees shall be deemed to be intended third-party beneficiaries of this First Amended Agreement.

5.14    Indemnification.

[*Signature Page to First Amendment to Receiver's Certificate Purchase and Security Agreement*]

       a.     If, after receipt of any transfer with respect to or payment of all or any part of the Indebtedness, the Purchaser is compelled to surrender such transfer or payment to any Person for any reason (including, without limitation, a determination that such transfer or payment is void or voidable as a preference or fraudulent conveyance or transfer, an impermissible setoff, or a diversion of trust funds), then (i) each such transfer or payment will be deemed never to have occurred, and the outstanding Indebtedness will be adjusted accordingly; (ii) this First Amended Agreement and the other Transaction Documents will continue in full force and effect; and (iii) the Receivership Entities will be liable for and shall indemnify, defend, and hold harmless the Purchaser with respect to the full amount so surrendered.

       b.     The provisions of this Section will survive the termination of this First Amended Agreement and will be and remain effective notwithstanding the payment to the Purchaser of any or all of the Indebtedness, the cancellation of any Transaction Document, the release of any Lien or security interest securing the Indebtedness, or any other action which the Purchaser may have taken in reliance on the receipt of such payment. Any cancellation of any of the Transaction Documents or other such action will be deemed to have been conditioned on any payment of any or all of the Indebtedness having become final and irrevocable.

    5.15   <u>Governing Law; Venue; Waiver of Jury Trial</u>. THE TERMS AND PROVISIONS OF SECTIONS 15 AND 16 OF THE ORIGINAL AGREEMENT ARE HEREBY INCORPORATED HEREIN BY REFERENCE AND SHALL APPLY TO THIS FIRST AMENDED AGREEMENT AS IF FULLY SET FORTH HEREIN.

    5.16   <u>Counterparts</u>. This First Amended Agreement may be executed in one or more counterparts and by different parties hereto on separate counterparts, each of which will be deemed an original and all of which taken together will constitute one and the same agreement, and this First Amended Agreement will be binding on all of the parties hereto, even though such parties do not sign the same signature page. Signatures transmitted electronically or by telecopy will be deemed original signatures.

    5.17   <u>Course of Dealing</u>. Acceptance of or acquiescence by the Purchaser in a course of performance or course of dealing rendered or taken under or with respect to this First Amended Agreement or any other Transaction Document will not be relevant in any respect to determine the Indebtedness or meaning of this First Amended Agreement or any other Transaction Document, even though the Purchaser had knowledge of the nature of the performance and opportunity for objection.

    5.18   <u>Construction</u>. This First Amended Agreement has been entered into by parties who are experienced in sophisticated and complex matters similar to the transactions contemplated hereby and is being entered into by the parties in reliance upon the economic and legal bargains contained herein and in the Transaction Documents and shall be interpreted and construed in a fair and impartial manner, without regard to such factors as the party that prepared the instrument, the relative bargaining powers of the parties, or the domicile of any party, but shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of all parties to this First Amended Agreement.

The undersigned have caused this First Amendment to Receiver's Certificate Purchase and Security Agreement to be executed on the date of this First Amendment to Receiver's Certificate Purchase and Security Agreement by their duly authorized officers or individually, as applicable.

**RECEIVERSHIP ESTATES OF**

      **THEIA GROUP, INCORPORATED,**
      **a Delaware corporation,**

      **THEIA AVIATION, LLC,**
      **a Delaware limited liability company,**

      **and**

      **THEIA HOLDINGS A, INC.,**
      **a Delaware corporation**

By: _____
Name: Michael Fuqua
Title:   Receiver

RECEIVERSHIP ENTITIES:

**THEIA GROUP, INCORPORATED,**
**a Delaware corporation,**

By: _____
Name: Michael Fuqua
Title:   Receiver

**THEIA AVIATION, LLC,**
**a Delaware limited liability company,**

By: _____
Name: Michael Fuqua
Title:   Receiver

**THEIA HOLDINGS A, INC.,**
**a Delaware corporation**

By: _____
Name: Michael Fuqua
Title:   Receiver

[*Signature Page to First Amendment to Receiver's Certificate Purchase and Security Agreement*]

