UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC, <br><br> Plaintiff, <br><br> —against— <br><br> THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS," <br><br> Defendants. | 21 Civ. 6995 (PKC) |

**DECLARATION OF KURT F. GWYNNE IN SUPPORT OF FOURTH APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF REED SMITH LLP, AS COUNSEL TO RECEIVER**

I, Kurt F. Gwynne, hereby declare:

1. I am a partner of the law firm Reed Smith LLP ("Reed Smith" or the "Firm"). I have been a partner of the Firm since 2001.

2. I submit this declaration (this "Declaration") in support of the *Fourth Application for Allowance of Compensation and Reimbursement of Expenses of Reed Smith LLP, as Counsel to the Receiver* (the "Application"), filed contemporaneously with this Declaration.[1]

3. Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge. If I were called to testify, I would testify competently to the facts set forth below.

4. I have read the Application, and the facts set forth in the Application regarding the Firm's general representation of the Receiver (as defined below) are true and correct.

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to such terms in the Application.

**Receiver's Engagement of Reed Smith**

5.  On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the "Receivership Order") in the above-captioned case (the "Case"), thereby appointing Michael Fuqua as receiver ("Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities").

6.  The Receiver engaged Reed Smith to serve as his counsel with respect to the Case. I believe that the Reed Smith professionals engaged to represent the Receiver constitute "Retained Personnel" under the terms of the Receivership Order.

7.  Since Reed Smith's engagement and the Receiver's appointment, I have been the lead attorney working on the Case and, along with the Reed Smith professionals set forth in **Exhibit B** to the Application, I have assisted the Receiver with undertaking his duties as set forth in the Receivership Order, including, without limitation, the Court's directives that the Receiver (i) "preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets" and (ii) "seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ('FCC') License Assets." *See* Receivership Order, ¶¶ 6, 7.

**Compensation & Reimbursement of Expenses Sought By Reed Smith**

8.  By the Application, Reed Smith requests an allowance of compensation in the amount of $301,621 and reimbursement of expenses in the amount of $55,688.21, for a total of $357,309.21. All services and costs for which Reed Smith seeks compensation were performed for, or on behalf of, the Receiver and the Receivership Entities during the Application Period. During the period covered by the Application, Reed Smith received no payment and no promises

for payment from any source other than the Receiver and the Receivership Entities for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by the Application.

9. The compensation sought in the Application is based upon the nature, extent, and value of the services rendered, as more particularly detailed in the invoices annexed as **Exhibit B** to the Application. These invoices contain daily time logs describing the time spent by each attorney and paraprofessional for the Application Period, and they are separated into two (2) separate categories: (i) counsel to the Receiver in connection with the exercise of his general duties as Receiver (Matter No. 60001) and (ii) counsel to the Receiver with respect to the ongoing Department of Justice investigation into the Receivership Entities (Matter No. 60002).

10. The billing rates for the Reed Smith professionals who worked on this Case, as set forth in **Exhibit B** to the Application, are those Reed Smith customarily charges for legal services to the Firm's other clients. The billing rates represent the standard hourly rates for Reed Smith personnel.

11. Reed Smith reduced the amount of its requested fees by $1,095.50 (2.50 hours) incurred by certain *de minimis* timekeepers who billed 2.00 hours or less during the Application Period.

**Services Rendered by Reed Smith Professionals During Application Period**

12. During the Application Period, Reed Smith worked expeditiously and efficiently to provide legal services to the Receiver and the Receiver. The services rendered by Reed Smith to the Receiver and the Receivership Entities during the Application Period include, without limitation, the following:

    a. **Sale Process**. With respect to the sale of the FCC and NOAA licenses, Reed Smith worked closely with the Receiver and B. Riley in ongoing negotiations regarding

the proposed sale transaction (the "Proposed Sale") with Rising Sky LLC ("Rising Sky"). Reed Smith remained in contact with Rising Sky's attorneys and its principal (as well as counsel for the Receivership Entities' secured lenders) regarding the scope and contours of the Proposed Sale, including the negotiation and drafting of an asset purchase agreement, bill of sale, and related schedules and exhibits memorializing the terms of the Proposed Sale. This process culminated in the execution of an Asset Purchase Agreement (and a related amendment thereto), which the Receiver, through Reed Smith, filed on the Court's docket in connection with a motion to further extend the receivership stay. Together with the Receiver, B. Riley, and the Receivership Entities' secured lenders, Reed Smith addressed ongoing issues regarding the financing of the Proposed Sale, including, among other things, reviewing various draft agreements from Rising Sky regarding potential financing sources and liaising with Rising Sky's principals and other outside counsel in connection with a proposed bond purchase agreement. Ancillary to the sale process, Reed Smith researched, strategized, and prepared a detailed memorandum regarding the potential tax implications of the Proposed Sale, which included numerous conferences with the Receiver and his team at B. Riley and Reed Smith tax professionals. With respect to the Receivership Entities' intellectual property, Reed Smith professionals, in coordination with Frank Bonini, Esq., assisted in preparing assignment and assumption documents and corporate documents required to transfer certain intellectual property currently held by non-Receivership Entities to TGI, and analyzed the potential tax implications of such transfers. The firm and the Receiver continued to coordinate with the attorneys at Akin Gump regarding required updates to the FCC and CFIUS on the sale process. Reed Smith also remained in contact the Receiver's investment bankers, PJT Partners, L.P., regarding other potential transactions, and assisted with the preparation of a non-disclosure agreement to permit an interested party to pursue inquiries related to a potential alternative transaction. Further, Reed Smith held numerous discussions regarding a potential chapter 11 bankruptcy filing for the Receivership Entities with the Receiver, his team at B. Riley, and King & Spalding.

