UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FCS ADVISORS, LLC,

                                        Plaintiff,

                —against—

THEIA GROUP, INC., d/b/a "THORIAN
GROUP" and/or "CYPHERIAN"; THEIA
AVIATION, LLC; and THEIA HOLDINGS
A, INC., d/b/a "THORIAN HOLDINGS,"

                                        Defendants.

---

21 Civ. 6995 (PKC)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF MICHAEL FUQUA,
AS RECEIVER, FOR ENTRY OF (A) AN ORDER (I) APPROVING BIDDING
PROCEDURES IN CONNECTION WITH THE SALE OF ALL OR SUBSTANTIALLY
ALL OF THE RECEIVERSHIP ENTITIES' ASSETS, (II) SCHEDULING AN AUCTION
FOR, AND HEARING TO APPROVE, THE SALE, (III) APPROVING NOTICE OF
AUCTION AND SALE HEARING, (IV) FURTHER EXTENDING THE RECEIVERSHIP
STAY THROUGH AUGUST 31, 2023, AND (V) GRANTING RELATED RELIEF; AND
(B) AN ORDER (I) AUTHORIZING AND APPROVING THE SALE FREE AND CLEAR
OF LIENS, CLAIMS, RIGHTS, ENCUMBRANCES, AND OTHER INTERESTS,
AND (II) GRANTING RELATED RELIEF**

REED SMITH LLP
Kurt F. Gwynne
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 521-5400
Facsimile:  (212) 521-5450

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 778-7500
Facsimile:  (302) 778-7575

Dated:  June 16, 2023

*Counsel for Michael Fuqua, in his capacity as
Receiver of Theia Group, Inc., Theia Aviation LLC,
and Theia Holdings A, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................... 2

JURISDICTION ......................................................................................................................... 3

BACKGROUND ......................................................................................................................... 4

    A.    The FCC and NOAA Licenses ........................................................................ 4

    B.    The Receivership ............................................................................................ 4

    C.    The Receivership Entities' Funded Debt. ...................................................... 5

    D.    The Receiver's Sale Efforts to Date................................................................ 7

THE PROPOSED BIDDING PROCEDURES ........................................................................ 8

PROPOSED SALE NOTICE PROCEDURES ...................................................................... 15

RELIEF REQUESTED............................................................................................................. 16

BASIS FOR RELIEF REQUESTED....................................................................................... 16

I.     THE BIDDING PROCEDURES AND NOTICE PROCEDURES ARE APPROPRIATE UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED. ........................................................................................................ 16

    A.    The Court Has Wide Discretion To Approve The Bidding Procedures. .............. 16

    B.    The Proposed Notice Procedures Are Reasonable And Appropriate. .................. 19

    C.    Pursuant To 28 U.S.C. § 2004, The Court Should "Order Otherwise" With Respect To The Real Property Sale Procedures In 28 U.S.C. § 2001. ................. 20

II.    THE COURT IS AUTHORIZED TO APPROVE THE SALE FREE AND CLEAR OF ALL INTERESTS........................................................................................... 21

III.   THE COURT SHOULD FURTHER EXTEND THE RECEIVERSHIP STAY THROUGH AND INCLUDING JULY 31, 2023 ........................................................ 23

RESERVATION OF RIGHTS ................................................................................................. 25

NOTICE.................................................................................................................................... 25

NO PRIOR REQUEST ............................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*FDIC v. Bernstein,*
786 F. Supp. 170 (E.D.N.Y. 1992) ......................................................................20

*First Nat'l Bank of Cleveland, Ohio v. Shedd,*
121 U.S. 74 (1887)............................................................................................2

*Fleet Nat'l Bank v. H & D Entm't, Inc.,*
926 F. Supp. 226 (D. Mass. 1996) ....................................................................17

*Golden Pac. Bancorp. v. F.D.I.C.,*
2002 WL 31875395 (S.D.N.Y. 2002)..................................................................18

*Huntington Nat'l Bank v. Big Sky Dev. Flint, LLC,*
2010 WL 3702361 (E.D. Mich. Sept, 16, 2010)....................................................21

*Jackson v. Smith,*
254 U.S. 586 (1921)........................................................................................17

*Lawsky v. Condor Cap. Corp.,*
154 F. Supp. 3d 9 (S.D.N.Y. 2015)....................................................................17

*Miners' Bank of Wilkes-Barre v. Acker,*
66 F.2d 850 (2d Cir. 1933)...............................................................................22

*Northwest Bank Wisconsin, N.A. v. Malachi Corp.,*
245 F. App'x 488 (6th Cir. 2009) .......................................................................3

*Regions Bank v. Egyptian Concrete Co.,*
2009 WL 4431133 (E.D. Mo. Dec. 1, 2009) .......................................................22

*S.E.C. v. Tyler,*
2004 WL 859203 (N.D. Tex. Apr. 7, 2004) ........................................................23

*S.E.C. v. Universal Fin.,*
760 F.2d 1034 (9th Cir. 1985) .........................................................................24

*SEC v. American Cap. Invs., Inc.,*
98 F.3d 1133 (9th Cir. 1996) *abrogated o.g. by Steel Co. v. Citizens for a
Better Env't.*, 523 U.S. 83 (1998) .....................................................................17

*SEC v. Byers,*
637 F. Supp. 2d 166 (S.D.N.Y. 2009).................................................................20

*SEC v. Elliot*,
    953 F.2d 1560 (11th Cir. 1992) ......................................................................17

*SEC v. Goldfarb*,
    2013 WL 4504271 (N.D. Cal. Aug. 21, 2013) .........................................21

*SEC v. Kirkland*,
    2007 U.S. Dist. LEXIS 43198 (M.D. Fla. June 14, 2007) .......................18

*SEC v. Kirkland*,
    2008 WL 4264532 (M.D. Fla. Sept. 12, 2008) .........................................21

*SEC v. Morriss*,
    2016 U.S. Dist. LEXIS 74541 (E.D. Mo. June 8, 2016) ..........................21

*SEC v. Safety Fin. Serv., Inc.*,
    674 F.2d 368 (5th Cir. 1982) .....................................................................17

*Tanzer v. Huffines*,
    412 F.2d 221 (3rd Cir. 1969) .....................................................................21

*U.S. Bank Nat'l Ass'n v. Nesbitt Bellvue Property LLC*,
    866 F. Supp. 2d 247 (S.D.N.Y. 2012) ......................................................16

*U.S. Commodity Futures Trading Comm. v. Forex Liquid. LLC*,
    2008 WL 1334950 (C.D. Cal. July 14, 2008) ..........................................21

*U.S. v. Stonehill*,
    83 F.3d 1156 (9th Cir. 1996) .....................................................................21

