UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>                                        Plaintiff,<br><br>—against—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>                                      Defendants. | 21 Civ. 6995 (PKC) |

### REPLY OF MICHAEL FUQUA, AS RECEIVER, TO RESPONSE OF MICROCOSM, INC. AND SCORPIUS SPACE LAUNCH COMPANY TO SALE MOTION

Michael Fuqua, as court-appointed receiver (the "Receiver")[1] for Theia Group, Inc. ("TGI"), Theia Aviation LLC ("Theia Aviation"), and Theia Holdings A, Inc. ("Theia Holdings," and collectively with TGI and Theia Aviation, the "Receivership Entities"), through his undersigned counsel, respectfully submits this reply (the "Reply") to the *Response* (Doc. 373) (the "Sale Response") filed by Microcosm, Inc. and Scorpius Space Launch Company (together, the "Claimants"). In support of this Reply, the Receiver relies upon the *Declaration of Michael Fuqua, as Receiver, in Support of Reply of Michael Fuqua, as Receiver, to Response of Microcosm, Inc. and Scorpius Space Launch Company to Sale Motion* (the "Receiver Decl.") filed contemporaneously herewith and, in further support of the Sale Motion, respectfully represents as follows:

---

[1] Capitalized terms not defined in this Reply shall have the meanings given to such terms in the Purchase Agreement (Doc. 365-1) or the *Memorandum of Law in Support of the Sale Motion* (the "Memorandum") (Doc. 366), as the context requires.

## BACKGROUND

As was their right under the Receivership Order, Claimants opposed one of the Receiver's prior requests for extension of the Receivership Stay. *See* Doc. 279.[2] Soon thereafter, and immediately following the deposition of Dr. James Wertz (one of Claimants' principals) by the Receiver's counsel, Claimants' counsel sent a letter to the Receiver's counsel demanding, among other things, that the Receiver include Claimants in confidential sale-related discussions. *See* Receiver Decl. ¶ 4. Claimants' counsel also (inaccurately) accused the Receiver of "never reach[ing] out" to Claimants "to assess their claims against Theia or to assess the *bona fides* of their outstanding claims." *Id.* ¶ 5. In response, the Receiver's counsel confirmed receipt of certain documents related to Claimants' claims against TGI and detailed the Receiver's *prior (and extensive) contact* with one of Claimants' contract administrators. *Id.* ¶ 6. The Receiver's counsel also indicated that it was impractical and inappropriate to include Claimants in *all* future discussions related to the sale of the Receivership Entities' assets due to the confidential nature of such discussions (among other reasons). *Id.* ¶ 7. However, the Receiver offered to hold periodic telephone conferences with Claimants' counsel to discuss public, non-confidential information related to the sale process. *Id.* ¶ 8. This offer was ignored,[3] and after nearly a year of radio silence (and without any prior attempt to reach out to the Receiver or his counsel), Claimants filed the Sale Response. *Id.* ¶¶ 9 - 11.

---

[2] Claimants filed their untimely *Plaintiffs/Petitioners Microcosm, Inc.'s and Scorpius Space Launch Company's Response to Expedited Motion of Receiver for an Order Further Extending the Stay Provided in the Receivership Order* (Doc. 279) on July 22, 2022, over a week after the Court entered an Order (Doc. 270) granting the Receiver's request to further extend the Receivership Stay through October 15, 2022.

[3] The Receiver's counsel also offered to connect Claimants with Purchaser's counsel to facilitate discussions and the exchange of information related to the Sale Transaction. *Id.* ¶ 9. Other than to indicate through counsel that they "have the issue under advisement," Claimants have likewise ignored this offer. *Id.* ¶ 10.

**REPLY**

Claimants indicate in the Sale Response that they do "not oppose the final relief requested by the Receiver in the Sale Motion."  *See* Sale Response at 2.  In the very same sentence, however, Claimants (inaccurately) accuse the Receiver of leaving unsecured creditors "out of the loop as to the proposed next steps in this case."  *Id*.  Claimants go on to falsely state that it "appears" that the Receiver has paid "little attention . . . to the claims and concerns of the class of unsecured creditors," instead focusing on "obtaining cooperation of the banks and insiders."  *Id*.  Nothing could be further from the truth.

