# **<u>EXHIBIT B</u>**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>    Defendants. | Case No. 21 Civ. 6995 (PKC) |

## DECLARATION OF JOSEPH VARKOLY

I, Joseph Varkoly, submit this declaration (this "Declaration") pursuant to 28 U.S.C. § 1746, and declare, to the best of my knowledge, information and belief, as follows:

1. I am the President of Basler Turbo Conversions, L.L.C., a small Wisconsin company with its principal place of business in Oshkosh, Wisconsin. All facts set forth in this Declaration are based on my personal knowledge. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

2. I submit this Declaration in support of Basler's *Motion to Compel Payment of Cure Amounts, or in the Alternative for Relief from the Sale Order and the Receivership Stay* (the "Motion"). I have read the Motion and am familiar with the matters stated therein. Each of the statements contained in the Motion is true and correct, and each is hereby verified as if it were reproduced herein.

51437780

3.      Basler designs and configures DC-3 airplanes to support a global fleet serving the specialized cargo, scientific research, geophysical survey, aerial survey, ISR, flight testing, and Maritime Patrol markets.

4.      Basler and Theia Group, Inc. were parties to a pre-receivership *Contract for Sale of Three Basler Turbo-67 Aircraft and Modification of One Basler Turbo-67 Aircraft*, dated September 16, 2020 (the "Contract").  By contract modification dated December 23, 2020, Theia Aviation, LLC purported to transfer "contractual authority" from Theia Group, Inc. to Theia Aviation, LLC (Theia Group, Inc. and Theia Aviation, LLC are hereinafter referred to, collectively, as "Theia").  In the Contract, Basler promised to retrofit three Douglas Model DC-3 / C-47 planes (the "Aircraft") for Theia's use, and Theia promised to pay for them.[1]  Theia made significant down payments on the Aircraft prior to the filing of its receivership case, but it is undisputed that Basler, not Theia or the Receiver, owns the converted Aircraft.  Payments still owed to complete the purchase have not been made, and Basler continues to possess the Aircraft and incur expenses to keep them in deliverable condition in accordance with the Contract.

5.      Since the filing of Theia's receivership case, Basler has, in consultation with the Receiver, continued work on the Aircraft, and provided periodic updates to the Receiver on the amounts necessary to cure defaults under the Contract and the status of work.  As I understand it, on August 12, 2023, Buyer and Receiver entered into their *Asset Purchase Agreement* (the "APA"), by which the Receiver transferred to Buyer the Receiver's interest in, and obligations under, the Contract.  In other words, Buyer acquired Theia's rights to complete its acquisition of the Aircraft.

---

[1] Basler also agreed in the Contract to modify a fourth plane for Theia, but Basler completed and delivered that plane in February, 2021, and has been paid in full.

6. In the APA, I understand that Theia's rights to complete its purchase under the Contract are identified as both "Aircraft" and "Assigned Contracts," subsets of the "Acquired Assets" being purchased by the Buyer. The "Cure Amount" for each Aircraft (that is to say, the remaining purchase price, plus amounts necessary to cure defaults) is listed as: "Aircraft #68" - $3,973,297; "Aircraft #69" - $3,550,581; and "Aircraft #70" - $3,238,700. These three cure amounts were accurate in August 2023, but the total amount due has since increased by more than $800,000 to $11,576,714 in the aggregate, as of February 29, 2024 (collectively, the "Cure Costs"). Basler has periodically updated the Receiver on these Cure Costs and the basis for their accrual.

7. As I understand it, the Receivership Court entered the order approving the Receiver's sale to Buyer on October 26, 2023 (the "Sale Order"). Since then, Basler has spoken to the Receiver about the deal many times, and both the Receiver and the Buyer have repeatedly assured Basler, sometimes in succeeding weeks, that a closing is imminent. Most recently, however, the Buyer stopped communicating entirely with Basler, and the Receiver informed Basler that the Buyer is trying to broker a deal with a new, unrelated additional or replacement party in an apparent attempt to swap buyers. None of Basler's Cure Costs has been paid, and Basler continues to incur costs for storage and maintenance.

8. Basler's Cure Costs continue to rise (including interest, aircraft storage charges, insurance, and other expenses), and I understand that, due to the receivership stay, it cannot sell the Aircraft to a third party. The Cure Costs of more than $11.5 million (and counting) are hugely significant for a company of Basler's size. So are the drain on capacity and the costs of storing and maintaining three planes that occupy space which would otherwise be used in Basler's manufacturing process. Basler's annual charges for Aircraft storage alone are more than

$50,000 *per plane* (likely 2-3 times less than the relevant market price to rent a hangar), and Basler must pay approximately $37,000 *per month* for insurance. Neither the Receiver nor the Buyer has offered to pay any of Basler's costs while they intentionally delay their closing. With the exception of painting one plane (as the Receiver is aware), I believe that Basler has fully performed all of its obligations to date.

9. Basler requests that either the Buyer or the Receiver pay Basler's Cure Costs and take possession of and title to the Aircraft. Otherwise, Basler requests relief from the Sale Order and the receivership stay so that Basler may terminate the Contract and mitigate its damages. Basler believes there is a market for the Aircraft, and if given permission to do so, would attempt to sell the Aircraft to one or more third parties.

10. If Basler is allowed to mitigate its damages and sell the Aircraft to one or more third parties, Basler will return to the proper party any surplus funds after Basler is made whole.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 14, 2024

_____
Joseph Varkoly