## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>                                     Plaintiff,<br><br>—*against*—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN";<br><br>THEIA AVIATION, LLC; and<br><br>THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>                                     Defendants. | 21 Civ. 6995 (KPC) |

### STIPULATION AND AGREED ORDER
### RESOLVING OBJECTION TO MOTION TO COMPEL OF CREDITOR BASLER
### TURBO CONVERSIONS, L.L.C. TO COMPEL PAYMENT OF CURE AMOUNTS, OR
### IN THE ALTERNATIVE FOR RELIEF FROM THE SALE ORDER AND THE
### RECEIVERSHIP STAY AND APPROVING LETTER AGREEMENT [DKT NO. 429]

LTS Systems, LLC ("LTS"), the buyer of the Receivership Entities' assets, the Receiver (as defined below), and Basler Turbo Conversions, L.L.C. ("Basler"), by and through their respective undersigned counsel, hereby stipulate and agree ("Stipulation") with respect to the following:

### RECITALS

**WHEREAS**, In June 2020, FCS Advisors, LLC ("FCS") entered into a Secured Note Purchase and Security Agreement (the "SNPSA") with Theia Group, Inc. ("TGI"), Theia Aviation LLC ("Theia Aviation"), and Theia Holdings A, Inc. ("Theia Holdings," and collectively with TGI and Theia Aviation, the "Receivership Entities" or "Theia") that refinanced certain prior debt owed to FCS with two $100 million promissory notes (the "Notes").

**WHEREAS**, in August 2021, after Theia did not make payment on the Notes, FCS filed this case, and simultaneously moved the Court to appoint a receiver for Theia.

**WHEREAS**, on November 8, 2021, this Court appointed Michael Fuqua, as receiver ("Receiver") to oversee the Receivership Entities. (Order and Opinion [ECF No. 105]).

**WHEREAS**, prior to the receivership, Theia and Basler Turbo Conversions, L.L.C. ("Basler") entered into a Contract for Sale of Three Basler Turbo-67 Aircraft and Modification of One Basler Turbo-67 Aircraft ("Basler Contract").

**WHEREAS**, on October 26, 2023, the Court entered an Order (I) Approving the Sale of the Receivership Entities' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and Other Interests, and (II) Granting Related Relief [Dkt. 411] ("Sale Order").  The Sale Order approved an Asset Purchase Agreement ("APA")[1] by and among LTS, together with its designees and/or assignees, as "Buyer" and the Receivership Entities, as "Sellers."

**WHEREAS**, the Basler Contract was identified in the APA as an "Assigned Contract" to be assigned and transferred to the Buyer.  APA, Schedule 1.01(e) and (h).

**WHEREAS**, the Cure Amount for the Basler Contract was listed as: Aircraft #68 - $3,973,297; Aircraft #69 - $3,550,581; Aircraft #70 - $3,238,700.  APA, Schedule 1.01(h) (the "Cure Amounts"), and such Cure Amounts have since increased as set forth in the Letter Agreement (defined below).

**WHEREAS**, the APA and Sale Order provide that the Cure Amounts "shall be paid by the Buyer to the Contract counterparty on the date the Assigned Contract is transferred to the Buyer."

---

[1] The Asset Purchase Agreement was attached as Exhibit 1 to the proposed order that was filed as Exhibit A to Docket No. 365.

APA § 1.01(cc); Sale Order ¶ 7(a) ("Buyer shall pay all Cure Amounts to the applicable Contract counterparty on the date the Assigned Contract is assigned and/or transferred to the Buyer.").

**WHEREAS**, the APA and Sale Order provide that the Assigned Contracts were to be assigned and transferred upon the "Closing" of the APA. Sale Order ¶ 7(a) ("The Receivership Entities are authorized and empowered to, and upon the Closing shall, assign and transfer each of the Assigned Contracts to the Buyer . . . ."). The APA similarly provides that APA § 2.01 ("on the Closing Date, Sellers shall sell, transfer, assign, convey and deliver to Buyer . . . all of the Acquired Assets").

**WHEREAS**, one of the conditions precedent to Closing of the APA is that the "Sellers and Buyer shall have obtained (with the other Party's best efforts to assist) Governmental Approvals of the transfer of the Licenses[2] to the Buyer." APA § 6.01(c) & § 6.02(c).

