UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>        Plaintiff,<br><br>  —against—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>        Defendants. | 21 Civ. 6995 (PKC) |

**FINAL REPORT OF RECEIVER**

Kevin J. O'Brien
KING & SPALDING LLP
1185 Avenue of the Americas, 34th Floor
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
E-mail: kobrien@kslaw.com

- and -

Thaddeus D. Wilson
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309
Telephone: (404) 572-4600
Facsimile: (312) 572-5100
E-mail: thadwilson@kslaw.com

*Counsel for Michael Fuqua, in his capacity as Receiver of
Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc.*

Michael Fuqua, Court-appointed receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities"), respectfully submits this Final Report (the "Final Report") in accordance with the Orders of the United States District Court for the Southern District of New York (this "Court") entered on November 8, 2021 (Doc 117) (the "Receivership Order") and May 5, 2025 (Doc 496) (the "Termination Order"), and for the purpose of reporting on the Receiver's work following entry of the Order (I) Approving the Sale of the Receivership Entities' Assets Free and Clear of Liens, Claims, Rights, Encumbrances, and other Interest, and (II) Granting Related Relief (Doc 411) on October 26, 2023 (the "Sale Order") and to provide the Court with a final account of the Receiver's action in this case.[1]

## I.   GENERAL BACKGROUND

On November 8, 2021, the Court appointed the Receiver as a federal receiver for the assets of the Receivership Entities pursuant to the Receivership Order.  The appointment of the Receiver was made at the request of the lender to the Receivership Entities, FCS Advisors, LLC ("FCS" or "Lender"), which is an affiliate of Brevet Capital Management, LLC ("Brevet").

On October 26, 2023, the Court entered the Sale Order that approved the sale of the Receivership Entities' assets (the "Sale") to LTS Systems, LLC, together with its designees and/or assignees ("LTS" or the "Buyer"), and that certain Asset Purchase Agreement, dated as of August 12, 2023, by and among Buyer and the Receivership Entities (the "APA").  The Buyer is a special purpose entity that is an affiliate of Brevet/FCS, which was formed for the sole purpose of owning the Receivership Entities' assets.

On April 29, 2025, the Receiver filed his Eighth Interim Status Report (Doc. 494) (the

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Sale Order.

"Eighth Interim Status Report"), which outlined the then status of the Receivership, including the Receiver's efforts to close the sale for the remainder of the assets being sold under the APA. In the Eighth Interim Status Report, the Receiver noted that one of the assets that he was not yet able to convey was a license issued to the Receivership Entities (the "FCC License") by the Federal Communications Commission ("FCC"), which transfer could not occur without obtaining necessary approvals from the FCC. On the same day, counsel for the Receiver sent a letter (Doc. 493) (the "Letter") to the Court seeking an extension of time for the Receivership to facilitate the final closing under the APA. In response to the Letter, the Court entered the Termination Order to terminate the Receivership on July 31, 2025 (the "Termination Date").

Prior to filing the Eighth Interim Status Report and this Final Report, the Receiver filed seven interim status reports with the Court on December 22, 2021 (Doc. 135), February 22, 2022 (Doc. 216), April 25, 2022 (Doc. 229), 23, 2022 (Doc. 249), September 21, 2022 (Doc. 296), April 3, 2023 (Doc. 330), and April 9, 2024 (Doc. 434) (collectively and together with the Eighth Interim Status Report, the "Interim Reports"). The Interim Reports detail the Receiver's activities during the time periods for which each Interim Report was filed and are incorporated herein by reference.

## II.     PROTECTING THE RECEIVERSHIP ASSETS

Subsequent to entry of the Sale Order, the Receiver has continued to work to protect the Receivership Entities' assets and transfer them to the Buyer pursuant to the APA and Sale Order. As discussed further below, the Receiver has transferred all assets of the Receivership Entities—other than the FCC License—to the Buyer or its designee(s) pursuant to the APA and Sale Order.

