**KING & SPALDING**

King & Spalding LLP
1180 Peachtree Street, NE
Suite 1600
Atlanta, Georgia 30309

Tel: +1 404 572 4600
Fax: +1 404 572 5100
kslaw.com

Thaddeus D. Wilson (Thad)
Partner
Direct Dial: +1 404 572 4842
thadwilson@kslaw.com

July 31, 2025

**BY ECF**

Hon P. Kevin Castel
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

   Re: *FCS Advisors, LLC v. Theia Group, Inc. et al*; Case No. 1:21-cv-06995-PKC

Dear Judge Castel:

  We represent Michael Fuqua, the receiver (the "Receiver") for Theia Group, Inc. ("TGI"), Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities") in this case. We write today in response to the July 30, 2025 letter (ECF 513) submitted by counsel for FCS Advisors, LLC ("FCS") and LTS Systems, LLC ("LTS" or the "Buyer"). In that letter, FCS and LTS object to the proposed final order submitted with the Receiver's Final Report, arguing, among other things, that the Receiver is not entitled to full reimbursement of his fees and expenses. This objection is without merit and is an audacious attempt by FCS and LTS to free-ride on the backs of the Receiver and his professionals.

  When the Court appointed the Receiver, it issued an Order (ECF 117) that explicitly authorized compensation under the Receiver's "Terms of Engagement." That Order also empowered the Receiver to retain professionals and to incur appropriate expenses, and it required that both the Receiver's and his professionals' fees and expenses be paid "out of funds now held by or in the possession or control of or which may in the future be received by the Receivership Entities." Accordingly, the Receiver's entitlement to compensation has always been firmly grounded in the Court's original directive.

July 31, 2025
Page 2

Subsequently, the Buyer entered into an Asset Purchase Agreement ("APA") whereby it agreed to assume responsibility for a portion of those fees and expenses—referred to as the "Assumed Liabilities." Contrary to the assertions made by LTS and FCS, the APA neither limits the Receiver's fees and expenses nor absolves the Receivership Entities or FCS of responsibility for amounts exceeding the Assumed Liabilities. The APA is not a cap—it is a partial payment agreement.

FCS and the Buyer now claim that the Receiver is seeking "reconsideration" of the Court's July 29, 2025, Order (ECF 509). This is incorrect. That Order merely compels the Buyer to satisfy the Assumed Liabilities after it failed to do so voluntarily. It does not affect the Receiver's broader right to recover outstanding fees and expenses from the Receivership Entities' assets, which remains intact and unaffected.

As the Receivership nears its conclusion, the Receiver must be compensated in full, including the fees of his retained professionals. These funds are currently held by FCS or LTS (or their ultimate parent company, Brevet Capital Management, LLC). Specifically, on May 31, 2024, LTS (or its designee) purchased a contract with a third party to modify and deliver certain aircraft owned by the Receivership Entities (the "Aircraft Contract Transfer"), generating $9.5 million in cash proceeds for FCS. At that time, because FCS was a creditor of the Receivership Entities, the Receiver allowed FCS to temporarily retain those proceeds with the expectation and promise from FCS, LTS, and/or Brevet that future funds—primarily from the sale of an FCC license—would cover the Receiver's expenses. However, the transfer of that license has since been denied. Therefore, FCS must now remit the proceeds it retained from the Aircraft Contract Transfer in an amount sufficient to cover the Receiver's and his professionals' outstanding fees and expenses, including final tax return preparation.

It is important to emphasize that the Receiver incurred fees at the direct request of FCS and LTS. The dispute with Basler over the Aircraft Contract Transfer required the Receiver and his counsel to step in to assist in its resolution. Moreover, at the urging of FCS and LTS, the Receiver and his counsel dedicated substantial time and resources to pursuing not one, but three, separate third-party transactions involving the FCC License. At every stage, the Receiver was assured that the necessary funding would be provided to cover all Receivership expenses. Relying on these assurances, the Receiver and his counsel worked diligently and in good faith with FCS, LTS, Brevet, their respective counsel, and the prospective buyers to bring each deal to the finish line. These efforts were not only extensive—they were essential to advancing the interests of all parties involved, including unsecured creditors who may have seen a recovery if one of those transactions had closed.

In short, the Receiver is not attempting to shift financial responsibility onto FCS or any other party beyond what was previously agreed or authorized when FCS sought this Receivership to protect its interests. He is simply seeking access to Receivership funds—currently held by FCS, LTS, or Brevet—to satisfy obligations incurred in the course of executing his Court-appointed duties.

July 31, 2025
Page 3

                                        Sincerely,

                                        /s/ *Thad Wilson*

                                        Thad Wilson

cc: All Counsel of Record (via ECF)