UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FCS ADVISORS, LLC,<br><br>         Plaintiff,<br><br>—against—<br><br>THEIA GROUP, INC., d/b/a "THORIAN GROUP" and/or "CYPHERIAN"; THEIA AVIATION, LLC; and THEIA HOLDINGS A, INC., d/b/a "THORIAN HOLDINGS,"<br><br>         Defendants. | 21 Civ. 6995 (PKC) |

**DECLARATION OF THADDEUS D. WILSON IN SUPPORT OF THIRD APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF KING & SPALDING LLP, AS COUNSEL TO RECEIVER**

I, Thaddeus D. Wilson, hereby declare:

1. I am a partner of the law firm King & Spalding LLP ("King & Spalding" or the "Firm"), maintains offices at, among other places, 1180 Peachtree Street NE, Atlanta, GA 30309. I am an attorney admitted to practice law in the State of Georgia.

2. I submit this declaration (this "Declaration") in support of the *Second Application for Allowance of Compensation and Reimbursement of Expenses of King & Spalding LLP, as Counsel to the Debtor and Debtors-in-Possession* (the "Application"), filed contemporaneously with this Declaration.[1]

3. Unless otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge. If I were called to testify, I would testify competently to the facts set forth below.

---

[1] Capitalized terms not otherwise defined in this Declaration shall have the meanings ascribed to such terms in the Application.

- 2 -

4.	I have read the Application, and, to the best of my knowledge, the facts set forth in the Application are true and correct.

### Receiver's Engagement of King & Spalding

5.	On November 8, 2021, the United States District Court for the Southern District of New York (this "Court") entered an *Order Appointing Michael Fuqua as Receiver* (Doc. 117) (the "Receivership Order") in the above-captioned case (the "Case"), thereby appointing Michael Fuqua as receiver ("Receiver") for Theia Group, Inc., Theia Aviation LLC, and Theia Holdings A, Inc. (collectively, the "Receivership Entities").

6.	Prior to the entry of the Receivership Order, on October 12, 2021, the Receivership Entities filed counterclaims (Doc. 79) in the above-referenced civil action (the "Counterclaims") against FCS Advisors, LLC ("FCS"); Brevet Capital Management, LLC ("BCM"); Mark Callahan; Robert Leeds; Leeds Holdings, LLC; and Strongbow Holdings, LLC (collectively, the "Defendants").

7.	On January 26, 2022, the Court entered an Order (the "Order to Show Cause") (Doc. 178) in which the Court concluded that "the counterclaim [against the Defendants] remains pending and the Receiver, who now stands in the shoes of Theia, is responsible for prosecuting or otherwise resolving this claim against Callahan. The Receiver is also responsible for negotiating the terms of the Brevet financing. The Receiver ought to be able to rely on conflict-free lawyers for advice on these subjects."

8.	In response to the Order to Show Cause, the Receiver engaged King & Spalding to represent the Receiver with respect to (i) the investigation of claims by and against the Defendants and (ii) the proposed receivership financing from FCS. The Receiver also filed a notice (Doc. 186) on February 2, 2022 to inform the Court and parties in interest of King & Spalding's retention.

9. On May 26, 2023, King & Spalding filed its first fee application for compensation (Doc. 355). On October 29, 2023, the Court entered an order allowing payment to King & Spalding in the total amount of $446,285.91 for the applicable period, consisting of (i) $343,631.00 for legal services provided to the Receiver; (ii) reimbursement of expenses in the amount of $2,654.91; and (iii) a security retainer in the amount of $100,000.00 (Doc. 412).

10. On October 26, 2023, the Court entered an order (the "Sale Order") (Doc. 411), in which the Court approved the sale of the Receivership's assets (the "Sale") to an affiliate of FCS, LTS Systems, LLC ("LTS") pursuant to that certain Asset Purchase Agreement dated August 12, 2023 (the "APA"). The Receiver agreed to accept partial payment of the Assumed Liabilities (as defined in the Order to Show Cause) with the expectation and promise from LTS that future funds–from the sale of other assets including, but not limited to, an FCC license–would cover Receiver's fees and expenses.

