

1330 Avenue of the Americas, Suite 23A
New York, New York, 10019
+1.212.653.0388 www.pgbfirm.com

**Partners**

S. Christopher Provenzano
Michael A. Granne
Jennifer Bader

S. Christopher Provenzano
chris.provenzano@pgbfirm.com
+1 917 690 8764

September 28, 2025

Hon. P. Kevin Castel
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007
CastelNYSDChambers@nysd.uscourts.gov

**By Email & NYSCEF**

Re: *FCS Advisors, LLC et al. v. Theia Group Inc. et al.*, 21-cv-06995-PKC

Dear Judge Castel:

We represent Stephen Buscher, who appeared in this action in 2022 as an interested party. Mr. Buscher's counsel subsequently withdrew after the denial of his motion seeking a modification of the receivership stay to permit an action against Mr. Buscher's former employer, Theia Group, Inc. *See* Dkt. No. 270 (denial of motion without prejudice), Dkt. Nos. 289 – 290 (withdrawal). This letter is intended in part as a pre-motion letter in respect of several anticipated applications to the Court.

*First*, Mr. Buscher wishes to participate in the hearing now scheduled for September 30. We respectfully request that the Court make provision for him to do so by telephone or video, as he is unable to travel to New York on that date.

*Second*, we previously wrote the Court, when it was anticipated that the receivership would terminate on July 31, asking that the Court direct the receiver to preserve all records of the receivership in anticipation of litigation. *See* Dkt. No. 497. The receivership was, of course, extended beyond that date. As the receivership may now soon terminate, we renew that request. Mr. Buscher believes that there may be substantial claims against Theia, its officers and directors, and potentially the receiver, that may be asserted by him and by other creditors. We therefore wish to be sure that relevant documents are not discarded or destroyed upon conclusion of the receivership. This is particularly true for documents as to which the receiver or others may claim privilege.

*Third*, Mr. Buscher's previous application to the Court for leave to commence an action for contractual indemnity from Theia was denied without prejudice. The receiver, through counsel, had refused to indemnify Mr. Buscher. Mr. Buscher now understands that a D&O policy applicable to him in fact existed at the time of Mr. Buscher's resignation, but the receiver failed to inform Mr. Buscher that there was potentially applicable liability insurance. Mr. Buscher now understands that other former Theia officers have nonetheless used this policy to fund their defenses. Mr. Buscher has incurred costs of well over $1 million for which Theia is legally responsible, and which the policy might have covered.

A receiver is an officer of the Court—not a representative of any party— and owes a fiduciary duty to *all* persons who have an interest in the estate, not merely to the party who sought their appointment. *See, e.g., In re Schubert*, 1992 WL 112351 (S.D.N.Y. 1992), aff'd sub nom. *Schubert v Commerzanstalt*, 983 F2d 1047 (2d Cir. 1992) (citing New York cases); *Decker v. Gardner*, 124 N.Y, 334 (1891). It is not the receiver's role to prefer some creditors over others. Because of the receiver's duty towards all creditors (including Mr. Buscher), whether intentional, reckless or merely negligent, an omission or misrepresentation as to the existence and availability of an applicable insurance policy potentially subjects the receiver to liability as well. Mr. Buscher therefore renews his request

that he be permitted to bring an action in advance of the termination of the receivership.

*Fourth*, more generally, it is Mr. Buscher's belief that, contrary to well-established law, the receiver was primarily acting for the benefit of the party that appointed him and its affiliate, and not for the benefit of all creditors. The opacity of the receivership process, as opposed to the transparency of a bankruptcy proceeding (for which Mr. Buscher advocated as CFO), has prevented creditors from having full, or really any, knowledge as to the estate and the relevant transactions. There are some deeply concerning facts, especially when viewed in light of the clear concerns the Court has expressed regarding significant conflicts of interest. *See* Dkt. No. 410. A few are described below.

Everyone seems to agree that the most valuable asset of Theia is (or was) its licenses to operate a non-geostationary-satellite orbit satellite system, and that their value, if realized, would be substantial. The value of these licenses is therefore of critical importance to all creditors. In its August 19 filing, Mark Dunsheath, on behalf of LTS and the plaintiff (affiliated with Brevet Capital Management, LLC), represented to the Court that "[t]he Theia satellite license—what was Theia's main asset—is not a source of funds because, unfortunately, the FCC in July 2025 declared the license 'null and void.'" Dkt. No. 525 ¶ 3. We will return to the value of the licenses.

