

3445 Peachtree Rd NE, Suite 1225
Atlanta, GA 30326
Tel: (470) 346-6800
www.glassratner.com

November 20, 2025

Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl St.
New York, New York  10007

**SENT VIA FEDEX**

RE:  **Granting Receiver's Fee Order Request**

Dear Judge Castel,

As the Court's appointed Receiver for Theia Group, Inc. (and its affiliates), I am writing to ask that you grant the Receiver's request to enter an order requiring FCS/Brevet and its affiliate, LTS Systems LLC ("LTS"), collectively to pay the Receiver and his professionals for services rendered to the Receivership, as well as estimated fees that will be required for tax returns and other filings to close the Receivership.  Since Your Honor approved the sale of the Receivership assets to LTS, a special purpose vehicle created by the lender, FCS/Brevet, to receive the assets purchased from the Receivership, the Receiver and his professionals worked diligently with FCS/Brevet/LTS to successfully transfer the assets.  As Your Honor is aware, the only assets that did not get transferred shortly after the approval of the sale order were the licenses from the FCC (Federal Communications Commission) and NOAA (National Oceanic and Atmospheric Administration) that granted the use of certain spectrum and provided for certain data gathering activities.  As Your Honor is also aware, the transfer of the FCC license was ultimately denied by the FCC in July 2025.  It is my understanding that LTS never fully approached NOAA to transfer that license.

LTS was simply a shell company to receive the purchased assets for future transaction.  All operational activity, negotiations, and other communications the Receiver and his professionals had with respect to the assets purchased by LTS were with the same professionals representing FCS/Brevet and FCS/Brevet employees.  For the purposes of transferring the assets FCS, Brevet, and LTS were one in the same.  FCS/Brevet controlled the LTS entity.

FCS/Brevet/LTS has pleaded poverty and claims it has no funds with which to pay the Receiver and the Receivership professionals for services assisting FCS/Brevet/LTS to transfer the respective licenses and close the Receivership.  Without consideration to the financial strength of FCS/Brevet, I find this hard to believe since in addition to licenses other assets purchased by the special purpose vehicle LTS included:

1. One airworthy and operationally functional DC-3 aircraft which was subsequently sold for $9,500,000.00;



2. A contract for the purchase and modification of 3 DC-3 aircraft. The Receivership entities made a $27,000,000.00 deposit for these aircraft and they were substantially complete. Each aircraft had a contract sale price of approximately $12,000,000.00. The contract was sold to Cognisphere, an FCS/Brevet/LTS affiliated entity at one point in time. Since the asset no longer belonged to the Receivership, I do not know the terms of the sale of the contract. However, FCS/Brevet represents itself to be a sophisticated fund so I don't believe that they would give away $27,000,000.00 of deposit value without some sort of commensurate compensation. I understand that Your Honor is aware of this transaction.;
3. A disabled JetStream 4100 with an estimated salvage value of $400,000.00 - $500,000.00;
4. Several million dollars worth of sophisticated data sensing equipment;
5. IP that may have had alternative uses. Theia's IP lawyer indicated that at least 2 patents may be of interest to telecommunications companies.

In May 2024, the Receivership received a $1,300,000.00 payment in partial satisfaction for the Assumed Liabilities listed on Schedule 1.01(i) of the Asset Purchase Agreement. The table below provides sources and uses of those funds.

| Description | Amount Received (Paid) | Cash Balance |
|---|---:|---:|
| Balance on 5/16/2024 | $ - | $ 3,587 |
| $1.3MM received on 5/17/2024 | 1,300,000 | 1,303,587 |
| **Immediately paid for professional fees in arrears:** | | |
| Reed Smith | (709,349) | 594,238 |
| King & Spalding | (242,965) | 351,273 |
| Receiver and B. Riley | (172,352) | 178,921 |
| Bonini IP Law | (56,021) | 122,899 |
| Akin Gump | (36,974) | 85,925 |
| **Operating expenses paid by Receivership since May 2024:** | | |
| QuickBooks and Microsoft charges | (25,017) | 60,908 |
| Riverside and Oso Grande rent | (24,532) | 36,376 |
| Bonini IP Law | (23,899) | 12,477 |
| Akin Gump | (6,768) | 5,709 |
| Taxes and fees | (2,367) | 3,342 |
| Insurance | (1,786) | 1,556 |
| Other legal expenses | (1,617) | (61) |
| **Ending Cash** | | $ (61) |

