UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
FCS ADVISORS, LLC,                                               :
                  Plaintiff                       :
:        21-cv-06995 (PKC)
     -v.-                                                       :
:
THEIA GROUP, INC., d/b/a "THORIAN GROUP"                         :        ORDER
and/or "CYPHERIAN";                                              :
THEIA AVIATION, LLC; and                                         :
THEIA HOLDINGS A, INC., d/b/a "THORIAN                           :
HOLDINGS,"                                                       :
                  Defendants.                     :
-----------------------------------------------------------------X

CASTEL, U.S.D.J.

        FCS Advisors, LLC ("FCS"), an affiliate of Brevet Capital Management, LLC ("Brevet"), moved for the appointment of a receiver for Theia Group, Inc., Theia Aviation, LLC, and Theia Holdings A, Inc. (collectively, "Theia"). FCS proposed Michael Fuqua as one of two candidates to be Receiver.

        The Court ordered FCS to "open a dialogue" with Mr. Fuqua for the purpose of "finalizing arrangements and submitting a proposed Order retaining him as receiver." (Order of Oct. 29, 2021, ECF 105.) The Court entered the requested Order of appointment, providing as follows as to the compensation of Mr. Fuqua:

> The Receiver shall be compensated in accordance with the "Terms of Engagement for the Theia Group, Inc., et al., Receivership" dated November 1, 2021 and signed by Michael Fuqua as Managing Director of B. Riley Advisory Services (Doc 106-1.) (the "Terms of Engagement"), except that, as it relates to the potential transaction with a specific but unnamed buyer referred to in the letter of Motty Shulman dated November 4, 2021 (Doc 113 ¶ 2.), the Receiver shall earn a 1% success fee on sale proceeds in excess of $275 million or the hourly rates referenced in the Terms of Engagement, whichever is higher. <u>The Receiver and all personnel hired by the Receiver shall be compensated solely out of funds now held by or in the possession or control of or which may in the future be received by the Receivership Entities</u>.

1

(Order of Nov. 8, 2021 at ¶ 12, ECF 117 (emphasis added).)

The referenced Terms of Engagement ("Terms") provide that, apart from the success fee, the Receiver was to be paid at the rate of $450 per hour and "[t]he Receiver will be compensated by the Receivership Estates." (ECF 106-1.) The Terms are set forth on the letterhead of Mr. Fuqua's firm, B. Riley Advisory Services, and signed by Mr. Fuqua.

The history of the Receivership of Theia Group, Inc. is well covered in the submissions and Orders on the docket, including the various concerns expressed by the Court over the life of the Receivership. Theia's largest asset was perceived to be a license it secured from the Federal Communications Commission ("FCC") in May 2019 to build a network of 112 satellites for imaging the entire surface of the Earth. The license required Theia to launch 56 of the satellites by May 9, 2025, which did not happen. At some point Liberty Mutual "pulled" the surety bond that had been a requirement of the license. With many twists and turns, the Receivership agreed to sell the license to LTS Systems, LLC ("LTS"), also an affiliate of Brevet, subject to the approval of the FCC.

By May 2024, a $1.3 million payment was received by the Receivership as part of the Assumed Liabilities under the Asset Purchase Agreement with LTS and the funds were used by the Receiver to clear substantial arrears owed to the Receiver and the law firms representing him.

In July 2025, the FCC deemed the license to be null and void. (ECF 508-1.) In a letter to the Court dated November 20, 2025, Mr. Fuqua states that "the Receivership is broke." He estimates that there are some $819,969 in fees and expenses that are owed by the Receivership Estate as of October 31, 2025, of which approximately $95,650 is owed to the

Receiver, approximately $625,000 is owed to two law firms, and about $98,000 in other expenses is owed to unspecified vendors. In the November 20 letter, Mr. Fuqua asserts that certain entities engaged in "bad faith dealings" that have put the Receivership in its present position.

Mr. Fuqua expresses his belief that the Court "has equitable powers to cause FCS/Brevet—the parties who petitioned for the Receivership—and their affiliate, LTS—the special purpose vehicle established solely to receive the purchased assets for the purposes of sale, collectively, to pay the Receivership for the work performed in connection with me as the Receiver trying to comply with my obligations under the sale approved by the Court." (Letter of Nov. 20, 2025.)

The Receiver has had the power to seek redress for any wrong done to him in his official capacity or to the Receivership Estate. During the life of the Receivership, the Receiver has had the power and authority, granted to him by the Court, to "initiate . . . any actions or proceedings in state, federal or foreign court necessary to preserve or increase the value of the receivership assets or to carry out the Receiver's duties pursuant to this Order." (Order of Nov. 8, 2021 at ¶ 9, ECF 117.) This would include the power and authority to commence an action against a third party for an actionable wrong done to the Receivership Estate or to enforce duties or obligations necessary and proper to the effectuation of the Receiver's duties.

The Order of November 8, 2021 unambiguously provided that the Receiver "shall be compensated solely out of funds now held by or in the possession or control of or which may in the future be received by the Receivership Entities." (Id. at ¶ 12.) The Receiver did not seek or obtain a guarantee of payment by a designated third-party in the Order of appointment. The buyer, LTS, agreed to assume certain liabilities in the Asset

3

Purchase Agreement, but it was not an open-ended assumption of all liabilities of the Receivership Estate.

The Court does not have the authority to order by fiat that FCS/Brevet/LTS pay all outstanding liabilities of the Receivership Estate and, thus, the November 20, 2025 application of the Receiver is DENIED. Nothing herein alters or modifies any unsatisfied liability of LTS or any other person to the Receivership Estate under the Assumed Liabilities provision of the Asset Purchase Agreement.

SO ORDERED.

P. Kevin Castel<br>
United States District Judge

Dated: New York, New York
       December 9, 2025