**FCS ADVISORS, LLC (D/B/A
BREVET CAPITAL ADVISORS),
a Delaware limited liability company**


By: _____
Name: Mark Callahan
Title: Managing Director

**EXHIBIT 1**

**FIRST AMENDED AND RESTATED RECEIVER'S CERTIFICATE**

(Attached)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FCS ADVISORS, LLC,

                                        Plaintiff,

                        —against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS
A, INC., d/b/a "THORIAN HOLDINGS,"

                                        Defendants.

21 Civ. 6995 (PKC)

**AMENDED AND RESTATED,
RECEIVER'S CERTIFICATE**

New York City, New York

$6,800,000.00                                    Dated as of February [*], 2023

  This **AMENDED AND RESTATED RECEIVER'S CERTIFICATE** (as amended, supplemented, or otherwise modified from time to time, this "First Amended Certificate") is made by the Receivership Estate (as defined in the First Amendment to Receiver's Certificate Purchase and Security Agreement) and Receivership Entities (as defined in the First Amendment to Receiver's Certificate Purchase and Security Agreement) of **THEIA GROUP, INCORPORATED**, a Delaware corporation ("Theia Group"), **THEIA AVIATION LLC**, a Delaware limited liability company ("Theia Aviation"), and **THEIA HOLDINGS A, INC.**, a Delaware corporation ("Theia Holdings"), collectively, as issuer (the "Issuer"), to and in favor of **FCS ADVISORS, LLC** d/b/a Brevet Capital Advisors ("FCS") or its designee, as purchaser and the initial holder of the Certificate (as hereinafter defined) (in such capacities, and together with any successors thereto or assignees thereof from time to time, the "Purchaser").

  **WHEREAS**, pursuant to that certain *Order Appointing Michael Fuqua as Receiver* (as amended, restated, supplemented, or otherwise modified from time to time, the "Receivership Order") entered by the United States District Court for the Southern District of New York (the "Court") at Document #117 in the above-captioned case (the "Receivership Case"), the Court appointed Michael Fuqua (in such capacity, including any successor thereto or assignee thereof from time to time, the "Receiver") to serve as receiver for each of the Defendants (collectively, the "Receivership Entities" and individually, each a "Receivership Entity"), and for all assets of, in the possession of, under the control of, or held in the name of the Receivership Entities (the "Receivership Estate" and collectively with the Receivership Entities, the "Receivership"), with all the powers specified therein;

  **WHEREAS**, on February 16, 2022, the Court entered that certain *Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC* at Document #206 in the Receivership Case (as amended, restated, supplemented, or otherwise modified from time to time,

the "Financing Order"), pursuant to which the Receiver, on behalf of the Receivership, was authorized, among other things, to enter into a receiver's certificate purchase and security agreement, issue a receiver's certificate pursuant thereto, enter into the other transaction documents, incur the obligations thereunder in an aggregate principal amount of up to FIVE MILLION AND 00/100 DOLLARS ($5,000,000.00) (the "Original Maximum Certificate Amount"), and grant a first priority security interest to the Agent, for itself and as agent for the Purchaser, on all of the property of Receivership Estate, excluding only the Excluded Assets, to secure such Obligations;

**WHEREAS**, in accordance with the Financing Order, the Receivership agreed to borrow, and FCS agreed to lend to the Receivership, an amount up to the Original Maximum Certificate Amount on a first-priority priming secured basis on the terms and conditions set forth in that certain *Receiver's Certificate Purchase and Security Agreement*, dated of February 24, 2022 (the "Original Agreement"), entered into by and between the Receivership and FCS or its designee, as purchaser and the initial holder of that certain *Receiver's Certificate* of even date therewith (the "Original Certificate"), and in the other Transaction Documents (as defined therein);