b. **Miscellaneous Court Filings.** Reed Smith drafted multiple motions, along with supporting memoranda and declarations, seeking further extensions of the receivership stay, along with notices of extension of the receivership stay for filing in pending litigation across the county. The Firm provides ongoing updates to parties to pending litigation subject to the receivership stay. The Firm also drafted and filed the Receiver's and the Firm's own third applications for compensation and reimbursement of expenses. Reed Smith assisted the Receiver in drafting and filing interim status reports to the Court and prepared and filed a motion seeking an increase in the amount of receivership financing, along with amendments to the *Receiver's Certificate and Purchase Agreement*. Additionally, Reed Smith maintains, and regularly updates, the "master service list" of the individuals and entities that are parties in interest and entitled to receive notice of the Receiver's filings in this Case.

c. **Board Members / Former Management**. Reed Smith communicated with former members of management regarding issues related to the ongoing sale process. The Firm also drafted multiple tolling agreements with respect to potential causes of action against certain former directors and officers and communicated with such individuals, their counsel, and counsel to the Receivership Entities' secured lenders regarding same.

d. **"Friends & Family" Notes**. Reed Smith remained in contact with holders of "friends & family" notes who reached out to the Receiver or Reed Smith regarding the status of the Case and the impact of the Proposed Sale on their claims.

e. **DOJ Investigation**. During the Application Period, Reed Smith continued to assist the Receiver in responding and producing documents related to four (4) broad grand jury subpoenas issued by the United States District Court for the District of Columbia, including two (2) broad subpoenas issued to the Receivership Entities prior to the Receiver's appointment. Reed Smith reviews the production to ensure the Receiver maintains the legal and evidentiary privileges of the Receivership Entities, as well as to comply with any existing agreements between the Receivership Entities and third parties to avoid disclosure of confidential or proprietary information. Reed Smith has worked to ensure that any production of responsive documents to the U.S. Attorney's Office for the District of Columbia does not create legal exposure for the Receivership Entities by inadvertently waiving privilege or disclosing confidential or proprietary documents in breach of agreements with third parties, which could also affect the Receiver's ability to maximize the value of the Receivership Entities' assets. Reed Smith assisted the Receiver and his team at B. Riley with a substantial amount of work assembling, reviewing, and producing tens of thousands of pages of documents in regard to the subpoenas and related information requests from the U.S. Attorney's Office for the District of Columbia, as well as maintaining and continuously updating the privilege log kept in connection with such production. Reed Smith also liaised with representatives from the Department of Justice regarding, among other things, ESI filter procedures and a proposed Order under Federal Rule of Evidence 502(d), as well as with counsel to numerous third parties that received subpoenas from the Department of Justice in connection with its ongoing investigations. Reed Smith further assisted the Receiver in connection with strategy, research, and drafting a proposed Order under Federal Rule of Evidence 502(d) regarding the inadvertent production of documents protected by the attorney-client privilege and/or the work product doctrine. Reed Smith's review and analysis of the Receivership Entities' files is ongoing, and non-privileged, non-proprietary documents continue to be produced on a rolling basis.

### Actual and Necessary Expenses Incurred During Application Period

13. Reed Smith incurred $55,688.21 in reasonable and necessary expenses during the Application Period. Such expenses were actual and necessary in connection with the services

rendered by the Firm on behalf of the Receivership Entities. The Firm utilized DLS Discovery for large mailings of significant filings to over 320 parties-in-interest, including holders of 'friends and family' notes and former third-party consultants hired by the Receivership Entities. Additionally, the Firm utilized "Gravity Stack," a Reed Smith subsidiary that provides complete, end to end managed services in litigation and internal investigations, to assist with data collection, processing, hosting, and production in connection with the ongoing Department of Justice investigation. The rates charged with respect to such expenses are at or below the market rates that the majority of law firms charge clients for such services. In addition, such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

### The Requested Compensation and Expense Reimbursement is Reasonable

14. I believe that the amounts requested by Reed Smith are reasonable given (a) the complexity of this Case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, (e) the value of property of the estate enhanced, preserved and protected, and (f) the costs of comparable services (including in cases other than a receivership case).

15. Accordingly, I respectfully request that this honorable Court authorize (i) the allowance of the compensation and the reimbursement of expenses requested by Reed Smith in the Application and (ii) payment of such amounts to Reed Smith from the assets of the Receivership Entities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 13, 2023

By:   */s/ Kurt F. Gwynne*
       Kurt F. Gwynne