*United States Sec. & Exch. Comm'n v. Estate of Holzhueter*,
    2017 WL 2303575 (W.D. Wis. May 25, 2017), *appeal dismissed sub nom. Sec. &
    Exch. Comm'n v. Honefi, LLC*, 2017 WL 5897592 (7th Cir. Sept. 29, 2017)........................22

*United States v. Faircloth*,
    2003 WL 24046923 (E.D.N.C. Jan. 22, 2003), *aff'd*, 66 F. App'x 507 (4th Cir. 2003)..........23

*Van Huffel v. Harkelrode*,
    284 U.S. 225 (1931)...................................................................................22

*Varsames v. Palazzolo*,
    96 F. Supp. 2d 361 (S.D.N.Y. 2000).........................................................18

**Statutes**

28 U.S.C. § 754...............................................................................................3

28 U.S.C. § 1332.............................................................................................3

28 U.S.C. § 1692 .................................................................................................................3

28 U.S.C. § 2001 ....................................................................................................3, 20, 21

28 U.S.C. § 2002 .................................................................................................................3

28 U.S.C. § 2004 ....................................................................................................3, 20, 21

**Rules**

Fed. R. Civ. P. 62(a) .........................................................................................................15

Fed. R. Civ. P. 66.............................................................................................................17

**Other Authorities**

34 FCC Rcd. 3526 (2019).....................................................................................................4

Michael Fuqua, as court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC ("Theia Aviation"), and Theia Holdings A, Inc. ("Theia Holdings," and collectively with TGI and Theia Aviation, the "Receivership Entities"), through undersigned counsel, respectfully submits this memorandum of law (this "Memorandum") in support of the accompanying motion (the "Sale Motion"), pursuant to Paragraph 6 of the *Order Appointing Michael Fuqua as Receiver* (Doc. 117) signed on November 8, 2021 (the "Receivership Order"), for entry of:  (a) an order, substantially in the form attached as **Exhibit A** to the Sale Motion (the "Bidding Procedures Order"), (i) authorizing and approving the proposed bidding procedures, in substantially the form attached as Exhibit 1 to the Bidding Procedures Order (the "Bidding Procedures") to be used in connection with the sale (the "Sale"), free and clear of all liens, claims, interests, and encumbrances (collectively, "Interests") (except for any permitted liens and encumbrances as determined by the Receiver and any Successful Bidder or the Court), of all or substantially all of the Receivership Entities' assets (the "Assets"), including without limitation, the FCC License Assets, NOAA License Assets, any intellectual property, commercial tort claims, and other property,[1] (ii) setting the dates for the Bid Deadline (as defined below), the auction of the Assets (the "Auction"), and the hearing to consider approval of the Sale (the "Sale Hearing"), (iii) approving all forms of notice related to the Auction and the Sale, (iv) further extending the Receivership Stay through and including August 31, 2023, without prejudice to the Receiver's right to seek further extensions thereof, and (v) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the Sale of the Assets free and clear of all Interests (except for any permitted liens and encumbrances as determined by the Receiver and any

---

[1] The Receiver reserves the right to retain all claims and causes of action, including, without limitation, any claims and causes of action against former directors and officers of the Receivership Entities.

Successful Bidder or the Court), and (ii) granting related relief.  In support of the Sale Motion, the Receiver respectfully represents as follows:

## PRELIMINARY STATEMENT[2]

1.      The Receiver and his advisors have spent much of this case preparing for and conducting a robust marketing process with respect to the sale of the Assets, including but not limited to, the FCC License, the NOAA License, and related intellectual property.  Consistent with the goal of maximizing the return to creditors of the Receivership Entities, the Receiver and PJT Partners, LP ("PJT"), the Receiver's investment banker, developed an extensive list of parties that they believed would be interested in, and which the Receiver and PJT reasonably believed would have the financial resources to consummate, a Sale.  To that end, PJT distributed a teaser to the prospective purchasers and executed confidentiality agreements with certain prospective purchasers to provide them access to a virtual data room.

2.      More recently, the Receiver pursued a sale transaction with Rising Sky, LLC ("Rising Sky"), the proposed terms of which were memorialized in that certain *Asset Purchase Agreement* dated as of January 17, 2023 (the "Rising Sky APA") by and among Theia Group, Inc., Theia Aviation, Theia Holdings, as sellers, and Rising Sky, as buyer.  *See* Doc. 318 (Exhibit 1) and Doc. 320.  The terms of the Rising Sky APA required Rising Sky to pay a $40 million cash deposit on or before March 31, 2023, with the remaining cash consideration due at closing. To date, however, Rising Sky has failed to make the required deposit.  Accordingly, the Receiver believes that the relief sought by the Sale Motion is necessary to monetize the Receivership Entities' creditors.

---

[2]  Capitalized terms not defined in this Preliminary Statement shall have the meanings given to such terms in the remainder of this Memorandum.  Capitalized terms used but not defined throughout this Memorandum shall have the meanings given to such terms in the Bidding Procedures.

3.     Through the Sale Motion, the Receiver seeks to establish Bidding Procedures for the Auction of the Assets.  The Receiver believes that the Bidding Procedures will best facilitate a potential Auction, thereby maximizing recoveries for all creditors.  The Bidding Procedures provide appropriate time for the Receiver to conduct the Auction process (if necessary) and to determine the highest or otherwise best Bid, particularly in light of the marketing process already conducted by the Receiver and PJT.

4.     In connection with the requested approval of the Bidding Procedures, the Receiver also respectfully requests that the Court further extend the Receivership Stay (which is set to expire on June 30, 2023) through the end of August in order to provide sufficient time to run the sale process.  The timeline of the Bidding Procedures is aligned with this request to extend the Receivership Stay through August 31, 2023.

5.     For the reasons set forth below, the Receiver respectfully requests that the Court grant the relief requested in the Sale Motion and, among other things, enter the Bidding Procedures Order, thereby approving the Bidding Procedures for the Sale.

## JURISDICTION

6.     The Receiver filed the Sale Motion pursuant to 28 U.S.C. §§ 2001, 2002, and 2004, Rule 66 of the Federal Rules of Civil Procedure, and this Court's broad equitable powers.

7.     The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. § 1332 and in accordance with its equitable jurisdiction.  *See Northwest Bank Wisconsin, N.A. v. Malachi Corp.*, 245 F. App'x 488 (6th Cir. 2009).

8.     This Court has jurisdiction over the Assets pursuant to 28 U.S.C. §§ 754 and 1692.

## BACKGROUND

### A. The FCC and NOAA Licenses

9.      The Receivership Entities were founded in or around 2015 and applied for a license from the Federal Communications Commission ("FCC") in or around November 2016.[3]   On May 9, 2019, the FCC granted Theia Holdings a license (the "FCC License")[4] to construct, launch, and operate a non-geostationary-satellite orbit ("NGSO") system.  *See* 34 FCC Rcd. 3526 (2019). The FCC License contemplated that the Receivership Entities would construct a constellation of 112 NGSO satellites and eight (8) on-orbit spare satellites (airplanes) to conduct imaging of the entire earth's surface.[5]   One of the conditions of the FCC License is that the Receivership Entities must have launched 56 satellites by May 2025.