Throughout the course of the receivership case, the Receiver has been transparent about the process of selling the Receivership Assets and his goal of maximizing the value of such assets for the benefit of all creditors and parties in interest (including the Claimants).  As detailed in the Memorandum, for well over a year, the Receiver and his advisors conducted a public sale and marketing process aimed at maximizing the value of the Receivership Assets.  *See* Memorandum at 5-9.  During most of that time, the Receiver worked with Rising Sky, LLC ("Rising Sky") in an attempt to close a sale transaction that would have resulted in a substantial distribution on account of unsecured claims.  However, as discussed in the Memorandum, despite repeated promises and extensions, Rising Sky could not raise enough funds to even make the required $40 million deposit.  *Id.* at 7.

Although the Receivership Assets were publicly for sale for more than a year, and notwithstanding a sale process run by PJT Partners LLP (as investment banker), the highest and best bid for the Receivership Assets was a Credit Bid from the Buyer in the amount of $40 million of debt owed to the Receivership Entities' senior secured creditor, plus the assumption of an additional $40 million in Assumed Liabilities.  *See* Memorandum at 9.  Thus, the proposed Sale

Transaction (i) represents the highest and best offer for the Receivership Assets and (ii) reflects the highest realizable value of the Receivership Assets based upon the market check provided by the lengthy and public marketing and sale process.  *See, e.g.*, *id*. at 17.

Claimants contend that "the Receive[r] should be required to address the potential distribution and dividends which may result from the sale to make sure that this case is not just to protect the claims of the bank and the interests of the insiders."  *See* Sale Response at 2.  But it is clear from the face of the Memorandum and the Purchase Agreement what the proposed Sale Transaction means for unsecured creditors.  The consideration for the Receivership Assets consists of an $80 million credit bid by the senior secured lender, which has a first priority secured claim of nearly $470 million secured by the Receivership Assets.  Thus, based on the results of the sale and marketing process, there are (and will be) no funds in the Receivership Estate to pay the senior secured creditor in full or make any distributions to junior secured creditors—let alone unsecured creditors like Claimants.  While this outcome is not the result the Receiver and his advisors anticipated, it is not for lack of effort, and it most certainly is not because the Receiver was focused on obtaining cooperation of secured creditors (one of which funded the entire receivership process and the Receiver's efforts to close a sale that would benefit other constituents).  For the avoidance of doubt, none of the secured creditors are "banks" or "insiders."

The Receiver and his advisors also engaged in hard-fought, arms' length negotiations over the terms of the Purchase Agreement, which provides a "fiduciary out" that allows the Receiver to terminate the Purchase Agreement if he "determines in good faith and after consultation with counsel that [the Sellers'] continued performance or closing under [the Purchase Agreement] or any other documents relating to or concerning the [Sale] Transaction would be inconsistent with his fiduciary or other duties under applicable Law."  *See* Purchase Agreement, § 7.09(d).  Thus, to

the extent the Receiver determines (prior to the Closing Date) that a transaction superior to the proposed Sale Transaction is actionable, the Receiver has the right to terminate the Purchase Agreement and pursue consummation of such superior transaction.

## CONCLUSION

In light of the foregoing and based on the arguments set forth more fully in the Memorandum, the Receiver respectfully submits that the Court should (i) overrule the Sale Response and (ii) enter the Approval Order, substantially in the form attached as **Exhibit A** to the Sale Motion.

Dated: September 11, 2023
       New York, New York

Respectfully submitted,

REED SMITH LLP

By:   */s/ Kurt F. Gwynne*
      Kurt F. Gwynne
      599 Lexington Avenue
      New York, New York 10022
      Telephone:  (212) 521-5400
      Facsimile:   (212) 521-5450
      E-mail:  kgwynne@reedsmith.com

      - and -

      Jason D. Angelo, Esq. (admitted *pro hac vice*)
      1201 N. Market Street, Suite 1500
      Wilmington, Delaware 19801
      Telephone:  (302) 778-7500
      Facsimile:   (302) 778-7575
      E-mail:  jangelo@reedsmith.com

      *Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*