**WHEREAS**, pursuant to the APA, Closing is to occur on the "earlier of (a) three (3) business Days after Governmental Approval to transfer the Licenses to the Buyer and (b) a date and time mutually agreed by the Receiver and the Buyer, as soon as reasonably possible after the District Court issues the Approval Order and the Approval Order is a Final Order." APA § 2.08.

**WHEREAS**, an "Application for Satellite Space and Earth Station Authorizations for Transfer of Control or Assignment" ("FCC Application") was submitted to the FCC seeking approval from the FCC to transfer control of the FCC license to Athena-5 Systems Corp. ("Athena-5"), the Buyer's designee, the FCC has not yet approved the transfer.

---

[2] The Licenses include (i) a license ("NOAA License") the National Oceanic and Atmospheric Administration, an agency of the United States Department Commerce ("NOAA") and (ii) a license ("FCC License" and with the NOAA License, the "Licenses") from the Federal Communications Commission, an agency of the Government of the United States of America ("FCC").

**WHEREAS**, a draft letter[3] requesting NOAA approval to transfer the NOAA License to Athena-5 was submitted to NOAA, NOAA has not approved the transfer of the NOAA License nor responded to the draft letter.

**WHEREAS**, the Governmental Approval of the transfer of the Licenses has not yet occurred, the Closing on the APA has not yet occurred.

**WHEREAS**, to ensure that the assets to be transferred to the Buyer were not impaired, the Sale Order extended the receivership stay ("Receivership Stay") until "fourteen (14) days after the later of the Closing Date or governmental approval of the transfers of the FCC License and NOAA License to Buyer."  Sale Order ¶ 21.

**WHEREAS**, on March 15, 2024, Basler filed its Motion to Compel of Creditor Basler Turbo Conversions, L.L.C. to Compel Payment of Cure Amounts, or in the Alternative for Relief from the Sale Order and the Receivership Stay [Dkt. No. 429] ("Motion").

**WHEREAS**, in the Motion, Basler asserts that the Cure Amounts it is owed have increased by more than $800,000 to $11,576,714 in the aggregate, as of February 29, 2024, with additional increases since then as provided in the Letter Agreement (defined below).

**WHEREAS**, in the Motion, Basler asserts that it continues to incur annual charges for Aircraft storage that are more than $50,000 per plane and that it must pay approximately $37,000 per month for insurance.

**WHEREAS**, Basler requested that the Court compel either the Buyer or the Receiver to pay Basler's Cure Amounts, on or before April 15, 2024 or alternatively to grant Basler relief from

---

[3] NOAA had requested that a draft of the letter requesting a transfer be submitted before it was formally submitted.  The formal request will be submitted after NOAA responds to the draft.

the Sale Order and the Receivership Stay so that it can cancel its contracts with the Receivership Entities (defined below) and mitigate its damages.

**WHEREAS**, LTS opposes the relief sought by in the Motion and believes that Governmental Approval of the transfer of the Licenses will occur shortly allowing a Closing of the APA.

**WHEREAS**, the parties desire to resolve the Motion and their differences on the terms set forth herein and the Letter Agreement.

## STIPULATION AND AGREED ORDER

**NOW, THEREFORE,** in consideration of the foregoing and subject to approval of this Stipulation by the Court, the parties stipulate and agree, and it is hereby ordered as follows:

1.      Immediately following the approval of this Stipulation, LTS, Basler, and the Receiver shall enter into a binding letter agreement (the "Letter Agreement"), a copy of which is attached hereto as Exhibit 1, which provides that LTS will pay all outstanding amounts owed to Basler by May 31, 2024, or the Aircraft shall be disposed of as provided in the Letter Agreement.

2.      The terms of the Letter Agreement are approved.  In the event of any conflict between this Stipulation and the Letter Agreement, the Letter Agreement shall control.

3.      In the event that neither of the payments specified in paragraphs 1 or 2 of the Letter Agreement is timely made, the Receivership Stay is lifted and relief from the Receivership Stay and the Sale Order with respect to the Aircraft (as such term is defined in the APA) is granted, all without further order of this Court or notice to any party in this case, in order to allow the sale of the Aircraft by Auction (as set forth in the Letter Agreement), with the proceeds of any such sale to be applied as set forth in the Letter Agreement.