Additionally, with approval from the Buyer and with funds remaining from the loans provided to the Receivership Entities pursuant to the Financing Orders, the Receiver has continued to pay a number of critical obligations of the Receivership Entities necessary to the continued

preservation of the assets during the transition. Such obligations include, among other things, amounts necessary to safely store certain assets of the Receivership Estate and to maintain various insurance policies and subscription services (such as Microsoft, Intuit QuickBooks, and other programs) in accordance with the Receivership Order and as otherwise approved by the Court.

### A. Financial & Accounting Records

Since the entry of the Sale Order, the Receiver has continued to maintain the Receivership Entities' books and records. A modified sources and uses statement listing all funds received, distributed, and amounts unpaid from the Receivership Estate from the date of the receivership to the date hereof is attached hereto as Exhibit A (the "Sources and Uses").

The Receiver is in possession of no remaining cash belonging to the Receivership Entities, and except for a few pieces of equipment that are in transit, the Receiver is in possession of no Receivership Entity assets to distribute to the Buyer per the terms of the APA and Sale Order or to other creditors or equityholders of the Receivership Entities.

Upon termination of the Receivership, the Receiver recommends and requests permission to transfer to the Buyer any books and records of the Receivership Entities remaining in his possession, to the extent that such books and records have not already been transferred in accordance with the Sale Order and the APA. Pursuant to the terms of the APA, the Buyer has acquired the Receivership Entities' books and records, as well as any privileges previously held by the Receivership Entities. Prior to his transfer of the books and records to the Buyer, the Receiver maintained copies of the Receivership Entities' books and records consistent with the Court's order, dated July 29, 2025, requiring the Receiver to maintain the Receivership Entities' books and records (Doc. 510) (the "Preservation Order"). Moreover, consistent with the Preservation Order, the Receiver will maintain all documents and communications remaining in

the Receiver's possession, including the Receiver's privileged communications with his counsel, following the termination of the Receivership.

Due to a lack of funding to pay the tax preparers, the Receiver has not yet filed the required tax returns for 2024 and 2025 (the "Outstanding Tax Returns"). The Receiver believes that he has filed all other required tax returns that the Receiver would be obligated to file. The Receiver recommends and requests authority from this Court to file the Outstanding Tax Returns and any additional returns that the Receiver discovers or is informed must be filed with tax reporting agencies after he is discharged and upon receipt of the Receivership Fee Estimate (as defined below).

### B. Other Lawsuits Against Receivership Entities

During the Receivership, other lawsuits and actions have been pending against the Receivership Entities (the "Other Lawsuits"):

- *Chinn v. Theia Group, Inc.*, Case No. 1:21-cv-00378-MSM (D.R.I.)

- *SRC, Inc. v. Theia Group, Inc.*, Case No. 1:21-cv-02329-RBW (D.D.C.)

- *Ahunai v. Theia Group, Inc.*, Case No. 1:21-cv-01182-SB (D. Del.)

- *Precision Air Inc v. Theia Group Inc.*, et al., 4:21-cv-02446 (D.S.C.)

- *Palazzo Verdi LLC v. Theia Group, Inc.*, Case No. 2021cv31318 (District Court of Arapahoe County, CO)

- *Michael D. Mitchell v. Theia Group, Inc.*, Case 01-21-0003-6394 (Am. Arb. Assoc.)

- *City of Statesville, NC v. Theia Group, Inc.*, Case No. 21-cvs-3010 (N.C. Sup. Ct., Iredell Co.)

- *WGS Systems, LLC v. Theia Group, Inc. and Theia Aviation, LLC*, Case No. C-10-

cv-21-0307 (Cir. Ct. of Frederick Co., MD)

- *Theia Technologies, Inc. v. Theia Group, Inc. and Theia Holdings A, Inc.*, Case No. 2:20-cv-00097 (E.D. Pa.)

- *Microcosm, Inc. v. Theia Group, Inc.*, Case No. 01-21-0005-6412 (Am. Arb. Assoc.)

The Receiver is aware of the Other Lawsuits, but he has not substantively defended against them given the Receivership and the financial constraints of the Receivership Entities. Some of the Other Lawsuits have been closed, some have been voluntarily dismissed, some have been stayed and default judgment has been entered in the *Precision Air* case.