11. Due to concerns raised by the Court at a hearing related to the Sale, the Receiver requested that King & Spalding take over from Reed Smith LLP ("Reed Smith") as his counsel in negotiating the final documentation and closing of the transaction with LTS. Thus, King & Spalding has been representing Receiver in connection with the closing of the sale transaction with LTS.

12. On December 18, 2023, King & Spalding filed its second fee application for compensation (Doc. 420). On January 5, 2024, the Court entered an order allowing payment to King & Spalding in the total amount of $150,348.20 for the applicable period, consisting of (i) $148,600.00 in compensation for legal services provided to the Receiver and (ii) reimbursement of expenses in the amount of $1,748.20 (Doc. 426).

13. The Receiver filed interim status reports in April 2024 (Doc. 434) (the "Seventh Interim Status Report") and April 2025 (Doc. 494) (the "Eighth Interim Status Report"; together with the Seventh Interim Status Report, the "Interim Status Reports") which *inter alia*, outlined the Receiver's efforts to close the sale for the remainder of the assets being sold under the APA and noted that the Receiver was not yet able to convey a license issued to the Receivership Entities (the "FCC License") by the Federal Communications Commission (the "FCC") as its transfer could not occur without obtaining necessary approvals from the FCC.

14. On May 5, 2025, the Court entered an order (the "Termination Order") (Doc. 496) to terminate the receivership on July 31, 2025 (the "Termination Date").

15. On July 21, 2025, the Receiver filed a motion to enforce the Sale Order and APA and compel payment from LTS of the remaining Assumed Liabilities (Doc. 500) (the "Motion to Enforce").

16. On July 25, 2025, the Receiver received notice of an order issued by the FCC in which the FCC denied the request for a waiver of milestones and surety bond requirements and affirmed the termination of the FCC License held by the Receivership Entities as of May 16, 2024 (Doc. 508, Exh. C) (the "FCC Order"). The Receiver's actions regarding his request to the FCC to permit transfer of the FCC License is detailed in the FCC Order. As a result of the FCC Order the Receiver was unable to transfer the FCC License to LTS and its designee.

17. On July 29, 2025, the Court entered an order (Doc. 509) (the "Assumed Liabilities Order") granting the Motion to Enforce and requiring LTS to pay the Assumed Liabilities to the Receiver within three (3) business days of entry of the Assumed Liabilities Order (i.e., August 1, 2025).

18. On July 30, 2025, the Receiver filed his *Final Report of Receiver* (Doc. 511) (the "Final Report") which indicated, among other things, that the Receiver had transferred substantially all of the Receivership Estates' assets to LTS (other than the FCC License), but that LTS had not fully paid the Assumed Liabilities and that, even if the remaining Assumed Liabilities had been paid, the Receiver had insufficient funds to pay himself and the Receiver's professionals.

19. On August 8, 2025, the Receiver filed the *Order to Show Cause and Motion of Receiver for Contempt and Sanctions against LTS Systems, LLC* (Doc. 511) (the "Contempt Motion") to force LTS to make the payment for the remaining Assumed Liabilities as required under the Assumption Liabilities Order. On August 27, 2025, the Receiver filed a reply in further support of the Contempt Motion (Doc. 528) (the "Reply").

20. Since King & Spalding's engagement and the Receiver's appointment, I have been the lead attorney working on the Case and, along with the King & Spalding professionals set forth in **Exhibit B**, I have assisted the Receiver with undertaking his duties as set forth in the Receivership Order, including, without limitation, the Court's directives to (i) "preserve, hold, and manage all receivership assets, and perform all acts necessary to preserve the value of the receivership assets" and (ii) "seek a bona fide purchaser of the Receivership Entities' Federal Communications Commission ('FCC') License Assets." *See* Receivership Order, ¶¶ 7–8.