Athena-5 Systems Corp. was created to take possession of the lapsed Theia's FCC licenses. Athena, however, appears never to have had the financial means or the expertise to actually launch satellites, and there is no indication of how it intended to make use of the licenses. The transaction whereby it took possession of the licenses appears to have involved no cash payment by Athena and it is not clear that it has any assets or personnel. Athena's lack of capacity was actually identified by the FCC in the order on which the plaintiff relied in its August 19 filing (Dkt. No. 525). A full copy of this order is attached as **Exhibit A**. The Commission noted that

the sale of Theia's assets to a new buyer, Athena, which the Commission consented to one week prior to Theia's default on its bond obligation and which the parties were free to consummate but have not yet done so, is also no justification for bond waiver. The bond guarantees the licensee's compliance with its first deployment milestone. *Neither Theia nor Athena have provided any information as to how Athena could have met Theia's first milestone of launching and operating 50% of its authorized satellites by May 9, 2025.*

There is no reason to believe that a timely request for extension by a capable party would have been denied, which would have allowed a surety bond to be obtained and this situation avoided. Nonetheless, Theia, Athena and the receiver together failed to protect the single most significant asset available to satisfy creditors. The circumstances regarding the surety bond and the milestone deadlines were known to everyone involved in this transaction, yet the licenses were conveyed without any apparent concern for maintaining their value. This was either an egregious error, considering that according to the plaintiff it has rendered the licenses worthless, or it was a deliberate omission for some strategic reason unknowable to creditors. This is something the creditors are entitled to examine.

Further, Athena appears to have considerable overlap with Theia in its officers and directors. A copy of the relevant portion of Athena's public FCC filing this is attached as **Exhibit B**. Among the persons previously associated with Theia are John Gallagher, Eugene Sullivan, and Gene Sullivan Jr., and Jack Pappas, whom Mr. Buscher believes to be a trustee of Erlend Olson's off-shore family trusts.  Further, the ultimate beneficial owner of 75% of the entity that purchased the licenses (a person called Derrick Clyburn Ballard) appears primarily to be a set designer whose academic background is in architecture and design. Mr. Buscher understands that Mr. Ballard has long been associated with Erlend Olson, former CEO of Theia now under indictment. Creditors should be

4

able to examine the truthfulness of Athena's representations as to its ultimate beneficial ownership and the composition of its board.

Finally, the representation that the licenses are in fact worthless should be treated with skepticism, as the representations of the plaintiff in respect of the licenses are at least incomplete, if not misleading. The day after the representation that the licenses were worthless, LTS filed a document with the FCC indicating that it is seeking reconsideration of the FCC order. A copy of the filing is enclosed as **Exhibit C**. It is hard to see why LTS would bother with this if there were not at least some possibility of realizing value for the licenses. This is another issue that should be the subject of further inquiry.

If the licenses are in fact completely without value, all creditors will be equally disappointed—as it should be. If, however, they turn out to have significant value, one creditor will get all its money back with a nice profit, all the other creditors will get nothing, and the asset will possibly remain largely under the control of the same people who owned it before bankrupting Theia. It would be quite the joke on other creditors were LTS able to revive the licenses they claim are completely without value.

These are circumstances that all creditors should be able to examine, and which the parties should be required to explain. Mr. Buscher is in the process of consulting with other unsecured creditors to consider possible remedies, such as an involuntary bankruptcy or fraudulent conveyance and other related claims. Irrespective of this, we believe the Court should, on its own initiative, take a hard look at these transactions and the circumstances we describe.

Respectfully submitted,

S. Christopher Provenzano
PROVENZANO GRANNE & BADER LLP
1330 Avenue of the Americas, 23A
New York, NY 10019
chris.provenzano@pgbfirm.com

Copies:        All counsel by ECF

**Exhibit A**

Before the
**Federal Communications Commission**
Washington, D.C. 20554

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Theia Holdings A, Inc. | ) | ICFS File Nos. SAT-LOA-20161115-00121 |
| | ) | and SAT-AMD-20170301-00029 |
| Request for Retroactive Waiver of Surety Bond | ) | |
| Requirement for a Non-Geostationary Satellite | ) | Call Sign: S2986 |
| Orbit System License | ) | |

**ORDER**

**Adopted:  July 25, 2025**                                      **Released:  July 25, 2025**

By the Acting Chief, Satellite Programs and Policy Division, Space Bureau:

## I.    INTRODUCTION

1.        By this Order, we deny the request of Theia Holdings A, Inc. (Theia) for retroactive waiver of the surety bond requirement associated with its license to construct, launch, and operate a non-geostationary-satellite orbit (NGSO) satellite system.[1]  After review of the record, we conclude that Theia's contractual dispute with its surety bond provider does not present a good cause for waiver of its license requirement to maintain its surety bond.[2]  Accordingly, by the conditions of Theia's license, its satellite authorization became null and void on May 16, 2024, the day that Theia's potential bond liability under the Commission's rules exceeded the value of its bond.[3]  The full $4,340,000 value of the bond is due and payable to the U.S. Treasury upon written notice from the Commission's Office of Managing Director.[4]

## II.    BACKGROUND

2.        On May 9, 2019, the Commission granted Theia's application for authority to construct, launch, and operate an NGSO satellite system of 112 active satellites and 8 on-orbit spare satellites to be operated in low-Earth orbit.[5]  Consistent with the Commission's rules, Theia's license was conditioned upon Theia posting, and thereafter maintaining in the Commission's files, a surety bond with a specified penal amount sufficient to cover its potential liability in the event of default under the Commission's escalating bond liability formula.[6]  Theia would be relieved of its bond obligation upon a Commission

---

[1] Letter from Michael Fuqua, Receiver, Theia Group, Inc., to Marlene H. Dortch, Secretary, FCC, ICFS File Nos. SAT-LOA-20161115-00121 and SAT-AMD-20170301-00029 (filed June 10, 2024) (Waiver Request).