Had the Receivership been able to transfer the license or had the FCC notified the Receivership and buyer that it denied the transfer of the license on or about sometime in May 2024, the Receivership closing costs would have fallen within the cumulative Assumed Liabilities cap of $1,550,000.00 as there was little left to do other than seek Court approval to close the Receivership. That did not happen and FCS/Brevet/LTS asked for the continued assistance from the Receiver and his professionals.

Your Honor approved the sale on October 26, 2023 and it was anticipated that the FCC license would be transferred by the May 2024-June 2024 time period. However, the change in



presidential administrations and resulting layoffs at government agencies including the FCC delayed action on the transfer request. This was consequential for LTS. The FCC license contained a performance milestone requiring the launch of 56 satellites by May 25, 2024. This milestone was clearly missed. Additionally, despite assurances that Theia's surety bond would remain in place until the assumed transfer, Liberty Mutual pulled the surety bond which was a requirement of the license.

Despite the prolonged evaluation period of the FCC, the Receiver and his professionals acted in good faith and relied on representations from Brevet/FCS/LTS that we would be paid for assisting them with the license transfer process. Receivership counsel assisted FCS/Brevet/LTS, in consultation with Brevet/FCS personnel and their outside counsel, in preparing and prosecuting the initial submission to the FCC and all subsequent engagements with and pleadings to the FCC regarding approval of the sale[1] of the license.

Our work was not done on a contingent or success fee based on the transfer of the licenses. The values of the non-license assets listed above indicate that there should be no doubt that the Receiver and his professionals would not be paid from proceeds of the sale of these assets.

The Receiver made FCS/Brevet/LTS aware of the increasing amount of fees that were being incurred by the Receivership and its professionals[2] for the additional assistance being provided. Schedules of the fees being incurred for additional assistance were provided to FCS/Brevet/LTS along the way[3] yet there was no communication from them until after I sent the July 15, 2025, schedule which is attached. I have attached copies of the fee schedules that were sent to FCS/Brevet/LTS as Schedules 1-3. Their communication with me was that they "may be able to pay" $250,000.00 which represented less than half of what was owed the Receiver and his professionals for continuing to assist LTS secure the transfer of the FCC license. I don't know if it was just coincidence that the $250,000.00 tentative offer was also the amount remaining unpaid under the Assumed Liabilities cap of $1,550,000.00.

As a result of their bad faith actions, FCS/Brevet/LTS has caused the Receivership to incur further legal and professional fees by causing the Receiver to have to approach the Court for assistance in collecting the fees that FCS/Brevet/LTS said would be paid. Attached at Schedule 4 is a summary of the amounts due and estimated amounts needed to close the Receivership.

The Receivership had no motivation or incentive to expend resources on activities that did not benefit the creditors. It was represented to me as Receiver, by FCS/Brevet/LTS that the

---

[1] Approval of the sale of the license was not the same as approval of the transfer of the license. The ultimate beneficiary of the sale approval request was Athena 5 by which the license would pass from the Receivership through LTS to Athena 5. Approval of the requests necessary to complete the license transfer was subject to the buyer's submission of a plan satisfactory to the FCC addressing how it would meet certain deployment milestones required by the license.

[2] In particular, the attorneys I retained put in significant time and effort after the Court approved the sale to transfer assets to LTS and assist LTS and the buyer in the preparation of the paperwork necessary to seek the FCC license transfer. Due to LTS's requests King & Spalding, who substituted in for Reed Smith after the hearing to approve the sale to LTS, and Akin Gump, who worked on the FCC license transfer paperwork, are owed significant amounts of money. They would have been paid in full had LTS not requested that the Receivership remain open and sought assistance to transfer the FCC license.