**WHEREAS**, pursuant to that certain *Order (I) Authorizing the Receiver to Enter Into That Certain First Amendment to Receiver's Certificate Purchase and Security Agreement With FCS Advisors, LLC and (II) Granting Related Relief* (as amended, restated, supplemented, or otherwise modified from time to time, the "Subsequent Financing Order") entered by the Court at Document #[*] in the Receivership Case, the Court authorized the Receivership to borrow additional funds in an increased aggregate principal amount of up to SIX MILLION EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($6,800,000.00) (the "Maximum Certificate Amount") from FCS on a first-priority priming secured basis to the Agent, for itself and as agent for the Purchaser, on all of the property of Receivership Estate, excluding only the Excluded Assets, to secure such Obligations;

**WHEREAS**, in accordance with the Subsequent Financing Order, the Receivership , to borrow and FCS has agreed to lend to the Receivership, an amount up to the Maximum Certificate Amount on a first-priority priming secured basis on the terms and conditions set forth herein and in the other Transaction Documents;

**WHEREAS**, Issuer and Purchaser simultaneously have entered into that certain *First Amendment to Receiver's Certificate Purchase and Security Agreement*, dated as of even date herewith (as amended, restated, supplemented, or otherwise modified from time to time, the "First Amended Agreement" and together with the Original Agreement, the "Agreements");

**WHEREAS**, except as otherwise provided herein, capitalized terms used but not defined in this First Amended Certificate shall have the meaning given to them in the Original Agreement or the First Amended Agreement, as applicable; and

**WHEREAS**, Issuer desires to further evidence and memorialize the terms of the repayment of the Indebtedness of Issuer to Purchaser, which are set forth in the Agreements and the other Transaction Documents.

**NOW, THEREFORE**, Issuer covenants, promises, represents, warrants, and agrees as follows:

**FOR VALUE RECEIVED**, the Issuer hereby promises to pay to the order of Purchaser, at such place as the Purchaser may designate in writing, on the Maturity Date, and otherwise on the terms and conditions as specified herein, the principal amount of SIX MILLION EIGHT HUNDRED THOUSAND AND 00/100 DOLLARS ($6,800,000.00) or such lesser amount that represents the Principal Balance, plus interest thereon from time to time at the rates set forth in the Original Agreement, all as provided herein.

This First Amended Certificate is the Certificate defined in and issued pursuant to the Original Agreement and is subject to the provisions thereof and is subject to the following provisions, terms and conditions:

1.      Principal; Maturity; Prepayments.  The entire Principal Balance hereof, and all accrued and unpaid interest thereon, shall be due and payable on the Maturity Date.  The Issuer may at any time and from time to time prepay the Principal Balance hereof in whole or in part.  All payments shall be made in U.S. dollars and otherwise in accordance with the Agreements.

2.      Security.  This First Amended Certificate is secured by a first priority Lien on all Collateral, pursuant to and in accordance with the terms of the Agreements and other Transaction Documents.

3.      Interest.  The Principal Balance shall bear interest at the rate of twelve percent (12%) per annum until the Principal Balance is paid in full, whether on the scheduled Maturity Date, upon acceleration, by prepayment, or otherwise, which interest shall be due and payable on the Maturity Date.  All computations of interest shall be made on the basis of a year of three hundred and sixty (360) days and the actual number of days elapsed.

4.      Remedies; Default Interest.  After the occurrence and during the continuance of an Event of Default, upon written notice to the Issuer, the Agent may declare all of the Obligations to be immediately due and payable in full.  Upon the occurrence and during the continuance of any Event of Default, subject to the terms of the Receivership Order, the Agent, for itself and on behalf of the Purchaser, shall be entitled to enforce its right to payment and to exercise all rights and remedies hereunder and under the other Transaction Documents and at law in furtherance thereof.  After the occurrence and during the continuance of an Event of Default, at the option of the Agent, and upon written notice to the Issuer, the Principal Balance shall bear interest at the Default Rate.