10.      Theia Group, Inc. applied for, and was granted, certain remote sensing licenses by the National Oceanic and Atmospheric Administration (the "NOAA License" and the rights, title, and interest in and to the NOAA License, the "NOAA License Assets").

### B. The Receivership

11.      On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered the Receivership Order in the above-captioned case, thereby creating the Receivership Entities' estate (the "Receivership Estate").

---

[3]  *See* Declaration of Reid Gorman, filed on September 9, 2021 (Doc. 45), ¶10.

[4]  As used herein, the term "FCC License Assets" shall mean all rights, title, and interest in and to the "*Order and Authorization for NGSO-like satellite operation in the 10.7-12.7 GHz, 14.0-14.5 GHz, 17.8-18.6 GHz, 18.8-19.3 GHz, 27.5-28.35 GHz, 28.35-29.1 GHz, and 29.5-30.0 GHz frequency bands*" or any replacement or successor license and any issued patents required to exploit the license granted by such Order and Authorization.

[5]  *Memorandum Opinion, Order and Authorization*, IBFS file no. SAT No. SAT-LOA-2016115-00121 and SAT-AMD-20170301-00029; Call sign S2986.

12.     Pursuant to the Receivership Order, the Court appointed the Receiver as a federal receiver for all assets of, in the possession of, under the control of, or held in the name of the Receivership Entities.

13.     The Receivership Order authorizes the Receiver to "take exclusive custody, control, and possession of all the funds, property, mail, and other assets of, in the possession of, or under the control of the Receivership Entities," wherever located (collectively, the "Receivership Property").  Receivership Order, ¶ 3.

14.     Additionally, under the Receivership Order, the Receiver may "seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ("FCC") License Assets . . . and to take all steps necessary to effectuate a transfer or sale of the assets, except any transfer of control of such FCC License shall be submitted to the Court for approval." Receivership Order, ¶ 6.

### C.  The Receivership Entities' Funded Debt.

15.     Prior to the Receiver's appointment, TGI and FCS Advisors, LLC d/b/a Brevet Capital Advisors ("FCS") entered into that certain (a) *Secured Note Purchase and Security Agreement* dated as of October 4, 2018, and (b) *Amended and Restated Secured Note Purchase and Security*, dated as of June 29, 2020 (together, the "FCS SNPSA").  Under the FCS SNPSA, FCS loaned cash to TGI in exchange for two (2) secured promissory notes (the "FCS Secured Notes").  As of the date of the Sale Motion, the aggregate amount of outstanding principal, interest, fees, and expenses due and payable on account of the FCS Secured Notes and under the FCS SNPSA is not less than $447.6 million, with additional fees and interest continuing to accrue. TGI's obligations under the FCS SNPSA and FCS Secured Notes are secured by a first-priority security interest on collateral consisting of substantially all of TGI's assets, including TGI's ownership of Theia Holdings (the entity holding the FCC License).

16.     Pursuant to the *Order Authorizing Receiver to Obtain Receivership Financing from FCS Advisors, LLC* (Doc. 206) (the "Initial Financing Order") entered by the Court on February 16, 2022, the Receiver, on behalf of the Receivership Estate, and FCS entered into that certain *Receiver's Certificate Purchase and Security Agreement* (the "PSA") dated as of February 24, 2022 and the *Receiver's Certificate* dated as of February 24, 2022 (the "Receiver's Certificate"), whereby the Receiver, on behalf of the Receivership Estate, borrowed an aggregate principal amount of $5 million and secured the obligation to repay the loan by granting FCS (for itself as agent and purchaser of the Receiver's Certificate) a first-priority priming security interest on substantially all of the Receivership Estates' assets (excluding only certain Excluded Assets (as defined in the PSA)).

17.     Pursuant to that certain *Order (I) Authorizing Receiver to Enter Certain First Amendment to Receiver's Certificate Purchase and Security Agreement With FCS Advisors, LLC and (II) Granting Related Relief* (Doc. 329) (the "Subsequent Financing Order" and together with the Initial Financing Order, the "Financing Orders"), the Receiver, on behalf of the Receivership Estate, and FCS entered into that certain *First Amendment to Receiver's Certificate Purchase and Security Agreement* dated as of March 1, 2023, which increased the principal amount borrowed from FCS under the Receiver's Certificate by an additional $1.8 million, for a total aggregate principal amount of $6.8 million, to be secured by a first-priority, priming security interest in favor of FCS (for itself as agent and purchaser of the Receiver's Certificate) on substantially all of the Receivership Estates' assets (excluding only certain Excluded Assets (as defined in the PSA)).

18.     Aithre Capital Partners LLC ("Aithre") also loaned funds to TGI pursuant to that certain *Secured Note Purchase and Security Agreement* dated as of January 5, 2021, by and between TGI and Aithre (the "Aithre SNPSA").  Under the Aithre SNPSA, Aithre loaned cash to

TGI in exchange for a secured promissory note (the "Aithre Secured Note").  As of the date of the Sale Motion, the aggregate amount of outstanding principal, interest, fees, and expenses due and payable on account of the Aithre Secured Note and under the Aithre SNPSA is not less than $41,047,305.67, with additional fees and interest continuing to accrue.  TGI's obligations under the Aithre SNPSA and Aithre Secured Note are secured by a second-priority security interest on collateral consisting of substantially all of TGI's assets.

19.     TGI also entered into numerous note purchase agreements with certain individuals, pursuant to which it issued convertible promissory notes (such notes, "Friends and Family Notes"). The aggregate amount loaned to TGI by the holders of Friends and Family Notes is approximately $69 million (which, for the avoidance of doubt, includes only the principal invested by holders of Friends and Family Notes that remains outstanding and does not include any promised returns).

### D.  The Receiver's Sale Efforts to Date

20.     On February 22, 2022, the Court entered the *Order Granting Motion of Receiver for an Order Authorizing the Retention of PJT Partners LP as Investment Banker* (Doc. 207) (the "PJT Retention Order"), whereby the Receiver retained PJT as his investment banker.

21.     PJT developed an extensive list of parties that they believed would be interested in, and which the Receiver and PJT reasonably believed would have the financial resources to consummate, a Sale.  To that end, PJT distributed a teaser to the prospective purchasers and executed confidentiality agreements with certain prospective purchasers to provide them access to a virtual data room.  PJT further obtained expressions of interest and certain bids from potential purchasers.