4.      This Order resolves the Motion without prejudice. *The Motion (ECF 446) and the prior motion by Basler (ECF 428) should be terminated.*

Dated:  New York, NY
         May 17, 2024

STEPTOE LLP

/s/ Jeffrey M. Reisner
Jeffrey M. Reisner
1114 Avenue of the Americas
New York, NY
Telephone: (213) 439-9452
E-mail: jreisner@steptoe.com

Charles Michael
1114 Avenue of the Americas
New York, NY
Telephone: (212) 506-3900
E-mail: cmichael@steptoe.com

*Counsel for Plaintiff LTS Systems, LLC*

FOLEY & LARDNER LLP

/s/ Anne B. Sekel
Anne B. Sekel
90 Park Avenue
New York, New York 10016
(212) 682-7474
asekel@foley.com

*Counsel for Basler Turbo Conversions, L.L.C.*

KING & SPALDING LLP

/s/ Kevin O'Brien
Kevin O'Brien (SBN 5983713)
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
E-mail: kobrien@kslaw.com

-and-

6

Thaddeus D. Wilson
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (312) 572-5100
Email: thadwilson@kslaw.com

*Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation, LLC, and Theia Holdings A, Inc.*

Dated: June 10, 2024
New York, New York

KEVIN CASTEL
UNITED STATES DISTRICT JUDGE

## **Exhibit 1**

Letter Agreement

**LTS SYSTEMS, LLC**

May 17, 2024

Basler Turbo Conversions, L.L.C.
255 W 35th Ave.
Oshkosh, WI 54902

Michael Fuqua, Receiver
B. Riley Advisory Services
3445 Peachtree Road, Suite 1225
Atlanta, GA 30326

Ladies and Gentlemen:

        Reference is made to the Stipulation and Agreed Order (the "Stipulation") between LTS Systems, LLC ("LTS"), Michael Fuqua, as Receiver for each of the Receivership Entities (defined below) ("Receiver"), and Basler Turbo Conversions, L.L.C. ("Basler"). In connection with the Stipulation, LTS, Receiver, and Basler hereby enter into this letter agreement (the "Agreement") and agree as follows.  Capitalized terms not otherwise defined herein shall have the meaning set forth in the Asset Purchase Agreement ("APA") dated as of August 12, 2023, by and among LTS, together with its designees and/or assignees, as "Buyer" and Theia Group Inc., Theia Aviation LLC, and Theia Holdings A, Inc, (the "Receivership Entities"), as "Sellers."

        1.    <u>Payment Option</u>.  In the event that LTS pays all amounts outstanding under the Basler Contract on or prior to May 31, 2024 (the "Final Payment"), Basler will accept the Final Payment in full satisfaction of the Basler Contract and release all liens on the Aircraft, if any, and title to each Aircraft will be transferred to LTS pursuant to the terms of the APA (the "Payment Option").  The parties acknowledge and agree that as of the date set forth on Exhibit A,  the amounts due and owing to Basler are set forth on Exhibit A, and that the "Final Payment" shall be equal to such amount plus additional reasonable storage charges and additional reasonable expenses as agreed by the parties incurred by Basler through and including the later of May 31, 2024 and the date on which the Auction is concluded (such amount plus such damages, the "Cure Costs").

        2.    <u>Rescission Option</u>.  In the event that LTS does not make the Final Payment on or before May 31, 2024, LTS will have the right, to be exercised on or prior to May 31, 2024, but not the obligation, to receive a one-time payment of $6,000,000 from Basler (the "Rescission Payment"), which payment shall be directed first to the Assumed Liabilities (as defined in the APA) with the remainder paid to LTS or its designee, in exchange for the cancellation of all obligations under the Basler Contract.   Upon receipt of the Rescission Payment, the Basler Contract is deemed rescinded in its entirety, Basler will retain ownership of each Aircraft, any stay or injunction applicable to Basler, the Basler Contract or the Aircraft in the Receivership Proceedings is lifted and of no further effect as to any of Basler, the Basler Contract or any of the Aircraft, and the Sale Order is of no further effect as to any of Basler, the Basler Contract or any

of the Aircraft. By way of clarification, none of Basler, LTS, the Receiver, nor any of the Receivership Entities shall have any further rights or obligations under the Basler Contract following the Rescission Payment, except as set forth herein.