### C. Regulatory Issues Preventing Final Closing

Subsequent to entry of the Sale Order and per its right under the APA to designate a transferee, the Buyer agreed to sell and transfer the FCC License—the Receivership Entities' primary asset—to Athena-5 Systems Corp., a subsidiary of EMTECH GLOBAL INTERNATIONAL, LLC ("Athena"). The Receiver and his regulatory counsel, Akin Gump Strauss Hauer & Feld LLP, worked diligently with both parties to prepare and submit requests for the FCC approvals necessary to transfer the FCC License, and the Receiver and his regulatory counsel regularly followed up with the FCC to seek such approvals.

Unfortunately, on July 25, 2025, the Receiver received notice of an order issued by the FCC in which the FCC denied the request for a waiver of milestones and surety bond requirements and reaffirmed the termination of the FCC License held by the Receivership Entities as of May 16, 2024 (Doc. 508, Exh. C) (the "FCC Order"). The Receiver's actions regarding his request to the FCC to permit transfer of the FCC License is detailed in the FCC Order.

As a result of the FCC Order, the Receiver is unable to transfer the FCC License to the

Buyer and its designee, Athena.

### D. Other Asset Transfers

Aside from the FCC License—which cannot be transferred per the FCC Order—the Receiver and the Buyer have consummated the closing of the sale of all other assets purchased by the Buyer under the APA, including the purchase of a contract with a third party to modify and deliver certain aircraft owned by the Receivership Entities on May 31, 2024 (the "Aircraft Contract Transfer"). Following the Aircraft Contract Transfer, the Receiver transferred all other assets of the Receivership Entities in accordance with the APA, with the effective date of those transfers occurring on July 29, 2025 (together with the Aircraft Contract Transfer, the "Closings").

Despite these Closings and the fact that the Buyer has been in possession of most of the assets for many months, the Buyer has failed to make payments required under the Sale Order and APA for the Assumed Liabilities, which include, among other things, the costs and expenses of the Receivership Estate such as the professional fees of the Receiver and his advisors (legal, accounting, and financial) that were necessary for the administration of the Receivership.

Accordingly, the Receiver filed a motion to enforce the Sale Order and APA and compel payment from the Buyer of the Assumed Liabilities (Doc 500) on July 21, 2025 (the "Motion to Enforce").

Responses to the Motion to Enforce were filed by (i) Brevet and LTS (Doc. 505) (the "Brevet Response") in an effort to avoid paying the Assumed Liabilities and request a 90 day extension of the Receivership to obtain approval of the FCC License transfer; and (ii) CogniSphere, LLC ("CogniSphere") (Doc. 504) (the "CogniSphere Response"; together with the LTS Response, the "Responses") to request clarifying language in an order that it has no obligations with respect to the Assumed Labilities.

On July 25, 2025, the Receiver filed a reply (Doc. 506) (the "Reply") to the Responses, which, among other things, explained why Brevet/FCS/LTS are obligated to pay the Assumed Liabilities—including the amounts requested in the Prior Receivership Fee Estimate. The accompanying declaration (Doc. 507) (the "O'Brien Decl.") for the Reply attached the latest estimate of the cost to consummate the transactions and close the Receivership—which the Receiver previously provided to Brevet/LTS (the "Prior Receivership Fee Estimate"). *See* O'Brien Decl. Exh. B. As further detailed in the Reply, the Receiver and his counsel spent unanticipated hours due to, among other things, (i) delays and additional requests from LTS/Brevet/Athena regarding the necessary approvals from the FCC for the FCC License transfer and (ii) a dispute between Brevet/LTS with the contract counterparty to the Receivership Entities' aircraft contracts, Basler. *See* Reply. The Receiver also had to file the Motion to Enforce, which was necessitated by the Buyer's unwillingness to abide by its contractual obligations. Because of these developments and issues caused by the Buyer's action, the amounts in the Prior Receivership Fee Estimate exceeded the caps for the Assumed Liabilities.

On July 28, 2025, the Receiver filed a supplemental letter (Doc. 508) to update the Court regarding the FCC Order and explain that the request from Brevet/FCS/LTS to extend the Receivership has been mooted by the FCC Order.