**Compensation & Reimbursement of Expenses Sought By King & Spalding**

21. By the Application, King & Spalding requests an allowance of compensation in the amount of $516,314.00 for legal services and reimbursement of expenses in the amount of $2,174.79, for a total of $518,488.79. All services and costs for which King & Spalding seeks compensation were performed for, or on behalf of, the Receiver and the Receivership Entities during the Application Period.

22.     The compensation sought in the Application is based upon the nature, extent, and value of the services rendered, as more particularly detailed in the invoices annexed as **Exhibit B** to the Application.  These invoices contain daily time logs describing the time spent by each attorney and paraprofessional during the Application Period, as well as itemization of expenses.

23.     The billing rates for King & Spalding's professional services provided in this Case, as set forth in **Exhibit B** to the Application, are based upon the time, nature, extent and value of such services and the cost of comparable services that King & Spalding customarily charges to the Firm's other clients.  The billing rates represent the standard hourly rates for King & Spalding personnel.

### Services Rendered by King & Spalding Professionals During Application Period

24.     During the Application Period, King & Spalding worked expeditiously and efficiently to provide legal services to the Receiver and the Receivership Entities.  The services rendered by King & Spalding to the Receiver and the Receivership Entities during the Application Period include, without limitation, the following:

   a. **Post-Sale Closing and Asset Transfers**.  Following entry of the Sale Order, King & Spalding led the negotiations and documentation necessary to close the sale of the Receivership Entities' assets to LTS under the APA.  This included advising on and documenting the transfer and sale of aircraft-related assets.  The Firm also worked closely with the Receivership's FCC regulatory counsel, Akin Gump Strauss Hauer & Feld LLP, and coordinated with LTS, its counsel and LTS's prospective assignee (Athena-5) and its counsel, on matters related to the transfer of the FCC License, including but not limited to reviewing, commenting on, and strategizing over transfer applications, waiver requests, and communications with the FCC.

   b. **Receivership Reports**.  Throughout the Application Period, King & Spalding prepared and filed the Interim Status Reports, as well as a contemporaneous extension letter that led to the entry of the Termination Order setting a July 31, 2025 termination date.  The Firm also prepared and filed the Final Report and proposed order and coordinated with the Receiver on the Preservation Order (as defined in the Final Report) concerning books and records.

  c. **Enforcement of the Sale Order and APA**. To enforce the Sale Order and APA, King & Spalding prepared a demand letter to LTS, FCS, and Brevet for payment of the remaining Assumed Liabilities, including professional fees. The Firm prepared and filed the Motion to Enforce, prepared and filed related reply papers and declarations, and ultimately obtained entry of the Assumed Liabilities Order. When LTS failed to comply with the Assumed Liabilities Order, the Firm prepared and filed a letter motion, the Contempt Motion, and the Reply.

  a. **Post-Sale Strategic Planning Process**. King & Spalding also held numerous discussions regarding post-sale strategic planning for the Receivership Entities and assets with the Receiver, his team at Glass Ratner, his advisors, and LTS's advisors regarding the asset transfers, alternatives for transferring the FCC License, enforcement of LTS's obligations, and the orderly wind-down and termination of the receivership.

### Actual and Necessary Expenses Incurred During Application Period

25. King & Spalding incurred $2,174.79 in reasonable and necessary expenses during the Application Period. Such expenses were actual and necessary in connection with the services rendered by the Firm on behalf of the Receivership Entities. The rates charged with respect to such expenses are at or below the market rates that the majority of law firms charge clients for such services. In addition, such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for disbursements and other charges.

### The Requested Compensation and Expense Reimbursement is Reasonable

26. I believe that the amounts requested by King & Spalding are reasonable given (a) the complexity of this Case, (b) the time expended, (c) the nature and extent of the services rendered, (d) the value of such services, (e) the value of property of the estate enhanced, preserved and protected, and (f) the costs of comparable services (including in cases other than a receivership case).

- 8 -

27.     Accordingly, I respectfully request that this honorable Court allow (and authorize the payment of) the compensation and reimbursement of expenses requested by King & Spalding in the Application.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 22, 2025

By: /s/ *Thaddeus D. Wilson*
    Thaddeus D. Wilson