[2] *See* 47 CFR § 1.3.

[3] *Theia Holdings A, Inc., Request for Authority to Launch and Operate a Non-Geostationary Satellite Orbit System in the Fixed-Satellite Service, Mobile-Satellite Service, and Earth-Exploration Satellite Service*, Memorandum Opinion, Order and Authorization, 34 FCC Rcd 3526, 3548, paras. 59a, c (*Authorization*); 47 CFR § 25.165(a)(1).

[4] *See International Bureau Updates Procedures for Filing and Maintaining Surety Bonds Pursuant to Revised Milestone and Escalating Bond Requirements*, Public Notice, 31 FCC Rcd 11054 (IB 2016).

[5] *See Authorization*, 34 FCC Rcd at 3526, paras. 1-2.

[6] *Authorization*, 34 FCC Rcd at 3548, para. 59a; 47 CFR § 25.165(a)(1), (c).  An NGSO satellite licensee is considered to be in default with respect to a bond filed in connection with its satellite license if it surrenders the license before meeting the applicable 50% deployment milestone requirement or if it fails to satisfy any such

(continued....)

finding that it had satisfied its first satellite deployment milestone to launch and operate 50% of its authorized constellation within six years of its license grant.[7]  Failure to maintain a surety bond with a sufficient penal sum would render the authorization "null and void automatically, without further Commission action."[8]

3.        On May 20, 2019, Theia posted an initial surety bond in the Commission's International Communications Filing System, and on May 5, 2021, April 29, 2022, and May 8, 2023, submitted bond riders increasing the maximum penal sum owed upon an event of default in accordance with the Commission's rules.[9]  Theia's final bond rider provides for a maximum bond penalty of $4,340,000.[10] Under the Commission's escalating bond liability rule, Theia's liability in the event of default exceeded its bond on file as of May 16, 2024, and would have continued to increase to a maximum value of $5,000,000 as of its first milestone date of May 9, 2025.[11]

4.        On November 8, 2021, Theia entered receivership.[12]  On October 26, 2023, the court presiding over the receivership approved the sale of Theia's assets to a new buyer.[13]  On March 25, 2024, Theia and Athena-5 Systems Corp. (Athena), a wholly owned subsidiary of Emtech Global International, LLC, submitted an application for Commission consent to the assignment of Theia's satellite license to Athena.[14]  The application was granted on May 9, 2024.[15]

5.        On January 4, 2024, Theia's receiver communicated to the provider of its surety bond that a cancellation of the bond in accordance with its terms would not require relief from the stay imposed in Theia's receivership order.[16]  On January 29, 2024, according to Theia's receiver, its bond provider

---

milestone by the milestone date.  *See* 47 CFR § 25.165(a)(1), (c).  A licensee that, for reason of its failure to maintain an adequate bond under the Commission's rules, has its license become null and void is incapable of meeting its milestone obligations and therefore immediately defaults on its bond in the same manner as if the license had been surrendered.

[7] *Authorization*, 34 FCC Rcd at 3548, para. 59b; 47 CFR §§ 25.164(b)(1), 25.165(d).  Theia was required to launch and simultaneously operate 50% of its authorized satellites in its authorized frequency bands by no later than May 9, 2025, to satisfy its first milestone and qualify for release of the bond.  *See Authorization*, 34 FCC Rcd at 3526, para. 1, 3548, para. 59b.

[8] *Authorization*, 34 FCC Rcd at 3548, para. 59c.

[9] *See* ICFS File Nos. SAT-LOA-20161115-00121 and SAT-AMD-20170301-00029.

[10] Letter from Michael Fuqua, Receiver, Theia, to Marlene H. Dortch, Secretary, FCC, ICFS File Nos. SAT-LOA-20161115-00121 and SAT-AMD-20170301-00029 (filed May 8, 2023).

[11] *See* 47 CFR § 25.165(a)(1) (providing that an NGSO licensee must have on file a surety bond requiring payment in the event of default in an amount, at a minimum, determined according to the following formula, with the resulting dollar amount rounded to the nearest $10,000: A = $1,000,000 + $4,000,000 * D/2192, where A is the amount to be paid and D is the lesser of 2192 or the number of days that elapsed from the date of license grant until the date when the license was surrendered).  May 16, 2024 is 1834 days after Theia's license grant date of May 9, 2019.  Theia's bond liability on this date was $1,000,000 + $4,000,000 * 1834/2192 = $4,346,715.33, and when rounded to the nearest $10,000, was $4,350,000.  One day earlier, on May 15, 2024, Theia's bond liability was $1,000,000 + $4,000,000 * 1833/2192 = $4,344,890.51, and when rounded to the nearest $10,000, was $4,340,000, the value of Theia's bond.