[3] Updates provided as of April 15, 2025, May 29, 2025, and July 16, 2025.

successful transfer of the license from the Receivership to LTS, after which the license would be ultimately sold and transferred to a third party, would not only benefit the secured lender FCS/Brevet but may provide some recovery for the other Receivership creditors as well.

In closing Your Honor, the Receivership is broke. FCS/Brevet/LTS' bad faith dealings has put the Receivership in a position where it can't pay professionals for work that would have collectively benefited FCS/Brevet/LTS and possibly provided some kind of recovery for other creditors nor can it pay professionals for services to close the Receivership.

Based on my years of serving as a receiver, I believe the Court has equitable powers to cause FCS/Brevet – the parties who petitioned for the Receivership – and their affiliate, LTS – the special purpose vehicle established solely to receive the purchased assets for the purposes of sale, collectively, to pay the Receivership for the work performed in connection with me as the Receiver trying to comply with my obligations under the sale approved by the Court.

Respectfully,

Michael Fuqua

Receiver for Theia Group Inc. et al

**SCHEDULE 1**

## Theia Receivership
### Accounts Payable and Professional Fees Estimate

| Vendor | Accounts Payable includes Fees through | Accounts Payable as of April 7, 2025 | Estimated Additional Expense through April 7, 2025 | Note through April 7, 2025 | Estimated Additional Expense to be Incurred through Closing May 31, 2025 | Note through May 31, 2025 | Gross Cash Required to Pay Vendor | Application of Retainers | Net Cash Required to Pay Vendor |
|---|---|---|---|---|---|---|---|---|---|
| King & Spalding [1] | 2/28/2025 | $ 139,795 | $ 25,000 | Mar fees | $ 50,000 | Apr-May fees | $ 214,795 | $ (100,000) | $ 114,795 |
| Akin Gump [2] | 1/31/2025 | 108,933 | 30,000 | Feb-Mar fees | 30,000 | Apr-May fees | 168,933 | - | 168,933 |
| Receiver | 11/30/2024 | 34,210 | 15,000 | 12/1/24-4/7/25 fees | 30,000 | 4/8-5/31/25 fees | 79,210 | - | 79,210 |
| B. Riley | 11/30/2024 | 6,699 | 9,000 | 12/1/24-4/7/25 fees | 25,000 | 4/8-5/31/25 fees | 40,699 | - | 40,699 |
| Nelson Mullins | 12/31/2024 | 2,851 | - | Past Due Inv for NC filing | | | 2,851 | - | 2,851 |
| CRI (2025 returns) | N/A | - | - | N/A | 15,000 | Based on 2024 engagement | 15,000 | - | 15,000 |
| 2025 taxes | N/A | - | - | N/A | 5,000 | Estimate | 5,000 | - | 5,000 |
| 2024 taxes | N/A | - | 3,000 | $3k est. per CRI | - | None expected | 3,000 | - | 3,000 |
| Bank fees | N/A | - | 200 | Estimate w/overdraft fe | 300 | 4 months at $75 | 500 | - | 500 |
| **TOTAL** | | $ 292,487 | $ 82,200 | | $ 155,300 | | $ 529,987 | $ (100,000) | $ 429,987 |

|  |  |
|---|---|
| Assumed Liabilities per Sale Order | 250,000 |
| **Excess Amount Due to Maintain Receivership to Close** | **$ 179,987** |

[1] K&S will draft the Receiver's final report as well as respond to any DOJ inquiries as long as Receivership is open.