5.       No Waiver.  No failure or delay on the part of any party in exercising any right, power, or privilege hereunder and no course of dealing between the Issuer and the Agent or the Purchaser shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

6.      Waivers.  Except as otherwise expressly provided for herein or in the Agreements or other Transaction Documents, the Issuer waives notice of acceptance of this First Amended Certificate, notice of extension of credit, demand, presentment, notice of presentment, notice of dishonor, notice of intent to demand or accelerate payment hereof, notice of demand, notice of

acceleration, diligence in collecting, grace, notice and protest, and agrees to one or more renewals or extensions for any period or periods of time, partial payments and releases or substitutions of security, in whole or in part, with or without notice, before or after maturity.

7.     <u>Limitation on Interest</u>. Notwithstanding any other provision of this First Amended Certificate or any other Transaction Document, interest on the Principal Balance evidenced by this First Amended Certificate is expressly limited so that in no contingency or event whatsoever, whether by acceleration of the maturity of this First Amended Certificate or otherwise, shall the interest contracted for, charged, or received by the Purchaser exceed the maximum non-usurious interest rate permitted by applicable law (the "<u>Maximum Rate</u>"). If from any circumstances whatsoever fulfillment of any provisions of this First Amended Certificate or of any other document evidencing, securing, or pertaining to the Principal Balance evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of interest validity prescribed by law, then, *ipso facto*, the Obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstances the Purchaser shall ever receive anything of value as interest or deemed interest by applicable law under this First Amended Certificate or any other document evidencing, securing, or pertaining to the Principal Balance evidenced hereby or otherwise an amount that would exceed the Maximum Rate, such amount that would be excessive interest shall be applied to the reduction of the principal owing under this First Amended Certificate, and not to the payment of interest, or if such excessive interest exceeds the Principal Balance, such excess shall be refunded to the Issuer. In determining whether or not the interest paid or payable with respect to the Principal Balance under any specific contingency exceeds the Maximum Rate, the Issuer and the Purchaser shall, to the maximum extent permitted by applicable law: (a) characterize any non-principal amount payment as an expense, fee, premium, or multiple on the principal amount hereof, rather than as interest, (b) exclude voluntary prepayments and the effects thereof, (c) amortize, prorate, allocate, and spread the total amount of interest throughout the full term of the Principal Balance so that the actual rate of interest on account of the Principal Balance does not exceed the Maximum Rate, and/or (d) allocate interest between portions of the Principal Balance to the end that no such portion shall bear interest at a rate greater than the Maximum Rate. The terms and provisions of this paragraph shall control and supersede every other conflicting provision of this First Amended Certificate and all other Transaction Documents, notwithstanding any other provision hereof or of any other Transaction Document.

8.     <u>Successors and Assigns</u>. The provisions of this First Amended Certificate shall be binding upon and inure to the benefit of the Issuer and the Purchaser and their respective successors and assigns permitted hereby, except that neither the Issuer nor the Purchaser may assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the other Person, except that the Purchaser and any other Permitted Holder may assign and transfer this First Amended Certificate and the other Transaction Documents, without the Issuer's consent, to any Permitted Holder.

9.     <u>Time is of the Essence</u>. With regard to all dates and time periods set forth or referred to in this First Amended Certificate, time is of the essence.

10.    <u>Invalidity</u>. In the event that any one or more of the provisions of this First Amended Certificate shall, for any reason, be held invalid, illegal, or unenforceable in any respect, such

invalidity, illegality, or unenforceability shall not affect any other provision of this First Amended Certificate.

11. <u>Amendment</u>. This First Amended Certificate may not be amended, modified, waived or terminated unless such is done in a writing signed by the Issuer and the Purchaser.

12. <u>Headings</u>. Section headings used in this First Amended Certificate are for convenience only and shall not affect the construction.