22.     The Receiver, however, pursued a superior sale transaction with Rising Sky. Pursuant to the Rising Sky APA, the Receivership Entities were to sell substantially all of their Assets for approximately $175 million in cash, *plus* the satisfaction and release of the obligations

owed to FCS (approximately $454.8 million), Aithre (approximately $37.6 million), and holders of Friends and Family Notes (approximately $179 million in principal).  As indicated above, however, Rising Sky failed to pay the $40 million cash deposit on or before March 31, 2023, as required by the Rising Sky APA.

23.    Based on the foregoing, in accordance with the Receiver's duties to manage the affairs of the Receivership Entities and to maximize the value of the Receivership Property, the Receiver has determined to undertake an Auction process to sell the Assets.

## THE PROPOSED BIDDING PROCEDURES

24.    The Receiver seeks approval of the Bidding Procedures, which are designed to be flexible, open to all variations of Bids for some or all of the Assets, and to facilitate a robust sale process, thereby generating the greatest value for the Assets.  The Bidding Procedures allow for the submission of competing Qualified Bids for the Assets (or portions thereof) and, if any such Bids are received, for conducting an Auction to determine the highest or best Bid(s).  In summary, if a qualified competing Bid for the Assets is timely received, the Receiver will conduct the Auction to determine which Bid(s) for some or all of the Assets should be presented to the Court for approval.  The Auction is intended to be conducted in a manner to achieve the highest or best offer for some or all the Assets, as determined by the Receiver (subject to Court approval).

25.    Specifically, the Bidding Procedures[6] provide, among other things, as follows:

    i.  **Form and Content of Qualified Bids**.  Any person who wishes to be considered eligible to participate in the Auction (each, a "Potential Bidder") must deliver to the Receiver and his advisors, a written, irrevocable offer that must be determined by the Receiver, in his reasonable business judgment, to satisfy each of the following conditions:

---

[6] To the extent that there is any conflict between this summary and the Bidding Procedures, the latter governs in all respects.  Capitalized terms used but not defined in this paragraph shall have the meanings set forth in the Bidding Procedures.

a. **<u>Identity of Potential Bidder</u>**.  Each Bid must fully disclose the identity of each entity that will be participating in connection with such Bid (including ultimate equity owners and sponsors of private companies), and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered, by power of attorney or otherwise, to complete the transactions on the terms contemplated by the parties.  A Bid must also fully disclose any connections or agreements with the Receivership Entities, any known, potential, prospective bidder, or Qualified Bidder (as defined herein), or any current or former officer, director, or equity security holder of any of the Receivership Entities.

b. **<u>Purchase Price</u>**.  Each Bid must clearly set forth the purchase price to be paid for the Assets (the "<u>Purchase Price</u>") and must (a) indicate the source of cash or (if acceptable to the Receiver and FCS) other consideration, including funding commitments, and confirm that such consideration is not subject to any financing contingencies or due diligence and (b) identify separately the cash and non-cash components of the Purchase Price, which (unless the Receiver otherwise agrees in writing) non-cash components shall be limited only to Credit Bids and shares of stock in public companies.  The Bid should include a detailed sources and uses schedule.  The Purchase Price must include sufficient cash consideration to provide for payment in full of (i) to the extent not otherwise paid or satisfied, any outstanding amounts on account of the financing approved pursuant to the Financing Orders and (ii) all costs of administration of the Receivership Estates, including, without limitation, any Transaction Fee payable to PJT in accordance with the PJT Retention Order and any taxes incurred by the Receivership Estates in, or as a result of, consummating the Sale; *provided, however*, that any Credit Bid shall also include, in addition to the foregoing, cash consideration sufficient to pay in full, and earmarked exclusively for the payment of, all claims for which there are valid, perfected, and unavoidable liens on any Assets included in such Bid that are senior in priority to those of the party seeking to Credit Bid (unless such senior lien holder consents to alternative treatment); *provided further, however*, that, solely with respect to the Transaction Fee, any Credit Bid shall include cash consideration sufficient to pay only the minimum Transaction Fee payable to PJT pursuant to that certain *Engagement Letter*, dated as of December 28, 2021, by and between PJT and the Receiver, a copy of which is attached as <u>Exhibit 1</u> to the PJT Retention Order.[7]   Notwithstanding the foregoing, with the express written consent of FCS, a Bid may include the assumption of some or all of the

---

[7]  For the avoidance of doubt, the Receiver, PJT, any entity making a Credit Bid, any other creditors of the Receivership Entities, or any parties in interest reserve all rights with respect to the Transaction Fee due to PJT in connection with a Credit Bid.

debts and amounts owed to FCS; *provided*, however, that such a Bid shall still be required to provide the required cash consideration necessary to pay amounts due under the Financing Orders and the costs of administration of the Receivership Estates (as described above).  The Receivership Estates acknowledge that (i) FCS has valid, perfected first-priority lien on all of the Assets of the Receivership Estates in an amount no less than $454.8 million and (ii) Aithre has a valid second priority lien on the Assets of the Receivership Estates in an amount no less than $41,047,305.67.

c.  **Good Faith Bid Deposit**.  Each Bid must be accompanied by a cash deposit (made by wire transfer or certified or cashier's check) equal to 10% of the aggregate value of the cash (is USD) *and* non-cash consideration of the Bid (the "Deposit").

d.  **Asset Purchase Agreement**.  Each Bid must be accompanied by duly executed transaction documents including, at a minimum, a draft purchase agreement, including the exhibits and schedules related thereto (the "Proposed APA"), and any related documents pursuant to which the Potential Bidder proposes to effectuate the Sale.  In addition to submitting an executed clean copy of the Proposed APA, each Bid must include a redline of the Proposed APA against the form of asset purchase agreement attached to the Bidding Procedures as Exhibit A.

e.  **Binding and Irrevocable**.  Each Bid must include a statement providing that the Potential Bidder's offer is binding and irrevocable until the later of (i) the conclusion of the Auction, (ii) if the Bid is selected as a Back-Up Bid, the Back-Up Bid Termination Date; and (iii) if the Bid is selected as a Successful Bid, the occurrence of the Closing of the Sale.

f.  **No Contingencies**.  Each Bid must include a statement that the Bid is formal, binding, and unconditional (except for those conditions expressly set forth in the applicable Proposed APA), is not subject to or conditioned on (x) obtaining any financing, (y) shareholder, board of directors, or other internal approval, or (z) due diligence.

g.  **Regulatory Approvals and Covenants**.  A Bid must set forth, if any, each regulatory and third-party approval required for the Potential Bidder to consummate the applicable Sale, and the time period within which the Potential Bidder expects to receive such governmental, licensing, regulatory, or third-party approvals (and in the case that receipt of any such approval is expected to take more than sixty (60) days following execution and delivery of the asset purchase agreement, those actions the Potential Bidder will take to ensure receipt of such approvals as promptly as possible).  A Potential Bidder further agrees that its legal counsel will coordinate in good faith with Receiver's legal

counsel to discuss and explain Potential Bidder's regulatory analysis, strategy, and timeline for securing all such approvals as soon as reasonably practicable, and in no event later than the time period contemplated in the Proposed APA.  Notwithstanding the foregoing, a Bid may waive the condition of governmental approval provided that the payment obligation by the Potential Bidder is irrevocable and that payment or Closing is not conditioned or revocable or returnable if the governmental approval is not received.   Waiver of governmental approval is a material factor in consideration of Bids.