      3.    <u>Auction.</u> In the event that neither the Final Payment nor the Rescission Payment is made on or prior to May 31, 2024, Basler will make commercially reasonable efforts to sell the Aircraft at a commercially reasonable price at an auction to be held no earlier than June 27, 2024 (the "Auction"), subject to the Cancellation Option (as defined below). Basler may in its discretion retain a third-party professional auctioneer at commercially reasonable rates (not to exceed 10% of proceeds inclusive of any buyer premium) in connection with such auction (the "Auctioneer"). The Auction will take place as Basler's Oshkosh, Wisconsin facility. The Aircraft will be offered for sale individually on an "as-is, where-is" basis, and on such other terms and conditions as the Auctioneer may require that are reasonably acceptable to the parties. Bidders will be required to provide a deposit in the form of a letter of credit in the amount of $250,000 per individual Aircraft, which deposit will be non-refundable to the winning bidder. Basler will provide a minimum bid of $5,000,000 for each individual Aircraft, less the Cure Costs rolled forward and increased to the date of Auction, and shall have no restrictions on its ability to bid in greater amounts. After payment of amounts owed to the Auctioneer, and in addition to any fees and commissions paid to the Auctioneer, Basler will be paid a 10% broker fee on the remaining proceeds (the "Broker Fee"), plus Basler shall be reimbursed for reasonable costs and expenses it incurs after May 31, 2024 in connection with Auction (collectively with the Broker Fee, the "Auction Fees and Expenses"), whether or not Basler is the winning bidder. Proceeds will be distributed as follows: first to the Auctioneer; second to Basler (which will include the Auction Fees and Expenses plus the Cure Costs, as rolled forward to the date of the Auction) until all such amounts owed to Basler are paid in full, and third to LTS. Basler will offer to any winning bidder an airworthiness inspection for each individual Aircraft purchased by such bidder in exchange for a payment by the bidder of $50,000 per individual Aircraft, but excluding components out of manufacturer warranties or recertification of time-limited components. If an Aircraft requires repairs, or alterations or modifications, Basler shall negotiate in good faith a reasonable payment for the same from the winning bidder at Auction. For an illustrative example of the foregoing distribution of proceeds, see attached as Exhibit B.

      4.    <u>Cancellation Option.</u> If the Auction option in section 3 proceeds after May 31, LTS shall have the right to cancel the Auction as set forth herein (the "Cancellation Option"). At any time between June 1 and June 25, 2024, LTS shall have the right, but not the obligation, to pay to Basler the Cure Costs (through the date of the Cancellation Notice, as defined below) and an additional cancellation fee equal to (a) $250,000, if the payment is made on or after June 1, 2024 and on or prior to June 14, 2024, or (b) $500,000 if the payment is made after June 14, 2024 but before June 26, 2024 (the "Cancellation Fee"). LTS shall provide written notice to Basler that it is exercising the Cancellation Option (the "Cancellation Notice") and shall pay to Basler the Cancellation Fee plus the Cure Costs, plus any cancellation fees of the Auctioneer (but not the Auction Fees and Expenses) through and including the date the Cancellation Fee is paid. For clarification, Basler shall receive both the Cure Costs plus the applicable Cancellation Fee or the Cancellation Option shall not be deemed exercised. Such amount shall be paid in cash to Basler by wire transfer or ACH transaction on or before the effective date of the Cancellation Notice.

5.      Failure to Exercise an Option; Notice Provisions.   If LTS fails to notify Basler of the Option it is exercising on or before May 31, 2024, it shall be deemed to have elected to proceed with the Auction.   All notices specified herein shall be in writing and will be sent by courier or hand delivered, return receipt requested to the parties at the addresses set forth on Exhibit C attached hereto.  Time is of the essence with respect to such notices.

6.      Airworthiness, etc.  The Parties acknowledge and agree that if LTS exercises the Payment Option or the Cancellation Option, it will be required to take delivery of the three Aircraft. In such case, the Parties will work together in good faith to cause the Aircraft to be transferred to LTS or its assignee and Basler will be reimbursed for work required for an airworthiness certificate as outlined in Section 3.  The Parties further acknowledge that the transfer may require additional services from Basler in the ordinary course and storage costs and other costs incidental to the delivery of the Aircraft, which shall be commercially reasonable.  Notwithstanding anything to the contrary herein, LTS shall pay or shall cause its transferee to pay such amounts as a condition to final delivery of the Aircraft.

7.      Mutual Representations and Warranties.  Each of LTS, Basler and the Receivership Entities hereby represents and warrants to each other party the following:

(a)      *Organization.*  It is duly organized and validly existing under the laws of its jurisdiction of its incorporation, and has full corporate or other power and authority to enter into this Agreement and to carry out the provisions hereof.