On July 29, 2025, the Court entered an order granting the Motion to Enforce and ordering the Buyer to pay the Assumed Liabilities (Doc. 509) (the "Assumed Liabilities Order").

To the extent that the Receivership Fee Estimate exceeds the Assumed Liabilities that the Buyer has been ordered to pay under the Assumed Liabilities Order—and this amount has increased since the Receiver provided the Prior Receivership Fee Estimate based on the fact that the Receiver has had to incur fees and expenses to try to get Brevet/FCS/LTS to pay the amounts

owed—the Receiver requests and recommends that Brevet/FCS/LTS be held jointly and severally liable for such amounts. An updated estimate of the cost to consummate the transactions and close the Receivership is attached hereto as <u>Exhibit B</u> (the "Receivership Fee Estimate").

Under the Receivership Order, "[t]he Receiver and Retained Personnel are entitled to reasonable compensation from the Receivership Entities for the performance of duties pursuant to this Order and for the cost of actual and reasonable out-of-pocket expenses incurred by them for those services authorized by this Order that when rendered were (1) reasonably likely to benefit the receivership estate or (2) necessary to the administration of the estate." *See* Receivership Order at ¶11. Additionally, the Receivership Order provides that "[t]he Receiver and all personnel hired by the Receiver shall be compensated solely out of funds now held by or in the possession or control of or which may in the future be received by the Receivership Entities." *See id.* at ¶12.

Here, in connection with the Aircraft Contract Transfer, the Buyer directly received $9.5 million (the "Aircraft Proceeds"). Because the Aircraft Proceeds are for the sale of certain aircraft owned by the Receivership Entities, the Aircraft Proceeds should be considered as property of the Receivership Estate/funds received by the Receivership Entities and currently held by Brevet/FCS/LTS. Thus, Brevet/FCS/LTS should be obligated to return the amount of the Aircraft Proceeds comprising the difference between the Assumed Liabilities and the Receivership Fee Estimate to the Receivership Estate.

Once the Receiver receives the Receivership Fee Estimate, he will be able to pay his professionals, file the Outstanding Tax Returns, and complete the winddown of the Receivership.

### III. REQUEST TO TERMINATE THE RECEIVERSHIP

As described above and in the Interim Reports, the Receiver has (1) recovered, liquidated and sold all available assets (with the exception of the FCC License due to the FCC Order), (2)

investigated all possible claims and causes of action as directed and authorized by this Court and sold such claims and causes of action to the Buyer, and (3) once the Receivership Fee Estimate is received and distributed, concluded all activities necessary to close and terminate the Receivership. Thus, the Receiver believes there is ample justification to terminate the Receivership following the Court's receipt and review of the Final Report and upon the receipt and distribution of the Receivership Fee Estimate.

WHEREFORE, the Receiver, by and through his undersigned counsel, respectfully requests and recommends that the Court enter the proposed order filed contemporaneously herewith (i) approving the Final Report, (ii) holding Brevet/FCS/LTS jointly and severally liable for the amount of the Receivership Fee Estimate that exceeds the Assumed Liabilities, (iii) terminating the Receivership, and (iv) discharging the Receiver on the Termination Date, subject to receipt of payment of the Receivership Fee Estimate.

[*Remainder of page intentionally left blank.*]

Dated: July 30, 2025
    New York, New York

                        Respectfully submitted,

                        */s/*    *Kevin J. O'Brien*
                        Kevin J. O'Brien (SBN 5983713)
                        KING & SPALDING LLP
                        1185 Avenue of the Americas, 34th Floor
                        New York, New York 10036
                        Telephone: (212) 556-2100
                        Facsimile: (212) 556-2222
                        E-mail: kobrien@kslaw.com

                        Thaddeus D. Wilson
                        KING & SPALDING LLP
                        1180 Peachtree Street NE
                        Atlanta, Georgia 30309
                        Telephone: (404) 572-4600
                        Facsimile: (312) 572-5100
                        Email: thadwilson@kslaw.com

                        *Counsel for Michael Fuqua, in his capacity as Receiver of Theia Group, Inc., Theia Aviation, LLC, and Theia Holdings A, Inc.*