[12] Waiver Request at 2; ICFS File No. SAT-T/C-20211119-00164.

[13] Waiver Request at 2.

[14] ICFS File No. SAT-ASG-20240325-00064.

[15] *Id.*

[16] Waiver Request at 3.

**Federal Communications Commission**                    **DA 25-660**

"purported to non-renew the bond, effective May 9, 2024."[17]  Theia's receiver states that he was unaware of the purported non-renewal at the time, as notice was delivered to an address not used by Theia or the receiver "for a number of years."[18]  In April 2024, Theia's receiver engaged the surety provider to execute a new bond rider extending the term of the bond and increasing the maximum penal sum, which the surety provider refused to do.[19]  On May 16, 2024, Theia's potential liability under the Commission's escalating bond liability formula exceeded the value of its bond on file, triggering the automatic cancellation provision in its license.[20]

6.    On June 10, 2024, Theia filed the Waiver Request.  Theia seeks retroactive waiver of its obligation to maintain a bond in an adequate amount under the Commission's rules, and relief from the automatic termination of its license caused by failure to maintain an adequate bond, because it argues that waiver is necessary in order to permit Theia's receiver to consummate the sale of Theia's assets to Athena.[21]  After the parties consummate the sale, Theia argues that Athena should have 30 days to post a satisfactory bond "just as it would have to if it were a new licensee."[22]  Theia argues that grant of a waiver would avoid undue harm to the receivership estate and Theia's creditors and serve the underlying purpose of the surety bond requirement by "enabling the assignment of the license to a well-funded buyer that will put the licensed spectrum into use."[23]

## III.    DISCUSSION

7.    After review of the record, we conclude that Theia has failed to demonstrate good cause for waiver of its bond requirement.  Rather, Theia's license became null and void on May 16, 2024, without further Commission action.  Accordingly, the full $4,340,000 value of Theia's bond must be paid to the U.S. Treasury upon written notice from the Commission's Office of Managing Director.

8.    *Purpose of Bond Requirement*.  In 2003, the Commission adopted a bond requirement for satellite licensees.[24]  The Commission reasoned that requiring satellite licensees to make a financial commitment to construct and launch their satellites would help deter speculative applications and help ensure scarce resources are used efficiently.[25]  In 2015, the Commission adopted a revised bond methodology with an escalating bond requirement.[26]  In doing so, the Commission sought to rely on the financial incentive of the escalating bond liability to encourage satellite operators to construct and launch spacecraft expeditiously or surrender their authorization early if business plans changed.[27]

9.    To further provide flexibility to satellite licensees in meeting their bond requirements, and to potentially reduce their bond maintenance costs, the Commission has offered licensees the option of submitting an initial bond with a value less than the maximum $5 million potential liability at the end

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Authorization*, 34 FCC Rcd at 3548, paras. 59a, c; 47 CFR § 25.165(a)(1).

[21] Waiver Request at 1.

[22] *Id.* at 1-2.

[23] *Id.*

[24] *Amendment of the Commission's Space Station Licensing Rules and Policies*, First Report and Order and Further Notice of Proposed Rulemaking, 18 FCC Rcd 12674, 10824, para. 166 (2003).

[25] *Id.*

[26] *Comprehensive Review of Licensing and Operating Rules for Satellite Services*, Second Report and Order, 30 FCC Rcd 14713, 14734, paras. 50-51 (2015).

[27] Under the escalating bond requirement, liability increases from $1 million to $5 million for NGSO systems.

**Federal Communications Commission**                                          **DA 25-660**

of the 6-year NGSO milestone period, and instead submitting periodic bond riders to increase the penal sum of the bond. The Commission has clarified that any bond riders must be submitted "without any gap in coverage," such that "[i]n all cases, the bond, including any rider or succession bond, must provide continuing coverage and satisfy the increased potential liability pursuant to the formulas in Section 25.165 until the Bureau releases the bond."[28] The Commission has also clarified that "[b]y its terms, the bond must remain effective until the Bureau releases the bond."[29] Accordingly, satellite licensees that take advantage of the flexibility to file bond riders nonetheless remain responsible for continuous compliance with the bond requirements, including maintaining a bond in a sufficient amount until the bond is released by the Commission. It is the satellite licensee, and not the Commission, that assumes any risk associated with the licensee's business decision to procure and submit periodic bond riders in place of a single bond that covers its maximum potential liability.