B. Riley Advisory Services

CONFIDENTIAL
DRAFT
FOR DISCUSSION PURPOSES ONLY

Page 1 of 1
11/17/2025

SCHEDULE 2

## Theia Receivership
### Accounts Payable and Professional Fees Estimate (Updated through 05/29/2025)

| Vendor | Accounts Payable | Accounts Payable includes Fees through | Estimated Unbilled Expense through May 29, 2025 | Estimated Additional Expense to be Incurred through Closing (June 30, 2025) | Gross Cash Required to Pay Vendor | Application of Retainers | Net Cash Required |
|---|---|---|---|---|---|---|---|
| King & Spalding [1] | $ 141,651 | 3/31/2025 | $ 15,000 | $ 50,000 | $ 206,651 | $ (100,000) | $ 106,651 |
| Akin Gump [2] | 153,945 | 4/30/2025 | 15,000 | 25,000 | 193,945 | - | 193,945 |
| Receiver | 52,750 | 4/30/2025 | 5,000 | 23,000 | 80,750 | - | 80,750 |
| B. Riley | 16,199 | 4/30/2025 | 5,000 | 25,000 | 46,199 | - | 46,199 |
| Nelson Mullins | 2,851 | 12/31/2024 | - | - | 2,851 | - | 2,851 |
| CRI (2025 returns) | - | N/A | - | 15,000 | 15,000 | - | 15,000 |
| Dissolution costs | - | N/A | - | 10,000 | 10,000 | - | 10,000 |
| 2025 taxes | - | N/A | - | 5,000 | 5,000 | - | 5,000 |
| 2024 taxes | - | N/A | 3,500 | - | 3,500 | - | 3,500 |
| Bank fees | - | N/A | 200 | 300 | 500 | - | 500 |
| **TOTAL** | **$ 367,395** | | **$ 43,700** | **$ 153,300** | **$ 564,395** | **$ (100,000)** | **$ 464,395** |

Assumed Liabilities to be Paid per Sale Order  250,000
**Excess Amount Due to Maintain Receivership to Close**  $ 214,395

**Notes**
[1] K&S will draft the Receiver's final report as well as respond to any DOJ inquiries as long as Receivership is open.
[2] Akin Gump is critical to maintaining and transferring the FCC licenses.

CONFIDENTIAL
DRAFT
FOR DISCUSSION PURPOSES ONLY

B. Riley Advisory Services

Page 1 of 1
11/17/2025

SCHEDULE 3

# Theia Receivership

## Accounts Payable and Professional Fees Estimate (Updated through 07/15/2025)

| Vendor | Accounts Payable | Accounts Payable includes Fees through | Estimated Unbilled Expense through July 15, 2025 | Estimated Additional Expense to be Incurred through Closing | Gross Cash Required to Pay Vendor | Application of Retainers | Net Cash Required |
|---|---|---|---|---|---|---|---|
| King & Spalding [1] | $ 167,922 | 5/31/2025 | $ 15,000 | $ 50,000 | $ 232,922 | $ (100,000) | $ 132,922 |
| Akin Gump [2] | 195,568 | 5/31/2025 | - | 35,000 | 230,568 | - | 230,568 |
| Receiver | 53,335 | 4/30/2025 | 6,000 | 23,000 | 82,335 | - | 82,335 |
| B. Riley | 16,199 | 4/30/2025 | 2,000 | 25,000 | 43,199 | - | 43,199 |
| Nelson Mullins | 2,851 | 12/31/2024 | - | - | 2,851 | - | 2,851 |
| CRI | 4,000 | 4/30/2025 | - | 15,000 | 19,000 | - | 19,000 |
| Dissolution costs | - | N/A | - | 10,000 | 10,000 | - | 10,000 |
| 2025 taxes | - | N/A | - | 5,000 | 5,000 | - | 5,000 |
| 2024 taxes | - | N/A | 3,500 | - | 3,500 | - | 3,500 |
| Bank fees | - | N/A | 200 | 300 | 500 | - | 500 |
| **TOTAL** | **$ 439,873** | | **$ 26,700** | **$ 163,300** | **$ 629,873** | **$ (100,000)** | **$ 529,873** |

| | |
|---|---|
| Assumed Liabilities to be Paid per Sale Order | 250,000 |
| **Excess Amount Due to Maintain Receivership to Close** | **$ 279,873** |

**Notes**
[1] K&S will draft the Receiver's final report as well as respond to any DOJ inquiries as long as Receivership is open.
[2] Akin Gump is critical to maintaining and transferring the FCC licenses.