13. <u>Notices</u>. All notices and/or the tender of any other document or item required herein shall be valid only if sent pursuant to the terms of the Agreements.

14. <u>Governing Law and Venue</u>. THIS FIRST AMENDED CERTIFICATE AND THE RIGHTS AND OBLIGATIONS OF EACH OF THE ISSUER AND THE PURCHASER UNDER OR IN RELATION TO THIS FIRST AMENDED CERTIFICATE SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK, PURSUANT TO § 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW. Each of the Issuer and the Purchaser, by its acceptance hereof, (a) submits to the exclusive jurisdiction of the Court and any appellate court therefrom over any suit, action or proceeding arising out of or relating to this First Amended Certificate or the other Transaction Documents and (b) consents that any such suit, action, or proceeding must be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such suit, action, or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same.

15. <u>**WAIVER OF JURY TRIAL**</u>. **EACH OF THE ISSUER AND THE PURCHASER, BY ITS ACCEPTANCE HEREOF, HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS FIRST AMENDED CERTIFICATE OR THE OTHER TRANSACTION DOCUMENTS. EACH OF THE ISSUER AND THE PURCHASER, BY ITS ACCEPTANCE HEREOF, (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS FIRST AMENDED CERTIFICATE AND THE OTHER TRANSACTION DOCUMENTS, AS APPLICABLE, BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 15.**

16. <u>Amendment and Restatement</u>: This First Amended Certificate amends and restates, and is a renewal and continuation of, and is not a novation, accord, satisfaction, discharge, release, or termination of, the Original Certificate, dated February 24, 2022 (as amended hereby) and executed by the Receivership Entities, on behalf of the Receivership Estate and in favor of Purchaser, in the maximum principal amount of $5,000,000.00.

Issuer and Purchaser hereby confirm and agree that (a) the Original Certificate, all Indebtedness, liabilities, and Obligations thereunder, including, without limitation, the Existing Indebtedness thereunder, and all security interests, Liens, rights of set-off, assignments, and transfers granted and made by Issuer to Purchaser thereunder with respect to the Collateral, (1) have at all times, since the date of the execution and delivery of the Original Certificate, remained in full force and effect and (2) shall continue to remain in full force and effect under the amended and restated terms of the Original Certificate as set forth in this First Amended Certificate; and (b) this First Amended Certificate is intended to be, and shall constitute, a confirmation, reaffirmation, renewal, and continuation of, and is not intended to be, and shall not constitute, a novation, accord, satisfaction, discharge, release, or termination of, such indebtedness, liabilities, and obligations thereunder, including, without limitation, the Existing Indebtedness thereunder, or previously granted and made security interests, Liens, rights of set-off, assignments, and transfers, all of which shall continue in existence under the amended and restated terms of the Original Certificate as set forth in this First Amended Certificate.  Any reference to the Original Certificate in the Transaction Documents or any other instrument, document, or agreement related thereto or executed in connection therewith shall mean the Original Certificate as amended and restated by this First Amended Certificate.

*[Signature Page To Follow]*

IN WITNESS WHEREOF, the Issuer has duly executed this First Amended Certificate as of the day and year first set forth above.

**RECEIVERSHIP ESTATES OF**

**THEIA GROUP, INCORPORATED,**
**a Delaware corporation,**

**THEIA AVIATION, LLC,**
**a Delaware limited liability company,**

**and**

**THEIA HOLDINGS A, INC.,**
**a Delaware corporation**

By: _____
Name: Michael Fuqua
Title:   Receiver

RECEIVERSHIP ENTITIES:

**THEIA GROUP, INCORPORATED,**
**a Delaware corporation,**

By: _____
Name: Michael Fuqua
Title:   Receiver

**THEIA AVIATION, LLC,**
**a Delaware limited liability company,**

By: _____
Name: Michael Fuqua
Title:   Receiver

**THEIA HOLDINGS A, INC.,**
**a Delaware corporation**

By: _____
Name: Michael Fuqua
Title:   Receiver