h. **No Fees or Expense Reimbursement**.   Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed transaction.  By submitting its Bid, each Potential Bidder agrees to waive all rights to request or receive a break-up or other fee or expense reimbursement.  Without limiting the foregoing, each Bid must expressly state that the Bid does not entitle the Potential Bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement.

ii. **Credit Bidding**:  Any person or entity that has a valid and perfected lien on any Assets of the Receivership Estates (such person or entity, a "Secured Creditor") that is a Qualified Bidder shall have the right to Bid all or a portion of the value of such Secured Creditor's claims within the meaning of applicable law (such Bid, a "Credit Bid"); *provided* that a Secured Creditor shall have the right to Credit Bid its claim, or a portion of its claim, only with respect to the collateral by which such Secured Creditor is secured; *provided further* that any Credit Bid shall include a cash component sufficient to pay in full, in cash, (i) all claims for which there are valid, perfected, and unavoidable liens on any Assets included in such Bid that are senior in priority to those of the party making such Credit Bid (unless such senior lien holder consents to alternative treatment), including (for Credit Bids other than by FCS) the obligations arising under the Financing Orders; and (ii) the additional amount that the Receiver deems necessary to pay the costs and expenses of administering the Receivership. A Secured Creditor submitting a Credit Bid shall be required to provide cash consideration in respect of any Assets to be acquired that are not collateral securing such Secured Creditor's claim(s).  For the avoidance of doubt, FCS shall be deemed to be a Qualified Bidder and, subject to its compliance with the Bidding Procedures, may submit a Credit Bid of all or any portion of the aggregate amount of its secured claim at any time before or during the Auction, and any such Credit Bid will be considered a Qualified Bid.

iii. **Due Diligence**: The Bidding Procedures permit all Qualified Bidders that have executed a Confidentiality Agreement to participate in the diligence process.

iv. **As-Is, Where-Is**.  Each Bid must include a written acknowledgement and representation that the Potential Bidder (a) has had an opportunity to conduct any and all due diligence regarding the Assets and liabilities prior to making its Bid, (b) has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets and liabilities in making its Bid, and (c) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, liabilities, or the accuracy or completeness of any information provided by any other party including the Receiver and his professionals in connection therewith or the Auction, except as expressly stated in the Potential Bidder's proposed purchase agreement for the Assets.

v. **Ability to Close**.  Each Bid must contain written evidence, documented to the Receiver's satisfaction, that demonstrates the Potential Bidder has available consideration, including cash or a firm and unconditional commitment for financing to close the transaction as set forth in the related Proposed APA if selected as the Successful Bidder or Back-Up Bidder (provided, however, that the Closing (as defined herein) shall not be contingent in any way on satisfying any conditions to obtain such financing), and such other evidence of ability to consummate the transaction that the Receiver may request, including proof that such funding commitments or other financing are not subject to any internal approvals, syndication requirements, diligence or credit committee approvals ("Evidence of Financial Wherewithal").  Potential Bidders are encouraged to provide the Receiver with their Evidence of Financial Wherewithal in advance of the Bid Deadline to ensure that the Evidence of Financial Wherewithal is sufficient.  The Receiver has determined that FCS has the ability to close if it elects to submit a Credit Bid (or other Bid).

vi. **Right to Modify the Qualified Bid Requirements**:  At any time, and from time to time, the Receiver reserves the right, in his sole discretion, to modify the requirements for Qualified Bids.

26.     The Bidding Procedures thus describe, among other things, the requirements and manner in which bidders and bids become "qualified."

27.     To the extent there are multiple Qualified Bids and the Receiver determines that an Auction is required or appropriate to maximize value, the Receiver shall conduct an Auction. At the beginning of the Auction, the Receiver shall describe the terms of the Starting Bid(s). Bidding at the Auction will begin with the Starting Bid(s) and continue, in one (1) or more rounds

of bidding, so long as during each round at least one (1) Subsequent Bid (defined below) is submitted by a Qualified Bidder that (i) improves on such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Receiver reasonably determines that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below); *provided*, *however*, that Subsequent Bids at the Auction must be made in minimum increments of $2,000,000 or such other amount as the Receiver may determine from time to time during the Auction.  After the first round of bidding and between each subsequent round of bidding, the Receiver shall announce the Bid that he determines to be the highest or otherwise best offer (the "Leading Bid").  A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid, subject to the Receiver's authority to revise the Auction procedures.

28.    At any time, and from time to time, the Receiver reserves the right, after consulting with FCS, to change the Auction procedures.  For the avoidance of doubt, nothing in the Bidding Procedures will prevent the Receiver from taking or omitting any action that the Receiver in good faith believes (after consultation with his counsel) is required by his fiduciary duties.

29.    The timeline set forth in the Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and potential bidders (understanding that many parties already are familiar with the Receivership Entities and the Assets due to the marketing process) with the desire to run an expeditious and efficient sale process.  The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Receivership Entities' stakeholders by encouraging prospective bidders to submit competitive, value-maximizing Bids for the Assets.

30.   The Receiver further proposes the following timeline for the solicitation of Bids, the Auction, and the Sale Hearing (the "Sale Timeline"):

| KEY EVENT | DEADLINE |
|---|---|
| Bidding Procedures Hearing | June 28, 2023 at 10:00 a.m. (Eastern)[8] |
| Final deadline to submit Bids and good faith Deposits | July 24, 2023 at 4:00 p.m. (Eastern) Notwithstanding the foregoing, the Bid Deadline for FCS shall be July 26, 2023 at 4:00 p.m. (Eastern) or, to the extent the Bid Deadline is extended for other bidders, two (2) days after the Bid Deadline for such other bidders. |
| Deadline to Designate and file Notice of Qualified Bids | Approximately 2 days prior to the Auction |
| Deadline to Designate Starting Bid | Approximately 1 day prior to the Auction |
| Auction for Assets (if one or more Qualified Bids received) to be held at offices of Reed Smith LLP, 599 Lexington Avenue, Floor 22, New York, NY 10022. | July 31, 2023 at 10:00 a.m. (Eastern) |
| Deadline to File Post-Auction Notice Identifying Successful Bid(s) and Back-Up Bid(s) | As soon as practicable following Auction |
| Deadline to Object to Sale Transaction(s) | August 7, 2023 at 4:00 p.m. (Eastern) |
| Sale Hearing | August 14, 2023 at 10:00 a.m. (Eastern)[9] |
| Closing Date | To be determined. |

---

[8]  If necessary and subject to the Court's availability.