(b)      *Authorization.*  It is duly authorized to execute this Agreement and to perform its obligations hereunder, and the person or persons executing this Agreement on its behalf have been duly authorized to do so.

(c)      *No Conflicts.*  The execution and delivery of this Agreement and the performance of the obligations hereunder by it do not conflict with any agreement, instrument or understanding, oral or written, to which it is a party or by which it may be bound, nor violate any material law or regulation of any court, governmental body or administrative or other agency having jurisdiction over it.

8.      Governing Law.  This letter agreement shall be governed by and construed under the laws of the State of Wisconsin, without regard to principles of conflicts of laws.

9.      Termination.  This letter agreement shall terminate upon the earliest of (a) Basler's receipt of the Final Payment, (b) LTS' receipt of the Rescission Payment, (c) the conclusion of the Auction and the distribution of the proceeds thereof, and (d) Basler's receipt of the Cure Costs and the Cancellation Fee, in the event that LTS exercises the Cancellation Option.

10.      Entire Agreement. The parties agree that this Agreement, together with the Basler Contract, constitutes the entire agreement and understanding between LTS, Receiver and Basler, with respect to the subject matter hereof, and supersedes all prior and contemporaneous written or oral agreements, discussions, representations, warranties or understandings between the parties. This Agreement may be modified only in a written document signed by LTS, Receiver and Basler.

11.     <u>Interpretation</u>. Each party acknowledges that this Agreement was drafted through the joint efforts of all parties and their respective counsel. Any rule of construction dictating that ambiguities are to be resolved against the drafting party shall not be applicable in the interpretation of this Agreement.

12.     <u>Severability</u>. The provisions of this Agreement are severable. If any provision of this Agreement is held invalid or unenforceable, such provision shall be deemed deleted from this Agreement and such invalidity or unenforceability shall not affect any other provision of this Agreement, the balance of which will remain in and have its intended full force and effect; provided, however that if such invalid or unenforceable provision may be modified so as to be valid and enforceable as a matter of law, such provision shall be deemed to have been modified so as to be valid and enforceable to the maximum extent permitted by law.

13.     <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be an original, but all of which together shall constitute one agreement. The parties agree that execution via DocuSign or a similar service, or of a scanned image, shall have the same force and effect as execution of an original, that an electronic signature or scanned image of a signature shall be deemed an original and valid signature, and that the Agreement may not be challenged on the basis of such signatures.

14.     <u>Receivership Motion</u>.  Upon the execution and delivery of this Letter Agreement, Basler shall withdraw without prejudice its *Motion to Compel Payment of Cure Amounts, or in the Alternative, for Relief from the Sale Order and the Receivership Stay*, filed with the Receivership Court on March 15, 2024 (the "Motion").  All of Basler's rights and remedies under the Motion, and LTS' and the Receiver's defenses thereto, are expressly reserved.

*[Remainder of page intentionally left blank]*

The undersigned parties agree to the terms of this letter agreement, effective as of the date first set forth above.

Very truly yours,

LTS SYSTEMS, LLC

By: _____
Name: Mark Dunsheath
Title: Manager

Agreed and Accepted:

Basler Turbo Conversions, L.L.C.

By: _____
Name:
Title:

Michael Fuqua, as Receiver for the Receivership Entities

By: _____
       Michael Fuqua, Receiver

The undersigned parties agree to the terms of this letter agreement, effective as of the date first set forth above.

Very truly yours,

LTS SYSTEMS, LLC

By: _____
Name: Mark Dunsheath
Title: Manager

Agreed and Accepted:

Basler Turbo Conversions, L.L.C.

By: _____
Name:
Title:   JOSEPH VARKOLY
         PRESIDENT

Michael Fuqua, as Receiver for the Receivership Entities

By: _____
         Michael Fuqua, Receiver

DocuSign Envelope ID: 2B1EA60A-4627-4028-B7C4-DB5C79FD691D

The undersigned parties agree to the terms of this letter agreement, effective as of the date first set forth above.

Very truly yours,

LTS SYSTEMS, LLC

By: _____
                Managing Member

Agreed and Accepted:

Basler Turbo Conversions, L.L.C.