10.     *Waiver Analysis.* A waiver of the Commission's rules is appropriate if both (1) special circumstances warrant a deviation from the general rule, and (2) such deviation better serves the public interest.[30] Generally, the Commission may waive any rule if there is good cause to do so.[31] In making this determination, the Commission may take into account considerations such as hardship, equity, or more effective implementation of overall policy on an individual basis.[32]

11.     That standard is not met in this case. First, aside from a private contractual dispute with its surety bond provider, apparently exacerbated by Theia's listing of a formal mailing address not in use by the company or its receiver for a number of years,[33] Theia offers no reason for its failure to maintain an adequate bond, including by securing a bond with an alternative surety company. By making a business decision to lower its bond maintenance costs and seek periodic increases in its bond value through riders, instead of filing a single bond in the maximum value, Theia, and its receiver, assumed the associated risks. Second, the sale of Theia's assets to a new buyer, Athena, which the Commission consented to one week prior to Theia's default on its bond obligation and which the parties were free to consummate but have not yet done so, is also no justification for bond waiver.[34] The bond guarantees the licensee's compliance with its first deployment milestone. Neither Theia nor Athena have provided any information as to how Athena could have met Theia's first milestone of launching and operating 50% of its authorized satellites by May 9, 2025.[35] Failure to launch and operate any satellites by this date also renders the

---

[28] *International Bureau Clarifies Procedures for Maintaining Satellite Space Station Surety Bonds pursuant to Escalating Bond Requirements*, Public Notice, 32 FCC Rcd 743 (IB 2017).

[29] *Id.*, 32 FCC Rcd at 744. In addition, the bond by its terms should define the events of default sufficiently broad to include a situation in which the license or grant becomes null and void due to failure to maintain a surety bond in an adequate amount. *Id.*

[30] *NetworkIP, LLC v. FCC*, 548 F.3d 116, 125-128 (D.C. Cir. 2008) (citing *Northeast Cellular Telephone Co.*, 897 F.2d 1164, 1166 (1990)).

[31] 47 CFR § 1.3.

[32] *See Northeast Cellular*, 897 F.2d at 1166 ("[A] waiver is appropriate only if special circumstances warrant a deviation from the general rule and such deviation will serve the public interest. The agency must explain why deviation better serves the public interest and articulate the nature of the special circumstances to prevent discriminatory application and to put future parties on notice as to its operation"); *WAIT Radio v. FCC*, 418 F.2d 1153, 1159 (D.C. Cir. 1969) ("The agency's discretion to proceed in difficult areas through general rules is intimately linked to the existence of a safety valve procedure for consideration of an application for exemption based on special circumstances.").

[33] Waiver Request at 3.

[34] Thus, the Commission has not prevented the sale of Theia's assets or the termination of its receivership.

[35] Indeed, on May 8, 2025, Theia filed a modification application to extend these dates. *See* Theia Modification Application, ICFS File No. SAT-MOD-20250508-00118 (filed May 8, 2025). As discussed above, we do not reach

(continued….)

license null and void.[36]  Finally, since being issued its license in 2019, Theia has not provided any indication that it has progressed with construction of its authorized satellite system.  The purpose of the bond requirement is to deter speculative satellite licenses and promote the timely deployment of authorized systems.  Under these conditions, we cannot conclude that waiver of the bond requirement would not undermine the purpose of the rule.  If Athena is interested in pursuing a satellite constellation, it is free to file a new application for Commission authority to do so.

## IV.    CONCLUSION AND ORDERING CLAUSES

12.    For the foregoing reasons, IT IS ORDERED, pursuant to sections 0.51, 0.261, and 1.3 of the Commission's rules, 47 CFR §§ 0.51, 0.261, 1.3, that Theia's request for a retroactive waiver of its surety bond requirement IS DENIED.

13.    IT IS REAFFIRMED that Theia's license, ICFS File No. SAT-LOA-20161115-00121, as amended by SAT-AMD-20170301-00029, became NULL AND VOID on May 16, 2024, pursuant to 47 CFR § 25.165(a)(1).

14.    IT IS FURTHER ORDERED that Theia's modification application, ICFS File No. SAT-MOD-20250508-00118, seeking extension of its milestones is DISMISSED AS MOOT.

15.    IT IS FURTHER ORDERED that the full amount of Theia's surety bond payment of $4,340,000 will be due and payable to the U.S. Treasury upon written notice from the Office of the Managing Director.

FEDERAL COMMUNICATIONS COMMISSION

Jonathan R. Markman
Acting Chief, Satellite Programs and Policy Division
Space Bureau

---

the merits of this application because of our finding that the license was null and void when the bond lapsed in May 2024.

[36] *See Authorization*, 34 FCC Rcd at 3548, para. 59c.

# Exhibit B

*FCC Form 312, Question 40*

The applicant, Athena-5 Systems Corp. ("Athena") is a Delaware C corporation which is 100% owned and controlled subsidiary of EMTECH GLOBAL INTERNATIONAL, LLC ("EMTECH") which is a Delaware LLC with its principal offices located at 2420 Midtown Pl NE Suite D Albuquerque NM 87107. That address also serves as the address of Athena. Below, the required information relating to management, ownership and corporate organization is provided and updated. A brief bio of each individual in Table 1 is supplied in Table 5.