**CONFIDENTIAL DRAFT**
FOR DISCUSSION PURPOSES ONLY

GlassRatner

Page 1 of 1
7/16/2025

SCHEDULE 4

## Theia Receivership

**Detail of Accounts Payable as of October 31, 2025 & Estimated Amounts Needed to Close the Receivership**

| Description | King & Spalding | Akin Gump | B. Riley & Receiver | Other Legal Fees | IT Expense, Taxes, & Fees | Total |
|---|---:|---:|---:|---:|---:|---:|
| **Invoices for month ended [1]:** | | | | | | |
| Earlier | 6,794 | - | - | - | - | 6,794 |
| May 31, 2024 | 32,856 | - | - | - | - | 32,856 |
| June 30, 2024 | 53,493 | 61,328 | - | - | - | 114,821 |
| July 31, 2024 | 11,862 | 14,328 | 24,933 | - | - | 51,123 |
| August 31, 2024 | 14,542 | 5,616 | - | - | - | 20,158 |
| September 30, 2024 | 2,803 | 7,920 | 6,874 | - | - | 17,596 |
| October 31, 2024 | 5,458 | 6,192 | 5,053 | - | - | 16,703 |
| November 30, 2024 | 2,213 | 9,984 | - | - | - | 12,197 |
| December 31, 2024 | 1,770 | - | 4,050 | - | - | 5,820 |
| January 31, 2025 | 590 | 2,752 | - | - | - | 3,342 |
| February 28, 2025 | 1,944 | 813 | - | - | - | 2,757 |
| March 31, 2025 | 5,471 | 3,738 | - | 2,851 | - | 12,059 |
| April 30, 2025 | 1,857 | 2,600 | - | - | 4,000 | 8,457 |
| May 31, 2025 | 22,148 | 38,675 | 28,625 | 1,155 | - | 90,603 |
| June 30, 2025 | 4,122 | 41,623 | 1,407 | - | - | 47,151 |
| July 31, 2025 | 7,595 | 5,200 | 9,401 | - | - | 22,196 |
| August 31, 2025 | 166,197 | 20,963 | 6,148 | - | - | 193,307 |
| September 30, 2025 | 113,037 | - | 6,890 | - | - | 119,927 |
| October 31, 2025 | 49,834 | - | 2,271 | - | - | 52,104 |
| Est. expenses to close Receivership [5] | - | - | - | - | 90,000 | 90,000 |
| **Total accounts payable** | **504,583** | **221,730** | **95,650** | **4,006** | **94,000** | **919,969** |
| Retainers remaining [2] | 100,000 | - | - | - | - | 100,000 |
| **Owed at 10/31/2025** | **$ 404,583** | **$ 221,730** | **$ 95,650** | **$ 4,006** | **$ 94,000** | **$ 819,969** |
| | [3] | | | | [4] | |

**Notes**

[1] Source: Transaction List by Vendor report obtained from Receivership QuickBooks as of 10/31/2025 2:15PM ET.
[2] Source: Vendor Balance Detail report obtained from Receivership QuickBooks as of 9/29/2025 11:00 AM ET.
[3] King & Spalding's $100,000 retainer has been applied within this schedule, although King & Spalding has not applied the retainer in their accounting records.
[4] IT expense, taxes, & fees includes $4,000 owed to Carr, Riggs, and Ingram for 2024 tax preparation, which is not complete as of the date of this schedule. The Receivership's account with CRI is on administrative hold until payment is made.
[5] Includes estimated costs to file taxes, dissolve entities, etc.