[9]  If necessary and subject to the Court's availability.

31.     Finally, the Receiver requests that the Court fix the date and time of the Sale Hearing to finally approve the sale of the Assets to the highest and best bidder and enter the Sale Order.  Further, the Receiver requests that it be authorized to close the sale transaction with the purchaser immediately following approval by this Court, notwithstanding any provision of Fed. R. Civ. P. 62(a) that requires a 14-day stay of enforcement of the Sale Order.

## PROPOSED SALE NOTICE PROCEDURES

32.     The Receiver also proposes the following notice procedures (the "Notice Procedures") with respect to the Sale, the Auction (if any), the Sale Hearing, and related objection deadlines.

33.     **Sale Notice**.  The Receiver requests approval of the *Notice of Auction and Sale Hearing* (the "Sale Notice") substantially in the form attached to the Sale Motion as **Exhibit B.** Within two (2) business days of entry of the Bidding Procedures Order, the Receiver (or his agents) will serve the Sale Notice by e-mail (if known) and first-class mail, postage prepaid, upon FCS, Rising Sky,[10] all known prospective bidders, all parties with a known interest in the Assets, all persons on the ECF service list, and all parties listed in the Receiver's e-mail service list (collectively, the "Notice Parties").

34.     **Objection Deadlines**.  The Receiver also requests that the Court set the deadline to object to (i) the Bidding Procedures (the "Bidding Procedures Objection Deadline") as June 23, 2023 at 4:00 p.m. (Eastern) and (ii) the Sale (the "Sale Objection Deadline") as August 7, 2023 at 4:00 p.m. (Eastern) and direct that objections, if any, shall be in writing, filed

---

[10] The Receiver reserves the right to decline any Bid (whether or not a Qualified Bid) from Rising Sky that provides less consideration than is required under the Rising Sky APA.

with the Court and served upon the Notice Parties so that they are actually received on or before the Bidding Procedures Objection Deadline or the Sale Objection Deadline, respectively.

35.     **Bidding Results**.  As soon as practicable (but no later than one (1) business day) after the Bid Deadline, the Receiver will file a notice on the Court's docket as to whether more than one Qualified Bid has been received and whether the Receiver will proceed with the Auction.

36.     **Auction Results**.  As soon as practicable after the Auction, the Receiver proposes to file a notice (the "Post-Auction Notice") on the Court's docket identifying the Successful Bidder(s) for the Assets (or portions thereof) and any applicable Back-Up Bidder(s).

**RELIEF REQUESTED**

37.     By the Sale Motion, the Receiver respectfully seeks the entry of two (2) orders of this Court:  (i) the Bidding Procedures Order, substantially in the form attached as **Exhibit A**, (a) approving the Bidding Procedures and scheduling the Sale Hearing (b) setting objection and bidding deadlines with respect to the Sale, (c) extending the Receivership Stay through and including August 31, 2023, and (d) and granting related relief; and (ii) an order approving the Sale(s) of the Assets, free and clear of liens, claims, encumbrances and granting related relief after the conclusion of an Auction.

**BASIS FOR RELIEF REQUESTED**

I.     **THE BIDDING PROCEDURES AND NOTICE PROCEDURES ARE APPROPRIATE UNDER THE CIRCUMSTANCES AND SHOULD BE APPROVED.**

   A. **The Court Has Wide Discretion To Approve The Bidding Procedures.**

38.     The Bidding Procedures are reasonable and provide for an orderly process for the sale of the Assets.  Approval of the Bidding Procedures is well within the Court's broad discretion

in administering equity receiverships.  Consistent with Federal Rule of Civil Procedure 66,[11] this Court has broad powers and wide discretion to determine relief in a receivership proceeding, including the power to order a sale of all property within its custody and control.  *See, e.g.*, *SEC v. Elliot*, 953 F.2d 1560, 1566 (11th Cir. 1992) (authorizing receiver's disposal of receivership assets); *SEC v. American Cap. Invs., Inc.,* 98 F.3d 1133, 1144 (9th Cir. 1996) (approving receiver's decision to sell receivership estate property) *abrogated o.g. by Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83 (1998).  These broad powers derive from the historically inherent powers of the district court to fashion equitable relief in a receivership.  *See SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982).

39.     The goal of any receivership estate should be to obtain the highest and best offer for the assets.  *See Fleet Nat'l Bank v. H & D Entm't, Inc.*, 926 F. Supp. 226, 239-40 (D. Mass. 1996) (citing *Jackson v. Smith*, 254 U.S. 586 (1921)).  Accordingly, in determining whether to approve sale-related procedures in the receivership context, courts generally focus on whether a proposed receivership sale plan has sufficient safeguards to solicit the best price that a legitimate, willing buyer in an arms-length negotiation would offer, while conducting the sale in a timely and cost-efficient manner that will maximize net sale proceeds and decrease expenses to the receivership estate.  *See Lawsky v. Condor Cap. Corp.*, 154 F. Supp. 3d 9, 22 (S.D.N.Y. 2015) (approving sale of company assets over the objection of the company's owner and stating "[a]ll the Receiver is required to establish is that there are sound business reasons for selling assets and for accepting the offer he selected.  Once he makes such a showing, the Receiver's determination

---

[11] Fed. R. Civ. P. 66 provides that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued.  But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule.  An action in which a receiver has been appointed may be dismissed only by court order."

that accepting the offer is in the best interest of [the estate] is owed deference under the business judgment rule."); *SEC v. Kirkland*, 2007 U.S. Dist. LEXIS 43198, at *1-2 (M.D. Fla. June 14, 2007) (granting motion to sell real property when receiver entered into a contract with a "prospective buyer for a satisfactory price" subject to holding an auction pursuant to which the Receiver would not need to perform under the contract if a higher bid was received at auction).[12]

40.     Moreover, courts are in agreement that a receiver's business judgement is entitled to "great judicial deference."  *See Golden Pac. Bancorp. v. F.D.I.C.*, 2002 WL 31875395 (S.D.N.Y. 2002); *aff'd sub nom, Golden Pac. Bancorp. v. F.D.I.C.*, 375 F.3d 196 (2d Cir. 2004). The Receiver believes that the Bidding Procedures will provide an orderly and uniform mechanism by which interested buyers and investors can submit offers for the Assets and will ensure a competitive and fair bidding process.  The Receiver also believes that the Bidding Procedures will promote active bidding from seriously interested parties and will confirm the best and highest offer reasonably available for the Assets.  The Bidding Procedures will allow the Receiver to conduct the Auction, subject to the terms of the Bidding Procedures, in a controlled, fair, and open manner that will encourage participation by financially capable bidders that demonstrate the ability to close a transaction.  In light of the prior efforts of PJT (the Receiver's investment banker) to run a sale process and the lengthy efforts to effectuate a sale under the Rising Sky APA, potential purchasers likely already are aware of the fact that the Assets are for sale.  Thus, the Bidding Procedures provide ample time for any potential purchaser to submit a Qualified Bid.