By: _____
Title:

Michael Fuqua, as Receiver for the Receivership Entities

By: _____
           Michael Fuqua, Receiver

**BASLER TURBO CONVERSIONS - CURE COST CALCULATION**
**FOR THE THREE AIRCRAFT ON CONTRACT 20-068-V1**
**(as of June 1, 2024)**

| | | | |
|---|---|---:|---|
| 1 | Aircraft #68 | 12,150,000 | Original contract price |
| | First of Three | 58,900 | Customer requested modifications |
| | Ready to deliver | <u>230,000</u> | Customer requested Autopilot/EFIS STC |
| | Basler holds title | 12,438,900 | Total price |
| | | (150,000) | Downpayment received 6-30-20 |
| | | <u>(9,000,000)</u> | Downpayment received 9-21-20 |
| | | 3,288,900 | Balance due on 1-1-22 (plane ready to deliver) |
| | | <u>1,090,352</u> | Cure cost through May 31, 2024 |
| | | 4,379,252 | Total price with Cure costs |
| | | | |
| 2 | Aircraft #69 | 12,150,000 | Original contract price |
| | Second of Three | 65,000 | Customer requested modifications |
| | Ready to deliver | <u>230,000</u> | Customer requested Autopilot/EFIS STC |
| | Basler holds title | 12,445,000 | Total price |
| | | (150,000) | Downpayment received 6-30-20 |
| | | <u>(9,000,000)</u> | Downpayment received 9-21-20 |
| | | 3,295,000 | Balance due on 2-1-23 (plane ready to deliver) |
| | | <u>643,447</u> | Cure cost through May 31, 2024 |
| | | 3,938,447 | Total price with Cure costs |
| | | | |
| 3 | Aircraft #70 | 12,150,000 | Original contract price |
| | Third of Three | 8,700 | Customer requested modifications - not fully defined yet |
| | Ready for Paint | 230,000 | Customer requested Autopilot/EFIS STC |
| | Basler holds title | <u>284,000</u> | Increased labor cost, delays from original contract delivery |
| | | 12,672,700 | Total price |
| | | (150,000) | Downpayment received 6-30-20 |
| | | <u>(9,000,000)</u> | Downpayment received 9-21-20 |
| | | 3,522,700 | Balance due |
| | | <u>243,339</u> | Cure cost through May 31, 2024 |
| | | 3,766,039 | Total price with Cure costs |
| | | | |
| 4 | Aircraft #71 | (150,000) | Downpayment received 6-30-20 |

---

**Total  Contract Balance with Cure Costs, including insurance, storage and interest**

| | | |
|---|---:|---|
| Aircraft #68 | $    4,379,252 | |
| Aircraft #69 | $    3,938,447 | |
| Aircraft #70 | $    3,766,039 | |
| Aircraft #71 | $<u>    (150,000)</u> | |
| | $   **11,933,738** | **Grand Total with Cure Costs thru 6-1-24** |

**Aircraft #68**

| Month | Deposits & Withdrawals | Interest | Total Deposits & Withdrawals | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 0 | $3,288,900.00 | -- | $3,288,900.00 | -- | $3,288,900.00 |
| 1 | $12,000.00 | $13,753.75 | $3,300,900.00 | $13,753.75 | $3,314,653.75 |
| 2 | $12,000.00 | $13,861.06 | $3,312,900.00 | $27,614.81 | $3,340,514.81 |
| 3 | $12,000.00 | $13,968.81 | $3,324,900.00 | $41,583.62 | $3,366,483.62 |
| 4 | $12,000.00 | $14,077.02 | $3,336,900.00 | $55,660.63 | $3,392,560.63 |
| 5 | $12,000.00 | $14,185.67 | $3,348,900.00 | $69,846.30 | $3,418,746.30 |
| 6 | $12,000.00 | $14,294.78 | $3,360,900.00 | $84,141.08 | $3,445,041.08 |
| 7 | $12,000.00 | $14,404.34 | $3,372,900.00 | $98,545.42 | $3,471,445.42 |
| 8 | $12,000.00 | $14,514.36 | $3,384,900.00 | $113,059.77 | $3,497,959.77 |
| 9 | $12,000.00 | $14,624.83 | $3,396,900.00 | $127,684.61 | $3,524,584.61 |
| 10 | $12,000.00 | $14,735.77 | $3,408,900.00 | $142,420.37 | $3,551,320.37 |
| 11 | $12,000.00 | $14,847.17 | $3,420,900.00 | $157,267.54 | $3,578,167.54 |
| 12 | $12,000.00 | $14,959.03 | $3,432,900.00 | $172,226.57 | $3,605,126.57 |