Table 1. Officers and Directors of Athena-5 Systems Corp ("Athena")

| Name | Title | Citizenship | Address |
|---|---|---|---|
| Derrick Clyburn Ballard | Director | USA | 2420 Midtown Pl NE Suite D Albuquerque NM 87107 |
| John Gallagher Sr. | Director | USA | 127 Lori Lane Broomall PA19008 |
| Judge Eugene Sullivan (ret.) | Director | USA | 6307 Massachusetts Ave Bethesda MD 20816 |
| Dr. William Jeffery | Director | USA | 12678 La Cresta Court Los Altos Hills, CA 94022 |
| Dr. David Bray | Officer & Director | USA | 2827 Berryland Drive Oakton, VA 22124 |
| Constantine "Jack" Pappas | Officer | USA | 939 Crystal Rock Rd. Lusby, MD. 20657 |
| Bart Gray | Officer | USA | 11026 N. 28th Drive #67 Phoenix, AZ 85029 |
| Byron Caswell | Officer | USA | 7504 Fisher Drive Falls Church VA, 22043 |
| Royal Ripley | Officer | USA | 13730 NW 4th PL North Miami, FL 33168 |
| Dr. Anthony Scriffignano | Officer | USA | 759 Bloomfield Ave, Suite 247 West Caldwell, NJ 07006 |
| Eugene Sullivan Jr. | Of Counsel | USA | 6309 Massachusetts Ave Bethesda MD 20816 |
| Trent Teyema | Officer | USA | 2200 Wilson Blvd., Suite 102 #438 Arlington, VA 22201 |

It should be noted that Athena's Certificate of Incorporation forbids any non-US citizen to act as a Director, and also forbids any foreign entities from obtaining any shareholder voting rights whatsoever.

Table 2. Stockholders having benefit or rights of 10 percent or more of Athena's voting stock:

| Name | Address | Citizenship (Place of Incorporation) | Percent Voting Ownership | Percent Financial Ownership |
|---|---|---|---|---|
| EMTECH GLOBAL INTERNATIONAL, LLC | 2420 Midtown Pl NE Suite D Albuquerque NM 87107 | USA (Delaware) | 100% | 100% |

No other persons or entities have shareholding interest in Athena.

Table 3. Officers and Directors of EMTECH

| Name | Title | Citizenship | Address |
|---|---|---|---|
| Derrick Clyburn Ballard | Chief Executive Officer | USA | 10608 Olympic St NW Albuquerque NM 87114 |
| Dr. Kamil Agi | Chief Technology Officer / Director | USA | 2420 Midtown Pl NE - Suite D Albuquerque, NM 87107 |
| Todd M. Gower | Chief Financial Officer / Director | USA | 34522 N. Scottsdale Rd Ste 120-106 Scottsdale, AZ 85266 |
| James Seiffert | Chief Legal Officer / General Counsel | USA | 713 E. Market Street, Suite 200 Louisville, Kentucky 40202 |
| Dr. Terry Locke | Chief Orbital and Aviation Officer | USA | 1103 Stagecoach Rd Se Albuquerque NM 87123 |
| Henry N. Woods | Managing Director | USA | 800 W. 1st St Los Angeles, CA 90012 |
| Dr. Ramiro Jordan | Peace Engineering Director | USA | 1124 Monte Alto Ct NE Albuquerque NM 87123 |

Table 4. Stockholders having benefit or rights of 10 percent or more of EMTECH's voting stock:

| Name | Address | Citizenship (Place of Incorporation) | Percent Voting Ownership | Percent Financial Ownership |
|---|---|---|---|---|
| Jim Seiffert | 713 E. Market Street, Suite 200 Louisville, Kentucky 40202 | USA | 15% | 15% |
| Derrick Clyburn Ballard | 10608 Olympic St NW Albuquerque NM 87114 | USA | 75% | 75% |

Table 5. Brief Bio of each individual listed in Table 1.

| Name | Bio |
|---|---|
| Derrick Clyburn Ballard | Derrick Clyburn Ballard, a distinguished technologist with over 30 years in cutting edge design and fabrication, has made significant contributions to architecture, immersive media, and film. Alongside serving as CEO of Emtech Global, Inc., specializing in SMART City solutions, he serves as a faculty research scholar at the University of New Mexico in the Department of Electrical and Computer Engineering focusing on Smart Cities and Cyber-Physical Systems. His career includes roles such as Interim Director of the JFK Policy Center, New Mexico State Emergent Media and Technologies Coordinator, and Lead Architectural Designer for internationally acclaimed architect Antoine Predock as well as Lead Designer for several blockbuster films. Ballard's innovative problem-solving methods have earned him numerous awards across several sectors and projects, many of which have been featured in architectural and film industry publications. He has led projects worth over $500M and his work has influenced projects worth hundreds of millions, globally. |
| John Gallagher Sr. | John Gallagher has worked extensively in business development roles in nuclear energy, nuclear non-proliferation, oil and gas, space and satellite technology sectors. He is a recognized expert in dual use |