41.     The Bidding Procedures do not impair the Receiver's ability to consider all Qualified Bids made at or prior to the Auction, and they preserve the Receiver's right to modify

---

[12] A receivership in a federal diversity action is governed by federal law.  *See U.S. Bank Nat'l Ass'n v. Nesbitt Bellvue Property LLC*, 866 F. Supp. 2d 247, 255 (S.D.N.Y. 2012); *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000).

the Bidding Procedures as necessary or appropriate to maximize value for the Receivership Estates.  For instance, in the event that the Receiver obtains more than one competing Qualified Bid with respect to the Assets and the Auction is held, bidding shall commence at the amount of the highest or otherwise best Bid received for such Assets, which determination will be communicated to Qualified Bidders prior to the commencement of the Auction, and the relevant Qualified Bidders may submit successive Bids in minimum increments of $2,000,000 (or such other amount as the Receiver may determine from time to time during the Auction).  The Receiver may consider one Qualified Bid for all of the Assets or a combination of Qualified Bids for portions of the Assets as together constituting the highest or best offer.

### B.  The Proposed Notice Procedures Are Reasonable And Appropriate.

42.     The proposed Notice Procedures with respect to the Sale, Auction, and Sale Hearing also should be approved.  The Receiver intends to serve the Sale Notice, in substantially the form attached to the Sale Motion as **<u>Exhibit B</u>**, on the Notice Parties within two (2) business days after entry of the Bidding Procedures Order.

43.     The Receiver submits that these Notice Procedures are reasonably calculated to provide timely and adequate notice of the Sale, Bidding Procedures, Auction, and Sale Hearing to the Receivership Estates' creditors and all other parties in interest that are entitled to notice, as well as those parties that have expressed a bona fide interest in acquiring the Assets.  Accordingly, the Receiver respectfully requests that the Court (i) approve the Notice Procedures, including the form and manner of service and publication of the Sale Notice, and (ii) confirm that no other or further notice of the Sale, Bidding Procedures, Auction, or Sale Hearing is necessary or required.

### C. Pursuant To 28 U.S.C. § 2004, The Court Should "Order Otherwise" With Respect To The Real Property Sale Procedures In 28 U.S.C. § 2001.

44.     Section 2001 of title 28, United States Code, provides that, in connection with certain real property sales, appraisals and newspaper notice are required.  *See* 28 U.S.C. § 2001. Pursuant to section 2004 of title 28, United States Code, "[a]ny personalty sold under any order or decree of any court of the United States shall be sold in accordance with section 2001 of this title, *unless the court orders otherwise*."  28 U.S.C. § 2004 (emphasis added).

45.     A "district court has extremely broad discretion in supervising an equity receivership and in determining the appropriate procedures to be used in its administration." *See, e.g.*, *SEC v. Byers*, 637 F. Supp. 2d 166, 184 (S.D.N.Y. 2009) (quoting *FDIC v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992) (internal quotation marks omitted)).  Here, the Court should exercise its discretion to "order[] otherwise" under section 2004 and authorize the sale of the Assets without complying with the procedures in section 2001.

46.     The Receiver has retained PJT, a well-known investment banker, to lead the sale of the Assets.  That process began back in December 2021.  Based on its expertise and contacts, PJT already has reached out to potentially interested purchasers.  Several potential purchasers signed non-disclosure agreements, and a few made bids.  However, the Receiver determined that the Rising Sky APA was superior to such bids.  For months, the Receiver has been attempting to close on the sale to Rising Sky.  Accordingly, for well over a year, the Assets have been for sale "on the market."  Selling the Assets in the courthouse, obtaining appraisals (for private sales), or providing newspaper notice pursuant to the procedures for the sale of real property under section 2001 will not maximize the value of the Assets.  Instead, following such procedures would add only expense to the Sale process.

47.      Accordingly, pursuant to section 2004, the Receiver requests that the Court permit the sale pursuant to the Bidding Procedures Order rather than the process set forth in section 2001. *See, e.g.*, *Tanzer v. Huffines*, 412 F.2d 221, 223 (3rd Cir. 1969) (affirming district court's authorization of receiver stock sale without an appraisal when notice of opportunity to bid was given to interested parties and stock was sold to the highest unconditional bidder); *U.S. v. Stonehill*, 83 F.3d 1156, 1160 (9th Cir. 1996) (holding that § 2004 permitted the District Court to dispense with § 2001 appraisal requirement for the sale of personal property); *SEC v. Morriss*, 2016 U.S. Dist. LEXIS 74541, at *1 (E.D. Mo. June 8, 2016) (approving terms of private sale of personal property, waiving section 2001 requirements); *SEC v. Goldfarb*, 2013 WL 4504271, *2-3 (N.D. Cal. Aug. 21, 2013) (same); *U.S. Commodity Futures Trading Comm. v. Forex Liquid. LLC*, 2008 WL 1334950, *5 (C.D. Cal. July 14, 2008) (same); *SEC v. Kirkland*, 2008 WL 4264532, *3 (M.D. Fla. Sept. 12, 2008) (same); *Huntington Nat'l Bank v. Big Sky Dev. Flint, LLC*, 2010 WL 3702361, *7 (E.D. Mich. Sept, 16, 2010) (requirements of § 2001 were waived by receivership order which granted the receiver "'the fullest powers and duties of a receiver permitted under applicable law and equity,' including the power to 'negotiate and execute sales.'").

48.      For all of the foregoing reasons, pursuant to section 2004, the Receiver respectfully requests that the Court approve the Bidding Procedures and Notice Procedures and not require compliance with section 2001.

## II.      THE COURT IS AUTHORIZED TO APPROVE THE SALE FREE AND CLEAR OF ALL INTERESTS.

49.      In the interest of attracting the highest and best Bids for the Assets, the Receiver submits that the Sale should be "free and clear" of all Interests (except for any permitted liens and encumbrances as determined by the Receiver and any Successful Bidder or the Court).  To that

end, the Bidding Procedures Order provides that the Sale of the Assets to the highest and best bidder shall be free and clear of all Interests.  All such Interests shall, however, attach to the proceeds held by the Receiver from the disposition of the Assets in the same priority, extent, and amount as such Interests enjoyed with respect to the Assets.