2022
5% interest compounded monthly
$12,000 monthly insurance charge

Additional deposits applied at the beginning of each period.

| Month | Deposits & Withdrawals | Interest | Total Deposits & Withdrawals | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 0 | $3,605,126.00 | -- | $3,605,126.00 | -- | $3,605,126.00 |
| 1 | $12,000.00 | $21,099.90 | $3,617,126.00 | $21,099.90 | $3,638,225.90 |
| 2 | $12,000.00 | $21,292.98 | $3,629,126.00 | $42,392.89 | $3,671,518.89 |
| 3 | $12,000.00 | $21,487.19 | $3,641,126.00 | $63,880.08 | $3,705,006.08 |
| 4 | $12,000.00 | $21,682.54 | $3,653,126.00 | $85,562.62 | $3,738,688.62 |
| 5 | $12,000.00 | $21,879.02 | $3,665,126.00 | $107,441.63 | $3,772,567.63 |
| 6 | $12,000.00 | $22,076.64 | $3,677,126.00 | $129,518.28 | $3,806,644.28 |
| 7 | $12,000.00 | $22,275.42 | $3,689,126.00 | $151,793.70 | $3,840,919.70 |
| 8 | $12,000.00 | $22,475.36 | $3,701,126.00 | $174,269.07 | $3,875,395.07 |
| 9 | $12,000.00 | $22,676.47 | $3,713,126.00 | $196,945.54 | $3,910,071.54 |
| 10 | $12,000.00 | $22,878.75 | $3,725,126.00 | $219,824.29 | $3,944,950.29 |
| 11 | $12,000.00 | $23,082.21 | $3,737,126.00 | $242,906.50 | $3,980,032.50 |
| 12 | $12,000.00 | $23,286.86 | $3,749,126.00 | $266,193.35 | $4,015,319.35 |

2023
7% interest compounded monthly
$12,000 monthly insurance charge

| Month | Deposits & Withdrawals | Interest | Total Deposits & Withdrawals | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 0 | $4,015,319.00 | -- | $4,015,319.00 | -- | $4,015,319.00 |
| 1 | $12,000.00 | $33,560.99 | $4,027,319.00 | $33,560.99 | $4,060,879.99 |
| 2 | $12,000.00 | $33,940.67 | $4,039,319.00 | $67,501.66 | $4,106,820.66 |
| 3 | $12,000.00 | $34,323.51 | $4,051,319.00 | $101,825.16 | $4,153,144.16 |
| 4 | $12,000.00 | $34,709.53 | $4,063,319.00 | $136,534.70 | $4,199,853.70 |
| 5 | $12,000.00 | $35,098.78 | $4,075,319.00 | $171,633.48 | $4,246,952.48 |

2024
10% interest compounded monthly
$12,000 monthly insurance charge

total through May 31, 2024

storage at $150/day          $ 132,300.00     882     1/1/2022   6/1/2024

Total cure on #68          $4,379,252.48
through 5-31-24

**Aircraft #69**

| Month | Deposits & Withdrawals | Interest | Total Deposits & Withdrawals | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 0 | $3,295,000.00 | – | $3,295,000.00 | – | $3,295,000.00 |
| 1 | $12,000.00 | $19,290.83 | $3,307,000.00 | $19,290.83 | $3,326,290.83 |
| 2 | $12,000.00 | $19,473.38 | $3,319,000.00 | $38,764.20 | $3,357,764.20 |
| 3 | $12,000.00 | $19,656.98 | $3,331,000.00 | $58,421.15 | $3,389,421.15 |
| 4 | $12,000.00 | $19,841.62 | $3,343,000.00 | $78,262.78 | $3,421,262.78 |
| 5 | $12,000.00 | $20,027.37 | $3,355,000.00 | $98,290.14 | $3,453,290.14 |
| 6 | $12,000.00 | $20,214.19 | $3,367,000.00 | $118,504.34 | $3,485,504.34 |
| 7 | $12,000.00 | $20,402.11 | $3,379,000.00 | $138,906.45 | $3,517,906.45 |
| 8 | $12,000.00 | $20,591.12 | $3,391,000.00 | $159,497.57 | $3,550,497.57 |
| 9 | $12,000.00 | $20,781.24 | $3,403,000.00 | $180,278.80 | $3,583,278.80 |
| 10 | $12,000.00 | $20,972.46 | $3,415,000.00 | $201,251.26 | $3,616,251.26 |
| 11 | $12,000.00 | $21,164.80 | $3,427,000.00 | $222,416.06 | $3,649,416.06 |