2

| | |
|---|---|
| | technology and equipment and compliance in accordance with US State Department requirements and regulations. He also served the United States for ten years as Chairman of the United States Industry Coalition (USIC), a non-profit created and funded by Congress to address the challenges of nuclear, chemical and biological non-proliferation. Working for USIC John Gallagher regularly interacted with decision makers at the highest level in the Executive and Legislative Branches of Governments in the US, Europe, Asia and Africa. Professionally, Gallagher graduated from the University of Pennsylvania and is rated AV Preeminent by Martindale-Hubbell for 35 years. He received a B.A., maxima cum laude, from the LaSalle University and a J.D. from the University of Pennsylvania Law School, and is admitted to practice before the Pennsylvania Supreme Court, the US Federal Eastern District of Pennsylvania, and the Third Circuit Court of Appeals. |
| Judge Eugene Sullivan | Judge Eugene Sullivan (ret.) is a former Federal Appellate Judge, senior status. He also previously served as the General Counsel to the US Air Force and General Counsel to the NRO. Sullivan served as an Army Ranger and has been inducted into the Army Ranger Hall-of-Fame. Judge Sullivan is also presently with the DC law firm of Freeh-Sporkin-Sullivan. |
| Dr. William Jeffery | Dr. Jeffery was previously the CEO of SRI International, deputy director for the Advanced Technology Office and chief scientist for the Tactical Technology Office with the Defense Advanced Research Projects Agency (DARPA), as well as senior director for homeland and national security and the assistant director for space and aeronautics at the Office of Science and Technology Policy (OSTP) within the Executive Office of the President. At OSTP he was instrumental in guiding the creation and development of the science and technology aspects of the newly created Department of Homeland Security. He also served as the assistant deputy for technology at the Defense Airborne Reconnaissance Office, where he supervised sensor development for the RQ-1 Predator and RQ-4 Global Hawk Unmanned Aerial Vehicles (UAVs) and the development of common standards. He also spent several years working at the Institute for Defense Analyses performing technical analyses in support of the Department of Defense. |
| Dr. David Bray | Dr. David Bray was Principal at LeadDoAdapt Ventures and has served in a variety of leadership roles in turbulent environments, including bioterrorism preparedness and response, Executive Director for a bipartisan National Commission on R&D, providing non-partisan leadership as a federal agency Senior Executive, work with the U.S. Navy and Marines on improving organizational adaptability, and with U.S. Special Operation Command's J5 Directorate on the challenges of countering disinformation online. He also accepted a leadership role in 2019 to direct the successful bipartisan Commission on the Geopolitical Impacts of New Technologies and Data. Business Insider named him one of the top "24 Americans Who Are Changing the World" under 40. |
| Constantine "Jack" Pappas | Constantine "Jack" Pappas began his career in the US Navy as a Naval Officer. He completed many tours at sea and remains an avid sailor in his personal time. Among the many publicly known programs, he |

3

| | |
|---|---|
| | proposed and successfully executed an AA Priority Navy program to defend aircraft carriers against high-capability Soviet missiles, for which he received the Navy Achievement medal. After leaving active duty, he worked at the Naval Research Laboratory (NRL) in Washington, DC, as Assistant Acoustic Warfare Branch Head and the NRL representative on the TRIDENT submarine Acoustic Warfare Panel.  While at NRL, he created a Program of Record to defeat torpedoes fired at naval surface ships and was an early proponent of deep acoustic arrays. While at AeroJet Electro Systems, he created and obtained congressional approval for the Anti-Tactical Ballistic Missile program, which morphed into the Theater High Altitude Area Defense System, another Program of Record, which is a US strategic mainstay defense against enemy ballistic missiles worldwide.  Other significant achievements included creating the Navy's first R&D program for submarine intelligence collection sensors and writing the initial plan for cohering the Naval Intelligence organization into its present form. |
| Bart Gray | Bart Gray has served in multiple investment roles, including Partner at WWC Capital advising technology companies in strategic transactions and capital raising. A tech banker for most of his career, Bart also advised and executed transactions for companies focused on data networking, IT services, network security. Bart has been a key member of banking teams that have closed over $10 billion in transactions, including some $500 million in private equity-related assignments. At Lehman Brothers, Bart was a technology banker focused originally on enterprise software. At UBS, Mr. Gray worked with a variety of IT companies. Previously, Mr. Gray was a U.S. Air Force officer in the information operations and special technical operations communities, including information warfare, strategic communications, satellite operations, and network warfare. He holds a BS from the United States Air Force Academy in Colorado Springs, and an MBA from the University of Chicago's Graduate School of Business. |
| Byron Caswell | Byron Caswell was Senior Vice President of Strategic Consulting at ICF, overseeing a team providing the entire lifecycle of digital transformation services including enterprise architecture direction and portfolio rationalization strategy, agile application development leveraging modern platforms, digital service center operations, customer engagement and human-centered design, and cybersecurity support. He has held a variety of leadership roles across companies and customers including helping drive growth, founding and leading a strategy and technology services startup, and leading mission-critical efforts for customers in the defense, intelligence, health, retail sales, financial services, and digital media domains. |
| Royal S. "Sim" Ripley | Sim Ripley was a Foreign Service Officer with the US Department of State as well as a Lieutenant Colonel with the U.S. Army in roles that included deployment Afghanistan and Iraq. He is a graduate of the School of Advanced Military Studies, one of four schools that make up the US Army Command and General Staff College. He has served as US Army Chief of Plans for the Central Command / Third US Army, and Election Security Planner with the NATO-led International |