50.     It is well settled that federal courts have the inherent power to authorize the sale of property held *in custodia legis* free and clear of liens, claims, and encumbrances, with any such encumbrances to attach to sale proceeds.  *See, e.g.*, *First Nat'l Bank of Cleveland, Ohio v. Shedd*, 121 U.S. 74, 86-87 (1887) (upholding federal court's sale of railroad free and clear of liens and claims prior to adjudication of mortgage where the best interest of creditors would be served by immediate sale); *Van Huffel v. Harkelrode*, 284 U.S. 225, 227 (1931) (noting the long-standing power of a federal court in equity to allow receivers to sell free and clear); *Miners' Bank of Wilkes-Barre v. Acker*, 66 F.2d 850, 853 (2d Cir. 1933) ("A court of equity, under proper circumstances, has the power to order a receiver to sell property free and clear of all encumbrances, and to deny the mortgagee the right to foreclose his mortgage.").

51.     Indeed, "free and clear" provisions are customary in the context of receivership sales.  *See, e.g.*, *United States Sec. & Exch. Comm'n v. Estate of Holzhueter*, 2017 WL 2303575, at *2 (W.D. Wis. May 25, 2017), *appeal dismissed sub nom. Sec. & Exch. Comm'n v. Honefi, LLC*, 2017 WL 5897592 (7th Cir. Sept. 29, 2017) ("Upon closing, the sale of the Assets by the Receiver will constitute a valid, legal and enforceable transfer to the Buyer of all right, title and interest to the Assets, free and clear of all mortgages, judgments, liens, claims and encumbrances."); *Regions Bank v. Egyptian Concrete Co.*, 2009 WL 4431133, at *7 (E.D. Mo. Dec. 1, 2009) ("[I]t has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold free and clear of liens and related claims.");

*United States v. Faircloth*, 2003 WL 24046923, at *1 (E.D.N.C. Jan. 22, 2003), *aff'd*, 66 F. App'x 507 (4th Cir. 2003) ("The public sale of such property shall be sold free and clear of all liens, encumbrances and interests existing against the same."); *S.E.C. v. Tyler*, 2004 WL 859203, at *1 (N.D. Tex. Apr. 7, 2004) ("Such sale shall be free and clear of any and all liens, claims and encumbrances of any nature whatsoever. To the extent there are any alleged liens, claims and encumbrances they shall attach to the proceeds of the sale held by the Receiver subject to further order of the Court.").

52.     The Receiver requests that the Court approve a sale of the Assets "free and clear" of all Interests, in accordance with the terms and conditions contained in the Sale Order.

## III.    THE COURT SHOULD FURTHER EXTEND THE RECEIVERSHIP STAY THROUGH AND INCLUDING AUGUST 31, 2023.

53.     The proposed Sale Timeline on which the Bidding Procedures are premised requires a further extension of the stay of all litigation (the "Receivership Stay") against Receivership Entities set forth in paragraph 4 of the Receivership Order, which specifically provides that

> For a period of 120 days, no person or entity, including any creditor or claimant of the Receivership Entities, shall commence or maintain an action, proceeding, lawsuit or bankruptcy case against the Receivership Entities or impacting the property and assets subject to this Order, including an action, proceeding or lawsuit heretofore commenced, without having first obtained leave of this Court. Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.

*See* Receivership Order, ¶ 4.

54.     The Receivership Stay initially was set to expire on March 9, 2022, which was the 120th day following the Court's entry of the Receivership Order on November 8, 2021. By a series of motions and orders, the Receiver requested, and the Court granted, extensions of the

Receivership Stay through June 30, 2023. *See* Doc. 211-12, Doc. 219 (granting first extension); Doc. 258-59, Doc. 270 (granting second extension); Doc. 298 (*sua sponte* granting third extension); Doc. 307-08, Doc. 312 (granting fourth extension); Doc. 316-18, Doc. 323 (granting fifth extension); Doc. 337-40; Doc. 350 (granting sixth extension).

55.     Extending the Receivership Stay through August 31, 2023 (without prejudice to the Receiver's right to seek further extensions) is essential to the proposed Sale process. Absent such extension, the Receiver will be unable to complete the Sale process in an orderly manner.

56.     Further extending the Receivership Stay comports with its underlying purpose of preserving the status quo of creditors and claims so that the Receiver may administer the Assets in an equitable manner. *See, e.g.*, *S.E.C. v. Universal Fin.*, 760 F.2d 1034, 1038 (9th Cir. 1985) (no abuse in refusing to lift stay four (4) years into the case).

57.     Moreover, as this Court has consistently indicated in its rulings, no third parties will be prejudiced by the further extension of the Receivership Stay because the Receivership Order provides a mechanism by which such parties can request that the Court lift the Receivership Stay. *See* Receivership Order, ¶ 4 ("Any party or non-party may seek leave from this Court to commence or maintain an action, proceeding, lawsuit or bankruptcy case upon a showing that such a petition is appropriate and would not interfere with the receivership estate.").

58.     For the foregoing reasons, the Receiver respectfully requests that the Court exercise its broad powers and discretion in the context of this equity receivership and further extend the Receivership Stay through and including August 31, 2023 to permit the Sale process to proceed in due course.

## **RESERVATION OF RIGHTS**

59.      Nothing contained herein is intended, or should be construed, as an admission of the validity of any claim against the Receivership Entities or the Receivership Estate or a waiver of their rights to dispute any claim.

## **NOTICE**

60.      Notice of the Sale Motion will be served via (a) ECF on all parties that have entered their appearance in this case and (b) e-mail on the parties in interest listed on the service list developed by the Receiver for parties that have not filed an appearance, as well as on counsel to (i) FCS, (ii) Aithre, (iii) Rising Sky, and (iv) all known prospective bidders.  The Receiver submits that no other or further notice of the Sale Motion is required under the circumstances.

## **NO PRIOR REQUEST**

61.      No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Receiver respectfully requests that this Court (a) enter the Bidding Procedures Order, substantially in the form attached as **Exhibit A**, granting the relief requested herein, (b) extend the Receivership Stay through and including August 31, 2023, without prejudice to the Receiver's right to seek further extensions thereof, (c) enter the Sale Order following the Sale Hearing, in the form to be subsequently submitted to the Court, and (d) grant the Receiver such other relief as is appropriate.

Dated: June 16, 2023
     New York, NY

Respectfully submitted,

REED SMITH LLP

By:    */s/ Kurt F. Gwynne*
       Kurt F. Gwynne
       599 Lexington Avenue
       New York, New York 10022
       Telephone:  (212) 521-5400
       Facsimile:  (212) 521-5450
       E-mail:  kgwynne@reedsmith.com

- and -

Jason D. Angelo, Esq. (admitted *pro hac vice*)
1201 N. Market Street, Suite 1500
Wilmington, Delaware 19801
Telephone:  (302) 778-7500
Facsimile:  (302) 778-7575
E-mail:  jangelo@reedsmith.com

*Counsel for Michael Fuqua, in his capacity as*
*Receiver of Theia Group, Inc., Theia Aviation LLC,*
*and Theia Holdings A, Inc.*