2023
7% interest compounded monthly
$12,000 monthly insurance charge

| Month | Deposits & Withdrawals | Interest | Total Deposits & Withdrawals | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 0 | $3,649,416.00 | – | $3,649,416.00 | – | $3,649,416.00 |
| 1 | $12,000.00 | $30,511.80 | $3,661,416.00 | $30,511.80 | $3,691,927.80 |
| 2 | $12,000.00 | $30,866.06 | $3,673,416.00 | $61,377.86 | $3,734,793.86 |
| 3 | $12,000.00 | $31,223.28 | $3,685,416.00 | $92,601.15 | $3,778,017.15 |
| 4 | $12,000.00 | $31,583.48 | $3,697,416.00 | $124,184.62 | $3,821,600.62 |
| 5 | $12,000.00 | $31,946.67 | $3,709,416.00 | $156,131.30 | $3,865,547.30 |

2024
10% interest compounded monthly
$12,000 monthly insurance charge

total through May 31, 2024

storage at $150/day   $   72,900.00   486   2/1/2023   6/1/2024

Total cure on #69   $3,938,447.30
through 5-31-24

**Aircraft #70**

| Month | Deposits & Withdrawals | Interest | Total Deposits & Withdrawals | Accrued Interest | Balance |
|---|---|---|---|---|---|
| 0 | $3,522,700.00 | – | $3,522,700.00 | – | $3,522,700.00 |
| 1 | $13,000.00 | $29,464.17 | $3,535,700.00 | $29,464.17 | $3,565,164.17 |
| 2 | $13,000.00 | $29,818.03 | $3,548,700.00 | $59,282.20 | $3,607,982.20 |
| 3 | $13,000.00 | $30,174.85 | $3,561,700.00 | $89,457.05 | $3,651,157.05 |
| 4 | $13,000.00 | $30,534.64 | $3,574,700.00 | $119,991.70 | $3,694,691.70 |
| 5 | $13,000.00 | $30,897.43 | $3,587,700.00 | $150,889.13 | $3,738,589.13 |

Additional deposits applied at the beginning of each period.

2024
10% interest compounded monthly
$13,000 monthly insurance charge

total through May 31, 2024

storage at $150/day            $    27,450.00      183      12/1/2023   6/1/2024

Total cure on #70            $ 3,766,039.13
through 5-31-24

Exhibit A

<u>Amounts Due to Basler</u>

See attached.

Exhibit B

Example Calculation of Proceeds

| | |
|---|---|
| Airplane #1 | $8,000,000 |
| Airplane #2 | $6,000,000 |
| Airplane #3 | $5,000,000 |
| | $19,000,000 |
| Auctioneer Fee | ($950,000) |
| | $18,050,000 |
| Broker Fee | ($1,805,000) |
| | $16,245,000 |
| Basler Cure Costs | ($12,000,000) |
| | |
| LTS    $4,245,000 | |

Exhibit C

Addresses of the Parties

Basler:

     Basler Turbo Conversions, L.L.C.
     255 W 35th Ave.
     Oshkosh, WI 54902
     Attn: Joseph Varkoly, President

     With a copy (which will not constitute notice to Basler) to:
     Frank W. DiCastri
     Reinhart Boerner Van Deuren s.c.
     1000 N. Water St. # 1700
     Milwaukee, WI 53202
     Email: fdicastri@reinhartlaw.com

LTS:

     LTS Systems, LLC
     441 Ninth Avenue, 20th Floor
     New York, NY 10001
     Email: legal@brevetcapital.com

     with a copy (which will not constitute notice to LTS) to:
     Jeffrey M. Reisner, Esquire
     1114 Avenue of the Americas
     New York, NY 10036
     Email: jreisner@Steptoe.com

Receiver:

     Michael Fuqua, Receiver
     B. Riley Advisory Services
     3445 Peachtree Road
     Suite 1225
     Atlanta, GA 30326
     Email: mfuqua@brileyfin.com

     with a copy (which will not constitute notice to Receiver) to:
     Thad Wilson, Esquire
     1180 Peachtree St. NE
     Atlanta, GA 30309
     Email: thadwilson@kslaw.com