| | Security Assistance Force and a Battalion Executive Officer with the U.S. Army's 504th Signal Battalion. |
|---|---|
| Dr. Anthony Scriffignano | Dr. Anthony Scriffignano has served as SVP and Chief Data Scientist at Dun & Bradstreet Corporation. He has also provided expert advice on private sector data security matters to state Chief Data Officers and the White House Office of Science and Technology Policy. Scriffignano serves on various advisory committees in government, private sector, and academia. He has been called upon to provide insight on data science implications in the context of a highly disrupted datasphere and the implications of the global pandemic. |
| Trent Teyema | Trent Teyema is a former FBI Special Agent and Senior Executive Service operator who has served in numerous senior leadership positions including director of cybersecurity policy for the White House's National Security Council under President Barack Obama and President George W. Bush. He was the special agent in charge of the Cyber and Counterintelligence Divisions for the FBI field office in Los Angeles. He served as the FBI Cyber Division's chief operating officer. He also founded and led the National Cyber Investigative Joint Task Force. |
| Eugene Sullivan II | Eugene R. Sullivan II is currently Special Counsel of the Washington D.C. law firm of Freeh Sporkin & Sullivan LLP. Mr. Sullivan is a litigator and business law advisor representing global businesses and individuals in civil and criminal court matters and has conducted investigations in the United States, Europe and Asia. He is a graduate of the Lawrenceville School, Duke University (B.A. History), the London School of Economics (LL.B Honors) and Columbia University Law School (LL.M). He is a member of the New York Bar and the District of Columbia Bar. |

**Exhibit C**

Before the
Federal Communications Commission Washington,
D.C. 20554

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Theia Holdings A, Inc. | ) | |
| | ) | ICFS File Nos. SAT-LOA-20161115-00121 |
| Request for Retroactive Waiver of Surety Bond | ) | and SAT-AMD-20170301-00029 |
| Requirement for a Non-Geostationary Satellite | ) | Call Sign: S2986 |
| Orbit System License | ) | |

## SUPPLEMENTAL MOTION
## FOR EXTENSION OF TIME TO FILE PETITION FOR
## RECONSIDERATION

LTS Systems LLC ("LTS") and LTS Systems II, LLC ("LTS II"), by and through their attorneys, respectfully submit this supplemental motion requesting an extension of time to file a petition for reconsideration of the order by the Federal Communications Commission (the "FCC" or "Commission") in this matter dated July 25, 2025 denying the request of Theia Holdings A, Inc. ("Theia") for retroactive waiver of the surety bond requirement associated with Theia's license to construct, launch, and operate a non-geostationary-satellite orbit ("NGSO") satellite system.[1]  In further support hereof, LTS and LTS II state as follows.

1.       LTS filed a Motion for Extension of Time to File Petition for Reconsideration ("Motion") with the Commission on August 15, 2025.  The Commission has not yet ruled on the Motion.

2.       The August 15th Motion is hereby incorporated by reference and supplemented to clarify that LTS deposited Theia's license to construct, launch, and operate an NGSO satellite system of 112 active satellites and 8 on-orbit spare satellites granted by the Commission on May 9, 2019 - Call Sign S2986 - (the "License") into LTS II pursuant to an Escrow Agreement dated July 30, 2025 (the "Escrow Agreement").

3.       LTS II therefore joins fully in the Motion and requests that the Commission extend the

---

[1] *In the Matter of Theia Holdings A, Inc.,* ICFS File Nos. SAT-LOA-20161115-00121 and SAT-AMD-20170301-00029, DA 25-660 (released July 25, 2025) (the "Order").

1

current deadline of August 25, 2025 until September 24, 2025 for all of the reasons stated in the Motion.

4.    LTS II's rights to the License under the Escrow Agreement establish it as an interested person entitled to file a petition for reconsideration pursuant to 47 C.F.R. § 1.106(b)(1) for the same reasons stated in the Motion with regard to LTS.

Wherefore, LTS and LTS II respectfully request that for the above reasons and all those stated in the Motion, the Commission extend the deadline for the filing of any petition for reconsideration in this matter until September 24, 2025.

Respectfully submitted,

COZEN O'CONNOR


_____ /s/ Charles A. Zdebski _____
Charles  A.  Zdebski
Molly Shaffer
2001 M Street, N.W.
Suite 500
Washington, D.C. 20036
(Tel)  202.280.6528
(Fax)  202.861.1905
czdebski@cozen.com

*Counsel to LTS Systems LLC and*
*LTS Systems II, LLC*

2

**<u>CERTIFICATE OF SERVICE</u>**

       I hereby certify that on August 20, 2025, I caused a copy of the foregoing Supplemental Motion for Extension of Time to be served on the following by electronic filing, hand delivery, U.S. mail or electronic mail (as indicated):

                                     Marlene H. Dortch, Secretary
                                     Federal Communications Commission
                                     9050 Junction Drive
                                     Annapolis Junction, MD 20701 (Via ICFS)

                                       */s/ Charles A. Zdebski*
                                       Charles A. Zdebski